**BRUNO W. TARABICHI**, CA State Bar No. 215129
bruno@legalforcelaw.com
**KUSCHA HATAMI**, CA State Bar No. 282954
kuscha@legalforcelaw.com
**LEGALFORCE RAJ ABHYANKER, P.C.**
1580 W. El Camino Real, Suite 13
Mountain View, California 94040
Telephone: 650.965.8731
Facsimile: 650.989.2131

Attorneys for Defendant
Raj Abhyanker

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

NEXTDOOR.COM, INC., a Delaware corporation,

Plaintiff,

vs.

RAJ ABHYANKER, an individual,

Defendant.

RAJ ABHYANKER, an individual,

Counterclaimant,

vs.

NEXTDOOR.COM, INC., a Delaware corporation; PRAKASH JANAKIRAMAN, an individual; BENCHMARK CAPITAL PARTNERS VII, L.P., a Delaware limited partnership; BENCHMARK CAPITAL MANAGEMENT CO. VII LLC, a Delaware limited liability company; SANDEEP SOOD, an individual; MONSOON COMPANY, an unknown business entity, and DOES 1–50, inclusive;

Counterdefendants.

Case No. 3:12-cv-05667-EMC

**DEFENDANT RAJ ABHYANKER'S ANSWER AND COUNTERCLAIMS FOR TRADE SECRET MISAPPROPRIATION, BREACH OF CONTRACT, AND INTENTIONAL INTERFERENCE WITH CONTRACT**

**DEMAND FOR JURY TRIAL**

Case Filed: November 5, 2012
Judge: Honorable Edward M. Chen

Defendant Raj Abhyanker ("Abhyanker"), through his attorneys, hereby answers Plaintiff Nextdoor.com, Inc.'s ("Nextdoor.com") Complaint as follows:

**The Nature of the Action**

1. In response to paragraph 1, Abhyanker denies each and every allegation in paragraph 1.

2. In response to paragraph 2, Abhyanker denies each and every allegation in paragraph 2.

3. In response to paragraph 3, Abhyanker denies each and every allegation in paragraph 3.

4. In response to paragraph 4, Abhyanker denies each and every allegation in paragraph 4.

5. In response to paragraph 5, Abhyanker denies each and every allegation in paragraph 5.

**Parties**

6. In response to paragraph 6, Abhyanker responds that he lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 6 and, therefore, denies each and every allegation in paragraph 6.

7. In response to paragraph 7, Abhyanker admits the allegations in paragraph 7.

**Jurisdiction and Venue**

8. In response to paragraph 8, Abhyanker denies that any conduct or omission giving rise to any claims against him has occurred. Abhyanker further responds that Nextdoor.com's allegations in paragraph 8 are legal conclusions and jurisdictional allegations that do not require a response.

9. In response to paragraph 9, Abhyanker denies that any conduct or omission giving rise to any claims against him has occurred. Abhyanker further responds that Nextdoor.com's allegations in paragraph 9 are legal conclusions and jurisdictional allegations that do not require a response.

10. In response to paragraph 10, Abhyanker admits that he resides and conducts business in this judicial district and is subject to personal jurisdiction in this judicial district. Except as expressly admitted, Abhyanker denies each and every allegation in paragraph 10.

**Intradistrict Assignment**

11. In response to paragraph 11, Abhyanker denies each and every allegation in paragraph 11.

**General Allegations**

12. In response to paragraph 12, Abhyanker responds that he lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 12 and, therefore, denies each and every allegation in paragraph 12.

13. In response to paragraph 13, Abhyanker responds that he lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 13 and, therefore, denies each and every allegation in paragraph 13.

14. In response to paragraph 14, Abhyanker denies each and every allegation in paragraph 14.

15. In response to paragraph 15, Abhyanker denies each and every allegation in paragraph 15.

16. In response to paragraph 16, Abhyanker responds that he lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 16 and, therefore, denies each and every allegation in paragraph 16.

17. In response to paragraph 17, Abhyanker denies each and every allegation in paragraph 17.

18. In response to paragraph 18, Abhyanker responds that he lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 18 and, therefore, denies each and every allegation in paragraph 18.

19. In response to paragraph 19, Abhyanker responds that he lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 19 and, therefore, denies each and every allegation in paragraph 19.

20. In response to paragraph 20, Abhyanker responds that he lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 20 and, therefore, denies each and every allegation in paragraph 20.

21. In response to paragraph 21, Abhyanker responds that he lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 21 and, therefore, denies each and every allegation in paragraph 21.

22. In response to paragraph 22, Abhyanker admits that on, October 27, 2011, he sent an email to Nirav Tolia and that Nirav Tolia never responded to the email. Abhyanker further states that the email speaks for itself. Except as expressly admitted, Abhyanker denies each and every allegation in paragraph 22.

23. In response to paragraph 23, Abhyanker admits that, on November 10, 2011, he filed Civil Action No. 1-11-CV-212924 in the Superior Court of California for the County of Santa Clara against Nextdoor.com and other defendants. Abhyanker further responds that the pleadings on file in Civil Action No. 1-11-CV-212924 speak for themselves. Except as expressly admitted, Abhyanker denies each and every allegation in paragraph 23.

24. In response to paragraph 24, Abhyanker responds that the pleadings on file in Civil Action No. 1-11-CV-212924 speak for themselves. Except as expressly admitted, Abhyanker denies each and every allegation in paragraph 24.

25. In response to paragraph 25, Abhyanker admits that, on December 28, 2011, he filed U.S. Trademark Application Serial No. 85/504,896 for the NEXTDOOR standard character mark in connection with services in International Class 42 with the U.S. Patent and Trademark Office. Except as expressly admitted, Abhyanker denies each and every allegation in paragraph 25.

26. In response to paragraph 26, Abhyanker admits that he did not file a trademark application for the NEXTDOOR mark prior to December 28, 2011. Except as expressly admitted, Abhyanker denies each and every allegation in paragraph 26.

