1  Harpreet S. Walia, Esq. (SBN 176136)
   Lisa M. Chapman, Esq. (SBN 118113)
2  ROYSE LAW FIRM, PC
   1717 Embarcadero Road
3  Palo Alto, California   94303
   Telephone:   (650) 813-9700
4  Facsimile:   (650) 813-9777
   E-Mail:  hwalia@rroyselaw.com
5          lchapman@rroyselaw.com

6  Attorneys for Counterdefendant SANDEEP SOOD and
7  MONSOON ENTERPRISES, INC., a California corporation

8                  UNITED STATES DISTRICT COURT

9                NORTHERN DISTRICT OF CALIFORNIA

10                   SAN FRANCISCO DIVISION

11

12 NEXTDOOR.COM, INC., a Delaware         Case No.: 3:12-cv-05667-EMC
   corporation,
13
              Plaintiff,
14
       v.                               **COUNTERDEFENDANTS SANDEEP SOOD
15                                       AND MONSOON ENTERPRISES, INC'S
   RAJ ABHYANKER, an individual,         MEMORANDUM OF POINTS AND
16                                       AUTHORITIES IN SUPPORT OF MOTION
              Defendant.                 TO DISMISS COUNTERCLAIMS**
17

18 RAJ ABHYANKER, an individual,         Complaint Filed:        November 5, 2012
19            Counterclaimant,           Countercomplaint Filed: January 10, 2013

20      v.
                                         Date:      May 2, 2013
21 NEXTDOOR.COM, INC., a Delaware        Time:      1:30 PM
   corporation; PRAKASH JANAKIRAMAN, an  Judge:     Honorable Edward M. Chen
22 individual; BENCHMARK CAPITAL
   PARTNERS VII, L.P., a Delaware limited
23 partnership; BENCHMARK CAPITAL
   MANAGEMENT CO. VII LLC, a Delaware
24 limited liability company; SANDEEP SOOD, an
   individual; MONSOON COMPANY, an unknown
25 business entity, and DOES 1-50, inclusive,

26            Counterdefendants.

27

28

{00013042;1}

## I.  INTRODUCTION

Defendant and Counterclaimant Raj Abhyanker ("Abhyanker") brings this action against Counterdefendants Sandeep Sood ("Sood") and Monsoon Enterprises, Inc., a California corporation (erroneously sued herein as Monsoon Company, an unknown business entity) ("Monsoon")[1] for trade secret misappropriation and breach of written contract arising from a business, Fatdoor, Inc. ("Fatdoor") that Abhyanker once allegedly worked for and was subsequently fired from and which was ultimately acquired by Google, Inc.

Aside from the glaring issue of standing, Abhyanker's claims are replete with mere speculation. At one point, Abhyanker concludes that because Sood was not selected to be part of Fatdoor's founding team (as a result of, according to Abhyanker's own admission, Sood's "outspoken disagreement with Fatdoor's chosen direction and technology") that Sood was "left disgruntled with a clear axe to grind." *See* Counterclaim ¶113.  We are asked to conclude that Sood was so upset about not being chosen to be part of a business model that he clearly did not believe in that he must have disclosed trade secrets.  Such leaps of conclusion stretch the limitations of plausibility and certainly don't comport to standards of pleading articulated under *Twombly* and *Iqbal*.

Beyond just resting his claims on mere speculation, there are independent bases upon which the Counterclaim should be dismissed. First, Abhyanker does not come close to alleging the facts necessary to state a claim for trade secret misappropriation. He has failed, *inter alia*, to identify the asserted trade secrets with the requisite level of specificity, to demonstrate if and how Sood or Monsoon had access to Abhyanker's purported trade secrets or what purported trade secrets Sood or Monsoon allegedly disclosed.  Second, the only "trade secret" that Abhyanker actually does allege that Plaintiff and Counterdefendant Nextdoor.com, Inc. ("Nextdoor") used -- the idea for a neighborhood-based social networking website called "Nextdoor" -- *was publicly disclosed in a patent application Abhyanker filed that was published before the alleged misappropriation.*  Thus, any trade secret protection that could have existed in that idea was long since surrendered.  Third, Abhyanker's claim for breach of contract

---

[1] Since its formation, Sood has been a shareholder and officer of Monsoon Enterprises, Inc. Monsoon Enterprises, Inc. was formerly known as Big Circle Media, Inc.

