1  LAURENCE F. PULGRAM (CSB No. 115163)
   lpulgram@fenwick.com
2  JENNIFER L. KELLY (CSB No. 193416)
   jkelly@fenwick.com
3  CLIFFORD C. WEBB (CSB NO. 260885)
   cwebb@fenwick.com
4  FENWICK & WEST LLP
   555 California Street
5  San Francisco, CA  94104
   Telephone:    415.875.2300
6  Facsimile:    415.281.1350

7  Attorneys for Plaintiff and Counterdefendant
   NEXTDOOR.COM, INC. and Counterdefendant
8  PRAKASH JANAKIRAMAN

9                    UNITED STATES DISTRICT COURT

10                  NORTHERN DISTRICT OF CALIFORNIA

11                      SAN FRANCISCO DIVISION

12

13  NEXTDOOR.COM, INC., a Delaware        | Case No.: 3:12-cv-05667-EMC
    corporation,
14                                        | **NEXTDOOR.COM, INC. AND**
                                          | **PRAKASH JANAKIRAMAN'S NOTICE**
15                    Plaintiff,          | **OF MOTION AND MOTION TO**
                                          | **DISMISS FIRST AMENDED**
16          v.                            | **COUNTERCLAIMS AND STRIKE**
                                          | **AFFIRMATIVE DEFENSES**
    RAJ ABHYANKER, an individual,
17                                        |
                    Defendant.            | Date:      June 6, 2013
18                                        | Time:      1:30 p.m.
                                          | Judge:     Honorable Edward M. Chen
19  RAJ ABHYANKER, an individual,

20                    Counterclaimant,

21          v.

22  NEXTDOOR.COM, INC., a Delaware
    corporation; PRAKASH JANAKIRAMAN, an
23  individual; BENCHMARK CAPITAL
    PARTNERS, L.P., a Delaware limited
24  partnership; BENCHMARK CAPITAL
    MANAGEMENT CO. LLC, a Delaware limited
25  liability company; SANDEEP SOOD, an
    individual; MONSOON ENTERPRISES, INC., a
26  California corporation, and DOES 1-50,
    inclusive,
27
                    Counterdefendants.
28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

MOTION TO DISMISS AND STRIKE                          Case No. 3:12-cv-05667-EMC

**TABLE OF CONTENTS**

**Page**

NOTICE OF MOTION AND MOTION ................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ....................................................... 2

INTRODUCTION .................................................................................................................. 2

STATEMENT OF ISSUES TO BE DECIDED .................................................................... 4

FACTUAL BACKGROUND ................................................................................................. 4

  A. Abhyanker's Failed Nextdoor/Fatdoor Concept ................................... 4

  B. Nextdoor.com and Prakash Janakiraman ............................................. 7

  C. Abhyanker's Litigation Against Nextdoor.com ..................................... 8

  D. The Present Proceedings ......................................................................... 9

ARGUMENT ........................................................................................................................ 11

I. ANY TRADE SECRET RIGHTS IN THE NEXTDOOR NAME AND CONCEPT DISAPPEARED WHEN THEY WERE PUBLICLY DISCLOSED ................................................................................................... 13

II. ABHYANKER HAS NOT ADEQUATELY ALLEGED TRADE SECRET MISAPPROPRIATION. ......................................................................... 15

  A. Abhyanker Has Failed to Allege How Nextdoor.com or Janakiraman Wrongfully Acquired or Used His Trade Secrets. ................................. 16

    1. Abhyanker Has Failed to Allege Wrongful Acquisition. .............. 16

    2. Abhyanker Has Failed to Allege Wrongful Use. ......................... 19

  B. Abhyanker Has No Plausible Theory of Damages. ............................. 20

III. ABHYANKER ADMITTEDLY DOES NOT OWN ANY OF THE PURPORTED TRADE SECRETS ASSERTED HERE. ................................. 20

IV. ABHYANKER'S AFFIRMATIVE DEFENSES ARE INSUFFICIENT AND SHOULD BE STRUCK ........................................................................ 23

CONCLUSION .................................................................................................................... 24

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

**TABLE OF AUTHORITIES**

**Page(s)**

CASES

*Adams v. Vivo Inc.,*
   C 12-01854, 2012 U.S. Dist. LEXIS 109199 (N.D. Cal. Aug. 3, 2012)................................ 12

*Ansari v. Elec. Document Processing, Inc.,*
   No. 5:12-cv-01245, 2012 U.S. Dist. LEXIS 128622 (N.D. Cal. Sep. 10, 2012) .................. 23

*Architectural Mailboxes, LLC v. Epoch Design, LLC,*
   Case No. 10-cv-974, 2011 U.S. Dist. LEXIS 46180 (S.D. Cal. Apr. 28, 2011) .............. 11, 15

*Ashcroft v. Iqbal,*
   129 S. Ct. 1937 (2009) .................................................................................................. 11

*Bauer v. Goss,*
   C 12-00876, 2012 U.S. Dist. LEXIS 95334 (N.D. Cal. July 10, 2012) .................... 12, 21, 22

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ................................................................................................... 3, 11

*Bespaq Corp. v. Haoshen Trading Co.,*
   No. C 04-3698, 2005 WL 14841 (N.D. Cal Jan. 3, 2005) ........................................... 16, 18

*Burbank-Glendale-Pasadena Airport Authority v. City of Burbank,*
   136 F.3d 1360 (9th Cir. 1998)......................................................................................... 5

*Burch v. GMAC Mortgage, LLC,*
   No. C-09-4214, 2010 U.S. Dist. LEXIS 23659 (N.D. Cal. Mar. 15, 2010).......................... 12

*California Police Activities League v. California Police Youth Charities, Inc.,*
   No. C 08-1991, 2009 WL 537091 (N.D. Cal. Mar. 3, 2009) ............................................ 20

*Champlaie v. BAC Home Loans Servicing, LP,*
   706 F. Supp. 2d 1029 (E.D. Cal. 2009)............................................................................ 12

*Clegg v. Cult Awareness Network,*
   18 F.3d 752 (9th Cir. 1994).......................................................................................... 12

*Computer Sciences Corp. v. Computer Assocs. Int'l, Inc.,*
   CV 98-1374, 1999 U.S. Dist. LEXIS 21803 (C.D. Cal. Aug. 13, 1999) ............................. 20

*Coto Settlement v. Eisenberg,*
   593 F.3d 1031 (9th Cir. 2010)....................................................................................... 12

*Diodes, Inc. v. Franzen,*
   260 Cal. App. 2d 244 (1968).......................................................................................... 18

*Falcocchia v. Saxon Mortg., Inc.,*
   709 F. Supp. 2d 873 (E.D. Cal. 2010).......................................................................... 12, 21

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*Farhang v. Indian Institute of Technology*,
   08–02658, 2010 WL 2228936 (N.D. Cal. June 1, 2010) ................................................. 16, 18

*Forcier v. Microsoft Corp.*,
   123 F. Supp. 2d 520 (N.D. Cal. 2000) ......................................................... 13

*Hynix Semiconductor Inc. v. Rambus Inc.*,
   CV-00-20905, 2007 U.S. Dist. LEXIS 97677 (N.D. Cal. Nov. 15, 2007) ........................... 23

*In re SRAM Antitrust Litig.*,
   580 F. Supp. 2d 896 (N.D. Cal. 2008) ......................................................... 11

*Intri-Plex Technologies, Inc. v. Crest Grp., Inc.*,
   499 F.3d 1048 (9th Cir. 2007) .................................................................... 12

*Les Concierges, Inc. v. Robeson*,
   C-09-1510, 2009 U.S. Dist. LEXIS 39414 (N.D. Cal. Apr. 27, 2009) .......................... 18

*MedioStream, Inc. v. Microsoft Corp.*,
   869 F. Supp. 2d 1095 (N.D. Cal. 2012) ......................................................... 19

*Monster Cable Products, Inc. v. Avalance Corp.*,
   No. 08-4792, 2009 U.S. Dist. LEXIS 23747 (N.D. Cal. Mar. 11, 2009) ........................... 23

*Moss v. U.S. Secret Serv.*,
   572 F.3d 962 (9th Cir. 2009) .................................................................... 11

