# EXHIBIT 2

# Part 2 of 3

affirmation of Plaintiff and the Nextdoor/Fatdoor concept right before Zynga was founded was a testament to the power and potential of the Nextdoor/Fatdoor idea and Plaintiff's ability, but for the interference and theft by Defendants as described in this Complaint.

86.    VentureBeat later covered the Nextdoor/Fatdoor concept again on May 28, 2007 in an article titled "Fatdoor turns neighborhoods into online social networks," dating the initial tests around Plaintiff's city of Cupertino, California between August 21, 2005 and November 15, 2006. The article also included a picture of Plaintiff's home and family in the user interface views:

> "Ever wanted to get to know your neighbors before interacting with them in real life? If so, fatdoor, which launches its public beta tomorrow, might be for you…. Fatdoor will start out covering Silicon Valley and spread outward…. The interface is clean and simple. The alpha version that we saw in a demo covered only a small part of Cupertino, CA. It had a neighborhood feel, with a page that highlights groups like the "Parent's Babysitting Exchange," and the "Kiwanis Club of Cupertino." (See Exhibit E).

The secret technical details, software algorithms, knowhow, and then unpublished patent applications that permitted the Nextdoor/Fatdoor concept to be built as described in the VentureBeat article of May 28, 2007 were misappropriated and stolen by Defendants through Taylor and Norris as described in this Complaint.

87.    Mashable.com also covered the Nextdoor/Fatdoor concept on May 28, 2007 in an article titled "FatDoor Launches Social Network for Your Neighborhood" showing a number of actual screenshots of the Nextdoor/Fatdoor concept and describing Nextdoor/Fatdoor as:

> "FatDoor is a way to get to know your neighbors on a very local level, and displays information over a Microsoft Virtual Earth map that can toggle between 2D and 3D views……If a neighbor hasn't been to FatDoor to "claim" their location, their icon will be shown on the street as opposed to their house, and you can leave messages for them that they will see once they've signed up to use the site. You can invite users to FatDoor with their email address or their street address." (See Exhibit F).

The secret technical details, software algorithms, knowhow, and then unpublished patent

Raj Abhyanker, P.C.
Mountain View, CA
rajpatent.com

- 24 -

applications that permitted the Nextdoor/Fatdoor concept to be built as described in the Mashable.com article of May 28, 2007 were misappropriated and stolen by Taylor and Norris as described in this Complaint.

88.     Wired Magazine also covered the Nextdoor/Fatdoor concept on May 31, 2007 in an article titled "Fatdoor CEO Talks About Balancing Security With Community" that described the difficult problem that Nextdoor/Fatdoor attempted to solve:

> "With all the commotion about everything that's visible on Google's StreetView, there seems to be a lot of justifiable paranoia associated with the swiftly evolving map tools on the market. Likewise, there's been a lot of speculation as to how security and privacy are going to be dealt with on the social networking sites that draw information from these web apps.... saw this at work earlier this week with the announcement of the alpha launch of social networking site Fatdoor at Where 2.0. As if the standard security issues aren't tricky enough when it comes to the average site, Fatdoor's mashup of Live Earth aerial images with wiki versions of users' neighborhoods has a lot of hand wringing going on." (See Exhibit G).

It should be noted that Taylor and Norris were part of the Google Maps team suffering from the privacy and security concerns centered around Google StreetViews described in the article above, as they joined Benchmark on or about June 2007 after leaving Google.

89.     The Wired Magazine article of May 31, 2007 went on to describe the general concepts of Nextdoor/Fatdoor developed by Plaintiff to account for neighborhood security :

> "It wasn't until Abhyanker let me take his neighborhood for a test drive that I started to understand how this actually plays out. Fatdoor is hardly the stalking tool we all feared. In fact, its simple interface made Abhyanker's own community fit together more like a wiki version of a town hall. Users in the neighborhood can broadcast general messages to the entire block, submit an entry about a local business, or even submit entries for friends and other neighbors. Abhyanker's neighborhood is even set up to elect moderators to help police this conduct too. Paired with the amount of control the user has over how much or how little information the neighborhood can access about themselves, it actually seemed....pretty safe." (See Exhibit G).

90.     In addition, the Wired Magazine article of May 31, 2007 went on to describe the end product of the secret confidential security algorithms developed by Plaintiff to account for

Raj Abhyanker, P.C.
Mountain View, CA
rajpatent.com

neighborhood security: "As far as peeking into other neighborhoods? Abhyanker has that covered too. "We've been playing around with the distance, and after some testing we've found that keeping it at a 5 mile radius [from the user's residence] is the most reasonable," he said. "It keeps the focus on the neighborhood and also keeps the feeling of community. Of course, this is something that we're going to have to change depending on the size and layout of a city, but during testing it seemed like the ideal distance." The secret technical details, software algorithms, knowhow, and then unpublished patent applications that permitted Nextdoor/Fatdoor concept to be built as described in the Wired Magazine article of May 31, 2007 were misappropriated and stolen by Taylor and Norris as described in this Complaint. (See Exhibit G).

