# EXHIBIT 4

*Trademark Trial and Appeal Board Electronic Filing System. http://estta.uspto.gov*

| ESTTA Tracking number: | **ESTTA452395** |
|---|---|
| Filing date: | **01/20/2012** |

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

# Notice of Opposition

Notice is hereby given that the following party opposes registration of the indicated application.

## Opposer Information

| Name | Raj Abhyanker | | |
|---|---|---|---|
| Entity | Individual | Citizenship | UNITED STATES |
| Address | 1580 W EL CAMINO REAL STE 8 MOUNTAIN VIEW, CA 94040 UNITED STATES | | |

| Attorney information | Christopher Ditico Raj Abhyanker PC 1580 W EL CAMINO REAL STE 8 MOUNTAIN VIEW, CA 94040 UNITED STATES trademarks@rajpatent.com, cdditico@rajpatent.com Phone:650-965-8731 |
|---|---|

## Applicant Information

| Application No | 85236918 | Publication date | 01/10/2012 |
|---|---|---|---|
| Opposition Filing Date | 01/20/2012 | Opposition Period Ends | 02/09/2012 |
| Applicant | NEXTDOOR.COM, INC. 110 Sutter Street, Suite 700 SAN FRANCISCO, CA 94104 UNITED STATES | | |

## Goods/Services Affected by Opposition

Class 042.
All goods and services in the class are opposed, namely: Computer services, namely, online non-downloadable software which allows users to create on-line communities related to shared geographic boundaries, common interests, and local events and activities; Computer services, namely, creating an on-line community; computer services, namely, hosting online web facilities for others for organizing and conducting online meetings, gatherings, and interactive discussions; computer services in the nature of customized web pages featuring user-defined information, personal profiles and information; computer services, namely, creating an on-line community for registered users to participate in discussions, get feedback from their peers, form virtual communities, and engage in social networking; Providing a website that gives users the ability to review various print, photographic, graphic image, and audio and video content and utilize a custom template to provide input, likes, dislikes, edits, changes, modifications, opinions, suggestions, and comments and engage in social and community networking; Providing temporary use of non-downloadable software applications for classifieds, virtual community, social networking, photo sharing, and transmission of photographic images. Computer services, namely, providing search platforms to allow users to request content from and receive content to a mobile device; Providing customized on-line web pages featuring user-defined information, which includes blog posts, new media content, other on-line content, and on-line web links to other websites

## Grounds for Opposition

| *Torres v. Cantine Torresella S.r.l.Fraud* | 808 F.2d 46, 1 USPQ2d 1483 (Fed. Cir. 1986) |
| --- | --- |

| Related Proceedings | Opposer is also the Plaintiff in a pending lawsuit in Santa Clara County Superior Court in the State of California against the Applicant (CASE NO. 111-CV-212924 filed on November 11, 2011). |
| --- | --- |

| Attachments | 2012-01-20-NOO-TTAB-85236918.pdf ( 16 pages )(2037205 bytes ) |
| --- | --- |

# Certificate of Service

The undersigned hereby certifies that a copy of this paper has been served upon all parties, at their address record by First Class Mail on this date.

| Signature | /Christopher Ditico/ |
| --- | --- |
| Name | Christopher Ditico |
| Date | 01/20/2012 |

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
## TRADEMARK TRIAL AND APPEAL BOARD

In the matter of Trademark Serial No. 85236918
For the mark NEXTDOOR Published for Opposition on January 10, 2012

| | |
|---|---|
| **Raj Abhyanker** | |
| **Opposer** | **Opposition No.** |
| **Vs** | **MARK: NEXTDOOR** |
| **Nextdoor.com, Inc.** | **Serial No.  85236918** |
| **Applicant** | |

## NOTICE OF OPPOSITION

In the matter of U.S. Trademark Application Serial No. 85236918, filed on February 8, 2011 by Nextdoor.com, Inc. ("Applicant"), and published for opposition in the January 10, 2012 issue of the Official Gazette of the United States Patent and Trademark Office, for the trademark and service mark NEXTDOOR as applied to all goods and services listed in International Classes 9, 35, 38, 42, and 45 (the "Infringing Application").

Raj Abhyanker, an individual and citizen of the United States maintaining a principal address at 1580 W. El Camino Real, Suite 8, Mountain View, CA 94040 ("Opposer"), believes that he will be damaged by the registration of the NEXTDOOR mark (the "Infringing Mark") and hereby opposes the same.

