# EXHIBIT 1 TO COUNTERDEFENDANTS' REQUEST FOR JUDICIAL NOTICE

## (Part 1 of 2)

1   ASHWIN K. ANAND (SBN# 264694)
    *ashwin@rajpatent.com*
2   SAMIK BHATTACHARYYA (SBN# 260836)
    *samik@rajpatent.com*
3   RAJ V. ABHYANKER (SBN# 233284)
    *raj@rajpatent.com*
4
    RAJ ABHYANKER, P.C.
5   1580 W. El Camino Real, Suite 13
    Mountain View, CA 94040
6   Telephone:    (650) 965-8731
7   Facsimile:    (650) 989-2131

8   Attorneys for Plaintiff,
    Raj V. Abhyanker
9

ENDORSED

2011 NOV 10  A 11: 48

David H. Yamasaki, Clerk of the Superior Court
County of Santa Clara, California
By: _____
                              R. Schwartz

10              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

11                          **COUNTY OF SANTA CLARA**

12                         UNLIMITED JURISDICTION

13

14   RAJ VASANT ABHYANKER,                    CASE NO.  1 1 1 C V 2 1 2 9 2 4

15                    Plaintiff,              COMPLAINT FOR DAMAGES AND EQUITABLE
                                             RELIEF FOR:
16          v.
                                             (1) INTENTIONAL INTERFERENCE WITH
17   BENCHMARK CAPITAL PARTNERS VII, L.P.,        EXISTING AND PROSPECTIVE ECONOMIC
     a Delaware limited partnership; BENCHMARK    ADVANTAGE;
18   CAPITAL MANAGEMENT CO. VII LLC, a        (2) BREACH OF CONFIDENCE;
     Delaware limited liability company;
19   NEXTDOOR.COM, INC. a Delaware corporation; (3) BREACH OF CONTRACT;
     KEVIN R. HARVEY; PETER FENTON; MITCH
20   LASKY; J. WILLIAM GURLEY; BRET           (4) FRAUD AND CONSPIRACY TO DEFRAUD;
     TAYLOR; JAMES NORRIS; NIRAV N. TOLIA;
21   SARAH LEARY; and DOES 1-100,             (5) CONSTRUCTIVE FRAUD AND AIDING AND
                                                 ABETTING CONSTRUCTIVE FRAUD;
22                    Defendants.
                                             (6) UNJUST ENRICHMENT;
23
                                             (7) UNFAIR BUSINESS ACTS AND PRACTICES IN
24                                               VIOLATION OF BUSINESS AND PROFESSIONS
                                                 CODE (CAL.CIV.CODE § 17200 *ET SEQ.*);
25
                                             (8) VIOLATIONS OF THE CALIFORNIA
26                                               CORPORATE SECURITIES LAWS; AND,

27                                           (9) MISAPPROPRIATION OF TRADE SECRETS
                                                 (CAL.CIV.CODE § 3426 *ET SEQ.*);
28
                                                 **JURY TRIAL DEMANDED**

- 1 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiff, by his attorneys, alleges as follows on information and belief, except as to those allegations pertaining to his own knowledge and conduct, which are made on personal knowledge:

## NATURE OF THE ACTION

1.      Plaintiff is a former owner of the common stock and vested options to purchase common stock of Center'd Corporation, Inc., (dba Nextdoor.com, dba Fatdoor.com, dba Centerd.com, dba the Dealmap.com). Center'd Corporation was purchased by Google, Inc. on or about July 29, 2011. Between October 25, 2006 and April 2, 2008, Center'd Corporation, Inc. was named Fatdoor, Inc.

2.      Plaintiff is a founder and former CEO of Fatdoor, Inc., a Delaware corporation formed on October 25, 2006. Plaintiff is the lead inventor on 46 United States patent applications and 6 international PCT patent applications filed by Fatdoor, Inc. relating to the Nextdoor/Fatdoor concept covering a wide variety of geo-spatial database, architecture, and application technologies associated with neighborhood communication and geo-spatial social networking. As of the filing of this pleading, one of these patent applications has now issued into granted U.S. Patent No. 7,966,567. In addition, at least three more patent applications related to the Nextdoor/Fatdoor concept are close to issuance, including U.S. published patent application numbers 11/731,489, 11/784,137, and 11/900,364.

3.      Defendants fraudulently misappropriated and stole trade secrets, business plans, unpublished confidential patent applications, knowhow, and software technologies regarding the Nextdoor/Fatdoor concept from Plaintiff and Fatdoor, Inc. through false and misleading representations and omissions of material facts concerning Defendant Benchmark Capital's ("Benchmark") financial affairs, business operations, and prospects. Furthermore, Defendants actively interfered with operations of Fatdoor, Inc. with respect to the Nextdoor/Fatdoor concept causing the company to abandon its plans to pursue the domain Nextdoor.com, the Nextdoor/Fatdoor business model for neighborhood social networking, and causing Plaintiff to be terminated from the company.

Raj Abhyanker, P.C.
Mountain View, CA
rajpatent.com

4. In less than six months after misappropriating confidential trade secrets, business plans, unpublished confidential patent applications, knowhow, and software technologies related to the Nextdoor/Fatdoor concept, Defendants independently formed a new corporation, Nextdoor.com, Inc., a Delaware corporation formed on or about December 4, 2007.

5. The nature and business of this company was made public on or about October 16, 2011 as will be described herein. The entire basis for Nextdoor.com, Inc.'s business rests on these stolen and misappropriated materials now owned by Google, Inc. through its acquisition of the Nextdoor/Fatdoor patent portfolio of Center'd Corporation (see Exhibit H). According to an Economic Times report on October 26, 2011, Defendants funded Nextdoor.com, Inc. with between $10 million and $15 million in equity capital from approximately between December 2007 and October 2011.

6. Absent Defendants' fraudulent scheme to interfere with business operations of Fatdoor, Inc. following funding by a competing venture capitalist, Norwest Capital, Plaintiff would have been gainfully employed and Fatdoor, Inc. would not have abandoned the pursuit of the Nextdoor/Fatdoor neighborhood social networking concept that Plaintiff invented and developed. In addition, Plaintiff would have continued to mature the restricted shares as the founder and the largest common shareholder in Fatdoor, Inc., prior to the company's sale to Google, Inc.

7. On or about the summer of 2007, Defendants learned about the Nextdoor/Fatdoor concept after representing that they were not developing anything similar in the space, and after clearing all conflicts of interest in writing. Due to the fraudulent and deceitful acts of Defendants, Plaintiff lost his employment and salary with Fatdoor, Inc. along with restricted common stock and the opportunity to build something he invented and developed.

8. In addition, during that same time, Defendants knowingly, purposefully, recklessly, and negligently conspired to steal and misappropriate confidential trade secrets from Plaintiff with respect to the Nextdoor/Fatdoor concept to start Nextdoor.com, Inc.

9. The Nextdoor/Fatdoor concept was originally created by Plaintiff on or about

- 3 -

00013.00014L7

Raj Abhyanker, P.C.
Mountain View, CA
rajpatent.com

August 2005 while running for Cupertino City Council. At that time, Plaintiff was surprised by the lack of web based tools available to create walking maps of neighborhoods, and annotate information regarding neighbors around a particular residence. Plaintiff initially developed the Nextdoor/Fatdoor concept as a mash up of maps created using MapQuest and a Wikipedia style entry page for each neighbor that he met. A conception document was first prepared on August 21, 2005 and clearly included the name "Nextdoor." Particularly, the document was titled:

> "NextDoor.com.
> Specification Draft 1 - August 21, 2005
> "Get to know your neighbors"

10.    The conception document contained several paragraphs including:

> "What we are trying to create is a way to create a way for neighbors to get to know each other and their surrounding businesses more easily through the Internet. The UI of the site will have a map of your home with a social networking page pop up on the right when one clicks a particular home/location. There will be no information about prices of a home, no information about the number of bedrooms of a home, etc. People will be the focus, not the real estate."

11.    The document was improved and modified in November 2006 and submitted as an attachment in the Nextdoor/Fatdoor diligence folder to the Defendants on or about Friday, June 22, 2007 (See Exhibit B). The document included the following statement:

> "Note: we don't have the domain nextdoor.com yet, ive placed a bid on it. We do have modernvilliage.com, but im trying to find a better name. let me know if you find something that is better and available for sale. Should know about nextdoor.com by the end of this week." (See Exhibit B) [sic].

12.    Plaintiff and Fatdoor, Inc. intended to purchase the Nextdoor.com domain name shortly after Series B funding. Plaintiff worked diligently between August 21, 2005 and June 15, 2006 to get the Nextdoor/Fatdoor website launched along with his business partner and assistant Babar Rana ("Rana"). During this period, Rana created screenshots and wireframes of the Nextdoor/Fatdoor concept using PowerPoint showing the name "Nextdoor" (See Exhibit A). There were two mockup images of the Nextdoor/Fatdoor concept shared by Plaintiff with the

- 4 -

1   Defendants on or about on June 22, 2007 (See Exhibit A). The first mockup image shows a photo

2   of Rana, with a personal profile wall feed from neighbors who provide comments on Rana's wall.

