# EXHIBIT 2 TO COUNTERDEFENDANTS' REQUEST FOR JUDICIAL NOTICE

## (Part 1 of 4)

1   ASHWIN K. ANAND (SBN# 264694)
    *ashwin@rajpatent.com*
2   RAJ V. ABHYANKER (SBN# 233284)
    *raj@rajpatent.com*
3   RAJ ABHYANKER, P.C.
    1580 W. El Camino Real, Suite 13
4   Mountain View, CA 94040
    Telephone: (650) 965-8731
5   Facsimile: (650) 989-2131

6

7   Attorneys for Plaintiff,
    Raj V. Abhyanker

8          SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                    COUNTY OF SANTA CLARA

10                   UNLIMITED JURISDICTION

11

12  RAJ VASANT ABHYANKER,                    CASE NO. 111CV212924
                                             HON. PETER KIRWAN
13              Plaintiff,                    DEPT. 8

14       v.
                                             FIRST AMENDED COMPLAINT
15  BENCHMARK CAPITAL PARTNERS
    VII, L.P., a Delaware limited partnership;   (1) MISAPPROPRIATION OF TRADE SECRETS
16  BENCHMARK CAPITAL                              (CAL.CIV.CODE § 3426 *ET SEQ.*);
    MANAGEMENT CO. VII LLC, a                  (2) FRAUD AND CONSPIRACY TO DEFRAUD;
17  Delaware limited liability company;       (3) CONSTRUCTIVE FRAUD AND AIDING AND
    NEXTDOOR.COM, INC., a Delaware                ABETTING CONSTRUCTIVE FRAUD;
18  corporation; KEVIN R. HARVEY; PETER       (4) NEGLIGENT INTERFERENCE WITH EXISTING
    FENTON; MITCH LASKY; J. WILLIAM               AND PROSPECTIVE ECONOMIC ADVANTAGE;
19  GURLEY; BRET TAYLOR; MICHAEL             (5) BREACH OF CONFIDENCE;
    CASSIDY; REID G. HOFFMAN;                 (6) BREACH OF CONTRACT;
20  PRAKASH JANAKIRAMAN; NIRAV N.             (7) BREACH OF IMPLIED COVENANT OF GOOD
    TOLIA; SARAH LEARY; JAMES                     FAITH AND FAIR DEALING;
21  NORRIS; and DOES 1-100,                   (8) NEGLIGENT MISREPRESENTATION;
                                             (9) TORTIOUS INTERFERENCE WITH CONTRACT;
22              Defendants                   (10) UNJUST ENRICHMENT;
                                             (11) UNFAIR COMPETITION UNDER BUSINESS
23                                               AND PROFESSIONS CODE (CAL.CIV.CODE §
                                                 17200 *ET SEQ.*);
24                                           (12) VIOLATIONS OF THE CALIFORNIA
                                                 CORPORATE SECURITIES LAWS; AND
25                                           (13) CONVERSION

26                                           **JURY TRIAL DEMANDED**

27

28                                 - 1 -

ENDORSED

**FILED**

DEC - 6 2011

DAVID H. YAMASAKI
Chief Executive Officer/Clerk
Superior Court of CA County of Santa Clara
BY_____ DEPUTY
R. Schwartz

*Raj Abhyanker, P.C.*
*Mountain View, CA*
*rajpatent.com*

1    Plaintiff Raj Vasant Abhyanker, by his attorneys, alleges as follows on information and

2 belief, except as to those allegations pertaining to his own knowledge and conduct, which are

3 made on personal knowledge:

4                                      **JURISDICTION AND VENUE**

5    1.    Jurisdiction is proper in this Court because the Superior Court is a court of general

6 jurisdiction and because Plaintiff seeks both damages and equitable relief.

7    2.    Venue is proper in this Court because Defendants maintain their principal place of

8 business in the County of Santa Clara, and regularly conduct business in this county. All

9 Defendants are residents of Northern California, and either reside in this county or at all times

10 herein, conducted the acts complained of herein in the County of Santa Clara. Plaintiff at all

11 times complained of herein was and is a resident of the County of Santa Clara.

12                                          **THE PARTIES**

13                                            **PLAINTIFF**

14    3.    Plaintiff Raj V. Abhyanker ("Plaintiff") is a resident of Cupertino, California.

15 Plaintiff is the founder of Center'd Corporation, Inc. ("Center'd"), which was originally named

16 Fatdoor, Inc.  He served as the Chief Executive Officer ("CEO") of Fatdoor, Inc. from the

17 inception of the company on October 25, 2006 until August 31, 2007. Plaintiff is the inventor of

18 forty six (46) United States patent applications filed around a concept called Nextdoor/Fatdoor,

19 now owned by Google, Inc. At the time of the wrongful acts by Defendants, Plaintiff owned four

20 million (4,000,000) shares of Center'd's common stock, constituting approximately twenty five

21 percent (25%) of outstanding equity which was fully vested until being restricted after Series B

22 financing, because of the wrongful acts of the Defendants.

23                                          **DEFENDANTS**

24    4.    Upon information and belief, Defendant Benchmark Capital Partner VII, L.P. is a

25 Delaware limited partnership Benchmark Capital and Defendant Benchmark Management Co.

26 VII LLC is a Delaware limited liability company. Both these Defendants will be collectively

27 referred to as "Defendant Benchmark and/or Benchmark" in this First Amended Complaint.

28 Defendant Benchmark is located in San Mateo County at 2480 Sand Hill Road, Suite 200, Menlo

Raj Abhyanker, P.C.
Mountain View, CA
rajpatent.com

1   Park, California, 94025 and conducts business in the County of San Clara.

2       5.   Upon information and belief, Defendant Nextdoor.com, Inc. is a Delaware

3   corporation formed initially as Round Two, Inc. on or about December 4, 2007.  Round Two, Inc.

4   changed names to Fanbase, Inc. on or around September 2, 2009.  Then, on or about March 29,

5   2011, Fanbase, Inc. changed names again to Nextdoor.com, Inc. The corporate entity remained

6   the same during each of the name changes. Defendant Nextdoor.com, Inc. ("Nextdoor.com, Inc.")

7   is located at 110 Sutter Street, Suite 700, San Francisco, California, 94104 and does business in

8   the County of Santa Clara.

9       6.   Upon information and belief, Defendant Kevin R. Harvey ("Harvey") is a resident

10  of Los Gatos, California.  Defendant Harvey is a General Partner of Benchmark Capital Partners

11  VII, L.P., and an equity holder in Benchmark Capital Management Co. VII LLC., and through the

12  fund, an equity holder of Nextdoor.com, Inc.

13      7.   Upon information and belief, Defendant Peter Fenton ("Fenton") is a resident of

14  San Francisco, California.  Fenton is a General Partner of Benchmark Capital Partners VII, L.P.,

15  and an equity holder in Benchmark Capital Management Co. VII LLC., and through the fund, an

16  equity holder of Nextdoor.com, Inc.

17      8.   Upon information and belief, Defendant Mitch Lasky ("Lasky") is a resident of the

18  County of Santa Clara, California.  Lasky is a General Partner of Benchmark Capital Partners

19  VII, L.P., and an equity holder in Benchmark Capital Management Co. VII LLC., and through the

20  fund an equity holder of Nextdoor.com, Inc.

