1  **BRUNO W. TARABICHI**, CA State Bar No. 215129
   bruno@legalforcelaw.com
2  **ROY MONTGOMERY**, CA State Bar No. 279531
   roy@legalforcelaw.com
3  **LEGALFORCE RAJ ABHYANKER, P.C.**
   1580 W. El Camino Real, Suite 13
4  Mountain View, California 94040
   Telephone: 650.965.8731
5  Facsimile:  650.989.2131

6
   Attorneys for Defendant
7  Raj Abhyanker

8              UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10              SAN FRANCISCO DIVISION

11  NEXTDOOR.COM, INC., a Delaware          Case No. 3:12-cv-05667-EMC
    corporation,
12                                          **NOTICE OF MOTION AND MOTION TO**
13                 Plaintiff,               **DISQUALIFY PLAINTIFF'S COUNSEL**

14       vs.                                Date:      Thursday, June 6, 2013
                                            Time:      1:30 PM
15  RAJ ABHYANKER, an individual,           Location:  San Francisco Courthouse,
                                                       Courtroom 5
16                 Defendant.               Judge:     Honorable Edward M. Chen

17  RAJ ABHYANKER, an individual,

18                 Counterclaimant,

19       vs.

20  NEXTDOOR.COM, INC., a Delaware
    corporation; PRAKASH JANIKIRAMAN,
21  an individual; BENCHMARK CAPITAL
    PARTNERS VII, L.P., a Delaware limited
22  partnership; BENCHMARK CAPITAL
    MANAGEMENT CO. VII LLC, a
23  Delaware limited liability company;
    SANDEEP SOOD, an individual;
24  MONSOON COMPANY, an unknown
    business entity, and DOES 1–50, inclusive;
25
                   Counterdefendants.
26

27

28

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on Thursday, June 6, 2013 at 1:30 PM, in Courtroom 5 before the Honorable Edward Chen, located at the San Francisco Courthouse, at 450 Golden Gate Avenue, 17th Floor, or as soon thereafter as counsel may be heard, Defendant and Counterclaimant Raj Abhyanker ("Abhyanker") will and hereby does move the Court for an order to disqualify Fenwick & West LLP from appearing in this matter on behalf of Nextdoor.com, Inc. ("Nextdoor").

This motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities attached hereto, the Court's files and records in this case, and upon such other matters as may be presented to the Court before or at the time of the hearing.

Dated: April 25, 2013                    **LEGALFORCE RAJ ABHYANKER, P.C.**

/s/ Roy Montgomery
_____
Roy Montgomery
Attorney for Defendant

NOTICE OF MOTION AND MOTION TO
DISQUALIFY PLAINTIFF'S COUNSEL
(CASE NO. 4:12-cv-05667-DMR)

TABLE OF CONTENTS

I      INTRODUCTION ...................................................... 4

II.    APPLICABLE LAW: THE "SUBSTANTIAL RELATIONSHIP" TEST ......... 4

III.   RELEVANT FACTUAL BACKGROUND .......................................... 5

       A.    Fenwick & West's Representation of LegalForce, Inc…….................. 5

       B.    Fenwick's November 2011 "Ethical Screen" In
             The State Court Lawsuit …………………………………………………………7

       C.    New Facts Discovered On or About January 2013 Make Fenwick's Ethical
             Screen In November 2011 Ineffective To Protect Confidential Information
             And Are Substantially Related To The Instant Federal Court Lawsuit……..9

       D.    Fenwick Appears In This Litigation And Refuses To Withdraw.................12

IV.    FENWICK & WEST MUST BE DISQUALIFIED UNDER RPC 3-310 BECAUSE
       OF ITS PRIOR REPRESENTATION OF LEGALFORCE, INC. IN
       SUBSTANTIALLY RELATED MATTERS.........................................................12

       A.    Fenwick's Attempted Representation Of Nextdoor Is A Breach
             Of The Duties Of Loyalty And Confidentiality And Is Adverse To
             Abhyanker Through His Acquisition of LegalForce, Inc., A Party
             Previously Represented by Fenwick .......................................................13

       B.    In Its 2006/2007 Representation of LegalForce, Fenwick Obtained Confidential
             Information Material to Its Attempted Representation of Nextdoor ...................13

       C.    Because Fenwick Attorneys Who Worked On LegalForce Matters Must Be
             Disqualified, The Whole Fenwick Firm Must Be Disqualified............................15

V.     CONCLUSION.............................................................................................................15

# TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*Brand v. 20th Century Ins. Co.,*
    124 Cal. App. 4th 594 (2004) ............................................................. 5

*City & Cty. of San Francisco v. Cobra Solutions, Inc.,*
    38 Cal. 4th 839 (2006) ..................................................................... 5

*City Nat 'l Bank v. Adams,*
    96 Cal. App. 4th 315 (2002) ............................................................. 5

*Elan Transdermal Ltd. v. Cygnus Therpeutic Sys.,*
    809 F. Supp. 1383 (N.D. Cal. 1992) ................................................. 5

*Flatt v. Super. Ct.,*
    9 Cal. 4th 275 (1994) ....................................................................... 4

*Hitachi, Ltd. v. Tatung Co.,*
    419 F. Supp. 2d 1158 (N.D. Cal. 2006) ..................................... 4, 15

*Jessen v. Hartford Cas. Ins. Co.,*
    111 Cal. App. 4th 698 (2003) ..................................................... 5, 14

*Med-Trans Corp., Inc. v. City of Calif. City,*
    156 Cal. App. 4th 655 (2007) ..................................................... 5, 15

*Trone v. Smith,*
    621 F.2d 994 (9th Cir. 1980) ...................................................... 5, 14

**Rules**

Cal. R. Prof. Conduct 3-31 0(e) ...,........................................................ 4, 12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.  INTRODUCTION

In filing the current Federal action, Plaintiff Nextdoor chose Fenwick & West ("Fenwick") to represent them.  Defendant Abhyanker objected without delay; through Fenwick's previous representation of LegalForce, and their preparation of the agreements concerning the trade secrets at issue, Fenwick has obtained confidential information which is material to the current action, as the subject matter of the current representation – i.e., representing the party who is alleged to have misappropriated these same trade secrets – clearly bears a substantial relationship to Fenwick's prior representation of LegalForce.  Fenwick is thus impermissibly conflicted, and this motion seeks to disqualify Fenwick from representing the plaintiff Nextdoor.

## II.  APPLICABLE LAW: THE "SUBSTANTIAL RELATIONSHIP" TEST

In this Court, motions to disqualify counsel are decided under state law. *Hitachi, Ltd v. Tatung Co.,* 419 F. Supp. 2d 1158, 1160 (N.D. Cal. 2006). California Rule of Professional Conduct 3-310(e) provides as follows:

> A member shall not, without the informed written consent of the client or former client, accept employment adverse to the client or former client where, by reason of the representation of the client or former client, the member has obtained confidential information material to the employment.

