1   **BRUNO W. TARABICHI**, CA State Bar No. 215129
    bruno@legalforcelaw.com
2   **ROY MONTGOMERY**, CA State Bar No. 279531
    kuscha@legalforcelaw.com
3   **LEGALFORCE RAJ ABHYANKER, P.C.**
    1580 W. El Camino Real, Suite 13
4   Mountain View, California 94040
    Telephone: 650.965.8731
5   Facsimile: 650.989.2131

6
    Attorneys for Defendant
7   Raj Abhyanker

8                   UNITED STATES DISTRICT COURT

9                NORTHERN DISTRICT OF CALIFORNIA

10                    SAN FRANCISCO DIVISION

11  NEXTDOOR.COM, INC., a Delaware
    corporation,                              Case No. 3:12-cv-05667-EMC
12
                       Plaintiff,             **DECLARATION OF RAJ ABHYANKER**
13                                            **IN SUPPORT OF DEFENDANT'S**
                                              **MOTION TO DISQUALIFY PLAINTIFF'S**
14       vs.                                  **COUNSEL**

    RAJ ABHYANKER, an individual,
15                                            Date:      Thursday, June 6, 2013
                       Defendant.             Time:      1:30 PM
16                                            Location:  San Francisco Courthouse,
                                                         Courtroom 5
17                                            Judge:     Honorable Edward M. Chen

18  RAJ ABHYANKER, an individual,

19                     Counterclaimant,

20       vs.

21  NEXTDOOR.COM, INC., a Delaware
    corporation; PRAKASH JANIKIRAMAN,
22  an individual; BENCHMARK CAPITAL
    PARTNERS VII, L.P., a Delaware limited
23  partnership; BENCHMARK CAPITAL
    MANAGEMENT CO. VII LLC, a
24  Delaware limited liability company;
    SANDEEP SOOD, an individual;
25  MONSOON COMPANY, an unknown
    business entity, and DOES 1–50, inclusive;
26
                       Counterdefendants.
27

28
                                                    DECLARATION OF ABHYANKER ISO
                                                         MOTION TO DISQUALIFY
                                                      (CASE NO. 4:12-cv-05667-DMR)

**DECLARATION OF RAJ ABHYANKER**

I, Raj Abhyanker, hereby declare and state as follows:

1.       I am an electrical & software engineer and entrepreneur.   I also went to law school, and am a member of the State Bar of California.  I am a Defendant and counter-claimant in the instant case.   I make this Declaration in support of my Motion to Disqualify Plaintiff's Counsel in the current lawsuit.  I have personal knowledge of the matters stated herein, and am available to testify to these matters if requested to do so.  My business address is 323 University Avenue, Palo Alto California 94301.

2.       I hired Fenwick & West ('Fenwick') to represent me and my company, LegalForce, Inc. between 2006 and 2007 in matters related to corporate law.  Particularly, in 2006, I signed an executed Engagement Letter with Fenwick & West, through which I paid Fenwick approximately $10,000 in hourly and fixed fee services to incorporate my business, LegalForce, Inc., and to prepare initial stockholder agreements, employment agreements, independent contractor agreements, NDAs and confidentiality agreements.  Fenwick also created and negotiated convertible note agreements with outside investors of approximately $150,000 with two investors, including a Mr. Warren Myers who purchased a $125,000 convertible note. Fenwick also prepared and negotiated the sale of equity in LegalForce, Inc. to a Mr. Jeffrey Drazan.   I remained the majority shareholder of LegalForce, Inc. owning approximately 80% of all outstanding equity through agreements prepared by Fenwick.

3.       In or about October 2007, LegalForce, Inc. was dissolved on recommendation by its Board of Directors.  In the wind-down, I purchased all of the company's assets and liabilities, including all of its trade secrets – the same trade secrets which are at the heart of the current suit in exchange for releasing the company from over $300,000 debt owed to me and in exchange for personally assuming all $150,000 outstanding convertible notes – thus becoming the successor in interest to LegalForce, Inc.

4.       The ownership of intellectual property developed by LegalForce, Inc. and protected through instruments negotiated and designed by Fenwick is at central issue in the

DECLARATION OF ABHYANKER ISO
MOTION TO DISQUALIFY
(CASE NO. 4:12-cv-05667-DMR)

1    instant case.   Besides representing LegalForce, Inc., Fenwick now represents the Plaintiffs in

2    instant action against me.   At central issue in this case is ownership of certain trade secrets

3    developed by LegalForce, Inc.

