| | |
|---|---|
| 1 | **BRUNO W. TARABICHI**, CA State Bar No. 215129 |
| | bruno@legalforcelaw.com |
| 2 | **ROY MONTGOMERY**, CA State Bar No. 279531 |
| | kuscha@legalforcelaw.com |
| 3 | **LEGALFORCE RAJ ABHYANKER, P.C.** |
| | 1580 W. El Camino Real, Suite 13 |
| 4 | Mountain View, California 94040 |
| | Telephone: 650.965.8731 |
| 5 | Facsimile: 650.989.2131 |

Attorneys for Defendant
Raj Abhyanker

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NEXTDOOR.COM, INC., a Delaware corporation, | Case No. 3:12-cv-05667-EMC |
| Plaintiff, | **DECLARATION OF RAJ ABHYANKER IN SUPPORT OF DEFENDANT'S MOTION TO DISQUALIFY PLAINTIFF'S COUNSEL** |
| vs. | |
| RAJ ABHYANKER, an individual, | Date: Thursday, June 6, 2013 |
| Defendant. | Time: 1:30 PM |
| | Location: San Francisco Courthouse, Courtroom 5 |
| | Judge: Honorable Edward M. Chen |
| RAJ ABHYANKER, an individual, | |
| Counterclaimant, | |
| vs. | |
| NEXTDOOR.COM, INC., a Delaware corporation; PRAKASH JANIKIRAMAN, an individual; BENCHMARK CAPITAL PARTNERS VII, L.P., a Delaware limited partnership; BENCHMARK CAPITAL MANAGEMENT CO. VII LLC, a Delaware limited liability company; SANDEEP SOOD, an individual; MONSOON COMPANY, an unknown business entity, and DOES 1–50, inclusive; | |
| Counterdefendants. | |

# DECLARATION OF RAJ ABHYANKER

I, Raj Abhyanker, hereby declare and state as follows:

1. I am an electrical & software engineer and entrepreneur. I also went to law school, and am a member of the State Bar of California. I am a Defendant and counter-claimant in the instant case. I make this Declaration in support of my Motion to Disqualify Plaintiff's Counsel in the current lawsuit. I have personal knowledge of the matters stated herein, and am available to testify to these matters if requested to do so. My business address is 323 University Avenue, Palo Alto California 94301.

2. I hired Fenwick & West ('Fenwick') to represent me and my company, LegalForce, Inc. between 2006 and 2007 in matters related to corporate law. Particularly, in 2006, I signed an executed Engagement Letter with Fenwick & West, through which I paid Fenwick approximately $10,000 in hourly and fixed fee services to incorporate my business, LegalForce, Inc., and to prepare initial stockholder agreements, employment agreements, independent contractor agreements, NDAs and confidentiality agreements. Fenwick also created and negotiated convertible note agreements with outside investors of approximately $150,000 with two investors, including a Mr. Warren Myers who purchased a $125,000 convertible note. Fenwick also prepared and negotiated the sale of equity in LegalForce, Inc. to a Mr. Jeffrey Drazan. I remained the majority shareholder of LegalForce, Inc. owning approximately 80% of all outstanding equity through agreements prepared by Fenwick.

3. In or about October 2007, LegalForce, Inc. was dissolved on recommendation by its Board of Directors. In the wind-down, I purchased all of the company's assets and liabilities, including all of its trade secrets – the same trade secrets which are at the heart of the current suit in exchange for releasing the company from over $300,000 debt owed to me and in exchange for personally assuming all $150,000 outstanding convertible notes – thus becoming the successor in interest to LegalForce, Inc.

4. The ownership of intellectual property developed by LegalForce, Inc. and protected through instruments negotiated and designed by Fenwick is at central issue in the

instant case.   Besides representing LegalForce, Inc., Fenwick now represents the Plaintiffs in instant action against me.   At central issue in this case is ownership of certain trade secrets developed by LegalForce, Inc.

