| | |
|---|---|
| 1 | **BRUNO W. TARABICHI**, CA State Bar No. 215129 |
| | bruno@legalforcelaw.com |
| 2 | **ROY MONTGOMERY**, CA State Bar No. 279531 |
| | roy@legalforcelaw.com |
| 3 | **KUSCHA HATAMI**, CA State Bar No. 282954 |
| | kuscha@legalforcelaw.com |
| 4 | **LEGALFORCE RAJ ABHYANKER, P.C.** |
| | 1580 W. El Camino Real, Suite 13 |
| 5 | Mountain View, California 94040 |
| | Telephone:  650.965.8731 |
| 6 | Facsimile:  650.989.2131 |
| 7 | Attorneys for Defendant |
| | Raj Abhyanker |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NEXTDOOR.COM, INC., a Delaware corporation, | Case No. 3:12-cv-05667-EMC |
| Plaintiff, | **DEFENDANT AND COUNTERCLAIMANT RAJ ABHYANKER'S OPPOSITION TO COUNTERDEFENDANTS NEXTDOOR.COM, INC.'S AND PRAKASH JANAKIRAMAN'S MOTION TO DISMISS FIRST AMENDED COUNTERCLAIM AND MOTION TO STRIKE AFFIRMATIVE DEFENSES** |
| vs. | |
| RAJ ABHYANKER, an individual, | |
| Defendant. | |
| RAJ ABHYANKER, an individual | |
| Counterclaimant, | Date:        Thursday, June 6, 2013 |
| vs. | Time:        1:30 p.m. |
| NEXTDOOR.COM, INC., a Delaware corporation; PRAKASH JANAKIRAMAN, an individual; BENCHMARK CAPITAL PARTNERS, L.P., a Delaware limited partnership; BENCHMARK CAPITAL MANAGEMENT CO. LLC, a Delaware limited liability company; SANDEEP SOOD, an individual; MONSOON ENTERPRISES, INC., a California corporation, and DOES 1–50, inclusive; | Courtroom:  5 – 17th Floor |
| | Judge:       Honorable Edward M. Chen |
| Counterdefendants. | |

# **TABLE OF CONTENTS**

I. INTRODUCTION ...................................................................................................................1

II. RELEVANT BACKGROUND...............................................................................................1

III. LEGAL STANDARD FOR A MOTION TO DISMISS .................................................4

IV. ARGUMENT ..........................................................................................................................4

    A. Abhyanker Owns the Trade Secrets Asserted in this Lawsuit ...............................5
    B. Abhyanker's Trade Secrets Have Not Been Disclosed in the Patent Application ...........7
    C. Abhyanker Sufficiently Identified his Trade Secrets for Purposes of a Pleading ............9
    D. Abhyanker Sufficiently Alleged Nextdoor.com's Misappropriation..............................11
    E. Abhyanker Has Adequately Alleged the Element of Damages .......................................13
    F. Abhyanker's Affirmative Defenses Should Not Be Stricken .........................................13
    G. At a Minimum, Abhyanker Should Be Given Leave to Amend.....................................14

V. CONCLUSION.....................................................................................................................14

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ................................................................................ 4

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, (2007) ........................................................................ 4

*Brocade Communications Systems, Inc. v. A10 Networks, Inc.*, No. 10-CV-03428, 2011 U.S. Dist. LEXIS 30227 (N.D. Cal. Mar. 23, 2011)................................................................. 12

*Cousins v. Lockyer*, 568 F.3d 1063 (9th Cir. 2009) ....................................................................... 4

*Farhang v. Indian Institute of Technology*, No. C-08-02658, 2010 U.S. Dist. LEXIS 53975 (N.D. Cal. June 1, 2010) ....................................................................................................... 5

*GiveMePower Corp. v. Pace Compumetrics, Inc.*, No. 07-cv-157, 2007 U.S. Dist. LEXIS 59371 (S.D. Cal. Aug. 14, 2007)........................................................................................ 10, 11

*Henry Hope X-Ray Prods., Inc. v. Marron Carrel, Inc.*, 674 F.2d 1336 (9th Cir. 1982) ................ 7

*Humboldt Wholesale, Inc. v. Humboldt Nation Distribution, LLC*, No. C-11-4144 EMC, 2011 U.S. Dist. LEXIS 141293 (N.D. Cal. 2011 Dec. 8, 2011). ....................................................... 4

*Imax Corp. v. Cinema Tech., Inc.*, 152 F.3d 1161 (9th Cir. 1998) ................................................. 7

