1  **BRUNO W. TARABICHI**, CA State Bar No. 215129
   bruno@legalforcelaw.com
2  **ROY MONTGOMERY**, CA State Bar No. 279531
   roy@legalforcelaw.com
3  **KUSCHA HATAMI**, CA State Bar No. 282954
   kuscha@legalforcelaw.com
4  **LEGALFORCE RAJ ABHYANKER, P.C.**
   1580 W. El Camino Real, Suite 13
5  Mountain View, California 94040
   Telephone:  650.965.8731
6  Facsimile:   650.989.2131

7  Attorneys for Defendant
   Raj Abhyanker
8
                    UNITED STATES DISTRICT COURT
9
                   NORTHERN DISTRICT OF CALIFORNIA
10
                        SAN FRANCISCO DIVISION
11

| | |
|---|---|
| NEXTDOOR.COM, INC., a Delaware corporation,<br><br>                  Plaintiff,<br><br>        vs.<br><br>RAJ ABHYANKER, an individual,<br><br>                  Defendant. | Case No. 3:12-cv-05667-EMC<br><br>**DEFENDANT AND COUNTERCLAIMANT RAJ ABHYANKER'S OPPOSITION TO COUNTERDEFENDANTS SANDEEP SOOD AND MONSOON ENTERPRISES, INC'S MOTION TO DISMISS FIRST AMENDED COUNTERCLAIM** |
| RAJ ABHYANKER, an individual<br><br>                  Counterclaimant,<br><br>        vs.<br><br>NEXTDOOR.COM, INC., a Delaware corporation; PRAKASH JANAKIRAMAN, an individual; BENCHMARK CAPITAL PARTNERS, L.P., a Delaware limited partnership; BENCHMARK CAPITAL MANAGEMENT CO. LLC, a Delaware limited liability company; SANDEEP SOOD, an individual; MONSOON ENTERPRISES, INC., a California corporation, and DOES 1–50, inclusive;<br><br>                  Counterdefendants. | Date:          Thursday, June 6, 2013<br>Time:          1:30 p.m.<br>Courtroom:  5 – 17th Floor<br>Judge:         Honorable Edward M. Chen |

# TABLE OF CONTENTS

I. INTRODUCTION ..........................................................................................................................1

II. RELEVANT BACKGROUND ....................................................................................................1

III. LEGAL STANDARD FOR A MOTION TO DISMISS ...............................................................4

IV. ARGUMENT .................................................................................................................................5

    A. Abhyanker Owns the Trade Secrets Asserted in this Lawsuit ...........................................5

    B. Abhyanker's Trade Secrets Have Not Been Disclosed in the Patent Application .............7

    C. Abhyanker Sufficiently Identified his Trade Secrets for Purposes of a Pleading ..............9

    D. Abhyanker Sufficiently Alleged Counterdefendants' Misappropriation .........................11

    E. Abhyanker Has Adequately Alleged the Element of Damages .......................................11

    F. At a Minimum, Abhyanker Should Be Given Leave to Amend ......................................13

V. CONCLUSION ............................................................................................................................14

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ................................................................................... 4

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, (2007) ........................................................................ 4

*Brocade Communications Systems, Inc. v. A10 Networks, Inc.*, No. 10-CV-03428, 2011 U.S. Dist. LEXIS 30227 (N.D. Cal. Mar. 23, 2011) ................................................................................. 12

*Cousins v. Lockyer*, 568 F.3d 1063 (9th Cir. 2009) ....................................................................... 4

*Farhang v. Indian Institute of Technology*, No. C-08-02658, 2010 U.S. Dist. LEXIS 53975 (N.D. Cal. June 1, 2010) ......................................................................................................................... 5

*GiveMePower Corp. v. Pace Compumetrics, Inc.*, No. 07-cv-157, 2007 U.S. Dist. LEXIS 59371 (S.D. Cal. Aug. 14, 2007) ........................................................................................................ 10, 11

*Henry Hope X-Ray Prods., Inc. v. Marron Carrel, Inc.*, 674 F.2d 1336 (9th Cir. 1982) ................ 7

*Humboldt Wholesale, Inc. v. Humboldt Nation Distribution, LLC*, No. C-11-4144 EMC, 2011 U.S. Dist. LEXIS 141293 (N.D. Cal. 2011 Dec. 8, 2011). ............................................................. 4

