LAURENCE F. PULGRAM (CSB No. 115163)
lpulgram@fenwick.com
JENNIFER L. KELLY (CSB No. 193416)
jkelly@fenwick.com
CLIFFORD C. WEBB (CSB NO. 260885)
cwebb@fenwick.com
FENWICK & WEST LLP
555 California Street
San Francisco, CA  94104
Telephone:     415.875.2300
Facsimile:      415.281.1350

Attorneys for Plaintiff and Counterdefendant
NEXTDOOR.COM, INC. and Counterdefendant
PRAKASH JANAKIRAMAN

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NEXTDOOR.COM, INC., a Delaware corporation,<br><br>          Plaintiff,<br><br>    v.<br><br>RAJ ABHYANKER, an individual,<br><br>          Defendant. | Case No.: 3:12-cv-05667-EMC<br><br>**NEXTDOOR.COM, INC. AND PRAKASH JANAKIRAMAN'S OPPOSITION TO ABHYANKER'S MOTION TO DISQUALIFY**<br><br>Date:      June 6, 2013<br>Time:     1:30 p.m.<br>Judge:   Honorable Edward M. Chen |
| RAJ ABHYANKER, an individual,<br><br>          Counterclaimant,<br><br>    v.<br><br>NEXTDOOR.COM, INC., a Delaware corporation; PRAKASH JANAKIRAMAN, an individual; BENCHMARK CAPITAL PARTNERS, L.P., a Delaware limited partnership; BENCHMARK CAPITAL MANAGEMENT CO. LLC, a Delaware limited liability company; SANDEEP SOOD, an individual; MONSOON ENTERPRISES, INC., a California corporation, and DOES 1-50, inclusive,<br><br>          Counterdefendants. | |

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION AND SUMMARY ...................................................................... 1

FACTUAL BACKGROUND ................................................................................. 3

    A.    Abhyanker's State Court Action against Nextdoor.com and its Founders. ........................................................................................ 3

    B.    Abhyanker's Agreement to Waive Any Conflict Based on Fenwick's Ethical Screen. ................................................................... 4

    C.    Abhyanker's First Attempt to Renege on His Consent. ......................... 6

    D.    Abhyanker Shifts His Trade Secret Claims to the Trademark Trial and Appeal Board. ................................................................ 7

    E.    Nextdoor.com Brings the Issue of the NEXTDOOR Name to Federal Court. .................................................................................. 9

    F.    Abhyanker's Second Attempt to Renege on his Consent. ..................... 9

ARGUMENT ..................................................................................................... 11

I.    ABHYANKER WAIVED ANY CONFLICT FROM FENWICK'S REPRESENTATION OF NEXTDOOR.COM. ................................................. 12

    A.    Abhyanker's Waiver Was Not Limited to the State Court Action. ....... 13

II.    ABHYANKER'S 18-MONTH DELAY IN BRINGING THIS MOTION FURTHER PRECLUDES DISQUALIFICATION. ............................................ 15

    A.    The Length of Delay Supports Waiver. ............................................... 16

    B.    Abhyanker Has Been Represented By Counsel Throughout His Litigation Against Nextdoor.com. ...................................................... 16

    C.    Abhyanker Offers No Valid Explanation for his 18-Month Delay. ...... 16

    D.    Disqualification of Fenwick Would Significantly Prejudice Nextdoor.com and Janakiraman. ....................................................... 19

III.    THIS CASE IS NOT SUBSTANTIALLY RELATED TO FENWICK'S PREVIOUS REPRESENTATION OF LEGALFORCE. ................................... 19

IV.    EVEN WERE THERE A CONFLICT, DISQUALIFICTION IS NOT WARRANTED HERE. ..................................................................................... 23

CONCLUSION ................................................................................................... 25

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page(s)</u>

3

CASES

4

*B&B Hardware, Inc. v. Hargis Industries, Inc.*,
   __ F.3d __ , Civ. Nos. 10-3137, 11-1247, 2013 WL 1810614 (8th Cir. May 1, 2013) ........... 9

5

*City & Cnty. of San Francisco v. Cobra Solutions, Inc.*,
   38 Cal. 4th 839 (2006) .................................................................................................... 11

6

7

*Concat LP v. Unilever, PLC*,
   350 F. Supp. 2d 796 (N.D. Cal. 2004) .......................................................................... 11, 19

8

*Employers Ins. of Wausau v. Seeno Constr. Corp.*,
   692 F. Supp. 1150 (N.D. Cal. 1988) ............................................................................ 15, 16

9

10

*Favila v. Katten Muchin Rosenman LLP*,
   188 Cal. App. 4th 189 (2010) .............................................................................................. 20

11

12

*Forrest v. Baeza*,
   58 Cal. App. 4th 65 (1997) ................................................................................................... 12

13

*Fremont Indemnity Co. v. Fremont General Corp.*,
   143 Cal. App. 4th 50 (2006) ........................................................................................... 20, 23

14

15

*Gregori v. Bank of Am.*,
   207 Cal. App. 3d 291 (1989) ................................................................................................ 11

16

*H.F. Ahmanson & Co. v. Salomon Brothers, Inc.*,
   229 Cal. App. 3d 1445 (1991) ......................................................................................... 13, 20

17

18

*In re Charlisse C.*,
   45 Cal. 4th 145 (2008) .................................................................................................... 20, 23

19

*In re Cnty. of Los Angeles*,
   223 F.3d 990 (9th Cir. 2000) ............................................................................................... 11

20

21

*In re Marvel*,
   251 B.R. 869 (N.D. Cal. 2000) ............................................................................................. 11

22

*Kelly v. Roker*,
   No. C 11-05822, 2012 U.S. DIST. LEXIS 33604 (N.D. Cal. 2012)..................................... 13

23

24

*Kirk Corp. v. First American Title Co.*,
   220 Cal. App. 3d 785 (1990) .......................................................................................... 20, 23

25

*Kirk v. First American Title Ins. Co.*,
   183 Cal. App. 4th 776 (2010) ........................................................................................... 2, 24

26

27

*Liberty Nat'l Enters., L.P. v. Chicago Title Ins. Co.*,
   194 Cal. App. 4th 839 (2011) .............................................................................................. 11

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*Openwave Systems v. Myriad France S.A.S.*,
   No. C 10-02805, 2011 U.S. Dist. LEXIS 35526 (N.D. Cal. Mar. 31. 2011) ................... 15, 16

*Skyy Spirits, LLC v. Rubyy, LLC.*,
   No. C 09-00646, 2009 WL 3762418, at *5 (N.D. Cal. Nov. 9, 2009) .............................. 15, 16

*Tauriac v. Rosas*,
   No. Civ. 2:10-47, 2011 U.S. Dist. LEXIS 72715 (E.D. Cal. July 6, 2011) ........................... 11

*The Oaks Mgmt. Corp. v. Sup. Ct.*,
   145 Cal. App. 4th 453 (2006) .......................................................................................... 12

*Trone v. Smith*,
   621 F.2d 994 (9th Cir. 1980)............................................................................................ 11

*Trust Corp. of Montana v. Piper Aircraft Corp.*,
   701 F.2d 85 (9th Cir. 1983)......................................................................................... 15, 16

*United States v. Schafer*,
   No. CR.S-05-00238 FCD, 2006 U.S. Dist. LEXIS 82631 (E.D. Cal. Nov. 12, 2006) .......... 11

*Visa USA, Inc. v. First Data Corp.*,
   241 F. Supp. 2d 1100 (N.D. Cal. 2003) ............................................................................. 11

*Zador Corp. v. Kwan*,
   31 Cal. App. 4th 1285 (1995) .......................................................................................... 13

**STATUTES**

Civil L.R. 11-4 .................................................................................................................... 11

**OTHER AUTHORITIES**

Fed. R. Civ. P. 11 ............................................................................................................... 17

Fed. R. Civ. P. 26 ............................................................................................................... 10

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1

## INTRODUCTION AND SUMMARY

2        For every minute of the last 18 months, Counterdefendant Raj Abhyanker ("Abhyanker")

3    has been litigating claims against Plaintiff and Counterdefendant Nextdoor.com, Inc.