27. In response to paragraph 27, Abhyanker admits that he filed U.S. Trademark Application Serial Nos. 77/049,286 for FATDOOR and 77/049,854 for GET TO KNOW YOUR

NEIGHBORS with the U.S. Patent and Trademark Office and that these two specific applications did not mature into registrations. Except as expressly admitted, Abhyanker denies each and every allegation in paragraph 27.

28. In response to paragraph 28, Abhyanker admits that, on February 28, 2012, he filed U.S. Trademark Application Serial No. 85/537,718 for the FATDOOR GET TO KNOW YOUR NEIGHBORS design mark with the U.S. Patent and Trademark Office.

29. In response to paragraph 29, Abhyanker denies each and every allegation in paragraph 29.

30. In response to paragraph 30, Abhyanker admits that he registered the nextdoor.cm domain name. Abhyanker responds that he lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 30 and, therefore, denies each and every remaining allegation in paragraph 30.

31. In response to paragraph 31, Abhyanker admits that he owns and controls the nextdoor.cm domain name. Abhyanker responds that he lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 31 and, therefore, denies each and every remaining allegation in paragraph 31.

32. In response to paragraph 32, Abhyanker responds that Exhibit A to the Complaint speaks for itself. Except as expressly admitted, Abhyanker denies each and every allegation in paragraph 32.

33. In response to paragraph 33, Abhyanker responds that Exhibit B to the Complaint speaks for itself. Except as expressly admitted, Abhyanker denies each and every allegation in paragraph 33.

34. In response to paragraph 34, Abhyanker responds that Exhibits C and D to the Complaint speak for themselves. Except as expressly admitted, Abhyanker denies each and every allegation in paragraph 34.

35. In response to paragraph 35, Abhyanker responds that Exhibit A to the Complaint speaks for itself. Except as expressly admitted, Abhyanker denies each and every allegation in paragraph 35.

36. In response to paragraph 36, Abhyanker responds that Exhibit B to the Complaint speaks for itself. Except as expressly admitted, Abhyanker denies each and every allegation in paragraph 36.

37. In response to paragraph 37, Abhyanker responds that Exhibit B to the Complaint speaks for itself. Except as expressly admitted, Abhyanker denies each and every allegation in paragraph 37.

38. In response to paragraph 38, Abhyanker responds that Exhibit B to the Complaint speaks for itself. Except as expressly admitted, Abhyanker denies each and every allegation in paragraph 38.

39. In response to paragraph 39, Abhyanker denies each and every allegation in paragraph 39.

40. In response to paragraph 40, Abhyanker admits that, on or around February 9, 2012, he re-registered the nextyard.com and nextlawn.com domain names and that these two domain names pointed to a web server owned by Abhyanker. Except as expressly admitted, Abhyanker denies each and every allegation in paragraph 40.

41. In response to paragraph 41, Abhyanker denies each and every allegation in paragraph 41.

42. In response to paragraph 42, Abhyanker admits that he registered the edirectree domain name on or around September 2007 and that, at some point, the domain name registration was not renewed. Abhyanker responds that he lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 42 and, therefore, denies each and every remaining allegation in paragraph 42.

43. In response to paragraph 43, Abhyanker responds that he lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 43 and, therefore, denies each and every allegation in paragraph 43.

44. In response to paragraph 44, Abhyanker admits that, on or around February 9, 2012, he registered the edirectree.com domain name. Except as expressly admitted, Abhyanker denies each and every allegation in paragraph 44.

45. In response to paragraph 45, Abhyanker admits that, at one time, a web page accessible at the edirectree.com contained a social networking feature that was an extension of its previous "Friends" feature. Except as expressly admitted, Abhyanker denies each and every allegation in paragraph 45.

46. In response to paragraph 46, Abhyanker admits that, at one time, a web page accessible at the edirectree.com contained a "Friends" social networking feature. Except as expressly admitted, Abhyanker denies each and every allegation in paragraph 46.

47. In response to paragraph 47, Abhyanker denies each and every allegation in paragraph 47.

48. In response to paragraph 48, Abhyanker denies each and every allegation in paragraph 48.

49. In response to paragraph 49, Abhyanker admits that, on January 20, 2012, he filed a Notice of Opposition with the Trademark Trial and Appeal Board that was instituted as Opposition No. 91203462 and that, on February 9, 2012, he filed a Notice of Opposition with the Trademark Trial and Appeal Board that was instituted as Opposition No. 91203762. Abhyanker further responds that the pleadings in these oppositions speak for themselves. Except as expressly admitted, Abhyanker denies each and every allegation in paragraph 49.

50. In response to paragraph 50, Abhyanker responds that the pleadings on file in Opposition Nos. 91203462 and 91203762 speak for themselves. Except as expressly admitted, Abhyanker denies each and every allegation in paragraph 50.

51. In response to paragraph 51, Abhyanker responds that, on or around February 7, 2012, he filed a Request for Dismissal Without Prejudice in Civil Action No. 1-11-CV-212924 in the Superior Court of California for the County of Santa Clara. Except as expressly admitted, Abhyanker denies each and every allegation in paragraph 51.

52. In response to paragraph 52, Abhyanker admits that his attorneys sent a letter to Nextdoor.com. Abhyanker further responds that the letter speaks for itself. Except as expressly admitted, Abhyanker denies each and every allegation in paragraph 52.

53. In response to paragraph 53, Abhyanker responds that the pleadings on file in Opposition Nos. 91203462 and 91203762 speak for themselves. Except as expressly admitted, Abhyanker denies each and every allegation in paragraph 53.

54. In response to paragraph 54, Abhyanker denies each and every allegation in paragraph 54.

**Count I – Declaratory Judgment Under 28 U.S.C. § 2201**

55. In response to paragraph 55, Abhyanker refers to his responses to the allegations in paragraphs 1–54 and incorporates by reference such responses as if set forth in full herein. In addition, Abhyanker denies that there is any basis for Nextdoor.com to bring a claim against him for declaratory relief.

56. In response to paragraph 56, Abhyanker responds that he lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 56 and, therefore, denies each and every allegation in paragraph 56.

57. In response to paragraph 57, Abhyanker responds that the pleadings on file in Opposition Nos. 91203462 and 91203762 speak for themselves. Except as expressly admitted, Abhyanker denies each and every allegation in paragraph 57.