COUNTERDEFENDANTS SANDEEP SOOD AND MONSOON ENTERPRISES, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS COUNTERCLAIMS

1    does not state any sort of viable claim that can comport with the standards required under *Twombly* or

2    *Iqbal*. Fourth, Abhyanker has asserted his breach of written contract counterclaim against *only* Sood and

3    Monsoon, neither of who was a party to the original action.   Abhyanker may only assert counterclaims

4    against Sood and Monsoon that he also asserts against the original plaintiff in this action –

5    Nextdoor.com.   Because the Counterclaim is fatally deficient in numerous respects, both claims against

6    Sood and Monsoon should be dismissed *with prejudice*.

7                                 **II.   FACTUAL BACKGROUND**

8         **A.    Nextdoor/Fatdoor.**

9         Abhyanker alleges that he developed the "Nextdoor" concept for a private online neighborhood

10   social network by September 2006.  Dkt. 16 ("Counterclaim") ¶ 108.  While Abhyanker now alleges that

11   the Nextdoor concept was entirely separate from his "Fatdoor" concept (Counterclaim ¶ 110),

12   Abhyanker's previous complaints filed in Santa Clara County Superior Court Case No. 1-11-CV-212924

13   (the "State Court Action") make clear that they were one and the same.  Indeed, Abhyanker's previous

14   allegations explain that he formed an entity called Fatdoor, Inc. to pursue what he described as the

15   "Nextdoor/Fatdoor" concept, characterizing the "Nextdoor/Fatdoor business model" as "neighborhood

16   social networking."  *See* Request for Judicial Notice ("RJN") Exhibit 2 ("FAC") ¶¶ 3, 21.  Abhyanker

17   alleged that he was working on behalf of his then-employer Fatdoor in developing this Nextdoor/Fatdoor

18   concept, and that Fatdoor owned the resulting intellectual property.  *See, e.g., id.* ¶¶ 3, 20, 21, 23, 107,

19   109, 111.

20        Abhyanker publicly disclosed this Nextdoor/Fatdoor concept by filing a patent application that

21   was published for public view at least as early as September 20, 2007.  RJN Exhibit 3.  This publication

22   occurred at least three years before any alleged disclosure by Sood and nearly four years before the

23   public launch of Nextdoor.com's website.  Counterclaim ¶¶ 134-136, 147.

24        Abhyanker was terminated by Fatdoor's board of directors in July 2007.  FAC ¶ 107.  Thereafter,

25   Fatdoor abandoned the idea of a neighborhood social networking website and transitioned into a local

26   website for mothers to plan events, changing its name to "Center'd." which later was changed to

27   DealMap. *Id.* ¶ 111.  In August 2011, DealMap, along with all of its intellectual property, was acquired

28

COUNTERDEFENDANTS SANDEEP SOOD AND MONSOON ENTERPRISES, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION TO DISMISS COUNTERCLAIMS

1    by Google.  *Id.*  Notably, Abhyanker does not allege -- in the Counterclaim or elsewhere -- that he ever

2    reacquired any intellectual property relating to the Nextdoor/Fatdoor concept.

3           **B.**    **Abhyanker's State Court Litigation.**

4           On November 10, 2011, Abhyanker filed his initial complaint in the State Court Action.  In

5    addition to suing Nextdoor.com, he also named as defendants several of its founders and investors,

6    including Counterdefendant herein, Benchmark Capital ("Benchmark").  *See* RJN Ex. 1 ("Complaint").

7    Abhyanker filed a First Amended Complaint in that action on December 6, 2011.  *See* FAC.  Neither

8    Sood nor Monsoon was named defendants in either the Complaint or the First Amended Complaint,

9    even though the thrust of Abhyanker's allegations in the State Court Action mirrored Abhyanker's

10   Counterclaim.

11          In contrast to his Counterclaim here, Abhyanker's pleadings in the State Court Action

12   acknowledged that Google, Inc. (not Abhyanker) owns any intellectual property at issue.  *See* Complaint

13   ¶ 5; FAC ¶ 23 ("[t]he entire basis for Nextdoor.com, Inc.'s business rests on these stolen and

14   misappropriated materials now owned by Google, Inc. through its acquisition of the Nextdoor/Fatdoor

15   patent portfolio"); *see also* FAC ¶ 169 ("Google, Inc. now owns the rights to the original technology of

16   the Nextdoor/Fatdoor concept").  Abhyanker voluntarily dismissed his First Amended Complaint after

17   defendants filed demurrers thereto.

18          **C.**    **Instant Action.**

19          Nextdoor.com brought forth the instant action against Abhyanker before this Court seeking

20   declaratory relief and trademark infringement arising from Abhyanker's use of the NEXTDOOR mark.

21   *See generally* Dkt. No. 1.  Neither Sood nor Monsoon have been named or even mentioned in

22   Nextdoor.com's Complaint.  Abhyanker responded thereto with his Counterclaim alleging various

23   claims against Nextdoor.com and several nonparties to the original action, namely Janakiraman, Sood,

24   Monsoon, and Benchmark.  *See generally* Dkt No. 16.  Most of these claims are merely restatements of

25   earlier claims made in the State Court Action with certain convenient recharacterizations.  Chief among

26

27

28

{00013042;1}                                    -4-

1    the recharacterization is that Fatdoor and Nextdoor were "separate" businesses and that he, not Google,

2    owns the Nextdoor Trade Secrets[2].