*Nexsales Corp. v. Salebuild, Inc.*,
   No. C-11-3915, 2012 WL 216260 (N.D. Cal. Jan. 24, 2012) (Chen, J.) ...................... 15, 16

*Parrino v. FHP, Inc.*,
   146 F.3d 699 (9th Cir. 1998) .................................................................... 12

*Pellerin v. Honeywell Int'l Inc.*,
   11-CV-01278, 2012 U.S. Dist. LEXIS 94635 (S.D. Cal. July 6, 2012) .............. 16, 17, 18, 19

*Perez v. Gordon & Wong Law Group, P.C.*,
   No. 11-cv-03323, 2012 U.S. Dist. LEXIS 41080 (N.D. Cal. Mar. 26, 2010) ...................... 23

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
   442 F.3d 741 (9th Cir. 2006) ...................................................................... 5

*Shwarz v. United States*,
   234 F.3d 428 (9th Cir. 2000) .................................................................... 12

*Steckman v. Hart Brewing Inc.*,
   143 F.3d 1293 (9th Cir. 1988) .................................................................... 12

*Tripati v. Thomson*,
   CV 03-1122, 2005 U.S. Dist. LEXIS 38093 (D. Ariz. Dec. 27, 2005) .................... 12, 13, 21

*Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp.*,
   587 F.3d 1339 (Fed. Cir. 1999) ............................................................. 13, 15

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

**STATUTES**

Cal. Civ. Code§ 3246.1(b)(1)..................................................................................................... 16, 19

Cal. Civ. Code § 3246.1(b)(2) ..................................................................................................... 6

**RULES**

Federal Rule of Civil Procedure 8(a) ......................................................................................... 1

Federal Rule of Civil Procedure 12(b)(6) ................................................................................ 1,11

Federal Rule of Civil Procedure 12(f).......................................................................................

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on June 6, 2013 at 1:30 p.m., or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Edward M. Chen, 450 Golden Gate Avenue, San Francisco, California, Plaintiff and Counterdefendant Nextdoor.com, Inc. and Counterdefendant Prakash Janakiraman will and hereby do move for an order (1) dismissing Defendant and Counterclaimant Raj Abhyanker's First Amended Counterclaim pursuant to Federal Rules of Civil Procedure 12(b)(6) and 8(a), and (2) striking certain of his affirmative defenses in his First Amended Answer pursuant to Federal Rule of Civil Procedure 12(f). This motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities, the Request for Judicial Notice, the accompanying declaration of Jennifer L. Kelly in support thereof, the pleadings and other papers on file in this action, and any other oral or written submissions as the Court may entertain.

1

2

3

4

5

6

7

8

9

10

11

12

13

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Plaintiff and Counterdefendant Nextdoor.com, Inc. ("Nextdoor.com" or the "Company") is a growing Internet success story.  After years of hard work and experimentation with different business models, it has a hit with a neighborhood-based online social network focused on helping neighbors connect, called "Nextdoor."  Defendant and Counterclaimant Raj Abhyanker ("Abhyanker") once worked for a completely unrelated company that pursued a similar concept before firing him and abandoning the idea in 2007.  Abhyanker is now looking to get a piece of Nextdoor.com's success through serial litigation against the Company, its founders and investors. Since Nextdoor.com's website launched in October 2011, Abhyanker has filed and dismissed an action in California Superior Court (Santa Clara County), Case No. 1-11-cv-212924 (the "State Court Action"), filed two separate oppositions to Nextdoor.com's pending application for the "NEXTDOOR" trademark, and filed his original Answer and Counterclaim in this Action (which he opted to amend rather than oppose the motions to dismiss filed by all counterdefendants[1])—all challenging the Company's right to its independently developed business and name.  Yet nowhere in these hundreds of pages of allegations has Abhyanker cogently identified anything that Nextdoor.com or its founders did wrong.

The Amended Counterclaim is no different.  As in his previous pleadings, Abhyanker posits, based on nothing but rank (and wrong) conjecture, that Nextdoor.com's founders, including Counterdefendant Prakash Janakiraman ("Janakiraman"), pursued a four-year conspiracy to steal an idea he had for a neighborhood-based social networking website to be called "Nextdoor."  As just one example, Abhyanker does not allege *facts* demonstrating that Janakiraman actually had access to his purported trade secrets—or even identify what purported trade secrets Nextdoor supposedly has used.  Rather, Abhyanker concludes that Janakiraman *must have* gotten access to some unidentified secrets in late 2010 from Counterdefendant Sandeep Sood (to whom Abhyanker allegedly disclosed them four years earlier), because Janakiraman and

---

[1] Each of these three motions, which had been set for hearing on May 9, 2013, were withdrawn following Abhyanker's filing of the First Amended Answer and Counterclaim ("AC" or "Amended Counterclaim") which superseded the pleadings they moved to dismiss.  *See* Dkt. 59.

Sood "both attended . . . Berkeley" and have "been friends . . . since at least 1995." *See* AC ¶¶ 138-141.  This conclusion is nothing short of absurd.  And it certainly does not comport with the requirement to plead facts demonstrating a plausible entitlement to relief under *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

In fact the most meaningful difference between the Amended Counterclaim and Abhyanker's previously dismissed lawsuit is the Amended Counterclaim's effort to contradict Abhyanker's prior admissions.  In the State Court Action, Abhyanker admitted that it was his previous corporate employer, Fatdoor, Inc.—not Abhyanker personally—who owned any purported trade secrets in this space, and that the assets of Fatdoor have since been acquired by Google, Inc.  This stands to reason, given that Abhyanker has consistently alleged that he disclosed his Nextdoor concept to Counterdefendant Benchmark Capital in connection with an attempt to raise funding for his employer Fatdoor.  Fatdoor's ownership of the purported trade secrets, unequivocally admitted by Abhyanker a year ago, deprives him of standing to assert claims he does not possess.  When this lack of standing was presented by demurrer in the State Court Action, Abhyanker unilaterally dismissed his claims.  He cannot resurrect those same failed claims here by alleging, directly contrary to his prior allegations, that he *personally* owns the purported trade secrets.  His prior judicial admission on this point is binding.  The Court can dismiss the Amended Counterclaim on this basis alone.

Yet there are further independent bases upon which the Amended Counterclaim should be dismissed.  *First*, the only "trade secret" that Abhyanker alleges Nextdoor.com or Janakiraman used—the idea for a neighborhood-based social networking website called "Nextdoor"—*was disclosed in a patent application Abhyanker filed that was published before the alleged misappropriation*.  Thus, any trade secret protection that theoretically existed in that idea was long since surrendered.   *Second*, Abhyanker does not come close to alleging the facts necessary to state a claim for trade secret misappropriation, the only cause of action he attempts to state.  He has failed, *inter alia*, to demonstrate that Nextdoor.com or Janakiraman acquired or used any trade secrets, or to demonstrate use with knowledge that they were improperly obtained, or that he was damaged in any way.  Because, even after an amendment that attempted to address these

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

defects, Abhyanker's new pleading remains fatally deficient in at least three respects, his trade secret misappropriation claim against Nextdoor.com and Janakiraman should be dismissed with prejudice.

Additionally, in his Amended Answer to Nextdoor.com's DJ Complaint (which actually contains no amendments in response to Counterdefendants' Motion to Strike), Abhyanker has asserted no fewer than sixteen affirmative defenses, most of which are spurious on their face.  In nearly each instance, these defenses are supported by nothing but a bare recitation of the doctrine and a conclusory claim that it bars Nextdoor.com's right to relief.  Such pleading leaves both Nextdoor.com and the Court to speculate upon what facts, if any, these defenses are premised. This is insufficient as a matter of law, and these affirmative defenses should be stricken.

## STATEMENT OF ISSUES TO BE DECIDED

1. Whether Abhyanker can pursue a trade secret misappropriation claim where the purported secrets were publically disclosed in a judicially noticeable patent application filed by his former employer prior to any alleged misappropriation.

2. Whether Abhyanker can state a trade secret misappropriation claim where he does not allege any facts substantiating how any purported secrets were acquired or used, much less facts showing wrongful acquisition or use, or any facts plausibly showing that he was harmed.