91.   A press release was issued on Wednesday, October 26, 2011 reporting that a new website was launched called "Nextdoor.com" The CEO of Nextdoor was announced to be Tolia, a former EIR at Benchmark. Based on articles posted on the web, Tolia has inconspicuously been an EIR at Benchmark since at least March 2007. Tolia confirmed his Benchmark EIR status on or about August 30, 2007.

92.   The Economic Times reported on October 29, 2011 that Nextdoor.com, Inc. raised between $10 million and $15 million in venture capital financing from Benchmark and Shasta Ventures. Gurley, a partner at Benchmark Capital is an investor and on the Board of Nextdoor.com, Inc. Upon reason and belief, Benchmark misappropriated from Plaintiff, the key technology of limiting views of neighbors to only a constrained geo-spatial set from Nextdoor/Fatdoor through Taylor.

93.   On or about October 26, 2011, a San Jose Mercury News article titled "Epinions co-founder Nirav Tolia back in the saddle with Facebook-like startup" made it clear that Benchmark had funded Nextdoor.com, and that Taylor and/or Norris contributed to the venture:

> "Tolia said the site goes beyond neighborhood email listservs by giving
> users a simple and visually appealing interface and search tools. The key,
> he added, is software developed by an early Google (GOOG) Maps
> employee that makes sure only people who live in a specific neighborhood
> are able to join its network -- giving users a level of privacy that sites like
> Facebook don't." (See Exhibit H).

- 26 -

Raj Abhyanker, P.C.
Mountain View, CA
rajpatent.com

94.   Upon reason and belief, the early Google (GOOG) Maps employee referenced in the article above is Bret Taylor, who stole the key technology from the Plaintiff.   Tolia was inconspicuously an EIR at Benchmark in a failed attempt to keep confidential both his identity and Defendants' desire to start a competing venture to Fatdoor, Inc. An article in Gawker and Valleywag entitled "The rehabilitation of Nirav Tolia" published three months before the theft of the Nextdoor/Fatdoor concept by Defendants on March 21, 2007, stated: "Nirav Tolia is officially an EIR at Benchmark. Though he's not yet listed on the partnership's website along with the other EIRs."

95.   In a follow up article published a few weeks after Fatdoor, Inc. terminated Plaintiff and retained the headhunter referred by the Defendants, VentureBeat wrote on August 29, 2007: "Nirav Tolia, who led one of the darling and prescient Web sites of the last boom, Epinions, but then who fell into controversy, and then disgrace, is back in the game.   He has joined Silicon Valley venture capital firm Benchmark Capital as an 'Entrepreneur in Residence,' a position that lets him work at Benchmark's offices, sit in on company pitches and search for his next idea."

96.   The next idea in the VentureBeat article is Nextdoor.com, Inc., a Delaware corporation formed on or about December 4, 2007.  The nature and business of this company was made public on or about October 16, 2011.  The entire basis for Nextdoor.com, Inc.'s business rests on this stolen and misappropriated materials now owned by Google, Inc. through it's acquisition of the Nextdoor/Fatdoor patent portfolio of Center'd Corporation.  Upon reason and belief, Benchmark funded Nextdoor.com, Inc. with between $10 million and $15 million in equity capital between December 4, 2007 and October 16, 2011.

97.   Defendant Nirav Tolia was inconspicuously an EIR at Benchmark in a failed attempt to keep his identity and the Defendants' desire to start a competing venture to that of Plaintiff confidential.   An article in Gawker and Valleywag titled "The rehabilitation of Nirav Tolia" on March 21, 2007 characterizes the current CEO of Nextdoor.com, Inc. as :

> "Nirav Tolia — the Epinions exec who lied on his resume and provoked a
> bitter legal dispute with his fellow founders — is back…. Epinions, a
> database of user reviews on everything from gadgets to holiday resorts, was

- 27 -

one of the hottest internet startups of 1999. Tolia made about $20m when the venture merged with Dealtime and then went public. But his fellow founders, whose shareholdings were wiped out in the deal, claimed Tolia had won their consent only by withholding vital information about Epinions' prospects. Already tarnished by the controversy, Tolia left the company, and the Valley, in something close to disgrace, when it emerged he'd lied about working for McKinsey, the elite management consultants."

98.   A follow-up article appeared in Gawker and Valleywag titled "Nirav Tolia goes to Benchmark" on August 29, 2007, less than two week after Plaintiff was fired from Fatdoor, Inc., and approximately four months before Nextdoor.com, Inc. was officially incorporated listing Nirav Tolia as the CEO stating:

"The rehabilitation of Nirav Tolia is not just complete — it is, at long last, confirmed. The cofounder of Epinions, though tarred by old controversies, will announce tomorrow morning that he has, indeed, landed a long-rumored spot at Benchmark Capital as an entrepreneur-in-residence. (Back in March, Valleywag emeritus Nick Denton was told by several people Tolia was heading to Benchmark.) He'll be joined there by Sarah Leary, a former Epinions executive, and both hope to look at startup ideas having to do with online community and user-generated content."