1

As grounds for the cancellation, Opposer, by and through his attorneys, alleges as follows:

## FACTS COMMON TO ALL CLAIMS

1.   Opposer is an individual and citizen of the United States, with a principal address at 1580 W. El Camino Real, Suite 8, Mountain View, CA 94040. Opposer is the owner of the pending United States trademark application for the standard character mark NEXTDOOR (US Serial No. 85504896), filed on December 28, 2011 for goods and services in International Class 42. This application is live and pending.

2.   Opposer is a founder and former CEO of Fatdoor, Inc., a Delaware corporation formed on October 25, 2006.  Opposer is also the Plaintiff in a pending lawsuit in Santa Clara County Superior Court in the State of California against the Applicant (CASE NO. 111-CV-212924 filed on November 11, 2011).

3.   Opposer is a former owner of the common stock and vested options to purchase common stock of Center'd (d/b/a Nextdoor.com, d/b/a Fatdoor.com, d/b/a Centerd.com, d/b/a the Dealmap.com).  Center'd was purchased by Google, Inc. on or about July 29, 2011.

4.   Between October 25, 2006 and April 2, 2008, Center'd was named Fatdoor, Inc.

5.   At the time of the wrongful acts of Applicant in connection with the filing of the Infringing Application, Opposer personally owned, and continues to own, all rights to the name NEXTDOOR.   Opposer has had a continuous interest in the name NEXTDOOR even up to the filing of this Opposition, and has not abandoned any interest in that name.

6.   Opposer never assigned the rights to NEXTDOOR mark to Fatdoor, Inc., as Opposer was not an employee of Fatdoor, Inc., on October 24, 2006, and therefore had no legal obligation to assign rights to the NEXTDOOR mark to Fatdoor, Inc.   Opposer personally conceived and

2

maintained the NEXTDOOR mark prior to the employment agreement between Opposer and Fatdoor, Inc., commencing first on December 26, 2006.

7.   Applicant opportunistically filed for the Infringing Mark, as well as misappropriated and stole trade secrets owned by Opposer relating to the NEXTDOOR mark and Nextdoor/Fatdoor concept including, but not limited to, a wide variety of geo-spacial database, architecture, social networking, friend grouping, providing real time updates, feed aggregation, spheres of influence, application technologies associated with aggregate, filtering relevant feeds across multiple networks, filtering conversations across cross group interactions, providing in depth conversations through a social graph, editable user pages, community governance, neighborhood communication and geo-spacial social networking and the use of the name Nextdoor.com in association with the Nextdoor/Fatdoor concept all through false and misleading representations and omissions of material facts concerning Benchmark Capital Partners VII, L.P.'s and Benchmark Management Co. VII LLC's (collectively referred to as "Benchmark") obligations, intentions, financial affairs, business operations, and prospects.

8.   Applicant is currently the owner of the Infringing Application, United States Trademark Serial No. 85236918, for the mark NEXTDOOR, for the following listed goods and services: "Computer software, namely, computer software for creating private networks and communities; computer software providing a communications platform enabling users to create private networks and online communities based on geographic locations; Software to enable uploading, posting, showing, displaying, tagging, blogging, sharing or otherwise providing electronic media or information over the Internet or other communications network; Computer software development tools for social networking, building social networking applications and for allowing data retrieval, upload, access and management; computer software application

3

programming interface (API) for third-party software and online services for social networking, building social networking applications and for allowing data retrieval, upload, access and management" in International Class 9; "Advertising services; Advertising and information distribution services, namely, providing classified advertising space via the global computer network; promoting the goods and services of others over the Internet; providing on-line computer databases and on-line searchable databases in the field of classifieds; Online service for connecting social network users with retailers for the purpose of facilitating discounted purchases" in International Class 35; "Electronic transmission of instant messages and data; Chat room services for social networking; Providing on-line chat rooms for social networking; Providing online chat rooms and electronic bulletin boards for registered users for transmission of messages concerning local communities, news, and events, topics of general interest, classifieds, virtual community, social networking, photo sharing, and transmission of photographic images; provision of on-line forums for the transmission of photographic images and audio/video content; provision of on-line forums for communications on topics of general interest; providing access to computer databases featuring pre-populated and user-generated information related to topics of general interest" in International Class 38; "Computer services, namely, online non-downloadable software which allows users to create on-line communities related to shared geographic boundaries, common interests, and local events and activities; Computer services, namely, creating an on-line community; computer services, namely, hosting online web facilities for others for organizing and conducting online meetings, gatherings, and interactive discussions; computer services in the nature of customized web pages featuring user-defined information, personal profiles and information; computer services, namely, creating an on-line community for registered users to participate in discussions, get feedback from their

4

peers, form virtual communities, and engage in social networking; Providing a website that gives

users the ability to review various print, photographic, graphic image, and audio and video

content and utilize a custom template to provide input, likes, dislikes, edits, changes,

modifications, opinions, suggestions, and comments and engage in social and community

networking; Providing temporary use of non-downloadable software applications for classifieds,

virtual community, social networking, photo sharing, and transmission of photographic images.