3   A search area box reads "search neighborhood." The word "Nextdoor" is clearly shown in the

4   upper, left-hand side of the screenshot. A map is shown in the screenshot illustrating the location

5   of Rana's hypothetical home and images indicating which neighbors have and have not joined the

6   neighborhood surrounding Rana's home. (See Exhibit A). Rana worked with Plaintiff shortly

7   after the conception of the Nextdoor/Fatdoor concept on or about August 21, 2005 until at least

8   October 2007. Rana is currently a Senior Product Manager in the Localization team at Google,

9   Inc. as of the filing of this Complaint.

10       13.    The second mockup image of the Nextdoor/Fatdoor concept prepared by Rana

11   between August 21, 2005 and June 15, 2006, and shared with the Defendants on or about Friday,

12   June 22, 2007 also visibly and clearly shows the name "Nextdoor" in the upper, left-hand side of

13   the site as well. A message appears on that mockup stating, "Get to know your neighbors."

14   Plaintiff's home is pictured on the map, along with photos of Plaintiff's family and next door

15   residential and business neighbors visible on a map. Images of Plaintiff's family are visible in

16   this mockup.

17       14.    These screenshots provided to Defendants on or about Friday, June 22, 2007, were

18   included as part of an investor diligence package that very same day. These conception mockups

19   were included as part of the diligence package given to Defendants on or about Friday, June 22,

20   2007. In these conception mockups, the name "Nextdoor" is clearly visible.

21       15. On or about November 22, 2006, Plaintiff prepared and filed the first utility U.S.

22   Patent Application number 2007/0218900 A1 titled "MAP BASED NEIGHBORHOOD

23   SEARCH AND COMMUNITY CONTRIBUTION" (See Exhibit D) on which the name

24   "Nextdoor.com" is clearly associated as the domain name intended to be used by Fatdoor, Inc.

25   (page 21, col. 1, paragraph [0236]). (See Exhibit D).   This '900 patent application explicitly

26   describing the Nextdoor.com domain was private and not published as a public document at the

27   time of disclosure to the Defendants on or about June 22, 2007. This 900' patent application is

28

- 5 -

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

now a public record searchable worldwide on Google patent search and United States Patent Office records. Particularly, in the '900 patent application, it is written:

> "In one embodiment, the methods and systems illustrated in Figures 1-28 enable people to search for things they want e.g. nearby pizzas etc. (e.g., by distance away). Advertisers can 'own' their listing by placing a display ad on **nextdoor.com**.", U.S. patent application 2007/0218900 A1, (page 21, col. 1, paragraph [0236]) (see Exhibit D).

16. Plaintiff and Fatdoor, Inc. intended to purchase the Nextdoor.com domain name shortly after Series B funding. Since the name "Nextdoor.com" was expensive to buy, Fatdoor, Inc. used the name "Fatdoor.com" as a second preference until additional funding could be raised after the summer of 2007 to purchase the Nextdoor.com domain. But for the fraudulent interference by the Defendants in the internal affairs of Fatdoor, Inc., the name Nextdoor.com would have been purchased by Plaintiff for Fatdoor, Inc. after funding. It was Plaintiff and Fatdoor, Inc.'s intention to purchase the name Nextdoor.com, and change the name of its business accordingly from Fatdoor, Inc. to Nextdoor, Inc. The Defendants fraudulently misappropriated their confidential knowledge of this fact to illegally convince the board of directors of Fatdoor, Inc. to terminate the employment of Plaintiff, and to purchase the Nextdoor.com domain for themselves shortly after Plaintiff was terminated.

17. The '900 patent application claims priority from earlier provisional patent applications filed between March 17, 2006 and October 25, 2006. The secret technical details, software algorithms, knowhow, and then unpublished patent applications including the '900 patent application were misappropriated and illegally repurposed by the Defendants through Defendant Bret Taylor ("Taylor") and Defendant James Norris ("Norris") on or about June 22, 2007, as will be explained herein. The '900 patent application had not yet published as a public document at of the time of disclosure of the Nextdoor/Fatdoor concept to the Defendants.

18. On or around December 15, 2006, Plaintiff showed the Nextdoor/Fatdoor concept to investor Jeffrey M. Drazan ("Drazan"), a client of Plaintiff's private, solo-practice law firm. Drazan was intrigued with the Nextdoor/Fatdoor prototype site that had been built. On or

Raj Abhyanker, P.C.
Mountain View, CA
rajpatent.com

about January 5, 2007, Drazan agreed to personally invest $500,000.00 in the Nextdoor/Fatdoor concept pending clearance from his limited partners. Drazan introduced Plaintiff to his friend William H. Harris, Jr. ("Harris, Jr."), the former CEO of Intuit, Inc. and PayPal that same weekend. Harris, Jr. was immediately impressed with the concept of building the Nextdoor/Fatdoor social network around the concept of getting to know your neighbors. Plaintiff met with Drazan and Harris, Jr. at Buck's Café in Woodside, CA on or about Monday, January 15, 2007, where Drazan and Harris, Jr. gave Plaintiff a $1,000,000.00 equity capital term sheet with attractive terms of fully vested stock for Plaintiff.

19. On or about February 1, 2007, Plaintiff independently closed a $1,000,000.00 Series A round of equity financing with Drazan and Harris, Jr. for the Nextdoor/Fatdoor concept.

20. Plaintiff then hired Chandu Thota ("Thota"), recruited from a job post on Craigslist.com and Monster.com, as a salaried, full-time developer, CTO, and co-founder one month after funding closed. Thota originally applied to a Monster.com job posting made by Plaintiff on or about November 1, 2006.

21. Thota permanently moved from his home in Seattle to join Plaintiff as a CTO and co-founder on or about February 28, 2007. After Thota permanently joined, the prototype of Nextdoor/Fatdoor was quickly developed into a working product based on Plaintiff's original ideas and inventions. Plaintiff left his full time employment at his private law practice and joined as the full time CEO of Fatdoor, Inc. Per the guidelines set forth by investors, Plaintiff actively transferred existing clients to other attorneys to ensure that Plaintiff could focus full time on Fatdoor, Inc.

22. On or about January 27, 2007, Plaintiff was invited to the home of Stanford University professor, Dr. Hector Garcia Molina ("Dr. Molina") for brunch, after a referral to Plaintiff from Stanford computer science professor, Dr. Andreas Paepcke ("Dr. Paepcke"). Plaintiff brought along Chandu Thota to the brunch at the home of Dr. Molina. Dr. Molina is on the Board of Directors of Oracle, Inc. and was a former Chairman of the Computer Science department at Stanford University. Dr. Molina was impressed by the Nextdoor/Fatdoor

technology, methods of organizing database structures in a geospatial manner, and the concept around getting to know neighbors. Dr. Molina and Dr. Paepcke agreed to be strategic advisors and small investors in Fatdoor, Inc. around the Nextdoor/Fatdoor concept along with Drazan and Harris, Jr. A few months later, Stanford computer science professor Rajeev Motwani ("Motwani") also agreed to be an advisor and small investor in the Nextdoor/Fatdoor. Rajeev Motwani was the former advisor to Google, Inc. founders, Sergey Brin and Larry Page.

23.     Plaintiff is the lead inventor on an additional 30+ U.S. patent applications and international patent applications between March 13, 2007 and August 15, 2007 based around neighborhood social networking, mobile applications, and geo-spatial technologies. These patents collectively represent some of the earliest geospatial social networking and mobile patent applications ever filed.

24.     The phrase "Get to know your neighbors" was applied for as a U.S. trademark on or about November 22, 2006, with U.S. trademark serial number 77049854. The description "Get to know your neighbors" was provided to the United States Patent and Trademark office under serial number 77049854 as:

> "Computer services in the nature of customized web pages featuring user-defined information, personal profiles and information, namely, providing location tagged profiles using spatial and geo-coded information through the Internet; Computer services, namely, providing a specialized search engine for finding personal, geographical and business data on a global computer network"

28.     The name "Fatdoor" was applied for as a U.S. trademark on or about November 21, 2006, with U.S. trademark serial number 77049286 with a similar description.

29.     The name "Fatmail" was applied for as a U.S. trademark on or about April 5, 2007, with U.S. trademark serial number 77150247. The description of "Fatmail" was provided to the United States Patent and Trademark office under serial number 77150247 as:

> "Paper goods and printed material, namely, envelopes, pamphlets, coupons books and publications which promote the goods and services of others for advertising in a neighborhood geo-spatial environment"

- 8 -

Raj Abhyankar, P.C.
Mountain View, CA
rajpatent.com

00915000182

The secret technical details, software algorithms, knowhow, and then unpublished patent applications surrounding the Fatmail concept were misappropriated and stolen by the Defendants to enable the verification of neighbors permitted into the network through postal mail.

30. The Nextdoor/Fatdoor idea by Plaintiff was very well received by major thought leaders, including Mark Pincus ("Pincus"), who wrote to Plaintiff and Fatdoor, Inc. director Drazan on or about March 5, 2007 stating:

> "[r]aj, your idea and background were both compelling. sorry if i
> barragted you with feedback before you could get the whole idea across.
> i'd def be interesting following up as i like the general macro space and
> think there are many directions you coudl go with it. best, mark" [sic]

31. Pincus agreed to participate in the first Nextdoor/Fatdoor private beta launch between March 2007 and June 2007. That same summer, Pincus independently started the successful venture Zynga.com (over 232 million users, and $1 billion in revenue). The affirmation by Pincus of the Plaintiff and the Nextdoor/Fatdoor concept right before Zynga was founded was a testament to the power and potential of the Nextdoor/Fatdoor idea and Plaintiff's ability, but for the interference, misappropriation, and theft by Defendants, as explained herein.