21      9.   Upon information and belief, Defendant J. William Gurley ("Gurley") is a resident

22  of Portola Valley, California. Gurley is a General Partner of Benchmark Capital Partners VII,

23  L.P., and an equity holder in Benchmark Capital Management Co. VII LLC.  Gurley is also a

24  Director of Nextdoor.com, Inc.

25      10.  Upon information and belief, Defendant Bret Taylor ("Taylor") is a resident of Los

26  Gatos, California.  Taylor is the Chief Technology Officer of Facebook, Inc. and was a former

27  Entrepreneur-In-Residence ("EIR") at Benchmark Capital Partners VII, L.P.

28      11.  Upon information and belief, Defendant Michael Cassidy ("Cassidy") is a resident

- 3 -

Raj Abhyanker, P.C.
Mountain View, CA
rajpatent.com

1    of the County of Santa Clara, California and was a former EIR at Defendant Benchmark.

2         12. Upon information and belief, Defendant Reid G. Hoffman ("Hoffman") is a

3    resident of Los Altos, California. Hoffman is an internet entrepreneur and the Founder of

4    LinkedIn Corporation. Hoffman previously performed due diligence for Defendant Benchmark.

5         13. Upon information and belief, Defendant Prakash Janakiraman ("Janakiraman") is a

6    resident of San Francisco, California. Janakiraman is the Co-Founder and Vice President of

7    Engineering at Nextdoor.com, Inc. and was a former employee of Google, Inc.

8         14. Upon information and belief, Defendant Nirav Tolia ("Tolia") is a resident of San

9    Francisco, California.  Tolia is the CEO and Co-Founder of Nextdoor.com, Inc., formed on or

10   about December 4, 2007 as Round Two, Inc.  Tolia was a former EIR at Defendant Benchmark.

11        15. Upon information and belief, Defendant Sarah Leary ("Leary") is a resident of

12   Redwood City, California. Leary is the Vice President of Marketing and the Co-Founder of

13   Nextdoor.com, Inc., formed on or about December 4, 2007 as Round Two, Inc.  Leary was a

14   former EIR at Defendant Benchmark.

15        16. Defendant James Norris ("Norris") is a resident of Mountain View, California.

16   Norris was a former EIR at Defendant Benchmark.

17        17. The true names and capacities of Defendants named DOES 1-100, inclusive,

18   whether individual, corporate, associate, or otherwise, are presently unknown to Plaintiff.

19   Plaintiff therefore sues these Defendants by these fictitious names.  Plaintiff will amend his

20   Complaint to substitute true names and capacities when they have been ascertained.  Plaintiff is

21   informed and believes, on the basis of that information and belief alleges that each of the

22   fictitiously-named Defendants is responsible in some manner for the occurrences herein alleged.

23        18. By reason of their positions and relationships with Fatdoor, Inc. and Plaintiff

24   including their access to non-public information concerning Fatdoor, Inc. and the timing,

25   structure, and terms of the transaction at issue in this action, the Defendants were and are

26   fiduciaries to the Plaintiff.  In engaging in the wrongful conduct alleged herein, Defendants

27   pursued a common course of conduct, acted in concert with each other, and conspired with one

28   and other, in furtherance of their common plan, scheme or design. In addition, each of the

Raj Abhyanker, P.C.
Mountain View, CA.
rajpatent.com

- 4 -

1    Defendants aided and abetted each other in breach of their respective fiduciary duties, as alleged
2    herein.  In aiding and abetting the other breaches of fiduciary and professional duties, the
3    Defendants rendered substantial assistance to the other Defendants with knowledge or in reckless
4    disregard of the breaches of duty committed by such Defendants.

5                                  **NATURE OF THE ACTION**

6        19.    Plaintiff is a former owner of the common stock and vested options to purchase
7    common stock of Center'd (d/b/a Nextdoor.com, d/b/a Fatdoor.com, d/b/a Centerd.com, d/b/a the
8    Dealmap.com).  Center'd was purchased by Google, Inc. on or about July 29, 2011.  Between
9    October 25, 2006 and April 2, 2008, Center'd was named Fatdoor, Inc.

10       20.    Plaintiff is a founder and former CEO of Fatdoor, Inc., a Delaware corporation
11   formed on October 25, 2006.  Plaintiff is the lead inventor on forty six (46) United States patent
12   applications and six (6) international PCT patent applications filed by Fatdoor, Inc. relating to the
13   Nextdoor/Fatdoor concept and covering a wide variety of geo-spatial database, architecture, and
14   application technologies associated with neighborhood communication and geo-spatial social
15   networking.  As of the filing of this First Amended Complaint, two of these patent applications
16   have issued into granted United States Patents Nos. 7,966,567 and 8,064,590. In addition, at least
17   two more patent applications related to the Nextdoor/Fatdoor concept are close to issuance,
18   including United States published patent application numbers 11/784,137, and 11/900,364.

19       21.    Defendants opportunistically misappropriated and stole trade secrets, business
20   plans, unpublished confidential patent applications, knowhow, and software technologies
21   regarding the Nextdoor/Fatdoor concept from Plaintiff and Fatdoor, Inc. through false and
22   misleading representations and omissions of material facts concerning Defendant Benchmark's
23   financial affairs, business operations, and prospects.  Furthermore, Defendants actively interfered
24   with the operations of Fatdoor, Inc. with respect to the Nextdoor/Fatdoor concept causing the
25   company to abandon its plans to pursue the domain Nextdoor.com, the Nextdoor/Fatdoor
26   business model for neighborhood social networking, and causing Plaintiff to be terminated from
27   the company.

28       22.    In less than six months after misappropriating confidential trade secrets, business

- 5 -

plans, unpublished confidential patent applications, knowhow, and software technologies related to the Nextdoor/Fatdoor concept, Defendants independently formed a new corporation, Round Two, Inc., a Delaware corporation formed on or about December 4, 2007. Round Two, Inc. changed names to Fanbase, Inc. on or about September 2, 2009, and then to Nextdoor.com, Inc. on or about March 29, 2011.

23.     The nature and business of Nextdoor.com, Inc. was made public on or about October 16, 2011 as will be described herein. The entire basis for Nextdoor.com, Inc.'s business rests on these stolen and opportunistically misappropriated materials, some of which are now owned by Google, Inc. through its acquisition of the Nextdoor/Fatdoor patent portfolio of Center'd Corporation (see Exhibit H). According to an Economic Times report on or about October 26, 2011, Defendant Benchmark funded Nextdoor.com, Inc. with between ten (10) and fifteen (15) million dollars in equity capital from approximately between December 2007 and October 2011.

24.     Absent Defendants' fraudulent scheme to interfere with the business operations of Fatdoor, Inc. following funding by a competing venture capitalist, Norwest Capital ("Norwest"), Plaintiff would have remained gainfully employed and Fatdoor, Inc. would not have abandoned the pursuit of its original and novel Nextdoor/Fatdoor neighborhood social networking concept that Plaintiff invented and developed. In addition, Plaintiff's restricted shares would have continued to mature and increase in value as Plaintiff was the Founder and the largest common shareholder in Fatdoor, Inc., prior to the company's sale to Google, Inc.