Cal. R. Prof. Conduct 3-310(e).

To demonstrate a disqualifying conflict of interest under this rule, a client need not establish that its former counsel actually obtained or presently possesses confidential information material to the present case. Instead, California law applies the "substantial relationship" test to determine whether confidential information has been imparted in the course of a prior representation. A "substantial relationship" exists whenever the subject matters of the prior representation and current matter are linked in some rational manner. *See Flatt v. Super. Ct.,* 9 Cal. 4th 275, 283 (1994). Successive representations are "substantially related" where the facts support a "rational conclusion that information material to the evaluation, prosecution, settlement

NOTICE OF MOTION AND MOTION TO
DISQUALIFY PLAINTIFF'S COUNSEL
(CASE NO. 4:12-cv-05667-DMR)

1   or accomplishment of the former representation given its factual and legal issues is also material

2   to the evaluation, prosecution, settlement or accomplishment of the current representation given

3   its factual and legal issues." *Jessen v. Hartford Cas. Ins. Co.,* 111 Cal. App. 4th 698, 713 (2003)

4   (internal citations omitted); *see also Trone v. Smith,* 621 F.2d 994, 999 (9th Cir. 1980)

5   ("Substantiality is present if the factual context of the two representations are similar or related.").

6          "When a substantial relationship between two representations is established, the attorney

7   is automatically disqualified from representing the second client." *City & Cty. of San Francisco*

8   *v. Cobra Solutions, Inc.,* 38 Cal. 4th 839, 847 (2006). In other words, the presumption that the

9   former counsel obtained confidential information material to the current case is conclusive if a

10  substantial relationship between the prior representation and current case is established. *See, e.g.,*

11  *Elan Transdermal Ltd v. Cygnus Therpeutic Sys.,* 809 F. Supp. 1383, 1392 (N.D. Cal. 1992);

12  *City Nat 'I Bank v. Adams,* 96 Cal. App. 4th 315, 327 (2002). Further, if a substantial relationship

13  is established, the length of time since the former representation is irrelevant. *See, e.g., Brand v.*

14  *20th Century Ins. Co.,* 124 Cal. App. 4th 594, 607 (2004).

15         Finally, it is well-established that the mandatory disqualification that results from a

16  finding of a substantial relationship extends vicariously to the entire firm. *See Med-Trans Corp.,*

17  *Inc. v. City of Calif. City,* 156 Cal. App. 4th 655, 665 (2007).

18

19  **III.    RELEVANT FACTUAL BACKGROUND**

20         **A.    Fenwick & West's Representation of LegalForce, Inc.**

21         Fenwick & West represented Abhyanker and LegalForce, Inc. between 2006 and 2007.

22  Pursuant to a signed engagement letter, Abhyanker paid Fenwick approximately $10,000 to form

23  the LegalForce entity in Delaware, and also to prepare initial stockholder agreements,

24  employment agreements and independent contractor agreements, as well as Non-Disclosure

25  Agreements ("NDAs"), confidentiality agreements and investor agreements for all convertible

26  note holders.  Abhyanker Declaration, ¶2.  These NDA's and confidentiality agreements were

27  required to protect LegalForce's  intellectual property rights, including rights related to the

28

NOTICE OF MOTION AND MOTION TO
DISQUALIFY PLAINTIFF'S COUNSEL
(CASE NO. 4:12-cv-05667-DMR)

LegalForce/Nextdoor trade secrets related to the Nextdoor Social Network being developed by LegalForce.  This LegalForce-owned intellectual property on which Fenwick worked in 2006 and 2007 is thus precisely the same which is at issue in the current lawsuit.  Abhyanker Declaration, ¶3-4.

In September 2006, Fenwick negotiated the sale of approximately $150,000 in LegalForce convertible notes, and equity documents.   Abhyanker remained the majority shareholder, owning approximately 80% of the outstanding equity, as well as the corporation's Chief Executive Officer through a document prepared by Fenwick.  One of the holders of these convertible notes was a Mr. Warren Myer, who purchased a $125,000 convertible note through a document prepared by Fenwick.   Mr. Jeffrey Drazan, a venture capitalist, purchased an equity interest in LegalForce, Inc. through a document also prepared by Fenwick. Abhyanker Declaration, ¶2.

Over time, ownership of LegalForce's intellectual property began to diverge.  At least some of LegalForce's trade secrets were assigned to another, separate company that Abhyanker had started in October 2006 named Fatdoor, Inc. (known as the "Nextdoor/Fatdoor trade secrets").   New counsel hired by Fatdoor, Inc. worked closely with Fenwick & West in carving out the LegalForce/Nextdoor trade secrets, which at Fenwick's insistence remained property of LegalForce, Inc.   Furthermore, in the summer of 2007, Mr. Warren Myer, the lead investor in LegalForce, whose investment had been negotiated by Fenwick, and whose investment agreements had been prepared by Fenwick, challenged the division and allocation of trade secrets after speaking with Fenwick.   In addition, upon reason and belief, Myers was directed to speak with Fatdoor, Inc. counsel by Fenwick.  The rights and obligations of LegalForce, Inc. and its assigns are therefore at issue in the instant Federal lawsuit.  Abhyanker Declaration, ¶12.

Abhyanker assumed the rights of Legalforce, Inc. including those of Mr. Myer on or about October 2007 during the orderly winding down of LegalForce, Inc.  During this wind-down, all of

NOTICE OF MOTION AND MOTION TO
DISQUALIFY PLAINTIFF'S COUNSEL
(CASE NO. 4:12-cv-05667-DMR)

the LegalForce/Nextdoor trade secrets, domain names, and other intellectual property were

purchased by Abhyanker in exchange for more than $300,000, which included assumption of

$150,000 in convertible notes, including the convertible note debt of Mr. Myer, and the waiving

of corporate debt owed to Abhyanker.  Fenwick was informed of this orderly wind down and

transfer of all LegalForce, Inc. assets back to Abhyanker Abhyanker Declaration, ¶3.

It is these LegalForce/Nextdoor trade secrets, purchased by Abhyanker during the

LegalForce wind-down and now owned by him personally, which the Plaintiff is alleged to have

misappropriated.  However, because the Nextdoor Social Network concept was developed by

LegalForce, Inc., an entity represented by Fenwick, the duty of confidentiality and loyalty of

Fenwick to LegalForce and its investors and assigns are implicated.  Abhyanker Declaration, ¶4.

**B. Fenwick's Ethical Screen In November 2011 In The State Court Lawsuit**

On November 10, 2011, Abhyanker filed a Misappropriation of Trade Secrets action

against Nextdoor in the Santa Clara County Superior Court.  Nextdoor chose the Fenwick & West

firm to represent them in this suit.  However, even before Abhyanker's discovery of additional

facts around December 2012 (Paragraph C., below), he determined that Fenwick's prior

representation of LegalForce, Inc. – particularly their involvement in the intellectual property

which was the subject of this State Court action – might present an untenable conflict of interest.