4           5.      These trade secrets were improperly misappropriated by the Plaintiffs through Mr.

5    Sandeep Sood, an independent contractor to LegalForce, Inc. from 2006 through 2007 (See

6    Exhibit A).  In or about December 2012, Sood admitted to filling out a survey for the Plaintiff and

7    providing information related to the LegalForce trade secrets to a co-founder of the Plaintiff's

8    company Nextdoor.com, Inc. (See Exhibit A).  This information was provided to the Plaintiff by

9    Sood in violation of Sood's independent contractor, non-disclosure, and confidentiality

10   agreements with LegalForce, Inc. signed in 2006.  The trade secrets owned by LegalForce, Inc.

11   have been identified accurately with specificity in the filed Answer & Counterclaims.

12          6.      Though I suspected it, I had had no evidence to demonstrate that any prior

13   employees or intellectual property of LegalForce, Inc. was used in the creation of  the Plaintiff's

14   Nextdoor.com, Inc. prior to on or about December 2012 when Sood made his admissions as

15   witnessed in full written form in Exhibit A.

16   **<u>I developed the LegalForce/Nextdoor online neighborhood social network trade secrets</u>**

17          7.      Around September 2006, I had developed the concept of a private online

18   neighborhood social network for inventors to be called LegalForce, and a separate spin off idea

19   using the same code base called Nextdoor.  In connection with my LegalForce and Nextdoor

20   concept, I developed and owned trade secret information, including, but not limited to, key

21   product details, algorithms, business plans, security algorithms, database structures, user interface

22   designs, software code, product concepts, prototypes, methods, works of authorship, trademarks,

23   white papers, and instrumentalities, information and plans pertaining to, but not limited to,

24   software that makes sure only people who live in a specific neighborhood are able to join its

25   network—giving users a level of privacy that sites like Facebook don't, email lists of inventive

26   neighbors around Cupertino, California, inventive neighbors in the Lorelei neighborhood of

27   Menlo Park, a private social network activation in a geospatially constrained area when 10

28   neighbors sign up, geo-spatial database, neighborhood member activation through postal mail,

2

1    public/private geo-location constrained member groups, neighborhood member address

2    verification, sharing of bulletin and wall communications between neighborhood resident users

3    only, customer lists, architecture, social networking, friend grouping, providing real time updates,

4    neighborhood-level privacy controls, feed aggregation, spheres of influence, application

5    technologies, filtering relevant feeds across multiple networks, filtering conversations, adding

6    contextual relevancy to private messages and connections in a geospatially constrained area, and

7    connections across interactions in neighboring communities, providing in depth conversations

8    through a social graph, community governance, bidding history of the Nextdoor.com domain, the

9    activation of the Lorelei neighborhood as a prime testing neighborhood for communication,

10   neighborhood communication and geo-spatial social networking, and the use of the name

11   Nextdoor.com in conjunction with a private social network for neighborhoods

12   ("LegalForce/Nextdoor Trade Secrets").

13   **I hire Sood to work on my trade secret LegalForce/Nextdoor concept**

14           8.      On or around September 21, 2006, I hired Sandeep Sood ("Sood") and his firm

15   Big Circle Media (now called Monsoon) to provide software and website development services

16   for the LegalForce concept, which was to be an online private social network for neighborhood

17   inventors by geocoding of inventors and owners from public patent and trademark data in a

18   specific neighborhood.  Before disclosing my concept and associated trade secrets to Sood and

19   Big Circle Media, I required them to execute and Independent Contractor Agreement and Non-

20   Disclosure Agreement, which were also executed on September 21, 2006.  The agreements

21   required Sood and Big Circle Media to keep my LegalForce.com and Nextdoor.com concept and

22   all the accompanying details and work product relating to it confidential.   On Thursday

23   September 6, 2006, Big Circle Media created invoices with a budget of $15,000.  One invoice

24   titled "LegalForce Online Design and Inventor Community" indicated that Big Circle Media will

25   concept, design, and build components including messaging, online identity design, information

26   architecture, and customization of social networking software for LegalForce.

27           9.      A new corporation called LegalForce, Inc. was formed by Fenwick & West to own

28   the assets of this original LegalForce.com and Nextdoor.com technology.  Approximately

DECLARATION OF ABHYANKER ISO
MOTION TO DISQUALIFY
(CASE NO. 4:12-cv-05667-DMR)

1   $150,000 in convertible notes were sold in LegalForce, Inc., including a $125,000 note to a Mr.