5. These trade secrets were improperly misappropriated by the Plaintiffs through Mr. Sandeep Sood, an independent contractor to LegalForce, Inc. from 2006 through 2007 (See Exhibit A).  In or about December 2012, Sood admitted to filling out a survey for the Plaintiff and providing information related to the LegalForce trade secrets to a co-founder of the Plaintiff's company Nextdoor.com, Inc. (See Exhibit A).  This information was provided to the Plaintiff by Sood in violation of Sood's independent contractor, non-disclosure, and confidentiality agreements with LegalForce, Inc. signed in 2006.  The trade secrets owned by LegalForce, Inc. have been identified accurately with specificity in the filed Answer & Counterclaims.

6. Though I suspected it, I had had no evidence to demonstrate that any prior employees or intellectual property of LegalForce, Inc. was used in the creation of the Plaintiff's Nextdoor.com, Inc. prior to on or about December 2012 when Sood made his admissions as witnessed in full written form in Exhibit A.

**<u>I developed the LegalForce/Nextdoor online neighborhood social network trade secrets</u>**

7. Around September 2006, I had developed the concept of a private online neighborhood social network for inventors to be called LegalForce, and a separate spin off idea using the same code base called Nextdoor.  In connection with my LegalForce and Nextdoor concept, I developed and owned trade secret information, including, but not limited to, key product details, algorithms, business plans, security algorithms, database structures, user interface designs, software code, product concepts, prototypes, methods, works of authorship, trademarks, white papers, and instrumentalities, information and plans pertaining to, but not limited to, software that makes sure only people who live in a specific neighborhood are able to join its network—giving users a level of privacy that sites like Facebook don't, email lists of inventive neighbors around Cupertino, California, inventive neighbors in the Lorelei neighborhood of Menlo Park, a private social network activation in a geospatially constrained area when 10 neighbors sign up, geo-spatial database, neighborhood member activation through postal mail,

public/private geo-location constrained member groups, neighborhood member address verification, sharing of bulletin and wall communications between neighborhood resident users only, customer lists, architecture, social networking, friend grouping, providing real time updates, neighborhood-level privacy controls, feed aggregation, spheres of influence, application technologies, filtering relevant feeds across multiple networks, filtering conversations, adding contextual relevancy to private messages and connections in a geospatially constrained area, and connections across interactions in neighboring communities, providing in depth conversations through a social graph, community governance, bidding history of the Nextdoor.com domain, the activation of the Lorelei neighborhood as a prime testing neighborhood for communication, neighborhood communication and geo-spatial social networking, and the use of the name Nextdoor.com in conjunction with a private social network for neighborhoods ("LegalForce/Nextdoor Trade Secrets").

**I hire Sood to work on my trade secret LegalForce/Nextdoor concept**

8. On or around September 21, 2006, I hired Sandeep Sood ("Sood") and his firm Big Circle Media (now called Monsoon) to provide software and website development services for the LegalForce concept, which was to be an online private social network for neighborhood inventors by geocoding of inventors and owners from public patent and trademark data in a specific neighborhood. Before disclosing my concept and associated trade secrets to Sood and Big Circle Media, I required them to execute and Independent Contractor Agreement and Non-Disclosure Agreement, which were also executed on September 21, 2006. The agreements required Sood and Big Circle Media to keep my LegalForce.com and Nextdoor.com concept and all the accompanying details and work product relating to it confidential. On Thursday September 6, 2006, Big Circle Media created invoices with a budget of $15,000. One invoice titled "LegalForce Online Design and Inventor Community" indicated that Big Circle Media will concept, design, and build components including messaging, online identity design, information architecture, and customization of social networking software for LegalForce.