*KnowledgePlex, Inc. v. PlaceBase, Inc.*, No. C-08-4267, 2008 U.S. Dist. LEXIS 103915 (N.D. Cal. Dec. 17, 2008) ................................................................................................ 9, 11, 12

*Lucas v. Department of Corrections*, 66 F.3d 245 (9th Cir. 1995) ............................................... 14

*Maximo v. San Francisco Unified School District*, No. C 10-35533 JL, 2011 U.S. Dist. LEXIS 30225 (N.D. Cal. Mar. 21, 2011) .............................................................................. 4

*Nakamoto v. Lockheed Martin Corp.*, 2010 U.S. Dist. LEXIS 56500 (N.D. Cal. 2010)............... 14

*Premiere Innovations, Inc. v. Iwas Industries, LLC*, No. 07-cv-1083, 2007 U.S. Dist. LEXIS, (S.D. Cal. Sept. 28, 2007) ............................................................................................... 10, 11

*Solis v. Webb*, C-12-2055 EMC, 2012 U.S. Dist. LEXIS 138516 (N.D. Cal. Sept. 26, 2012.) ....... 4

*TMX Funding, Inc. v. Impero Technologies, Inc.*, No. C-10-00202, 2010 U.S. Dist. LEXIS 60260 (N.D. Cal. June 17, 2010) .......................................................................................... 9

**Statutes**

California Civil Code § 3426.1 .................................................................................................... 11

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ...................................................................................... 4

Federal Rule of Civil Procedure 15(a) ......................................................................................... 14

Federal Rule of Civil Procedure, Rule 8(a)(2) ............................................................................... 4

## I. INTRODUCTION

Counterdefendants Nextdoor.com and Prakash Janakiraman (collectively referred to as "Nextdoor.com") argue that Counterclaimant Raj Abhyanker's ("Abhyanker") counterclaim for trade secret misappropriation should be dismissed because it is based on speculation and conjecture. Of course, this argument conveniently ignores the fact that Nextdoor.com's CEO Nirav Tolia met with Abhyanker and essentially admitted the misappropriation but ineptly tried to justify it by saying that everyone steals ideas and misappropriates trade secrets in Silicon Valley. The meeting, which was recorded with Tolia's permission, dispenses with any speculation or conjecture. It is now a known fact.

In any event, the facts of this case lead to only one conclusion: intentional trade secret misappropriation. Abhyanker came up with the concept for a private online neighborhood social network to be called Nextdoor and developed a set of very specific trade secrets around the concept, including algorithms, business and execution plans, software code, and more. Abhyanker disclosed the concept and trade secrets under obligations of confidentiality to Benchmark and Sandeep Sood, who, in turn, disclosed these trade secrets to Nextdoor.com's Nirav Tolia (a former Benchmark EIR) and Janakiraman (a former Benchmark EIR and Sood's good friend). They then used those trade secrets to launch the very private online neighborhood social network that Abhyanker had confidentially disclosed to Benhmark and Sood. Nextdoor.com's argument that it is all coincidence and its efforts were independent tests the limits of a reasonable person's willing suspension of disbelief and ignores its own CEO's ill-advised admission of misappropriation.

## II. RELEVANT BACKGROUND

Before misappropriating Abhyanker's trade secrets, Nextdoor.com, Benchmark, and the individuals associated with them have exhibited a pattern and practice of building companies based on stolen information and engaging in dishonest business practices at the expense of entrepreneurs. (PACER #59, at ¶ 105) Nextdoor.com also had a history of failing on its own merits. *Id*. at ¶¶ 107-108.

Around September 2006, Abhyanker had developed the concept of a private online

1  neighborhood social network for inventors to be called LegalForce, and a separate spin off idea
2  using the same code base called Nextdoor. *Id*. at ¶ 109. In connection with his LegalForce and
3  Nextdoor concept, Abhyanker developed and owned trade secret information, including, but not
4  limited to, key product details, algorithms, business plans, security algorithms, database
5  structures, user interface designs, software code, product concepts, prototypes, methods, works of
6  authorship, trademarks, white papers, and instrumentalities, information and plans pertaining to,
7  but not limited to, software that makes sure only people who live in a specific neighborhood are
8  able to join its network (giving users a level of privacy that sites like Facebook don't), email lists
9  of inventive neighbors around Cupertino, California, inventive neighbors in the Lorelei
10 neighborhood of Menlo Park, a private social network activation in a geospatially constrained
11 area when 10 neighbors sign up, geo-spatial database, neighborhood member activation through
12 postal mail, public/private geo-location constrained member groups, neighborhood member
13 address verification, sharing of bulletin and wall communications between neighborhood resident
14 users only, customer lists, architecture, social networking, friend grouping, providing real time
15 updates, neighborhood-level privacy controls, feed aggregation, spheres of influence, application
16 technologies, filtering relevant feeds across multiple networks, filtering conversations, adding
17 contextual relevancy to private messages and connections in a geospatially constrained area, and
18 connections across interactions in neighboring communities, providing in depth conversations
19 through a social graph, community governance, bidding history of the Nextdoor.com domain, the
20 activation of the Lorelei neighborhood as a prime testing neighborhood for communication,
21 neighborhood communication and geo-spatial social networking, and the use of the name
22 Nextdoor.com in conjunction with a private social network for neighborhoods ("Abhyanker's
23 LegalForce/Nextdoor Trade Secrets"). *Id*.