*Imax Corp. v. Cinema Tech., Inc.*, 152 F.3d 1161 (9th Cir. 1998) ................................................. 7

*KnowledgePlex, Inc. v. PlaceBase, Inc.*, No. C-08-4267, 2008 U.S. Dist. LEXIS 103915 (N.D. Cal. Dec. 17, 2008) ............................................................................................................ 10, 11, 12

*Lucas v. Department of Corrections*, 66 F.3d 245 (9th Cir. 1995) .............................................. 13

*Maximo v. San Francisco Unified School District*, No. C 10-35533 JL, 2011 U.S. Dist. LEXIS 30225 (N.D. Cal. Mar. 21, 2011) ..................................................................................................... 4

*Nakamoto v. Lockheed Martin Corp.*, 2010 U.S. Dist. LEXIS 56500 (N.D. Cal. 2010) .............. 13

*Premiere Innovations, Inc. v. Iwas Industries, LLC*, No. 07-cv-1083, 2007 U.S. Dist. LEXIS, (S.D. Cal. Sept. 28, 2007) ........................................................................................................ 10, 11

*Solis v. Webb*, C-12-2055 EMC, 2012 U.S. Dist. LEXIS 138516 (N.D. Cal. Sept. 26, 2012.) ....... 4

*TMX Funding, Inc. v. Impero Technologies, Inc.*, No. C-10-00202, 2010 U.S. Dist. LEXIS 60260 (N.D. Cal. June 17, 2010) ................................................................................................................ 9

**Statutes**

California Civil Code § 3426.1 ...................................................................................................... 11

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ........................................................................................ 4

Federal Rule of Civil Procedure 15(a) ........................................................................................... 13

Federal Rule of Civil Procedure, Rule 8(a)(2) ................................................................................. 4

## I. INTRODUCTION

Counterdefendants Sandep Sood and Monsoon Enterprises, Inc. (collectively referred to as "Monsoon") argue that Counterclaimant Raj Abhyanker's ("Abhyanker") counterclaim for trade secret misappropriation should be dismissed because it is based on speculation and conjecture. Of course, this argument conveniently ignores the fact that Nextdoor.com's CEO Nirav Tolia met with Abhyanker and essentially admitted the misappropriation through Sood's improper disclosure but ineptly tried to justify it by saying that everyone steals ideas and misappropriates trade secrets in Silicon Valley. The meeting, which was recorded with Tolia's permission, dispenses with any speculation or conjecture. It is now a known fact that Monsoon committed trade secret misappropriation by disclosing Abhyanker's trade secrets to Nextdoor.com without Abhyanker's consent and in breach of their non-disclosure agreement.

In any event, the facts of this case lead to only one conclusion: intentional trade secret misappropriation. Abhyanker came up with the concept for a private online neighborhood social network to be called Nextdoor and developed a set of very specific trade secrets around the concept, including algorithms, business and execution plans, software code, and more. Abhyanker disclosed the concept and trade secrets under obligations of confidentiality to Benchmark and Sandeep Sood, who, in turn, disclosed these trade secrets to Nextdoor.com's Nirav Tolia (a former Benchmark EIR) and Janakiraman (a former Benchmark EIR and Sood's good friend). They then used those trade secrets to launch the very private online neighborhood social network that Abhyanker had confidentially disclosed to Benhmark and Sood. Monsoon's argument that it is all coincidence and its efforts were independent tests the limits of a reasonable person's willing suspension of disbelief and ignores its own CEO's ill-advised admission of misappropriation.

## II. RELEVANT BACKGROUND

Nextdoor.com, Benchmark, and the individuals associated with them have previously exhibited a pattern and practice of building companies based on stolen information and engaging in dishonest business practices at the expense of entrepreneurs. (PACER #59, at ¶ 105).