4    ("Nextdoor.com" or the "Company") alleging misappropriation of the name "Nextdoor" and

5    other purported trade secrets.  For the whole of this time, Fenwick & West LLP ("Fenwick &

6    West" or "Fenwick") has been Nextdoor.com's litigation counsel.  But at no point until now, in

7    any of the overlapping proceedings in which Abhyanker has been adverse to Nextdoor.com (with

8    Fenwick & West as counsel), has Abhyanker sought to disqualify Fenwick from this

9    representation.  To the contrary, some 18 months ago, on November 21, 2011, Abhyanker's

10   counsel agreed in writing to waive any potential conflict that could arise due to Fenwick's

11   corporate representation of a long defunct company (LegalForce, Inc.), provided that Fenwick (in

12   an excess of caution) erected a consensual ethical screen to segregate the corporate lawyers who

13   worked on that representation.  That screen was set up, documented in writing, and followed.

14   Nextdoor.com proceeded to invest for a year and a half in representation by Fenwick as its

15   counsel.

16       Remarkably, Abhyanker's Motion to Disqualify ("Motion") does not provide the Court

17   with his prior written consent to Fenwick's representation.  Instead, in a tactic that lacks merit as

18   much as it lacks candor, Abhyanker is trying to renege on his earlier consent in an attempt to

19   deprive his adversaries of their investment in their counsel of choice.  He has absolutely no right

20   to do so.  He long ago agreed to waive any conflict, with full knowledge of Fenwick's

21   representation of LegalForce.  *See* Part I, *infra.*

22       But even if Abhyanker could back out of his waiver, disqualification would still not be

23   proper in this case for three additional reasons.  *First*, Abhyanker has unduly delayed in bringing

24   his Motion.  Possessed of all the relevant facts, at any point during the last 18 months (including

25   the six months since this action was filed in November 2012) Abhyanker could have sought to

26   disqualify Fenwick.  He chose not to, instead allowing Nextdoor.com and its co-founder, Prakash

27   Janakiraman ("Janakiraman"), to continue investing in Fenwick's representation.  Abhyanker

28   offers no reason for this delay other than being told—seven months ago—that a contractor of

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

LegalForce in 2006-2007 responded to a "friends and family" survey seeking to assess consumer interest in Nextdoor.com during 2010.  But Abhyanker's invocation of this irrelevant fact is transparent; it provides not even a veneer of justification for his current tactic.  *See* Part II, *infra*.

*Second*, regardless of any delay or waiver, there is no conflict here in the first place. Fenwick has never represented Abhyanker.  Its representation of LegalForce, which ended five years ago, was limited to incorporating the entity, related corporate and financing advice, and preparing basic form agreements for LegalForce to use in its business, a business that is strikingly different from that of Nextdoor.com.  Fenwick did not advise regarding the alleged trade secrets asserted here; receive any information about them; or work with Counterdefendant Sandeep Sood ("Sood"), the technical contractor to LegalForce, to craft any confidentiality agreements related to the supposed trade secrets.  It is Abhyanker's burden to establish this conflict, and he has failed to do so despite having full possession of Fenwick's case file since 2008.  *See* Part III, *infra*.

*Third*, even if there were any non-waived conflict, it could not justify disqualification here.  The Fenwick litigators representing Nextdoor.com have never represented LegalForce or Abhyanker.  The remaining corporate lawyers—who worked for LegalForce a total of only four hours on its projects—and all who knew Abhyanker socially, were screened off per Abhyanker's request 18 months ago.  As Abhyanker's counsel previously agreed, that screen adequately protected the confidentiality of any LegalForce information still in Fenwick's possession.  The screen was sufficient to protect Abhyanker's interest when he agreed to it, and it remains so today.  Courts now accept that such screens may be sufficient to bar vicarious disqualification of an entire law firm.  *See Kirk v. First American Title Ins. Co.*, 183 Cal. App. 4th 776, 810 (2010). While Abhyanker has no risk of prejudice from Fenwick's continuing role, Nextdoor.com would be severely prejudiced by the loss of its counsel at this stage.  *See* Part IV, *infra*.

For all these reasons, Abhyanker's Motion is meritless and should be denied.

**FACTUAL BACKGROUND**

A.      **Abhyanker's State Court Action against Nextdoor.com and its Founders.**

When Nextdoor.com launched its service in October 2011, Abhyanker initially congratulated its founders and suggested that he wanted to join forces. Dkt. 64 (Request for Judicial Notice ("RJN")) Ex. 3 ¶ 55.[1] But within weeks, Abhyanker changed his tune and began his litigation campaign against the Company and its founders, filing a complaint in Santa Clara Superior Court on November 10, 2011. *See id*. Ex. 2 ("Complaint") filed in *Abhyanker v. Benchmark Capital Partners VII, L.P.*, No. 1-11-cv-212924 (the "State Court Action").

As with the present action, and indeed all of Abhyanker's litigation against Nextdoor.com, the State Court Action alleged that Nextdoor.com (along with its co-founders and Benchmark Capital) misappropriated Abhyanker's purported trade secrets related to a neighborhood social network to be named "Nextdoor." *See, e.g., id*. ¶¶ 3, 8, 16. In that action, Abhyanker generally referred to this as the "Nextdoor/Fatdoor" concept, explaining that he created the Fatdoor, Inc. entity to pursue that idea. RJN Ex. 3 (First Amended Complaint) ¶¶ 3, 21, 84-85, 94. In his effort to disqualify Fenwick, however, Abhyanker now argues that the trade secrets allegedly taken were buried somewhere deep within LegalForce, a legal advice business that is strikingly dissimilar to the Nextdoor.com community social model. As in the present action, the State Court Complaint alleged that Fatdoor, Inc. disclosed this Nextdoor/Fatdoor concept, including the "Nextdoor" name, to Benchmark Capital in an effort to obtain funding, and that Benchmark Capital then wrongfully disclosed it to Nextdoor.com or its founders. *Id*. ¶¶ 32, 61, 76, 155, 175. From the outset, Nextdoor.com and Benchmark vigorously disputed these claims.[2]

---

[1] To avoid additional filings with the Court, citations to the RJN are to the Request for Judicial Notice previously filed in support of Nextdoor.com and Janakiraman's Motion to Dismiss.

[2] Abhyanker's Complaint was premised on a demonstrably false conspiracy theory. It alleged that a company named "Nextdoor.com" had been incorporated in the fall of 2007 so that Benchmark could steal an idea presented to it by Fatdoor, Inc., cause Fatdoor to fire Abhyanker as its CEO, and then develop and launch the Nextdoor.com website four years later. In fact, as Abhyanker's later pleadings acknowledge, there was no company named "Nextdoor.com" formed in 2007. Only in February 2011 did the company previously operating as "Fanbase, Inc." pivot its business (and its name) to pursue neighborhood social networking instead. RJN Ex. 3, ¶ 5. Undeterred, Abhyanker has repeatedly morphed his allegation of the conspiracy against him in an effort to claim some share of Nextdoor.com.

Fenwick & West LLP
Attorneys at Law
San Francisco

Within five days of this lawsuit being filed, Fenwick & West litigation partner Laurence Pulgram, as counsel for Nextdoor.com, contacted Abhyanker's counsel to discuss the lawsuit. *See* Declaration of Tyler A. Baker in Support of Nextdoor.com, Inc. and Prakash Janakiraman's Opposition to Abhyanker's Motion to Disqualify Plaintiff's Counsel ("Baker Decl.") ¶ 2.  During that initial conversation, counsel for Abhyanker asked Mr. Pulgram to investigate whether Fenwick had any conflict of interest in representing Nextdoor.com due to Fenwick's three-years-prior representation of LegalForce, Inc., a now defunct business with which Abhyanker was previously involved.  *Id*.  Mr. Pulgram responded the next day that there was no conflict given that the two representations were completely unrelated.  *Id*. at ¶ 3; Ex. 1.

## B. Abhyanker's Agreement to Waive Any Conflict Based on Fenwick's Ethical Screen.

Abhyanker's counsel responded to Mr. Pulgram by letter on November 16, 2011 contending that a conflict did exist.  *Id*. Ex. 2.  As the source of the conflict, Abhyanker's counsel pointed primarily to a friendship Abhyanker had with Fenwick partner Rajiv Patel and discussions Abhyanker allegedly had with Mr. Patel and others at a dinner party at Mr. Patel's home—not Fenwick's representation of LegalForce on unrelated corporate matters.  *Id*. Counsel's letter did, however, confirm that Fenwick did not represent Abhyanker personally with respect to the "Nextdoor/Fatdoor" concept, and that a different firm did so.  *Id*. at 1-2.