58. In response to paragraph 58, Abhyanker responds that the allegation in paragraph 58 is a legal conclusion that does not require a response.

59. In response to paragraph 59, Abhyanker responds that he lacks knowledge or information sufficient to form a belief about what Nextdoor.com does or does not seek by way of declaration from this Court or the truth of the allegations in paragraph 59 and, therefore, denies each and every allegation in paragraph 59.

**Count II – Declaratory Judgment Under 28 U.S.C. § 2201**

60. In response to paragraph 60, Abhyanker refers to his responses to the allegations in paragraphs 1–59 and incorporates by reference such responses as if set forth in full herein. In addition, Abhyanker denies that there is any basis for Nextdoor.com to bring a claim against him for declaratory relief.

61. In response to paragraph 61, Abhyanker responds that the pleadings on file in Opposition Nos. 91203462 and 91203762 speak for themselves. Except as expressly admitted, Abhyanker denies each and every allegation in paragraph 61.

62. In response to paragraph 62, Abhyanker responds that the allegation in paragraph 62 that an actual controversy exists is a legal conclusion that does not require a response. With regard to the remaining allegations in paragraph 62, Abhyanker responds that he lacks knowledge or information sufficient to form a belief about what Nextdoor.com does or does not contend or the truth of the remaining allegations in paragraph 62 and, therefore, denies each and every remaining allegation in paragraph 62.

63. In response to paragraph 63, Abhyanker responds that he lacks knowledge or information sufficient to form a belief about what Nextdoor.com does or does not seek by way of declaration from this Court or the truth of the allegations in paragraph 63 and, therefore, denies each and every allegation in paragraph 63.

**Count III – Violation of 15 U.S.C. § 1125(D)(1)**

64. In response to paragraph 64, Abhyanker refers to his responses to the allegations in paragraphs 1–63 and incorporates by reference such responses as if set forth in full herein. In addition, Abhyanker denies that there is any basis for Nextdoor.com to bring a claim against him for violation of 15 U.S.C. § 1125(D)(1).

65. In response to paragraph 65, Abhyanker admits that he registered the nextdoor.cm domain name.

66. In response to paragraph 66, Abhyanker denies each and every allegation in paragraph 66.

67. In response to paragraph 67, Abhyanker denies each and every allegation in paragraph 67.

68. In response to paragraph 68, Abhyanker denies each and every allegation in paragraph 68.

69. In response to paragraph 69, Abhyanker denies each and every allegation in paragraph 69.

70. In response to paragraph 70, Abhyanker denies each and every allegation in paragraph 70.

71. In response to paragraph 71, Abhyanker denies each and every allegation in paragraph 71.

**Count IV – Violation of 15 U.S.C. § 1125(A)**

72. In response to paragraph 72, Abhyanker refers to his responses to the allegations in paragraphs 1–71 and incorporates by reference such responses as if set forth in full herein. In addition, Abhyanker denies that there is any basis for Nextdoor.com to bring a claim against him for violation of 15 U.S.C. § 1125(A).

73. In response to paragraph 73, Abhyanker denies each and every allegation in paragraph 73.

74. In response to paragraph 74, Abhyanker denies each and every allegation in paragraph 74.

75. In response to paragraph 75, Abhyanker denies each and every allegation in paragraph 75.

76. In response to paragraph 76, Abhyanker denies each and every allegation in paragraph 76.

77. In response to paragraph 77, Abhyanker denies each and every allegation in paragraph 77.

78. In response to paragraph 78, Abhyanker denies each and every allegation in paragraph 78.

In response to Nextdoor.com's Prayer for Relief paragraphs A–G, Abhyanker denies that there is a basis for judgment against him, damages of any kind for any reason, declaratory relief, an order transferring any domain names, statutory damages, profits, prejudgment interest, punitive damages, attorneys' fees, litigation expenses, costs, liquidated damages, injunctive relief, penalties, restitution, or any other relief. Abhyanker further prays that Nextdoor.com take nothing by its Complaint, that the Complaint be dismissed with prejudice, that Abhyanker be

awarded his attorneys' fees and costs, and that the Court order such further relief as it deems just and proper.

**AFFIRMATIVE DEFENSES**

By way of further answer, Abhyanker alleges and asserts the following defenses in response to the allegations contained in the Complaint. In this regard, Abhyanker undertakes the burden of proof only as to those defenses that are deemed affirmative defenses by law, regardless of how such defenses are denominated in the instant Answer. Abhyanker reserves the right to assert other affirmative defenses as this action proceeds based on further discovery, legal research, or analysis that may supply additional facts or lend new meaning or clarification to the claims contained in the Complaint.

**FIRST AFFIRMATIVE DEFENSE**
**FAILURE TO STATE A CLAIM**

79. Plaintiff's claims are barred, in whole or in part, because the Complaint fail to state a claim upon which relief can be granted.

**SECOND AFFIRMATIVE DEFENSE**
**NO INJURY OR DAMAGE**

80. Plaintiff's claims are barred, in whole or in part, because Plaintiff has not and will not suffer any injury or damage.

**THIRD AFFIRMATIVE DEFENSE**
**LACK OF STANDING**

81. Plaintiff's claims are barred, in whole or in part, because Plaintiff lack standing.

**FOURTH AFFIRMATIVE DEFENSE**
**STATUTE OF LIMITATIONS**

82. Plaintiff's claims are barred, in whole or in part, by one or more of the applicable statute of limitations.

**FIFTH AFFIRMATIVE DEFENSE**
**ADEQUATE REMEDY AT LAW**

83. Plaintiff has not stated a valid claim for injunctive relief because Plaintiff has an adequate remedy at law.

**SIXTH AFFIRMATIVE DEFENSE**
**ESTOPPEL**

84. Plaintiff's claims are barred, in whole or in part, by the doctrine of estoppel.

**SEVENTH AFFIRMATIVE DEFENSE**
**LACHES**

85. Plaintiff's claims are barred, in whole or in part, by the doctrine of laches.

**EIGHTH AFFIRMATIVE DEFENSE**
**ACQUIESCENCE**

86. Plaintiff's claims are barred, in whole or in part, by the doctrine of acquiescence.

**NINTH AFFIRMATIVE DEFENSE**
**WAIVER**

87. Plaintiff's claims are barred, in whole or in part, by the doctrine of waiver.

**TENTH AFFIRMATIVE DEFENSE**
**UNCLEAN HANDS**

88. Plaintiff's claims are barred, in whole or in part, by the doctrine of unclean hands.

**ELEVENTH AFFIRMATIVE DEFENSE**
**UNENFORCEABILITY**

89. Plaintiff's claims are barred, in whole or in part, because Plaintiff's alleged trademark(s) are unenforceable.

**TWELFTH AFFIRMATIVE DEFENSE**
**FRAUD**

90. Plaintiff's claims are barred, in whole or in part, by Plaintiff's fraud on the USPTO, which is detailed in the Counterclaims below.