3        Abhyanker makes essentially three allegations against Sood and Monsoon in his Counterclaim.

4    First, that he hired Monsoon to provide certain software and website development services pursuant to

5    an alleged written contract in late 2006.  Counterclaim ¶¶ 109-110.  During the approximately 30 days

6    from the inception of the contract to when Abhyanker claims to have placed the Nextdoor concept on

7    hold, Abhyanker alleges to have provided Monsoon and Sood  access to certain concept and trade secret

8    information for his Nextdoor concept- presumably the "Nextdoor Trade Secrets").  Second, Abhyanker

9    claims that three years later, Sood responded to a survey circulated by Nextdoor.com.  Counterclaim ¶¶

10   134-135.  Third, that at some point after his response to the survey (and at a time when Nextdoor.com

11   had already developed the core of their business model), Sood disclosed the alleged trade secrets to

12   Nextdoor.com.  Counterclaim ¶¶ 136, 144.

13                                **III.   ARGUMENT**

14       A motion to dismiss should be granted if the plaintiff is unable to articulate facts establishing a

15   claim to relief that is "plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173

16   L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167

17   L.Ed.2d 929 (2007)); *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012).  "[A]

18   plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels

19   and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*,

20   550 U.S. at 555 (citations omitted).  The complaint must allege facts which, when taken as true, raise

21   more than a speculative right to relief.  *Id.*  The facts must "nudge [the] claims across the line from

22   conceivable to plausible."  *Id.* at 570.  *Twombly* serves to remind the district courts that they are entitled

23   to "insist upon some specificity in pleading before allowing a potentially massive factual controversy to

24   proceed."  *Facebook, Inc. v. Power Ventures, Inc.*, 08-5780, 2009 WL 3429568, at *2 (N.D. Cal. Oct.

25   22, 2009).

26   _____

27   [2] Additionally, Abhyanker now sues Sood and Monsoon though he had previously alleged in the State Court Action that somehow the very
     same "Next Door Trade Secrets" alleged to have been disclosed to Nextdoor.com in the Counterclaim had been disclosed without the

28   involvement of Sood or Monsoon.

COUNTERDEFENDANTS SANDEEP SOOD AND MONSOON ENTERPRISES, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION TO DISMISS COUNTERCLAIMS

1    Where one of multiple theories pled in support of a cause of action is deficient, courts should

2    dismiss those theories separately. *See, e.g., Architectural Mailboxes, LLC v. Epoch Design, LLC,* Case

3    No. 10-CV-974, 2011 U.S. Dist. LEXIS 46180, at *18 (S.D. Cal. Apr. 28, 2011) (dismissing Lanham

4    Act unfair competition claim to the extent it relied upon an alternate and deficient false designation of

5    origin theory while allowing this same claim to go forward on a false advertising theory); *Burch v.*

6    *GMAC Mortgage, LLC,* No. C-09-4214, 2010 U.S. Dist. LEXIS 23659, at *5 n.1 (N.D. Cal. Mar. 15,

7    2010) (dismissing Truth in Lending Act claim to the extent it relied upon a deficient failure to deliver

8    theory while allowing this same claim to go forward on a second alternate theory); *Camplaie v. BAC*

9    *Home Loans Servicing, LP,* 706 F. Supp. 2d 1029, 1055 (E.D. Cal. 2009) (granting motion to dismiss as

10   to certain specific theories plead in support of a cause of action).

11       In ruling on a motion to dismiss, the Court need not accept as true any conclusory allegations,

12   legal conclusions, unwarranted deductions of fact or unreasonable inferences. *See Clegg v. Cult*

13   *Awareness Network,* 18 F.3d 752, 754-55 (9th Cir. 1994). The Court may also disregard allegations that

14   are contradicted by documents attached to the complaint, incorporated by reference, or otherwise

15   judicially noticeable. *See Shwarz v. United States,* 234 F.3d 428, 435 (9th Cir. 2000); *Steckman v. Hart*

16   *Brewing Inc.,* 143 F.3d 1293 (9th Cir. 1988); *Coto Settlement v. Eisenberg,* 593 F.3d 1031, 1038 (9th

17   Cir. 2010); *Parrino v. FHP, Inc.,* 146 F.3d 699, 705-06 (9th Cir. 1998); *Intri-Plex Technologies, Inc. v.*

18   *Crest Grp., Inc.,* 499 F.3d 1048, 1052 (9th Cir. 2007).