3. Whether Abhyanker can pursue trade secret misappropriation claims for purported secrets owned by his former employer, not himself, now and at the time of the alleged misappropriation.

4. Whether Abhyanker can plead affirmative defenses with no factual support.

## FACTUAL BACKGROUND

### A.    Abhyanker's Failed Nextdoor/Fatdoor Concept

According to his Amended Counterclaim, Abhyanker thought up a concept for a neighborhood-based social networking website in late 2006. AC ¶ 109.  At that time, Abhyanker was employed by a corporation named Fatdoor, Inc., which was funded by investors in Silicon Valley, and which launched a beta neighborhood social website at www.fatdoor.com.  *See* Request for Judicial Notice ("RJN") Ex. 3 (First Amended Complaint in State Court Action, hereinafter, "FAC") ¶¶ 3, 20, 94; AC ¶ 128.[2]  Abhyanker's original allegations in the State Court

---

[2] As explained in the accompanying Request for Judicial Notice, this Court may take judicial

Action referred to this idea as the "Nextdoor/Fatdoor" concept.  Those allegations further explain that Abhyanker formed an entity called Fatdoor, Inc. to pursue what he described as the "Nextdoor/Fatdoor" concept, characterizing the "Nextdoor/Fatdoor business model" as "neighborhood social networking."  *See* FAC ¶¶ 3, 21, 84-85, 94; *see also* RJN Ex. 6 (Trial Trademark and Appeal Board Opposition, "Second Opposition") ¶ 9 (discussing Fatdoor's use of the FATDOOR mark in connection with "The Nextdoor/Fatdoor concept").  Abhyanker alleged that he was working on behalf of his then-employer Fatdoor in developing this Nextdoor/Fatdoor concept, and that Fatdoor owned the resulting intellectual property.  *See, e.g.,* FAC ¶¶ 3, 20, 21, 23, 55, 107, 109, 111 ("[t]he entire basis for Nextdoor.com, Inc.'s business rests on these stolen and misappropriated materials now owned by Google, Inc. through its acquisition of the Nextdoor/Fatdoor patent portfolio").  According to Abhyanker, "[he] and Fatdoor, Inc. intended to purchase the 'www.nextdoor.com'domain name shortly after Series B funding.  Due to issues with procuring the 'www.nextdoor.com' domain, Fatdoor, Inc., used the name 'Fatdoor.com' as a second preference until the 'www.nextdoor.com' domain could be acquired."  RJN Ex. 4 ¶ 14 (Trial Trademark and Appeal Board Opposition ("First Opposition")).  While Fatdoor allegedly mocked up a Nextdoor website, it never acquired the www.nextdoor.com domain name or launched a website using that name.  *Id*.; FAC ¶¶ 30-32, 35.

Following demurrers in the State Court Action arguing that Abhyanker had no standing to pursue his trade secret misappropriation claims due to Fatdoor and eventually Google's ownership of the purported trade secrets at issue, Abhyanker changed his story.  He alleged in his original Counterclaim in this action that he *personally* developed and owned the trade secrets covering what he then referred to as just the "Nextdoor" concept, now claiming it was totally separate and distinct from his Fatdoor concept.  Dkt. 16 ("Counterclaim") ¶ 110.  But in the face of motions to dismiss filed by each of the counterdefendants arguing, *inter alia*, that Abhyanker

notice of the contents of Abhyanker's pleadings in the State Court Action and consider them without converting this motion into one for summary judgment.  *See, e.g., Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (taking judicial notice of court documents and pleadings in related litigation); *Burbank-Glendale-Pasadena Airport Authority v. City of Burbank*, 136 F.3d 1360, 1364 (9th Cir. 1998) (taking judicial notice, in federal action, of pleadings filed in California Superior Court).

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   lacks standing to pursue a misappropriation claim based on trade secrets he did not own,

2   Abhyanker has changed his story yet again.  Now, in his Amended Counterclaim, he contends he

3   developed the trade secrets at issue for an entirely *different* company called LegalForce, Inc.,

4   which he alleges was based on the "concept of a private online social network for *inventors*."  AC

5   ¶¶ 109, 111 (emphasis added).  Abhyanker further alleges he developed a "separate spin off idea

6   using the same code base called Nextdoor."  AC ¶ 109.  Abhyanker now refers to these combined

7   ideas as the "LegalForce/Nextdoor" concept.  *Id*. at ¶ 119.  Abhyanker continues to maintain that

8   his "LegalForce/Nextdoor" concept is separate and distinct from his Fatdoor concept.  *Id*. ¶ 119.

9   Yet his attempt to distance his "Nextdoor" concept even further from Fatdoor only serves to

10  underscore the implausibility of his assertion that he would have disclosed "Nextdoor" trade

11  secrets to Benchmark in connection with his attempts to secure funding for his other company,

12  Fatdoor.  *See, e.g., id.* ¶¶ 129-134; FAC ¶ 92 (explaining that Benchmark declined to invest in

13  Fatdoor, Inc.).  Indeed, the more Abhyanker changes his story, the less sense it makes.  In this

14  case, Abhyanker's fiction is actually stranger than truth.

15          But regardless of how he attempts to characterize his purported trade secrets relating to an

16  online social network for neighbors, Abhyanker cannot evade the judicially-noticeable fact that he

17  publicly disclosed those secrets by filing a patent application that was published to the world at

18  least as early as September 20, 2007.  RJN Ex.1 (App. No. 11/603,442 (the "'442 Application")).

19  This publication occurred more than four years before the public launch of Nextdoor.com's

20  website.  AC ¶ 159.  That patent application *described in detail the concept and operation of a*

21  *neighborhood social networking service to be called either Fatdoor or Nextdoor*.  RJN Ex. 1 at

22  Figures 20, 22 & ¶ 236 (emphasis added).  Indeed, that is how Abhyanker's Amended

23  Counterclaim itself characterizes the patent.  AC ¶ 167 (explaining that Abhyanker's patent

24  applications for the Nextdoor/Fatdoor concept "relate generally to geo-spatial database,

25  architecture, and application technologies associated with neighborhood communication and

26  social networking").  Abhyanker subsequently assigned the '442 Application along with

27  "hundreds of pages of documents that became the basis for more than 46 patent applications" to

28  Fatdoor on or about February 1, 2007.  AC ¶ 114.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Abhyanker's tenure at Fatdoor was cut short; by his own admission he was terminated by its board of directors in July 2007.  FAC ¶ 107.  Thereafter, Fatdoor abandoned the idea of a neighborhood social networking website and transitioned into a local website for mothers to plan events, changing its name to Center'd.  *Id*. ¶ 111.  That business then transitioned again into the local deal space and changed its name to DealMap.  *Id*.  Finally, in August 2011, DealMap—along with all of its intellectual property—was acquired by Google.  *Id*.  Notably, Abhyanker does not allege—in the Amended Counterclaim or elsewhere—that he ever reacquired any intellectual property relating to the Nextdoor/Fatdoor concept from Fatdoor or any of its successors-in-interest.

**B.    Nextdoor.com and Prakash Janakiraman**

In December 2007, after Fatdoor had already abandoned the neighborhood social networking space, fired Abhyanker, and changed its name, the company that would eventually become Nextdoor.com (referred to here as the "Company") was founded as SPN, Inc.  AC ¶ 107.  One of the three founders of the Company was Janakiraman.  *Id*. ¶ 97.  In January, 2008, SPN, Inc. changed its name to Round Two, Inc.  *Id.* ¶ 107.  After nearly two years of work, the Company launched an online almanac of professional and college athletes at www.fanbase.com.  *See id*.  In conjunction with this launch, the Company changed its name to Fanbase, Inc.  *Id*.  Over the next year, Fanbase, while achieving some success, failed to get the traction that was hoped for, and the company decided to change direction.  Fanbase began considering new business concepts.  In the spring of 2010, the Company decided on an online neighborhood social networking concept.  Dkt. 1 ¶14.  In January 2011, the Company acquired the domain name www.nextdoor.com (AC ¶ 154)[3] and the Company changed its name to Nextdoor.com, Inc. a few months later.  *Id*. ¶ 158.  On February 8, 2011, Nextdoor applied for a federal registration for the "NEXTDOOR" trademark for local social networking.  *Id*. ¶ 157.  On October 26, 2011, Nextdoor.com publicly launched its online neighborhood social networking service at

---

[3] As Abhyanker has acknowledged, the www.nextdoor.com domain name was acquired from a manufacturer of door frames called "Next Door LLC."  *See* First Opposition ¶ 29.  Abhyanker never acquired, or used, that domain, nor sought to register it as a trademark until after the Company's public launch of nextdoor.com.

www.nextdoor.com.  *Id*. ¶ 159.