99.   Because the first article was published in March 2007 and the second in August 2007, the facts reveal a clear pattern and conspiracy by the Defendants. The Defendants conspired to keep the identity of Nirav Tolia secret in an effort to mislead, misguide, and steal the confidential knowhow, trade secrets, algorithm and business methods around the time of their learning all the details of the Nextdoor/Fatdoor venture from the Plaintiff in June 2007.

100.   The relationship between Defendant Taylor and Defendant Norris is clear, including in a number of Twitter posts including a post by Defendant Tolia. For example, on June 2, 2010, Defendant Nirav Tolia wrote in his Twitter feed :

"Wow, Bret promoted to CTO at Facebook - smart, great guy. Congrats!

101.   An article in VentureBeat also appears on August 29, 2007 in which the relationship between Defendants Tolia, Taylor, Norris, and Benchmark is made crystal clear :

"Nirav Tolia, who led one of the darling and prescient Web sites of the last boom, Epinions, but then who fell into controversy, and then

Raj Abhyanker, P.C.
Mountain View, CA
rajpatent.com

Raj Abhyanker, P.C.
Mountain View, CA
rajpatent.com

disgrace, is back in the game. He has joined Silicon Valley venture
capital firm Benchmark Capital as an "Entrepreneur in Residence," a
position that lets him work at Benchmark's offices, sit in on company
pitches and search for his next idea."

102.    The article in VentureBeat on August 29, 2007 continues to describe the character

of Defendant Tolia with respect to veracity and with respect to his previous dealings with Google

Inc., the current owner of the Nextdoor/Fatdoor patent portfolio on which the Plaintiff is the lead

inventor:

"Google had considered buying Epinions, but some reports suggested it
canceled the deal after discovering Tolia had falsely claimed he'd been
employed as a consultant with McKinsey & Co. He also wrongly stated
he'd graduated from Stanford University. Tolia was forced to resign from
Shopping.com. The mistake was another reason eBay settled a lawsuit filed
by early founders at Epinions claiming firms conspired with fellow founder
Nirav Tolia to deprive them and other employees of nearly $40 million
after the acquisition…. Smarting from the controversy, Tolia moved to
New York where he had friends and lay low. He and firms Benchmark and
August have steadfastly declined to comment on the case."

103.    In addition, the article in VentureBeat on August 29, 2007 describes the

relationships between Defendants Tolia, Taylor, Norris, and Benchmark very clearly:

"There, Tolia will join an impressive roster of other Benchmark EIRs,
including former Google employees, Bret Taylor and Jim Norris (see our
coverage), Mike Cassidy (our coverage) and Dave Goldberg (our
coverage). Tolia brings with him Sarah Leary (below), an early employee
at Epinions. She will also be an EIR."

104.    Additionally, co-conspirators and Defendants Taylor, Gurley, Tolia, and Norris are

all connected friends on Facebook as of November 3, 2011. Upon reason and belief, these former

EIRs at Benchmark conspired in an illegal scheme to defraud and steal confidential trade secrets

and knowhow from the Plaintiff in late June 2007 for the above mentioned reasons.

105.    The matter is further supported by the fact that Defendants Benchmark and Tolia

incorporated Nextdoor.com, Inc. on December 4, 2007, less than six months after

misappropriating confidential information from Plaintiff. The article in VentureBeat on August

29, 2007 explains the role Defendant Benchmark had for Defendant Tolia:

"Tolia and his partner Leary do not have any set mandate as EIRs, but are expected to start their own company at some point (they are not a couple, by the way, something you might ask because they tag around so much together; they've just been through a lot with the Epinions saga, and consider themselves a team)."

106.    Upon reason and belief, the responsibility that Defendant Tolia had at Benchmark as an EIR was to steal the Nextdoor/Fatdoor concept from Plaintiff. Certainly, funding was not an issue for Defendant Nirav Tolia, as Defendant Benchmark had funded Defendant Tolia in the past with little more than a PowerPoint presentation. Upon reason and belief, it was easy for Defendant Tolia to raise money from Defendant Benchmark because they jointly conspired to misappropriate and steal confidential materials from Plaintiff.

107. Plaintiff went on unemployment for the remainder of 2007 as he has no law practice to fall back on. Had to rebuild every client from scratch as the sole income earner for his family of four, and was unable to complete graduate studies in engineering at Stanford University because of a lack of financial resources.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### (Against all Defendants for Intentional Interference with Existing and Prospective Economic Advantage)

108. Plaintiff incorporates the allegations made in Paragraph 1 through 107 as if stated herein in their entirety.

109. Prior to engaging in the aforementioned conduct, Defendants were fully aware that Plaintiff had business relationships with numerous other investors, venture capitalists, and parties interested in Plaintiff's confidential business ideas and novel inventions. Plaintiff is informed and believes and thereon alleges that, in addition to the relationship between Plaintiff and Defendant Benchmark, Defendant Benchmark also had a parallel and illicit relationship with Defendants Tolia, Harvey, Taylor, and Norris. The conduct of Defendants as described above was designed to wrongfully disrupt the economic relationships between Plaintiff, Fatdoor, Inc., and its clients, and indeed, the relationships were disrupted as a result of Defendants' actions.