Computer services, namely, providing search platforms to allow users to request content from

and receive content to a mobile device; Providing customized on-line web pages featuring user-

defined information, which includes blog posts, new media content, other on-line content, and

on-line web links to other websites" in International Class 42; and "Hosting an online

community website featuring shared communications between community members; Internet

based introduction and social networking services; providing on-line computer databases and on-

line searchable databases in the field of social, community and local networking" in International

Class 45.

   9.   The Infringing Mark as filed in the Infringing Application is identical to the word mark

as specified in Opposer's pending application Serial No. 85504896.  The Infringing Application

also lists goods and services that are in part identical to Opposer's listed goods and services in

Serial No. 85504896.

   10. Due to the similarities in Opposer's '896 application and the Infringing Application

outlined herein, it is likely that Opposer's pending '896 application will receive a Section 2(d)

refusal and/or Suspension Notice citing to the Infringing Application.

   11. Thus, Opposer will be damaged by the registration of the Infringing Application because

that application is blocking Opposer's pending application Ser. No. 85504896.

12. The Nextdoor/Fatdoor concept and many of Opposer's trade secrets were originally developed by Opposer on or about August 2005 over a year prior to his employment with Fatdoor, Inc.  At that time, Opposer was surprised by the lack of web based tools available to aggregate and organize information about friends in social networks, manage large amounts of user connections, determine relevancy from large amounts of social network connected content, provide real time updates, organize information related to social connections, create walking maps of neighborhoods, aggregate and filter relevant feeds across multiple networks, filter conversations across cross group interactions, provide in depth conversations through a social graph, and to annotate information regarding neighbors around a particular residence.  Opposer initially developed the Nextdoor/Fatdoor concept as a mash up of maps created using MapQuest and a Wikipedia style entry page for each neighbor that he met. A conception document was first prepared on or about August 21, 2005 and clearly included the name "Nextdoor."  Particularly, the document was titled: "NextDoor.com Specification Draft 1 - August 21, 2005 'Get to know your neighbors.'"

13. The conception document contained several paragraphs including: "What we are trying to create is a way to create a way for neighbors to get to know each other and their surrounding businesses more easily through the Internet.   The UI of the site will have a map of your home with a social networking page pop up on the right when one clicks a particular home/location. There will be no information about prices of a home, no information about the number of bedrooms of a home, etc.  People will be the focus, not the real estate."

14. Opposer and Fatdoor, Inc. intended to purchase the "www.nextdoor.com" domain name shortly after Series B funding.  Due to issues with procuring the "www.nextdoor.com" domain, Fatdoor, Inc., used the name "Fatdoor.com" as a second preference until the

6

"www.nextdoor.com" domain could be acquired.  On November, 21, 2006, Opposer on behalf of Fatdoor, Inc., filed a US federal trademark application for the mark FATDOOR for "Computer services in the nature of customized web pages featuring user-defined information, personal profiles and information, namely, providing location tagged profiles using spatial and geo-coded information through the Internet; Computer services, namely, providing a specialized search engine for finding personal, geographical and business data on a global network," in International Class 42 (US Serial No. 77049286).

15. Opposer worked diligently between on or about August 21, 2005 and June 15, 2006 to get the prototype Nextdoor/Fatdoor website built along with his business partner and assistant Babar Rana ("Rana").   During this period, Rana created screenshots and wireframes of the Nextdoor/Fatdoor concept using PowerPoint showing the name "Nextdoor."  There were two mockup images of the Nextdoor/Fatdoor concept prepared by Rana during this time period.  The first mockup image showed a photograph of Rana, with a personal profile wall feed from neighbors who provided comments on Rana's wall.  A search area box read "search neighborhood."  The word "Nextdoor" was clearly shown in the upper, left-hand side of the screenshot. A map was shown in the screenshot illustrating the location of Rana's hypothetical home and images indicating which neighbors had and had not joined the neighborhood surrounding Rana's home.