32. Wired Magazine also covered the Nextdoor/Fatdoor concept on or about May 31, 2007 in an article entitled "Fatdoor CEO Talks About Balancing Security With Community." The article described the general concepts of Nextdoor/Fatdoor developed by Plaintiff to account for neighborhood security :

> "It wasn't until Abhyanker let me take his neighborhood for a test drive
> that I started to understand how this actually plays out. Fatdoor is hardly
> the stalking tool we all feared. In fact, its simple interface made
> Abhyanker's own community fit together more like a wiki version of a
> town hall. Users in the neighborhood can broadcast general messages to
> the entire block, submit an entry about a local business, or even submit
> entries for friends and other neighbors. Abhyanker's neighborhood is even
> set up to elect moderators to help police this conduct too. Paired with the
> amount of control the user has over how much or how little information
> the neighborhood can access about themselves, it actually seemed....pretty
> safe." (See Exhibit G).

33. In addition, the Wired Magazine article of May 31, 2007 went on to describe the

- 9 -

Raj Abhyanker P.C.
Mountain View, CA
rajpatent.com

end product of the secret confidential security algorithms developed by Plaintiff to account for neighborhood security :

> "As far as peeking into other neighborhoods? Abhyanker has that covered too. "We've been playing around with the distance, and after some testing we've found that keeping it at a 5 mile radius [from the user's residence] is the most reasonable," he said. "It keeps the focus on the neighborhood and also keeps the feeling of community. Of course, this is something that we're going to have to change depending on the size and layout of a city, but during testing it seemed like the ideal distance." (See Exhibit G).

The secret technical details, software algorithms, knowhow, and then unpublished patent applications that permitted the Nextdoor/Fatdoor concept to be built as described in the Wired Magazine article of May 31, 2007 were stolen by Defendants and misappropriated as *'key'* technology in Nextdoor.com, Inc. as described in a San Jose Mercury News article. On or about of October 26, 2011, this same San Jose Mercury New article entitled "Epoinions co-founder Nirav Tolia back in the saddle with Facebook-like startup" inaccurately credits Defendant Taylor with the invention of the Fatdoor/Nextdoor concept, describing Nextdoor.com, Inc. as, "software developed by an early Google (GOOG) Maps employee" that is used as the "key" technology of Nextdoor "that makes sure only people who live in a specific neighborhood are able to join its network -- giving users a level of privacy that sites like Facebook don't.") (See Exhibit H).

34. Benchmark partner and Defendant Kevin Harvey ("Harvey") requested a meeting to discuss, explore and finalize the financing of Nextdoor/Fatdoor on or about June 15, 2007 after a referral from Drazan. To celebrate the enormous shareholder value that Plaintiff and his co-founder Thota had brought to Fatdoor, Inc., board member Drazan sent Plaintiff an email on or about June 19, 2007 with a subject line: "A premature, but well deserved congratulations and thank you!!!" The email included the following text:

> "Raj, Chandu.....It sometimes gets lost amid all the frenetic activity, the significance of this interim accomplishment. After just 3 (?) short months of working together it is more than impressive how much value you have created on such modest spending. Pause for a moment to reflect on what you have produced...38 patent applications, an impressively functional website, thousands of initial subscribers, tens if not hundreds of thousands of page views, strategic interest from the most sophisticated media properties and

- 10 -

institutions in the world, world class employees, candid and supportive feedback from your user community, the list goes on....Thank you for all your endless hours and unbridled enthusiasm. Jeff" [sic]

35. A meeting time was set for on or about Thursday, June 21, 2007. To ensure confidentiality, Fatdoor, Inc. board member Drazan requested an early morning meeting on or about June 21, 2007 and requested that Benchmark clear conflicts, especially "conflicts else that is [or] resembles what they [Fatdoor] are doing" [sic] before any disclosures were made.

36. Benchmark partner Harvey, responded on or about June 21, 2007 to Fatdoor, Inc. board member Drazan stating: "We don't have and are not looking at anything that is a direct competitor. Some of our companies Billow [sic] and Yelp are tangential. We will need to make sure that they are comfortable but my guess is that they are better partners than competitors."

37. In detrimental reliance of this statement by Benchmark partner Harvey, Plaintiff disclosed the Fatdoor/Nextdoor concept to Harvey that same day of Thursday, June 21, 2007 during a disclosure on or about 10:00 A.M. and 10:30 A.M. Immediately after the call, Harvey sent an email to the Plaintiff, requesting that he and his co-founder Thota meet with Reid Hoffman ("Hoffman") that same evening in Mountain View. Hoffman is the founder and former CEO of Linkedin.com. Harvey informed Plaintiff that Hoffman did "diligence" for companies that Benchmark was going to invest in.

38. In addition, Harvey requested a meeting with Plaintiff at Benchmark's headquarters on Sand Hill Road in Menlo Park on or about June 21, 2007. On or about June 21, 2007, Harvey requested that Plaintiff send confidential presentations relating to Nextdoor/Fatdoor to his partner, Defendant Mitch Lasky ("Lasky"), who was to participate in the meeting via teleconference. On or about June 21, 2007, Plaintiff sent the requested confidential executive summary of the Nextdoor/Fatdoor concept to Lasky and Harvey. The title of this file was "Executive_Summary-Fatdoor-06-11-07.pdf", hereinafter ("Executive Summary"). (See Exhibit C).

39. Each page of this Executive Summary included the words "Confidential Material" (see Exhibit C). Page seven of the Executive Summary showed a maturing networks timeline in

- 11 -

00013.00044;7

1   which the next phase from Facebook was to be toward the Nextdoor/Fatdoor concept, centered

2   around "Neighborhoods." Defendants misappropriated knowledge found in this confidential

3   Executive Summary to create the business plan for Nextdoor.com, Inc., which they formed as a

4   corporate entity on December 4, 2007, less than six months after this Executive Summary for

5   Nextdoor/Fatdoor was provided to them. Even as recently as October 26, 2011, Defendant

6   Gurley was quoted in an article in Techcrunch stating that Nextdoor was the "natural evolution of

7   social networking that [would] demonstrate the value of building community to neighborhoods

8   everywhere." In a San Jose Mercury News article that same day, Defendant Gurley was quoted

9   referring to Nextdoor.com, Inc. as "It's Facebook for your neighborhood." (See Exhibit H).

10      40. In addition to receiving the confidential Executive Summary, Benchmark partner

11  Harvey and Lasky met with Plaintiff and learned about Nextdoor/Fatdoor concept in detail on or

12  about June 21, 2007. Plaintiff spent several hours at Benchmark disclosing the entire concept in

13  detrimental reliance on Benchmark's written assurances of confidentiality and no conflicts.

14      41. Plaintiff and his co-founder Thota then met with Hoffman on or about June 21,

15  2007 at the LinkedIn headquarters in Mountain View, California. Hoffman expressed genuine

16  interest in the Nextdoor/Fatdoor concept, and said that he would not only give a positive

17  recommendation to Benchmark, but personally invest in the venture. Hoffman sent an email to

18  Plaintiff and Fatdoor, Inc. director Drazan on or about June 22, 2007 stating that it was his

19  pleasure to meet with Plaintiff to learn about Nextdoor/Fatdoor. Hoffman expressed that there

20  was "some very good stuff in [Plaintiff's] planning/doing" to Plaintiff in the same

21  communication. In addition, Hoffman wrote that he would like to talk with Fatdoor, Inc. director

22  Drazan to discuss investment details. Drazan spoke to Hoffman via telephone on or about June

23  22, 2007. On or about June 26, 2007, Hoffman told Plaintiff and Drazan that he would like to

24  invest $100,000.00 of his personal money in addition to the investment by Benchmark.

25      42. Plaintiff and co-founder Thota also met with Motwani at the University Café on

26  University Avenue in Palo Alto, CA. Motwani agreed that Benchmark was a good choice for

27  investment as an alternative to Norwest Capital and agreed to solidify the agreement with a

28

- 12 -

00012 00014LT

Raj Abhyanker, P.C.
Mountain View, CA
rajpatent.com

personal reference call to Benchmark advisor Hoffman. Motwani also agreed to invest $100,000.00 in the new round based on his confidence in Plaintiff and his co-founder Thota.

43. Plaintiff prepared full diligence files of the Nextdoor/Fatdoor concept and gave them to Defendant Peter Fenton ("Fenton") at Benchmark on or about June 22, 2007. The diligence package included all then unpublished 46 United States patent applications, 6 foreign PCT patent applications, the Executive Summary, and screenshots created by a Rana in 2006 clearly showing the name "Nextdoor." On or about June 22, 2007, Plaintiff sent an email to Fatdoor, Inc. employee Paul Zahorsky, to counsel Daniel Hansen, to Daniel Hansen's paralegal, and to California licensed attorney Sheila Magure attaching conception documents showing the mockups and the Word document for Nextdoor.com as previously described. The conception documents showing the name "Nextdoor" were also shared electronically with Fatdoor, Inc. employees Emily McIntire and Michael Johnstone. In addition, Harris, Jr. and Thota received electronic and physical copies of the conception documents showing the name Nextdoor.com from Sheila Maguire shortly after she requested them on their behalf on or about June 22, 2007.