25.     On or about the summer of 2007, Defendants learned about the Nextdoor/Fatdoor concept after representing to Plaintiff that they were not developing anything similar in the space, and after clearing all conflicts of interest in writing. Due to the fraudulent and deceitful acts of Defendants, Plaintiff lost his employment and salary with Fatdoor, Inc., along with restricted common stock and the opportunity to build something he invented and developed.

26.     In addition, during that same time, Defendants knowingly, purposefully, recklessly, and negligently conspired to opportunistically steal and misappropriate confidential trade secrets from Plaintiff with respect to the Nextdoor/Fatdoor concept to start Nextdoor.com,

1  Inc.

2  27.    The Nextdoor/Fatdoor concept was originally created by Plaintiff on or about

3  August 2005 while running for Cupertino City Council. At that time, Plaintiff was surprised by

4  the lack of web based tools available to create walking maps of neighborhoods, and to annotate

5  information regarding neighbors around a particular residence.  Plaintiff initially developed the

6  Nextdoor/Fatdoor concept as a mash up of maps created using MapQuest and a Wikipedia style

7  entry page for each neighbor that he met. A conception document was first prepared on or about

8  August 21, 2005 and clearly included the name "Nextdoor."  Particularly, the document was

9  titled: "NextDoor.com Specification Draft 1 - August 21, 2005 "Get to know your neighbors.""

10  28.    The conception document contained several paragraphs including:

12  "What we are trying to create is a way to create a way for
neighbors to get to know each other and their surrounding
businesses more easily through the Internet.   The UI of the site
will have a map of your home with a social networking page pop
up on the right when one clicks a particular home/location.  There
will be no information about prices of a home, no information
about the number of bedrooms of a home, etc.  People will be the
focus, not the real estate."

16  29.    The document was improved and modified on or about November 2006 and

17  submitted as an attachment in the Nextdoor/Fatdoor diligence folder to Defendants Benchmark,

18  Harvey, Fenton, Lasky, Gurley, Taylor, Cassidy and Norris on or about June 22, 2007 (see

19  Exhibit B).  The document included the following statement:

21  "Note: we don't have the domain nextdoor.com yet, ive placed a
bid on it. We do have modernvilliage.com, but im trying to find a
better name. let me know if you find something that is better and
available for sale. Should know about nextdoor.com by the end of
this week." (See Exhibit B) [sic].

24  30.    Plaintiff and Fatdoor, Inc. intended to purchase the Nextdoor.com domain name

25  shortly after Series B funding.  Plaintiff worked diligently between on or about August 21, 2005

26  and June 15, 2006 to get the Nextdoor/Fatdoor website launched along with his business partner

27  and assistant Babar Rana ("Rana").  During this period, Rana created screenshots and wireframes

28  of the Nextdoor/Fatdoor concept using PowerPoint showing the name "Nextdoor" (see Exhibit

Raj Abhyanker, P.C.
Mountain View, CA
rajpatent.com

A). There were two mockup images of the Nextdoor/Fatdoor concept shared by Plaintiff with Defendants Benchmark, Harvey, Fenton, Lasky, Gurley, Taylor, Cassidy and Norris on or about on June 22, 2007 (see Exhibit A). The first mockup image showed a photograph of Rana, with a personal profile wall feed from neighbors who provided comments on Rana's wall. A search area box read "search neighborhood." The word "Nextdoor" was clearly shown in the upper, left-hand side of the screenshot. A map was shown in the screenshot illustrating the location of Rana's hypothetical home and images indicating which neighbors had and had not joined the neighborhood surrounding Rana's home. (See Exhibit A). Rana worked with Plaintiff shortly after the conception of the Nextdoor/Fatdoor concept on or about August 21, 2005 until at least October 2007. Rana is currently a Senior Product Manager in the Localization team at Google, Inc. as of the filing of this First Amended Complaint.

31.    The second mockup image of the Nextdoor/Fatdoor concept prepared by Rana between on or about August 21, 2005 and June 15, 2006, and shared with the Defendants Benchmark, Harvey, Fenton, Lasky, Gurley, Taylor, Cassidy and Norris on or about June 22, 2007, also visibly and clearly showed the name "Nextdoor" in the upper, left-hand side of the site as well. A message appeared on that mockup stating, "[g]et to know your neighbors." Plaintiff's home was pictured on the map, along with photos of Plaintiff's family and next door residential and business neighbors visible on a map.

32.    These screenshots provided to Defendants Benchmark, Harvey, Fenton, Lasky, Gurley, Taylor, Cassidy and Norris on or about June 22, 2007, were included as part of an investor diligence package that very same day. The conception mockups were also included as part of the diligence package given to Defendants Benchmark, Harvey, Fenton, Lasky, Gurley, Taylor, Cassidy and Norris on or about Friday, June 22, 2007. In these conception mockups, the name "Nextdoor" was clearly visible.

33. The name "Nextdoor" is found in at least three patent applications (an International PCT application titled "MAP BASED NEIGHBORHOOD SEARCH AND COMMUNITY CONTRIBUTION and filed on March 5, 2007; a provisional patent application titled "METHOD AND APPARATUS OF A NEIGHBORHOOD EXPRESSION AND USER

- 8 -

1   CONTRIBUTION SYSTEM and filed on October 24, 2006; and a utility patent application (see

2   below) filed on November 22, 2006) filed by Fatdoor, Inc. Plaintiff is the lead inventor on these

3   patent applications. For example, on or about November 22, 2006, Plaintiff prepared and filed

4   the first utility United States Patent Application number 2007/0218900 A1 titled "MAP BASED

5   NEIGHBORHOOD SEARCH AND COMMUNITY CONTRIBUTION" on which the name

6   "Nextdoor.com" was clearly associated as the domain name intended to be used by Fatdoor, Inc.

7   (see page 21, col. 1, paragraph [0236] of Exhibit D) ('900 patent application). This '900 patent

8   application explicitly disclosed and described the Nextdoor.com domain and was private and not

9   published as a public document at the time of disclosure to Defendants Benchmark, Harvey,

10  Fenton, Lasky, Gurley, Taylor, Cassidy and Norris on or about June 22, 2007. The 900' patent

11  application is now a public record searchable worldwide on Google patent search and United

12  States Patent and Trademark Office records ("USPTO"). Particularly, in the '900 patent

13  application, it is written:

15      "In one embodiment, the methods and systems illustrated in
        Figures 1-28 enable people to search for things they want e.g.
16      nearby pizzas etc. (e.g., by distance away). Advertisers can 'own'
        their listing by placing a display ad on **nextdoor.com**.", U.S.
17      patent application 2007/0218900 A1, (page 21, col. 1, paragraph
        [0236]) (see Exhibit D).

18
19      34.  The three Fatdoor, Inc. patent applications having the word "Nextdoor.com" had

20  not yet published as a public document at of the time of disclosure of the Nextdoor/Fatdoor

21  concept to Defendants Benchmark, Harvey, Fenton, Lasky, Gurley, Taylor, Cassidy and Norris.