Within days of Nextdoor's November 2011 responsive pleading, Abhyanker's counsel

raised this concern with Nextdoor's Fenwick lawyer, Mr. Laurence Pulgram.  Responding in a

letter dated November 15, 2011(Exhibit A), Pulgram flatly denied any conflict.  There are a

number of substantive errors in Pulgram's letter, including his statements that "the representation

of Legalforce, Inc. was completely unrelated to the present action", and was not related to a

"social network"; both statements are simply incorrect, as Fenwick's prior and current

representation involved the protected trade secrets and other intellectual property of Abhyanker's

NOTICE OF MOTION AND MOTION TO
DISQUALIFY PLAINTIFF'S COUNSEL
(CASE NO. 4:12-cv-05667-DMR)

firm, including the LegalForce/Nextdoor trade secrets involving the online neighborhood social network known as "Nextdoor". In this letter, Mr. Abhyanker's name also appears in two different spellings, leading to a question about the effectiveness of any Fenwick conflict check. Abhyanker's counsel responded the next day, November 16 (Exhibit B) asserting that a conflict did, in fact, exist because of Fenwick's prior representation of LegalForce.

An additional serious concern was posed by Abhyanker's personal friendship with a Fenwick partner, Rajiv Patel ('Patel'). During Fenwick's LegalForce representation, Abhyanker and Patel had numerous conversations involving LegalForce and its developing portfolio of trade secrets. These discussions with Mr. Patel involved trade secrets related to the Nextdoor Social Network (i.e., the LegalForce/Nextdoor trade secrets), as well as other trade secrets related to the Fatdoor entity (the Nextdoor/Fatdoor trade secrets). While Patel primarily managed the paid retainer relationship between LegalForce and Fenwick, the advice of Patel, and other Fenwick partners, was sought and given on these trade secret matters. Given Fenwick's concurrent representation of LegalForce, Inc., there exists a reasonable presumption that an attorney-client relation existed between Abhyanker and Patel in which the LegalForce/Nextdoor trade secrets were discussed, with confidential information relating to LegalForce/Nextdoor trade secrets being entrusted to Fenwick.

A response to the November 16 letter from Abhyanker's counsel was received on November 17 (Exhibit C), this time from Fenwick General Counsel Tyler Baker. Further evidence of Fenwick's carelessness can be seen in Baker's reference to a "LegalSearch, Inc.", a name which has never had anything to do with LegalForce, Inc., and his denial, as with Pulgram, that LegalForce had any involvement in a "social network". While continuing to deny any potential conflict, Baker nonetheless proposed an "ethical screen" which "sequesters Mr. Patel (and any other legal personnel that ever worked on Legalforce matters) from the firm's

representation of Netxdoor."   While Abhyanker had suspicions of conflict due to the potential involvement of LegalForce independent contractors, employees and investors with Fenwick's current client Nextdoor, he had, as yet, no concrete proof.  Believing Fenwick's representation to be genuine, Abhyanker's counsel proposed language for an ethical screen.

However, Fenwick unilaterally modified the language proposed by Abhyanker's counsel, and on November 30, 2011 transmitted a letter, signed by Fenwick's General Counsel and four Fenwick employees, stating that, "pursuant to our agreement resolving an asserted conflict concerning the Firm's involvement in the above-referenced litigation" (emphasis added), the firm would segment out individuals who had either done legal work for LegalForce, Inc., or who may have met with Abhyanker and discussed his ideas for Fatdoor, Inc. (Exhibit D).  Abhyanker's counsel made a timely objection to the different language, but Fenwick refused to change it.

While there thus exist grounds to question the effectiveness of this Ethical Screen, the point is moot.  Even were the Screen found to be effective (see Paragraph C., below), by its own terms any waiver of Fenwick's conflict of interest applied only to the "above-referenced litigation", i.e., the State Court action in which Abhyanker was plaintiff.  Because Abhyanker voluntarily dismissed this suit in February 2012, the November 2011 Ethical Screen has no effect on any other litigation, including the instant Federal action.

**C.      New Facts, Discovered after the Implementation of Fenwick's "Ethical Screen", Make the Screen Ineffective In Protecting Confidential Information; These Facts Are Also Substantially Related To The Instant Federal Court Lawsuit.**

Almost immediately after receiving the November 30 "Ethical Screen", Abhyanker began to discover additional facts which would call the Ethical Screen into question.  An additional series of letters were exchanged between Abhyanker's counsel and Fenwick in December 2011 and January 2012, in which Abhyanker's counsel detailed his objections to Fenwick's representation of Nextdoor.  These communications were mooted when, in February 2012,

Abhyanker instructed his counsel to dismiss, without prejudice, the State Court action in favor of proceeding with discovery in the Trademark Trials and Appeals Board Opposition. With "the above-referenced litigation" dropped, any waiver of conflict that might have been in effect due to the now-disputed November 30, 2011 Ethical Screen (which, by its own terms, only applied to "the Firm's involvement in the above-referenced litigation") was no longer effective.

After Abhyanker began to experience success in the Opposition Proceeding, Nextdoor filed the instant Federal lawsuit, which stayed the USPTO Opposition Proceeding, in November 2012. In spite of Abhyanker's continuous objections to Fenwick's representation, Nextdoor once again chose Fenwick as their counsel in this new action.

While conducting research to prepare his Answer and Counter-Claims in the new Federal suit, on or about December 2012, Abhyanker learned of previously unknown facts concerning a LegalForce, Inc. independent contractor, Mr. Sandeep Sood ("Sood") and his involvement in misappropriating trade secrets to Nextdoor through his personal friendship with Nextdoor co-founder Mr. Prakash Janikiraman ("Janikiraman") as witnessed in the written communications from December 2012 in Abhyanker Declaration, Exhibit A. Sood – a counterdefendant in the current Federal case - was the independent contractor, employed by LegalForce, Inc., in 2006, who assisted Nextdoor in misappropriating trade secrets into Nextdoor.com, Inc.

In addition to the communication in Abhyanker Declaration, Exhibit A, the bases of these new facts are also admissions made to Abhyanker by Nextdoor.com, Inc. Chief Executive Officer Nirav Tolia ('Tolia') during a September 28, 2012 conversation. During this conversation, Nextdoor CEO Tolia identified Sood as the person who may have passed misappropriated LegalForce trade secrets to Mr. Janikiraman, a co-founder and Vice President of Engineering of Nextdoor.com, Inc. Until this conversation with Nextdoor CEO Tolia on September 28, 2012 – almost a full year after Fenwick's November 30 "Ethical Screen" - Abhyanker had no evidence

that any LegalForce employees had been involved in the misappropriation of trade secrets, or that any LegalForce/Nextdoor trade secrets had been used in the creation of Nextdoor.