2   Warren Myer, and equity was sold to investors including to Mr. Jeffrey Drazan.   These

3   agreements to sell convertible note debt and equity, along with intellectual property assignment

4   agremeents were prepared by Fenwick.   Sood also personally worked with Fenwick attorneys, in

5   that firm's offices, to prepare these agreements, which he then breached.  Sood also worked with

6   Fenwick to negotiate and execute the non-disclosure and confidentiality provisions related to the

7   investment agreements which Fenwick negotiated with outside investors Warren Myer (who had

8   purchased a LegalForce $125,000 convertible note) and Jeffrey Drazan (the first outside investor

9   in both LegalForce, Inc. and in Fatdoor, Inc.).

10       10.     During the development of the source code for the LegalForce.com venture, a

11   decision was made to apply the same source code of LegalForce.com to create a private social

12   network called Nextdoor.com to enable a private, secure collaboration of neighbors in a

13   geospatial area to meet in or about October 2006.  Both the LegalForce.com and the

14   Nextdoor.com website were to be private, focused around secure and private collaboration among

15   neighbors who sign up on the site.  A minimum number of 10 inventors/neighbors per

16   neighborhood were required to 'activate' a neighborhood.  The "Lorelei" neighborhood was

17   chosen to prototype the LegalForce/Nextdoor concepts because of its high concentration of

18   technology savvy inventors and neighborhood activism.  The name Nextdoor was chosen as the

19   name of the new website based on my previous use of the name Nextdoor in connection with

20   creating neighborhood walking maps in Cupertino city council campaigns in 2005.  However, the

21   name Nextdoor.com was not for sale, despite numerous bidding attempts by me.  As an

22   alternative, I purchased the Nextyard.com and Nextlawn.com domains in or about October 2006

23   to serve as placeholders for my Nextdoor.com website.  However, the public launch of the

24   original Nextdoor.com and LegalForce.com private inventor social network never launched as a

25   social network and remained a trade secret.

26   **The Formation of Fatdoor, Inc.**

27       11.     During the course of developing the LegalForce.com and Nextdoor.com websites,

28   I came up with a new concept based on a Wikipedia like public database of neighbor profiles that

4

DECLARATION OF ABHYANKER ISO
MOTION TO DISQUALIFY
(CASE NO. 4:12-cv-05667-DMR)

1    could be edited and enhanced to provide a "search" and "discover" functionality as opposed to a

2    sign up social network, which I named "Fatdoor.com."  I first disclosed this idea to Jeffrey

3    Drazan, an equity investor in LegalForce, Inc. on or around October 2006.   Jeffrey Drazan

4    purchased equity in LegalForce, Inc. through documents and forms prepared by Fenwick & West.

5            12.       Jeffrey Drazan recommended that I carve out IP related to Fatdoor from

6    LegalForce/Nextdoor, and form and raise money for a new corporation to be called Fatdoor, Inc.

7    The concept was also disclosed to Sandeep Sood, who decided it would be best to start a separate

8    venture from LegalForce/Nextdoor related to the Fatdoor concept.  Sandeep Sood charged and

9    billed a separate $4,185 for Fatdoor consulting services separate from his work on

10   LegalForce/Nextdoor on or about November 12, 2006.  This amount was reimbursed by Fatdoor,

11   Inc.  The separate development of the LegalForce and Nextdoor website for invoices totaling

12   $15,000 remained separate, and was paid by me and LegalForce, Inc. by February 2007, after the

13   formation of Fatdoor using non-Fatdoor bank accounts and checks.  Based on Drazan's

14   recommendation, on or around October 25, 2006, I put my LegalForce/Nextdoor concept on hold

15   to found and pursue Fatdoor.com, around this new and separate idea for Fatdoor.  To ensure that

16   the $150,000 in convertible note holders backing the LegalForce, Inc. venture that funded the

17   development of both LegalForce.com and Nextdoor would be protected, Drazan recommended an

18   attorney named Daniel Hansen to form the new Fatdoor, Inc. entity (instead of Fenwick & West,

19   which continued to represent LegalForce, Inc.) and carve out all trade secrets and intellectual

20   property related to LegalForce and Nextdoor.  While the name 'Nextdoor' was considered for

21   Fatdoor.com, it was decided to not pursue that name because of its mixed ownership with

22   LegalForce and because the name was not available.  As such, the name 'Nextdoor' as applied to

23   a private social network for neighborhoods remained private and a trade secret associated with

24   investors in LegalForce, Inc. as applied to a private social network for neighborhoods.