9. A new corporation called LegalForce, Inc. was formed by Fenwick & West to own the assets of this original LegalForce.com and Nextdoor.com technology. Approximately

3
DECLARATION OF ABHYANKER ISO
MOTION TO DISQUALIFY
(CASE NO. 4:12-cv-05667-DMR)

1  $150,000 in convertible notes were sold in LegalForce, Inc., including a $125,000 note to a Mr.
2  Warren Myer, and equity was sold to investors including to Mr. Jeffrey Drazan.   These
3  agreements to sell convertible note debt and equity, along with intellectual property assignment
4  agremeents were prepared by Fenwick.   Sood also personally worked with Fenwick attorneys, in
5  that firm's offices, to prepare these agreements, which he then breached.  Sood also worked with
6  Fenwick to negotiate and execute the non-disclosure and confidentiality provisions related to the
7  investment agreements which Fenwick negotiated with outside investors Warren Myer (who had
8  purchased a LegalForce $125,000 convertible note) and Jeffrey Drazan (the first outside investor
9  in both LegalForce, Inc. and in Fatdoor, Inc.).

10.     During the development of the source code for the LegalForce.com venture, a decision was made to apply the same source code of LegalForce.com to create a private social network called Nextdoor.com to enable a private, secure collaboration of neighbors in a geospatial area to meet in or about October 2006.  Both the LegalForce.com and the Nextdoor.com website were to be private, focused around secure and private collaboration among neighbors who sign up on the site.  A minimum number of 10 inventors/neighbors per neighborhood were required to 'activate' a neighborhood.  The "Lorelei" neighborhood was chosen to prototype the LegalForce/Nextdoor concepts because of its high concentration of technology savvy inventors and neighborhood activism.  The name Nextdoor was chosen as the name of the new website based on my previous use of the name Nextdoor in connection with creating neighborhood walking maps in Cupertino city council campaigns in 2005.  However, the name Nextdoor.com was not for sale, despite numerous bidding attempts by me.  As an alternative, I purchased the Nextyard.com and Nextlawn.com domains in or about October 2006 to serve as placeholders for my Nextdoor.com website.  However, the public launch of the original Nextdoor.com and LegalForce.com private inventor social network never launched as a social network and remained a trade secret.

**The Formation of Fatdoor, Inc.**

11.     During the course of developing the LegalForce.com and Nextdoor.com websites, I came up with a new concept based on a Wikipedia like public database of neighbor profiles that

could be edited and enhanced to provide a "search" and "discover" functionality as opposed to a sign up social network, which I named "Fatdoor.com." I first disclosed this idea to Jeffrey Drazan, an equity investor in LegalForce, Inc. on or around October 2006. Jeffrey Drazan purchased equity in LegalForce, Inc. through documents and forms prepared by Fenwick & West.

12. Jeffrey Drazan recommended that I carve out IP related to Fatdoor from LegalForce/Nextdoor, and form and raise money for a new corporation to be called Fatdoor, Inc. The concept was also disclosed to Sandeep Sood, who decided it would be best to start a separate venture from LegalForce/Nextdoor related to the Fatdoor concept. Sandeep Sood charged and billed a separate $4,185 for Fatdoor consulting services separate from his work on LegalForce/Nextdoor on or about November 12, 2006. This amount was reimbursed by Fatdoor, Inc. The separate development of the LegalForce and Nextdoor website for invoices totaling $15,000 remained separate, and was paid by me and LegalForce, Inc. by February 2007, after the formation of Fatdoor using non-Fatdoor bank accounts and checks. Based on Drazan's recommendation, on or around October 25, 2006, I put my LegalForce/Nextdoor concept on hold to found and pursue Fatdoor.com, around this new and separate idea for Fatdoor. To ensure that the $150,000 in convertible note holders backing the LegalForce, Inc. venture that funded the development of both LegalForce.com and Nextdoor would be protected, Drazan recommended an attorney named Daniel Hansen to form the new Fatdoor, Inc. entity (instead of Fenwick & West, which continued to represent LegalForce, Inc.) and carve out all trade secrets and intellectual property related to LegalForce and Nextdoor. While the name 'Nextdoor' was considered for Fatdoor.com, it was decided to not pursue that name because of its mixed ownership with LegalForce and because the name was not available. As such, the name 'Nextdoor' as applied to a private social network for neighborhoods remained private and a trade secret associated with investors in LegalForce, Inc. as applied to a private social network for neighborhoods.