24       After developing his LegalForce/Nextdoor Trade Secrets, Abhyanker came up with a new
25 concept based on a Wikipedia-like public database of neighbor profiles that could be edited and
26 enhanced to provide a "search" and "discover" functionality as opposed to a sign up social
27 network, which Abhyanker named "Fatdoor.com." *Id*. at ¶ 112. The Fatdoor concept was
28 separate and distinct from the LegalForce/Nextdoor Trade Secrets, and Abhyanker formed

Fatdoor, Inc. to pursue the Fatdoor concept. *Id*. at ¶ 121. In doing so, Abhyanker assigned his rights to the Fatdoor concept and associated IP to Fatdoor, but retained and did not assign the rights and IP relating to the LegalForce/Nextdoor Trade Secrets. *Id*. at ¶¶ 114, 116.

Abhyanker disclosed his LegalForce/Nextdoor trade secrets, under obligations of confidentiality, to Benchmark and Sandeep Sood. *Id*. at ¶¶ 110-111, 124-136. Benchmark and Sandeep Sood then improperly disclosed the trade secrets to Nextdoor.com and Janakirman. *Id*. at ¶¶ 135, 147. Nextdoor.com then used the trade secrets to build and launch the very private neighborhood social network that Abhyanker had conceived and pitched and disclosed to Benchmark and Sood. *Id*. at ¶ 159.

As a result, on November 10, 2011, Abhyanker filed a complaint against Counterdefendants in the Superior Court of California for the County of Santa Clara, which was instituted as Case No. 1-11-CV-212924. *Id*. at ¶ 160. In that case, Abhyanker asserted claims for trade secret misappropriation, breach of contract, and additional torts. *Id*. Abhyanker chose to dismiss his state court action *without prejudice* on February 8, 2012 to focus on other matters, including litigating TTAB oppositions with Nextdoor.com. *Id*. at ¶¶ 161-163.

However, on November 5, 2012, Nextdoor.com filed the instant lawsuit seeking declaratory relief regarding trademark infringement and cyberpiracy. *Id*. at ¶ 164-166. Back in court as a result of the instant lawsuit, Abhyanker now reasserts his claim for trade secret misappropriation against Nextdoor.com and the other Defendants. *Id*. Rather than attempting to defend themselves on the merits (perhaps because they can't), Defendants have opted to desperately mischaracterize and intentionally misconstrue the allegations that Abhyanker made in the state court case and TTAB oppositions. *Id*. In this regard, Defendants have attempted to mischaracterize Abhyanker's allegations in prior pleadings as admissions that Abhyanker does not own the trade secrets that are the subject of the Abhyanker's trade secret misappropriation counterclaim in the instant lawsuit. *Id*. However, Defendants' argument is meritless because the trade secrets that form the basis for the trade secret misappropriation counterclaim in the instant lawsuit are owned by Abhyanker personally and were never assigned, purchased, or otherwise transferred to Fatdoor, Center'd, or Google. *Id*.

## III. LEGAL STANDARD FOR A MOTION TO DISMISS

Federal Rule of Civil Procedure ("FRCP") 12(b)(6) allows a defendant to move to dismiss one or more claims in a complaint for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). In order to survive a motion to dismiss, a plaintiff must satisfy the liberal notice pleading requirements of FRCP 8(a), which only requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). As the Supreme Court recently clarified in *Iqbal* and *Twombly*, FRCP 8(a) does not require a complaint to contain detailed factual allegations to meet this standard. Rather, the complaint simply needs to plead enough facts to state a claim for relief that is *plausible* on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).