Around September 2006, Abhyanker had developed the concept of a private online

1 neighborhood social network for inventors to be called LegalForce, and a separate spin off idea
2 using the same code base called Nextdoor. *Id*. at ¶ 109. In connection with his LegalForce and
3 Nextdoor concept, Abhyanker developed and owned trade secret information, including, but not
4 limited to, key product details, algorithms, business plans, security algorithms, database
5 structures, user interface designs, software code, product concepts, prototypes, methods, works of
6 authorship, trademarks, white papers, and instrumentalities, information and plans pertaining to,
7 but not limited to, software that makes sure only people who live in a specific neighborhood are
8 able to join its network (giving users a level of privacy that sites like Facebook don't), email lists
9 of inventive neighbors around Cupertino, California, inventive neighbors in the Lorelei
10 neighborhood of Menlo Park, a private social network activation in a geospatially constrained
11 area when 10 neighbors sign up, geo-spatial database, neighborhood member activation through
12 postal mail, public/private geo-location constrained member groups, neighborhood member
13 address verification, sharing of bulletin and wall communications between neighborhood resident
14 users only, customer lists, architecture, social networking, friend grouping, providing real time
15 updates, neighborhood-level privacy controls, feed aggregation, spheres of influence, application
16 technologies, filtering relevant feeds across multiple networks, filtering conversations, adding
17 contextual relevancy to private messages and connections in a geospatially constrained area, and
18 connections across interactions in neighboring communities, providing in depth conversations
19 through a social graph, community governance, bidding history of the Nextdoor.com domain, the
20 activation of the Lorelei neighborhood as a prime testing neighborhood for communication,
21 neighborhood communication and geo-spatial social networking, and the use of the name
22 Nextdoor.com in conjunction with a private social network for neighborhoods ("Abhyanker's
23 LegalForce/Nextdoor Trade Secrets"). *Id*.
24     After developing his LegalForce/Nextdoor Trade Secrets, Abhyanker came up with a new
25 concept based on a Wikipedia-like public database of neighbor profiles that could be edited and
26 enhanced to provide a "search" and "discover" functionality as opposed to a sign up social
27 network, which Abhyanker named "Fatdoor.com." *Id*. at ¶ 112. The Fatdoor concept was
28 separate and distinct from the LegalForce/Nextdoor Trade Secrets, and Abhyanker formed

Fatdoor, Inc. to pursue the Fatdoor concept. *Id*. at ¶ 121. In doing so, Abhyanker assigned his rights to the Fatdoor concept and associated IP to Fatdoor, but retained and did not assign the rights and IP relating to the LegalForce/Nextdoor Trade Secrets. *Id*. at ¶¶ 114, 116.

Abhyanker disclosed his LegalForce/Nextdoor trade secrets - under obligations of confidentiality, as would any entrepreneur pitching to a venture capitalist - to Benchmark and Sandeep Sood. *Id*. at ¶¶ 110-111, 124-136. Benchmark and Sandeep Sood then improperly disclosed the trade secrets to Nextdoor.com and Janakirman. *Id*. at ¶¶ 135, 147. Nextdoor.com then used the misappropriated trade secrets to build and launch the very private neighborhood social network that Abhyanker had conceived and pitched and disclosed to Benchmark and Sood. *Id*. at ¶ 159.

As a result, on November 10, 2011, Abhyanker filed a complaint against certain of the Counterdefendants in the Superior Court of California for the County of Santa Clara, which was instituted as Case No. 1-11-CV-212924. *Id*. at ¶ 160 (as discussed above, at the time of filing the State Court case, Abhyanker had not yet had his encounter with Nextdoor.com's CEO Tolia, and had not become aware of Sood's involvement; Sood was thus not named in this action). In the State Court case, Abhyanker asserted claims for trade secret misappropriation, breach of contract, and additional torts. *Id*. Abhyanker subsequently chose to dismiss his state court action *without prejudice* on February 8, 2012 to focus on other matters, including litigating TTAB oppositions with Nextdoor.com. *Id*. at ¶¶ 161-163.

However, on November 5, 2012, Nextdoor.com filed the instant lawsuit seeking declaratory relief regarding trademark infringement and cyberpiracy. *Id*. at ¶ 164-166. Back in court as a result of the instant lawsuit, Abhyanker now reasserts his claim for trade secret misappropriation against Nextdoor.com and the other Defendants, now including Sood and Monsoon. *Id*. Rather than attempting to defend themselves on the merits (perhaps because they can't), Defendants have instead attempted to desperately mischaracterize and intentionally misconstrue the allegations that Abhyanker made in the state court case and TTAB oppositions. *Id*. In this regard, Defendants have attempted to mischaracterize Abhyanker's allegations in prior pleadings as admissions that Abhyanker does not own the trade secrets that are the subject of the
3

OPPOSITION TO MOTION TO DISMISS
CASE NO. 3:12-cv-05667-EMC

1 Abhyanker's trade secret misappropriation counterclaim in the instant lawsuit. *Id*. However,
2 Defendants' argument is meritless because the trade secrets that form the basis for the trade secret
3 misappropriation counterclaim in the instant lawsuit are owned by Abhyanker personally and
4 were never assigned, purchased, or otherwise transferred to Fatdoor, Center'd, or Google. *Id*.