The next day, on November 17, 2011, Tyler Baker, as General Counsel for Fenwick & West, responded.  He explained that Fenwick had investigated its prior representation of LegalForce (which had ended at least three years earlier) and Mr. Patel's relationship with Abhyanker, and that no conflict existed.  *Id*. Ex. 3.  As to any discussions that Abhyanker may have had with Mr. Patel about Fatdoor, Inc. (which Abhyanker was asserting owned the trade secrets), Mr. Baker explained that they took place in a purely social setting (a dinner party), attended by lawyers and non-lawyers alike, and outside the context of a confidential attorney-client relationship.  *Id*. at 2-3.  Mr. Patel was not Abhyanker's personal lawyer.  *Id*.  Nonetheless, in an effort to resolve the issue without further litigation, Mr. Baker offered to erect a consensual ethical wall at Fenwick that sequestered Mr. Patel and any legal personnel that ever worked on

1   LegalForce matters from the firm's representation of Nextdoor in any litigation against

2   Abhyanker.  *Id*. at 3.

3          The next day, on November 18, 2011, Abhyanker's counsel responded, agreeing in

4   principle to waive any potential conflict that might exist after "consider[ing] the intricacies of

5   [the] situation."  *Id*. Ex. 4.  Abhyanker's counsel explained that "*although we will not seek the*

6   *assistance of the Court to prevent Fenwick from representing Nextdoor in this litigation*, we do

7   believe that concrete steps must be taken to safeguard the confidential information supplied by

8   Mr. Abhyanker to Fenwick partners over the course of the past five years, either in his personal or

9   professional capacity."  *Id*. at 1 (emphasis added).  That letter went on to request that "Fenwick

10  supply us with a signed assurance by Mr. Patel and any attorney who worked on the Legalforce

11  matter that makes it clear that any and all confidential and/or privileged information that Fenwick

12  possesses will not be used against us in the current litigation and proper steps will be taken to

13  safeguard this information against misuse."  *Id*. at 2.

14         Mr. Baker accepted this proposal the next business day.  On November 21, 2011, he

15  provided Abhyanker's counsel with draft language for the undertaking requested.  *Id*. Ex. 5.  Mr.

16  Baker asked for any suggested changes, explaining that he would have the undertaking executed

17  as soon as Abhyanker agreed on final language.  *Id*.  The following day, Abhyanker's counsel

18  responded by email that the "proposed language is fine."  *Id*.  Mr. Baker responded that the

19  ethical screen was already set up, and that he would provide a signed copy of the undertaking

20  after the Thanksgiving holiday.  *Id*.  Abhyanker's counsel responded:  "Sounds good.  Happy

21  Thanksgiving!"  *Id*.  Remarkably, Abhyanker's Motion does not attach any of this

22  correspondence.

23         On November 30, 2011, Mr. Baker provided the promised signed undertaking to

24  Abhyanker's counsel.  *Id*. Ex. 6.  That undertaking went beyond Abhyanker's requests, screening

25  not only Mr. Patel, plus any Fenwick attorneys that worked on matters for LegalForce, but also

26  any attorneys that attended social functions with Abhyanker at Mr. Patel's house.  *Id*. ¶ 8.  During

27  the following week, Fenwick received no objection to this undertaking and continued working on

28  the case under the ethical screen that it had previously implemented.  The screen remains in place

Fenwick & West LLP
Attorneys at Law
San Francisco

today.  *Id.*  It prohibits the screened attorneys from sharing any information with the litigation

team and electronically locks them out of files related to the litigation.  *Id.* ¶ 8; Ex. 7.

### C.    Abhyanker's First Attempt to Renege on His Consent.

For reasons unknown to Fenwick, shortly thereafter Abhyanker made his first attempt to

back out of his written waiver.  On December 7, 2011, Abhyanker's counsel sent Mr. Baker a

letter claiming to have discovered "new facts that make it clear to us that Fenwick has an ethical

obligation to withdraw from representing Nextdoor.com, Inc."  *Id.* Ex. 8.  That letter, however,

did not identify any relevant new facts.  Instead, it identified unrelated discussions that

Abhyanker claims to have had with Mr. Patel about potentially taking over representation of some

of Abhyanker's clients from his legal practice, and the fact that patent applications Abhyanker

prosecuted without Fenwick for Fatdoor, Inc. were later acquired by Google, a Fenwick client.[3]

*Id.* at 1-2.  That letter then went on to threaten that "[i]f Fenwick refuses to withdraw, we may

seek the assistance of the Court to do the same."  *Id.* at 2.

Mr. Baker responded on December 12, 2011, explaining that nothing identified in the

letter amounted to any conflict that could warrant Fenwick's withdrawal, and further noted that

even if it could, Abhyanker had, with complete knowledge of Fenwick's representation, entered

into an agreement waiving any conflict subject to the creation of an ethical screen.  *Id.* Ex. 9.

Abhyanker's counsel responded on December 14, 2011, again raising the same issues identified

in his December 7, 2011 letter, asserting that Mr. Patel might become a witness, and complaining

further that Fenwick's November 30th undertaking promised to sequester "any" confidential

information of Abhyanker, not "any and all" confidential information.  *Id.* Ex. 10.  Mr. Baker

responded on December 19, 2011, explaining that Fenwick was not "playing games with words"

---

[3] These appear to be the same patent applications that Abhyanker's First Amended Counterclaim
in this action stridently claims have *no* relationship to the trade secret misappropriation claim he
purports to be asserting in this action.  Dkt 59 ("First Amended Counterclaim" or "FACC") ¶ 114
("[t]o provide equity to Fatdoor, Inc. investors, trade secrets related to Fatdoor were assigned,
including more than hundreds of pages of documents that became the basis for more than 46
patent applications assigned by Abhyanker, the lead inventor, to Fatdoor, Inc.  Each and all of
these 46 patent application covered the public 'wiki' based Fatdoor commenting tool only, and
did not relate to the private social network of LegalForce or Nextdoor developed by Sood for
Abhyanker and LegalForce, or the code base for the original Nextdoor concept").

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

in committing to protect "any" of Abhyanker's confidential information with an ethical screen. *Id.* Ex. 11 at 2. A lawyer's potential status as a witness—even if true—did not require disqualification. *Id.* And that the entire LegalForce team was sequestered, and no information was shared. *Id.* Still Mr. Baker went further and offered Abhyanker's counsel an additional opportunity to rewrite the language of the undertaking. *Id.* Fenwick did not, as Abhaynker's Motion contends, "refuse[] to change it." Dkt. 70 ("Motion") at 9.

Abhyanker's counsel did not respond to that offer. Instead, in separate letters sent on December 29, 2011 and January 6, 2012, he reiterated the same bases identified in his previous letters for a purported conflict, and claimed, despite the unambiguous record, that he had never agreed to any conflict waiver and ethical screen on behalf of Abhyanker. *Id.* Exs. 12, 13. On January 10, 2012, Mr. Baker responded refuting Abhyanker's claim. *Id.* Ex. 14.

Later that same day, Nextdoor.com, Janakiraman, and Benchmark Capital filed demurrers in the State Court Action. Among other things, they challenged Abhyanker's lack of standing to pursue his trade secret misappropriation claims, based on his admission that Fatdoor, Inc., not himself, had owned the trade secrets at issue, and had, years after being refused funding by Benchmark, sold all of its assets to Google, Inc. At no point throughout this time—or, indeed, until the filing of the present counterclaims in 2013—did Abhyanker ever argue, to any Court or to Fenwick, that he believed that Fenwick's former client LegalForce had any ownership in the purported trade secrets, much less that Fenwick had had any role respecting their protection.