**THIRTEENTH AFFIRMATIVE DEFENSE**
**FAILURE TO MITIGATE DAMAGES**

91. Plaintiff's claims are barred, in whole or in part, because of Plaintiff's failure to mitigate damages, if such damages exist.

**FOURTEENTH AFFIRMATIVE DEFENSE**
**BREACH**

92. Plaintiff's claims are barred, in whole or in part, because Plaintiff's use of its alleged trademark(s) is a breach of one or more agreements or duties of confidentiality.

**FIFTEENTH AFFIRMATIVE DEFENSE**
**PRIOR TRADEMARK RIGHTS**

93. Plaintiff's claims are barred, in whole or in part, because Abhyanker has prior and superior rights in the NEXTDOOR mark.

**SIXTEENTH AFFIRMATIVE DEFENSE**
**RIGHT TO ASSERT ADDITIONAL DEFENSES**

94. Abhyanker expressly reserves the right to amend its Answer to assert additional affirmative defenses upon the revelation of more definitive facts by Plaintiff and upon Abhyanker taking of discovery and investigation of this matter.

**COUNTERCLAIMS AND THIRD-PARTY COMPLAINT**

Pursuant to Rule 13 of the Federal Rules of Civil Procedure, Counterclaimant Abhyanker counterclaims against Counterdefendants Nextdoor.com, Prakesh Janakiraman, Sandeep Sood, Monsoon Company, Benchmark Capital Partner VII, L.P., Benchmark Management Co. VII LLC, and DOES 1 – 50 as follows:

**PARTIES**

95. Raj Abhyanker is an individual and resident of Cupertino, California.

96. Nextdoor.com is a Delaware corporation having its principal place of business at 110 Sutter Street, Suite 700, San Francisco, California, 94104.

97. Prakesh Janakiraman ("Janakiraman") is an individual and resident of San Francisco, California. Janakiraman is the co-founder and Vice President, Engineering of Nextdoor.com.

98. Sandeep Sood ("Sood") is an individual and resides in the San Francisco Bay Area. Sood is the President of Monsoon Company.

99. Monsoon Company is an unknown business entity having its principal place of business at 350 Frank Ogawa Plaza, Suite 100, Oakland, California 94612.

100. Benchmark Capital Partners VII, L.P. is a Delaware limited partnership and Benchmark Capital Management Co. VII LLC is a Delaware limited liability company (hereinafter collectively referred to as "Benchmark Capital"), both having their principal place of business at 2480 Sand Hill Road, Suite 200, Menlo Park, California, 94025.

101. Abhyanker is ignorant of the true names of the other Counterdefendants sued herein as Does 1 – 50, inclusive, and therefore, sues these Doe Counterdefendants by such fictitious names. Abhyanker will amend his counterclaims to allege their true names and capacities when ascertained.

## JURISDICTION AND VENUE

102. This Court has supplemental jurisdiction over these counterclaims pursuant to 28 U.S.C. § 1367.

103. Nextdoor.com and Counterdefendants are subject to personal jurisdiction in this district due to their systematic and continuous contacts with this district. In addition, Nextdoor.com is subject to personal jurisdiction as a result of initiating this lawsuit in this district.

104. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391.

## FACTS RELEVANT TO ALL COUNTERCLAIMS

### Nextdoor.com and Benchmark Capital have a history of stealing information and ideas

105. Nextdoor.com, Benchmark Capital, and the individuals associated with them have a pattern and practice of building companies based on stolen information and engaging in dishonest business practices at the expense of entrepreneurs. By way of one example, since at least 2006, Nirav Tolia ("Tolia"), one of the founders of Nextdoor.com, has been helping

Benchmark evaluate confidential ideas of entrepreneurs. And in 2006, at the behest of Benchmark partner Peter Fenton, Tolia met with Jeremy Stoppelman, the founder of Yelp. At this meeting, Tolia learned that Stoppelman and Yelp had misappropriated trademarks and the trade identity belonging to his former employer, eBay, Inc. However, Tolia proceeded with a positive investment recommendation and Yelp was invested in by Benchmark. Put simply, Benchmark has a pattern and practice of choosing to hire and retain consultants and employees known to be dishonest and with questionable ethical standards, placing such consultants and employees in positions to evaluate confidential ideas from entrepreneurs, and then investing in companies having stolen intellectual property and assets

106. Moreover, Nextdoor.com has a history of failing on its own merits. According to its own Complaint in this action, Nextdoor.com was founded in December 2007 as SPN, Inc. In January 2008, SPN, Inc. changed its name to Round Two, Inc. and launched an online almanac of professional and college athletes at www.fanbase.com. Round Two, Inc. later changed its name to Fanbase Inc. However, Fanbase Inc. and its Fanbase online almanac was a failure, and by Spring 2010, the Fanbase concept was abandoned. These failures set the stage for Fanbase Inc. and the persons associated with Fanbase to yet again build a company based on stolen information and misappropriated trade secrets.

107. As detailed below, Fanbase Inc. proceeded to steal and misappropriate Abhyanker's proprietary and trade secret information for an online neighborhood social network to be called Nextdoor, boldy copying and implementing Abhyanker's proprietary and trade secret execution plan for his Nextdoor concept. This is how the failed company Fanbase Inc. illicitly renamed itself Nextdoor.com and radically moved its business model from an online almanac for athletes to an online neighborhood social network in early 2011.