19       Nor must the Court give credence to allegations that are contradicted by allegations in the

20   plaintiff's prior pleading. *See, e.g., Adams v. Vivo Inc.,* C 12-01854, 2012 U.S. Dist. LEXIS 109199, at

21   *7 (N.D. Cal. Aug. 3, 2012) ("The district court will not accept as true pleading allegations that are

22   contradicted by facts that can be judicially noticed or by other allegations or exhibits attached to or

23   incorporated in the pleading"); *Bauer v. Goss,* C 12-00876, 2012 U.S. Dist. LEXIS 95334, at *9-*10

24   (N.D. Cal. July 10, 2012) (dismissing complaint where plaintiff attempted to contradict allegations in a

25   previous pleading).

26

27

28

COUNTERDEFENDANTS SANDEEP SOOD AND MONSOON ENTERPRISES, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION TO DISMISS COUNTERCLAIMS

**A.    Abhyanker Admittedly Does Not Own Any of the Purported Trade Secrets Asserted Here.**

Under the California Uniform Trade Secrets Act ("CUTSA"), ownership of a valid trade secret is a prerequisite to a claim for trade secret misappropriation. *See, e.g., California Police Activities League v. California Police Youth Charities, Inc.*, 2009 WL 537091, at *4 (N.D. Cal. Mar. 3, 2009) (dismissing claim for failure to allege ownership). Abhyanker fails to allege facts in support of this threshold element.

While Abhyanker now conclusorily alleges that he owns a laundry list of vaguely identified trade secrets related to the Nextdoor/Fatdoor business concept (Counterclaim ¶ 149), that conclusion cannot be credited because it is flatly contradicted by Abhyanker's own previous concessions in the State Court Action. In the State Court Action, Abhyanker candidly admitted that he does not own any of the Fatdoor/Nextdoor trade secrets—instead explaining that they were acquired by Google through its acquisition of Fatdoor, Abhyanker's previous employer. Specifically, Abhyanker alleged in both his FAC in the State Court Action that "[t]he entire basis for Nextdoor.com, Inc.'s business rests on these stolen and misappropriated materials *now owned by Google, Inc.* through its acquisition of the Nextdoor/Fatdoor patent portfolio." FAC ¶ 23 (emphasis added). Abhyanker further explained that, having purchased the assets of the successors to Fatdoor, Inc., "Google, Inc. now owns the rights to the original technology of the Nextdoor/Fatdoor concept" (FAC ¶ 169) and that he attempted to bring Google into his lawsuit as a plaintiff. *Id.* ¶ 163. As Abhyanker's prior pleadings made clear, any trade secrets, including potential use of the domain name "www.nextdoor.com," were the property of Fatdoor, Inc., and now the property of Google.

Abhyanker's Counterclaim is a transparent attempt to avoid the effect of these previous concessions by pursuing his claims in a different forum. But Abhyanker cannot escape his previous admissions. They are binding, and the Court should not accept Abhyanker's revisionism. *See, e.g., Falcocchia*, 709 F. Supp. 2d at 887 (dismissing based on contradictory allegations in previous state court filings); *Tripati*, 2005 U.S. Dist. LEXIS 38093, at *6 (same); *Bauer*, 2012 U.S. Dist. LEXIS 95334, at *8-*10 (dismissing claims based on contradictions between complaints). *Bauer* is instructive on this point. In that case, the plaintiff had alleged in its original complaint that it entered into a written

agreement with the defendant for the provision of legal services. *Id.* at *8. That agreement contained a forum selection clause designating Washington as the proper forum for any dispute. Following a motion to dismiss the California action for improper venue, the plaintiff filed an amended complaint contending that the defendant was *not* a party to any agreement with the plaintiff. *Id.* at *8-*9. The court refused to credit these allegations, explaining that they were contradicted by the plaintiff's original complaint, and dismissed the case. *Id.*

Here, Abhyanker's previous allegations doom his trade secret claim. Abhyanker's own allegations confirm that he does not own any of the trade secrets asserted here and did not own them at the time of the alleged misappropriation.[3] To the extent any claims could exist, they do not belong to Abhyanker. As such, Abhyanker lacks standing and his trade secret and intentional interference claims should be dismissed with prejudice.