## C.    Abhyanker's Litigation Against Nextdoor.com

On November 10, 2011, Abhyanker filed his initial complaint in the State Court Action. In addition to suing Nextdoor.com, he also named as defendants several of its founders and investors, including Benchmark Capital.  *See* RJN Ex. 2 ("Complaint").  Abhyanker filed a First Amended Complaint in that action on December 6, 2011.  *See* FAC (RJN Ex. 3).  The State Court Action, like Abhyanker's Amended Counterclaim, asserted a claim for misappropriation of trade secrets as well as related causes of action relating to Nextdoor.com's business concept and name. Abhyanker's previous formulations of his claims were based on a number of outlandish theories, including a prejudice against Arizonans in favor of Texans within Nextdoor.com's investor Benchmark (FAC ¶¶ 142-43), a bias in favor of "hunters" at Benchmark (*id*. ¶ 144), a "culture of communism" purportedly leading to the stealing of ideas within Benchmark (*id*. ¶ 145), and a prejudice against married fathers with children, like Abhyanker, at Benchmark (*id*. ¶¶ 147-48). Apart from these oddities, the gist of Abhyanker's allegations in the State Court Action were that he had rights in the idea for an online social networking service to be called "Nextdoor" (referred to as the Nextdoor/Fatdoor concept), and that the defendants had misappropriated it.  *Id*. ¶¶ 20-23.

As noted above, in marked contrast to his Amended Counterclaim here, Abhyanker's pleadings in the State Court Action acknowledged that Google, Inc.—not Abhyanker—owns any intellectual property at issue.  *See* Complaint ¶ 5; FAC ¶ 23 ("[t]he entire basis for Nextdoor.com, Inc.'s business rests on these stolen and misappropriated materials *now owned by Google, Inc.* through its acquisition of the Nextdoor/Fatdoor patent portfolio"); *see also* FAC ¶ 169 ("Google, Inc. now owns the rights to the original technology of the Nextdoor/Fatdoor concept").  Based on these concessions, Nextdoor.com and Benchmark demurred to Abhyanker's FAC on the basis that Abhyanker did not have standing to sue, as he did not own any of the intellectual property at issue.

On January 20, 2012, while the demurrers were pending, Abhyanker filed a Notice of Opposition to Nextdoor.com's application to register the NEXTDOOR mark with the Trademark Trial and Appeal Board ("TTAB").  RJN Ex. 4 (January 20, 2012 Notice of Opposition ("First

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Opposition")).[4] In this First Opposition, Abhyanker claimed, *inter alia*, that the mark was invalid due to Abhyanker's prior rights in the term "nextdoor," as referred to in his own trademark application for "NEXTDOOR" filed on December 28, 2011 (three months after the Company's launch of its website, and ten months after its application to register the NEXTDOOR trademark). *Id.* ¶¶ 9, 15-16.

On February 9, 2012, Abhyanker filed a separate Notice of Opposition against the Company's registration of the NEXTDOOR mark ("the Second Opposition"), this time claiming that it was invalid due to the existence of his trademark application for the phrase FATDOOR GET TO KNOW YOUR NEIGHBORS—an application Abhyanker had filed only one day prior to submitting the Second Opposition.[5] RJN Ex. 6. The Second Opposition asserted that the NEXTDOOR mark was used for a product confusingly similar to "FATDOOR GET TO KNOW YOUR NEIGHBORS." It was thus premised—like all of Abhyanker's claims before his revisionism for this action—on the concept that the "Nextdoor" idea was one and the same with "Fatdoor," not "separate and distinct." *Compare* Second Opposition ¶ 5 (alleging that the FATDOOR GET TO KNOW YOUR NEIGHBORS mark is confusingly similar to Nextdoor.com's NEXTDOOR mark due to in part to being used on nearly "identical" goods and services) to AC ¶ 119 (alleging that Fatdoor and LegalForce/Nextdoor concept are "separate and distinct"). It further asserted that although Abhyanker never owned the domain www.nextdoor.com, he "used the name FATDOOR as a second preference until the 'www.nextdoor.com' domain could be acquired." *Id.* ¶ 12.

With this alternate litigation at the TTAB in place, and recognizing the failings of his misappropriation claims in the State Court Action, Abhyanker abruptly dismissed that action on February 7, 2012 before the court ruled on the demurrers. RJN Ex. 5.

### D. The Present Proceedings

On November 5, 2012, Nextdoor.com instituted the present action. It seeks both a

---

[4] Like his pleadings in the State Court Action, this Court may also take judicial notice of pleadings Abhyanker filed in the TTAB.
[5] These proceedings have been suspended pending the determination of this action. *See* RJN Ex. 7.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   declaration that it is lawfully using the NEXTDOOR mark and asserts claims against Abhyanker

2   for Cyberpiracy and False Designation of Origin under the Lanham Act. *See* Dkt. 1 (the "DJ

3   Complaint"). Nextdoor.com's affirmative claims seek to stop Abhyanker's adoption and use of

4   the term "Nextdoor," as well as his registration of the domain name www.nextdoor.cm,

5   commencing shortly *after* Nextdoor.com's public launch. Nextdoor.com alleges that Abhyanker

6   took these steps for the purpose of confusing the public and attempting to leverage a claim against

7   the Company. *Id*.

8       Abhyanker responded with a Counterclaim, which partially recycled and partially

9   recharacterized his previously abandoned claims in the State Court Action. As in the State Court

10  Action, Abhyanker did not allege that he ever worked for, or had any contact with Nextdoor.com

11  prior to its launch. But he generally alleged that he disclosed a number of vaguely identified

12  trade secrets to Counterdefendants Benchmark Capital and Sandeep Sood in 2006 and 2007

13  (before Abhyanker was fired by Fatdoor, Inc.), and that these Counterdefendants disclosed those

14  purported secrets to Nextdoor.com and Janakiraman in breach of confidentiality obligations. *See*

15  *generally* Counterclaim.

16      In support of these claims, Abhyanker alleged a vague and unsupported laundry list of

17  components and features of websites that are purportedly "trade secrets" and that he claimed

18  personally to have developed and owned. Counterclaim ¶ 149. But Abhyanker did not identify

19  why and/or how he, rather than Fatdoor, Inc.—the corporation that operated the

20  www.fatdoor.com social networking website, and which sought funding from Benchmark—could

21  own these purported secrets. *See* First Opposition ¶ 14 ("Fatdoor, Inc., used the domain

22  'Fatdoor.com' as a second preference until the 'www.nextdoor.com' domain could be acquired").

23      Moreover, Abhyanker did not identify any of these purported secrets that were actually

24  disclosed to, or used by Nextdoor.com—other than the name "nextdoor.com" and the concept of a

25  private neighborhood social network, both of which are plainly disclosed in the '442 Application.

26      Based on those failings, Nextdoor.com and Janakiraman (along with the other

27  Counterdefendants) filed motions to dismiss Abhyanker's Counterclaim and to strike

28  Abhyanker's cursory affirmative defenses. *See, e.g.,* Dkt. 38. Tacitly admitting the insufficiency

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

of his Counterclaim and affirmative defenses, Abhyanker filed his Amended Counterclaim on April 8, 2013 in lieu of responding to that motion.  While Abhyanker dropped all his other causes of action, his other amendments do nothing to cure the myriad deficiencies with his misappropriation claim.  Further, the Amended Answer contains no changes and thus still fails to plead any facts in support of his affirmative defenses.  Indeed, the only significant change between Abhyanker's initial and amended pleading is that he has concocted yet another tale purporting to explain how he, not Fatdoor or Google, personally owns the purported trade secrets at issue.