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

110. In addition, Plaintiff had established relationships with numerous clients and businesses that were interested in Plaintiff's confidential business ideas and novel inventions to the substantial benefit of Plaintiff. Defendants knew of these relationships as a result of their pre-investment dealings with Plaintiff and through their actions, intentionally interfered with Plaintiff's existing and prospective economic advantage.

111. As a result of the conduct of Defendants, Plaintiff has been damaged in an amount in excess of Five Million Dollars, the exact amount of which will be proven at the time of trial. When Plaintiff has ascertained the full amount of his damages, he will seek leave of Court to amend this Complaint accordingly.

112. The conduct of Defendants as alleged herein was purposeful and intentional and was engaged in for the purpose of depriving Plaintiff of property or legal rights or otherwise causing injury, and was despicable conduct that subject Plaintiff to cruel and unjust hardship in conscious disregard of its rights, and was performed with fraud, oppression or malice so as to justify an award of exemplary or punitive damages against Defendants in excess of Five Million Dollars, the exact amount of which will be proven at the time of trial.

### SECOND CAUSE OF ACTION
### (Against all Defendants except Defendants Tolia and Leary for Breach of Confidence)

113. Plaintiff incorporates the allegations made in Paragraph 1 through 112 as if stated herein in their entirety.

114. Plaintiff conveyed to Defendants his business ideas and inventions related to Fatdoor, which were confidential and novel.

115. Defendants knew that Plaintiff's business ideas and inventions were disclosed to them in confidence.

116. There was an understanding between Plaintiff and Defendants that such confidence should be maintained.

117. Defendants disclosed, misappropriated and used Plaintiff's business ideas and inventions in violation of such understanding.

118. Defendants violated such understanding knowingly and willfully.

119. As a direct and proximate result of Defendants' actions alleged above, Plaintiff has no adequate legal remedy, has been irreparably injured, and has suffered monetary damages in excess of Five Million Dollars, the exact amount of which will be proven at the time of trial.

## THIRD CAUSE OF ACTION
### (Against Defendants Benchmark, Harvey, Fenton, Taylor, Norris, Gurley and Lasky for Breach of Contract)

120. Plaintiff incorporates the allegations made in Paragraph 1 through 119 as if stated herein in their entirety.

121. Plaintiff and Defendant Benchmark entered into a contract on or about the summer of 2007 wherein Plaintiff supplied confidential information to Defendant Benchmark related to Fatdoor, Inc. for the explicit purpose of conducting due diligence prior to potential investment in Fatdoor, Inc.

122. As part of the aforementioned contract, Defendant Benchmark was fully aware that Plaintiff supplied aforementioned confidential information for the explicit purpose of due diligence related to a potential investment in Fatdoor, Inc. by Defendant Benchmark.

123. As part of the aforementioned contract, Defendants explicitly represented to Plaintiff that they were not developing a company similar to the Nextdoor/Fatdoor concept, and even cleared all conflicts of interest in writing.

124. Plaintiff performed all the conditions, covenants, and promises of the aforementioned contract in accordance with the terms and conditions of the oral contract by supplying Defendant Benchmark with confidential information regarding Nextdoor/Fatdoor and requested by Defendant Benchmark explicitly for pre-investment due diligence purposes.

125. Defendant Benchmark breached the agreement with Plaintiff by misappropriating the confidential information supplied by Plaintiff and funded Nextdoor.com, Inc. with the confidential information misappropriated from Plaintiff despite explicitly stating to Plaintiff, as a part of the agreement, that it was not developing a company similar to Plaintiff's company.

- 32 -

Raj Abhyanker, P.C.
Mountain View, CA
rajpatent.com

126. Defendant Benchmark therefore breached its contract with Plaintiff, who has been damaged in excess of Five Million Dollars, the exact amount of which will be proven at the time of trial.

## FOURTH CAUSE OF ACTION
### (Against all Defendants for Fraud and Conspiracy to Defraud)

127. Plaintiff realleges and incorporates by reference paragraphs 1 through 126 as if stated herein in their entirety.

128. Defendants violated the common law of fraud and California Civil Code §§ 1709, 1710, and 1572 through the material misrepresentations and non-disclosures alleged above, including the failure to truthfully respond to Plaintiff with respect to their conflicting interest and position in building Nextdoor.com, Inc. only months after misappropriating confidential information from Plaintiff. Defendants failed to disclose material facts concerning the creation of Nextdoor.com, Inc. – a company which was conceived and created from confidential information fraudulently misappropriated from Plaintiff. Through their fraudulent actions, Defendants Harvey, Fenton, Taylor, Norris, Gurley, Lasky and Love aided and abetted the other Defendants in their fraudulent conduct.

129. Defendants made their material misrepresentations knowing that their statements were false and misleading and with the intent to defraud Plaintiff and other shareholders of Fatdoor, Inc. As alleged above, Defendants conspired with one another to make the material misrepresentations and acted in furtherance of their conspiracy by using those material misrepresentations to illegally compete with Fatdoor, Inc.