16. The second mockup image of the Nextdoor/Fatdoor concept prepared by Rana between on or about August 21, 2005 and June 15, 2006 also visibly and clearly showed the name "Nextdoor" in the upper, left-hand side of the site as well.  A message appeared on that mockup stating, "[g]et to know your neighbors."  Opposer's home was pictured on the map, along with photos of Opposer's family and next door residential and business neighbors visible on a map.

17. These two mockup images of the Nextdoor/Fatdoor concept were shared, pursuant to an oral confidentiality agreement between Opposer, Benchmark, Kevin R. Harvey ("Harvey"), and Peter Fenton ("Fenton"), both of whom are General Partners of Benchmark Capital Partners VII, L.P., equity holders in Benchmark Capital Management Co. VII LLC, and through the fund, equity holders of Applicant, Nextdoor.com, Inc., on or about on June 22, 2007.

18. These screenshots/conception mockups with the clearly visible NEXTDOOR mark, which, pursuant to oral confidentiality agreements, were provided by Opposer to Benchmark, Harvey, and Fenton, on or about June 22, 2007, were included as part of an investor diligence package that very same day.  The diligence package also was given, pursuant to oral confidentiality agreements, to Benchmark, Harvey, and Fenton on or about Friday, June 22, 2007, and, upon information and belief, was subsequently provided by Benchmark to Bret Taylor ("Taylor") a former Entrepreneur-in-Residence ("EIR") at Benchmark and James Norris ("Norris") a former EIR at Benchmark.  The diligence package also included other trade secrets owned by Opposer, including, at least key product details, algorithms, business plans, security algorithms, database structures, user interface designs, software code, product concepts, prototypes, methods, works of authorship, trademarks, white papers, and instrumentalities.

19. Following the June 22, 2007 confidential disclosure, and pursuant to oral confidentiality agreements, Harvey described the Nextdoor/Fatdoor concept to fellow Benchmark partners and EIRs at a Benchmark "offsite" meeting between, on or about, June 23 and June 25, 2007.

20. Then on or about June 27, 2007, Opposer was contacted by Harvey who requested that Opposer meet with Taylor and Norris to discuss Opposer's trade secrets related to the Nextdoor/Fatdoor concept.  Upon information and belief, some if not all of the material containing Opposer's trade secrets that Harvey and Fenton received from Opposer, including, but

8

not limited to, the diligence package, were provided to Taylor and Norris at the "offsite" meeting and/or before the meeting on or about June 27, 2007.  On or about, June 27, 2007, Harvey also entered an additional oral confidentiality agreement with Opposer in which he assured Opposer that Taylor and Norris would hold all information they obtained regarding Opposer's trade secrets in strict confidence and would not be starting any competing ventures.

21. Opposer met with Taylor and Norris at Benchmark's headquarters on or about June 27, 2007 based on Harvey's oral confidentiality agreement and assurances that Taylor and Norris would not disclose the Nextdoor/Fatdoor concept or start competing ventures.

Upon information and belief, during the June 27, 2007 meeting, Opposer learned from Taylor that he had reviewed the confidential information regarding Opposer's trade secrets while Taylor and Norris were at the "offsite" meeting.  To ensure that Opposer's trade secrets would remain confidential, Opposer asked Taylor and Norris to agree to hold the information regarding Opposer's trade secrets in strict confidence and if they had any conflicts of interest.  Taylor and Norris then verbally entered into an oral contract with the Opposer confirming that they would hold the information regarding Opposer's trade secrets in strict confidence.  Further, Taylor and Norris assured Opposer that they were working only with something in the consumer space which was totally different, and represented that Benchmark intended to invest in Fatdoor, Inc. to build the neighborhood concept.  Based on this oral confidentiality agreement, which was later acknowledged in writing, and the assurances of Taylor and Norris, Opposer disclosed the technical details of the Nextdoor/Fatdoor concept including portions of the Opposer's trade secrets.

22. On or about October 26, 2011, Opposer learned that Tolia, the CEO and Co-Founder of Applicant Nextdoor.com, Inc., worked at Benchmark and was a former EIR during the time of

9

the confidential disclosure of the Nextdoor/Fatdoor concept to Benchmark, Harvey, Taylor, and Norris.  Upon information and belief, Tolia had access to the confidential material including Opposer's trade secrets regarding the Nextdoor/Fatdoor concept disclosed by Opposer either at the "offsite" meeting and/or through his interactions with Harvey, Taylor and/or Norris while working as an EIR at Benchmark on or before the first week of September 2007, which he then used to develop the Fanbase.com and Nextdoor.com websites.