44. In addition, the diligence included a statement stating: "Note: we don't have the domain nextdoor.com yet, ive placed a bid on it. We do have modernvilliage.com, but im trying to find a better name. let me know if you find something that is better and available for sale. Should know about nextdoor.com by the end of this week." (Exhibit B). [sic]

45. Harvey and Fenton described the Nextdoor/Fatdoor concept to fellow partners and EIRs at a Benchmark offsite approximately between June 23, 2007 and June 25, 2007.

46. On or about June 27, 2007, Harvey sent an email to Plaintiff stating: "Do you guys have time to meet our Google EIRs?" Harvey referred Plaintiff to Taylor and Norris, who were EIRs at Benchmark. Taylor and Norris were the co-creators of Google Maps and the Google Maps API, and had left their positions at Google to join Benchmark on or about June 2007. Taylor is currently the Chief Technology Officer of Facebook, Inc. as of the filing of this Complaint. Harvey called Plaintiff on or about June 27, 2007 and told Plaintiff that Benchmark intended to make a positive investment decision as a lead investor or as a co-investor in

- 13 -

Nextdoor/Fatdoor based on Hoffman's positive recommendation. Furthermore, Harvey assured Plaintiff that Taylor and Norris would like to help the Nextdoor/Fatdoor venture succeed, and would hold information that they obtained in strict confidence and would not start any competing ventures. In reliance of Harvey's promises, Plaintiff informed the board of directors of Fatdoor, Inc., and agreed to meet with Taylor and Norris on or about June 27, 2007 at Benchmark headquarters on Sand Hill Road in Menlo Park.

47. During the meeting with Taylor and Norris, Plaintiff and co-founder Thota again asked whether Benchmark had any conflicts of interest before disclosing technical details of the Nextdoor/Fatdoor concept. Taylor and Norris replied that they were working with something in the consumer space which was totally different, and that Benchmark intended to invest in Fatdoor, Inc. to build the neighborhood concept. Plaintiff and Thota, spent most of that afternoon with Taylor and Norris based on those assurances to not compete and maintain confidentiality.

48. Surprisingly, then, on or about June 29, 2007. Benchmark partner Harvey wrote an email to Fatdoor, Inc. director Drazan stating that Benchmark would pass on the current round even though they were "really intrigued with the space." Harvey also wrote to Drazan and stated:

> "This has been an extraordinarily close call but it looks like we will pass for this round. We are all really intrigued with the space but can't get comfortable enough with the "killer app." My guess is that it will be obvious soon (and we will feel sheepish) but we need to have more conviction before investing. I would like to help these guys as much as possible. Given that we are now up to speed, we could be a good quick stop for the next round here." [sic]

The pullout in funding by Benchmark came as a surprise to Plaintiff and Fatdoor, Inc.'s board of directors, as Benchmark had indicated throughout that they wanted to invest. On or about June 29, 2007, Harvey wrote to Plaintiff stating: "I bet that you guys will find this [killer app] quickly as we are quite impressed with your thinking on this space."

49. In lieu of an investment by Benchmark, Fatdoor, Inc. took a smaller investment of $5.5 million dollars from Norwest Venture Partners without participation from Benchmark. The transaction closed on or about July 17, 2007. Within two weeks of the closing of the second

- 14 -

round of funding, Benchmark began an ill-conceived scheme to unfold and destroy Plaintiff and Fatdoor, Inc.'s focus around neighborhood social networking, so that they could come up with their own concept through the confidential information that they had learned. As a starting point, Benchmark sought to interfere with the operation of Fatdoor, Inc. and to influence a replacement of Plaintiff as the Chief Executive Officer, a person whom they knew to be the lead inventor and thought leader in the neighborhood social networking space.

50. Taylor and Norris liked the Nextdoor/Fatdoor concept described by the Plaintiff so much that on or about July 19, 2007 they wrote to Plaintiff via email stating:

"We are happy to be advisors. The time commitment sounds reasonable to us, and we are interested in helping out as you navigate all the difficult product and privacy issues. The product has a lot of potential, and if you all can find the right product and privacy balance, it has the potential to become the first really successful "geo wiki... Let us know how to proceed from here. Bret" [sic]

51. On or about July 23, 2007, Taylor sent an email to Plaintiff responding to a written Strategic Advisory offer letter prepared for Taylor and Norris :

"We will take a look at these and get back to you tomorrow with the signed copies."

52. The agreement was not returned signed the very next day. Instead, two days later, on or about July 25, 2007, Taylor and Norris write back to Plaintiff stating:

"Raj, I wanted our lawyer to review this, and I wasn't aware he is on vacation this week – is it possible we get this to you on Monday, or are we running up against a deadline? Bret" [sic]

53. On or about August 2, 2007, Taylor wrote back to Plaintiff stating:

"Raj, The only concern we have with the agreement is "Advisor agrees not to compete with the business of the Company and its successors and assigns during the term of this Agreement, notwithstanding the cause or reason for termination of this Agreement." [sic]

Taylor, who is at the time of writing was still an EIR at Benchmark further reaffirmed that he did not have any conflicts with the information he had learned from Plaintiff. In the same email sent

- 15 -
COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

on or about August 2, 2007, he stated:

> "Clearly we don't want to get into a directly competing business, or we wouldn't be doing this in the first place. However, competition is really in the eye of the beholder sometimes, and we are definitely entering the consumer internet space (though definitely not the geo space). How would you feel about removing this line to make us more comfortable? Bret"

54. This misrepresentation was not truthful, as Taylor and Norris did shortly enter the "geo space" with the formation of Nextdoor.com, Inc. less than six months later. Fatdoor, Inc. rejected this last minute update by Taylor, and Plaintiff was terminated from Fatdoor, Inc. approximately two weeks later.

55. The Fatdoor, Inc. board of directors retained Jon R. Love ("Love") to find a replacement CEO for Fatdoor, Inc. based on a reference from Benchmark. Love had helped Benchmark to replace senior management for a number of portfolio companies including Gaia, Lindon Labs, Pure Play, and When.com. In addition, Love had been retained to replace Benchmark advisor Hoffman as the CEO of LinkedIn.

56. Because of Benchmark's interference, Fatdoor, Inc. board member Harris, Jr. and new investor Sergio Monsalve replaced Plaintiff as Chief Executive Officer. Particularly, on or about July 27, 2007, Fatdoor, Inc. Chairman Harris, Jr. let Plaintiff know that his services would no longer be required at Fatdoor, Inc. because they would be going in a different direction than the neighborhood space based on the negative feedback that they received from Harvey and Benchmark. Harris, Jr. would be the interim CEO until a replacement was found by Benchmark headhunter Love to take Fatdoor, Inc.'s business in a different direction than one centered around neighborhoods and to make Fatdoor, Inc. more attractive to investors in future rounds.

57. This development came as a surprise to Plaintiff because approximately one month earlier Plaintiff had received a thank you email from Fatdoor, Inc. board member Drazan commenting "impressive how much value you have created on such modest spending. Pause for a moment to reflect on what you have produced...38 patent applications, an impressively functional website, thousands of initial subscribers, tens if not hundreds of thousands of page

views, strategic interest from the most sophisticated media properties and institutions in the world, world class employees, candid and supportive feedback from your user community, the list goes on....Thank you for all your endless hours and unbridled enthusiasm.." The development was also particularly injurious for Plaintiff since he had worked countless hours on the Nextdoor/Fatdoor concept, and had left his only source of income behind to build the venture.

58. In addition, what made the forced sabbatical/termination even more troubling was the fact that on or about August 7, 2007, Plaintiff received an email from Heather Harde and Michael Arrington from Techcrunch stating that "Fatdoor has been selected as a TechCrunch20 finalist" for the top 20 startups of the year of the year 2007. When Plaintiff asked Fatdoor, Inc. Chairman Harris, Jr. and new Norwest investor Sergio Monsalve whether the opportunity should be pursued, Plaintiff was asked to decline the invitation by Techcrunch because Fatdoor, Inc. was rethinking the neighborhood space based on the comments made to them by Harvey at Benchmark. On or about August 7, 2007, Plaintiff canceled his meeting with Heather Harde and Michael Arrington scheduled for that same afternoon per the request of Fatdoor, Inc.'s Chairman, Harris, Jr.

59. Nonetheless, Plaintiff sent a kind and diplomatic email to all Fatdoor, Inc. stakeholders thanking them for the opportunity to develop the Nextdoor/Fatdoor concept and wishing them the best of luck. Plaintiff had an exit interview with Love on or about August 8, 2007. Then, during the week of August 15, 2007, approximately one and half months after the pull out of funding by Benchmark, Plaintiff was immediately asked to no longer come to the offices of Fatdoor, Inc., the company he had started, and was no longer invited to participate in strategic decisions regarding the company.