22      35.  Indeed, Plaintiff and Fatdoor, Inc. intended to purchase the Nextdoor.com

23  domain name shortly after Series B funding. Since the name "Nextdoor.com" was expensive to

24  buy, Fatdoor, Inc. used the name "Fatdoor.com" as a second preference until additional funding

25  could be raised after the summer of 2007 to purchase the Nextdoor.com domain. But for the

26  interference by the Defendants in the internal affairs of Fatdoor, Inc., the domain Nextdoor.com

27  would have been purchased by Plaintiff for Fatdoor, Inc. after funding. It was Plaintiff and

28  Fatdoor, Inc.'s intention to purchase the name Nextdoor.com, and change the name of its business

Raj Abhyanker, P.C.
Mountain View, CA
rajpatent.com

- 9 -

1  accordingly from Fatdoor, Inc. to Nextdoor, Inc.  The Defendants opportunistically

2  misappropriated their confidential knowledge of this fact to illegally convince the Board of

3  Directors of Fatdoor, Inc. to terminate the employment of Plaintiff, and to purchase the

4  Nextdoor.com domain for themselves after Plaintiff was terminated.

5       36. On or about October 22, 2006, Plaintiff wrote an email to Rana and two

6  developers working with Plaintiff on or about the years 2006 and 2007, Mr. Sandeep Sood and

7  Mr. Ankur Verma, stating:

8
9
10
11
12

> "Sandeep, Ankur, and Babar,  Lets be careful to tell others about
> NextDoor, Inc.  Even though our patent app has been filed, the
> name of this game will be EXECUTION and FIRST TO
> MARKET. As such, the patent app will not be enough protection
> for us.  KEEP THIS THING UNDER THE WRAPS UNTIL
> LAUNCH. Raj"

13       37. Rana, Sood, and Verma have spoken to the Plaintiff and are available to testify

14  consistently with their knowledge of the communications described herein. Upon information and

15  belief, the domain Nextdoor.com belonged to 1550507 Ontario, Inc., ("1550507 Ontario") a

16  company that did business as Pool.com or about the year 2006. On or about October 22, 2006,

17  Plaintiff sent an email to the correspondent listed for 1550507 Ontario on the Whois record for

18  the Nextdoor.com domain stating:

19
20
21
22
23

> "Dear Webmaster,  I am interested in buying this name
> www.nextdoor.com. Im willing to pay $1300 US for it.  How can
> I contact the seller to see if they are willing to sell it?  I think the
> name is registered to you per Namescout.com.  The name is not
> being used.  A friend of mine is launching a neighborhood business
> and wants to use this domain name.  Let me know .  Raj"

24       38. On or about October 24, 2006, a response was received from 1550507 Ontario,

25  stating:

26
27
28

> "Thank you for your interest in the domain, www.nextdoor.com.
> The domain is not currently for sale at this time.  Thanks again,
> webmaster@1550507.ca"

- 10 -

Raj Abhyanker, P.C.
Mountain View, CA
rajpatent.com

[00013069121.1]

39.   On or about early 2007, the Whois records showed the owner of Nextdoor.com as Forsyte Corporation ("Forsyte") in Nassau, Bahamas. Upon information, reason, and belief, this may be the same company as 1550507 Ontario because Forsyte has been characterized in the exact same way as 1550507 Ontario in publicly accessible records.

40.   Then, on or about December 27, 2007, the same month that a company called Round Two, Inc. was formed in Delaware, a private, hidden bidder took over control of the Nextdoor.com domain, and moved it from Pool.com to GoDaddy.com. Upon information and belief, a website "DomainsByProxy" was used to hide the domain purchaser's name, which likely purchased it from Forsyte. The slogan on the website www.domainsbyproxy.com states: "Your Identity is Nobody's business but ours" as of the filing of this First Amended Complaint.

41.   Upon information and belief, the identity was kept secret until on or about March 25, 2010, when there was a sudden public change in the Whois record, indicating the owner as Mr. Kevin Watson ("Watson") of Columbia, Tennessee. Watson is the CEO of Next Door, LLC, a company that specializes in making door frames.

42.   Plaintiff contacted the seller, Watson, and spoke with him over the phone on or about November 28, 2011. Watson informed Plaintiff that he recalled receiving a number of phone calls from a venture capitalist who wished to purchase the domain Nextdoor.com as soon as he purchased it on or about March 2010. Initially, Watson had wanted hundred thousand dollars ($100,000.00) for the domain, but later ended up selling the domain for approximately fifty eight thousand five hundred dollars ($58,500.00) by approximately January 2011. Watson wrote to the Plaintiff on or about November 29, 2011 stating:

> "I purchased Nextdoor.com from Godaddy in March 2010. Sold it in Jan 2011. The person that contacted me was Josh Becker. Keep me informed on this if you don't mind. If you have any more questions let me know.  Thanks Kevin Watson"

In a follow up email after being asked for clarification on the identity of Josh Becker, Watson responded to Plaintiff in an email that same day of November 29, 2011 stating: "Your

- 11 -

Raj Abhyanker, P.C.
Mountain View, CA
rajpatent.com

welcome. If I recall he was representing benchmark [sic] I think. I will go back and look at some emails and see if I can find it all.".

As of the filing of this First Amended Complaint, no further information has been received by Plaintiff from Mr. Kevin Watson.

43. On or about January 14, 2011, the registrant was updated from Watson to Defendant Janakiraman on Steiner Street in San Francisco, California. Upon information and belief, Defendant Janakiraman is the Co-Founder of Nextdoor.com, Inc. and previously worked under Defendant Taylor at Google Maps. A VentureBeat article on or about October 26, 2011 states: "[i]t cost the company $60,000 to buy the domain name, said Tolia, but he thinks it's definitely worth it." (See: http://venturebeat.com/2011/10/26/nextdoor-neighborhood-social-network/). Shortly afterward, the registration was updated to Sutter Street in San Francisco, California. In addition, a trademark application was filed for the word "Nextdoor" on or about February 8, 2011. (See: http://www.trademarkia.com/nextdoor-85236918.html).

44. On or around December 15, 2006, Plaintiff showed the Nextdoor/Fatdoor concept to investor Jeffrey M. Drazan ("Drazan"), a client of Plaintiff's private law firm. Drazan was intrigued with the Nextdoor/Fatdoor prototype site that had been built by Plaintiff. On or about January 5, 2007, Drazan agreed to personally invest five hundred thousand dollars ($500,000.00) in the Nextdoor/Fatdoor concept pending clearance from his limited partners. Drazan introduced Plaintiff to his friend William H. Harris, Jr. ("Harris, Jr."), the former CEO of Intuit, Inc. and PayPal that same weekend. Harris, Jr. was immediately impressed with the idea of building the Nextdoor/Fatdoor social network around the concept of getting to know your neighbors. Plaintiff met with Drazan and Harris, Jr. in Woodside, California on or about January 15, 2007, during which Drazan and Harris, Jr. gave Plaintiff a one million dollar ($1,000,000.00) equity capital term sheet with attractive terms of fully vested stock for Plaintiff.

45. On or about February 1, 2007, Plaintiff independently closed a one million dollar ($1,000,000.00) Series A round of equity financing with Drazan and Harris, Jr. for the Nextdoor/Fatdoor concept.