Abhyanker now suddenly understood Sood's role.  Not only had Sood, while an independent contractor to LegalForce and bound by non-disclosure and confidentiality agreements, misappropriated trade secrets.  Sood had also personally worked with Fenwick attorneys, in that firm's offices, to prepare these agreements, which he then breached.  Sood also worked with Fenwick to negotiate and execute the non-disclosure and confidentiality provisions related to the investment agreements which Fenwick negotiated with Abhyanker's outside investors Warren Myer (who had purchased a LegalForce $125,000 convertible note) and Jeffrey Drazan (the first outside investor in both LegalForce, Inc. and in Fatdoor, Inc.).

These new facts are described, for the first time, in Abhyanker's First Amended Answer & Counterclaims ("FAAC") filed on April 8, 2013 (on file with the Court as Case3:12-cv-05667-EMC, Document 59).  Prior to the FAAC, no previous pleadings filed by Abhyanker with respect to this dispute had mentioned LegalForce.

Additionally, included in the FAAC are facts related to the involvement of, and disagreements between, equity holders and convertible note holders in both LegalForce, Inc. and Fatdoor, Inc., over their ownership of trade secrets; these ownership interests were created by virtue of agreements prepared by Fenwick and Sood, and negotiated by Fenwick with investors.

As a result, key elements of the controversy as described in the FAAC center around a) the nature and extent of the ownership interests in trade secrets that were assigned to LegalForce, Inc., and which may have been conveyed by agreements prepared and negotiated by Fenwick, to convertible note holders (Mr. Myer), independent contractors (Mr. Sood), and equity holders (Mr. Drazan and Mr. Abhyanker); and b) the effective current status of Abhyanker's ownership of LegalForce intellectual property pursuant to Abhyanker's purchase of the assets and

NOTICE OF MOTION AND MOTION TO DISQUALIFY PLAINTIFF'S COUNSEL (CASE NO. 4:12-cv-05667-DMR)

intellectual property of that company in its 2007 wind-down. These newly-discovered facts show that Fenwick's 2006 representation of LegalForce is substantially related to the present controversy.

### D. Fenwick Appears In This Litigation And Refuses To Withdraw

On January 10, 2013, Abhyanker made a final written request that Fenwick withdraw from the instant lawsuit. Fenwick's General Counsel Baker replied by his letter of January 23, 2013 (Exhibit E) once again denying that any conflict existed. In this letter, Baker now refers to "the alleged presence of Mr. Sandeep Sood during meetings at our offices in 2006 pertaining to LegalForce's corporate formation / finance", but he contends that any violation of confidences by Sood neither implicated Fenwick, nor involved the current, Federal lawsuit.

Additionally, Baker contends that "even if Fenwick did have a conflict, you waived it", ignoring the obvious facts that a) the effectiveness of the "waiver" is in doubt, given Fenwick's knowledge of facts relevant to the Screen that were unknown by, and undisclosed to, Abhyanker; and b) that, even if effective, the Ethical Screen only applied to "the above-referenced litigation" (i.e., the State Court action). Finally, while Baker does not expressly refuse to withdraw, he does state that he intends to oppose any motion to disqualify.

### IV. FENWICK & WEST MUST BE DISQUALIFIED UNDER RPC 3-310 BECAUSE OF ITS PRIOR REPRESENTATION OF LEGALFORCE, INC. IN SUBSTANTIALLY RELATED MATTERS

As discussed above, California Rule of Professional Conduct 3-310(e) mandates that Fenwick may not "accept employment adverse to the …former client", where, by reason of the representation of that former client, Fenwick "has obtained confidential information material to the employment."

**A.      Fenwick's Attempted Representation Of Nextdoor Is A Breach Of The Duties Of Loyalty And Confidentiality, And Is Adverse To Abhyanker Through His Acquisition of LegalForce, Inc., A Party Previously Represented by Fenwick**

In 2006, Fenwick represented LegalForce in, among other things, protecting its trade secrets by developing confidentiality and non-disclosure agreements intended to protect LegalForce intellectual property.  In the course of this representation, Fenwick worked directly with the individual, Sandeep Sood, alleged to have been instrumental in misappropriating LegalForce trade secrets into Nextdoor.  While the current litigation involves Abhyanker personally as a defendant, rather than LegalForce, this is because the LegalForce entity was dissolved in late 2007, with all of the company's assets, liabilities and rights transferred to Abhyanker.  Thus, Abhyanker, the successor in interest to LegalForce and now the owner of former LegalForce intellectual property, is entitled to assert his rights in this matter.  By attempting to represent Nextdoor, Fenwick is therefore attempting to accept employment that is adverse to a former client.

**B.      In Its 2006 Representation of LegalForce, Fenwick Obtained Confidential Information Material to Its  Representation of Nextdoor; Fenwick's Attempted Use Of This Material Now Is A Breach Of The Duty Of Confidentiality**

To run afoul of Rule 3-310(e), Fenwick must further be shown to have "obtained confidential information material to the employment."

The current Federal action concerns, among other things, a) the ownership of intellectual property developed by Abhyanker during his tenure with LegalForce, which was to have been protected by the confidentiality and non-disclosure agreements created by Fenwick; b) the ownership interests in various LegalForce trade secrets by outside investors whose ownership rights were created pursuant to sales agreements, and subject to confidentiality and non-disclosure agreements, created by Fenwick; and c) Abhyanker's ownership rights in trade secrets, especially the LegalForce/Nextdoor trade secrets which he now owns personally by virtue of his purchase of the assets of LegalForce, Inc. in or around October 2007.

NOTICE OF MOTION AND MOTION TO
DISQUALIFY PLAINTIFF'S COUNSEL
(CASE NO. 4:12-cv-05667-DMR)

Fenwick obtained confidential information concerning the above-listed issues by a) entering into an attorney-client relationship with LegalForce pursuant to a signed engagement letter, b) by working with LegalForce to draft corporate confidentiality and non-disclosure agreements concerning LegalForce's developing intellectual property portfolio (including, but not limited to, the LegalForce/Nextdoor trade secrets and the Nextdoor/Fatdoor trade secrets), c) by working with LegalForce to draft the sales and confidentiality agreements by which outside investors were secured, d) by negotiating sales agreements with outside investors, and e) by working directly with Sandeep Sood in the preparation of all of the above.