25           13.       I proceeded to assign trade secrets, inventions, patent rights (including several

26   pending patent applications), and other proprietary information relating to the Fatdoor concept to

27   Fatdoor, Inc. on or around February 1, 2007 through a document drafted by Drazan's attorney

28   Hansen.  Because Drazan and I remained equity holders in LegalForce, Inc., purposefully

5

1  excluded from this transfer (following Fenwick's counsel) were all technologies related to

2  LegalForce and Nextdoor, including the exclusion of the LegalForce/Nextdoor Trade Secrets and

3  the Nextyard, Nextlawn, and LegalForce domains.   Drazan's attorney Daniel Hansen drafted this

4  agreement after consulting Fenwick & West.  Fenwick & West remained counsel to LegalForce,

5  Inc. to protect proprietary interests including interests in the LegalForce/Nextdoor Trade Secrets.

6  To provide equity to Fatdoor, Inc. investors, trade secrets related to Fatdoor were assigned,

7  including more than hundreds of pages of documents that became the basis for more than 46

8  patent applications assigned by me, the lead inventor, to Fatdoor, Inc.  Each and all of these 46

9  patent application covered the public 'wiki' based Fatdoor commenting tool only, and did not

10  relate to the private social network of LegalForce or Nextdoor developed by Sood for myself and

11  LegalForce, or the code base for the original Nextdoor concept.

12       14.       After the Fatdoor, Inc. business was formed, in or about February 2007, an entirely

13  new code base was built for the wiki based commenting tool by Chandu Thota, a Chief

14  Technology Officer hired by me to develop the Fatdoor concept separate from LegalForce and

15  Nextdoor.   None of the original code base developed for LegalForce, Inc. by Sood around the

16  Nextdoor concept was used in the creation of Fatdoor.  A board of directors was formed

17  consisting of Jeffrey Drazan, Bill Harris, Chandu Thota, and myself.   The assignment only

18  covered technology related to the Fatdoor concept, and specifically excluded all assets owned by

19  LegalForce, Inc. (of which I and Drazan were shareholders) including my LegalForce/Nextdoor

20  Trade Secrets and domains of LegalForce.com, Nextyard.com, and Nextlawn.com based around a

21  private social network for neighborhood because of recommendations by Fenwick & West in

22  their representation of LegalForce, Inc.

23       15.       In or about May 2007, a convertible note holder in LegalForce, Inc. through an

24  instrument prepared by and negotiated by Fenwick & West, Mr. Warren Myers complained to the

25  Fatdoor Board of Directors that he was concerned that Nextdoor and LegalForce owned

26  technologies and trade secrets were used or planning to be used in Fatdoor, Inc.  This dispute was

27  disclosed to Series B investors in Fatdoor, Inc. in board minutes and disclosures in conjunction

28  with Series B financing.  A decision was made that if the Nextdoor domain would be desired for

6

DECLARATION OF ABHYANKER ISO
MOTION TO DISQUALIFY
(CASE NO. 4:12-cv-05667-DMR)

1          **DECLARATION OF RAJ ABHYANKER**

2

3    I, Raj Abhyanker, hereby declare and state as follows:

4          1.      I am an electrical & software engineer and entrepreneur.   I also went to law

5    school, and am a member of the State Bar of California.  I am a Defendant and counter-claimant

6    in the instant case.   I make this Declaration in support of my Motion to Disqualify Plaintiff's

7    Counsel in the current lawsuit.  I have personal knowledge of the matters stated herein, and am

8    available to testify to these matters if requested to do so.  My business address is 323 University

9    Avenue, Palo Alto California 94301.

10         2.      I hired Fenwick & West ('Fenwick') to represent me and my company,

11   LegalForce, Inc. between 2006 and 2007 in matters related to corporate law.  Particularly, in

12   2006, I signed an executed Engagement Letter with Fenwick & West, through which I paid

13   Fenwick approximately $10,000 in hourly and fixed fee services to incorporate my business,

14   LegalForce, Inc., and to prepare initial stockholder agreements, employment agreements,

15   independent contractor agreements, NDAs and confidentiality agreements.  Fenwick also created

16   and negotiated convertible note agreements with outside investors of approximately $150,000

17   with two investors, including a Mr. Warren Myers who purchased a $125,000 convertible note.