13. I proceeded to assign trade secrets, inventions, patent rights (including several pending patent applications), and other proprietary information relating to the Fatdoor concept to Fatdoor, Inc. on or around February 1, 2007 through a document drafted by Drazan's attorney Hansen. Because Drazan and I remained equity holders in LegalForce, Inc., purposefully

excluded from this transfer (following Fenwick's counsel) were all technologies related to LegalForce and Nextdoor, including the exclusion of the LegalForce/Nextdoor Trade Secrets and the Nextyard, Nextlawn, and LegalForce domains. Drazan's attorney Daniel Hansen drafted this agreement after consulting Fenwick & West. Fenwick & West remained counsel to LegalForce, Inc. to protect proprietary interests including interests in the LegalForce/Nextdoor Trade Secrets. To provide equity to Fatdoor, Inc. investors, trade secrets related to Fatdoor were assigned, including more than hundreds of pages of documents that became the basis for more than 46 patent applications assigned by me, the lead inventor, to Fatdoor, Inc. Each and all of these 46 patent application covered the public 'wiki' based Fatdoor commenting tool only, and did not relate to the private social network of LegalForce or Nextdoor developed by Sood for myself and LegalForce, or the code base for the original Nextdoor concept.

14. After the Fatdoor, Inc. business was formed, in or about February 2007, an entirely new code base was built for the wiki based commenting tool by Chandu Thota, a Chief Technology Officer hired by me to develop the Fatdoor concept separate from LegalForce and Nextdoor. None of the original code base developed for LegalForce, Inc. by Sood around the Nextdoor concept was used in the creation of Fatdoor. A board of directors was formed consisting of Jeffrey Drazan, Bill Harris, Chandu Thota, and myself. The assignment only covered technology related to the Fatdoor concept, and specifically excluded all assets owned by LegalForce, Inc. (of which I and Drazan were shareholders) including my LegalForce/Nextdoor Trade Secrets and domains of LegalForce.com, Nextyard.com, and Nextlawn.com based around a private social network for neighborhood because of recommendations by Fenwick & West in their representation of LegalForce, Inc.

15. In or about May 2007, a convertible note holder in LegalForce, Inc. through an instrument prepared by and negotiated by Fenwick & West, Mr. Warren Myers complained to the Fatdoor Board of Directors that he was concerned that Nextdoor and LegalForce owned technologies and trade secrets were used or planning to be used in Fatdoor, Inc. This dispute was disclosed to Series B investors in Fatdoor, Inc. in board minutes and disclosures in conjunction with Series B financing. A decision was made that if the Nextdoor domain would be desired for

6

DECLARATION OF ABHYANKER ISO
MOTION TO DISQUALIFY
(CASE NO. 4:12-cv-05667-DMR)

Fatdoor again, permission from the LegalForce, Inc. equity investors and convertible note holders, including Warren Myer would first be required through Fenwick & West, which represented the interests of LegalForce, Inc. These disclosures were prepared by Daniel Hansen, and it was stated that Mr. Myers now understood that the original LegalForce trade secrets including the Nextdoor name as useable with a private social network for neighbors remained property of LegalForce, Inc.

16. LegalForce, Inc. subsequently went through an orderly wind-down in around October 2007. Fenwick was informed of this wind down. All convertible debt notes including the $125,000 debt note to Mr. Warren Myer was assumed by me in exchange for all assets in LegalForce, Inc. including the LegalForce/Nextdoor Trade Secrets. I continued to work on trying to restart the Nextdoor private neighborhood social network based on my acquired trade secrets. In August 2011, I filed a new private neighborhood social networking ecommerce patent application that recently received a notice of allowance. In addition, I again started trying to acquire the Nextdoor domain. In early 2010, I spoke with Sood and informed him of my desire to restart the Nextdoor business and acquire rights to the Nextdoor domain. I also placed numerous bids in an effort to try to secure the Nextdoor.com domain. However I was unsuccessful in bidding for the Nextdoor domain. Upon my reason and belief, Sood had disclosed my bidding to the Plaintiff (See Exhibit A).