Importantly, the issue in a motion to dismiss is not whether a plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence to support the claims in the complaint. *Solis v. Webb*, C-12-2055 EMC, 2012 U.S. Dist. LEXIS 138516, at *14 (N.D. Cal. Sept. 26, 2012.) With this in mind, the defendant, as the moving party, bears the heavy burden of demonstrating that the plaintiff has not met the pleading requirements of FRCP 8(a). *Maximo v. San Francisco Unified School District*, No. C 10-35533 JL, 2011 U.S. Dist. LEXIS 30225, at *11–12 (N.D. Cal. Mar. 21, 2011)**.** A defendant's burden is substantial because, in considering a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and take all material allegations in the complaint as true. *Humboldt Wholesale, Inc. v. Humboldt Nation Distribution, LLC*, No. C-11-4144 EMC, 2011 U.S. Dist. LEXIS 141293, at *3 (N.D. Cal. 2011 Dec. 8, 2011). As such, even after *Twombly* and *Iqbal*, "[m]otions alleging that a plaintiff has failed to state a claim … 'are disfavored and rarely granted.'" *Maximo*, 2011 U.S. Dist. LEXIS 30225, at *11–12.

## IV. ARGUMENT

Nextdoor.com's Motion to Dismiss should be denied because Abhyanker has properly pled each element of a claim for trade secret misappropriation. In fact, Nextdoor.com's Motion to Dismiss seems to improperly request that the Court look beyond the pleadings and make

factual determinations regarding ownership, misappropriation, and damages. Of course, this is improper on a motion to dismiss. As discussed below, Abhyanker has pled that he owns trade secrets, that Nextdoor.com misappropriated them, and that he has been damaged. That is all that is required to survive a motion to dismiss.

### A. Abhyanker Owns the Trade Secrets Asserted in this Lawsuit

Abhyanker has properly pled that he owns the trade secrets at issue in order to have standing to bring his counterclaim for trade secret misappropriation, and his prior allegations in a separate California State lawsuit do not provide a basis for Nextdoor.com to dismiss his counterclaim. In *Farhang v. Indian Institute of Technology*, the defendant argued that this Court should dismiss the plaintiff's trade secret claim for lack of standing based on purportedly inconsistent allegations in a prior pleading regarding ownership of the core technology. *Farhang v. Indian Institute of Technology*, No. C-08-02658, 2010 U.S. Dist. LEXIS 53975, *38-39 (N.D. Cal. June 1, 2010). In denying the defendant's motion to dismiss, this Court held that

> [P]laintiffs' claim of trade secret misappropriation is not limited to disclosure of the core technology and includes allegations that defendants misappropriated plaintiffs' business models and plans. Therefore, while the court finds these inconsistent allegations troubling, they do not provide a basis for dismissing plaintiffs' trade secret claim.

*Id*. Therefore, even inconsistent allegations in pleadings can be insufficient to dismiss a trade secret claim based on allegations of lack of ownership and hence standing, as the court must construe the allegations in the light most favorable to the non-moving party on a motion to dismiss. *Id*.

In the instant case, Abhyanker's allegations that he owns the trade secrets at issue in this lawsuit are not inconsistent with his allegations in a prior California State lawsuit. In his counterclaim, Abhyanker alleges and explains that there were two sets of technology, one related to the LegalForce/Nextdoor technology and one related to the Fatdoor technology, and that the two technologies were separate and distinct. (PACER #59 at ¶¶ 109-114, 166-168) Abhyanker also explicitly alleges in his counterclaim that only the IP relating to the Fatdoor technology was assigned to Fatdoor and eventually acquired by Google; Abhyanker never assigned his rights to

the LegalForce/Nextdoor technology to Fatdoor and has retained ownership of this technology. *Id*. Abhyanker's allegations explain and reconcile what Nextdoor.com has wrongly interpreted as inconsistencies. Because the Court is required to take the allegations pled in a counterclaim as true and draw all reasonable inferences in favor of the non-moving party, the Court should accept Abhyanker's pleaded allegations as true at this stage of the action and deny Nextdoor.com's Motion to Dismiss.

Moreover, Abhyanker's California State complaint is not inconsistent with the allegations in this lawsuit. First, Abhyanker's California State complaint never identified—generally or specifically—any trade secrets. It just used vague and amorphous phrases like the "Nextdoor/Fatdoor concept." Therefore, there is no way to even compare what was being referenced in the prior lawsuit to the what has been specifically identified as trade secrets in this lawsuit. Moreover, even in the language identified by Nextdoor.com, Abhyanker's First Amended Complaint in the California State case specifically alleged that only "some" of the technology was assigned: "The entire basis for Nextdoor.com, Inc.'s business rests on these stolen and opportunistically misappropriated materials, ***some of which are now owned by Google, Inc.*** through its acquisition of the Nextdoor/Fatdoor patent portfolio of Center'd Corpration." *See* Abhyanker's First Amended Complaint, at ¶ 23 (emphasis added). Nowhere in the California State Complaint does it say that the individual trade secret items listed in Paragraph 109 of Abhyanker's counterclaim in this lawsuit were assigned to or otherwise owned by Fatdoor or Google. (PACER #59, ¶ 109). As such, Abhyanker's allegations in the prior California State lawsuit and his allegations in the current counterclaim are not directly contradictory and are easily reconciled by the explanation provided by Abhyanker in Paragraphs 109-114 and 166-168 in his counterclaim. (PACER #59 at ¶¶ 109-114, 166-168) Finally, it is worth pointing out that it would not have made sense for Abhyanker to pursue a claim for trade secret misappropriation in the California State lawsuit if he did not own them.