### III. LEGAL STANDARD FOR A MOTION TO DISMISS

Federal Rule of Civil Procedure ("FRCP") 12(b)(6) allows a defendant to move to dismiss one or more claims in a complaint for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). In order to survive a motion to dismiss, a plaintiff must satisfy the liberal notice pleading requirements of FRCP 8(a), which only requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). As the Supreme Court recently clarified in *Iqbal* and *Twombly*, FRCP 8(a) does not require a complaint to contain detailed factual allegations to meet this standard. Rather, the complaint simply needs to plead enough facts to state a claim for relief that is *plausible* on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).

Importantly, the issue in a motion to dismiss is not whether a plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence to support the claims in the complaint. *Solis v. Webb*, C-12-2055 EMC, 2012 U.S. Dist. LEXIS 138516, at *14 (N.D. Cal. Sept. 26, 2012.) With this in mind, the defendant, as the moving party, bears the heavy burden of demonstrating that the plaintiff has not met the pleading requirements of FRCP 8(a). *Maximo v. San Francisco Unified School District*, No. C 10-35533 JL, 2011 U.S. Dist. LEXIS 30225, at *11–12 (N.D. Cal. Mar. 21, 2011)**.** A defendant's burden is substantial because, in considering a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and take all material allegations in the complaint as true. *Humboldt Wholesale, Inc. v. Humboldt Nation Distribution, LLC*, No. C-11-4144 EMC, 2011 U.S. Dist. LEXIS 141293, at *3 (N.D. Cal. 2011 Dec. 8, 2011). As such, even after *Twombly* and *Iqbal*, "[m]otions alleging that a plaintiff has failed to state a claim … 'are disfavored and rarely granted.'" *Maximo*, 2011 U.S. Dist. LEXIS 30225, at *11–12.

## IV. ARGUMENT

The Motion to Dismiss by Counterdefendants Sandeep Sood and Monsoon Enterprises, Inc. should be denied because Abhyanker has properly pled each element of a claim for trade secret misappropriation. In fact, Monsoon's Motion to Dismiss seems to improperly request that the Court look beyond the pleadings and make factual determinations regarding ownership, misappropriation, and damages. Of course, this is improper on a motion to dismiss. As discussed below, Abhyanker has pled that he owns trade secrets, that Monsoon misappropriated them, and that he has been damaged. That is all that is required to survive a motion to dismiss.

### A. Abhyanker Owns the Trade Secrets Asserted in this Lawsuit

Abhyanker has properly pled that he owns the trade secrets at issue in order to have standing to bring his counterclaim for trade secret misappropriation, and prior allegations in a separate California State lawsuit do not provide a basis for Counterdefendants to dismiss his counterclaim. In *Farhang v. Indian Institute of Technology*, the defendant argued that this Court should dismiss the plaintiff's trade secret claim for lack of standing based on purportedly inconsistent allegations in a prior pleading regarding ownership of the core technology. *Farhang v. Indian Institute of Technology*, No. C-08-02658, 2010 U.S. Dist. LEXIS 53975, *38-39 (N.D. Cal. June 1, 2010). In denying the defendant's motion to dismiss, this Court held that

> [P]laintiffs' claim of trade secret misappropriation is not limited to disclosure of the core technology and includes allegations that defendants misappropriated plaintiffs' business models and plans. Therefore, while the court finds these inconsistent allegations troubling, they do not provide a basis for dismissing plaintiffs' trade secret claim.

*Id*. Therefore, even inconsistent allegations in pleadings can be insufficient to dismiss a trade secret claim based on allegations of lack of ownership and hence standing, as the court must construe the allegations in the light most favorable to the non-moving party on a motion to dismiss. *Id*.