### D.   Abhyanker Shifts His Trade Secret Claims to the Trademark Trial and Appeal Board.

On January 20, 2012, with the demurrers pending in the State Court Action, Abhyanker opened a second front in his dispute with Nextdoor.com. He filed a Notice of Opposition to Nextdoor.com's application to register the NEXTDOOR mark with the Trademark Trial and Appeal Board ("TTAB"), an application that Fenwick, as Nextdoor's counsel, had filed on February 8, 2011. RJN Ex. 4 ("First Opposition"). In this First Opposition, Abhyanker claimed, *inter alia*, that the mark was invalid due to Abhyanker's prior rights in the term "Nextdoor." He referred to his own trademark application for "NEXTDOOR" filed on December 28, 2011, three

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

months after Nextdoor.com's launch of its website.  *Id.* ¶¶ 9, 15-16.  As with the State Court

Action (and this action), the First Opposition claimed theft of trade secrets, alleging that

Nextdoor.com

> ***misappropriated and stole trade secrets owned by Opposer
> relating to the NEXTDOOR mark and Nextdoor/Fatdoor concept***
> including, but not limited to, a wide variety of geo-spacial database,
> architecture, social networking, friend grouping, providing real time
> updates, feed aggregation, spheres of influence, application
> technologies associated with aggregate, filtering relevant feeds
> across multiple networks, filtering conversations across cross group
> interactions, providing in depth conversations through a social
> graph, editable user pages, community governance, neighborhood
> communication and geo-spacial social networking and the use of
> the name Nextdoor.com in association with the Nextdoor/Fatdoor
> concept all through false and misleading representations and
> omissions of material facts concerning Benchmark Capital Partners
> VII, L.P.'s and Benchmark Management Co. VII LLC's
> (collectively referred to as "Benchmark") obligations, intentions,
> financial affairs, business operations, and prospects.

*Id.* ¶ 7(emphasis added); *see also id.* ¶¶ 25-32 (making similar allegations).

On February 9, 2012, Abhyanker filed a separate Notice of Opposition against

Nextdoor.com's application to register NEXTDOOR.  RJN Ex. 6 ("the Second Opposition").

This Opposition claimed the application was invalid because it was confusingly similar to

Abhyanker's trademark application for the phrase FATDOOR GET TO KNOW YOUR

NEIGHBORS—an application Abhyanker had filed the day before submitting the Second

Opposition.  ("Second Opposition").  Meanwhile, Abhyanker abruptly dismissed the State Court

Action on March 26, 2012, before any ruling on the demurrers.  RJN Ex. 5.

Fenwick & West continued as counsel for Nextdoor.com in responding to both the First

and Second Oppositions at the TTAB.  At Nextdoor.com's expense, it engaged in significant

litigation and communication with counsel for Abhyanker—including answering the Oppositions;

moving to dismiss his Second Opposition as duplicative; responding to a motion to strike

Nextdoor.com's affirmative defenses to his Opposition; case management and scheduling; and

settlement discussions.  Baker Decl. Exs. 18-19.  At no point in those proceedings did Abhyanker

object to Fenwick's participation or move to disqualify it from representing Nextdoor.com.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

E.      **Nextdoor.com Brings the Issue of the NEXTDOOR Name to Federal Court.**

On November 5, 2012, Nextdoor.com instituted the present action against Abhyanker, again with Fenwick & West as its counsel.  Because a TTAB decision generally will not provide *res judicata* effect, Nextdoor.com filed a Declaratory Judgment Complaint to resolve fully and finally its ownership of the NEXTDOOR mark as against Abhyanker's allegations in the TTAB and the State Court Action.  *See* Dkt. 1 ("DJ Complaint").[4]

For over two months more, counsel for Abhyanker dealt with Fenwick & West in this action without objection.  For instance, on November 27, 2012, Abhyanker's counsel Kuscha Hatami entered into a stipulation with Fenwick partner Jennifer Kelly extending Abhyanker's time to respond to the DJ Complaint for over a month until January 10, 2013.  Dkt. 10.  On January 10, 2013, pursuant to that stipulation, Abhyanker responded with an Answer and Counterclaim, which partially recycled and partially recharacterized his previously dismissed claims for trade secret misappropriation in the State Court Action.  Dkt. 16 ("Counterclaim").

F.      **Abhyanker's Second Attempt to Renege on his Consent.**

On the same day he filed his counterclaim, Abhyanker attempted, for a second time, to renege on his consent to Fenwick's representation.  For the first time in a year of continuous litigation over entitlement to use the NEXTDOOR mark, on January 10, 2013, Abhyanker personally emailed Mr. Baker protesting Fenwick's representation of Nextdoor.com.  Baker Decl. Ex. 15.  Abhyanker copied on his email an attorney named Ellen Pansky, claiming she was his ethics counsel "certified by the State Bar of California Board of Legal Specialization in the area of Legal Malpractice Law," and citing her as providing authority for his position.  *Id.*

Mr. Baker responded on January 23, 2013 explaining, yet again, that there was no conflict. *Id.* Ex. 16. He noted that Abhyanker had definitively waived any objection when his counsel

---

[4] *See*, *e.g. B&B Hardware, Inc. v. Hargis Industries, Inc.*, __ F.3d __ , Civ. Nos. 10-3137, 11-1247, 2013 WL 1810614, at *5 (8th Cir. May 1, 2013) (TTAB decision denied preclusive effect). Abhyanker's assertion that he had "begun to experience success in the [TTAB] Opposition Proceeding" (Motion at 10) misstates the facts.  The TTAB matter never got past the pleadings. *See* Baker Decl. Exs. 18, 19. Abhyanker was required to consolidate his two Oppositions into just one, and Nextdoor.com was required to add additional factual allegations to support its affirmative defenses.  Once this action was filed, Abhyanker consented to staying the TTAB proceedings pending resolution of this action.  RJN Ex. 8.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    agreed in writing that a screen would be adequate to protect his interests—a fact Abhyanker's

2    email (like this Motion) studiously ignored.  Mr. Baker also explained that the only "new" facts

3    alleged by Abhyanker's email—that Sood allegedly attended meetings with Fenwick in 2006, and

4    allegedly disclosed trade secrets to Nextdoor.com in 2010—was irrelevant, given that the alleged

5    misappropriation was four years after any such meetings, after LegalForce had dissolved, and

6    long after Fenwick's assistance with LegalForce's corporate formation had ended.  *Id*. Ex. 16.[5]

7    Finally, Mr. Baker pointed out that, having sat on the conflict for over a year, Abhyanker's

8    assertion of a conflict was also untimely and that "[a]s your ethics counsel can confirm, courts

9    routinely deny motions to disqualify when the moving parties have delayed asserting the conflict

10   even for shorter periods than involved here."  *Id.* at 2.

11           Abhyanker responded, not by asserting that his counsel's written waiver a year earlier was

12   inapplicable to the dispute in federal court, but rather that "I never waived any conflicts."  *Id.* Ex.

13   17.  For her part, Ms. Pansky immediately disassociated herself with Abhyanker.  She wrote:  "I

14   am not counsel to anyone in this matter.  Please refrain from copying me."  *Id*.

15           Abhyanker again did nothing to enforce his purported rights, but continued to litigate

16   actively against Fenwick & West over the next three months.  He refused to stipulate to

17   synchronize Counterdefendants' dates for responses to the counterclaims, requiring Fenwick to

18   file an administrative request that the Court granted.  Dkts. 17, 24.  He sat by as Fenwick

19   prepared a motion to dismiss his counterclaims on behalf of Nextdoor.com and Janakiraman, with

20   extensive supporting requests for judicial notice.  Dkts. 38, 43, 44.  Before those motions could be

21   heard, he filed First Amended Counterclaims (Dkt. 59) requiring Fenwick to prepare new motions

22   to dismiss for Nextdoor.com and Janakiraman.  Dkt. 63-65.  Fenwick also engaged in the Rule

23

24   ───────────────

[5] As purported proof of the alleged conflict, Abhyanker's January 10, 2013 email offered to

25   deliver to Fenwick a purportedly "consented audio recording" he made of a conversation with
     Sood in December 2012.  *Id.* Ex. 15 (asserting that in recording, Sood had "admitted" "divulging

26   key trade secrets").  Despite Mr. Baker's taking him up on his offer to deliver that recording (*id.*
     Ex. 16), Abhyanker has not provided it to Fenwick or the Court.  Mr. Sood flatly denies, under

27   oath, that he ever consented to such a recording, divulged any secrets, or "admitted" doing so.
     Declaration of Sandeep Sood in Support of Nextdoor.com and Janakiraman's Opposition to

28   Abhyanker's Motion to Disqualify ("Sood Decl.") ¶ 6.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

26(f) conference on behalf of its clients, and thereafter served initial discovery requests on April 24, 2013.  *See* Dkt. 75 at 7.

During this time, Abhyanker did not say another word about potential disqualification—until April 25, 2013, following Fenwick's filing of the second motion to dismiss, when Abhyanker finally moved to disqualify Fenwick.