<u>Abhyanker develops the Nextdoor online neighborhood social network concept</u>

108. By September 2006, Abhyanker had developed the concept of a private online neighborhood social network to be called Nextdoor. In connection with his Nextdoor concept, Abhyanker developed and owned trade secret information, including, but not limited to, a wide variety of key product details, algorithms, business plans, security algorithms, database structures,

user interface designs, software code, product concepts, prototypes, methods, works of authorship, trademarks, white papers, and instrumentalities, information and plans pertaining to a geo-spacial database, architecture, social networking, friend grouping, providing real time updates, feed aggregation, spheres of influence, application technologies, filtering relevant feeds across multiple networks, filtering conversations across cross group interactions, providing in depth conversations through a social graph, editable user pages, community governance, neighborhood communication and geo-spacial social networking, and the use of the name Nextdoor.com ("Abhyanker's Nextdoor Trade Secrets").

Abhyanker hires Sood to work on his trade secret Nextdoor concept

109. On or around September 21, 2006, Abhyanker hired Sandeep Sood ("Sood") and his firm Big Circle Media (now called Monsoon Company) to provide software and website development services for Abhyanker's concept for an online neighborhood social network called Nextdoor.com. Before disclosing his concept and associated trade secrets to Sood and Big Circle Media, Abhyanker required them to execute and Independent Contractor Agreement and Non-Disclosure Agreement, which were also executed on September 21, 2006. The agreements required Sood and Big Circle Media to keep Abhyanker's Nextdoor.com concept and all the accompanying details and work product relating to it confidential.

Abhyanker puts his Nextdoor concept on hold to found and pursue Fatdoor

110. On or around October 25, 2006, Abhyanker decided to put his Nextdoor concept on hold to pursue another business called Fatdoor, which was a 'wikipedia' like commenting tool. Accordingly, Abhyanker founded Fatdoor, Inc. To be clear, Abhyanker's Fatdoor concept was separate and distinct from Abhyanker's Nextdoor concept.

Sood is not chosen to be part of Fatdoor's founding team and becomes disgruntled

111. Before the formation of Fatdoor, Abhyanker and Sood had discussed the possibility of Sood becoming a co-founder of Nextdoor. However, when Fatdoor was formed, Abhyanker's Nextdoor concept was put on hold to explore the Fatdoor business model.

112. Unfortunately, Sood was not selected to be part of Fatdoor's founding team. There were several reasons that Sood was not selected, including Sood's other obligations and his outspoken disagreement with Fatdoor's chosen direction and technology.

113. As can be expected, Sood was disappointed when he learned that he was not selected to be part of Fatdoor, leaving him disgruntled and with a clear axe to grind.

Abhyanker confidentially discloses his trade secrets to Benchmark Capital

114. On or around December 15, 2006, Abhyanker showed his Fatdoor prototype to Jeffrey M. Drazan ("Drazan"), who was intrigued by the concept Abhyanker's vast knowledge, concepts, know how, and ideas pertaining to the social networking space and social network data aggregation and organization.

115. On or about January 5, 2007, Drazan agreed to personally invest $500,000.00 in Fatdoor, Inc. Drazan also introduced Abhyanker to William H. Harris, Jr. ("Harris, Jr.").

116. On or about February 1, 2007, Abhyanker closed a $1,000,000.00 Series A round of equity financing with Drazan and Harris, Jr. for Fatdoor, Inc.

117. Abhyanker then hired the best engineers that he could find to help build working products for Fatdoor, Inc., including Chandu Thota ("Thota") as Chief Technology Officer (CTO) of Fatdoor, Inc.

118. The prototype of Fatdoor.com was developed into a working beta website. However, based on feedback from users, an internal decision was made to work on an improved version of Fatdoor.com that centered around security and privacy. To this end, Abhyanker believed this new version of Fatdoor.com could be accomplished by using some of Abhyanker's Nextdoor Trade Secrets.

119. Accordingly, on or around June 20, 2007, an initial meeting was set with Benchmark Capital. This meeting did not involve the disclosure of any non-confidential, trade secret information. At that meeting, it was discussed that a confidential meeting would take place only after assurances were received from Kevin Harvey ("Harvey"), a general partner of Benchmark capital, that all information shared by Abhyanker would be maintained strictly confidential. Harvey agreed to maintain confidential any and all information disclosed by

Abhyanker during any future meetings in a follow up phone call that afternoon between Harvey and Abhyanker and a separate phone call between Harvey and Drazan. In this regard, it is the pattern and practice of Benchmark Capital, its general partners, and entrepreneurs in residence (EIRs) to agree to non-disclosure agreements via verbal and email "handshakes." *See* Randall E. Stross, eBoys: The First Inside Account of Venture Capitalists at Work, xviii (2000).

120. Based on Benchmark Capital's assurances of confidentiality, a follow up meeting was set for on or about June 21, 2007. During that meeting, Abhyanker provided a detailed disclosure of Abhyanker's Nextdoor Trade Secrets. The meeting was attended by a majority of the Benchmark partners and EIRs, including Harvey.

121. In addition, at Harvey's request, Abhyanker sent confidential and trade secret presentations relating to the Nextdoor concept to Benchmark Capital partner Mitch Lasky ("Lasky") and a diligence file ("Diligence Package") fully disclosing his Nextdoor concept and the trade secrets to Benchmark Capital partner Peter Fenton ("Fenton").

122. Harvey then informed Abhyanker that he would be discussing the trade secret information with his team at an offsite meeting that would be occurring between June 23 -25, 2007.

123. At Benchmark Capital's request, Abhyanker had various follow-up meetings with Benchmark Capital discussing the confidential technical details of his trade secrets.