## B.    Abhyanker Has Not Adequately Alleged Trade Secret Misappropriation.

Even if Abhyanker had standing, his misappropriation claim would still fail because he has failed to allege even the most basic facts in support of the elements of such a claim. Those elements are: (1) ownership of a valid trade secret; (2) that the defendant acquired, disclosed, or used the trade secret through improper means; and (3) that the defendant's actions have harmed the plaintiff. *See, e.g., Nexsales Corp. v. Salebuild, Inc.*, 2012 WL 216260, at *2 (N.D. Cal. Jan. 24, 2012) (Chen, J.). Abhyanker must plead *facts* in support of these elements—not just conclusions. *Id.* (conclusory allegations that "fail[] to identify the information that was taken, and do[] not provide facts demonstrating that the information constitutes a trade secret" are insufficient to defeat a motion to dismiss); *Bespaq Corp. v. Haoshen Trading Co.*, 2005 WL 14841, at *4 (N.D. Cal Jan. 3, 2005) (bare allegation that the defendant misappropriated "customer lists," "pricing information," and "marketing strategies" too conclusory to state a claim for trade secret misappropriation). Abhyanker has failed as to all three elements.

---

[3] Indeed, Sood is not alleged to have disclosed anything to Nextdoor.com until end of 2010, several years after Abhyanker was fired. Counterclaim ¶¶ 134-36.

1        **1.    Abhyanker Has Not Sufficiently Identified Any Trade Secrets.**

2            It is black letter law that a plaintiff must reasonably identify its trade secrets to survive a motion

3    to dismiss.  Following the California Court of Appeal, the Northern District has explained that:

4            Before a defendant is compelled to respond to a complaint upon claimed
             misappropriation or misuse of a trade secret and to embark on discovery
5            which may be both prolonged and expensive, the complainant should
             describe the subject matter of the trade secret with sufficient particularity
6            to separate it from matters of general knowledge in the trade or of special
             knowledge of those persons who are skilled in the trade, and to permit the
7            defendant to ascertain at least the boundaries within which the secret lies.

8    *Farhang v. Indian Institute of Technology*, 08–02658, 2010 WL 2228936, at *13 (N.D. Cal. June 1,

9    2010) (citing *Diodes, Inc. v. Franzen,* 260 Cal. App. 2d 244, 253 (1968)).

10           A trade secret is statutorily defined as "information, including a formula, pattern, compilation,

11   program, device, method, technique, or process, that: (1) derives independent economic value, actual or

12   potential, from not being generally known to the public or to other persons who can obtain economic

13   value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the

14   circumstances to maintain its secrecy."  Cal. Civ. Code § 3426.1.  Under the standard articulated in

15   *Farhang*, enough has to be pled for the Court to assess whether the plaintiff plausibly can claim

16   ownership of a valid trade secret under this definition.  Doing so requires more than conclusory labels,

17   buzz words, and vague descriptions.  *Farhang*, 2010 WL 2228936, at *14 ("business models and

18   implementations" of mobile data access system insufficiently specific to state a misappropriation claim);

19   *Diodes,* 260 Cal. App. 2d at 252 ("secret process" for the manufacture of diodes insufficient to state a

20   claim); *Bespaq*, 2005 WL 14841, at *4 (allegations that defendant misappropriated "customer lists,"

21   "pricing information," and "marketing strategies" regarding dollhouse furniture too conclusory to state a

22   claim).

23           Abhyanker's allegations do not come anywhere near this standard.  Instead, all he offers are

24   labels with no context and no explanation of what was secret and valuable within the broad terms

25   included within his definition of Nextdoor Trade Secrets.  *See* Counterclaim ¶ 149 (alleging that Sood

26   and Monsoon misappropriated and disclosed "a wide variety of information" including "key product

27   details," "algorithms," "business plans", "product concepts," "methods," "works of authorship,"

28   "instrumentalities").  Nothing even approaching a concrete, viable trade secret is alleged.

While Abhyanker need not fully specify the metes and bounds of his alleged trade secrets in a public complaint, he is obligated to provide enough details to put Sood and Monsoon on notice of precisely what it is they are accused of misappropriating. Thus, although he need not submit the exact specifications of an algorithm (or concept, method, plan, or instrumentality) with his complaint, he must at least explain what algorithm(s) he is referring to, and why it was valuable and secret. Because Abhyanker has failed to do so, his Counterclaim should be dismissed.

### 2.   Abhyanker Has Failed to Allege How Sood or Monsoon Wrongfully Acquired or Disclosed His Trade Secrets.

Trade secret misappropriation requires either (1) the acquisition of a trade secret by improper means, or (2) the use or disclosure of a trade secret known to have been acquired by improper means. Cal. Civ. Code 3246.1(b)(1) and (2). Abhyanker fails to allege facts explaining how Sood or Monsoon acquired or used his alleged trade secrets. Again, *facts* are required to support these essential elements of the claim. *See Pellerin v. Honeywell Int'l Inc.*, 11-CV-01278, 2012 U.S. Dist. LEXIS 94635, at *11 (S.D. Cal. July 6, 2012). Bare conclusions and unwarranted inferences -- which are all the Counterclaim offers -- plainly are insufficient. *Id.*