## ARGUMENT

Dismissal is appropriate under Rule 12(b)(6) where there is either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.  *In re SRAM Antitrust Litig.*, 580 F. Supp. 2d 896, 900 (N.D. Cal. 2008).  To survive a Rule 12(b)(6) motion to dismiss, a complaint or counterclaim must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory."  *Bell Atl. Corp.*, 550 U.S.  at 562 (citation omitted).  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.* at 555.  Instead, the allegations "must be enough to raise a right to relief above the speculative level."  *Id.* (internal citations omitted).  In other words, the complaint must set forth enough facts to state a claim that is "plausible on its face," that is, "plausibly suggesting (not merely consistent with)" a right to relief.  *Id.* at 557; *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).  "A claim is plausible on its face 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1940 (2009).

Where one of multiple theories pled in support of a cause of action is deficient, courts should dismiss those theories separately.  *See, e.g., Architectural Mailboxes, LLC v. Epoch Design, LLC,* Case No. 10-cv-974, 2011 U.S. Dist. LEXIS 46180, at *18 (S.D. Cal. Apr. 28, 2011) (dismissing Lanham Act unfair competition claim to the extent it relied upon an alternate

and deficient false designation of origin theory while allowing this same claim to go forward on a false advertising theory); *Burch v. GMAC Mortgage, LLC*, No. C-09-4214, 2010 U.S. Dist. LEXIS 23659, at *5 n.1 (N.D. Cal. Mar. 15, 2010) (dismissing Truth in Lending Act claim to the extent it relied upon a deficient failure to deliver theory while allowing this same claim to go forward on a second alternate theory); *Champlaie v. BAC Home Loans Servicing, LP*, 706 F. Supp. 2d 1029, 1055 (E.D. Cal. 2009) (granting motion to dismiss as to certain specific theories plead in support of a cause of action).

In ruling on a motion to dismiss, the Court need not accept as true any conclusory allegations, legal conclusions, unwarranted deductions of fact or unreasonable inferences. *See Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994). The Court may also disregard allegations that are contradicted by documents attached to the complaint, incorporated by reference, or otherwise judicially noticeable. *See Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000); *Steckman v. Hart Brewing Inc.*, 143 F.3d 1293 (9th Cir. 1988); *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010); *Parrino v. FHP, Inc.*, 146 F.3d 699, 705-06 (9th Cir. 1998); *Intri-Plex Technologies, Inc. v. Crest Grp., Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007).

Nor must the Court give credence to allegations that are contradicted by allegations in the plaintiff's prior pleading. *See, e.g., Adams v. Vivo Inc.*, C 12-01854, 2012 U.S. Dist. LEXIS 109199, at *7 (N.D. Cal. Aug. 3, 2012) ("The district court will not accept as true pleading allegations that are contradicted by facts that can be judicially noticed or by other allegations or exhibits attached to or incorporated in the pleading"); *Bauer v. Goss*, C 12-00876, 2012 U.S. Dist. LEXIS 95334, at *9-*10 (N.D. Cal. July 10, 2012) (dismissing complaint where plaintiff attempted to contradict allegations in a previous pleading). This prohibition on contradicting prior allegations applies with equal force to those made in pleadings filed in other actions, including those filed in other courts. *See, e.g., Falcocchia v. Saxon Mortg., Inc.*, 709 F. Supp. 2d 873, 887 (E.D. Cal. 2010) (plaintiff cannot contradict documents submitted in prior state court action); *Tripati v. Thomson*, CV 03-1122, 2005 U.S. Dist. LEXIS 38093, at *6 (D. Ariz. Dec. 27, 2005) (dismissing complaint *sua sponte* following "judicial notice of state court records which are contradictory to Plaintiff's allegations").

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    Under these standards, Abhyanker's claim fails for the reasons set forth below.

2  **I.    ANY TRADE SECRET RIGHTS IN THE NEXTDOOR NAME AND CONCEPT**
3       **DISAPPEARED WHEN THEY WERE PUBLICLY DISCLOSED.**

4       First and foremost, Abhyanker could never base a claim for misappropriation on the

5  acquisition or use of the concept of an online neighborhood-based social networking service

6  called "Nextdoor," *because Abhyanker disclosed that concept in a patent application he filed in*

7  *November 2006 that was published to the world in September 2007*.  This was nearly five years

8  before Nextdoor launched its service (AC ¶ 159) and well in advance of Sood's alleged disclosure

9  of the concept to Nextdoor.com and Janakiraman, which supposedly took place in 2010.  *Id*. ¶¶

10 145-147.[6]  Because this is the <u>only</u> purported trade secret that Abhyanker actually alleges

11 Nextdoor.com or Janakiraman used (*see* Part II, *infra*), this is fatal to his claim in its entirety.

12      The law is clear that disclosure of a trade secret in a patent application releases that

13 information to the public and, accordingly, extinguishes any trade secret protection that might

14 exist.  *See, e.g., Forcier v. Microsoft Corp.*, 123 F. Supp. 2d 520, 528 (N.D. Cal. 2000) ("all of

15 Forcier's alleged trade secrets had been placed in the public domain either in patents or in patent

16 applications . . .  more than a year before Microsoft purchased the technology from Aha! . . .

17 Consequently, the element of secrecy was gone by the time that Microsoft acquired the

18 information, the 'trade secret' status was extinguished"); *Ultimax Cement Mfg. Corp. v. CTS*

19 *Cement Mfg. Corp.***,** 587 F.3d 1339, 1355-56 (Fed. Cir. 1999) (applying California law and

20 holding that disclosure of trade secret information in a foreign patent eliminates any trade secret

21 protection).  Following disclosure, the information is no longer a secret, and, accordingly, cannot

22 be misappropriated as a matter of law.  *Forcier*, 123 F. Supp. 2d at 528.

23      Abhyanker's published '442 Application describes in specific terms a map-based,

24 neighborhood social network in which users could post information about themselves and their

25 communities.  RJN Ex. 1 (*see, e.g.*, Abstract and Figures 1, 8, 9).  Abhyanker's own allegations

26 confirm that the application relates "generally to geo-spatial database, architecture, and

27

28 [6] Abhyanker offers no facts concerning when Benchmark allegedly disclosed the purported
    Nextdoor Trade Secrets to Nextdoor.com or Janakiraman.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Fenwick & West LLP
Attorneys at Law
San Francisco

1   application technologies associated with neighborhood communication and social networking."

2   AC ¶ 167.  While most of the figures called this system Fatdoor, Abhyanker *explained that one*

3   *embodiment was to be called "nextdoor.com." Id*. at p.56, ¶ 236 (emphasis added).

4       In an attempt to duck this complete barrier to his claim, Abhyanker amended his

5   counterclaim to now state that Fatdoor's patent application "does not refer to the use of the

6   Nextdoor mark in conjunction with a private social network for neighbors." AC ¶ 115.  This is—

7   in a word we use rarely, but very literally here—disingenuous.  The judicially noticeable face of

8   the '442 Application shows the use of the name nextdoor.com as an embodiment of the

9   neighborhood social network idea (RJN Ex. 1 at p.56, ¶ 236), and an annotated excerpt of the

10  '442 Application that Abhyanker posted on his website after this lawsuit was filed, as "evidence"

11  relating to his counterclaim, explains that the application discloses that "at least one of the

12  embodiments will be used will be on 'nextdoor.com.'"  RJN Ex. 7.