130. Plaintiff and Fatdoor, Inc. relied on Defendants' material misrepresentations by disclosing trade secrets, business plans, unpublished confidential patent applications, knowhow, and software technologies regarding the Nextdoor/Fatdoor conception.

131. As a proximate result of relying on Defendants' material misrepresentations, Plaintiff incurred actual damages consisting of the loss of his common shares in Fatdoor, Inc., loss of his employment with Fatdoor, Inc., and the value of the equity interests he would now

Raj Abhyanker, P.C.
Mountain View, CA
rajpatent.com

have had in building and contributing to the original Fatdoor, Inc. concept.

132. Defendants' fraudulent conduct alleged above was done intentionally, through malice, fraud and oppression, with the intention of the part of the Defendants to deprive Plaintiff of his common stock and legal rights and was despicable conduct that subjected Plaintiff to cruel and unjust hardship in conscious disregard for Plaintiff's rights, so as to justify an award of exemplary and punitive damages.

### FIFTH CAUSE OF ACTION
### (Against all Defendants for Constructive Fraud and Aiding and Abetting Constructive Fraud)

133. Plaintiff realleges and incorporates by reference paragraphs 1 through 132, inclusive, set forth above.

134. Defendants are liable to Plaintiff for constructive fraud because they aided and abetted the other Defendants in their concealment of material facts concerning the business operations of Defendant Benchmark. Defendant Benchmark, through its partners and EIRs, actively supported, encouraged, aided and abetted other Defendants and actively participated in constructive fraud and concealing material information concerning their intentions to misappropriate Fatdoor Inc.'s confidential information in the guise of using that information to conduct potential pre-investment due diligence but instead created a similar company of their own – Nextdoor.com, Inc.

135. As a proximate result of relying on Defendants' material constructive fraud, Plaintiff incurred actual damages consisting of the loss of his common shares in Fatdoor, Inc., loss of his employment in Fatdoor, Inc., and the value of the equity interests they would have now had in building and contributing to the original Fatdoor, Inc. concept. In addition, Plaintiff has suffered losses in excess of Five Million Dollars, the exact amount of which will be proven at the time of trial.

136. Defendants' constructively fraudulent conduct alleged above was done intentionally, through malice, fraud and oppression, with the intention of the part of the Defendants to deprive Plaintiff of his common stock and legal rights and was despicable conduct

Raj Abhyanker, P.C.
Mountain View, CA
rajpatent.com

Raj Abhyanker, P.C.
Mountain View, CA.
rajpatent.com

1   that subjected to Plaintiff to cruel and unjust hardship in conscious disregard for Plaintiff's rights,

2   so as to justify an award of exemplary and punitive damages.

3                          **SIXTH CAUSE OF ACTION**
4              **(Against Defendant Benchmark for Unjust Enrichment)**

5      137. Plaintiff incorporates by reference paragraphs 1 through 136, inclusive, set forth

6   above.

7      138. Defendant Benchmark did in fact receive, obtain and/or gain the use and/or

8   possession of such assets and intellectual property of Plaintiff and Fatdoor, Inc. as referenced in

9
10  this Complaint.

11     139. Defendant Benchmark would be unjustly enriched if they were to retain and/or

12  realize the benefit of said assets and intellectual property without compensating Plaintiff for the

13  fair value thereof.

14     140. Plaintiff is entitled to restitution and declaratory relief.

15     141. Defendant Benchmark's wrongful acts and omission in commission and

16  furtherance of their aforesaid unjust enrichment which are attributable to Defendants as aforesaid,

17
18  were engaged in willfully, wantonly and deliberately, and with the intent to cause damage to

19  Plaintiff or with reckless disregard of the substantial likelihood that Plaintiff would suffer and

20  incur damages thereby, and as such were so outrageous and shocking to the conscience that the

21  imposition of punitive damages upon Defendant Benchmark is warranted.

22

23                         **SEVENTH CAUSE OF ACTION**
     **(Against Defendant Benchmark for Unfair Business Acts and Practices in Violation of**
24       **Business and Professions Code, California Civil Code § 17200 *et seq.*)**

25     142. Plaintiff incorporates by reference paragraphs 1 through 141, inclusive, set forth

26  above.

27     143. Plaintiff is informed and believes and thereon alleges that, at all times herein

28

                                    - 35 -

mentioned, Defendants Tolia, Taylor, and Norris were agents of Defendant Benchmark and, in doing the things herein alleged, were acting in the scope of such agency and with the permission and consent of Defendant Benchmark.

144. Beginning on or about June 15, 2007, Defendant Benchmark was privy to Plaintiff's business methods, plans, and concepts as to Nextdoor/Fatdoor and geospatial localization technologies.

145. Defendant Benchmark, on or about July 27, 2007, recommended to the board of Fatdoor, Inc. that the company move away from neighborhood-based technologies and business.