23. On or about September 7, 2007, Opposer was terminated from Fatdoor, Inc. Additionally, upon information and belief, on or about October 2007, Fatdoor, Inc. hired a new CEO, Jennifer Dulski ("Dulski"), based on a recommendation from headhunter John R. Love, who was referred to Fatdoor, Inc., by Benchmark.

24. On or about December 2007, approximately 6 months after the June 22, 2007 confidential disclosures, Benchmark, Harvey, Taylor, Norris, and/or Tolia, independently formed a new Delaware corporation, SPN, Inc.  SPN, Inc. changed its name to Round Two, Inc. in January 2008.  Round Two, Inc., changed its name to Fanbase, Inc., on or about August 2009, and then to Nextdoor.com, Inc., on or about March 2011.

25. Upon information and belief, Benchmark, Harvey, Taylor, Norris, and/or Tolia misappropriated Opposer's trade secrets related to the Nextdoor/Fatdoor concept by improper means including, but not limited to, stealing the Opposer's trade secrets and disclosing and using them in violation of the confidentiality agreement between Benchmark, Harvey, Taylor, Norris and/or Tolia and Opposer, and/or utilizing Opposer's trade secrets with actual or constructive knowledge that Opposer's trade secrets were either stolen and/or were disclosed in violation of confidentiality agreements.

26. For example, Benchmark, Harvey, Taylor, Norris, and/or Tolia obtained use of the domain name Nextdoor.com for use by Nextdoor.com, Inc.

27. On or about early 2007, WHOIS records showed the owner of Nextdoor.com as Forsyte Corporation ("Forsyte") in Nassau, Bahamas.

28. Then, on or about December 2007, the same month that SPN, Inc. was formed, a private, hidden bidder took over control of the Nextdoor.com domain, and moved it from Pool.com to GoDaddy.com.  Upon information and belief, a website "DomainsByProxy" was used to hide the domain purchaser's name, which likely purchased it from Forsyte.

29. Upon information and belief, the identity of the purchaser was kept secret until on or about March 25, 2010, when there was a sudden public change in the Whois record, indicating that the owner was Kevin Watson ("Watson"), who is the CEO of Next Door, LLC, a company that specializes in making door frames.  Upon information and belief, Watson was contacted regarding the purchase of the Nextdoor.com domain name by Josh Becker who represented Benchmark.  Upon information and belief, Watson received approximately fifty eight thousand five hundred dollars ($58,500.00) for the Nextdoor.com domain name.

30. On or about January 14, 2011, the domain registrant was updated from Watson to Prakash Janakiraman ("Janakiraman") on Steiner Street in San Francisco, California. Shortly afterward, the domain registration was updated to Sutter Street in San Francisco, California, the same street as Applicant.

31. On or about January 2011, the registrant for the Nextdoor.com domain was updated from Watson to Prakash Janakiraman ("Janakiraman") the Co-Founder and Vice President of Engineering at Nextdoor.com, Inc.  On or about, October 26, 2011, Tolia acknowledged the acquisition of the Nextdoor.com domain name in a <u>VentureBeat</u> article.  In addition, on or about

February 8, 2011, the Infringing Application was filed on behalf of Nextdoor.com, Inc. for the word NEXTDOOR.

32. Additionally, upon information and belief, Opposer's trade secrets relating to the Nextdoor/Fatdoor concept were incorporated by Benchmark, Harvey, Taylor, Norris and/or Tolia into key features of the websites of Fanbase.com and Nextdoor.com.

33. On or about April 2, 2008, Dulski changed the name of Fatdoor, Inc. to Center'd Corporation, Inc.  Dulski then made a strategic change away from the original Nextdoor/Fatdoor concept of getting to know your neighbors and moved the direction of Fatdoor, Inc., into a local site for mothers to plan events. The website created to host this concept, www.centerd.com, failed to gain traction and a decision was made to create a new effort called DealMap focused on the mapping of local deals.

34. On November 10, 2008, the original FATDOOR application (US Serial No. 77049286) filed by Opposer was abandoned due to a failure to file a Statement of Use.  At the time of abandonment, Dulski had already taken over as CEO of Fatdoor, Inc., and was transitioning the company away from its original Nextdoor/Fatdoor concept.