60. On or about October 2007, Fatdoor, Inc. hired a new CEO based on a recommendation from the headhunter referred by the Benchmark - Jennifer Dulski ("Dulski"). Dulski was a former Group Vice President at Yahoo. On or about April 2, 2008 Dulski changed the name of the company Fatdoor, Inc. to Center'd Corporation, Inc., less than five months after the formation of Nextdoor.com, Inc. by the Defendants on or about December 4, 2007.

- 17 -

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

61. Dulski made a strategic change away from the original Nextdoor/Fatdoor concept of getting to know your neighbors and moved the direction of Fatdoor, Inc. into a local site for mothers to plan events. The website created to host this concept www.centerd.com site failed to get traction and a decision is made to create a new effort called the DealMap focused on the mapping of local deals. On or about August 1, 2011, Google, Inc. purchased the Nextdoor/Fatdoor patent applications and patents and the DealMap from Center'd Corporation, Inc.

62. A press release was issued on October 26, 2011 stating that a new startup was launched called "Nextdoor." The CEO of Nextdoor was announced to be Defendant Nirav Tolia ("Tolia"), a former EIR at Benchmark. It was reported in the San Jose Mercury News on October 26, 2011 that "software developed by an early Google (GOOG) Maps employee" was used as the "key" technology of Nextdoor "that makes sure only people who live in a specific neighborhood are able to join its network -- giving users a level of privacy that sites like Facebook don't." (See Exhibit H). Upon reason and belief, this key technology "that makes sure only people who live in a specific neighborhood are able to join its network -- giving users a level of privacy that sites like Facebook don't" was stolen and misappropriated from Plaintiff by Taylor and Norris while they were employed at Benchmark. (See Exhibit H and Exhibit I).

63. Defendant Sarah Leary ("Leary") was a former EIR at Benchmark and is currently the co-founder and Vice President of Marketing at Nexdoor.com, Inc. Based on articles posted on the web, Tolia and Leary have been EIRs at Benchmark since at least March 2007. Their positions as EIRs has been inconspicuous, according to an article in ValleyWag/Gawker on or about March 21, 2007. Tolia and Leary confirmed their Benchmark EIR status on or about August 29, 2007 in an article in VentureBeat, a few months before the formation of Nextdoor.com, Inc. on or about December 4, 2007 which listed Tolia as Chief Executive Officer and Leary as the Vice President of Marketing. The Economic Times reported on or about October 26, 2011 that Nextdoor.com, Inc. raised between $10 million and $15 million dollars in venture capital financing from Benchmark and Shasta Ventures. Defendant J. William Gurley

("Gurley"), a partner at Benchmark Capital is an investor and on the Board of Nextdoor.com, Inc. Upon reason and belief, Nextdoor.com, Inc. stole and misappropriated a key technology of limiting views of neighbors to only a constrained geo-spatial set from Fatdoor, Inc. through Taylor.

64. Defendant Tolia, Defendant Taylor, and Defendant Norris all worked at Benchmark as EIRs on and about the day that Defendants learned of the confidential and unpublished technical details, security algorithms, methods and trade secrets associated with Nextdoor/Fatdoor from Plaintiff. (See Exhibit I). Based on the quoted facts above, and upon reason and belief, Defendants conspired together to misappropriate the confidential trade secrets, materials, knowhow, and algorithms from Plaintiff and to form Nextdoor.com, Inc. venture on or about December 4, 2007.

65. Funding was not difficult for Tolia, as Benchmark had funded Tolia in the past with little more than a PowerPoint presentation according to the same article in VentureBeat on or about August 29, 2007 which quoted a previous article in the New York Times stating that Tolia's last company "launched in 12 weeks, and raised $8 million from Benchmark and August with little more than a PowerPoint presentation."

66. Plaintiff went on unemployment for the remainder of 2007 as he had no law practice to fall back on. Plaintiff had to rebuild every client from scratch as the sole income earner for his family of four, and was unable to complete graduate studies in engineering at Stanford University due to a lack of financial resources.

## JURISDICTION AND VENUE

67. Jurisdiction is proper in this Court because the Superior Court is a court of general jurisdiction and because Plaintiff seeks both damages and equitable relief.

68. Venue is proper in this Court because Benchmark Capital maintains its principal place of business in Santa Clara County, and regularly conducts business in this county. Defendants Tolia, Harvey, Gurley, Lasky, Fenton, Taylor, Norris, and Leary are all residents of Northern California, and either reside in this county or at all times herein, conducted the acts

- 19 -

Raj Abhyanker, P.C.
Mountain View, CA
rajpatent.com

complained of herein in the County of Santa Clara. Plaintiff Abhyanker at all times complained of herein was and is a resident of the County of Santa Clara.

## THE PARTIES

### PLAINTIFF

69. Plaintiff Raj Abhyanker ("Abhyanker") is a resident of Cupertino, California. Abhyanker is the founder of Center'd Corporation, which was originally named Fatdoor, Inc. He served as the Chief Executive Officer ("CEO") of Fatdoor, Inc. from the inception of company in October 25, 2006 until August 31, 2007. Abhyanker is the inventor of 46 patent applications filed around the Nextdoor/Fatdoor concept, now owned by Google, Inc. At the time of the misappropriation by the Defendants, Abhyanker owned 4,000,000 shares of Center'd Corporation common stock, consitituting approximately 25% of outstanding equity which was fully vested until being restricted after Series B financing because of the illegal acts of the Defendants.

### DEFENDANTS

70. Defendant Kevin R. Harvey ("Harvey") is a resident of Los Gatos, California. Harvey is a General Partner of Benchmark Capital Partners VII, L.P., and an equity holder in Benchmark Capital Management Co. VII LLC., and through the fund an equity holder of Nextdoor.com, Inc.

71. Defendant Peter Fenton ("Fenton") is a resident of San Francisco, California. Fenton is a General Partner of Benchmark Capital Partners VII, L.P., and an equity holder in Benchmark Capital Management Co. VII LLC., and through the fund an equity holder of Nextdoor.com, Inc.

72. Defendant J. William Gurley ("Gurley") is a resident of Portola Valley, California. Gurley is a General Partner of Benchmark Capital Partners VII, L.P., and an equity holder in Benchmark Capital Management Co. VII LLC. Gurley is a director of Nextdoor.com, Inc.

73. Defendant Mitch Lasky ("Lasky") is a resident of California. Lasky is a General Partner of Benchmark Capital Partners VII, L.P., and an equity holder in Benchmark Capital Management Co. VII LLC., and through the fund an equity holder of Nextdoor.com, Inc.

- 20 -

74. Defendant Bret Taylor ("Taylor") is a resident of Los Gatos, California. Taylor is the Chief Technology Officer of Facebook, Inc. and a former EIR at Benchmark Capital Partners VII, L.P. during the time of the misappropriation alleged herein.

75. Defendant James Norris ("Norris") is a resident of Mountain View, California. Noris is a former EIR at Benchmark Capital Partners VII, L.P. during the time of the misappropriation alleged herein.

76. Defendant Nirav Tolia ("Tolia") is a resident of Palo Alto, California. Tolia is the CEO and co-founder of Nextdoor.com, Inc., formed on December 4, 2007. Tolia is also a former EIR at Benchmark Capital Partners VII, L.P. during the time of the misappropriation alleged herein.

77. Defendant Sarah Leary ("Leary") is a resident of Redwood City, California. Leary is the VP of Marketing and co-founder of Nextdoor.com, Inc., formed on December 4, 2007. Leary is a former EIR at Benchmark Capital Partners VII, L.P. during the time of the misappropriation alleged herein.

78. The true names and capacities of Defendants named Does 1-100, inclusive, whether individual, corporate, associate, or otherwise, are presently unknown to Plaintiff. Plaintiff therefore sues these Defendants by these fictitious names. Plaintiff will amend his Complaint to substitute true names and capacities when they have been ascertained. Plaintiff is informed and believes, on the basis of that information and belief allege, that each of the fictitiously-named Defendants is responsible in some manner for the occurrences herein alleged.

79. By reason of their positions and relationships with Fatdoor, Inc. and Plaintiff including their access to non-public information concerning Fatdoor, Inc. and the timing, structure, and terms of the transaction at issue in this action, the Defendants were and are fiduciaries to the Plaintiff. In engaging in the wrongful conduct alleged herein, Defendants pursued a common course of conduct, acted in concert with each other, and conspired with one and other, in furtherance of their common plan, scheme or design. In addition, each of the Defendants aided and abetted each other in breach of their respective fiduciary duties, as alleged

herein.  In aiding and abetting the other breaches of fiduciary and professional duties, the Defendants rendered substantial assistance to the other Defendants with knowledge or in reckless disregard of the breaches of duty committed by such Defendants.