46. Plaintiff then hired Chandu Thota ("Thota"), who Plaintiff recruited from a job

Raj Abhyanker, P.C.
Mountain View, CA
rajpatent.com

post on Craigslist.com and Monster.com, as a salaried, full-time developer, Chief Technical Officer ("CTO"), and Co-Founder of Fatdoor, Inc. one month after funding closed. Thota originally applied to a Monster.com job posting made by Plaintiff on or about November 1, 2006.

47.    Thota permanently moved from his home in Seattle to join Plaintiff as a CTO and Co-Founder on or about February 28, 2007. After Thota permanently joined, the prototype of Nextdoor/Fatdoor was quickly developed into a working product based on Plaintiff's original ideas and inventions. Plaintiff left his full time employment at his private law practice and joined as the full time CEO of Fatdoor, Inc. Per the guidelines set forth by investors, Plaintiff actively transferred existing law firm clients to other attorneys to ensure that Plaintiff could focus full time on Fatdoor, Inc.   On or about January 27, 2007, Plaintiff was invited to the home of Stanford University ("Stanford") professor, Dr. Hector Garcia Molina ("Dr. Molina") for brunch, after a referral to Plaintiff from Stanford computer science professor, Dr. Andreas Paepcke ("Dr. Paepcke").  Plaintiff brought along Thota to brunch at the home of Dr. Molina.  Dr. Molina is on the Board of Directors of Oracle, Inc. and was a former Chairman of the Computer Science department at Stanford. Dr. Molina was impressed by the Nextdoor/Fatdoor technology, methods of organizing database structures in a geospatial manner, and the concept around getting to know neighbors. Dr. Molina and Dr. Paepcke agreed to become strategic advisors and small investors in Fatdoor, Inc. around the Nextdoor/Fatdoor concept along with Drazan and Harris, Jr. A few months later, Stanford computer science professor Rajeev Motwani ("Motwani") also agreed to be an advisor and small investor in the Nextdoor/Fatdoor. Motwani was a former advisor to Google, Inc. founders, Sergey Brin and Larry Page.

48.    Plaintiff is the lead inventor on an additional thirty (30) or more United States patent applications and international patent applications approximately  between March 13, 2007 and August 15, 2007 based around neighborhood social networking, mobile applications, and geo-spatial technologies. These patents collectively represent some of the earliest geospatial social networking and mobile patent applications ever filed.

49.    The phrase "Get to know your neighbors" was applied for as a United States trademark on or about November 22, 2006, with United States trademark serial number

Raj Abhyanker, P.C.
Mountain View, CA
rajpatent.com

77049854.  The class description for "Get to know your neighbors" was provided to the USPTO under serial number 77049854 as:

> "Computer services in the nature of customized web pages featuring user-defined information, personal profiles and information, namely, providing location tagged profiles using spatial and geo-coded information through the Internet; Computer services, namely, providing a specialized search engine for finding personal, geographical and business data on a global computer network"

The name "Fatdoor" was applied for as a United States trademark on or about November 21, 2006, with United States trademark serial number 77049286 with a similar description as "Get to know your neighbors."

50.  The name "Fatmail" was applied for as a United States trademark on or about April 5, 2007, with United States trademark serial number 77150247. The class description for "Fatmail" was provided to the USPTO under serial number 77150247 as:

> "Paper goods and printed material, namely, envelopes, pamphlets, coupons books and publications which promote the goods and services of others for advertising in a neighborhood geo-spatial environment"

Upon reason and belief, the secret technical details, software algorithms, knowhow, and then unpublished patent applications surrounding the Fatmail concept were opportunistically misappropriated and stolen by Defendants to enable the verification of neighbors permitted into the network through postal mail.

51.  Upon information, reason, and belief, Plaintiff's Nextdoor/Fatdoor idea was very well received by major thought leaders, including Mark Pincus ("Pincus"), who wrote to Plaintiff and Fatdoor, Inc. Director Drazan on or about March 5, 2007 stating:

> "[r]aj, your idea and background were both compelling. sorry if i barragted you with feedback before you could get the whole idea across. i'd def be interesting following up as i like the general macro space and think there are many directions you coudl go with it. best, mark" [sic]

52.  Pincus agreed to participate in the first Nextdoor/Fatdoor private beta launch

- 14 -

Raj Abhyanker, P.C.
Mountain View, CA
rajpatent.com

approximately between March 2007 and June 2007. That same summer, Pincus independently started the successful venture Zynga.com ("Zynga"). The affirmation by Pincus of the Plaintiff and the Nextdoor/Fatdoor concept right before Zynga was founded was a testament to the power and potential of the Nextdoor/Fatdoor idea and Plaintiff's ability, but for the interference, misappropriation, and theft by Defendants, as explained herein.

53. Wired Magazine also covered the Nextdoor/Fatdoor concept on or about May 31, 2007 in an article entitled "Fatdoor CEO Talks About Balancing Security With Community." The article described the general concepts of Nextdoor/Fatdoor developed by Plaintiff to account for neighborhood security:

> "It wasn't until Abhyanker let me take his neighborhood for a test drive that I started to understand how this actually plays out. Fatdoor is hardly the stalking tool we all feared. In fact, its simple interface made Abhyanker's own community fit together more like a wiki version of a town hall. Users in the neighborhood can broadcast general messages to the entire block, submit an entry about a local business, or even submit entries for friends and other neighbors. Abhyanker's neighborhood is even set up to elect moderators to help police this conduct too. Paired with the amount of control the user has over how much or how little information the neighborhood can access about themselves, it actually seemed....pretty safe." (See Exhibit G).

54. In addition, the Wired Magazine article of May 31, 2007 went on to describe the end product of the secret confidential security algorithms developed by Plaintiff to account for neighborhood security:

> "As far as peeking into other neighborhoods? Abhyanker has that covered too. "We've been playing around with the distance, and after some testing we've found that keeping it at a 5 mile radius [from the user's residence] is the most reasonable," he said. "It keeps the focus on the neighborhood and also keeps the feeling of community. Of course, this is something that we're going to have to change depending on the size and layout of a city, but during testing it seemed like the ideal distance." (See Exhibit G).

Upon information and belief, the secret technical details, software algorithms, knowhow, and then unpublished patent applications that permitted the Nextdoor/Fatdoor concept to be built were stolen by Defendants and opportunistically misappropriated as 'key' (emphasis added) technology

- 15 -

Raj Abhyanker, P.C.
Mountain View, CA
rajpatent.com

for Nextdoor.com, Inc. as described in a San Jose Mercury News article. On or about of October 26, 2011, this same San Jose Mercury News article entitled "Epinions co-founder Nirav Tolia back in the saddle with Facebook-like startup" inaccurately credited Defendant Taylor with the invention of the Fatdoor/Nextdoor concept, describing Nextdoor.com, Inc. as, "software developed by an early Google (GOOG) Maps employee" that is used as the "key" technology of Nextdoor "that makes sure only people who live in a specific neighborhood are able to join its network -- giving users a level of privacy that sites like Facebook don't." (See Exhibit H).