Moreover, where the former and current engagements are substantially related, as here, the bar for confidentiality is set very low, as is made clear in *Trone v. Smith,* 621 F.2d 994, 999 (9th Cir. 1980).  In *Trone*, this Court discussed the professional commitment of lawyers, and opined that "That professional commitment is not furthered, but endangered, if the possibility exists that the lawyer will change sides later in a substantially related matter. Both the fact and the appearance of total professional commitment are endangered by adverse representation in related cases. From this standpoint it matters not whether confidences were in fact imparted to the lawyer by the client. The substantial relationship between the two representations is itself sufficient to disqualify." (emphasis added).  Here, while it is clear that "confidences were in fact imparted" by Abhyanker to Fenwick; even without such confidences, the substantial relationship between Fenwick's LegalForce and Nextdoor representations clearly argue for Fenwick's disqualification.

Further, successive representations are "substantially related" where the facts support a "rational conclusion that information material to the … accomplishment of the former representation given its factual and legal issues is also material to the … accomplishment of the current representation given its factual and legal issues." *Jessen v. Hartford Cas. Ins. Co.,* id.

Factual and legal issues involved in Fenwick's 2006 and 2007 representation of LegalForce include, among other things, a) the firm's involvement with Sandeep Sood in his alleged misappropriation of trade secrets, b) the protection of intellectual property developed by Abhyanker and his firm through the drafting of confidentiality and non-disclosure agreements, and c) the solicitation of outside investors and the drafting and negotiation of the terms under

14

which those investments would take place.  Factual and legal issues involved in Fenwick's attempted representation of Nextdoor in the instant suit involve precisely the same issues. Therefore, the facts here support a rational conclusion that information that was material to Fenwick's representation of LegalForce in 2006 and 2007 is material to its attempted representation of Nextdoor now.

**C.    Because Fenwick Attorneys Who Worked On LegalForce Matters Must Be Disqualified, The Whole Fenwick Firm Must Be Disqualified**

Under California law, where the disqualification of individual attorneys is required, the disqualification of the attorneys' firm is also required. See *Med-Trans Corp.*, 156 Cal. App. 4th at 665 ("the disqualification extends vicariously to the entire firm").

Here, all four of the Fenwick employees who appear on the November 30, 2011 Ethical Screen are still employed by Fenwick.  Moreover, Nextdoor's Fenwick counsel, Laurence Pulgram, and Fenwick's General Counsel, Tyler Baker, are still employed by Fenwick. Accordingly, the entire Fenwick firm must be disqualified. See, e.g., *Hitachi*, 419 F. Supp. at 1164 ("The established law in California rejects ethical walls").

**V. CONCLUSION**

For the foregoing reasons, the defendant respectfully requests that this Court disqualify Fenwick from any further representation of plaintiff Nextdoor in this litigation.


Dated: April 25, 2013                          **LEGALFORCE RAJ ABHYANKER, P.C.**



                                               /s/  Roy Montgomery
                                               ————————————————
                                               Roy Montgomery
                                               Attorney for Defendant

NOTICE OF MOTION AND MOTION TO
DISQUALIFY PLAINTIFF'S COUNSEL
(CASE NO. 4:12-cv-05667-DMR)

# EXHIBIT A

Fenwick letter dated November 15, 2011 from Laurence Pulgram.

# Fenwick
## FENWICK & WEST LLP

555 CALIFORNIA STREET, 12TH FLOOR     SAN FRANCISCO, CA 94104

TEL 415.875.2300   FAX 415.281.1350   WWW.FENWICK.COM

November 15, 2011

LAURENCE F. PULGRAM

EMAIL LPULGRAM@FENWICK.COM
Direct Dial (415) 875-2390

**VIA E-MAIL AND U.S. MAIL**

Ashwin K. Anand
Raj Abhyanker, P.C.
1580 W. El Camino Real, Suite 13
Mountain View, CA  94040

> Re:    Re:  Abhyankar v. Benchmark Capital Partners VII, L.P. *et al.*

Dear Mr. Anand:

As discussed yesterday, I represent Nextdoor.com, Inc. ("Nextdoor") in connection with this action.  Yesterday, I invited Plaintiff and his counsel to meet with us in a good faith effort to demonstrate certain facts that appear to be outside of Plaintiff's knowledge, at least based on the inaccurate allegations of the complaint.  In response, you indicated that Mr. Abhyankar did not want to meet with us (though you indicated you would take a telephone call, which we do not believe would be productive).

In your return call to me, you also asked me to look at the question of whether or not Fenwick & West, LLP had a conflict of interest in representing Nextdoor, in light of the firm's prior representation of Legalforce, Inc, a corporation with which Mr. Abhyankar was previously connected.  I have looked into your question, and the answer is that there is no conflict.

First, this firm does not presently represent Legalforce, Inc.  That representation terminated over three years ago, in 2008.

Second, the representation of Legalforce, Inc. was completely unrelated to the present action.  Legalforce, Inc. was not involved in the social networking or local community space.  It was a company involved in providing legal services, having no relationship whatsoever to the present dispute.

Third, although Mr. Abhyankar was CEO of Legalforce, Inc., the firm's representation of Legalforce, Inc. was representation of that company.  The retention agreement did not include any individual or affiliate of Legalforce, Inc.

Ashwin K. Anand
November 15, 2011
Page 2


      As a result, based on the information we have, there is no conflict and no colorable basis for asserting one.  If you have any information to the contrary, please provide it immediately.

                          Sincerely,

                          FENWICK & WEST LLP

                          Laurence F. Pulgram

LFP:dws


25592/00600/SF/5366180.2

# EXHIBIT B

Letter FROM Abhyanker's Counsel dated November 16, 2011.



1580 W. EL CAMINO REAL, SUITE 8
MOUNTAIN VIEW, CA 94061
TELEPHONE: 650-965-8731
FACSIMILE: 650-989-2131

Ashwin K. Anand
ashwin@rajpatent.com

November 16, 2011

VIA E-MAIL AND U.S. MAIL

Laurence Pulgram
Fenwick & West, LLP
555 California Street, 12th Floor
San Francisco, CA 94104

Re: Abhyanker v. Benchmark Capital Partners VII, L.P. et al.

Mr. Pulgram:

This is a reply to your letter dated November 15, 2011 which discusses your representation of Nextdoor.com, Inc. ("Nextdoor") in the current litigation. We believe that a conflict does exist for the reasons detailed below.

First, your characterizations of Legalforce, Inc. ("Legalforce") and our conversations are incorrect. You are wrong in stating that Legalforce was not a "social network" or a "local community space". In fact, that is exactly what Legalforce was and continues to be (see *http://www.legalforce.com*). Legalforce is a "social network for law students, attorneys, legal employers, and contract attorneys and anyone who belongs to the legal community" who are encouraged to meet with each other face to face in their local areas (see *http://www.legalforce.com/about/overview.aspx*). Legalforce has never and currently does not provide "legal services" as you describe in your letter, because it is not a law firm.