18   Fenwick also prepared and negotiated the sale of equity in LegalForce, Inc. to a Mr. Jeffrey

19   Drazan.   I remained the majority shareholder of LegalForce, Inc. owning approximately 80% of

20   all outstanding equity through agreements prepared by Fenwick.

21         3.      In or about October 2007, LegalForce, Inc. was dissolved on recommendation by

22   its Board of Directors.  In the wind-down, I purchased all of the company's assets and liabilities,

23   including all of its trade secrets – the same trade secrets which are at the heart of the current suit

24   in exchange for releasing the company from over $300,000 debt owed to me and in exchange for

25   personally assuming all $150,000 outstanding convertible notes – thus becoming the successor in

26   interest to LegalForce, Inc.

27         4.      The ownership of intellectual property developed by LegalForce, Inc. and

28   protected through instruments negotiated and designed by Fenwick is at central issue in the

                                                    1

1   instant case.   Besides representing LegalForce, Inc., Fenwick now represents the Plaintiffs in

2   instant action against me.   At central issue in this case is ownership of certain trade secrets

3   developed by LegalForce, Inc.

4          5.        These trade secrets were improperly misappropriated by the Plaintiffs through Mr.

5   Sandeep Sood, an independent contractor to LegalForce, Inc. from 2006 through 2007 (See

6   Exhibit A).  In or about December 2012, Sood admitted to filling out a survey for the Plaintiff and

7   providing information related to the LegalForce trade secrets to a co-founder of the Plaintiff's

8   company Nextdoor.com, Inc. (See Exhibit A).  This information was provided to the Plaintiff by

9   Sood in violation of Sood's independent contractor, non-disclosure, and confidentiality

10  agreements with LegalForce, Inc. signed in 2006.  The trade secrets owned by LegalForce, Inc.

11  have been identified accurately with specificity in the filed Answer & Counterclaims.

12         6.        Though I suspected it, I had had no evidence to demonstrate that any prior

13  employees or intellectual property of LegalForce, Inc. was used in the creation of  the Plaintiff's

14  Nextdoor.com, Inc. prior to on or about December 2012 when Sood made his admissions as

15  witnessed in full written form in Exhibit A.

16  **I developed the LegalForce/Nextdoor online neighborhood social network trade secrets**

17         7.        Around September 2006, I had developed the concept of a private online

18  neighborhood social network for inventors to be called LegalForce, and a separate spin off idea

19  using the same code base called Nextdoor.  In connection with my LegalForce and Nextdoor

20  concept, I developed and owned trade secret information, including, but not limited to, key

21  product details, algorithms, business plans, security algorithms, database structures, user interface

22  designs, software code, product concepts, prototypes, methods, works of authorship, trademarks,

23  white papers, and instrumentalities, information and plans pertaining to, but not limited to,

24  software that makes sure only people who live in a specific neighborhood are able to join its

25  network—giving users a level of privacy that sites like Facebook don't, email lists of inventive

26  neighbors around Cupertino, California, inventive neighbors in the Lorelei neighborhood of

27  Menlo Park, a private social network activation in a geospatially constrained area when 10

28  neighbors sign up, geo-spatial database, neighborhood member activation through postal mail,

DECLARATION OF ABHYANKER ISO
MOTION TO DISQUALIFY
(CASE NO. 4:12-cv-05667-DMR)

1    public/private geo-location constrained member groups, neighborhood member address

2    verification, sharing of bulletin and wall communications between neighborhood resident users

3    only, customer lists, architecture, social networking, friend grouping, providing real time updates,

4    neighborhood-level privacy controls, feed aggregation, spheres of influence, application

5    technologies, filtering relevant feeds across multiple networks, filtering conversations, adding

6    contextual relevancy to private messages and connections in a geospatially constrained area, and

7    connections across interactions in neighboring communities, providing in depth conversations

8    through a social graph, community governance, bidding history of the Nextdoor.com domain, the

9    activation of the Lorelei neighborhood as a prime testing neighborhood for communication,

10   neighborhood communication and geo-spatial social networking, and the use of the name

11   Nextdoor.com in conjunction with a private social network for neighborhoods

12   ("LegalForce/Nextdoor Trade Secrets").