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration was executed on April 24, 2013, at Cupertino, California.

_____
RAJ ABHYANKER

# EXHIBIT A

Email correspondence between Abhyanker and Sood in December 2012 in which Sood admits filling out a survey and providing confidential information to Plaintiff.

---------- Forwarded message ----------
From: sandeep sood <sandeep@monsoonco.com>
Date: Mon, Dec 3, 2012 at 2:05 PM
Subject: Re: Nextdoor survey you filled, preserve, witness request
To: Raj Abhyanker <raj@legalforcelaw.com>
Cc: Monika Hortnagl <monika@monsoonco.com>

Raj,

I'd be happy to chat with you.
This week is pretty cramped, but we can talk sometime next week.
I don't have the survey I filled out (barely even remember filling it out).  Also, I don't feel comfortable or obliged sharing email correspondence between myself and an old friend from college.
If you want to continue to involve me, I'm happy to chat.  I'm cc'ing Monika, who can schedule a time for us to chat.

s

Sandeep Sood
Principal
Monsoon Company
350 Frank Ogawa Plaza
Oakland 94612
o: 510.991.6401 | m: 510.593.7031 |
monsoonco.com @soodsandeep

================================================================================

On Dec 3, 2012, at 8:40 AM, Raj Abhyanker wrote:

Sandeep,

Thanks for your response.   I am in a dispute with Nextdoor.com, Inc.  They started a company with the exact same name and concept as ours in 2011.    Prakash Janikiraman is a cofounder, and this company is a pivot from Fanbase.  I have learned that you received a survey sent to

friends and family members by Fanbase/Prakash Janikiraman in 2010 (around October 2010) prior to Nextdoor's launch asking something like :

If there was a neighborhood social network, would you use it.

I know that you filled out the survey, sent him emails, and spoke on the phone with him letting him know that you worked with me on the concept early on but that you did not continue with it.   I want to get this information now directly from you so that formal process can be avoided to get the same communications (now saved for discovery).  Can you send to me the survey you received and filled, and any email correspondences between you, Prakash, and/or Nextdoor.com, Inc.?

   You were a paid work for hire contractor to me personally in 2006 on this concept, and it is important for me to find out what happened.   I have been trying to acquire the Nextdoor domain to continue building the concept as late as 2010, but Prakash bought the domain for approximately $58,000.

I plan on continuing the case against Nextdoor.com, Inc., and need to better understand your perspective on things.   Please keep safe and archived any evidence you have as it will be required.

I value your acquaintance and friendship, and trust you will help me understand what happened.  I want to keep you out of this dispute, but I need your help as a cooperating witness.

Please email me what you have this week.  Feel free to call me if you have any questions on my cell at 4083983126.

Kind regards,

Raj

=================================================================================

On Nov 16, 2012, at 3:04 PM, sandeep sood <sandeep@monsoonco.com> wrote:

Great to hear from you, man - will let you know if I come across any interesting web designers. Prakash went to UC Berkeley with me, although we haven't kept in touch too well over the years.

 Sandeep Sood
Principal
Monsoon Company
1250 Addison Street, #204
o: 510.991.6401 | m: 510.593.7031 |
monsoonco.com @soodsandeep

================================================================

On Nov 16, 2012, at 8:33 AM, Raj Abhyanker wrote:

Sandeep,

How are things?  All is well, I am going to India next month.   We are opening a retail store in downtown Palo Alto, see :

I am looking for a talented web designer who can help us layout and write content creatively and in a clear manner.   Do you know of a good branding agency that you could recommend me to?

Also, do you by any chance know someone named Paraksh Janikiraman?

Raj

================================================================