Abhyanker respectfully submits that he has sufficiently pled that he has standing to pursue his claim for trade secret misappropriation by alleging his ownership of the trade secrets listed in Paragraph 109 of his counterclaim. Accordingly, Nextdoor.com's Motion to Dismiss for lack of

1 ownership and standing should be denied.

**B. Abhyanker's Trade Secrets Have Not Been Disclosed in the Patent Application**

Even if there is a published patent application or issued patent that relates to the same general subject matter of the trade secrets at issue, it is well-established that any information not disclosed in the patent may still be claimed as trade secrets. *Imax Corp. v. Cinema Tech., Inc.*, 152 F.3d 1161, 1163 (9th Cir. 1998); *Henry Hope X-Ray Prods., Inc. v. Marron Carrel, Inc.*, 674 F.2d 1336, 1342 (9th Cir. 1982) (where patented apparatus contained features that were not disclosed in patent, the undisclosed features qualified for protection as trade secrets). For example, in *Imax Corp. v. Cinema Tech.*, Imax owned several patents relating to "rolling loop" projector technology. *Imax*, 152 F.3d at 1163. Nevertheless, the Ninth Circuit explained that the "Imax patents did not disclose everything needed to mass-produce its 'rolling loop' projector. Therefore, there remained the possibility of trade secrets qualified for protection under state law." *Id*.

Contrary to Nextdoor.com's assertion, Patent Application No. 11/603,442 does not publicly disclose Abhyanker's trade secrets at issue in this lawsuit. As an initial matter, Abhyanker has specifically pled in his counterclaim that Patent Application No. 11/603,442, as well as all other patent applications that he is listed as a lead inventor on, do not disclose the trade secrets at issue: "the patent applications do not disclose or reveal the trade secrets that form the basis for Abhyanker's trade secret misappropriation claim in the instant pleading." (PACER #59, at ¶¶ 119-120) When deciding a motion to dismiss, this Court is required to take all pleaded allegations as true and draw all reasonable inferences in favor of the non-moving party. Accordingly, the Court should take Abhyanker's allegations that the trade secrets are not disclosed in the patent application as true.

Notwithstanding that the Court is required to accept Abhyanker's allegations as true, it is clear from both the face of Abhyanker's counterclaim and Patent Application No. 11/603,442 that Abhyanker has pled and identified trade secrets that are not disclosed anywhere in the patent application. In his counterclaim, Abhyanker identifies a long list of his trade secrets:
In connection with his LegalForce and Nextdoor concept,

> Abhyanker developed and owned trade secret information, including, but not limited to, key product details, algorithms, business plans, security algorithms, database structures, user interface designs, software code, product concepts, prototypes, methods, works of authorship, trademarks, white papers, and instrumentalities, information and plans pertaining to, but not limited to, software that makes sure only people who live in a specific neighborhood are able to join its network—giving users a level of privacy that sites like Facebook don't, email lists of inventive neighbors around Cupertino, California, inventive neighbors in the Lorelei neighborhood of Menlo Park, a private social network activation in a geospatially constrained area when 10 neighbors sign up, geo-spatial database, neighborhood member activation through postal mail, public/private geo-location constrained member groups, neighborhood member address verification, sharing of bulletin and wall communications between neighborhood resident users only, customer lists, architecture, social networking, friend grouping, providing real time updates, neighborhood-level privacy controls, feed aggregation, spheres of influence, application technologies, filtering relevant feeds across multiple networks, filtering conversations, adding contextual relevancy to private messages and connections in a geospatially constrained area, and connections across interactions in neighboring communities, providing in depth conversations through a social graph, community governance, bidding history of the Nextdoor.com domain, the activation of the Lorelei neighborhood as a prime testing neighborhood for communication, neighborhood communication and geo-spatial social networking, and the use of the name Nextdoor.com in conjunction with a private social network for neighborhoods ("Abhyanker's LegalForce/Nextdoor Trade Secrets").