In the instant case, Abhyanker's allegations that he owns the trade secrets at issue in this lawsuit are not inconsistent with his allegations in a prior California State lawsuit. In his counterclaim, Abhyanker alleges and explains that there were two sets of technology, one related

1  to the LegalForce/Nextdoor technology and one related to the Fatdoor technology, and that the
2  two technologies were separate and distinct. (PACER #59 at ¶¶ 109-114, 166-168). Abhyanker
3  also explicitly alleges in his counterclaim that only the IP relating to the Fatdoor technology was
4  assigned to Fatdoor and eventually acquired by Google. Abhyanker never assigned his rights to
5  the LegalForce/Nextdoor technology to Fatdoor, and he retains ownership of this technology. *Id*.
6  Abhyanker's allegations explain and reconcile what Counterdefendants have wrongly interpreted
7  as inconsistencies. Because the Court is required to take the allegations pled in a counterclaim as
8  true and draw all reasonable inferences in favor of the non-moving party, the Court should accept
9  Abhyanker's pleaded allegations as true at this stage of the action and deny Counterdefendants'
10 Motion to Dismiss.
11     Moreover, Abhyanker's California State complaint is not inconsistent with the allegations
12 in this lawsuit. First, Abhyanker's California State complaint never identified—generally or
13 specifically—any trade secrets. It just used vague and amorphous phrases like the
14 "Nextdoor/Fatdoor concept." Therefore, there is no way to even compare what was being
15 referenced in the prior lawsuit to the what has been specifically identified as trade secrets in this
16 lawsuit.
17     Counterdefendants further mischaracterize Abhyanker's First Amended Complaint in the
18 California State case, which actually and specifically alleged that only "some" of this technology
19 was assigned; the actual FAC states: "The entire basis for Nextdoor.com, Inc.'s business rests on
20 these stolen and opportunistically misappropriated materials, *some of which are* now owned by
21 Google, Inc. through its acquisition of the Nextdoor/Fatdoor patent portfolio of Center'd
22 Corpration." *See* Abhyanker's First Amended Complaint, at ¶ 23 (emphasis added). Nowhere in
23 the California State Complaint does it say that the individual trade secret items listed in Paragraph
24 109 of Abhyanker's counterclaim in this lawsuit were assigned to or otherwise owned by Fatdoor
25 or Google. (PACER #59, ¶ 109). As such, Abhyanker's allegations in the prior California State
26 lawsuit and his allegations in the current counterclaim are not directly contradictory and are easily
27 reconciled by the explanation provided by Abhyanker in Paragraphs 109-114 and 166-168 in his
28 counterclaim. (PACER #59 at ¶¶ 109-114, 166-168).

Finally, it should not be necessary to point out that it would simply not make sense for Abhyanker to pursue a claim for trade secret misappropriation in the California State lawsuit if he did not own them.

Abhyanker thus respectfully submits that he has sufficiently pled that he has standing to pursue his claim for trade secret misappropriation by alleging his ownership of the trade secrets listed in Paragraph 109 of his counterclaim. Accordingly, Counterdefendants' Motion to Dismiss for lack of ownership and standing should be denied.

**B. Abhyanker's Trade Secrets Have Not Been Disclosed in the Patent Application**

Even if there is a published patent application or issued patent that relates to the same general subject matter of the trade secrets at issue, it is well-established that any information not disclosed in the patent may still be claimed as trade secrets. *Imax Corp. v. Cinema Tech., Inc.*, 152 F.3d 1161, 1163 (9th Cir. 1998); *Henry Hope X-Ray Prods., Inc. v. Marron Carrel, Inc.*, 674 F.2d 1336, 1342 (9th Cir. 1982) (where patented apparatus contained features that were not disclosed in patent, the undisclosed features qualified for protection as trade secrets). For example, in *Imax Corp. v. Cinema Tech.*, Imax owned several patents relating to "rolling loop" projector technology. *Imax*, 152 F.3d at 1163. Nevertheless, the Ninth Circuit explained that the "Imax patents did not disclose everything needed to mass-produce its 'rolling loop' projector. Therefore, there remained the possibility of trade secrets qualified for protection under state law." *Id*.

Contrary to Counterdefendants' assertion, Patent Application No. 11/603,442 does not publicly disclose Abhyanker's trade secrets at issue in this lawsuit. As a preliminary matter, Abhyanker has specifically pled in his counterclaim that Patent Application No. 11/603,442, as well as all other patent applications that he is listed as a lead inventor on, do not disclose the trade secrets at issue: "the patent applications do not disclose or reveal the trade secrets that form the basis for Abhyanker's trade secret misappropriation claim in the instant pleading." (PACER #59, at ¶¶ 119-120) When deciding a motion to dismiss, this Court is required to take all pleaded allegations as true and draw all reasonable inferences in favor of the non-moving party.