### ARGUMENT

Motions to disqualify are strongly disfavored and should face particularly strict judicial scrutiny.  *Visa USA, Inc. v. First Data Corp.*, 241 F. Supp. 2d 1100, 1104 (N.D. Cal. 2003); *Gregori v. Bank of Am.*, 207 Cal. App. 3d 291, 300-301 (1989) ("motions to disqualify counsel often pose the very threat to the integrity of the judicial process that they purport to prevent."). Frequently, they are tactically motivated, so courts should view them with "extreme caution for they can be misused as a technique of harassment."  *Concat LP v. Unilever, PLC*, 350 F. Supp. 2d 796, 814 (N.D. Cal. 2004) (citing *Lord Elec. Co. v. Titan Pac. Constr. Corp.*, 637 F. Supp. 1556, 1562 (W.D. Wash. 1986)); *see also Liberty Nat'l Enters., L.P. v. Chicago Title Ins. Co.*, 194 Cal. App. 4th 839, 847 (2011); *Tauriac v. Rosas*, No. Civ. 2:10-47, 2011 U.S. Dist. LEXIS 72715, at *5 (E.D. Cal. July 6, 2011).  Disqualification is a "drastic measure" which can significantly disadvantage the attorneys' client and, accordingly, "should only be imposed when absolutely necessary."  *Concat LP*, 350 F. Supp. 2d at 814; *Tauriac,* 2011 U.S. Dist. LEXIS 72715, at *5 (because a motion to disqualify is "most often tactically motivated and can be disruptive to the litigation process, disqualification is considered to be a drastic measure that is generally disfavored and imposed only when absolutely necessary").  As such, the movant carries a heavy burden and must satisfy a high standard of proof.  *In re Marvel*, 251 B.R. 869, 871 (N.D. Cal. 2000); *United States v. Schafer*, No. CR.S-05-00238 FCD, 2006 U.S. Dist. LEXIS 82631, at *25 (E.D. Cal. Nov. 12, 2006).

Federal courts in California look to state law to decide motions to disqualify.  *In re Cnty. of Los Angeles*, 223 F.3d 990, 995 (9th Cir. 2000); *see also* Civil L.R. 11-4.  Ultimately, the decision of whether to disqualify counsel due to a conflict of interest is within the court's discretion.  *Trone v. Smith*, 621 F.2d 994, 999 (9th Cir. 1980); *City & Cnty. of San Francisco v.*

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*Cobra Solutions, Inc.*, 38 Cal. 4th 839, 846 (2006).  The court should carefully assess the propriety of disqualification based on the circumstances of the particular case and in light of competing interests.  *The Oaks Mgmt. Corp. v. Sup. Ct.*, 145 Cal. App. 4th 453, 464-65 (2006). This includes weighing the effects of a party's right to counsel of choice, an attorney's interest in representing a client, the financial burden on a client of replacing disqualified counsel and any tactical abuse underlying a disqualification proceeding against the fundamental principle that the fair resolution of disputes within our adversary system requires vigorous representation of parties by independent counsel unencumbered by conflicts of interest.  *Id.*

## I.    ABHYANKER WAIVED ANY CONFLICT FROM FENWICK'S REPRESENTATION OF NEXTDOOR.COM.

Abhyanker's Motion contends that Fenwick should be disqualified from representing Nextdoor.com in this case because it previously represented LegalForce in 2006 and 2007.[6] Motion at 14:1-14:8.  Putting aside for the moment that this years-past representation was for distinct corporation formation matters not relevant to this case (*see* Part III, *infra*), Abhyanker's Motion all but ignores the single most important fact about this purported conflict:  *that Abhyanker waived it in writing over a year ago*.  *See* Baker Decl Exs. 4-5.  This fact alone warrants denial of Abhyanker's Motion, and Abhyanker's failure to acknowledge it or attach the relevant correspondence demonstrates a shocking lack of candor.

In the correspondence that Abhyanker's Motion neglects to attach, Abhyanker's counsel (i) explained that he would not seek to disqualify Fenwick if a signed undertaking to screen any confidential information was provided (*id.* Ex. 4 at 1-2); (ii) approved draft Fenwick language for that undertaking (*id*. Ex. 5); (iii) thanked Fenwick for setting up the screen; and (iv) approved the timing of providing a signed copy of the undertaking.  *Id*.  In reliance on this clear agreement,

---

[6] While the Motion refers to the duty of loyalty in a section heading (Motion at 13), the actual arguments are limited to concerns over the duty of confidentiality created by Fenwick's successive representation of LegalForce and Nextdoor.com.  The duty of loyalty only concerns situations in which an attorney is alleged to be *simultaneously* representing two parties with conflicting interests.  *See, e.g., Forrest v. Baeza*, 58 Cal. App. 4th 65, 74 (1997).  Abhyanker does not contend that Fenwick ever represented both LegalForce and Nextdoor.com while their interests were adverse.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Fenwick set up the ethical screen that remains in effect today, and provided an undertaking to

Abhyanker on November 30, 2011, signed by every attorney at the firm who had worked on

LegalForce matters or socialized with Mr. Abhyanker. *Id*. Ex. 6. These facts should end the

disqualification inquiry.

California's Rules of Professional Conduct explicitly endorse these types of written

waivers in case of potential conflicts between former and present clients. *See* Cal. Rule of Prof.

Conduct 3-310(E) ) ("A member shall not, *without the informed written consent of the client or

former client*, accept employment adverse to the client or former client where, by reason of the

representation of the client or former client, the member has obtained confidential information

material to the employment") (emphasis added). Such waivers are enforceable and bar

disqualification. *See, e.g.*, *Zador Corp. v. Kwan*, 31 Cal. App. 4th 1285, 1300-01 (1995) (holding

disqualification inappropriate due to former client's execution of a waiver). As such,

Abhyanker's counsel's explicit waiver of any conflict bars disqualification of Fenwick.

### A.     Abhyanker's Waiver Was Not Limited to the State Court Action.

Unable to squarely address the implications of his agreement, Abhyanker suggests that

waiver should not apply to this case because he agreed to it while litigating in State Court—not

during this case. Motion at 9 ("any waiver of Fenwick's conflict of interest applied only to the

'above-referenced litigation,' i.e. the State Court action in which Abhyanker was plaintiff"). This

kind of rigid formalism has no place in the practical considerations of fairness that govern the

disqualification inquiry, nor any basis in the parties' negotiations or actions. *See, e.g., H.F.

Ahmanson & Co. v. Salomon Brothers, Inc.*, 229 Cal. App. 3d 1445, 1454-55 (1991) (explaining

that examining conflicts should be a "practical" and "pragmatic" inquiry and denying motion to

disqualify). Indeed, this Court rejected an argument similar to Abhyanker's in *Kelly v. Roker*,

No. C 11-05822, 2012 U.S. DIST. LEXIS 33604 (N.D. Cal. 2012), holding that an effort to

disqualify counsel in a follow-on case was barred by failure to object in the prior litigation. *Id.* at

*12 ("this case is yet another strand in the web of litigation between the parties, which has been

pending for years. Although [movant] may wish to ignore those facts, the Court cannot.")

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

But for the fact that Abhyanker voluntarily dismissed the State Court Action, the waiver would undoubtedly apply.  Yet this case involves and continues the same legal and factual issues presented in Abhyanker's State Court Action.  Assuming, contrary to fact, that Fenwick had any confidential information relevant to the current case, that information is equally protected by the continuing screen to which Abhyanker agreed.  His "different litigation" theory is based on a hyper-technical interpretation that has no place in such a serious matter.   Indeed, it falls in the same category as Abhyanker's counsel's earlier argument that the waiver was not effective because Fenwick had used the word "any" rather than "any and all" to describe the protected confidential information.  Abhyanker points to nothing to suggest that waiver can be negated because the same dispute, between the same parties, moved from state court, to the TTAB, and ultimately to this action.  Nor would a construction limiting Abhyanker's waiver to only the State Court Action make any sense.  That would afford him the option at any time to avoid his waiver for strategic purposes by commencing a claim (*e.g.*, trademark infringement) in federal court, by pursuing his claim at the TTAB, or for that matter, by dismissing the State Court Action but then refiling another suit in state court.