124. Accordingly, Abhyanker disclosed key details of Abhyanker's Next Door Trade Secrets, including, but not limited to, the Diligence Package, which included, at least key product details, algorithms, business plans, security algorithms, database structures, user interface designs, software code, product concepts, prototypes, methods, works of authorship, trademarks, white papers, and instrumentalities. The Diligence Package also contained a mockup images showing a photograph of sample user, with a personal profile virtual wall feed from neighbors who provided comments on the user's wall. A search area box read "search neighborhood." The word "Nextdoor" was clearly shown in the upper, left-hand side of the screenshot. A map was shown in the screenshot illustrating the location of the user's hypothetical home and images

indicating which neighbors had and had not joined the neighborhood surrounding the user's home.

125. Despite its assurance of confidentiality, Benchmark Capital proceeded to misappropriate Abhyanker's trade secrets by disclosing and using them in violation of the confidentiality agreement.

<u>Nextdoor.com founder Janakiraman's secret friendship with Sood</u>

126. As detailed above, Janakiraman is one of the founders of Nextdoor.com, and Sood was hired by Abhyanker to work on his trade secret Nextdoor concept.

127. In trying to ascertain exactly how Nextdoor.com misappropriated Abhyanker's trade secrets, Abhyanker recently discovered that Janakiraman and Sood both attended the University of California, Berkeley. Apparently, unbeknown to Abhyanker, Sood has been friends with both Janakiraman and his wife, Rachna Nivas, since at least 1995.

128. When Abhyanker discovered that Sood and Janakiraman were friends, he confronted Sood and asked him about his relationship with Janakiraman. Sood reluctantly admitted to knowing Janakiraman, but tried to downplay their relationship by saying that they have not really kept in touch over the years. This turned out to be a lie.

129. Through his own investigation, Abhyanker discovered that Janakiraman and Sood had stayed in touch, exchanging numerous messages as recently as October 28, 2012, a week before Nextdoor.com filed the instant lawsuit.

130. The fact that Sood did not disclose and then lied about the extent of his relationship with Janakiraman evidences that Sood was trying to conceal his wrongful conduct of disclosing Abhyanker's Nextdoor Trade Secrets to Janakiraman and Nextdoor.com.

<u>Nextdoor.com's founders Janakiraman and Tolia were EIRs at Benchmark Capital</u>

131. Nextdoor.com's founders are Janakiraman and Nirav Tolia ("Tolia"). And as detailed above, Abhyanker had previously disclosed Abhyanker's Nextdoor Trade Secrets to Benchmark Capital.

132. In trying to ascertain exactly how Nextdoor.com misappropriated Abhyanker's Nextdoor Trade Secrets, Abhyanker recently discovered that both of Nextdoor.com's founders,

Janakiraman and Tolia, were entrepreneurs in residence (EIRs) at Benchmark Capital at the time Abhyanker disclosed his trade secrets to Benchmark Capital. It is much too coincidental that both the founders of Nextdoor.com would be EIRs at Benchmark Capital when Abhyanker disclosed Abhyanker's Nextdoor Trade Secrets to Benchmark Capital.

133. On information and belief, Benchmark Capital disclosed Abhyanker's trade secrets to both Janakiraman and Tolia, who then proceeded to misappropriate and use Abhyanker's trade secrets as the foundation of Nextdoor.com.

Sood completes a survey on the Nextdoor concept for Nextdoor.com

134. On or around the fall of 2010, Janakiraman and Nextdoor.com sent a survey to friends and family seeking feedback on the online neighborhood social networking concept that was misappropriated from Abhyanker.

135. One of the recipients of the survey was Sood. Sood completed and returned the survey, informing and/or reminding his long time friend Janakiraman and Nextdoor.com that he had actually worked on Abhyanker's original Nextdoor concept and had been privy to Abhyanker's Nextdoor Trade Secrets.

136. After completing the survey, Sood disclosed Abhyanker's Nextdoor Trade Secrets to Janakiraman and Nextdoor.com. This was a material breach of Sood's Independent Contractor Agreement and Non-Disclosure Agreement.

137. Despite knowing that Sood had worked on Abhyanker's proprietary and trade secret Nextdoor concept, Janakiraman and Nextdoor.com encouraged Sood to improperly disclose Abhyanker's trade secret information and proceeded to use the information as the foundation of their business.

Nextdoor.com prototypes Abhyanker's Nextdoor concept in Abhyanker's neighborhood

138. On or around October 2010, Nextdoor.com set up a website at loreleineighbors.reallifelabs.com to surreptitiously prototype Abhyanker's online neighborhood social networking concept under the temporary name "Neighborly" prior to misappropriating Abhyanker's Nextdoor name and mark. As Nextdoor.com stole the concept from Abhyanker, it is

not surprising that Nextdoor.com's prototype targeted the same Lorelei neighborhood referenced in Abhyanker's Nextdoor Trade Secrets.

139. When Abhyanker conceived and developed the Nextdoor concept, his offices were located in Palo Alto, California and Menlo Park, California. The Lorelei neighborhood abutted Abhyanker's Menlo Park office, which is why Abhyanker selected the Lorelei neighborhood to test his trade secret Nextdoor concepts and execution plans.

140. In stark contrast, Nextdoor.com had no connection or reason to prototype the misappropriated concept in the Lorelei neighborhood. Not only is Nextdoor.com based in San Francisco, but all the individuals at Nextdoor.com involved in misappropriating Abhyanker's Nextdoor concept also live in San Francisco — approximately 30 miles from Menlo Park. Given the fact that there are more than 500 neighborhoods in the San Francisco Bay Area, it is clear that Nextdoor.com did not randomly choose the Lorelei neighborhood, but rather chose the Lorelei neighborhood because it was the neighborhood selected by Abhyanker in his trade secret Nextdoor concepts and execution plans that Nextdoor.com misappropriated.

141. Nextdoor.com's brazen decision to prototype the concept it stole from Abhyanker in Abhyanker's own Lorelei neighborhood is irrefutable evidence that Nextdoor.com misappropriated Abhyanker's trade secret information. Moreover, given Nextdoor.com's founder Janakiraman's long-time friendship with Sood and close association with Benchmark Capital, it is clear that Nextdoor.com had the connections and means for accessing and stealing Abhyanker's Nextdoor Trade Secrets.