First, Abhyanker fails to allege that Sood or Monsoon acquired the trade secrets by improper means. Abhyanker acknowledges that he voluntarily provided information to Sood and Monsoon sometime in September 2006. Counterclaim ¶ 109. Setting aside the question of what was provided and if it amounted to protectable trade secrets[4], the Counterclaim fails to plausibly allege, other than unwarranted inference, any wrong doing by Sood or Monsoon in acquiring any information from Abhyanker.[5]

Second, Abhyanker conclusively alleges Sood and Monsoon disclosed the Nextdoor Trade Secrets to Nextdoor.com and Janakiraman. Counterclaim ¶¶ 136, 153. But there is not a single fact pled in the Counterclaim to warrant this conclusion. As the Counterclaims is devoid of any allegations of fact

---

[4] As alleged in Section III B above, Abhyanker has failed to specify the alleged trade secrets with any level of required specificity.

[5] That Sood and Monsoon had some long elaborate and forward looking plan to obtain the alleged trade secrets, hold them for years and then disclose them to an acquaintance for no apparent financial gain or benefit other than to destroy Abhyanker's business.

1  (even if true) that would support the finding that Nextdoor.com is using any of Abhyanker's trade

2  secrets, there is no basis to even speculate that Sood or Monsoon "disclosed" anything to anyone. As to

3  the alleged disclosure by Sood (who as admitted by Abhyanker worked with or for Abhyanker for a brief

4  period in 2006 (Counterclaim, ¶109)), the Counterclaim merely alleges that Sood and Janakiraman

5  attended Berkeley and are friends (*Id.* ¶ 127) and that Sood participated in a survey Nextdoor.com sent

6  to its friends and family members in 2010 to gather their feedback regarding the Company's concept for

7  an online neighborhood social network. *Id.* ¶¶ 134-137. It is important to note here that by alleging that

8  Nextdoor.com conducted this survey, Abhyanker necessarily concedes that Nextdoor.com had *already*

9  *come up with the concept for an online neighborhood-based social network* prior to any disclosure of

10  trade secrets that Sood may have made in his survey response or thereafter. *See* ¶ 133-135. Further,

11  Abhyanker tellingly does not allege that Sood actually made any such unlawful disclosure in his survey

12  response, much less what he purportedly disclosed. *Id.* Based on these separate innocuous facts and

13  Sood's alleged "downplay[ing]" of his relationship with Janakiraman, Abhyanker leaps to the

14  conclusion that "Sood was trying to conceal his wrongful conduct of disclosing Abhyanker's Nextdoor

15  Trade Secrets to Janakiraman and Nextdoor.com." Counterclaim ¶¶ 128, 130. In essence, Abhyanker

16  asks the Court to conclude that because Sood and Janakiraman were friends, and because Janakiraman

17  was employed by Nextdoor.com, disclosure was inevitable. However, California courts reject the

18  doctrine of inevitable disclosure even in the employment context, let alone among friends. *See Les*

19  *Concierges, Inc. v. Robeson*, C-09-1510, 2009 U.S. Dist. LEXIS 39414, at *4 (N.D. Cal. Apr. 27, 2009)

20  ("a threat of misappropriation cannot, as a matter of California law, be inferred from the fact Robeson,

21  upon voluntarily terminating his employment with LC US, immediately began working for a direct

22  competitor and appears to be performing for his new employer the same or similar job duties").

23      Further, the mere allegations made herein do no rise to the level of pleading that is "plausible on

24  its face" within the meaning of *Iqbal.* For example, Abhyanker alleges that Sood and Monsoon

25  "improperly induced and encouraged Nextdoor.com and its founders to use Abhyanker's Nextdoor

26  Trade Secrets." Counterclaim ¶ 153. In the very next paragraph, Abhyanker claims that Janakiraman

27  and Nextdoor.com induced Sood and Monsoon "to breach the confidentiality agreements and obligations

28  to Abhyanker by persuading them to disclose Abhyanker's Nextdoor Trade Secrets to them."

1   Counterclaim ¶ 154.  However, no facts are provided to support either of these two contradictory

2   conclusions. To compound this failure, by Abhyanker's own admission, as well as his admission in the

3   State Court Action, there are sources other than Sood and Monsoon from whom Nextdoor.com could

4   have received the alleged "Nextdoor Trade Secrets."  By way of example, Abhyanker alleges that

5   Janakiraman and Nextdoor.com encouraged Benchmark to improperly disclose Abhyanker's trade secret

6   information.[6]"  Counterclaim ¶ 154.  As such, Abhyanker's allegation that Monsoon and Sood disclosed

7   the purported trade secrets to Nextdoor.com is simply mere speculation on his part. Abhyanker has thus

8   failed in every respect to allege facts demonstrating that Sood or Monsoon unlawfully acquired, used or

9   disclosed his purported trade secrets.