13      Paragraph 236 of the '442 Application describes by its terms "one embodiment" of "the

14  methods and systems illustrated in FIGS. 1-28." *Id*. at p.56, ¶ 236.  Paragraph 236 goes on to

15  describe a method of deriving advertising revenues *internal* to that neighborhood social network,

16  including how "[a]dvertisers can 'own' their listings by placing a display ad on "nextdoor.com,"

17  and how advertising revenue is realized when a link *internal* to the social network described by

18  the patent is clicked, without actions taken *outside* of the social network.  *Id*.  Paragraph 236

19  (which refers this social network as "nextdoor.com") explicitly does *not* discuss actions taken

20  outside of the social network.  Contrary to the facially false mischaracterization of Abhyanker's

21  Amended Counterclaim (AC ¶ 115), the entire focus of Paragraph 236 is discussing an

22  embodiment of an internal advertising system on a social network *to be called nextdoor.com*

23  (RJN Ex. 1 at p.56, ¶ 236), not some reference to external software, let alone a third-party

24  website.  Abhyanker's effort to now recharacterize this name included in the patent as referring to

25  something other than the invention the patent purported to describe is specious.  Indeed, in the

26  State Court Action, Abhyanker specifically pointed to the '442 Application's disclosure of the

27  name nextdoor.com as evidence of his rights in the name, arguing that "'Nextdoor.com' was

28  clearly associated as the domain name intended to be used by Fatdoor, Inc" in the '442

MOTION TO DISMISS AND STRIKE              14              Case No. 3:12-cv-05667-EMC

1  Application.  FAC ¶ 33 (also attaching the '442 Application as Exhibit D to the FAC).

2       There can be no dispute from the face of Fatdoor's '442 Application, and Abhyanker's

3  own admissions concerning it, that the concept of a neighborhood social networking website

4  using the name "nextdoor.com" in some manner was disclosed years in advance of

5  Nextdoor.com's adoption of the "Nextdoor" name for its neighborhood social networking

6  website.  Nextdoor thus could not have misappropriated any trade secret in that concept or name

7  because, as a matter of law, it was not a trade secret.  *See Ultimax Cement Mfg.*, 587 F.3d at 1355

8  (rejecting argument that "a secret's availability from a published source is not a defense to trade

9  secret theft under California law unless [the defendant] also obtained the secret from the

10  published source").

11       Thus, at a minimum, this Court should dismiss Abhyanker's trade secret misappropriation

12  claim with prejudice to the extent that it is based upon the purported theft of the "nextdoor.com"

13  name or social networking concept.  *See, e.g., Architectural Mailboxes*, 2011 U.S. Dist. LEXIS

14  46180, at *18 (dismissing Lanham Act unfair competition claim to the extent it relied upon an

15  alternate and deficient false designation of origin theory while allowing this same claim to go

16  forward on a false advertising theory).  Moreover, because, as discussed in Part II, *infra*, no other

17  purported trade secret is described with any factual specificity or alleged to have been disclosed

18  to or used by the Company or Janakiraman, the lack of any trade secret protection in the name

19  and general business concept is fatal to Abhyanker's entire claim.

20  **II.   ABHYANKER HAS NOT ADEQUATELY ALLEGED TRADE SECRET
21          MISAPPROPRIATION.**

22       To allege a claim for trade secret misappropriation, Abhyanker must allege (1) ownership

23  of a valid trade secret, (2) that the defendant acquired, disclosed, or used the trade secret through

24  improper means, and (3) that the defendant's actions have harmed the plaintiff.  *See, e.g.,*

25  *Nexsales Corp. v. Salebuild, Inc.*, No. C-11-3915, 2012 WL 216260, at *2 (N.D. Cal. Jan. 24,

26  2012) (Chen, J.).  Among its many defects, Abhyanker's claim for trade secret misappropriation

27  fails because he has not alleged any facts in support of at least two of these elements: (1) that the

28  defendant acquired, disclosed, or used a trade secret through improper means and (2) that the

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   defendant's actions have harmed the plaintiff.[7]  Abhyanker must plead *facts* in support of these

2   elements—not just conclusions.  *Id.* (conclusory allegations of trade secret misappropriation are

3   insufficient to defeat a motion to dismiss); *Bespaq Corp. v. Haoshen Trading Co.*, No. C 04-

4   3698, 2005 WL 14841, at *4 (N.D. Cal Jan. 3, 2005) (bare allegation that the defendant

5   misappropriated purported trade secrets too conclusory to state a claim for trade secret

6   misappropriation).

7       A.    **Abhyanker Has Failed to Allege How Nextdoor.com or Janakiraman**
            **Wrongfully Acquired or Used His Trade Secrets.**
8

9       Trade secret misappropriation requires either (1) the acquisition of a trade secret by

10  improper means, or (2) the use or disclosure of a trade secret known to have been acquired by

11  improper means.  Cal. Civ. Code §§ 3246.1(b)(1) and (2).  Abhyanker still fails to allege facts

12  explaining how Nextdoor.com or Janakiraman either acquired or used his alleged trade secrets.

13  Again, *facts* are required to support these essential elements of the claim.  *See Pellerin v.*

14  *Honeywell Int'l Inc.*, 11-CV-01278, 2012 U.S. Dist. LEXIS 94635, at *11 (S.D. Cal. July 6,

15  2012).  Bare conclusions and unwarranted inferences—which are the most the Amended

16  Counterclaim offers—are insufficient.  *Id.*

17       1.    **Abhyanker Has Failed to Allege Wrongful Acquisition.**

18       With respect to the purported acquisition of the so-called LegalForce/Nextdoor Trade

19  Secrets, Abhyanker conclusorily alleges that Benchmark Capital, a potential investor in Fatdoor,

20  and Sood, a former contractor of Abhyanker, disclosed the LegalForce/Nextdoor Trade Secrets to

21  Nextdoor.com and Janakiraman.  AC ¶¶ 135, 141, 143, 147, 149.  But there is not a single fact

22  pled in the Amended Counterclaim to warrant this conclusion.  Only rank conjecture and

23  speculation, generally pleaded on information and belief.  *See, e.g., id.* ¶¶ 144, 149.  As to the

24  alleged disclosure by Benchmark Capital, Abhyanker alleges that two of Nextdoor.com's

25

26  _____
    [7] Moreover, most of the laundry list of purported trade secrets that Abhyanker has alleged (AC ¶
    170) are insufficiently pleaded to meet the first prong of a trade secret misappropriation claim.
27  *See, e.g.*, *Farhang v. Indian Institute of Technology*, 08–02658, 2010 WL 2228936, at *13 (N.D.
    Cal. June 1, 2010) (allegation of misappropriation of "business models and implementations" of
28  mobile data access system insufficiently specific to state a misappropriation claim and survive a
    motion to dismiss).

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Fenwick & West LLP
Attorneys at Law
San Francisco

founders, Nirav Tolia and Janakiraman, were entrepreneurs in residence at Benchmark Capital at the time Abhyanker disclosed the LegalForce/Nextdoor Trade Secrets to Benchmark. *Id.* ¶¶ 143, 149.[8]  And although Abhyanker refers to several individuals at Benchmark involved in assessing his request to fund Fatdoor (*see* AC ¶¶ 129, 131 and FAC ¶¶ 32-33), he pointedly does not allege that he disclosed any of the LegalForce/Nextdoor Trade Secrets to Tolia or Janakiraman.  He did not.

Nor does Abhyanker allege who at Benchmark allegedly disclosed these "secrets" to Tolia or Janakiraman; what trade secret information was disclosed; or when or how this alleged disclosure occurred.  Instead, Abhyanker simply opines that "[i]t is much too coincidental that both the founders of Nextdoor.com would be EIRs at Benchmark Capital when Abhyanker disclosed Abhyanker's LegalForce/Nextdoor Trade Secrets to Benchmark Capital." *Id.* ¶ 143. Abhyanker also offers pure speculation "upon reason and belief" that Janakiraman and Tolia "researched the history of Abhyanker's LegalForce/Nextdoor trade secrets" by looking through Benchmark's files. *Id.* ¶ 149.  But again, Abhyanker has pled no facts to support this wild conclusion, no statement of when or how this occurred, nor has he identified which of the purported secrets allegedly were acquired.  This is baseless conjecture that falls far short of the plausibility standard.