146. On information and belief, on or about August 15, 2007, Plaintiff was terminated from Fatdoor Inc. based on the guidance of a headhunter and recruiter recommended to the board of Fatdoor Inc. by Defendant Benchmark.

147. On information and belief, on or about October 26, 2011 a new neighborhood-based startup website "Nextdoor.com" was launched based substantially on Plaintiff's business methods, plans, and concepts as to Nextdoor/Fatdoor and geospatial localization technologies. On information and belief, Defendant Benchmark is one of the primary financiers of said startup.

148. As a direct, proximate, and foreseeable result of Defendants' wrongful conduct, as alleged above, Plaintiff was subject to loss of employment, loss of his common shares in Fatdoor Inc., and loss of contributory equity interests to the original Fatdoor, Inc. concept. Plaintiff is entitled to relief, including full restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits which may have been obtained by Defendant Benchmark as a result of such unfair business acts or practices.

## EIGHTH CAUSE OF ACTION
### (Against all Defendants for Violations of California Corporate Securities Laws, California Corporations Code §25400 *et seq.*)

149. Plaintiff incorporates by reference paragraphs 1 through 148, inclusive, set forth

Raj Abhyanker, P.C.
Mountain View, CA
rajpatent.com

above.

150. Defendants, by engaging in the conduct described above, induced the sale of a security in the state of California by means of both written and oral communications which included an untrue statement of material fact and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

151. As a proximate result of the fraudulent conduct of Defendant as herein alleged, Plaintiff has incurred damages in that Plaintiff was induced, in conjunction with other common shareholders of Fatdoor, Inc., to take on alternate investments from Norwest Venture Capital and alter the designation of Plaintiff's vested shares from unrestricted to restricted, all by reason of which Plaintiff has been damaged in at least the sum in excess of the jurisdictional amount of this Court and additional amounts according to proof at time of trial, including interest, attorneys' fees and costs.

152. The aforementioned conduct of Defendants, and each of them, was an intentional misrepresentation, deceit, or concealment of a material fact known to each of the Defendants with the intention on the part of the Defendants of thereby depriving Plaintiff of property or legal rights or otherwise causing injury, and was despicable conduct that subjected Plaintiff to unjust hardship and conscious disregard of Plaintiff's rights, so as to justify an award of exemplary and punitive damages.

## NINTH CAUSE OF ACTION
### (Against Defendant Benchmark for Misappropriation of Trade Secrets, California Civil Code § 3426 *et seq.*)

153. Plaintiff incorporates by reference paragraphs 1 through 152, inclusive, set forth above.

154. As a result of investment discussions with Fatdoor, Inc., Defendant Benchmark became intimately familiar with Fatdoor Inc.'s operations and was granted access to Nextdoor/Fatdoor trade secrets.

Raj Abhyanker, P.C.
Mountain View, CA
rajpatent.com

155. Defendant Benchmark knew or had reason to know that the Nextdoor/Fatdoor trade secrets that were acquired as alleged herein constituted or contained protectable trade secrets in that the information had independent economic value, was not generally known to the public or to others who could have obtained economic value from the disclosure or use of the information, and was the subject of reasonable efforts by Fatdoor, Inc. to ensure the secrecy of such information.

156. Plaintiff is informed and believes, and based thereon alleges, that Defendant Benchmark misappropriated and will continue to misappropriate Nextdoor/Fatdoor trade secrets to their own economic benefit by the wrongful disclosure and use of such information, without the consent of Fatdoor, Inc. while knowing or having reason to know that they had acquired the Nextdoor/Fatdoor trade secrets under circumstances giving rise to a duty on their part to maintain their secrecy.

157. Plaintiff believes, and based thereon alleges that Defendant Benchmark's employees and agents disclosed such Nextdoor/Fatdoor trade secrets to Nextdoor, Inc.'s employees and agents.

158. As a proximate result of Defendant Benchmark's acts of misappropriation and use of Nextdoor/Fatdoor trade secrets, Plaintiff has suffered damages to date based on, among other things, loss of employment, loss of his common shares in Fatdoor Inc., loss of contributory equity interests to the original Fatdoor, Inc. concept, and expenses incurred in his efforts to remedy the effects of Defendant Benchmark's unlawful conduct, in an amount not now known, but Plaintiff is informed and believes, and thereon alleges, exceeds the jurisdictional threshold for classification as an unlimited civil case. Unless Defendant Benchmark is enjoined, such damages will increase. Plaintiff will seek leave of Court to amend this Complaint to set forth the exact amount of damages when they have been ascertained.