35. At the time of filing, the Infringing Application listed goods and services identical and similar to those listed in Opposer's prior-filed FATDOOR application (US Serial No. 77049286), namely "Computer services in the nature of customized web pages featuring user-defined information, personal profiles and information," and "computer software providing a communications platform enabling users to create private networks and online communities based on geographic locations."  Opposer's prior-filed FATDOOR application included multiple services incorporating geographical data: "Computer services in the nature of customized web pages featuring user-defined information, personal profiles and information, namely, providing

12

location tagged profiles using spatial and geo-coded information through the Internet; Computer services, namely, providing a specialized search engine for finding personal, geographical and business data on a global network" in International Class 42.

36. Since on or about January 2009, Opposer has diligently pursued development of the Nextdoor/Fatdoor concept, to secure the Nextdoor.com domain, and to pursue a revised neighborhood social networking concept.

## COUNT I – FRAUD

37. Petitioner repeats and realleges the allegations of the preceding Paragraphs as if fully set forth herein.

38. On February 7, 2011, in the Infringing Application, Applicant via its authorized representative, Co-Founder and CEO Nirav Tolia, knowingly made a false and fraudulent statement and declaration in the Infringing Application wherein Applicant falsely claimed, "he/she believes the applicant to be the owner of the trademark/service mark sought to be registered, or, if the application is being filed under 15 U.S.C. Section 1051(b), he/she believes applicant to be entitled to use such mark in commerce; to the best of his/her knowledge and belief ***no other person, firm, corporation, or association has the right to use the mark in commerce***, either in the identical form thereof or in such near resemblance thereto as to be likely, when used on or in connection with the goods/services of such other person, to cause." (emphasis added)

39. At the time Applicant and Tolia made the statement referred to above, Applicant and Tolia knew of Opposer's rights to the NEXTDOOR mark in connection with the goods and services listed in International Class 42 as alleged herein.

13

40. At the time Applicant and Tolia made the statement referred to above, Applicant and Tolia knew of Opposer's rights to the FATDOOR mark in connection with the goods and services listed in International Class 42 as alleged herein.

41. The false and fraudulent declaration referred to above with respect to the Infringing Application was made by Applicant with actual knowledge of its falsity, and was not made on information and belief and was made by a person or entity who knew or should have known the same was false and fraudulent.

42. Applicant knowingly made a false, material misrepresentation of fact in connection with the Infringing Application when it made the false and fraudulent declaration referred to above.

43. The false and fraudulent declaration referred to above with respect to the Infringing Application was made with the intent to deceive the USPTO and that the USPTO rely upon the same.

44. The USPTO did rely on the false and fraudulent declaration when it acknowledged the filing of the application and allowed Applicant's Infringing Mark to proceed to publication in the Official Gazette.

45. As a result, Applicant willfully and knowingly perpetrated a fraud for Applicant's Infringing Mark on the United States Patent and Trademark Office.

46. Applicant is not entitled to Registration of the Infringing Mark and the Infringing Application as Applicant knowingly committed fraud when it filed the Infringing Application.

47. Had it been aware of the false and fraudulent declaration referred to above and of Applicant's knowingly fraudulent acts, the USPTO would not have accepted the filing of the Infringing Application, nor allowed the Infringing Mark and Infringing Application to register.

WHEREFORE, Opposer believes that it is and will be damaged by the Infringing Mark and Infringing Application, and hereby prays that Applicant's Mark be denied registration and that this Notice of Opposition be sustained in favor of Opposer.

Opposer has submitted its payment for this Notice of Opposition previously through electronic means.


Date: January 20, 2012

Respectfully submitted,

Chris Ditico, Esq.
Raj Abhyanker, P.C.
1580 W. El Camino Real, Suite 8
Mountain View, CA 94040
Phone: (650) 965-8731
Fax: (650) 989-2131
Attorneys for Opposer

15

## CERTIFICATE OF MAILING AND SERVICE

I certify that on January 20, 2012, the foregoing **NOTICE OF OPPOSITION** are being

served by email, facsimile, and mailing a copy thereof by first-class postage pre-paid mail

addressed to:

> CONNIE L. ELLERBACH, KIRAN K. BELUR
> FENWICK & WEST LLP
> 801 CALIFORNIA ST
> MOUNTAIN VIEW, CA 94041-1990
> Phone Number: (650) 988-8500
> Fax Number: (650) 938-5200

By _____
Chris Ditico
Raj Abhyanker, P.C.
1580 W. El Camino Real, Suite 8
Mountain View, CA 94040
Phone: (650) 965-8731
Fax: (650) 989-2131
Attorneys for Opposer