## DEFENDANTS' WRONGFUL COURSE OF CONDUCT

80.  The Nextdoor/Fatdoor concept was originally created by Plaintiff on or about August 2005 while running for Cupertino City Council.  At that time, Plaintiff was surprised by the lack of web based tools available to create walking maps of neighborhoods, and annotate information regarding neighbors around a particular residence.  Plaintiff initially developed the Nextdoor/Fatdoor concept as a mash up of maps created using MapQuest and a Wikipedia style entry page for each neighbor met.  A conception document was first prepared on or about August 21, 2005 and clearly includes the name "Nextdoor."  Particularly, the document was titled:

> "NextDoor.com.
> Specification Draft 1 - August 21, 2005
> "Get to know your neighbors"

81.  The conception document contained the following paragraph: "What we are trying to create is a way to create a way for neighbors to get to know each other and their surrounding businesses more easily through the Internet.  The UI of the site will have a map of your home with a social networking page pop up on the right when one clicks a particular home/location. There will be no information about prices of a home, no information about the number of bedrooms of a home, etc. People will be the focus, not the real estate." [sic]. The document was improved and modified on or about November 2006, and submitted as an attachment in the Nextdoor/Fatdoor diligence folder to the Defendants on or about June 22, 2007 (See Exhibit B). The document included the following statement: "Note: we don't have the domain nextdoor.com yet, ive placed a bid on it. We do have modernvilliage.com, but im trying to find a better name. let me know if you find something that is better and available for sale. Should know about nextdoor.com by the end of this week." (See Exhibit B).

82.  Plaintiff and Fatdoor, Inc. intended to purchase the Nextdoor.com domain name

- 22 -

Raj Abhyanker, P.C.
Mountain View, CA
rajpatent.com

shortly after Series B funding. Plaintiff worked diligently between August 21, 2005 and June 15, 2006 to get the Nextdoor/Fatdoor website launched along with his business partner and assistant Rana. During this period, Rana created screenshots and wireframes of the Nextdoor/Fatdoor concept using PowerPoint showing the name 'Nextdoor'. There were two mockup images of the Nextdoor/Fatdoor concept shared with the Defendants by Plaintiff on or about June 22, 2007. The first mockup image shows a photo of Rana, with a personal profile wall feed from neighbors who provide comments on Rana's wall. A search area box reads "search neighborhood." The word "Nextdoor" are clearly shown in the upper, left-hand side of the screenshot. A map is shown in the screenshot illustrating the location of Rana's home and images indicating which neighbors have and have not joined the neighborhood surrounding Rana's representative home.

83. The Nextdoor/Fatdoor site was first publicly mentioned in Venturebeat on April 3, 2007 in a story titled "The dirt on Amazon, Steve Jobs, Topix, Fatdoor, MySpace, VC tax and more" in which VentureBeat described Nextdoor/Fatdoor as :

> "'FatDoor, secretive social network, to launch soon — The Palo Alto-based start-up, backed by Bill Harris, former CEO of Paypal and Intuit, and Bertram Capital, launches April 15, and describes itself as "a wikipedia of people," with over 130 million people and business profiles at launch. It wants to let you get to know your neighbors....Stay tuned" (See Exhibit E).

84. The Nextdoor/Fatdoor idea by Plaintiff was very well received by major thought leaders, including Pincus, who wrote to Plaintiff and Fatdoor, Inc. director Drazan on or about March 5, 2007 stating:

> "raj, your idea and background were both compelling. sorry if i barragted you with feedback before you could get the whole idea across. i'd def be interesting following up as i like the general macro space and think there are many directions you coudl go with it. best, mark" [sic]

85. Pincus agreed to participate in the first Nextdoor/Fatdoor private beta launch between March 2007 and June 2007. Four months later, Pincus independently started the successful venture Zynga.com (over 232 million users, and $1 billion in revenue), and his

- 23 -

affirmation of Plaintiff and the Nextdoor/Fatdoor concept right before Zynga was founded was a testament to the power and potential of the Nextdoor/Fatdoor idea and Plaintiff's ability, but for the interference and theft by Defendants as described in this Complaint.

86.    VentureBeat later covered the Nextdoor/Fatdoor concept again on May 28, 2007 in an article titled "Fatdoor turns neighborhoods into online social networks," dating the initial tests around Plaintiff's city of Cupertino, California between August 21, 2005 and November 15, 2006. The article also included a picture of Plaintiff's home and family in the user interface views:

> "Ever wanted to get to know your neighbors before interacting with them in real life? If so, fatdoor, which launches its public beta tomorrow, might be for you…. Fatdoor will start out covering Silicon Valley and spread outward…. The interface is clean and simple. The alpha version that we saw in a demo covered only a small part of Cupertino, CA. It had a neighborhood feel, with a page that highlights groups like the "Parent's Babysitting Exchange," and the "Kiwanis Club of Cupertino." (See Exhibit E).

The secret technical details, software algorithms, knowhow, and then unpublished patent applications that permitted the Nextdoor/Fatdoor concept to be built as described in the VentureBeat article of May 28, 2007 were misappropriated and stolen by Defendants through Taylor and Norris as described in this Complaint.

87.    Mashable.com also covered the Nextdoor/Fatdoor concept on May 28, 2007 in an article titled "FatDoor Launches Social Network for Your Neighborhood" showing a number of actual screenshots of the Nextdoor/Fatdoor concept and describing Nextdoor/Fatdoor as:

> "FatDoor is a way to get to know your neighbors on a very local level, and displays information over a Microsoft Virtual Earth map that can toggle between 2D and 3D views. …If a neighbor hasn't been to FatDoor to "claim" their location, their icon will be shown on the street as opposed to their house, and you can leave messages for them that they will see once they've signed up to use the site. You can invite users to FatDoor with their email address or their street address." (See Exhibit F).

The secret technical details, software algorithms, knowhow, and then unpublished patent

Raj Abhyanker, P.C.
Mountain View, CA
rajpatent.com

1

applications that permitted the Nextdoor/Fatdoor concept to be built as described in the

2

Mashable.com article of May 28, 2007 were misappropriated and stolen by Taylor and Norris as

3

described in this Complaint.

4

88.    Wired Magazine also covered the Nextdoor/Fatdoor concept on May 31, 2007 in

5

an article titled "Fatdoor CEO Talks About Balancing Security With Community" that described

6

the difficult problem that Nextdoor/Fatdoor attempted to solve:

7

8
9
10
11
12
13

> "With all the commotion about everything that's visible on Google's
> StreetView, there seems to be a lot of justifiable paranoia associated
> with the swiftly evolving map tools on the market. Likewise, there's
> been a lot of speculation as to how security and privacy are going to be
> dealt with on the social networking sites that draw information from
> these web apps…. saw this at work earlier this week with the
> announcement of the alpha launch of social networking site Fatdoor at
> Where 2.0. As if the standard security issues aren't tricky enough when
> it comes to the average site, Fatdoor's mashup of Live Earth aerial
> images with wiki versions of users' neighborhoods has a lot of hand
> wringing going on." (See Exhibit G).

14

It should be noted that Taylor and Norris were part of the Google Maps team suffering from the

15

privacy and security concerns centered around Google StreetViews described in the article above,

16

as they joined Benchmark on or about June 2007 after leaving Google.

17

89.    The Wired Magazine article of May 31, 2007 went on to describe the general

18

concepts of Nextdoor/Fatdoor developed by Plaintiff to account for neighborhood security :

19

20
21
22
23
24
25

> "It wasn't until Abhyanker let me take his neighborhood for a test drive
> that I started to understand how this actually plays out. Fatdoor is
> hardly the stalking tool we all feared. In fact, its simple interface made
> Abhyanker's own community fit together more like a wiki version of a
> town hall. Users in the neighborhood can broadcast general messages to
> the entire block, submit an entry about a local business, or even submit
> entries for friends and other neighbors. Abhyanker's neighborhood is
> even set up to elect moderators to help police this conduct too. Paired
> with the amount of control the user has over how much or how little
> information the neighborhood can access about themselves, it actually
> seemed….pretty safe." (See Exhibit G).

26

90.    In addition, the Wired Magazine article of May 31, 2007 went on to describe the

27

end product of the secret confidential security algorithms developed by Plaintiff to account for

28

neighborhood security: "As far as peeking into other neighborhoods? Abhyanker has that covered too. "We've been playing around with the distance, and after some testing we've found that keeping it at a 5 mile radius [from the user's residence] is the most reasonable," he said. "It keeps the focus on the neighborhood and also keeps the feeling of community. Of course, this is something that we're going to have to change depending on the size and layout of a city, but during testing it seemed like the ideal distance." The secret technical details, software algorithms, knowhow, and then unpublished patent applications that permitted Nextdoor/Fatdoor concept to be built as described in the Wired Magazine article of May 31, 2007 were misappropriated and stolen by Taylor and Norris as described in this Complaint. (See Exhibit G).

91. A press release was issued on Wednesday, October 26, 2011 reporting that a new website was launched called "Nextdoor.com" The CEO of Nextdoor was announced to be Tolia, a former EIR at Benchmark. Based on articles posted on the web, Tolia has inconspicuously been an EIR at Benchmark since at least March 2007. Tolia confirmed his Benchmark EIR status on or about August 30, 2007.

92. The Economic Times reported on October 29, 2011 that Nextdoor.com, Inc. raised between $10 million and $15 million in venture capital financing from Benchmark and Shasta Ventures. Gurley, a partner at Benchmark Capital is an investor and on the Board of Nextdoor.com, Inc. Upon reason and belief, Benchmark misappropriated from Plaintiff, the key technology of limiting views of neighbors to only a constrained geo-spatial set from Nextdoor/Fatdoor through Taylor.