55.    On or about October 27, 2011, one day after the public launch of Nextdoor.com, Inc., Plaintiff sent an email to Defendant Tolia with the subject line: "Meet? Nextdoor, hello from founder of Fatdoor," after seeing an article about Nextdoor.com, Inc.'s public launch on the website Techcrunch.com ("Techcrunch"). Plaintiff was initially very happy to see that another entrepreneur took it upon himself to independently create a very similar idea to the original Nextdoor/Fatdoor concept of Fatdoor, Inc. and wrote the email immediately on the morning of October 27, 2011.    The entire content of this communication is below and is a present sense impression of the Plaintiff upon reading the initial news of the Nextdoor.com concept:

> "Nirav, I just read about you on Techcrunxh. Congrats on your new venture, Nextdoor. I am Raj Abhyanker, the founder of the 2005 company dealmap (formerly called Fatdoor, now sold to Google) which recently sold to google. I raised over $7.5m in venture funding personally as the CEO of Fatdoor around the get to know neighbors concept. I think I can add significant value to your venture, as Fatdoor was originally a site to get to know your neighbors. I understand the way to make this space very well. I am wondering if you would be open to me being in your founding team, in exchange for me filling a part time general counsel, business development vp, and/or board role, and perhaps a small angel investment in cash, resources, and space. I see you are funded by benchmark. I had pitched to benchmark the Fatdoor concept, but had decoded to take funding from norwest. Some at Benchmark will remember me, particularly Kevin Harvey and Peter Fenton. I also pitched to bret taylor who was an EIR at benchmark at tue time, and is now the cto of Facebook. Perhaps you can ask them. After our Norwest funding, I left the company because I wanted to keep the site in a neighborhood direction. I am also listed on more than 50 granted and pending patents in the neighborhood space, now owned by google. If interested, perhaps we cannery at my office in mountain view? Let me know if this is of interest. I've copied my assistant Desiree. Raj" [sic]

Raj Abhyanker, P.C.
Mountain View, CA.
rajpatent.com

There was no response from Defendant Tolia by that evening, and surprised by the lack of communication from Defendant Tolia, Plaintiff decided to do some research on the background of Defendant Tolia. Upon review of Defendant Tolia's Crunchbase.com profile that evening, and upon reading of the March 2007 and August 2007 Gawker.com articles, it became immediately clear to Plaintiff why Defendant Tolia had chosen not to respond to Plaintiff's gesture of congratulations and support because it was clear that Defendant Tolia worked at Defendant Benchmark and was a former EIR during the time of the disclosure of the Nextdoor/Fatdoor concept to Defendants Benchmark, Harvey, Fenton, Lasky, Gurley, Taylor, Cassidy and Norris.

56. Upon information and belief, Defendant Harvey requested a meeting to discuss, explore and finalize the financing of Nextdoor/Fatdoor on or about June 15, 2007 after a referral from Drazan. To celebrate the enormous shareholder value that Plaintiff and his Co-Founder Thota had brought to Fatdoor, Inc., Board member Drazan sent Plaintiff an email on or about June 19, 2007 with the subject line: "A premature, but well deserved congratulations and thank you!!!" The email included the following text:

> "Raj, Chandu.....It sometimes gets lost amid all the frenetic activity, the significance of this interim accomplishment. After just 3 (?) short months of working together it is more than impressive how much value you have created on such modest spending. Pause for a moment to reflect on what you have produced...38 patent applications, an impressively functional website, thousands of initial subscribers, tens if not hundreds of thousands of page views, strategic interest from the most sophisticated media properties and institutions in the world, world class employees, candid and supportive feedback from your user community, the list goes on....Thank you for all your endless hours and unbridled enthusiasm. Jeff" [sic]

57. A meeting time was set for on or about June 21, 2007. To ensure confidentiality, Fatdoor, Inc. Board member Drazan requested an early morning meeting on or about June 21, 2007 and requested that Defendant Benchmark clear conflicts, especially "conflicts else that is [or] resembles what they [Fatdoor] are doing" [sic] before any disclosures were made.

58. Defendant Harvey, responded on or about June 21, 2007 to Drazan stating:

> "We don't have and are not looking at anything that is a direct

Raj Abhyanker, P.C.
Mountain View, CA
rajpatent.com

competitor.  Some of our companies Billow [sic] and Yelp are tangential. We will need to make sure that they are comfortable but my guess is that they are better partners than competitors."

59.  A follow up email sent by Drazan to Plaintiff, Thota, and Harris, Jr. on or about June 21, 2007 stated:

"These relationshoips should give people at Norwest confidence that a relationship woth [sic] Benchmark could be very helpful".

60.  That same day, Thota, the hired CTO of Fatdoor, Inc. commented:

"Yes, Zillow could be a great partner and so is Yelp – In reality, when we expose our APIs, these two are the applications that third party developers can build on top of Fatdoor platform."

61.  In detrimental reliance of statements by Defendant Harvey, Plaintiff disclosed the Fatdoor/Nextdoor concept to Defendant Harvey that same day (on or about June 21, 2007). Upon information and belief, it appears to be a pattern and practice for Defendant Benchmark to agree to non-disclosures via verbal and email "handshakes." Particularly, the book "eBoys: The First Inside Account of Venture Capitalists at Work" by Randall E. Stross, who worked inside Defendant Benchmark for two years between 1997 and 1999, describes the situation as:

"Ultimately, our agreement was sealed with a handshake-no written NDA (nondisclosure agreement), no attorneys....I suspect that the Benchmark partners thought that something ballsy like this, which was sure to make the graybeards of the guild squirm, must, ipso facto, be a good thing."

This paragraph above clearly describes the business practice of Defendant Benchmark in choosing non-traditional forms of non-disclosure agreements ("NDA") in preference to those which are signed by both parties.  Similarly, a New York Times article on July 11, 1999, quotes Defendant Gurley as to the policy of Defendant Benchmark when dealing with startups: ""We don't do term sheets here," Gurley responded, offering his palm. "We do handshakes."" (See Exhibit J).

62.  On or about June 2007, Defendant Harvey sent an email to Plaintiff, requesting that he and Thota meet with Defendant Hoffman that same evening in Mountain View,

- 18 -

Raj Abhyanker, P.C.
Mountain View, CA
rajpatent.com

Raj Abhyanker, P.C.
Mountain View, CA
rajpatent.com

1   California. Defendant Harvey informed Plaintiff that Defendant Hoffman did "diligence" for

2   companies that Defendant Benchmark was going to invest in. Defendant Benchmark had a

3   business practice of doing the "Benchmark bear hug" (eBoys, Introduction, page xxii) to show

4   "the power of its team sales effort" (Id.) to companies that Defendant Benchmark intended to

5   invest in by quickly connecting entrepreneurs of companies they wanted to invest in to the top

6   influencers in Silicon Valley.