Fenwick partner Mr. Rajiv Patel is personal friend of Mr. Abhyanker. Confidential information regarding the Nextdoor/Fatdoor concept was shared with Mr. Patel between the years of 2006 and 2008 in trust of the attorney/client relationship. A number of different Fenwick partners were privy to discussions regarding the Nextdoor/Fatdoor concept at Mr. Patel's home. This time frame also matches the years in which your client Nextdoor.com, Inc. (previously Fanbase, Inc.) was formed.

Mr. Abhyanker retained Fenwick believing that your firm would act with the highest integrity and ethical standards with confidential information disclosed to your firm in both his individual capacity, and in his capacity as the creator of the Nextdoor/Fatdoor concept. Whether or not this time was billed to Mr. Abhyanker is immaterial to the attorney/client privilege, and your ethical obligations to withdraw from this case.

In addition, Fenwick was considered a firm that would represent Mr. Abhyanker in his individual capacity with respect to the Nextdoor/Fatdoor concept based on Mr. Patel's recommendations and after disclosing many confidential facts to Fenwick in 2006/2007. A



Laurence Pulgram
November 16, 2011
Page Two

different firm was ultimately chosen. That does not however waive Fenwick's ethical and confidentiality related obligations to Mr. Abhyanker, including the current obligation to withdraw.

Furthermore, facts will be revealed during the course of litigation that make it clear that confidential materials shared with Fenwick during its representation of Legalforce, Inc. are integral and part and parcel of the present litigation. For example, it should be noted that Mr. Babar Rana and Mr. Jeff Drazan, whose names appear throughout the Complaint, were early equity holders in both Fatdoor, Inc. and Legalforce, Inc. Mr. Rana's association with both Legalforce, Inc. and Fatdoor, Inc. is publicly visible on his LinkedIn profile (see *http://www.linkedin.com/in/brana*).

Given this, we continue to believe that Fenwick's representation of Nextdoor is a material conflict to the interests of Mr. Abhyanker.

In essence, it would be grossly unfair and prejudicial for your representation of Nextdoor.com, Inc. to continue. As such, we demand that you withdraw from representing Nextdoor.com, Inc. by Friday, November 18, 2011.

Sincerely,

RAJ ABHYANKER, P.C.

Ashwin K. Anand

RVA:aka

00013.00014LT



# EXHIBIT C

Fenwick letter dated November 17, 2011 from Fenwick General Counsel Tyler Baker.

Fenwick
**FENWICK & WEST LLP**

SILICON VALLEY   801 CALIFORNIA STREET   MOUNTAIN VIEW, CA 94041
TEL: 650.988.8500   FAX: 650.938.5200   WWW.FENWICK.COM

November 17, 2011

TYLER A. BAKER

EMAIL TBAKER@FENWICK.COM
Direct Dial (650) 335-7624

**<u>VIA E-MAIL AND U.S. MAIL</u>**
ashwin@rajpatent.com

Ashwin K. Anand
Raj Abhyanker, P.C.
1580 W. El Camino Real, Suite 13
Mountain View, CA  94040

Re:   <u>Abhyanker v. Benchmark Capital Partners VII, L.P. *et al.*</u>

Dear Mr. Anand:

I am General Counsel of Fenwick & West, LLP.  This letter is in response to yours of November 16, 2011 to Laurence Pulgram. We have investigated with Mr. Patel the statements you made in your letter.  The information that we have indicates that your allegations of a conflict of interest are incorrect and have no valid basis.

First, there is no dispute that Fenwick's representation of Legalforce, Inc., ended three years ago, in 2008.  As a result there is no claim that our representation of Nextdoor creates a conflict with a current client.  Law firms can be adverse to former clients unless the new case is substantially related to the prior representation.

Second, it remains the case that the Legalforce business is unrelated to the dispute at issue here.  Legalforce is a separate business from Fatdoor, Inc.  The former involves legal advice, the latter neighborhood communities.  Though their investors may have overlapped – a constant occurrence throughout the Silicon Valley – the businesses were separate corporations in separate lines of activity.

Third, the record reflects that Legalforce was the only entity or person that ever entered an engagement for Fenwick & West, LLP, to act as its attorney.  The representation agreement provided that the firm was "to provide legal services to the Company" initially named 102103, Inc. and subsequently renamed Legalsearch, Inc.  On the other hand, Fatdoor, Inc. never engaged Fenwick as its lawyer.  It had its own legal counsel through a separate law firm, Montgomery & Hansen.  Nor did Mr. Abhyanker ever enter into an engagement with Fenwick & West in his individual capacity.  He is an attorney himself and surely understands these distinctions.

Your letter asserts that Mr. Abhyanker was a "personal friend" of Rajiv Patel, and that unspecified "confidential information regarding the Nextdoor/Fatdoor concept was shared with

Ashwin K. Anand
November 17, 2011
Page 2

Mr. Patel between the years of 2006 and 2008 in trust in the attorney/client relationship." We have investigated this allegation, and it does not create a conflict disqualifying the firm for several reasons.

As an initial matter, there is no indication that any information conveyed about the Fatdoor concept has any relevance to the instant dispute that Mr. Abhyanker has with Nextdoor. Mr. Abhyanker had no dispute with Nextdoor in 2006-2008. Nextdoor.com, Inc., and even its prior business name, Fanbase, Inc., did not exist at the time that Mr. Abhyanker was involved with the Fatdoor concept in 2007. Mr. Abhyanker left Fatdoor in 2007. Thus, at the time of Fenwick's representation of Legalforce, the subject matter of the present action had not arisen and did not exist. Consequently there was nothing that Mr. Abhyanker could have communicated to Mr. Patel that had anything to do with the current action, and thus there was no basis for any legal advice that would relate to this action.

Your letter also asserts that Mr. Patel was "considered" for potential representation of Mr. Abhyanker in his personal capacity with respect to Fatdoor in 2006-2007, but was not chosen in favor of a different firm. Mr. Patel does not recall being considered to represent either Mr. Abhyanker personally related to Fatdoor or of Fatdoor itself. He never represented either Mr. Abhyanker personally or Fatdoor. Even if information Mr. Abhyanker provided was confidential, and provided in the context of an attorney-client relationship (which it was not), receipt of that information would not disqualify Fenwick & West from representation of Nextdoor in the current dispute since, as noted above, that information was not relevant or material to the current dispute.

Mr. Patel's recollection of any discussions that may have occurred is also not consistent with any assertion of an attorney-client relationship between Mr. Abhyanker and Fenwick & West or Mr. Patel regarding any issue related to the present dispute. Mr. Patel does not believe that he gave any such advice . Any discussions of Fatdoor were in a purely social context. Indeed your letter does not suggest that Mr. Patel actually provided, or agreed to provide, any legal advice in any way related to the present dispute.

Even assuming that non-public information had been provided, however, a personal friendship with an attorney is not sufficient to create an attorney-client relationship. Mr. Abhyanker presumably knows this from his own relationships with many personal friends. Information conveyed by a friend about a business, when not solicited for the purpose of obtaining legal advice, does not create an attorney-client relationship. Nor does it result in the disqualification of that attorneys' law firm from being adverse to the business.