13   **I hire Sood to work on my trade secret LegalForce/Nextdoor concept**

14           8.      On or around September 21, 2006, I hired Sandeep Sood ("Sood") and his firm

15   Big Circle Media (now called Monsoon) to provide software and website development services

16   for the LegalForce concept, which was to be an online private social network for neighborhood

17   inventors by geocoding of inventors and owners from public patent and trademark data in a

18   specific neighborhood.  Before disclosing my concept and associated trade secrets to Sood and

19   Big Circle Media, I required them to execute and Independent Contractor Agreement and Non-

20   Disclosure Agreement, which were also executed on September 21, 2006.  The agreements

21   required Sood and Big Circle Media to keep my LegalForce.com and Nextdoor.com concept and

22   all the accompanying details and work product relating to it confidential.   On Thursday

23   September 6, 2006, Big Circle Media created invoices with a budget of $15,000.  One invoice

24   titled "LegalForce Online Design and Inventor Community" indicated that Big Circle Media will

25   concept, design, and build components including messaging, online identity design, information

26   architecture, and customization of social networking software for LegalForce.

27           9.      A new corporation called LegalForce, Inc. was formed by Fenwick & West to own

28   the assets of this original LegalForce.com and Nextdoor.com technology.  Approximately

3

DECLARATION OF ABHYANKER ISO
MOTION TO DISQUALIFY
(CASE NO. 4:12-cv-05667-DMR)

1    $150,000 in convertible notes were sold in LegalForce, Inc., including a $125,000 note to a Mr.

2    Warren Myer, and equity was sold to investors including to Mr. Jeffrey Drazan.   These

3    agreements to sell convertible note debt and equity, along with intellectual property assignment

4    agremeents were prepared by Fenwick.   Sood also personally worked with Fenwick attorneys, in

5    that firm's offices, to prepare these agreements, which he then breached.  Sood also worked with

6    Fenwick to negotiate and execute the non-disclosure and confidentiality provisions related to the

7    investment agreements which Fenwick negotiated with outside investors Warren Myer (who had

8    purchased a LegalForce $125,000 convertible note) and Jeffrey Drazan (the first outside investor

9    in both LegalForce, Inc. and in Fatdoor, Inc.).

10           10.      During the development of the source code for the LegalForce.com venture, a

11   decision was made to apply the same source code of LegalForce.com to create a private social

12   network called Nextdoor.com to enable a private, secure collaboration of neighbors in a

13   geospatial area to meet in or about October 2006.  Both the LegalForce.com and the

14   Nextdoor.com website were to be private, focused around secure and private collaboration among

15   neighbors who sign up on the site.  A minimum number of 10 inventors/neighbors per

16   neighborhood were required to 'activate' a neighborhood.  The "Lorelei" neighborhood was

17   chosen to prototype the LegalForce/Nextdoor concepts because of its high concentration of

18   technology savvy inventors and neighborhood activism.  The name Nextdoor was chosen as the

19   name of the new website based on my previous use of the name Nextdoor in connection with

20   creating neighborhood walking maps in Cupertino city council campaigns in 2005.  However, the

21   name Nextdoor.com was not for sale, despite numerous bidding attempts by me.  As an

22   alternative, I purchased the Nextyard.com and Nextlawn.com domains in or about October 2006

23   to serve as placeholders for my Nextdoor.com website.  However, the public launch of the

24   original Nextdoor.com and LegalForce.com private inventor social network never launched as a

25   social network and remained a trade secret.

26   **The Formation of Fatdoor, Inc.**

27           11.      During the course of developing the LegalForce.com and Nextdoor.com websites,

28   I came up with a new concept based on a Wikipedia like public database of neighbor profiles that

DECLARATION OF ABHYANKER ISO
MOTION TO DISQUALIFY
(CASE NO. 4:12-cv-05667-DMR)

1    could be edited and enhanced to provide a "search" and "discover" functionality as opposed to a

2    sign up social network, which I named "Fatdoor.com." I first disclosed this idea to Jeffrey

3    Drazan, an equity investor in LegalForce, Inc. on or around October 2006.   Jeffrey Drazan

4    purchased equity in LegalForce, Inc. through documents and forms prepared by Fenwick & West.