(PACER #59, at ¶¶ 109, 170) The only item from the list of trade secrets that is arguably disclosed in the patent application is the use of the name Nextdoor.com. However, even in the patent application, the disclosure of the use of the name Nextdoor.com was made in reference to the placement of advertisements on a nextdoor.com website, not use of the name in connection with a private social network for neighborhoods. (PACER #59, ¶ 115) Nevertheless, even if the use of the Nextdoor.com name was disclosed, none of the other listed trade secrets were disclosed. For example, the patent application does not disclose business plans, software code, prototype concepts, the use of the Lorelei neighborhood for testing, privacy controls, and more. Basically, the patent application definitely does not disclose any of the other trade secrets other

than the arguable disclosure of the use of the Nextdoor.com name. Notably, Nextdoor.com does not point to where the other listed trade secrets are disclosed in the patent application—because it can't.

In its Motion to Dismiss, ***Nextdoor.com even admits that the patent application does not disclose all the trade secrets*** being asserted by Abhyanker in this lawsuit. More specifically, Nextdoor.com only argues that the patent application discloses the proposed use of Nextdoor as a trademark and the general, high-level idea of a social networking concept. In fact, Nextdoor.com only asks the Court to dismiss the trade secret claim "to the extent that it is based upon the purported theft of the 'nextdoor.com' name or social networking concept." (PACER #63, at 15:12-13) Accordingly, because Nextdoor.com's requested dismissal would not even result in the dismissal of the entirety of Abhyanker's trade secret misappropriation claim, it should be denied as improper.

**C. Abhyanker Sufficiently Identified his Trade Secrets for Purposes of a Pleading**

Abhyanker's allegations in his counterclaim identify his trade secrets with more than sufficient particularity for purposes of a pleading at this stage of the lawsuit. A plaintiff does not need to spell out the details of its trade secret in its complaint to avoid dismissal. *TMX Funding, Inc. v. Impero Technologies, Inc.*, No. C-10-00202, 2010 U.S. Dist. LEXIS 60260, *8-9 (N.D. Cal. June 17, 2010). Rather, a plaintiff only needs to describe the ***subject matter*** of the trade secret with sufficient particularity to separate to permit the defendant to ascertain the boundaries of the trade secret. *Id*.

In this regard, it is useful to look at some identifications of trade secrets that this Court and other California district courts have previously found sufficient for pleading purposes. In *TMX*, this Court found the following descriptions of trade secrets to be sufficient for a pleading: software, source code, data formulas, business methods and marketing plans, product information for cost, pricing, and margin data, customer lists, contact names for accounts, customer profiles, login and password information. *Id*. Likewise, in *KnowledgePlex*, this Court found the following description sufficient: "the code required to operate DataPlace and all of the design and

1  development work of the project to create the code are protectable trade secrets."
2  *KnowledgePlex, Inc. v. PlaceBase, Inc.*, No. C-08-4267, 2008 U.S. Dist. LEXIS 103915, *24
3  (N.D. Cal. Dec. 17, 2008). In *Premiere Innovations*, the Court found the following description
4  sufficient: "the Products' design, manufacture, pricing, and market opportunity." *Premiere*
5  *Innovations, Inc. v. Iwas Industries, LLC*, No. 07-cv-1083, 2007 U.S. Dist. LEXIS, *10 (S.D. Cal.
6  Sept. 28, 2007). And in *GiveMePower*, the Court found the following identification sufficiently
7  particular: "Plaintiff's proprietary database of existing and prospective field technicians and
8  business affiliates, Plaintiff's confidential contractor agreements, as well as confidential business
9  plans and processes developed by Plaintiff for the BAM Project." *GiveMePower Corp. v. Pace*
10 *Compumetrics, Inc.*, No. 07-cv-157, 2007 U.S. Dist. LEXIS 59371, *27-28 (S.D. Cal. Aug. 14,
11 2007).
12      In the instant case, Abhyanker has identified his trade secrets in Paragraph 109 of his
13 counterclaim:

> In connection with his LegalForce and Nextdoor concept,
> Abhyanker developed and owned trade secret information,
> including, but not limited to, key product details, algorithms,
> business plans, security algorithms, database structures, user
> interface designs, software code, product concepts, prototypes,
> methods, works of authorship, trademarks, white papers, and
> instrumentalities, information and plans pertaining to, but not
> limited to, software that makes sure only people who live in a
> specific neighborhood are able to join its network—giving users a
> level of privacy that sites like Facebook don't, email lists of
> inventive neighbors around Cupertino, California, inventive
> neighbors in the Lorelei neighborhood of Menlo Park, a private
> social network activation in a geospatially constrained area when 10
> neighbors sign up, geo-spatial database, neighborhood member
> activation through postal mail, public/private geo-location
> constrained member groups, neighborhood member address
> verification, sharing of bulletin and wall communications between
> neighborhood resident users only, customer lists, architecture,
> social networking, friend grouping, providing real time updates,
> neighborhood-level privacy controls, feed aggregation, spheres of
> influence, application technologies, filtering relevant feeds across
> multiple networks, filtering conversations, adding contextual
> relevancy to private messages and connections in a geospatially
> constrained area, and connections across interactions in neighboring
> communities, providing in depth conversations through a social