1   Accordingly, the Court should take Abhyanker's allegations that the trade secrets are not
2   disclosed in the patent application as true.
3         Notwithstanding that the Court is required to accept Abhyanker's allegations as true, it is
4   clear from both the face of Abhyanker's counterclaim and Patent Application No. 11/603,442 that
5   Abhyanker has pled and identified trade secrets that are not disclosed anywhere in the patent
6   application. In his counterclaim, Abhyanker identifies a long list of his trade secrets:

> In connection with his LegalForce and Nextdoor concept, Abhyanker developed and owned trade secret information, including, but not limited to, key product details, algorithms, business plans, security algorithms, database structures, user interface designs, software code, product concepts, prototypes, methods, works of authorship, trademarks, white papers, and instrumentalities, information and plans pertaining to, but not limited to, software that makes sure only people who live in a specific neighborhood are able to join its network—giving users a level of privacy that sites like Facebook don't, email lists of inventive neighbors around Cupertino, California, inventive neighbors in the Lorelei neighborhood of Menlo Park, a private social network activation in a geospatially constrained area when 10 neighbors sign up, geo-spatial database, neighborhood member activation through postal mail, public/private geo-location constrained member groups, neighborhood member address verification, sharing of bulletin and wall communications between neighborhood resident users only, customer lists, architecture, social networking, friend grouping, providing real time updates, neighborhood-level privacy controls, feed aggregation, spheres of influence, application technologies, filtering relevant feeds across multiple networks, filtering conversations, adding contextual relevancy to private messages and connections in a geospatially constrained area, and connections across interactions in neighboring communities, providing in depth conversations through a social graph, community governance, bidding history of the Nextdoor.com domain, the activation of the Lorelei neighborhood as a prime testing neighborhood for communication, neighborhood communication and geo-spatial social networking, and the use of the name Nextdoor.com in conjunction with a private social network for neighborhoods ("Abhyanker's LegalForce/Nextdoor Trade Secrets").

(PACER #59, at ¶¶ 109, 170) The only item from the list of trade secrets that is arguably disclosed in the patent application is the use of the name Nextdoor.com. However, even in the patent application, the disclosure of the use of the name Nextdoor.com was made in reference to

the placement of advertisements on a nextdoor.com website, not use of the name in connection with a private social network for neighborhoods. (PACER #59, ¶ 115) Nevertheless, even if the use of the Nextdoor.com name was disclosed, none of the other listed trade secrets were disclosed. For example, the patent application does not disclose business plans, software code, prototype concepts, the use of the Lorelei neighborhood for testing, privacy controls, and more. Basically, the patent application definitely does not disclose any of the other trade secrets other than the arguable disclosure of the use of the Nextdoor.com name. Notably, Counterdefendants not point to where the other listed trade secrets are disclosed in the patent application—because they can't.

In their Motion to Dismiss, Counterdefendants in effect admit that the patent application does not disclose all of the trade secrets being asserted by Abhyanker in this lawsuit, by arguing that the patent application disclosed the proposed use of Nextdoor as a trademark and the general, high-level idea of a social networking concept. Accordingly, because Monsoon's requested dismissal would not even result in the dismissal of the entirety of Abhyanker's trade secret misappropriation claim, it should be denied as improper.

**C. Abhyanker Sufficiently Identified his Trade Secrets for Purposes of a Pleading**

Abhyanker's allegations in his counterclaim identify his trade secrets with more than sufficient particularity for purposes of a pleading at this stage of the lawsuit. A plaintiff does not need to spell out the details of its trade secret in its complaint to avoid dismissal. *TMX Funding, Inc. v. Impero Technologies, Inc.*, No. C-10-00202, 2010 U.S. Dist. LEXIS 60260, *8-9 (N.D. Cal. June 17, 2010). Rather, a plaintiff only needs to describe the ***subject matter*** of the trade secret with sufficient particularity to separate to permit the defendant to ascertain the boundaries of the trade secret. *Id*.