Moreover, Abhyanker's own actions indicate that his waiver was never viewed as inapplicable to the continuation of the dispute over ownership of the "Nextdoor" name.  Abhyanker never objected to Fenwick's defense of Nextdoor.com in the TTAB Oppositions after the State Court Action was dismissed.  As explained above, those Oppositions dealt with the same trade secret allegations that Abhyanker relied on in the State Court Action (as well as here)— namely that Nextdoor.com misappropriated the "Nextdoor" name and concept from Abhyanker.  *See, e.g.*, First Opposition ¶ 7.  That Abhyanker chose not to object to Fenwick's participation in the TTAB belies any limitation on his waiver to the State Court Action.

Likewise, if Abhyanker took such a narrow view of his waiver, he should have timely objected to Fenwick's participation in this lawsuit as well.  Fenwick filed Nextdoor.com's DJ Complaint against Abhyanker in November of 2012—six months ago.  The DJ Complaint seeks, *inter alia,* a declaration that Nextdoor.com, not Abhyanker, was first to use the name "Nextdoor" for online social networking, and that Nextdoor.com is lawfully using the "NEXTDOOR" mark.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    DJ Complaint ¶ 59; *see also id.*, Prayer for Relief.  Abhyanker's defenses include allegations that

2    the Company's use of the mark breached duties of confidentiality, and constituted "fraud" on the

3    USPTO.  Dkt. 16 at 11, 12.  Thus, although the DJ Complaint continued issues raised in the State

4    Court Action (and TTAB Oppositions), Abhyanker did not object to Fenwick's participation in

5    this lawsuit for over two months, and did not bring this motion until four months after that.

6           These facts are fundamentally inconsistent with any case-limited waiver.  Abhyanker was

7    adverse to Fenwick's clients every minute of the year *after* his dismissal of the State Court

8    Action.  But he never asserted that the waiver was inapplicable to those subsequent proceedings.

9    Accordingly, Abhyanker's November 2011 agreement to waive any conflicts controls, and his

10   Motion should be denied.

11   **II.    ABHYANKER'S 18-MONTH DELAY IN BRINGING THIS MOTION**

12   **        FURTHER PRECLUDES DISQUALIFICATION.**

13          But even if Abhyanker had not expressly waived his right to seek disqualification of

14   Fenwick, he has implicitly done so by waiting more than 18 months to file this Motion—after

15   Nextdoor.com and Janakiraman have made substantial investments in Fenwick as their counsel.

16   Courts routinely find that even much lesser delays warrant denial of a motion to disqualify,

17   recognizing that even short delays can significantly prejudice the disqualified counsel's party.

18   *See, e.g.*, *Trust Corp. of Montana v. Piper Aircraft Corp.*, 701 F.2d 85, 87-88 (9th Cir. 1983)

19   (explaining that "a former client who is entitled to object to an attorney representing an opposing

20   party on the ground of conflict of interest but who knowingly refrains from asserting it promptly

21   is deemed to have waived that right"); *Openwave Systems v. Myriad France S.A.S.*, No. C 10-

22   02805, 2011 U.S. Dist. LEXIS 35526, at *16-17 (N.D. Cal. Mar. 31. 2011) (finding that four

23   month delay in moving to disqualify justified denial of motion); *Skyy Spirits, LLC v. Rubyy, LLC.*,

24   No. C 09-00646, 2009 WL 3762418, at *5 (N.D. Cal. Nov. 9, 2009) (eight month delay in

25   bringing motion to disqualify too long); *Employers Ins. of Wausau v. Seeno Constr. Corp.*, 692 F.

26   Supp. 1150, 1165 (N.D. Cal. 1988) (year-long delay in moving to disqualify resulted in wavier).

27   In assessing whether a delay warrants denial of a motion, courts consider (1) the length of the

28   delay, (2) whether the moving party was represented by counsel during the delay, (3) why the

delay occurred, including whether it was for tactical reasons, and (4) whether disqualification would result in prejudice to the moving party. *Id.* at 1165 (citing *Trust Corp.*, 701 F.2d at 87-88). It is the burden of the party seeking disqualification to show that the delay was not unreasonable under these factors. *Skyy Spirits, LLC*, 2009 WL 3762418, at *5. Here, each factor favors denying Abhyanker's Motion.

### A.     The Length of Delay Supports Waiver.

As explained above, within a week of Abhyanker filing his first Complaint in the State Court Action on November 10, 2011, he was aware of Fenwick's involvement in this litigation as counsel for Nextdoor.com. Until now, Abhyanker never sought disqualification. This delay is significantly longer than delays found sufficient to bar disqualification. *See, e.g.*, *Openwave*, 2011 U.S. Dist. LEXIS 35526, at *16-17 (four month delay); *Employers Ins. of Wausau*, 692 F. Supp. at 1165 (year-long delay). Indeed, Abhyanker's delay of six months since the filing of this action, alone, would be sufficient to warrant denial. As such, this factor clearly favors waiver.

### B.     Abhyanker Has Been Represented By Counsel Throughout His Litigation Against Nextdoor.com.

Additionally, during his entire litigation campaign against Nextdoor.com, Abhyanker, who is himself an experienced IP attorney, has been represented by counsel from his own large law firm. *See http://www.inc.com/profile/raj-abhyanker* (last visited May 7, 2013) (law firm profile claiming 60 attorneys). In the State Court Action, Abhyanker was represented by three attorneys—Ashwin Anand, Samik Bhattacharyya, and himself. *See* Complaint. In the TTAB Oppositions, Abhyanker was represented by Chris Ditico and Kuscha Ford. *See* First Opposition; Second Opposition. And finally, in this action Abhyanker has been represented by three attorneys—Bruno Tarabichi, Roy Montgomery, and Kusha Fard. *See* Counterclaim; AC. With his own law firm, seven lawyers, and 18 months, Abhyanker cannot complain that he did not have the resources to file a motion to disqualify sooner. This factor, too, favors waiver.

### C.     Abhyanker Offers No Valid Explanation for his 18-Month Delay.

The only reason Abhyanker offers to explain his delay in bringing this motion is to claim that, after a conversation with Nextdoor.com CEO Nirav Tolia on September 28, 2012, he

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   "suddenly understood" that Sood was somehow involved in the alleged misappropriation of his

2   trade secrets.  Motion at 10:21-11:3.  Abhyanker does not even attempt to explain, however, why

3   he then waited another seven months after that conversation, six months after Nextdoor.com filed

4   the DJ Complaint, and more than four months after the December 2012 conversation in which

5   Sood purportedly "admitted" disclosing trade secrets.  *See* n. 5, *supra*.

6        In any event, even if Sood were involved in any alleged misappropriation, which is

7   completely unsupported by Abhyanker's evidence,[7] that has nothing to do with Fenwick's

8   representation of Nextdoor.com or Janakiraman, or its previous representation of LegalForce.

9   Abhyanker's Motion tries to stitch all of this together into an excuse for his delay, claiming that

10  Sood's involvement is related to Fenwick's representation of Nextdoor.com and LegalForce

11  because Sood supposedly met with Fenwick attorneys to draft agreements for LegalForce,

12  including confidentiality agreements with outside investors.  Motion at 14; Abhyanker Decl. ¶ 9

13  (asserting, vaguely and without foundation, that Sood worked on financing agreements with

14  investors, which somehow "he then breached," and which have not been provided to the Court).

15  *First*, Abhyanker's inadmissible "evidence" is simply untrue.  *See* Counterdefendants' Objections

16  to Evidence, filed herewith.  The competent evidence is that Sood did not meet with any Fenwick

17  attorneys or negotiate any agreements.  Sood Decl. ¶ 5.  Moreover, there is no evidence that

18  Fenwick had anything to do with Sood's confidentiality agreements.  No agreements or

19  documents bearing Sood's name appear anywhere in the documents possessed by Fenwick

20  relating to the LegalForce representation.  Baker Decl. ¶ 30.