<u>After Sood's wrongful disclosure, Nextdoor.com adopts the stolen Nextdoor name</u>

142. On or around January 2011, shortly after Sood completed and returned the survey and Nextdoor.com prototyped the misappropriated concept in Abhyanker's neighborhood, Nextdoor.com (still called Fanbase at the time) coincidentally alleges that it decided to try to register the www.nextdoor.com domain name. (However, Abhyanker suspects that Nextdoor.com or its principals may have been involved in trying to register the domain name before January 2011 based on their misappropriation of Abhyanker's Nextdoor Trade Secrets.)

143. In this regard, Sood had been aware that Abhyanker had been bidding and trying to purchase the www.nextdoor.com domain name since late 2006. In fact, Sood was copied on many emails relating to Abhyanker's attempts to purchase the domain name.

144. Sood proceeded to disclose confidential information relating to Abhyanker's attempts to purchase the domain name to Janakiraman and Nextdoor.com, which prompted and enabled them to outbid Abhyanker and register the www.nextdoor.com domain name, thereby preventing Abhyanker from rightfully obtaining the domain name.

145. After wrong fully obtaining the domain name, on or around February 8, 2011, Nextdoor.com (still called Fanbase at the time) proceeded to file a federal trademark application for NEXTDOOR.

146. On or around March 2011, according to Nextdoor.com's own Complaint, it changed its corporate name from Fanbase Inc. to Nextdoor.com, Inc.

147. Finally, on or around October 26, 2011, Nextdoor.com publicly launched the www.nextdoor.com online neighborhood social network that uses and was built on the trade secrets misappropriated from Abhyanker.

**FIRST COUNTERCLAIM**
**TRADE SECRET MISAPPROPRIATION**
**(Against All Defendants)**

148. Paragraphs 1 – 147, above, are realleged and incorporated by reference as if set forth in full.

149. As detailed in Paragraph 108 above, Abhyanker developed and owned trade secret information relating to the concept of an online neighborhood social network to be called Nextdoor. These trade secrets consisted of a wide variety of information, including, but not limited to, key product details, algorithms, business plans, security algorithms, database structures, user interface designs, software code, product concepts, prototypes, methods, works of authorship, trademarks, white papers, and instrumentalities, information and plans pertaining to a geo-spacial database, architecture, social networking, friend grouping, providing real time updates, feed aggregation, spheres of influence, application technologies, filtering relevant feeds across multiple networks, filtering conversations across cross group interactions, providing in

depth conversations through a social graph, editable user pages, community governance, neighborhood communication and geo-spacial social networking, and the use of the name Nextdoor.com ("Abhyanker's Nextdoor Trade Secrets").

150. Abhyanker's Nextdoor Trade Secrets derived independent economic value from not being known to the public or other persons who could obtain economic value from their disclosure or use.

151. Abhyanker's Nextdoor Trade Secrets were also the subject of efforts that were reasonable under the circumstances to maintain their secrecy. As detailed in Paragraphs 109 and 119 above, Abhyanker only disclosed the Nextdoor Trade Secrets to Sood and Monsoon Company and Benchmark Capital pursuant to strict confidentiality agreements.

152. Benchmark Capital misappropriated Abhyanker's Nextdoor Trade Secrets by using improper means to acquire and then disclose Abhyanker's Nextdoor Trade Secrets to Nextdoor.com and its founders in violation of its confidentiality agreement with Abhyanker and without Abhyanker's consent. Among other things, Benchmark fraudulently and intentionally misrepresented that it would maintain the confidentiality of Abhyanker's Nextdoor Trade Secrets when it had no intention of doing so and fraudulently and intentionally misrepresented that Benchmark Capital's use of Abhyanker's Nextdoor Trade Secrets would be limited solely to evaluation for investment purposes. Benchmark Capital also improperly induced and encouraged Nextdoor.com and its founders to use Abhyanker's Nextdoor Trade Secrets.

153. Sood and Monsoon Company misappropriated Abhyanker's Nextdoor Trade Secrets by using improper means to acquire and then disclose Abhyanker's Nextdoor Trade Secrets to Nextdoor.com and its founders in violation of the Independent Contractor Agreement and Non-Disclosure Agreement with Abhyanker and without Abhyanker's consent. Among other things, Sood and Monsoon Company fraudulently and intentionally misrepresented that they would maintain the confidentiality of Abhyanker's Nextdoor Trade Secrets when they had no intention of doing so. Sood and Monsoon Company also improperly induced and encouraged Nextdoor.com and its founders to use Abhyanker's Nextdoor Trade Secrets.

154. Janakiraman and Nextdoor.com misappropriated Abhyanker's Nextdoor Trade Secrets by using improper means to acquire and then use Abhyanker's Nextdoor Trade Secrets as the foundation of their business. Janakiraman and Nextdoor.com induced both Benchmark Capital and Sood and Monsoon Company to breach the confidentiality agreements and obligations to Abhyanker by persuading them to disclose Abhyanker's Nextdoor Trade Secrets to them. Despite being fully aware of Benchmark Capital's, Sood's, and Monsoon Company's confidentiality obligations and agreements, Janakiraman and Nextdoor.com proceeded to use the Abhyanker's Nextdoor Trade Secrets to build their business.

155. Counterdefendants' aforesaid misappropriation has caused and continues to cause Abhyanker damages and irreparably injury. Moreover, Counterdefendants' aforesaid acts constitute willful and malicious misappropriation, thereby entitling Abhyanker to an award of exemplary damages.

**SECOND COUNTERCLAIM**
**BREACH OF WRITTEN CONTRACT**
**(Against Sandeep Sood and Monsoon Company)**

156. Paragraphs 1 – 155, above, are realleged and incorporated by reference as if set forth in full.

157. On September 21, 2006, Abhyanker and Sood and Monsoon Company (previously known as Big Circle Media) entered into a valid and enforceable written Independent Contractor Agreement and a valid and enforceable Non-Disclosure Agreement. Pursuant to the agreements, Sood and Monsoon Company were to provide software development work in connection with, among other things, Abhyanker's Nextdoor Trade Secrets. The agreements required Sood and Monsoon Company to keep all information and materials relating to the engagement confidential and prohibited Sood and Monsoon Company from disclosing such information and materials to third parties. These agreements also required Sood and Monsoon to maintain the confidentiality of any confidential and proprietary information whether or not such information rose to the level of being a trade secret.