10  ### 3.    Abhyanker Has No Plausible Theory of Damages.

11          California law provides that a plaintiff must establish that he has been directly harmed by the

12  alleged misappropriation. *Computer Sciences Corp. v. Computer Assocs. Int'l, Inc.*, CV 98-1374, 1999

13  U.S. Dist. LEXIS 21803, at *42 (C.D. Cal. Aug. 13, 1999).  Abhyanker's own allegations in the State

14  Court Action (discussed above) make clear that he did not own the trade secrets at issue or even work for

15  the company (Fatdoor and its successors) that did own them at the time of the purported

16  misappropriation.  He is thus hard pressed to argue that he suffered harm from the theft of trade secrets

17  he does not own, either then or now.  Moreover, as the Counterclaim is devoid of any allegations of fact

18  (even if true) that would support the finding that Nextdoor.com is using any of Abhyanker's trade

19  secrets, there can be no basis for any damages against Sood or Monsoon.  Because Abhyanker has failed

20  to allege facts in support of all three elements of his misappropriation claim, it should be dismissed.

21  ### C.    Any Trade Secret Rights in the Nextdoor Name and Concept Disappeared When
22  ### They Were Publicly Disclosed.

23          Regardless of the specificity of his allegations, Abhyanker could never base his claim for

24  misappropriation on acquisition or use of the concept of an online neighborhood-based social

25  networking service called "Nextdoor," because Abhyanker disclosed that concept in a patent application

26

27  ---
    [6] Abhyanker additionally claims that Benchmark "improperly induced and encouraged Nextdoor.com and its founders to use "Abhyanker's

28  Nextdoor Trade Secrets." *See* Counterclaim ¶ 152.

COUNTERDEFENDANTS SANDEEP SOOD AND MONSOON ENTERPRISES, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION TO DISMISS COUNTERCLAIMS

he filed in November 2006 and which was published in September 2007. This was nearly six years before Nextdoor launched its service (Counterclaim ¶¶ 145-147) and well in advance of Sood's alleged disclosure of the concept to Nextdoor.com and Janakiraman, which supposedly took place in October of 2010. *Id.* ¶¶ 134-136. As noted above, this is the only purported trade secret that Abhyanker describes in anything but the most conclusory terms, as well as the only one that he actually alleges Nextdoor.com or Janakiraman used. *See, e.g.*, Counterclaim ¶ 149.

The law is clear that disclosure of a trade secret in a patent application releases that information to the public and, accordingly, extinguishes any trade secret protection that might exist. *See, e.g., Forcier v. Microsoft Corp.*, 123 F. Supp. 2d 520, 528 (N.D. Cal. 2000) ("all of Forcier's alleged trade secrets had been placed in the public domain either in patents or in patent applications . . . more than a year before Microsoft purchased the technology from Aha! . . . Consequently, the element of secrecy was gone by the time that Microsoft acquired the information, the 'trade secret' status was extinguished"); *Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp.*, 587 F.3d 1339, 1355-56 (Fed. Cir. 1999) (applying California law and holding that disclosure of trade secret information in a foreign patent eliminates any trade secret protection).

Abhyanker's published patent application described in specific terms a map-based, neighborhood social network in which users could post information about themselves and their communities. RJN Ex. C (*see, e.g.*, Abstract and Figures 1, 8, 9). While most of the figures called this system Fatdoor, Abhyanker explained that one embodiment of that idea was to be called "nextdoor.com." *Id.* Ex. C at p.56, ¶ 236. There can be no dispute from the face of this judicially noticeable patent application that the concept of a neighborhood social networking website called "Nextdoor" was disclosed years in advance of Nextdoor's adoption of the "Nextdoor" name for a social networking website, even as alleged by Abhyanker. Counterclaim ¶¶ 138, 145-147 (alleging that the Company in October 2010 operated as "'Neighborly' prior to misappropriating Abhyanker's Nextdoor name and mark"; and that the Company acquired the domain "nextdoor.com" in February 2011). Sandeep or Monsoon could not have misappropriated or disclosed any trade secrets, as a matter of law, because none existed.

1    Because there was no trade secret in the Nextdoor name or business concept to protect, this Court

2    should dismiss Abhyanker's trade secret misappropriation claim with prejudice to the extent that it is

3    based upon the purported theft of this name and concept.