Likewise, as to the alleged disclosure by Sood (who purportedly worked with or for Abhyanker for a brief period in 2006 (*id.* ¶110)), the Amended Counterclaim alleges that Sood and Janakiraman attended Berkeley and are friends (*id.* ¶¶ 138-141) and that Sood participated in a survey Nextdoor.com sent to its friends and family members in 2010 to gather their feedback regarding the Company's already existing concept for an online neighborhood social network. *Id.* ¶ 146.[9]  Based on these innocent facts and Sood's alleged "downplay[ing]" of his relationship

---

[8] In fact, this allegation regarding EIR status is untrue. But even accepted as true for purposes of this motion it would not infer any disclosure.  To the contrary, as Abhyanker has alleged, Tolia and Janakiraman did not start the Company on a local-social networking project; their first product was the fanbase.com website in 2007.  AC ¶ 107.  The fact that the Company did not pivot towards local social networking for some three years—a generation in internet time—makes it entirely implausible that it did so based on any secrets disclosed in 2007.

[9] By alleging that Nextdoor.com conducted this survey, Abhyanker necessarily concedes that it had *already come up with the concept for an online neighborhood-based social network* prior to

with Janakiraman, Abhyanker concludes that "Sood was trying to conceal his wrongful conduct of disclosing Abhyanker's LegalForce/Nextdoor Trade Secrets to Janakiraman and Nextdoor.com." *Id*. ¶¶ 139, 141.  In essence, Abhyanker asks the Court to conclude that because Sood and Janakiraman were friends, and because Janakiraman was employed by Nextdoor.com, disclosure was inevitable.  However, California courts reject the doctrine of inevitable disclosure even in the employment context, let alone among friends.  *See Les Concierges, Inc. v. Robeson*, C-09-1510, 2009 U.S. Dist. LEXIS 39414, at *4 (N.D. Cal.  Apr. 27, 2009) ("a threat of misappropriation cannot, as a matter of California law, be inferred from the fact Robeson, upon voluntarily terminating his employment with LC US, immediately began working for a direct competitor and appears to be performing for his new employer the same or similar job duties").

Regardless, however, the only supposed trade secrets that Sood is alleged to have disclosed cannot give rise to any viable claim here.  Abhyanker alleges that Sood disclosed two purported secrets to Janakiraman and Nextdoor:  the name Nextdoor to be used in an online neighborhood-based social networks and generically described "neighborhood level privacy controls." *Id*. ¶ 147.  As to the name Nextdoor for an online social network, as discussed above, it cannot form the basis of any trade secret misappropriation claim here because it was publicly disclosed prior to any supposed misappropriation.  *See* Part I, *supra*.  As to "neighborhood level privacy controls," this allegation does not sufficiently identify any trade secret to survive a motion to dismiss as a matter of law, and accordingly is not sufficient to establish any unlawful acquisition of a trade secret.  *Farhang*, 2010 WL 2228936, at *13 (allegation of misappropriation of "business models and implementations" of mobile data access system insufficiently specific to state a misappropriation claim and survive a motion to dismiss); *Diodes, Inc. v. Franzen,* 260 Cal. App. 2d 244, 253 (1968) ("secret process" for the manufacture of diodes insufficient to state a claim); *Bespaq Corp. v. Haoshen Trading Co.*, No. C 04-3698, 2005 WL 14841, at *4 (N.D. Cal Jan. 3, 2005) (allegations that defendant misappropriated "customer lists," "pricing information," and "marketing strategies" regarding dollhouse furniture too conclusory to state a claim).

Moreover, even if Abhyanker had alleged facts sufficient to support a conclusion that any disclosure of trade secrets that Sood may have made in his survey response or thereafter.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Nextdoor.com or Janakiraman ever acquired the purported LegalForce/Nextdoor Trade Secrets, he has still failed to allege any facts demonstrating that they *wrongfully* acquired those secrets—*i.e.*, that they knew or had reason to know they were secret or that Benchmark Capital or Sood were breaching any confidentiality obligations by (purportedly) disclosing them.  Such knowledge is an essential component of a claim premised upon receipt of a trade secret.  *See* Cal. Civil Code § 3246.1(b)(1); *MedioStream, Inc. v. Microsoft Corp.*, 869 F. Supp. 2d 1095, 1114 (N.D. Cal. 2012) (dismissing for failure to include facts demonstrating that the defendant knew or had reason to know that it was acquiring confidential material by improper means).  Here, all Abhyanker has alleged is a conclusion that Nextdoor and Janakiraman were "fully aware" of Benchmark Capital and Sood's confidentiality obligations.  AC ¶ 175.  No facts support this conclusion.  There is no allegation of how, when, or where Nextdoor.com or Janakiraman learned of such purported confidentiality obligations; it is pure speculation that utterly fails to warrant an inference that they actually had the knowledge necessary for wrongful acquisition.

### 2.    Abhyanker Has Failed to Allege Wrongful Use.

With respect to Abhyanker's theory that Nextdoor.com and Janakiraman used his trade secrets, his allegations are even more deficient.  Beyond the use of the name "Nextdoor" in connection with an online neighborhood-based social network (which is not actionable for the reasons set forth in Part I, *supra*), Abhyanker fails to identify any of the purported LegalForce/Nextdoor Trade Secrets that actually were used, much less how.  There is no allegation that any secret algorithm, plan, concept, or detail was used by Nextdoor.com.[10] Threadbare allegations that Nextdoor.com and Janakiraman "use[d] the LegalForce/Nextdoor Trade Secrets as the foundation of their business" are not nearly enough.  AC ¶ 175; *Pellerin*, 2012 U.S. Dist. LEXIS 94635, at *8-*10 (identification of an end product along with conclusory allegations that it uses the plaintiff's trade secrets are insufficient).  Plaintiff has alleged a host of

---

[10] Abhyanker's assertion that Nextdoor.com's decision to prototype its service (with the name "Neighborly") in the Lorelei neighborhood of Menlo Park in October 2010 is "irrefutable evidence" that Nextdoor.com must have misappropriated his trade secrets is more unsupported speculation.  AC ¶ 153.  He does not plead that Nextdoor.com had any knowledge that Abhyanker had any connection to or made any use of the Lorelei neighborhood, much less that such use was a trade secret.  Indeed, it is difficult to fathom how the use of a neighborhood for beta testing of a service could ever be a trade secret.

1  purported secrets in his Amended Counterclaim; if he wishes to proceed with claims that

2  Nextdoor misappropriated them, he has to identify which ones and plead facts plausibly

3  suggesting that this is the case.

4      As Abhyanker has failed to plead any facts demonstrating that Nextdoor.com or

5  Janakiraman unlawfully acquired or used his purported trade secrets, his claims should be

6  dismissed.

7      **B.    Abhyanker Has No Plausible Theory of Damages.**

8      Abhyanker also fails to allege facts in support of the third element of a claim for

9  misappropriation: that he suffered harm.  Under California law, a plaintiff must establish that he

10  has been directly harmed by the alleged misappropriation.  *Computer Sciences Corp. v. Computer*

11  *Assocs. Int'l, Inc.*, CV 98-1374, 1999 U.S. Dist. LEXIS 21803, at *42 (C.D. Cal. Aug. 13, 1999).

12  Abhyanker's own allegations in the State Court Action (discussed below) make clear that he did

13  not own the trade secrets at issue or even still work for the company (Fatdoor and its successors)

14  that did own them at the time of the purported misappropriation.  He is thus hard pressed to argue

15  that he suffered harm from the theft of trade secrets he does not own, either then or now.

16  **III.   ABHYANKER ADMITTEDLY DOES NOT OWN ANY OF THE PURPORTED**
17  **       TRADE SECRETS ASSERTED HERE.**

18      In all events, Abhyanker's claim fails because he does not own the purported trade secrets

19  asserted here.  Under the California Uniform Trade Secrets Act ("CUTSA"), ownership of a valid

20  trade secret is a prerequisite to a claim for trade secret misappropriation.  *See, e.g., California*

21  *Police Activities League v. California Police Youth Charities, Inc.*, No. C 08-1991, 2009 WL

22  537091, at *4 (N.D. Cal. Mar. 3, 2009) (dismissing claim for failure to allege ownership).