Raj Abhyanker, P.C.
Mountain View, CA
rajpatent.com

159. Plaintiff is informed and believes, and based thereon alleges, that Defendant Benchmark has acted with oppression, fraud, and/or malice, and has deliberately caused and has intended to cause great economic harm to Plaintiff with full knowledge of the wrongfulness of its conduct. Plaintiff is further informed and believes, and based thereon alleges, that Defendant Benchmark's conduct as alleged above was despicable, was carried on by Defendant Benchmark with a willful and conscious disregard of Plaintiff's rights, and subjected Plaintiff to unjust hardship. Therefore, Plaintiff should be awarded punitive and exemplary damages sufficient to punish Defendant Benchmark for engaging in this conduct and to deter similar conduct on their part in the future.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment, jointly and severally, against Defendants, as follows:

1. Restitutionary and Compensatory damages in an amount to be proven at trial;

2. Founders equity equivalent to 25% of the company Nextdoor.com, Inc., a Delaware corporation;

3. Punitive and exemplary damages based on Defendants' intentional, malicious, cruel and unjust disregard of Plaintiff's rights and interests;

4. Pre-judgment expenses, costs, attorneys' fees and such other legal and equitable relief as the Court deems appropriate.

Dated: November 10, 2011.

Raj Abhyanker P.C.

By _____
Ashwin K. Anand

*Attorney for Plaintiff,*
*Raj Vasant Abhyanker*

1

2 ### JURY TRIAL DEMAND

3      Plaintiff hereby demands a jury trial for all causes of action alleged in his Complaint for

4 which he is entitled to a trial by jury.

5

6 Dated: November10, 2011

7

8                                          Raj Abhyanker P.C.

9                                          By _____
                                               Ashwin K. Anand

10

11                                         *Attorney for Plaintiff,*
                                           *Raj Vasant Abhyanker*
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

*Raj Abhyanker, P.C.*
*Mountain View, CA*
*rajpatent.com*

# TABLE OF CONTENTS

| | |
|---|---|
| Exhibit A : | Confidential Screenshots of Nextdoor, shared with Defendants at 7am on Friday June 22, 2007 |
| Exhibit B : | Confidential Disclosure Document of Nextdoor, shared with Defendants at 7am on Friday June 22, 2007 |
| Exhibit C : | Confidential Executive Summary of Fatdoor, Inc., shared with Defendants at 7am on Friday June 22, 2007 |
| Exhibit D : | Confidential Patent Application of Fatdoor, Inc., shared with Defendants at 7am on Friday June 22, 2007 titled U.S. Patent Application number 2007/0218900 A1 titled "MAP BASED NEIGHBORHOOD SEARCH AND COMMUNITY CONTRIBUTION" (See Exhibit 4) on which the name "Nextdoor.com" is clearly associated as the domain name intended to be used by Fatdoor, Inc. (page 21, col. 1, paragraph [0236]) |
| Exhibit E: | VentureBeat article on Nextdoor/Fatdoor, titled "Fatdoor turns neighborhoods into online social networks" May 28, 2007 |
| Exhibit F : | Mashable article on Nextdoor/Fatdoor, titled "Fatdoor launches social network for your neighborhood" May 28, 2007 |
| Exhibit G : | Wired article on Nextdoor/Fatdoor, titled "Fatdoor CEO talks about balancing security with community" May 31, 2007 |
| Exhibit H: | Mercury News article on illegal and illicit Nextdoor.com, Inc., titled "ePinions co-founder Nirav Tolia back in the saddle with Facebook-like startup" October 26, 2011 |
| Exhibit I : | Wikipedia article on Bret Taylor, CTO of Facebook, formerly EIR at Benchmark Capital, formerly co-creator of Google Maps |

# EXHIBIT A

# Nextdoor

Find a Friend!

Search in:  Name
Search terms:  neighborhood

Join Now & Own Your Profile!

Already a Member? Sign In Now

## Babar Rana's Profile



**Babar Rana**
1995 Tara St, Palo Alto CA 94301

View More Photos of Babar (13)
View Babar's friends
View All of Babar's Friends
Add Babar as a friend

**Information**

Legal Name: ?
Gender: Women
Birthdate: 5 August 1981
Status: Relationship Independent

**Contact Info**

Email: babar@neighborhood.com
Cell: (650) 456-1271
Username: BR9801

**Personal Info**

Schools: BA, BS, Stanford University
Interests: Computers, Art, Sports, Writing, Music

**Favourites**

Books: Loves, Arabic and Persian, Famous Faces, Alabama, Any Dish, Greek
Musics: Rumbuka & Bollywood, Afro Cuban, Rumbua, Flashmusic, USA?
Movies: Gladiator, Godfather series, Avatar, Mediterranean, Iranian, Steak

**Babar's Notes**

 Garage Sale 10 am, Sunday 10/28!!!
Random stuff starting at $5
Free lemonade!

 I found a dead mouse in my burrito at
Papa Taco s! That place sucks!!!

## Babar's Wall

 George Fergie
I'm watching you, buddy.

Raj Abhyankar
This kid sucks, big time

Parm
OMG I can't believe we're
neighbours!!! Yay!

Anonymous
Babar a great guy,
always helps me fix stuff
around the house

### Events in Your Area

Babar Rana: Garage Sale 10 am, Sunday 10/28!!! Random
stuff starting at $5. Free lemonade!
Find This Event

Parm: "Save the Squirrels" Rally 2pm, Sunday 10/22, BYOB
Find This Event
Walk-ons welcome!