93. On or about October 26, 2011, a San Jose Mercury News article titled "Epinions co-founder Nirav Tolia back in the saddle with Facebook-like startup" made it clear that Benchmark had funded Nextdoor.com, and that Taylor and/or Norris contributed to the venture:

> "Tolia said the site goes beyond neighborhood email listservs by giving users a simple and visually appealing interface and search tools. The key, he added, is software developed by an early Google (GOOG) Maps employee that makes sure only people who live in a specific neighborhood are able to join its network -- giving users a level of privacy that sites like Facebook don't." (See Exhibit H).

- 26 -

Raj Abhyanker, P.C.
Mountain View, CA
rajpatent.com

94. Upon reason and belief, the early Google (GOOG) Maps employee referenced in the article above is Bret Taylor, who stole the key technology from the Plaintiff. Tolia was inconspicuously an EIR at Benchmark in a failed attempt to keep confidential both his identity and Defendants' desire to start a competing venture to Fatdoor, Inc. An article in Gawker and Valleywag entitled "The rehabilitation of Nirav Tolia" published three months before the theft of the Nextdoor/Fatdoor concept by Defendants on March 21, 2007, stated: "Nirav Tolia is officially an EIR at Benchmark. Though he's not yet listed on the partnership's website along with the other EIRs."

95. In a follow up article published a few weeks after Fatdoor, Inc. terminated Plaintiff and retained the headhunter referred by the Defendants, VentureBeat wrote on August 29, 2007: "Nirav Tolia, who led one of the darling and prescient Web sites of the last boom, Epinions, but then who fell into controversy, and then disgrace, is back in the game. He has joined Silicon Valley venture capital firm Benchmark Capital as an 'Entrepreneur in Residence,' a position that lets him work at Benchmark's offices, sit in on company pitches and search for his next idea."

96. The next idea in the VentureBeat article is Nextdoor.com, Inc., a Delaware corporation formed on or about December 4, 2007. The nature and business of this company was made public on or about October 16, 2011. The entire basis for Nextdoor.com, Inc.'s business rests on this stolen and misappropriated materials now owned by Google, Inc. through it's acquisition of the Nextdoor/Fatdoor patent portfolio of Center'd Corporation. Upon reason and belief, Benchmark funded Nextdoor.com, Inc. with between $10 million and $15 million in equity capital between December 4, 2007 and October 16, 2011.

97. Defendant Nirav Tolia was inconspicuously an EIR at Benchmark in a failed attempt to keep his identity and the Defendants' desire to start a competing venture to that of Plaintiff confidential. An article in Gawker and Valleywag titled "The rehabilitation of Nirav Tolia" on March 21, 2007 characterizes the current CEO of Nextdoor.com, Inc. as :

"Nirav Tolia — the Epinions exec who lied on his resume and provoked a bitter legal dispute with his fellow founders — is back.... Epinions, a database of user reviews on everything from gadgets to holiday resorts, was

- 27 -

one of the hottest internet startups of 1999. Tolia made about $20m when the venture merged with Dealtime and then went public. But his fellow founders, whose shareholdings were wiped out in the deal, claimed Tolia had won their consent only by withholding vital information about Epinions' prospects. Already tarnished by the controversy, Tolia left the company, and the Valley, in something close to disgrace, when it emerged he'd lied about working for McKinsey, the elite management consultants."

98. A follow-up article appeared in Gawker and Valleywag titled "Nirav Tolia goes to Benchmark" on August 29, 2007, less than two week after Plaintiff was fired from Fatdoor, Inc., and approximately four months before Nextdoor.com, Inc. was officially incorporated listing Nirav Tolia as the CEO stating:

"The rehabilitation of Nirav Tolia is not just complete — it is, at long last, confirmed. The cofounder of Epinions, though tarred by old controversies, will announce tomorrow morning that he has, indeed, landed a long-rumored spot at Benchmark Capital as an entrepreneur-in-residence. (Back in March, Valleywag emeritus Nick Denton was told by several people Tolia was heading to Benchmark.) He'll be joined there by Sarah Leary, a former Epinions executive, and both hope to look at startup ideas having to do with online community and user-generated content."

99. Because the first article was published in March 2007 and the second in August 2007, the facts reveal a clear pattern and conspiracy by the Defendants. The Defendants conspired to keep the identity of Nirav Tolia secret in an effort to mislead, misguide, and steal the confidential knowhow, trade secrets, algorithm and business methods around the time of their learning all the details of the Nextdoor/Fatdoor venture from the Plaintiff in June 2007.

100. The relationship between Defendant Taylor and Defendant Norris is clear, including in a number of Twitter posts including a post by Defendant Tolia. For example, on June 2, 2010, Defendant Nirav Tolia wrote in his Twitter feed :

"Wow, Bret promoted to CTO at Facebook - smart, great guy. Congrats!

101. An article in VentureBeat also appears on August 29, 2007 in which the relationship between Defendants Tolia, Taylor, Norris, and Benchmark is made crystal clear :

"Nirav Tolia, who led one of the darling and prescient Web sites of the last boom, Epinions, but then who fell into controversy, and then

- 28 -

Raj Abhyanker, P.C.
Mountain View, CA
rajpatent.com

disgrace, is back in the game. He has joined Silicon Valley venture
capital firm Benchmark Capital as an "Entrepreneur in Residence," a
position that lets him work at Benchmark's offices, sit in on company
pitches and search for his next idea."

102. The article in VentureBeat on August 29, 2007 continues to describe the character

of Defendant Tolia with respect to veracity and with respect to his previous dealings with Google

Inc., the current owner of the Nextdoor/Fatdoor patent portfolio on which the Plaintiff is the lead

inventor:

"Google had considered buying Epinions, but some reports suggested it
canceled the deal after discovering Tolia had falsely claimed he'd been
employed as a consultant with McKinsey & Co. He also wrongly stated
he'd graduated from Stanford University. Tolia was forced to resign from
Shopping.com. The mistake was another reason eBay settled a lawsuit filed
by early founders at Epinions claiming firms conspired with fellow founder
Nirav Tolia to deprive them and other employees of nearly $40 million
after the acquisition.... Smarting from the controversy, Tolia moved to
New York where he had friends and lay low. He and firms Benchmark and
August have steadfastly declined to comment on the case."

103. In addition, the article in VentureBeat on August 29, 2007 describes the

relationships between Defendants Tolia, Taylor, Norris, and Benchmark very clearly:

"There, Tolia will join an impressive roster of other Benchmark EIRs,
including former Google employees, Bret Taylor and Jim Norris (see our
coverage); Mike Cassidy (our coverage) and Dave Goldberg (our
coverage). Tolia brings with him Sarah Leary (below), an early employee
at Epinions. She will also be an EIR."

104. Additionally, co-conspirators and Defendants Taylor, Gurley, Tolia, and Norris are

all connected friends on Facebook as of November 3, 2011. Upon reason and belief, these former

EIRs at Benchmark conspired in an illegal scheme to defraud and steal confidential trade secrets

and knowhow from the Plaintiff in late June 2007 for the above mentioned reasons.

105. The matter is further supported by the fact that Defendants Benchmark and Tolia

incorporated Nextdoor.com, Inc. on December 4, 2007, less than six months after

misappropriating confidential information from Plaintiff. The article in VentureBeat on August

29, 2007 explains the role Defendant Benchmark had for Defendant Tolia:

Raj Abhyanker, P.C.
Mountain View, CA
rajpatent.com

"Tolia and his partner Leary do not have any set mandate as EIRs, but are expected to start their own company at some point (they are not a couple, by the way, something you might ask because they tag around so much together; they've just been through a lot with the Epinions saga, and consider themselves a team)."

106. Upon reason and belief, the responsibility that Defendant Tolia had at Benchmark as an EIR was to steal the Nextdoor/Fatdoor concept from Plaintiff. Certainly, funding was not an issue for Defendant Nirav Tolia, as Defendant Benchmark had funded Defendant Tolia in the past with little more than a PowerPoint presentation. Upon reason and belief, it was easy for Defendant Tolia to raise money from Defendant Benchmark because they jointly conspired to misappropriate and steal confidential materials from Plaintiff.

107. Plaintiff went on unemployment for the remainder of 2007 as he has no law practice to fall back on. Had to rebuild every client from scratch as the sole income earner for his family of four, and was unable to complete graduate studies in engineering at Stanford University because of a lack of financial resources.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### (Against all Defendants for Intentional Interference with Existing and Prospective Economic Advantage)

108. Plaintiff incorporates the allegations made in Paragraph 1 through 107 as if stated herein in their entirety.

109. Prior to engaging in the aforementioned conduct, Defendants were fully aware that Plaintiff had business relationships with numerous other investors, venture capitalists, and parties interested in Plaintiff's confidential business ideas and novel inventions. Plaintiff is informed and believes and thereon alleges that, in addition to the relationship between Plaintiff and Defendant Benchmark, Defendant Benchmark also had a parallel and illicit relationship with Defendants Tolia, Harvey, Taylor, and Norris. The conduct of Defendants as described above was designed to wrongfully disrupt the economic relationships between Plaintiff, Fatdoor, Inc., and its clients, and indeed, the relationships were disrupted as a result of Defendants' actions.