7        63. In addition, Defendant Harvey requested a meeting with Plaintiff at Defendant

8   Benchmark's headquarters on Sand Hill Road in Menlo Park, California on or about June 21,

9   2007. On or about June 21, 2007, Defendant Harvey also requested that Plaintiff send

10   confidential presentations relating to Nextdoor/Fatdoor to his partner, Defendant Lasky, who was

11   to participate in the meeting via teleconference. Defendant Cassidy also personally participated in

12   this meeting along with Defendant Harvey. On or about June 21, 2007, Plaintiff sent the

13   requested confidential executive summary of the Nextdoor/Fatdoor concept to Defendants Lasky

14   and Harvey. The title of this file was "Executive_Summary-Fatdoor-06-11-07.pdf" ("Executive

15   Summary"). (See Exhibit C).

16        64. Each page of this Executive Summary included the words "Confidential Material"

17   (see Exhibit C). Page seven of the Executive Summary showed a maturing networks timeline

18   which made clear that the next phase from Facebook was to be toward the Nextdoor/Fatdoor

19   concept, centered around "[n]eighborhoods." Defendants opportunistically misappropriated

20   knowledge found in this confidential Executive Summary to create the business plan for

21   Nextdoor.com, Inc. Later statements by Defendant Gurley and Defendant Tolia echo descriptions

22   provided in the confidential Executive Summary provided by Plaintiff to the Defendants.

23        65. The first business created by the founders of Round Two, Inc. was a website called

24   Fanbase.com. However, Fanbase.com, while getting some traction, failed to get the rapid traction

25   that was expected of the business by Defendant Tolia and Defendant Benchmark.

26        66. An email was sent by Defendant Gurley to Defendant Benchmark's portfolio

27   companies including to Defendant Tolia on or about October 9, 2008 which stated:

28

> "Like every major shift in the environment, this one will offer
> opportunities as well as risks.... The real key is to have a keen
> understanding of the game on the field and to be the one that
> adjusts swiftly, rather than the one that moves after it's become
> blatantly obvious to everyone else it's time to move." [sic]
> (See Techcrunch: http://techcrunch.com/2008/10/09/benchmark-
> capital-advises-startups-to-conserve-capital/). (See Exhibit K).

67. This quote shows that Defendant Gurley sought to advise companies such as Round Two, Inc. that they should adjust swiftly by adopting new business models if ones in development (e.g., Fanbase.com) did not work.

68. Defendant Gurley goes on to tell Defendant Tolia and other Benchmark portfolio companies that:

> "Many companies that thrived post 2001-2003 were simply "Last
> Man Standing" in their ndustry....Be calm, but pragmatic...It's
> simply to convey that the rules of the game have changed.....Better
> to be "late to the party" than to be early and run out of money"
> (See Techcrunch: http://techcrunch.com/2008/10/09/benchmark-
> capital-advises-startups-to-conserve-capital/) [sic]. (See Exhibit
> K).

69. This quote shows that Defendant Gurley sought to advise companies to be calm and pragmatic and that it was better to be "late to the party" with a new team such as Round Two, Inc. than to be early with the original Fatdoor/Nextdoor concept created by the Plaintiff.

70. Defendant Gurley then continues onward to say:

> For many, this downturn period could be **opportunistic**: a real
> chance to differentiate yourselves from the other players in the
> market. However, it is imperative to understand that the
> environment has just shifted to one where differentiation will
> likely be defined not by aggressiveness, but rather by adaptability."
> [sic] [emphasis added]. (See Exhibit K).

71. Through a plain reading of Defendant Gurley's own statements above, Defendant Gurley directly advised Defendant Tolia to adapt actions, decisions, etc. to expediently or effectively act in manners that sacrificed ethical principles. Particularly, this quote shows that

1    Defendant Gurley advised or advises Defendant Tolia and other Benchmark portfolio companies
2    to be "opportunistic," which Dictionary.com defines as "adhering to a policy of opportunism;
3    practicing opportunism" in its first definition (see www.websters.com). Dictionary.com defines
4    "opportunism" in its first definition to mean "the policy or practice, as in politics, business, or
5    one's personal affairs, of adapting actions, decisions, etc., to expediency or effectiveness
6    regardless of the sacrifice of ethical principles" (Id.).

7         72. Upon reason and belief, Defendant Tolia, the CEO of Round Two, Inc., and a
8    Stanford B.A. in English graduate, understood the meaning of the word "opportunistic" when
9    pivoting his company from a website for collecting information about sports feats (Fanbase, Inc.),
10   into an entirely new concept of a website about neighborhood social networking around the
11   Nextdoor/Fatdoor concept opportunistically misappropriated and stolen from Plaintiff using
12   Defendant Gurley's ordained policy and practice of adapting actions and decisions of expediency
13   and effectiveness regardless of the sacrifice of ethical principles. (See Exhibit K). Defendant
14   Tolia has a history of following Defendant Gurley's instructions explicitly, having had to settle a
15   lawsuit filed in San Francisco Superior Court against Silicon Valley venture capital firms
16   Benchmark Capital and August Capital, alleging the firms conspired with fellow founder
17   Defendant Tolia to deprive them and other employees of nearly $40 million. (See
18   http://www.siliconbeat.com/entries/2005/12/09/epinions_settlement_a_black_eye_to_vcs.html)

19        73. In a separate interview, Defendant Gurley identifies the "local" space (e.g., what
20   the Nextdoor/Fatdoor concept inherently is) as possibly being the most overlooked space on the
21   Internet (see Bloomberg television interview on March 22, 2011 with Defendant Gurley,
22   http://www.bloomberg.com/video/67905008/, around minute 5:40, "Host: What do you think is
23   the most overlooked sector out there? Gurley: It might be local.").

24        74. By September 2010 (based on Defendant Tolia's LinkedIn page), a full pivot had
25   been made from Fanbase.com to the Nextdoor.com concept, based on the original
26   Nextdoor/Fatdoor concept of the Plaintiff and under the advice given by Defendant Gurley to
27   Defendant Tolia and to all Benchmark companies to be "opportunistic". (See Exhibit K).

28        75. Even as recently as October 26, 2011, Defendant Gurley was quoted in an article

Raj Abhyanker, P.C.
Mountain View, CA
rajpatent.com

Raj Abhyanker, P.C.
Mountain View, CA
rajpatent.com

in Techcrunch stating that "Nextdoor" was the "natural evolution of social networking that [would] demonstrate the value of building community to neighborhoods everywhere." In a San Jose Mercury News article that same day, Defendant Gurley was quoted referring to Nextdoor.com, Inc. as "It's Facebook for your neighborhood." (See Exhibit H). Defendant Gurley's statements echo descriptions provided in the confidential Executive Summary provided by Plaintiff to the Defendants.

76. In addition to receiving the confidential Executive Summary, Defendants Harvey and Lasky met with Plaintiff and learned about Nextdoor/Fatdoor concept in detail on or about June 21, 2007. Plaintiff spent several hours at Defendant Benchmark's offices disclosing the entire concept in detrimental reliance on Defendant Benchmark's written assurances of confidentiality and no conflicts.

77. In follow up email by Plaintiff to Drazan, Thota, and Harris, Jr. on or about June 21, 2007, Plaintiff stated:

> "jeff and bill, great meetings today with benchmark and reid.
> kagle loved product. reid hoffman loved product. reid wants to
> personally invest too. talked only about biz, referred all financing
> questions to jeff. reid says he knows bill already. reid says he is
> giving thumbs up to benchmark tonight. reid wants to get
> introduced to jeff. jeff, should I provide email introduction for
> both of you to each other? Raj" [sic]

78. Defendant Hoffman is referenced in this present sense impression by the Plaintiff as someone who expressed interest in both investing and in placing a positive vote in his diligence capacity to Defendant Benchmark. Defendant Hoffman was later seen with Defendants Taylor, Tolia, and Cassidy at a private party, just days before the Nextdoor.com public launch on or about October 20, 2011.