In addition, your letter asserts that communications about Fatdoor occurred at Mr. Patel's house in the presence of other individuals, who may have included Fenwick partners. This apparently refers to dinner parties attended by attorneys and non-attorneys alike, by spouses, and by others who obviously were outside the attorney client relationship. This context further undermines any suggestion that the social talk could be considered privileged - even if it

Ashwin K. Anand
November 17, 2011
Page 3

occurred among friends.  Any such communications were clearly not made in confidence or with any reasonable expectation of confidentiality.

Your letter concludes that it would be "grossly unfair and prejudicial" for Fenwick to represent Nextdoor.  In fact, however, you have not identified, or even alluded to, anything that was ever told to Fenwick – either within, or without a confidential relationship – that could assist Nextdoor in its present dispute.  To the contrary, Mr. Patel is prepared to testify that anything communicated was at the level of social conversation that included other people and did not (and could not) relate to the current dispute.

Notwithstanding all of this, Fenwick & West takes its obligations very seriously.  It has no desire to use any information that Mr. Patel could even conceivably have obtained about Fatdoor from Mr. Abhyanker.  We have therefore erected an ethical wall that sequesters Mr. Patel (and any other legal personnel that ever worked on Legalforce matters) from the firm's representation of Nextdoor.  These persons will have no involvement in any Nextdoor matters and will have no access to any information or matter relating to Nextdoor, nor will any attorney working on the Nextdoor case have any access to these persons or their records.  We believe that this extra step provides Mr. Abhyanker complete protection against even any theoretical risk arising from Fenwick's continuing the representation of Nextdoor in this matter.

In conclusion, we believe that Fenwick has no conflict under these circumstances and that the proposed ethical screen is sufficient to protect against the disclosure and use of any assertedly confidential information you may have provided to Mr. Patel.  Mr. Abhyanker knows Mr. Patel well and can certainly trust that he will honor the ethical wall.  Please let me know if this approach satisfies your concerns or if there are any additional facts that bear on this issue.

We request your response no later than Friday, November 18.

Sincerely,

FENWICK & WEST LLP

Tyler A. Baker

TAB/

# EXHIBIT D

"Ethical Screen" of November 30, 2011,

**FENWICK & WEST LLP**

SILICON VALLEY CENTER   801 CALIFORNIA STREET   MOUNTAIN VIEW, CA 94041
TEL 650.988.8500   FAX 650.938.5200   WWW.FENWICK.COM

November 30, 2011

TYLER A. BAKER

EMAIL TBAKER@FENWICK.COM
Direct Dial (650) 335-7624

**VIA E-MAIL AND U.S. MAIL**
ashwin@rajpatent.com

Ashwin K. Anand
Raj Abhyanker, P.C.
1580 W. El Camino Real, Suite 13
Mountain View, CA  94040

Re:   Abhyanker v. Benchmark Capital Partners VII, L. P.

Dear Mr. Anand:

I am sending this letter pursuant to our agreement resolving an asserted conflict concerning the Firm's involvement in the above-referenced litigation.  The individuals set out below have either done work for Legalforce, Inc. or *may* have met with Mr. Raj Abhyanker in a social setting where he *may* have discussed his ideas for Fatdoor, Inc.  By signing, they acknowledge that the Firm has set up an ethical screen between them and the litigation team that will work on the above-referenced litigation between our client Nextdoor, Inc. and Mr. Abhyanker.  Consistent with that ethical screen, they undertake not to share any documents or information that they have concerning Legalforce, Inc. or Fatdoor, Inc. with the lawyers working on that litigation.

Sincerely,

FENWICK & WEST LLP

Tyler A. Baker
General Counsel

**I have read this letter, and I agree to abide by it and the ethical screen established by the Firm.**

By: _____
Rajiv P. Patel

By: _____
John T. McNelis

By: _____
Sayre E. Stevick

By: _____
Diana Woods

# EXHIBIT E

Follow-up letter from Abhyanker's Counsel of December 29, 2011 objecting to the unilaterally changed language in the Ethical Screen.



RAJ
ABHYANKER PC
Legal Services For Global Innovation℠

1580 W. EL CAMINO REAL, SUITE 13, MOUNTAIN VIEW, CA 94040
TELEPHONE: 650-965-8731  FACSIMILE: 650-989-2131

ASHWIN K. ANAND                                    EMAIL: ASHWIN@RAJPATENT.COM
                                                   DIRECT DIAL: 650-390-6436

December 29, 2011

**VIA E-MAIL AND U.S. MAIL**
tbaker@fenwick.com

Tyler A. Baker
Fenwick & West, LLP
801 California Street
Mountain View, CA 94041

Re: Abhyanker v. Benchmark Capital Partners VII, L.P. *et al.*

Dear Mr. Baker:

We are in receipt of your letter dated December 19, 2011.  Our investigation of Fenwick & West, LLP's ("Fenwick") inappropriate involvement in this litigation is on-going. As an initial matter, we do not agree with your characterizations of our conversations or the facts pertaining to Fenwick's conflict.

At no point did Mr. Abhyanker agree to waive his rights with respect to challenging Fenwick's representation of Nextdoor.com, Inc. and its officers in this case.  In fact, Mr. Abhyanker has been challenging Fenwick's involvement right from the beginning, the day he learned about your firm's involvement.

In my letter of November 18, 2011, my intent and express language was to merely surmise what Mr. Abhyanker might accept.  I merely proposed something that I thought Mr. Abhyanker would find acceptable to you, and Fenwick failed to provide the requested assurances.  In fact, you acknowledge in your latest letter that you failed to include the explicit and essential language that I requested including the facts related to "any and all" conflicts.  I made no statements in this letter saying that Mr. Abhyanker, in his capacity as the waiving party, was willing to waive any of his rights with respect to this issue.  Any waiver must be signed in writing by Mr. Abhyanker.  Mr. Abhyanker has not given Fenwick a signed and written waiver.

In addition, Fenwick has, and continues to make blatant mistakes in the handling of the conflicts issue.  It is surprising that a law firm of Fenwick's reputation should conduct a conflicts search with glaring spelling mistakes of both the client and the individual party. While this initial conflict check with a wrong spelling of Mr. Abhyanker's last name may



Tyler A. Baker
December 29, 2011
Page Two

have been in error (as you described in your initial letter of November 15, 2011), a search on your corporate conflicts system would not likely turn up a conflict with a misspelled last name.

Even Mr. Abhyanker's company (Legalforce, Inc.), that Fenwick performed legal work for, was deliberately mischaracterized.   Mr. Abhyanker paid Fenwick at least $10,000.00 during the time the firm was representing Nextdoor.com, Inc., which Mr. Pulgram admits is another "social network" in the "local space" (check #1010 was paid on October 19, 2006 for $8410.75 and check #1044 was paid on March 30, 2007 for $ 1589.25).