5           12.    Jeffrey Drazan recommended that I carve out IP related to Fatdoor from

6    LegalForce/Nextdoor, and form and raise money for a new corporation to be called Fatdoor, Inc.

7    The concept was also disclosed to Sandeep Sood, who decided it would be best to start a separate

8    venture from LegalForce/Nextdoor related to the Fatdoor concept.  Sandeep Sood charged and

9    billed a separate $4,185 for Fatdoor consulting services separate from his work on

10   LegalForce/Nextdoor on or about November 12, 2006.  This amount was reimbursed by Fatdoor,

11   Inc.  The separate development of the LegalForce and Nextdoor website for invoices totaling

12   $15,000 remained separate, and was paid by me and LegalForce, Inc. by February 2007, after the

13   formation of Fatdoor using non-Fatdoor bank accounts and checks.  Based on Drazan's

14   recommendation, on or around October 25, 2006, I put my LegalForce/Nextdoor concept on hold

15   to found and pursue Fatdoor.com, around this new and separate idea for Fatdoor.  To ensure that

16   the $150,000 in convertible note holders backing the LegalForce, Inc. venture that funded the

17   development of both LegalForce.com and Nextdoor would be protected, Drazan recommended an

18   attorney named Daniel Hansen to form the new Fatdoor, Inc. entity (instead of Fenwick & West,

19   which continued to represent LegalForce, Inc.) and carve out all trade secrets and intellectual

20   property related to LegalForce and Nextdoor.  While the name 'Nextdoor' was considered for

21   Fatdoor.com, it was decided to not pursue that name because of its mixed ownership with

22   LegalForce and because the name was not available.  As such, the name 'Nextdoor' as applied to

23   a private social network for neighborhoods remained private and a trade secret associated with

24   investors in LegalForce, Inc. as applied to a private social network for neighborhoods.

25           13.    I proceeded to assign trade secrets, inventions, patent rights (including several

26   pending patent applications), and other proprietary information relating to the Fatdoor concept to

27   Fatdoor, Inc. on or around February 1, 2007 through a document drafted by Drazan's attorney

28   Hansen.  Because Drazan and I remained equity holders in LegalForce, Inc., purposefully

DECLARATION OF ABHYANKER ISO
MOTION TO DISQUALIFY
(CASE NO. 4:12-cv-05667-DMR)

1  excluded from this transfer (following Fenwick's counsel) were all technologies related to

2  LegalForce and Nextdoor, including the exclusion of the LegalForce/Nextdoor Trade Secrets and

3  the Nextyard, Nextlawn, and LegalForce domains.   Drazan's attorney Daniel Hansen drafted this

4  agreement after consulting Fenwick & West.  Fenwick & West remained counsel to LegalForce,

5  Inc. to protect proprietary interests including interests in the LegalForce/Nextdoor Trade Secrets.

6  To provide equity to Fatdoor, Inc. investors, trade secrets related to Fatdoor were assigned,

7  including more than hundreds of pages of documents that became the basis for more than 46

8  patent applications assigned by me, the lead inventor, to Fatdoor, Inc.  Each and all of these 46

9  patent application covered the public 'wiki' based Fatdoor commenting tool only, and did not

10  relate to the private social network of LegalForce or Nextdoor developed by Sood for myself and

11  LegalForce, or the code base for the original Nextdoor concept.

12        14.      After the Fatdoor, Inc. business was formed, in or about February 2007, an entirely

13  new code base was built for the wiki based commenting tool by Chandu Thota, a Chief

14  Technology Officer hired by me to develop the Fatdoor concept separate from LegalForce and

15  Nextdoor.   None of the original code base developed for LegalForce, Inc. by Sood around the

16  Nextdoor concept was used in the creation of Fatdoor.  A board of directors was formed

17  consisting of Jeffrey Drazan, Bill Harris, Chandu Thota, and myself.   The assignment only

18  covered technology related to the Fatdoor concept, and specifically excluded all assets owned by

19  LegalForce, Inc. (of which I and Drazan were shareholders) including my LegalForce/Nextdoor

20  Trade Secrets and domains of LegalForce.com, Nextyard.com, and Nextlawn.com based around a

21  private social network for neighborhood because of recommendations by Fenwick & West in

22  their representation of LegalForce, Inc.