> graph, community governance, bidding history of the Nextdoor.com domain, the activation of the Lorelei neighborhood as a prime testing neighborhood for communication, neighborhood communication and geo-spatial social networking, and the use of the name Nextdoor.com in conjunction with a private social network for neighborhoods ("Abhyanker's LegalForce/Nextdoor Trade Secrets").

(PACER #59, at ¶¶ 109, 170). Clearly, Abhyanker's identification is not only as specific as the identifications found sufficient in the *TMX, KnowledgePlex, Premiere Innovations,* and *GiveMePower* cases, but much more specific. Abhyanker has identified items that are classically identified as trade secrets, such as algorithms, business plans, software code, financial bidding history data, as well as other very specific trade secrets such as his implementation plan to activate testing in a very specific and carefully chosen neighborhood. Abhyanker's allegations are more than sufficient to put Nextdoor.com on notice of what it needs to defend against at this stage. Any further details or particulars are appropriate for the discovery stage of this lawsuit, not the pleadings stage.

Notably, Nextdoor.com does not really dispute that Abhyanker has sufficiently identified his trade secrets. Instead, Nextdoor.com drops a passing footnote stating that it believes the trade secrets are not sufficiently identified. (PACER #63, at 16, n. 7) This is disingenuous for at least three reasons: (1) as discussed in the preceding paragraphs, Abhyanker has identified his trade secrets with more particularity than required in other trade secret cases in the Northern District of California; (2) in its first motion to dismiss, Nextdoor.com devoted substantial pages to this argument, which has not been removed entirely from its second motion to dismiss; and (3) if Nextdoor.com believed the trade secrets were not sufficiently identified, it would devote more than a half-hearted footnote to the issue.

Accordingly, Abhyanker's counterclaim sufficiently identifies the trade secrets that Nextdoor.com has misappropriated. Nextdoor.com's Motion to Dismiss on this ground—which it actually is not setting forth as a ground for dismissal—must be denied.

**D. Abhyanker Sufficiently Alleged Nextdoor.com's Misappropriation**

In order to state a claim for misappropriation, a plaintiff must allege that the defendant

either acquired, disclosed, or used the trade secret. Cal. Civil Code § 3426.1. In the instant case, Abhyanker has alleged that Nextdoor.com and Janakiraman have acquired and used Abhyanker's trade secrets through improper means and with knowledge that the trade secrets were acquired through improper means and in breach of duties to maintain confidentiality:

- Benchmark disclosed Abhyanker's trade secrets to Nextdoor.com's CEO Noriv Tolia and Janikaraman, who knew of the duty of confidentiality by virtue of their positions as EIRs at Benchmark. (PACER #59, at ¶¶ 143-144, 175)
- Sandeep Sood disclosed Abhyanker's trade secrets to Janakiraman and Nextdoor.com. (PACER #59, at ¶¶ 146-149, 175)
- Nextdoor.com's Nirav Tolia admits the misappropriation. (PACER #59, at ¶ 147)
- Nextdoor.com and Janakiraman improperly looked through Benchmark's archives to review Abhyanker's trade secrets. (PACER #59, at ¶ 149)
- Nextdoor.com and Janakiraman use Abhyanker's trade secret testing plan to launch in the same Lorelei neighborhood selected in Abhyanker's trade secrets. (PACER #59, at ¶¶ 150-153)
- Nextdoor.com's social network is built on and uses Abhyanker's trade secrets. (PACER #59, at ¶¶ 159, 175)

As such, Abhyanker has clearly pled sufficient allegations regarding Nextdoor.com's and Janakiraman's improper acquisition and use of his trade secrets.