In this regard, it is useful to look at some identifications of trade secrets that this Court and other California district courts have previously found sufficient for pleading purposes. In *TMX*, this Court found the following descriptions of trade secrets to be sufficient for a pleading: software, source code, data formulas, business methods and marketing plans, product information

1 | for cost, pricing, and margin data, customer lists, contact names for accounts, customer profiles,
2 | login and password information. *Id.* Likewise, in *KnowledgePlex*, this Court found the following
3 | description sufficient: "the code required to operate DataPlace and all of the design and
4 | development work of the project to create the code are protectable trade secrets."
5 | *KnowledgePlex, Inc. v. PlaceBase, Inc.*, No. C-08-4267, 2008 U.S. Dist. LEXIS 103915, *24
6 | (N.D. Cal. Dec. 17, 2008). In *Premiere Innovations*, the Court found the following description
7 | sufficient: "the Products' design, manufacture, pricing, and market opportunity." *Premiere*
8 | *Innovations, Inc. v. Iwas Industries, LLC*, No. 07-cv-1083, 2007 U.S. Dist. LEXIS, *10 (S.D. Cal.
9 | Sept. 28, 2007). And in *GiveMePower*, the Court found the following identification sufficiently
10 | particular: "Plaintiff's proprietary database of existing and prospective field technicians and
11 | business affiliates, Plaintiff's confidential contractor agreements, as well as confidential business
12 | plans and processes developed by Plaintiff for the BAM Project." *GiveMePower Corp. v. Pace*
13 | *Compumetrics, Inc.*, No. 07-cv-157, 2007 U.S. Dist. LEXIS 59371, *27-28 (S.D. Cal. Aug. 14,
14 | 2007).

In the instant case, Abhyanker has identified his trade secrets in Paragraph 109 of his counterclaim:

> In connection with his LegalForce and Nextdoor concept, Abhyanker developed and owned trade secret information, including, but not limited to, key product details, algorithms, business plans, security algorithms, database structures, user interface designs, software code, product concepts, prototypes, methods, works of authorship, trademarks, white papers, and instrumentalities, information and plans pertaining to, but not limited to, software that makes sure only people who live in a specific neighborhood are able to join its network—giving users a level of privacy that sites like Facebook don't, email lists of inventive neighbors around Cupertino, California, inventive neighbors in the Lorelei neighborhood of Menlo Park, a private social network activation in a geospatially constrained area when 10 neighbors sign up, geo-spatial database, neighborhood member activation through postal mail, public/private geo-location constrained member groups, neighborhood member address verification, sharing of bulletin and wall communications between neighborhood resident users only, customer lists, architecture, social networking, friend grouping, providing real time updates, neighborhood-level privacy controls, feed aggregation, spheres of

> influence, application technologies, filtering relevant feeds across multiple networks, filtering conversations, adding contextual relevancy to private messages and connections in a geospatially constrained area, and connections across interactions in neighboring communities, providing in depth conversations through a social graph, community governance, bidding history of the Nextdoor.com domain, the activation of the Lorelei neighborhood as a prime testing neighborhood for communication, neighborhood communication and geo-spatial social networking, and the use of the name Nextdoor.com in conjunction with a private social network for neighborhoods ("Abhyanker's LegalForce/Nextdoor Trade Secrets").

(PACER #59, at ¶¶ 109, 170). Clearly, Abhyanker's identification is not only as specific as the identifications found sufficient in the *TMX, KnowledgePlex, Premiere Innovations,* and *GiveMePower* cases, but much more specific. Abhyanker has identified items that are classically identified as trade secrets, such as algorithms, business plans, software code, financial bidding history data, as well as other very specific trade secrets such as his implementation plan to activate testing in a very specific and carefully chosen neighborhood. Abhyanker's allegations are more than sufficient to put Counterdefendants on notice of what they need to defend against at this stage. Any further details or particulars are appropriate for the discovery stage of this lawsuit, not the pleadings stage.

Abhyanker's counterclaim sufficiently identifies the trade secrets that Counterdefendants have misappropriated. The Motion to Dismiss on this ground must be denied.

### D. Abhyanker Sufficiently Alleged Counterdefendants' Misappropriation

In order to state a claim for misappropriation, a plaintiff must allege that the defendant either acquired, disclosed, or used the trade secret. Cal. Civil Code § 3426.1. In the instant case, Abhyanker has alleged that Monsoon disclosed Abhyanker's trade secrets without his consent even though Monsoon knew it was under a duty to maintain the confidentiality and secrecy of Abhyanker's trade secrets:

- Abhyanker disclosed his trade secrets to Sood and Monsoon pursuant to a writtent agreement requiring them to maintin the confidentiality of the trade secrets (PACER #59, ¶ 110)

- Sood/Monsoon impermissibly disclosed Abhyanker's trade secrets to Janakiraman and Nextdoor.com. (PACER #59, at ¶¶ 146-149, 175)
- Nextdoor.com's Nirav Tolia admits the misappropriation from Sood. (PACER #59, at ¶ 147)

As such, Abhyanker has clearly pled sufficient allegations regarding Monsoon's improper acquisition and use of his trade secrets.