21

22  ───────────────

23  [7] Abhyanker falsely asserts that Defendant Sood has "admitted . . . providing information related
    to the LegalForce trade secrets to a co-founder of the Plaintiff's company Nextdoor.com, Inc.
    (See Exhibit A)."  Abhyanker Decl. ¶ 5.  *See also* Motion at 10:11-10:19.  Yet the supposed

24  "smoking gun," Exhibit A, makes no such admission.  To the contrary, Sood's email to
    Abhyanker reflects the innocuous fact that, *six years* after contracting with LegalForce, Sood

25  responded to a "friends and family" survey eliciting consumers' interest in the Company's
    *already existing concept* of a neighborhood social network.  Abhyanker Decl. Ex. A.  Such false

26  allegations serve merely to mislead and confuse the Court—as do Abhyanker's other constantly
    mutating, contradictory and therefore untrustworthy allegations.  Indeed, if his Exhibit A is the

27  basis for Abhyanker's allegations that Sood disclosed trade secret information to Janakiraman or
    Nextdoor.com, it is apparent that he has no Rule 11 basis to assert it and should withdraw it.

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*Second*, even assuming Sood were involved in the way Abhyanker contends, it would have no bearing whatsoever on this case or any conflict.  Whether or not Sood breached a confidentiality obligation to Abhyanker and disclosed trade secrets to Nextdoor.com in 2010, as Abhyanker alleges (AC ¶¶ 145-47), that came years after LegalForce was dissolved and Fenwick had stopped representing it.  Motion at 13:8-13:11.  Even assuming Sood were in Fenwick's offices (contrary to his sworn testimony (Sood Decl., ¶ 5)) in 2006, it was allegedly to assist Abhyanker in setting up LegalForce.  His presence for that purpose, or for purportedly drafting form agreements for investors, does not add anything to the information that Fenwick would have received from its LegalForce representation.  It would also not impart to Fenwick any confidential information that is relevant to Sood's supposed wrongful disclosure of specific trade secrets in the distant future.  These newly discovered "facts" do not justify Abhyanker's delay.

Instead, all of the evidence suggests that Abhyanker's timing was tactical, designed to disrupt Nextdoor.com and Janakiraman's litigation of this case after they incurred substantial expense in litigating with Fenwick as counsel.  The current iteration of supposedly "new facts" are no more justification than the numerous other "new facts" Abhyanker previously proffered as bases for wanting out of his waiver, including:  that Google, a Fenwick client, bought Fatdoor's patents; that Rajiv Patel might be a witness; that Rajiv Patel was considered as a purchaser of Abhyanker's law practice; or that Fenwick promised to sequester "any," rather than "any and all," confidential information.

Abhyanker points out that none of his pleadings even mentioned LegalForce until the First Amended Counterclaims, which were filed just two weeks before his Motion to disqualify.  Motion at 11.  But that does not excuse waiting until that date.  Abhyanker has known all along any role that LegalForce actually had.  It was Abhyanker who asserted for the previous 17 months that the alleged secrets were owned by Fatdoor, Inc.  The fact that he only last month reengineered his theories to assert that LegalForce owned the alleged secrets—and did so at the same time that he tried to disqualify Fenwick—does not excuse his delay.  Rather, the mutation of his underlying legal theories to coincide with a renewed effort to disqualify opposing counsel

seems hardly coincidental. It is precisely because of this risk of tactical game playing that motions to disqualify are particularly disfavored. *See, e.g., Concat*, 350 F. Supp. 2d at 814.

### D. Disqualification of Fenwick Would Significantly Prejudice Nextdoor.com and Janakiraman.

Finally, there can be no dispute that disqualification of Fenwick at this point would cause significant prejudice to Nextdoor.com and Janakiraman. Fenwick has been litigating these same issues for Nextdoor.com and Janakiraman against Abhyanker for over a year and a half. The responsible Fenwick attorneys have significant first-hand knowledge of the hundreds of pages of allegations that Abhyanker has made against Nextdoor.com in four separate cases, and have spent significant resources investigating and researching the relevant factual and legal issues. If Fenwick were disqualified at this stage, a huge amount of resources would be wasted, and would be wasted in the future getting new attorneys up to speed on the facts and issues. This prejudice is magnified by the fact that disqualification would entail substantial delay in Nextdoor.com's ability to pursue its affirmative claims against Abhyanker and clear title to its name and business—both of which are subject to continuing investment every day. Finally, Nextdoor.com would be deprived of representation by counsel of its choice, who bring deep expertise in this area of law and this business sector, as well as accumulated experience in this action. These are very real prejudices that Nextdoor.com necessarily would face from disqualification. Given that Fenwick continues to operate under the ethical screen that Abhyanker requested and approved a year and a half ago, he can complain of no counterbalancing prejudice.

As each factor counsels against disqualification, Abhyanker's Motion should be denied based on his unreasonable delay as well.

### III. THIS CASE IS NOT SUBSTANTIALLY RELATED TO FENWICK'S PREVIOUS REPRESENTATION OF LEGALFORCE.

Regardless of express waiver and delay, however, Abhyanker's Motion should also be denied for a third reason: there simply is no conflict to waive, because Fenwick's former role in LegalForce's corporate formation is not substantially related to defense of Nextdoor.com against Abhyanker's trade secret claims. In cases of successive representation, a conflict of interest

warranting disqualification only arises when an attorney has *confidential* information concerning the former client that would be material to the present representation.  *See, e.g., K.F. Ahmanson & Co.*, 229 Cal. App. 3d at 1452.  Abhyanker does not actually identify what, if any, confidential information Fenwick is supposed to have, let alone explain how it is material.  Instead, he relies on authority providing that courts can presume that a former client's attorney possesses such information where the present and former representations are "substantially related."  Motion at 5.  Such a presumption is inappropriate here.

The "substantially related" test on which Abhyanker relies is no low bar.  It is not enough that both representations concern the same entity—which is not even the case here. [8]  *See, e.g., Kirk Corp. v. First American Title Co.*, 220 Cal. App. 3d 785, 812 (1990) (prior representation of condominium complex related to drafting covenants, conditions, and restrictions unrelated to subsequent litigation against that same condominium).  To establish that two representations are "substantially related" it has to be clear that "confidential information material to the current dispute would normally have been imparted to the attorney by virtue of the nature of the former representation."  *See H.F. Ahmanson & Co.*, 229 Cal. App. 3d at 1454.  For information to be material to the present representation under this test, it has to be "directly at issue in, or [have] some critical importance to, the second representation."  *Fremont Indemnity Co. v. Fremont General Corp.*, 143 Cal. App. 4th 50, 69 (2006).  It is Abhyanker's burden to establish all of this.  *See, e.g., Kirk*, 220 Cal. App. 3d at 813; *see also In re Charlisse C.*, 45 Cal. 4th 145, 166 n.11 (2008).  He has not.

Fenwick's representation of LegalForce was limited to incorporating the entity, providing related corporate advice, and preparing basic form agreements that could be used by LegalForce

---

[8] It is far from clear that Abhyanker is entitled to seek disqualification at all under the substantial relationship test.  Abhyanker was himself not a client of Fenwick & West.  Baker Decl. Ex. 20.  Fenwick only represented LegalForce.  Acquisition of the assets of a defunct corporation does not necessarily transfer any privilege that belonged to the corporation.  *Favila v. Katten Muchin Rosenman LLP*, 188 Cal. App. 4th 189, 219 (2010) ("in the absence of a merger or transfer of control of the corporation holding the privilege, the sale of the corporation's assets generally does not also transfer the privilege").  Moreover, Abhyanker has failed to provide any competent evidence that he obtained any assets of the LegalForce entity.  *See* Objections to Evidence at 1-2.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

in its business.  Baker Decl. ¶ 24.[9]  Fenwick provided no legal advice about trade secrets; nor do any files remaining in Fenwick's possession suggest that Fenwick was ever given any trade secret information by Abhyanker that could be substantially related to this case.  Fenwick's engagement letter with LegalForce confirms this, noting that Fenwick was being retained for "corporate matters relating to the Company's formation, financing, and structure."  *Id*. Ex. 20.

The letter was written by Rajiv Patel, a partner in the intellectual property area of Fenwick's practice and a social contact of Abhyanker's.  It provided that the corporate work would be done by Sayre Stevik, a corporate partner.  Stevik ultimately billed only 3.7 hours to LegalForce, with the bulk of the work being done by a corporate associate who left the Firm in 2008.  The engagement letter also provided that any intellectual property work would be done by Patel.  *Id*. Ex. 20.  But Patel never billed any time to the LegalForce matter.  Baker Decl. ¶ 32. Contrary to the representation made in his declaration (Abhyanker Decl. ¶ 2), Abhyanker did not retain Fenwick for any personal representation.  The engagement letter specified that the representation was with "LegalForce, Inc. (the ***'Company'***)" and that "Fenwick would provide legal services to the Company."   Baker Decl. Ex. 20.