158. Abhyanker performed all of his obligations under the Independent Contractor Agreement and Non-Disclosure Agreement.

159. Sood and Monsoon Company breached the Independent Contractor Agreement and the Non-Disclosure Agreement by failing to adhere to the confidentiality provisions in both agreements and disclosing Abhyanker's Nextdoor Trade Secrets and confidential and proprietary non-trade secret information to Janakiraman and Nextdoor.com.

160. Sood's and Monsoon Company's aforesaid breach has caused and continues to cause Abhyanker damages and irreparably injury.

**THIRD COUNTERCLAIM**
**BREACH OF ORAL CONTRACT**
**(Against Benchmark Capital)**

161. Paragraphs 1 – 160, above, are realleged and incorporated by reference as if set forth in full.

162. On or around June 20, 2007, Abhyanker and Benchmark Capital entered into a valid and enforceable oral contract. Pursuant to the terms of that oral contract, Abhyanker agreed to disclose his Nextdoor Trade Secrets to Benchmark Capital to allow Benchmark Capital to evaluate them solely for investment purposes in exchange for Benchmark Capital's agreement to keep Abhyanker's Nextdoor Trade Secrets strictly confidential and to limit any and all use of such information to Benchmark's evaluation for investment purposes. The confidentiality agreement also required Benchmark to maintain the confidentiality of any confidential and proprietary information whether or not such information rose to the level of being a trade secret.

163. Abhyanker performed all of his obligations under the oral contract with Benchmark Capital.

164. Benchmark Capital breached the oral contract by disclosing Abhyanker's Nextdoor Trade Secrets and confidential and proprietary non-trade secret information to Nextdoor.com and its founders, Janakiraman and Tolia, and inducing and encouraging Nextdoor.com and its founders to misappropriate Abhyanker's Nextdoor Trade Secrets.

165. Benchmark Capital's aforesaid breach has caused and continues to cause Abhyanker damages and irreparably injury.

**FOURTH COUNTERCLAIM**
**INTENTIONAL INTERFERENCE WITH CONTRACT**
**(Against Nextdoor.com and Prakesh Janakiraman)**

166. Paragraphs 1 – 65, above, are realleged and incorporated by reference as if set forth in full.

167. At all times relevant herein, there existed an Independent Contractor Agreement and Non-Disclosure Agreement between Abhyanker and Sood and Monsoon Company. These agreements prohibited Sood and Monsoon Company from disclosing or using Abhyanker's Nextdoor Trade Secrets, as well as Abhyanker's confidential and proprietary non-trade secret information.

168. At all times relevant herein, there existed an oral contract between Abhyanker and Benchmark Capital. The oral contract prohibited Benchmark Capital from disclosing or using Abhyanker's Nextdoor Trade Secrets.

169. The existence of the contracts referenced in both paragraphs 167 and 168 above were known to Janakiraman and Nextdoor.com.

170. Despite their knowledge of such contracts, Janakiraman and Nextdoor.com proceeded to ask and persuade Benchmark Capital, Sood, and Monsoon Company to disclose Abhyanker's Nextdoor Trade Secrets, as well as Abhyanker's confidential and proprietary non-trade secret information, to them.

171. As a result of Janakiraman's and Nextdoor.com's actions, Benchmark Capital, Sood, and Monsoon Company proceeded to breach their respective contractual agreements with Abhyanker by disclosing Abhyanker's Nextdoor Trade Secrets, as well as Abhyanker's confidential and proprietary non-trade secret information, to Janakiraman and Nextdoor.com.

172. Janakiraman's and Nextdoor.com's aforesaid acts were willful, fraudulent, and malicious, thereby entitling Abhyanker to an award of punitive damages.

173. Janakiraman's and Nextdoor.com's aforesaid interference has caused and continues to cause Abhyanker damages and irreparably injury.

**PRAYER FOR RELIEF**

WHEREFORE, Abhyanker prays for judgment against Counterdefendants as follows:

(i) that Nextdoor.com take nothing by its Complaint;

(ii) that Nextdoor.com's Complaint be dismissed with prejudice;

(iii) that Abhyanker be awarded his costs of suit and attorneys' fees;

(iv) that all Counterdefendants be preliminarily and permanently enjoined from further disclosing or using Abhyanker's Nextdoor trade secrets, as well as Abhyanker's confidential and proprietary non-trade secret information, including, but not limited to, the nextdoor.com website and domain name;

(v) that the Court order Nextdoor.com to transfer the nextdoor.com domain name to Abhyanker and order and direct VeriSign, Inc., the domain name registry for the nextdoor.com domain name, to change the registrar of record for the nextdoor.com domain name to a registrar selected by Abhyanker;

(vi) on his trade secret misappropriation claim, that Abhyanker recover damages for his actual loss caused by the misappropriation;

(vii) on his trade secret misappropriation claim, that Abhyanker recover for the unjust enrichment caused by Counterdefendants' misappropriation;

(viii) on his trade secret misappropriation claim, that Abhyanker recover a reasonable royalty to the extent neither damages nor unjust enrichment are provable;

(ix) on his trade secret misappropriation claim, that Abhyanker recover exemplary damages;

(x)

(xi) on his breach of contract claims, that Abhyanker recover general and compensatory damages in an amount to be ascertained and proven at trial;

(xii) on his interference with contract claim, that Abhyanker recover general and compensatory damages;

(xiii) on his interference with contract claim, that Abhyanker recover punitive damages; and

(xiv) that the Court order such further relief as it deems just and proper.

**DEMAND FOR A JURY TRIAL**

Abhyanker hereby demands a trial by jury on both Nextdoor.com's claims in the Complaint and his Counterclaims.

Dated: January 10, 2013

Respectfully submitted,

LEGALFORCE RAJ ABHYANKER, P.C.

By ______________________
Bruno W. Tarabichi
Kuscha Hatami
Attorneys for Defendant
Raj Abhyanker