4         **D.**     **Abhyanker Has Failed To State A Claim for Breach of Written Contract.**

5              **1.**     **Abhyanker's Allegations Fail to Rise Above the Level of Mere Speculation**

6         The essential elements for a breach of a contract claim are (1) a valid contract between plaintiff

7    and defendant; (2) plaintiff's performance or excuse for non-performance under the contract; (3)

8    defendant's breach of the contract; and (4) damage to plaintiff resulting from the breach. *Acoustics, Inc.*

9    *v. Trepte Constr. Co.*, 14 Cal. App. 3d 887, 913 (1971); *see also* CACI Jury Instruction No. 303: Breach

10   of Contract—Essential Factual Elements.  Here Abhyanker's allegations as to Sood and do not rise

11   beyond the speculative level required under *Iqbal* or *Twombly*.

12        First, as discussed in Section II, it is implausible that Abhyanker, in his individual capacity,

13   would have entered into a valid written contract with Sood or Monsoon[7]. It is clear from the State Court

14   Action that Abhyanker was acting as an agent of Fatdoor in the development of the Nextdoor concept.  It

15   is telling that Abhyanker  has failed to attach a copy of the alleged written agreement that could shed

16   light on the parties or the covenants and terms surrounding confidentiality if any and exceptions thereto.

17   Second, as discussed in Section III B. and C. above, Abhyanker has failed to allege any plausible

18   allegations that would support his claim that either Sood or Monsoon disclosed any information to

19   Janakiraman and Nextdoor.com.  Absent such a showing of disclosure, no breach by either Sandeep or

20   Monsoon could have occurred.  Moreover, as set forth in Section III B.2. above, by Abhyanker's own

21   admission, the disclosure of information to Janakiraman and Nextdoor.com could have been made by

22   parties other than Sood or Monsoon.   Lastly, as set forth in Section III C. above, even assuming that

23   Sood or Monsoon did disclose the information and that Nextdoor.com used such information- both of

24   which are specifically denied as argued herein- there is no plausible claim for damages. Given that

25   Abhyanker's own allegations in the State Court Action make clear that he did not own the trade secrets

26   _____

27   [7] It is also implausible that the alleged agreements would have been signed by both Monsoon and Sood.  Sood was simply an officer of Monsoon and as such would not have signed the documents in his personal capacity.  Moreover, the Counterclaim is void of any claim or

28   allegation for alter ego liability or other theory that would allow for a claim against Sood individually.

1    at issue, he is thus hard pressed to argue that he suffered harm from the theft of trade secrets he does not

2    own, either then or now.  Moreover, as the Counterclaim is devoid of any allegations of fact (even if

3    true) that would support the finding that Nextdoor.com is using any of Abhyanker's trade secrets, there

4    can be no basis for any damages against Sood or Monsoon.

**2.**    **Abhyanker May Not Bring a Breach Of Written Contract Counterclaim Solely Against Nonparty Sood and Monsoon**

7    "[A] party asserting a counterclaim may attempt to join non-parties to the lawsuit to defend

8    against the counterclaim." *United States ex rel. Branch Consultants, LLC v. Allstate Ins. Co.*, 265 F.R.D.

9    266, 270 (E.D. La. 2010) (citing Fed. R. Civ. P. 13(h)). However, "[a] counterclaim, at the very

10    minimum, must be asserted against one party that is *already in the lawsuit*." *Id.* (citing 6 CHARLES ALAN

11    WRIGHT, ET AL., FED. PRACTICE & PROC. § 1435 ("Rule 13(h) only authorizes the court to join

12    additional persons in order to adjudicate a counterclaim or cross-claim that is already before the court or

13    one that is being asserted at the same time the addition of a nonparty is sought. *This means that a*

14    *counterclaim or cross-claim may not be directed solely against persons who are not already parties to*

15    *the original action, but must involve at least one existing party. If it is, neither the counterclaim nor the*

16    *party to be added will be allowed in the action.*")) (emphasis added).

17    Here, Sood and Monsoon are the only parties against whom Abhyanker asserts the "breach of

18    written contract" counterclaim.  Counterclaim ¶ 156-160.  However, neither Sood nor Monsoon was an

19    original party to this lawsuit. *See* Dkt. No. 1.  Accordingly, Abhyanker's breach of written contract

20    counterclaim against either Sood or Monsoon cannot be allowed and must be dismissed on this basis

21    alone.

**IV.  CONCLUSION**

23    For the foregoing reasons, Abhyanker's claims for trade secret misappropriation and breach of

24    written contract against Counterdefendants Sood and Monsoon should be dismissed with prejudice.

25    Dated:   March 15, 2013           ROYSE LAW FIRM, PC

26

27                        By:_____

                          Harpreet S. Walia, Attorneys for Counterdefendants

28                           SANDEEP SOOD and MONSOON ENTERPRISES,

                          INC. (erroneously sued as MONSOON COMPANY)

COUNTERDEFENDANTS SANDEEP SOOD AND MONSOON ENTERPRISES, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS COUNTERCLAIMS