23  Abhyanker does not and cannot allege facts in support of this threshold element.

24      While Abhyanker conclusorily alleges that he owns a laundry list of vaguely identified

25  trade secrets related to the Nextdoor business concept (AC ¶ 170), that conclusion should be

26  disregarded because it is flatly contradicted by Abhyanker's own previous concessions in the

27  State Court Action and before the TTAB.[11]  In the State Court Action, Abhyanker candidly

28  _____
[11] Abhyanker's story for the ownership and development of those trade secrets varies significantly

MOTION TO DISMISS AND STRIKE          20          Case No. 3:12-cv-05667-EMC

admitted that he does not own any of the Fatdoor/Nextdoor trade secrets—instead explaining that they were acquired by Google through its acquisition of Fatdoor, Abhyanker's previous employer.  Specifically, Abhyanker alleged in both his initial Complaint and FAC in the State Court Action that "[t]he entire basis for Nextdoor.com, Inc.'s business rests on these stolen and misappropriated materials *now owned by Google, Inc.* through its acquisition of the Nextdoor/Fatdoor patent portfolio."  Complaint ¶ 5; FAC ¶ 23 (emphasis added).  Abhyanker further explained that, having purchased the assets of the successors to Fatdoor, Inc., "Google, Inc. now owns the rights to the original technology of the Nextdoor/Fatdoor concept" (FAC ¶ 169) and that he attempted to bring Google into his lawsuit as a plaintiff.  *Id*. ¶ 163.  Similarly, in his first TTAB Opposition, Abhyanker acknowledged that "Fatdoor, Inc. intended to purchase the 'www.nextdoor.com domain name shortly after Series B funding."  First Opposition ¶ 14.  Abhyanker also represented to the TTAB that "Fatdoor, Inc., used the domain 'Fatdoor.com' . . . and created a website named Fatdoor," for which Abhyanker "on behalf of Fatdoor, Inc., filed a US federal trademark application for the mark FATDOOR" covering the same computer services alleged to involve the trade secrets here.  Second Opposition ¶ 19.  As Abhyanker's prior pleadings made clear, any trade secrets, including potential use of the domain name "www.nextdoor.com," were the property of Fatdoor, Inc., and are now the property of Google.

Abhyanker's Counterclaim and now Amended Counterclaim are transparent attempts to avoid the effect of these previous concessions by shifting his claims to a different forum.  But Abhyanker cannot escape his previous admissions.  They are binding, and the Court should not accept Abhyanker's revisionism.  *See, e.g.*, *Falcocchia*, 709 F. Supp. 2d at 887 (dismissing based on contradictory allegations in previous state court filings); *Tripati*, 2005 U.S. Dist. LEXIS 38093, at *6 (same); *Bauer*, 2012 U.S. Dist. LEXIS 95334, at *8-*10 (dismissing claims based on contradictions between complaints).  *Bauer* is instructive on this point.  In that case, the plaintiff had alleged in its original complaint that it entered into a written agreement with the defendant for

---

even between his original Counterclaim in this action (alleging that he personally developed and owned the trade secrets) and this Amended Counterclaim (alleging that he developed the trade secrets on behalf of his now defunct company LegalForce).  Compare Counterclaim ¶ 108 (describing the development of the "Nextdoor Trade Secrets") to AC ¶ 109 (describing the development of the "LegalForce/Nextdoor Trade Secrets").

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

the provision of legal services. *Id*. at *8. That agreement contained a forum selection clause designating Washington as the proper forum for any dispute. Following a motion to dismiss the California action for improper venue, the plaintiff filed an amended complaint contending that the defendant was *not* a party to any agreement with the plaintiff. *Id*. at *8-*9. The court refused to credit these allegations, explaining that they were contradicted by the plaintiff's original complaint, and dismissed the case. *Id*.

Abhyanker's amended allegations in this action only underscore that he does not own any of the trade secrets asserted here. He now admits *in this action* that he assigned any trade secret rights he may have had to Fatdoor, Inc. in February of 2007, *several months before Abhyanker even met with Benchmark* (AC ¶ 129) and several *years* before Sood's purported disclosure to Nextdoor.com in 2010 (*id*. ¶¶ 145-147). AC ¶ 114. Although Abhyanker now alleges in this action that such assignment did not include the Legalforce/Nextdoor Trade Secrets, this is contradicted by his allegation in the State Court Action that the assignment covered several existing patent applications along with "hundreds of pages of documents that became the basis for more than 46 patent applications" assigned by Abhyanker to Fatdoor (*id*.)—the same 46 patent applications that Abhyanker alleged in the State Court Action were related to the *Nextdoor* concept and that formed the basis for his claims of trade secret misappropriation there. *See, e.g.*, FAC ¶¶ 20-23 (describing the alleged misappropriation of the information in these 46 patent applications and that "[t]he entire basis for Nextdoor.com, Inc.'s business rests on these stolen and misappropriated materials now owned by Google, Inc. through its acquisition of the Nextdoor/Fatdoor patent portfolio").[12] The Court should reject Abhyanker's inconsistent, nonsensical allegations and dismiss this claim on the merits.

---

[12] One of these 46 patent applications was the '442 Application. *Id*. ¶ 120; RJN Ex. 1. As discussed in Part I, *supra*, that application explicitly discloses the concept of a neighborhood social networking website to be called nextdoor.com as one of its embodiments. RJN Ex. 1 at p.56, ¶ 236. So regardless of whether Abhyanker owned any trade secrets relating to his Nextdoor concept separately from Fatdoor, the name "Nextdoor" was assigned to Fatdoor and eventually Google. Given that the only supposed trade secret that Abhyanker has alleged Nextdoor.com to have used is this name, his Amended Counterclaim should be dismissed for this reason alone.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## IV.   ABHYANKER'S AFFIRMATIVE DEFENSES ARE INSUFFICIENT AND SHOULD BE STRUCK.

Finally, Abhyanker's Amended Answer asserts various affirmative defenses to Nextdoor's declaratory judgment claims.  Nearly universally, those defenses are based on nothing beyond a bare recitation of a doctrine and a claim that it preempts Nextdoor's claims.

"[A]n affirmative defense may not simply reference a doctrine.  At a minimum, a pleading must set out the elements of the affirmative defense and some factual allegations that meet those elements."  *Hynix Semiconductor Inc. v. Rambus Inc.*, CV-00-20905, 2007 U.S. Dist. LEXIS 97677, at *39 (N.D. Cal. Nov. 15, 2007) (citation omitted).  A bare recitation of the elements as a conclusion is insufficient.  *Id.*; *see also Ansari v. Elec. Document Processing, Inc.*, No. 5:12-cv-01245, 2012 U.S. Dist. LEXIS 128622, *5 (N.D. Cal. Sep. 10, 2012) (striking all affirmative defenses).  At the very least, Abhyanker's Third (Lack of Standing), Fourth (Statute of Limitations), Sixth (Estoppel), Seventh (Laches), Eighth (Acquiescence), Ninth (Waiver), Tenth (Unclean Hands), Eleventh (Unenforceability), and Twelfth (Fraud on the USPTO) Affirmative Defenses are based on nothing more than a bare recitation of a doctrine.  There is certainly no other information in the Answer to support them.  This is not sufficient, and they should be struck.  *See, e.g., Perez v. Gordon & Wong Law Group, P.C.*, No. 11-cv-03323, 2012 U.S. Dist. LEXIS 41080, at *39-*41 (N.D. Cal. Mar. 26, 2010) (striking statute of limitations, laches, unclean hands, and waiver defenses, among others); *Monster Cable Products, Inc. v. Avalance Corp.*, No. 08-4792, 2009 U.S. Dist. LEXIS 23747, at *2-*8 (N.D. Cal. Mar. 11, 2009) (striking, *inter alia*, laches, estoppel, acquiescence, and statute of limitations affirmative defenses).

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

## CONCLUSION

2        For the foregoing reasons, Abhyanker's claims for trade secret misappropriation against

3  Nextdoor.com, Inc. and Prakash Janakiraman should be dismissed with prejudice, and his

4  affirmative defenses should be struck.

5  Dated:   April 25, 2013                    FENWICK & WEST LLP

6

7                                            By: /s/ Jennifer L. Kelly
                                                 Jennifer L. Kelly
8
                                             Attorneys for Plaintiff and Counterdefendant
9                                            NEXTDOOR.COM, INC. and Counterdefendant
                                             PRAKASH JANAKIRAMAN
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28