Raj Abhyankar: Selling my house!! 10am - 4pm Monday, 10/23
Find This Event

### Businesses & Classifieds in Your Area

Taco Hut: $3 off Burritos before 9am all week!
Find This Place!

Serena Apts: Vacancies on Suites, 2BR, & 3BR, starting at
$600! Call (650) 123-4567
Find This Place!



# EXHIBIT B

# NextDoor.com.
## Specification Draft 1
## "Get to know your neighbors"

This idea is too exciting for me to wait till the middle of the night to get this to you!  Let me know your feedback/questions, and please feel free to suggest improvements/ideas.  Ideally, we need to get a fully functional site up in 30 days with the most basic features/functionalities.



## SUMMARY :

Basically, what we want to create is mixture of a social network, zillow.com, maquest, eopininons, google, and wikipedia.

What we are trying to create is a way to create a way for neighbors to get to know each other and their surrounding businesses more easily through the Internet.    The UI of the site will look a bit like Zillow.com, but modified so that there will be a social networking page pop up on the right when one clicks a particular home/location.   Unlike Zillow.com however, there will be no information about prices of a home, no information about the number of bedrooms of a home, etc.

People will be the focus, not the real estate.  In essence, the most critical input information will be divided as follows

## RESIDENTIAL LOCATION :
(1) name of the persons/family living in that residence
(2) Their profession if any
(3) Their educational background if any
(4) Their recreational interests
(5) About their family description box
(6) Anything else people want to post about that person including their interests, hobbies, etc. See linked.com for an idea of possible fields.
(7) An ability for users to leave endorsements

## BUSINESS LOCATION or CIVIC LOCATION (park, govt building, church, etc.) :
(1) name of the business/location
(2) email of the manager of the business/location
(3) phone number of the business/location if known
(4) anything else people want to say about the business (good or bad), contributable through a wiki.

These two will be the primary types of types.  The following things will differentiate NextDoor.com from other social networks.

Copyright, 2006, Nextdoor, Inc.  Raj Abhyanker.  Patents Pending. Confidential. 1 of 3

**NEXTDOOR FEATURES LIKE ZILLOW :**
1. interface driven by address like zillow
2. maps can be viewed, zoomed in on, tied to a parcel # like Zillow
3. need to license from source of zillow or similar location.
4. no home price or bedroom etc. info. Rather info about people that live in homes. Also, info about businesses unlike zillow.

**NEXTDOOR FEATURES LIKE WIKIPEDIA :**

1. Anyone can populate anyone's social network page.
2. Anybody can post in one of the boxes above. They can post anonymously or publicly.
3. If someone wants to override information that already has been established, they will need to have an identity (e.g., user name), to override published posting information.
4. If an owner of an entity location wishes to mark their location private, and uneditable by the public without their permission, they will need to pay nextdoor.com $9.95 per month.

**NEXTDOOR FEATURES LIKE SOCIAL NETWORK :**
1. Spreads virally by users inviting their friends like a social network.
2. Every person that registers will have their own profile, but registration is not required to contribute content. Registration is required to "own" content on your own home, and have override permission to delete things that you don't like about yourself listed about you by others.   To register, Nextdoor will need to confirm the user's identity and address (e.g., digital signature tool, drivers license verification, etc.), and the user will need to pay a credit card for $9.95 per month to control their identity. They can get a rebate, and not have to pay the monthly fee for a particular month, if they invite at least 15 people that month AND contribute information about at least 10 of their neighbors, friends, civic, or business locations in their neighborhood.
3. Endorsements for neighbors by others will be published automatically.
4. People can post pics of their family, their business, their home, etc. on their profile once they 'own' their home and register.
5. People can search for other people by descriptors (e.g., name, profession, distance away from me, etc.)
6. Social network pages created on the fly, when one clicks on a home

**NEXTDOOR FEATURES LIKE MAPQUEST:**
1. People will be able to visually see directions to their neighborhood businesses, rather than directions through text in the first phase.
2. After time, directions can be offered as well.

**NEXTDOOR FEATURES LIKE EOPINIONS:**
1. People can leave their opinions on businesses like epinions, but in addition, can leave opinions on neighbors.

**NEXTDOOR FEATURES LIKE GOOGLE:**
1. People can search for things they want e.g. nearby pizzas etc. by distance away.
2. Advertisers can 'own' their listing by placing a display ad on nextdoor.com. instead of click through revenues when someone leaves the site, revenues will be when the link is clicked and someone views the preview html on the right of the visual map.
3. Targeted advertisements placed when someone searches a particular street, name, city, etc. (like adwords).

**OTHER FEATURES :**
1. Apartment, building, condo creation wiki – people can create floors, layout, etc. of their building, and add social network pages on the fly when they click on a location that has multiple residents, tenants, or lessees.
2. UI should be clean, simple, and uncluttered. Simple message of "get to know your neighbors". Map shows neighbors. Focus on user experience. Don't have about us, etc. easily accessible on page.   Make sure compelling message to invite friends others to join.

*Copyright, 2006, Nextdoor, Inc.  Raj Abhyanker.  Patents Pending. Confidential. 2 of 3*