- 30 -

Raj Abhyanker, P.C.
Mountain View, CA
rajpatent.com

110. In addition, Plaintiff had established relationships with numerous clients and businesses that were interested in Plaintiff's confidential business ideas and novel inventions to the substantial benefit of Plaintiff. Defendants knew of these relationships as a result of their pre-investment dealings with Plaintiff and through their actions, intentionally interfered with Plaintiff's existing and prospective economic advantage.

111. As a result of the conduct of Defendants, Plaintiff has been damaged in an amount in excess of Five Million Dollars, the exact amount of which will be proven at the time of trial. When Plaintiff has ascertained the full amount of his damages, he will seek leave of Court to amend this Complaint accordingly.

112. The conduct of Defendants as alleged herein was purposeful and intentional and was engaged in for the purpose of depriving Plaintiff of property or legal rights or otherwise causing injury, and was despicable conduct that subject Plaintiff to cruel and unjust hardship in conscious disregard of its rights, and was performed with fraud, oppression or malice so as to justify an award of exemplary or punitive damages against Defendants in excess of Five Million Dollars, the exact amount of which will be proven at the time of trial.

## SECOND CAUSE OF ACTION
### (Against all Defendants except Defendants Tolia and Leary for Breach of Confidence)

113. Plaintiff incorporates the allegations made in Paragraph 1 through 112 as if stated herein in their entirety.

114. Plaintiff conveyed to Defendants his business ideas and inventions related to Fatdoor, which were confidential and novel.

115. Defendants knew that Plaintiff's business ideas and inventions were disclosed to them in confidence.

116. There was an understanding between Plaintiff and Defendants that such confidence should be maintained.

117. Defendants disclosed, misappropriated and used Plaintiff's business ideas and inventions in violation of such understanding.

118. Defendants violated such understanding knowingly and willfully.

119. As a direct and proximate result of Defendants' actions alleged above, Plaintiff has no adequate legal remedy, has been irreparably injured, and has suffered monetary damages in excess of Five Million Dollars, the exact amount of which will be proven at the time of trial.

### THIRD CAUSE OF ACTION
### (Against Defendants Benchmark, Harvey, Fenton, Taylor, Norris, Gurley and Lasky for Breach of Contract)

120. Plaintiff incorporates the allegations made in Paragraph 1 through 119 as if stated herein in their entirety.

121. Plaintiff and Defendant Benchmark entered into a contract on or about the summer of 2007 wherein Plaintiff supplied confidential information to Defendant Benchmark related to Fatdoor, Inc. for the explicit purpose of conducting due diligence prior to potential investment in Fatdoor, Inc.

122. As part of the aforementioned contract, Defendant Benchmark was fully aware that Plaintiff supplied aforementioned confidential information for the explicit purpose of due diligence related to a potential investment in Fatdoor, Inc. by Defendant Benchmark.

123. As part of the aforementioned contract, Defendants explicitly represented to Plaintiff that they were not developing a company similar to the Nextdoor/Fatdoor concept, and even cleared all conflicts of interest in writing.

124. Plaintiff performed all the conditions, covenants, and promises of the aforementioned contract in accordance with the terms and conditions of the oral contract by supplying Defendant Benchmark with confidential information regarding Nextdoor/Fatdoor and requested by Defendant Benchmark explicitly for pre-investment due diligence purposes.

125. Defendant Benchmark breached the agreement with Plaintiff by misappropriating the confidential information supplied by Plaintiff and funded Nextdoor.com, Inc. with the confidential information misappropriated from Plaintiff despite explicitly stating to Plaintiff, as a part of the agreement, that it was not developing a company similar to Plaintiff's company.

Raj Abhyanker, P.C.
Mountain View, CA
rajpatent.com

126. Defendant Benchmark therefore breached its contract with Plaintiff, who has been damaged in excess of Five Million Dollars, the exact amount of which will be proven at the time of trial.

### FOURTH CAUSE OF ACTION
### (Against all Defendants for Fraud and Conspiracy to Defraud)

127. Plaintiff realleges and incorporates by reference paragraphs 1 through 126 as if stated herein in their entirety.

128. Defendants violated the common law of fraud and California Civil Code §§ 1709, 1710, and 1572 through the material misrepresentations and non-disclosures alleged above, including the failure to truthfully respond to Plaintiff with respect to their conflicting interest and position in building Nextdoor.com, Inc. only months after misappropriating confidential information from Plaintiff. Defendants failed to disclose material facts concerning the creation of Nextdoor.com, Inc. – a company which was conceived and created from confidential information fraudulently misappropriated from Plaintiff.   Through their fraudulent actions, Defendants Harvey, Fenton, Taylor, Norris, Gurley, Lasky and Love aided and abetted the other Defendants in their fraudulent conduct.

129. Defendants made their material misrepresentations knowing that their statements were false and misleading and with the intent to defraud Plaintiff and other shareholders of Fatdoor, Inc. As alleged above, Defendants conspired with one another to make the material misrepresentations and acted in furtherance of their conspiracy by using those material misrepresentations to illegally compete with Fatdoor, Inc.

130. Plaintiff and Fatdoor, Inc. relied on Defendants' material misrepresentations by disclosing trade secrets, business plans, unpublished confidential patent applications, knowhow, and software technologies regarding the Nextdoor/Fatdoor conception.

131. As a proximate result of relying on Defendants' material misrepresentations, Plaintiff incurred actual damages consisting of the loss of his common shares in Fatdoor, Inc., loss of his employment with Fatdoor, Inc., and the value of the equity interests he would now

Raj Abhyanker, P.C.
Mountain View, CA
rajpatent.com

have had in building and contributing to the original Fatdoor, Inc. concept.

132. Defendants' fraudulent conduct alleged above was done intentionally, through malice, fraud and oppression, with the intention of the part of the Defendants to deprive Plaintiff of his common stock and legal rights and was despicable conduct that subjected Plaintiff to cruel and unjust hardship in conscious disregard for Plaintiff's rights, so as to justify an award of exemplary and punitive damages.

## FIFTH CAUSE OF ACTION
## (Against all Defendants for Constructive Fraud and Aiding and Abetting Constructive Fraud)

133. Plaintiff realleges and incorporates by reference paragraphs 1 through 132, inclusive, set forth above.

134. Defendants are liable to Plaintiff for constructive fraud because they aided and abetted the other Defendants in their concealment of material facts concerning the business operations of Defendant Benchmark. Defendant Benchmark, through its partners and EIRs, actively supported, encouraged, aided and abetted other Defendants and actively participated in constructive fraud and concealing material information concerning their intentions to misappropriate Fatdoor Inc.'s confidential information in the guise of using that information to conduct potential pre-investment due diligence but instead created a similar company of their own – Nextdoor.com, Inc.

135. As a proximate result of relying on Defendants' material constructive fraud, Plaintiff incurred actual damages consisting of the loss of his common shares in Fatdoor, Inc., loss of his employment in Fatdoor, Inc., and the value of the equity interests they would have now had in building and contributing to the original Fatdoor, Inc. concept. In addition, Plaintiff has suffered losses in excess of Five Million Dollars, the exact amount of which will be proven at the time of trial.

136. Defendants' constructively fraudulent conduct alleged above was done intentionally, through malice, fraud and oppression, with the intention of the part of the Defendants to deprive Plaintiff of his common stock and legal rights and was despicable conduct

- 34 -

Raj Abhyanker, P.C.
Mountain View, CA
rajpatent.com

1    that subjected to Plaintiff to cruel and unjust hardship in conscious disregard for Plaintiff's rights,

2    so as to justify an award of exemplary and punitive damages.

3

4    ### SIXTH CAUSE OF ACTION
     ### (Against Defendant Benchmark for Unjust Enrichment)

5        137. Plaintiff incorporates by reference paragraphs 1 through 136, inclusive, set forth

6    above.

7        138. Defendant Benchmark did in fact receive, obtain and/or gain the use and/or

8    possession of such assets and intellectual property of Plaintiff and Fatdoor, Inc. as referenced in

9    this Complaint.

10       139. Defendant Benchmark would be unjustly enriched if they were to retain and/or

11   realize the benefit of said assets and intellectual property without compensating Plaintiff for the

12   fair value thereof.

13       140. Plaintiff is entitled to restitution and declaratory relief.

14       141. Defendant Benchmark's wrongful acts and omission in commission and

15   furtherance of their aforesaid unjust enrichment which are attributable to Defendants as aforesaid,

16

17   were engaged in willfully, wantonly and deliberately, and with the intent to cause damage to

18   Plaintiff or with reckless disregard of the substantial likelihood that Plaintiff would suffer and

19   incur damages thereby, and as such were so outrageous and shocking to the conscience that the

20

21   imposition of punitive damages upon Defendant Benchmark is warranted.

22

23   ### SEVENTH CAUSE OF ACTION
     ### (Against Defendant Benchmark for Unfair Business Acts and Practices in Violation of
     ### Business and Professions Code, California Civil Code § 17200 *et seq.*)

24

25       142. Plaintiff incorporates by reference paragraphs 1 through 141, inclusive, set forth

26   above.

27       143. Plaintiff is informed and believes and thereon alleges that, at all times herein

28

- 35 -

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

Raj Abhyanker, P.C.
Mountain View, CA
rajpatent.com