79. Mr. Robert (Bob) Kagle is partner at Defendant Benchmark who is referenced in this email above reflecting a present sense impression of thoughts of the Plaintiff of the positive impressions of this Benchmark partner after hearing about the Nextdoor/Fatdoor idea from Plaintiff. There were no further direct email communications between Plaintiff and Mr. Kagle, and therefore Mr. Kagle not been included in this First Amended Complaint as a Defendant.

- 22 -

00013000113.1

Nonetheless, he is associated with this action through his partnership at Defendant Benchmark.

80. On or about June 22, 2007, Sergio Monsalve ("Monsalve"), a venture capitalist at Norwest who was to co-invest with Defendant Benchmark replied to an email titled "Conception Documents: Fatdoor (formerly NextDoor)" confirming receipt of the conception documents titled Nextdoor with a message stating: "Great...thanks. Please make sure this also goes to our lawyers at cooley, which I am sure it has. Thx, S"

81. Upon information and belief, Plaintiff and Thota then met with Defendant Hoffman on or about June 21, 2007 at the LinkedIn headquarters in Mountain View, California based on a reference from Defendant Benchmark as a person who did diligence for Defendant Benchmark. Defendant Hoffman expressed genuine interest in the Nextdoor/Fatdoor concept and said that he would not only give a positive recommendation to Defendant Benchmark, but personally invest in the venture. Defendant Hoffman then sent an email to Plaintiff and Drazan on or about June 22, 2007 stating that it was his pleasure to meet with Plaintiff to learn about Nextdoor/Fatdoor. Defendant Hoffman expressed that there was "some very good stuff in [Plaintiff's] planning/doing" to Plaintiff in the same communication.

82. In addition, Defendant Hoffman wrote that he would like to talk with Drazan to discuss investment details. Drazan spoke to Defendant Hoffman via telephone on or about June 22, 2007. On or about June 26, 2007, Hoffman told Plaintiff and Drazan that he would like to invest hundred thousand dollars ($100,000.00) of his personal money in addition to the investment by Defendant Benchmark. In an email on or about June 26, 2007, Drazan wrote to the Plaintiff stating: "Re: how did the call with Reid go?   Went well...he wants to invest $100k...subject to seeing the term sheet, which I told him we would provide post closing (we don't need him to close)."

83. Plaintiff and Thota also met with Motwani in Palo Alto, California, on or about June 26, 2007. Motwani agreed that Defendant Benchmark was a good choice for investment with Norwest and agreed to solidify the agreement with a personal reference call to Defendant Benchmark's advisor, Defendant Hoffman. Motwani also agreed to invest one hundred thousand dollars ($100,000.00) in the new round based on his confidence in Plaintiff.

- 23 -

84. Plaintiff prepared full diligence files of the Nextdoor/Fatdoor concept and gave them to Defendant Fenton at Defendant Benchmark's office on or about June 22, 2007. The diligence package included all then unpublished forty six (46) United States patent applications, six (6) foreign PCT patent applications, the Executive Summary, and screenshots created by a Rana on or about the year 2006 clearly showing the name "Nextdoor." On or about June 22, 2007, Plaintiff sent an email to Fatdoor, Inc. employee Paul Zahorsky, to counsel Daniel Hansen, to Daniel Hansen's paralegal, and to California licensed attorney Sheila Maguire attaching conception documents showing the mockups and the Word document for Nextdoor.com as previously described. The conception documents showing the name "Nextdoor" were also shared electronically with Fatdoor, Inc. employees Emily McIntire and Michael Johnstone. In addition, Harris, Jr. and Thota received electronic and physical copies of the conception documents showing the name Nextdoor.com from Sheila Maguire shortly after she requested them on their behalf on or about June 22, 2007.

85. The diligence documents included the statement stating: "Note: we don't have the domain nextdoor.com yet, ive placed a bid on it. We do have modernvilliage.com, but im trying to find a better name. let me know if you find something that is better and available for sale. Should know about nextdoor.com by the end of this week." (Exhibit B). [sic]

86. Defendants Harvey and Fenton described the Nextdoor/Fatdoor concept to fellow partners and EIRs at a Defendant Benchmark "offsite" approximately between June 23, 2007 and June 25, 2007. The offsite was described in an email from Defendant Harvey to the Plaintiff on June 23, 2007 in which Defendant Harvey writes:

> "Raj, we are going to be offsite from today through Tuesday. We should be able to discuss this and reach a quick decision. I think the biggest question is "What is the killer use case that will drive viral adoption?" Any thoughts on this would be helpful. Overall, people were quite positive. Thanks, Kevin"

87. The Plaintiff responded to Defendant Harvey that same day and commented :

> "getting to know your neighbors and making friends in the

- 24 -

Raj Abhyanker, P.C.
Mountain View, CA
rajpatent.com

neighborhood around your house by finding people with similar interests (preseeded data, and in the future user contributed). Raj"

88. Then, on or about June 27, 2007, right after the offsite, Defendant Harvey called Plaintiff and told Plaintiff that Defendant Benchmark will make a positive investment decision as a lead investor or as a co-investor in the Nextdoor/Fatdoor based on their discussions at the offsite and based on Defendant Hoffman's positive recommendation. As a follow up to that call, Defendant Harvey sent an email to Plaintiff on June 27, 2007 stating: "Do you guys have time to meet our Google EIRs?" Defendant Harvey referred Plaintiff to Defendants Taylor and Norris, who were EIRs at Defendant Benchmark. Defendants Taylor and Norris were the co-creators of Google Maps and the Google Maps API, and had left their positions at Google, Inc. to join Defendant Benchmark on or about June 2007. Defendant Taylor is currently the Chief Technology Officer of Facebook, Inc. as of the filing of this First Amended Complaint.

89. Defendant Harvey assured Plaintiff that Defendants Taylor and Norris would like to help the Nextdoor/Fatdoor venture succeed, and would hold information that they obtained in strict confidence and would not start any competing ventures. In reliance of Defendant Harvey's promises, Plaintiff informed the Board of Directors of Fatdoor, Inc., and agreed to meet with Defendants Taylor and Norris on or about June 27, 2007 at Defendant Benchmark's headquarters on Sand Hill Road in Menlo Park, California.

90. Upon information and belief, during the meeting with Defendants Taylor and Norris, Plaintiff and Thota again asked whether Defendant Benchmark had any conflicts of interest before disclosing technical details of the Nextdoor/Fatdoor concept. Defendants Taylor and Norris replied that they were working with something in the consumer space which was totally different, and that Defendant Benchmark intended to invest in Fatdoor, Inc. to build the neighborhood concept. Plaintiff and Thota, spent most of that afternoon with Defendants Taylor and Norris based on those assurances to not compete and maintain confidentiality.

91. On or about June 27, 2007, Drazan sent an email to Plaintiff stating: "[s]poke with kevin today..They will not provide an alternative term sheet...but would like to have 10%". It is not a practice for Defendant Benchmark to give formal term sheets. A New York Times article

- 25 -

Raj Abhyanker, P.C.
Mountain View, CA
rajpatent.com