Mr. Pulgram, in his initial letter of November 15, 2011, stated that the representation of Legalforce, Inc. ("Legalforce") was "unrelated to the present action" because it was "involved in the social networking and local community space." A simple web search for Legalforce.com would have revealed Mr. Pulgram's characterization of Legalforce as not accurate because it is clear that Legalforce is a social network and includes a local community of alumni meeting together for networking.

Fenwick's second letter of November 17, 2011 cited the wrong company when doing a conflict check.  Legalforce, Inc. was never called "Legalsearch, Inc."  A conflict check for "Legalsearch, Inc." would have been entirely irrelevant.  It is not likely that your conflict checking process is complete given Fenwick's apparent and explicit lack of attention to detail in the handling of this matter.

Furthermore, I direct you to pages 47 through 49 in our First Amended Complaint wherein we lay out clearly as to why Mr. Rajiv Patel is an essential witness in this case.  His personal knowledge of Mr. Abhyanker's law firm and its clients goes directly to the issue of damages.  We *will* depose him and/or call him to testify in court.

We will follow up with a detailed response after the New Year.  It remains our reasoned belief that Fenwick is either conflicted and/or its participation in this litigation is unethical.  Fenwick must withdraw from participating in this case.  We suggest, as we have been doing all along, that Fenwick withdraw voluntarily.


Sincerely,

RAJ ABHYANKER, P.C.


/Ashwin K. Anand/
Ashwin K. Anand


AKA/

00013.00014LT



# EXHIBIT F

Fenwick letter dated January 23, 2013 from General Counsel Baker.

**FENWICK & WEST LLP**

SILICON VALLEY CENTER   801 CALIFORNIA STREET   MOUNTAIN VIEW, CA 94041
TEL 650.988.8500   FAX 650.938.5200   WWW.FENWICK.COM

January 23, 2013

Tyler A. Baker

EMAIL TBAKER@FENWICK.COM
Direct Dial (650) 335-7624

Raj Abhyanker
LegalForce Raj Abhyanker, P.C.
1580 W. El Camino Real, Suite 13
Mountain View, CA 94040

  **Re:** ***Nextdoor.com, Inc. v. Raj Abhyanker***
     **(USDC, Northern District of California, Case No. 3:12-CV-05667-EMC) and**
     <u>**Fenwick & West LLP and LegalForce, Inc.**</u>

Dear Mr. Abhyanker:

  This letter is in response to your January 10, 2013 request that Fenwick & West ("***Fenwick***") withdraw from its representation of Nextdoor.com, Inc. ("***Nextdoor.com***").

  As previously articulated in our correspondence with your counsel between November 2011 and January 2012, your allegations regarding a purported conflict of interest have no merit. For reasons set forth in that correspondence, the work that Fenwick did for your prior company LegalForce is not substantially related factually or legally to our representation of Nextdoor.com in the current litigation. Further, as you know, when you initially raised this issue over a year ago, you agreed to waive even any allegation of a conflict if Fenwick erected an ethical screen to ensure that any Fenwick attorneys who have "either done work for LegalForce, or *may* have met with you in a social setting where you *may* have discussed your idea for Fatdoor, Inc.," from sharing any documents or information that they have concerning LegalForce or Fatdoor with any of the attorneys on Nextdoor's litigation team. We subsequently established that very broad screen, which remains in effect, and have been relying on your agreement not to challenge our representation of Nextdoor for over a year. All of this is well documented in my prior correspondence with your counsel, as is our position that we erected the screen not because we were required to, but to avoid any unnecessary motion practice.

  The alleged presence of Mr. Sandeep Sood during meetings at our offices in 2006 pertaining to LegalForce's corporate formation/finance does not change this conclusion. That Mr. Sood may have violated some confidentiality obligation to LegalForce, four years later, is an issue between you and Mr. Sood. It does not in any way implicate Fenwick's involvement in the present dispute, which is between you and Nextdoor. We cannot fathom how any statements by Mr. Sood on the purportedly consented-to recording you made of your recent conversation with him could show otherwise. Nonetheless, since you have offered it, please do provide me with a copy of the alleged recording.

  To be clear, though, even if Fenwick did have a conflict, you waived it. Although you subsequently attempted to back out of that agreement, you abandoned that effort when we reminded you in our correspondence in December 2011 and January 2012 that any purported

Raj Abhyanker
January 23, 2013
Page 2

conflict had been waived, and further advised you that we would seek sanctions if you brought a motion to disqualify us. Indeed, neither you nor any attorney acting on your behalf even responded my final email on the subject on January 10, 2012.

Since then—more than a year since our last communication on the subject—you have remained completely silent on this issue. As a result, Fenwick has relied on your agreement, and has continued to represent Nextdoor.com in its dispute with you. This has included its representation of Nextdoor.com in the proceedings before the Trademark Trial and Appeal Board ("TTAB"), in the settlement negotiations with your current counsel that have occurred since September 2012, and in the above-referenced litigation pending in federal court, in all of which the parties have been litigating and discussing the same set of facts that formed the basis of your claims in the suit initiated by you in state court in 2011. Indeed, each of these disputes has centered on your claim that persons owing confidentiality obligations to you and/or an entity owned by you disclosed your purported trade secrets relating to the Nextdoor/Fatdoor name and concept to one or more of Nextdoor's founders. Thus, the very issue on which you purport to have a basis to resurrect your claim of a purported conflict was squarely in play at the time of your consent. Yet it was not until the day that you filed your counterclaim in the current litigation that you chose to raise this issue, after having sat on it for a year. For Nextdoor to have to retain new counsel at this juncture would cause it substantial prejudice. As your ethics counsel can confirm, courts routinely deny motions to disqualify when the moving parties have delayed asserting the conflict even for shorter periods than involved here. *See, e.g., Liberty Nat. Enterprises, L.P., v. Chicago Title Ins. Co.*, 194 Cal.App.4[th] 839 (2011) (delay is an admission that conflict issues are not at stake). It would be far too late to raise a claim now, even if you had not expressly waived it before.

If, despite all of this, you nonetheless choose to proceed with a motion to disqualify, we are confident the Court will deny it on one or more of the following grounds—no conflict because of lack of substantial relationship to the prior representation, waiver, or undue delay in raising the issue. We also expect the Court will see this motion for what it is: a tactical move designed solely to harass our client and drive up its litigation costs. We therefore will seek, and expect to recover, sanctions for filing such a frivolous motion.

Sincerely,

FENWICK & WEST LLP

Tyler A. Baker

TAB:GLJ
cc:   Bruno W. Tarabichi, Esq.
      Ellen Pansky, Esq.