23        15.      In or about May 2007, a convertible note holder in LegalForce, Inc. through an

24  instrument prepared by and negotiated by Fenwick & West, Mr. Warren Myers complained to the

25  Fatdoor Board of Directors that he was concerned that Nextdoor and LegalForce owned

26  technologies and trade secrets were used or planning to be used in Fatdoor, Inc.  This dispute was

27  disclosed to Series B investors in Fatdoor, Inc. in board minutes and disclosures in conjunction

28  with Series B financing.  A decision was made that if the Nextdoor domain would be desired for

DECLARATION OF ABHYANKER ISO
MOTION TO DISQUALIFY
(CASE NO. 4:12-cv-05667-DMR)

1   Fatdoor again, permission from the LegalForce, Inc. equity investors and convertible note

2   holders, including Warren Myer would first be required through Fenwick & West, which

3   represented the interests of LegalForce, Inc.  These disclosures were prepared by Daniel Hansen,

4   and it was stated that Mr. Myers now understood that the original LegalForce trade secrets

5   including the Nextdoor name as useable with a private social network for neighbors remained

6   property of LegalForce, Inc.

7          16.    LegalForce, Inc. subsequently went through an orderly wind-down in around

8   October 2007.  Fenwick was informed of this wind down.   All convertible debt notes including

9   the $125,000 debt note to Mr. Warren Myer was assumed by me in exchange for all assets in

10  LegalForce, Inc. including the LegalForce/Nextdoor Trade Secrets.  I continued to work on trying

11  to restart the Nextdoor private neighborhood social network based on my acquired trade secrets.

12  In August 2011, I filed a new private neighborhood social networking ecommerce patent

13  application that recently received a notice of allowance.   In addition, I again started trying to

14  acquire the Nextdoor domain.   In early 2010, I spoke with Sood and informed him of my desire

15  to restart the Nextdoor business and acquire rights to the Nextdoor domain.  I also placed

16  numerous bids in an effort to try to secure the Nextdoor.com domain.  However I was

17  unsuccessful in bidding for the Nextdoor domain.  Upon my reason and belief, Sood had

18  disclosed my bidding to the Plaintiff (See Exhibit A).

19

20          I declare under penalty of perjury under the laws of the State of California that the

21  foregoing is true and correct, and that this declaration was executed on April 24, 2013, at

22  Cupertino, California.

23

24          _____

25          RAJ ABHYANKER

26

27

28

DECLARATION OF ABHYANKER ISO
MOTION TO DISQUALIFY
(CASE NO. 4:12-cv-05667-DMR)

# EXHIBIT A

Fenwick letter dated November 15, 2011 from Laurence Pulgram.

# Fenwick
## FENWICK & WEST LLP

555 CALIFORNIA STREET, 12TH FLOOR    SAN FRANCISCO, CA 94104

TEL 415.875.2300   FAX 415.281.1350   WWW.FENWICK.COM

November 15, 2011

LAURENCE F. PULGRAM

EMAIL LPULGRAM@FENWICK.COM
Direct Dial (415) 875-2390

**VIA E-MAIL AND U.S. MAIL**

Ashwin K. Anand
Raj Abhyanker, P.C.
1580 W. El Camino Real, Suite 13
Mountain View, CA  94040

      Re:     <u>Re:  Abhyankar v. Benchmark Capital Partners VII, L.P. *et al.*</u>

Dear Mr. Anand:

As discussed yesterday, I represent Nextdoor.com, Inc. ("Nextdoor") in connection with this action.  Yesterday, I invited Plaintiff and his counsel to meet with us in a good faith effort to demonstrate certain facts that appear to be outside of Plaintiff's knowledge, at least based on the inaccurate allegations of the complaint.  In response, you indicated that Mr. Abhyankar did not want to meet with us (though you indicated you would take a telephone call, which we do not believe would be productive).

In your return call to me, you also asked me to look at the question of whether or not Fenwick & West, LLP had a conflict of interest in representing Nextdoor, in light of the firm's prior representation of Legalforce, Inc, a corporation with which Mr. Abhyankar was previously connected.  I have looked into your question, and the answer is that there is no conflict.

First, this firm does not presently represent Legalforce, Inc.  That representation terminated over three years ago, in 2008.

Second, the representation of Legalforce, Inc. was completely unrelated to the present action.  Legalforce, Inc. was not involved in the social networking or local community space.  It was a company involved in providing legal services, having no relationship whatsoever to the present dispute.

Third, although Mr. Abhyankar was CEO of Legalforce, Inc., the firm's representation of Legalforce, Inc. was representation of that company.  The retention agreement did not include any individual or affiliate of Legalforce, Inc.

Ashwin K. Anand
November 15, 2011
Page 2

As a result, based on the information we have, there is no conflict and no colorable basis for asserting one.  If you have any information to the contrary, please provide it immediately.

Sincerely,

FENWICK & WEST LLP

Laurence F. Pulgram

LFP:dws

25592/00600/SF/5366180.2