Moreover, to the extent Nextdoor.com takes issue with Abhyanker's allegations on information and belief, a plaintiff in a trade secret misappropriation case is permitted to plead on information and belief because the facts and knowledge regarding the misappropriation are within the exclusive knowledge and possession of the defendants. *Brocade Communications Systems, Inc. v. A10 Networks, Inc.*, No. 10-CV-03428, 2011 U.S. Dist. LEXIS 30227, *19-20 (N.D. Cal. Mar. 23, 2011) (denying motion to dismiss trade secret misappropriation claim due to allegations made on information and belief because "pleading in this manner is acceptable for information that is not presumptively in the knowledge of the pleading party"). Otherwise, defendants would be able to get away with trade secret misappropriation simply by keeping their wrongful conduct

1 to themselves. *Id*; *see also KnowledgePlex, Inc. v. PlaceBase, Inc.*, No. C-08-4267, 2008 U.S.
2 Dist. LEXIS 103915, *25-26 (N.D. Cal. Dec. 17, 2008) ("Given that Plaintiff has not yet had the
3 benefit of discovery, and in light of the liberal pleading standard of Rule 8(a), the Court
4 concludes that Plaintiff adequately has alleged misappropriation of a trade secret.")

### E. Abhyanker Has Adequately Alleged the Element of Damages

Abhyanker has specifically alleged that he has been and will continue to be damaged by Nextdoor.com's trade secret misappropriation. (PACER #59, at ¶ 175) In a short paragraph, Nextdoor.com speciously argues that Abhyanker has not been damaged because Abhyanker does not own the trade secrets at issue. However, as discussed in Section IV.A above, Abhyanker does own the trade secrets at issue. All that Nextdoor.com has done is repackage its standing argument as a damages argument. Moreover, Nextdoor.com's argument implicitly admits that, if Abhyanker owns the trade secrets at issue, he has also adequately alleged the element of damages. Obviously, by virtue of Nextdoor.com's trade secret misappropriation, Abhyanker has been damaged: (i) the misappropriation prevented him from acquiring the nextdoor.com domain name and launching his Nextdoor concept (PACER #59, at ¶¶ 118, 136), and (ii) the misappropriation deprived him of his ability to profit from the trade secrets and/or obtain a proper ownership interest in, or financial benefit from, Nextdoor.com's use of his trade secrets.

### F. Abhyanker's Affirmative Defenses Should Not Be Stricken

Abhyanker has set forth 16 affirmative defenses, each of which are supported by allegations in his Answer and Counterclaim. Abhyanker's affirmative defenses are all based on the alleged facts that Nextdoor.com misappropriated Abhyanker's trade secrets, including the Nextdoor name and mark, and that Abhyanker used the Nextdoor trademark first. Abhyanker's Answer and Counterclaim contain extensive, detailed allegations regarding the misappropriation, which, in turn, make it clear that Nextdoor did not have the right to use the trademark, did not have priority in the trademark, and committed fraud on the USPTO by signing a declaration that it was the exclusive owner of the mark and that no one else had the right to use the mark. However, to the extent the Court requires Abhyanker to insert the allegations from other paragraphs in the

1  Answer and Counterclaim directly into the paragraphs under each affirmative defense, Abhyanker
2  requests leave to do so as detailed in Section IV.G below.

### G. At a Minimum, Abhyanker Should Be Given Leave to Amend

While Abhyanker believes that he has adequately pled his counterclaim for trade secret misappropriation and his affirmative defenses, should the Court disagree and grant Nextdoor.com's Motion to Dismiss, Abhyanker should be given leave to amend his counterclaim and affirmative defenses. In this regard, Rule 15(a) of the Federal Rules of Civil Procedure severely restricts a court's discretion to dismiss without providing leave to amend at least once. Fed. R. Civ. P. 15(a). Furthermore, in order to dismiss without leave to amend, the court would have to find that the counterclaim and affirmative defenses cannot be cured by the allegation of different facts. *Nakamoto v. Lockheed Martin Corp.*, 2010 U.S. Dist. LEXIS 56500, at *11 (N.D. Cal. 2010) ("Leave to amend must be granted unless it is clear that the complaint's deficiencies cannot be cured by amendment."; *Lucas v. Department of Corrections*, 66 F.3d 245, 248 (9th Cir. 1995). In addition, Abhyanker notes that, although Nextdoor.com is requesting dismissal with prejudice, Nextdoor.com has conspicuously failed to argue that there are no sets of facts that Abhyanker could allege to correct the deficiencies such that amendment would be futile. Accordingly, should Nextdoor.com's Motion to Dismiss be granted, Abhyanker respectfully requests leave to amend.

### V. CONCLUSION

For all the foregoing reasons, Abhyanker respectfully requests that the Court dismiss Nextdoor.com's Motion to Dismiss.

Dated: May 9, 2013

Respectfully submitted,

LEGALFORCE RAJ ABHYANKER, P.C.

By _____
Bruno W. Tarabichi
Roy Montgomery
Kuscha Hatami
Attorneys for Defendant
Raj Abhyanker