Moreover, to the extent Monsoon takes issue with some of Abhyanker's allegations being made on information and belief, a plaintiff in a trade secret misappropriation case is permitted to plead on information and belief because the facts and knowledge regarding the misappropriation are within the exclusive knowledge and possession of the defendants. *Brocade Communications Systems, Inc. v. A10 Networks, Inc.*, No. 10-CV-03428, 2011 U.S. Dist. LEXIS 30227, *19-20 (N.D. Cal. Mar. 23, 2011) (denying motion to dismiss trade secret misappropriation claim due to allegations made on information and belief because "pleading in this manner is acceptable for information that is not presumptively in the knowledge of the pleading party"). Otherwise, defendants would be able to get away with trade secret misappropriation simply by keeping their wrongful conduct to themselves. *Id*; *see also KnowledgePlex, Inc. v. PlaceBase, Inc.*, No. C-08-4267, 2008 U.S. Dist. LEXIS 103915, *25-26 (N.D. Cal. Dec. 17, 2008) ("Given that Plaintiff has not yet had the benefit of discovery, and in light of the liberal pleading standard of Rule 8(a), the Court concludes that Plaintiff adequately has alleged misappropriation of a trade secret.")

### E. Abhyanker Has Adequately Alleged the Element of Damages

Abhyanker has specifically alleged that he has been and will continue to be damaged by the misappropriation of his trade secrets. (PACER #59, at ¶ 175) As with the other Counterdefendants, Sood and Monsoon repeat the argument that Abhyanker has not been damaged because Abhyanker does not own the trade secrets at issue. However, as discussed in detail above, Abhyanker does own the trade secrets at issue. Counterdefendants are thus merely repackaging their argument over standing into one over damages. Interestingly, this argument implicitly admits that, if Abhyanker owns the trade secrets at issue, he has also adequately alleged

the element of damages.

It is beyond doubt that, by virtue of Counterdefendants' misappropriation of Abhyanker's trade secrets, Abhyanker has been damaged: (i) the misappropriation prevented him from acquiring the nextdoor.com domain name and launching his Nextdoor concept (PACER #59, at ¶¶ 118, 136), and (ii) the misappropriation deprived him of his ability to profit from the trade secrets and/or obtain a proper ownership interest in, or financial benefit from, Nextdoor.com's use of his trade secrets.

### F. At a Minimum, Abhyanker Should Be Given Leave to Amend

While Abhyanker believes that he has adequately pled his counterclaim for trade secret misappropriation and his affirmative defenses, should the Court disagree and grant Counterdefendants' Motion to Dismiss, Abhyanker should be given leave to amend his counterclaim and affirmative defenses. In this regard, Rule 15(a) of the Federal Rules of Civil Procedure severely restricts a court's discretion to dismiss without providing leave to amend at least once. Fed. R. Civ. P. 15(a). Furthermore, in order to dismiss without leave to amend, the court would have to find that the counterclaim and affirmative defenses cannot be cured by the allegation of different facts. *Nakamoto v. Lockheed Martin Corp.*, 2010 U.S. Dist. LEXIS 56500, at *11 (N.D. Cal. 2010) ("Leave to amend must be granted unless it is clear that the complaint's deficiencies cannot be cured by amendment."; *Lucas v. Department of Corrections*, 66 F.3d 245, 248 (9th Cir. 1995). In addition, Abhyanker notes that, although Counterdefendants are requesting dismissal with prejudice, they have conspicuously failed to argue that there are no sets of facts that Abhyanker could allege to correct the deficiencies such that amendment would be futile. Accordingly, should Counterdefendants' Motion to Dismiss be granted, Abhyanker respectfully requests leave to amend.

## V. CONCLUSION

For all the foregoing reasons, Abhyanker respectfully requests that the Court dismiss Counterdefendants' Motion to Dismiss.

Dated: May 9, 2013

Respectfully submitted,

LEGALFORCE RAJ ABHYANKER, P.C.

By _____
Bruno W. Tarabichi
Roy Montgomery
Kuscha Hatami
Attorneys for Defendant
Raj Abhyanker