It is also significant to understand that Abhyanker depends on a very attenuated theory of relevance in asserting this conflict.  While Fenwick did not advise about the LegalForce business model, the very high level ideas about business models Fenwick did receive were unrelated to a neighborhood social network like Nextdoor.com.  Baker Decl. ¶ 27.  During the limited duration of the LegalForce representation, the business model changed from outsourcing legal work on patents to India using cheaper Indian labor to become a platform on which people could buy and sell patents, to a minor and clearly subsidiary social network for people interested in such business.  *Id.*  Abhyanker is thus forced to argue that his ideas about a neighborhood-based social network were somehow implicit in the LegalForce model and were opportunities he planned to

---

[9] Mr. Baker, as General Counsel for Fenwick & West, reviewed the file for Fenwick & West's representation of LegalForce in preparation for responding to Abhyanker's Motion.  As Mr. Baker explains in his declaration, no members of the litigation team involved with Fenwick's representation of Nextdoor.com in litigation against Abhyanker were involved in this review or otherwise privy to any confidential materials relating to Fenwick's representation of LegalForce.

pursue later.  FACC, Dkt. 59 ¶ 113 (alleging Abhyanker put LegalForce "on hold" to pursue Fatdoor).   But regardless, the only disclosure to Fenwick was at the most general level of "what kind of business is this," and at that level LegalForce looks nothing like Nextdoor.com.  In particular, there is no evidence that Abhyanker sought or received any advice from Fenwick about any of the long list of trade secrets that he now asserts in this case.  Baker Decl. ¶ 24.

In the hopes of obscuring these facts, Abhyanker's Motion makes a number of vague and unsupported representations concerning the scope of Fenwick's representation.  But Fenwick did not provide LegalForce with any advice regarding the existence, protection, or ownership of the trade secrets he purports to assert here.  *Compare* Abhyanker Decl. ¶¶ 13, 14 with Baker Decl. ¶ 24.  Indeed, only two corporate lawyers and two corporate paralegals billed time to LegalForce.  The associate and the paralegal who performed the vast majority of the work left in 2008 and 2009 respectively.  The remaining lawyer (Stevick) billed 3.7 hours and the remaining paralegal billed 0.4 hours.  Baker Decl. ¶ 32.  Abhyanker's declaration acknowledges that a different law firm, not Fenwick, did the relevant IP work, allegedly "carv[ing] out all trade secrets and intellectual property related to LegalForce" from what was assigned to Fatdoor, Inc. in 2007.  Abhyanker Decl. ¶ 12 at 5:18-20.  There is no record of any work done or time billed in Fenwick's file to any transaction between LegalForce and Fatdoor; indeed, there was no time billed to LegalForce after September 30, 2006.  Baker Decl. ¶ 31.[10]

Abhyanker has complete access to information concerning Fenwick's representation, given Fenwick's return of the case file to him.  It is therefore telling that he does not attach any documents or correspondence that would support this claim that Fenwick provided representation

---

[10] Abhyanker's discussion of Mr. Myers' purported concerns about LegalForce's assets being used by Fatdoor, in addition to being inadmissible, is just smoke.  Abhyanker ¶ 15.  It misleadingly attempts to implicate Fenwick in IP work merely because an investor held a convertible note Fenwick drafted, a connection obviously creating no conflict.  Moreover, the assertion that certain disclosures were made *by Fatdoor*, using its own counsel, Mr. Hansen, or that "a decision was made" (apparently by Fatdoor) that Fatdoor should make requests "through Fenwick & West" if it wanted to use LegalForce assets (*id.*), also does not implicate any act by Fenwick; does not indicate that Fenwick even heard of these events; and certainly identifies no *confidential information of LegalForce* that Fenwick possesses that is critical to this case, as would be required to disqualify.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

concerning the alleged trade secrets or advised regarding their ownership. Abhyanker's characterization of documents that he does not attach to his declaration, and his hearsay recounts of supposed communications between Fenwick and the separate attorneys that worked on the alleged trade secrets, are insufficient to meet Abhyanker's burden to prove a conflict. *See, e.g.*, *Kirk*, 220 Cal. App. 3d at 813; *see also In re Charlisse C.*, 45 Cal. 4th at 166 n.11.

Nor did Fenwick draft any confidentiality agreement between Counterdefendant Sood and LegalForce as Abhyanker's declaration might ambiguously suggest. *See* Abhyanker Decl. ¶ 9; Objections to Evidence No. 4. Fenwick drafted general form agreements for LegalForce (some of which contained confidentiality provisions) but did not tailor any to Sood. Baker Decl. ¶ 24. Finally, contrary to Abhyanker's unfounded claims, Sood was never present in Fenwick's offices and did not have any role in negotiating others' confidentiality agreements. Sood Decl. ¶ 5.

In short, there is no reason to assume that Fenwick would have obtained any confidential information related to this action by virtue of its past representation of LegalForce on general corporate matters, much less confidential information that is "directly at issue in, or [has] some critical importance" to this case. *Fremont Indemnity*, 143 Cal. App. 4th at 69. Abhyanker's vague, inadmissible, and contradicted allegations cannot carry his burden. As such, there is no "substantial relationship," no conflict, and Abhyanker's Motion should be denied.

## IV. EVEN WERE THERE A CONFLICT, DISQUALIFICTION IS NOT WARRANTED HERE.

Finally, even if there were a substantial relationship, disqualification would not be warranted on these facts. Only one attorney who billed time on LegalForce matters remains at Fenwick, and he billed only 3.7 hours. The two who billed significant time have since left Fenwick & West, leaving behind only one other paralegal who spent a total of 0.4 hours on the matter. Baker Decl. ¶ 32. Likewise, when Abhyanker terminated Fenwick's representation of LegalForce in 2008, he requested that Fenwick return all of the files related to its representation. Baker Decl. ¶ 21. Fenwick provided those files (and no longer retains copies of the materials returned). *Id*. And, in any event, the attorneys that do remain at Fenwick with any connection to Abhyanker or the prior representation of LegalForce have been walled off from the representation

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

of Nextdoor.com and Janakiraman since November 2011.  The attorneys involved in the litigation have been informed of this screen and prohibited from any communication with the screened attorneys relating to this matter.  *Id*. Ex. 7.  As a result, there is no basis to assume, and no genuine risk, that any confidential information of LegalForce or Abhyanker could be used against him in this action.

In *Kirk,* after an exhaustive review of applicable law, the court reversed a finding of vicarious disqualification of an entire law firm where only persons uninvolved in the present representation possessed relevant confidential information of their former client.  183 Cal. App. 4th at 810.  Fenwick's ethical screen comports with the factors *Kirk* recognized as weighing against disqualification. *Compare Kirk*, 183 Cal. App. 4th at 810 (endorsing as sufficient screens that are "timely imposed … when the conflict first arises," and that include "a memorandum … circulated warning the legal staff to isolate the tainted individual from communications on the matter and to prevent access to the relevant files") and Baker Decl. Ex. 7.  Moreover, both of the persons remaining from the LegalForce representation practice in Mountain View are in the corporate group, whereas the Nextdoor.com litigation team is located in San Francisco. *See Kirk*, 183 Cal. App. 4th at 811 (separation by geography or practice group weighs against disqualification due to lesser risk of inadvertent disclosure).

Finally, Fenwick's safeguards are the same ones that Abhyanker himself invited and agreed to 18 months ago.  They were sufficient to protect his interests then and remain so today. The screen protects the confidentiality of even the minimal amount of information possessed by Fenwick attorneys not working on this litigation.  No risk to Abhyanker can support vicarious disqualification of the entire firm in this context.

1

## <u>CONCLUSION</u>

2   For these reasons, Abhyanker's motion to disqualify Fenwick & West, LLP should be

3   denied.  Further, given the frivolous and harassing nature of Abhyanker's Motion, should it be

4   denied, Nextdoor.com and Janakiraman reserve the right to seek sanctions for having to oppose it.

5   Dated:   May 9, 2013                          FENWICK & WEST LLP

6

7                                                 By: */s/ Laurence F. Pulgram*
                                                      Laurence F. Pulgram
8
                                                  Attorneys for Plaintiff and Counterdefendant
9                                                 NEXTDOOR.COM, INC. and Counterdefendant
                                                  PRAKASH JANAKIRAMAN
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO