LAURENCE F. PULGRAM (CSB No. 115163)
lpulgram@fenwick.com
JENNIFER L. KELLY (CSB No. 193416)
jkelly@fenwick.com
CLIFFORD C. WEBB (CSB NO. 260885)
cwebb@fenwick.com
FENWICK & WEST LLP
555 California Street
San Francisco, CA  94104
Telephone:    415.875.2300
Facsimile:    415.281.1350

Attorneys for Plaintiff and Counterdefendant
NEXTDOOR.COM, INC. and Counterdefendant
PRAKASH JANAKIRAMAN

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NEXTDOOR.COM, INC., a Delaware corporation,<br><br>                    Plaintiff,<br><br>          v.<br><br>RAJ ABHYANKER, an individual,<br><br>                    Defendant.<br>_____<br><br>RAJ ABHYANKER, an individual,<br><br>                    Counterclaimant,<br><br>          v.<br><br>NEXTDOOR.COM, INC., a Delaware corporation; PRAKASH JANAKIRAMAN, an individual; BENCHMARK CAPITAL PARTNERS, L.P., a Delaware limited partnership; BENCHMARK CAPITAL MANAGEMENT CO. LLC, a Delaware limited liability company; SANDEEP SOOD, an individual; MONSOON ENTERPRISES, INC., a California corporation, and DOES 1-50, inclusive,<br><br>                    Counterdefendants. | Case No.: 3:12-cv-05667-EMC<br><br>**NEXTDOOR.COM, INC. AND PRAKASH JANAKIRAMAN'S REPLY IN SUPPORT OF THEIR MOTION TO DISMISS FIRST AMENDED COUNTERCLAIM AND STRIKE AFFIRMATIVE DEFENSES**<br><br>Date:        June 6, 2013<br>Time:        1:30 p.m.<br>Judge:       Honorable Edward M. Chen |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ....................................................................................................................... 2

I.  ABHYANKER'S ALLEGATION THAT THE NEXTDOOR NAME AND
    CONCEPT WERE NOT PUBLICLY DISLCOSED IS DISPROVEN BY THE
    '442 APPLICATION. ................................................................................................ 2

II. ABHYANKER'S OPPOSITION DOES NOT IDENTIFY ANY FACTS HE
    HAS ALLEGED THAT PLAUSIBLY SUPPORT HIS CLAIM. .............................. 5

    A.  The Amended Counterclaim Alleges No Facts to Plausibly Support an
        Inference of Wrongful Acquisition. ............................................................... 5

        1.  Abhyanker Identifies Nothing but Speculation that
            Counterdefendants Acquired Trade Secrets from
            Benchmark or Sood. ........................................................................... 5

    B.  Abhyanker Has Not Alleged Use of any Trade Secret by Nextdoor.com
        or Janakiraman. ............................................................................................... 8

    C.  Abhyanker's Opposition Fails to Identify any Facts Pled to Show that
        He Suffered Damages. ...................................................................................... 9

III. ABHYANKER'S OPPOSITION DOES NOT RECONCILE THE
     INCONSISTENCIES IN HIS ALLEGATIONS REGARDING OWNERSHIP. ............ 10

IV. ABHYANKER'S COUNTERCLAIM SHOULD BE DISMISSED WITH
    PREJUDICE. .......................................................................................................... 12

V.  ABHYANKER'S AFFIRMATIVE DEFENSES ARE INSUFFICIENT AND
    SHOULD BE STRIKEN. ........................................................................................ 12

CONCLUSION .................................................................................................................. 13

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page(s)</u>

3

CASES

4

*Architectural Mailboxes, LLC v. Epoch Design, LLC,*
   Case No. 10-cv-974, 2011 U.S. Dist. LEXIS 46180 (S.D. Cal. Apr. 28, 2011) ...................... 4

5

6

*Bauer v. Goss,*
   C 12-00876, 2012 U.S. Dist. LEXIS 95334 (N.D. Cal. July 10, 2012) ................................. 11

7

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ............................................................................................................. 7

8

9

*Bespaq Corp. v. Haoshen Trading Co.,*
   No. C 04-3698, 2005 WL 14841 (N.D. Cal Jan. 3, 2005) .................................................... 9

10

*Burch v. GMAC Mortgage, LLC,*
   No. C-09-4214, 2010 U.S. Dist. LEXIS 23659 (N.D. Cal. Mar. 15, 2010) ........................... 4

11

12

*Champlaie v. BAC Home Loans Servicing, LP,*
   706 F. Supp. 2d 1029 (E.D. Cal. 2009) ................................................................................ 5

13

*Cooney v. California,*
   No. C-13-0677, 2013 WL 1748053 (N.D. Cal. Apr. 23. 2013) ........................................... 12

14

15

*Coto Settlement v. Eisenberg,*
   593 F.3d 1031 (9th Cir. 2010) .............................................................................................. 4

16

*Diodes, Inc. v. Franzen,*
   260 Cal. App. 2d 244 (1968) ................................................................................................ 9

17

18

*Farhang v. Indian Institute of Technology,*
   No. C 08–02658, 2010 WL 2228936 (N.D. Cal. June 1, 2010) ............................................ 8

19

*Forcier v. Microsoft Corp.,*
   123 F. Supp. 2d 520 (N.D. Cal. 2000) .................................................................................. 2

20

21

*In re VISX, Inc. Sec. Litig.,*
   Nos. C 00-0649, C-00-0815, 2001 WL 210481 (N.D. Cal. Feb. 27, 2001) ......................... 12

22

*Intri-Plex Technologies, Inc. v. Crest Grp., Inc.,*
   499 F.3d 1048 (9th Cir. 2007) .............................................................................................. 4

23

24

*Kemp v. IBM,*
   No. C-09-4683, 2010 WL 4698490 (N.D. Cal. Nov. 8, 2010) .............................................. 7

25

*Nexsales Corp. v. Salebuild, Inc.,*
   No. C-11-3915, 2012 WL 216260 (N.D. Cal. Jan. 24, 2012) ........................................... 5, 9

26

27

*Parrino v. FHP, Inc.,*
   146 F.3d 699 (9th Cir. 1998) ................................................................................................ 4

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*Pitsnogle v. City of Reno,*
     501 Fed. Appx. 653 (9th Cir. 2012) ................................................................................ 12

*Poirier v. City of Hollywood,*
     No. CV 11-2030, 2011 WL 6046920 (C.D. Cal. Sep. 20, 2011) ...................................... 7

*Righthaven LLC. v. Hoehn,*
     No. 11-16751, 11-16776, __ F.3d __, 2013 WL 1908876 (9th Cir. May 09, 2013) ............... 4

*Shwarz v. United States,*
     234 F.3d 428 (9th Cir. 2000) .............................................................................................. 4

*Steckman v. Hart Brewing Inc.,*
     143 F.3d 1293 (9th Cir. 1988) ............................................................................................ 4

*Swartz v. KPMG, LLC,*
     No. C03-1252, 2008 U.S. Dist. LEXIS 36139 (W.D. Wash. May 2, 2008) ...................... 2

*Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp.,*
     587 F.3d 1339 (Fed. Cir. 1999) .......................................................................................... 2

**STATUTES**

Cal. Civ. Code 3426.1(d)(1) ..................................................................................................... 9

**RULES**

Fed. R. Civ. P. 11 ........................................................................................................ 1, 6, 7, 8

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

### INTRODUCTION

Counterclaimant Raj Abhyanker ("Abhyanker") has no trade secret rights to assert here. His Opposition does nothing to show that he has pled—or could plead—a claim for misappropriation.

As Counterdefendants Nextdoor.com, Inc. ("Nextdoor.com") and Prakash Janakiraman's ("Janakiraman") Motion explained, the '442 Application filed years before any alleged misappropriation explicitly disclosed an idea to use the name "nextdoor.com" in connection with an online social network for neighbors. Abhyanker's Opposition does not challenge that this application is properly the subject of judicial notice. Instead, Abhyanker argues that the '442 Application should be ignored because he has *pled* that it does not disclose any trade secrets. That argument is, in a word, absurd. The face of the patent application contains the public disclosure. The Court is not required to accept as true an allegation that a judicially noticeable document shows to be false. The use of the name "nextdoor.com" in connection with an online social network for neighbors was publicly disclosed, cannot be a trade secret, and thus, as a matter of law—and regardless of the (false) allegation of its disclosure to Nextdoor.com—cannot form the basis of a trade secret claim.

Abhyanker's Opposition also fails to identify any *facts* that provide a plausible basis to infer that Counterdefendants wrongfully acquired, or used, any of the other supposed LegalForce/Nextdoor Trade Secrets, or that Abhyanker was damaged as a result. The Opposition attempts to sidestep this failure by asserting that Abhyanker is permitted to plead facts on information and belief. But Rule 11 allows pleading of *facts* on information and belief; "information and belief" does not excuse a claimant from alleging facts that plausibly demonstrate an act of misappropriation occurred, which Abhyanker has not even come close to doing here. Apart from the name "nextdoor.com," the Amended Counterclaim is devoid of any facts identifying a trade secret, much less supporting an allegation that it was revealed to or used by Counterdefendants. A laundry list of generic social networking features does not constitute identification of any trade secret. Abhyanker makes no attempt to show that there are any facts he could plead to satisfy these elements of his claim.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Finally, the Opposition utterly fails to explain the inconsistencies between Abhyanker's allegations in this action and the admissions he made in prior proceedings. Abhyanker previously admitted that Fatdoor, Inc. previously owned, and Google now owns, the asserted trade secrets. His Opposition does not reconcile that admission with his contradictory allegations in this case that he *personally* owns some body of trade secrets related to the "nextdoor.com" name and concept that were not acquired by Google. Indeed, the Opposition does not even attempt to claim that both sets of allegations could be true. They are not.

Abhyanker has taken every available opportunity to rewrite and reinvent his story in the hopes of getting a piece of Nextdoor.com's success. Nowhere in any of his six separate pleadings, in three separate forums, has he ever pled any facts to suggest he can. Under these circumstances, dismissal with prejudice is entirely appropriate. *See Swartz v. KPMG, LLC,* No. C03-1252, 2008 U.S. Dist. LEXIS 36139, at *78 (W.D. Wash. May 2, 2008) ("[T]he dictates of justice and judicial economy require that the merry-go-round of re-wording, re-fashioning and reinventing the nature of this litigation be halted.")

## **ARGUMENT**

I.   **ABHYANKER'S ALLEGATION THAT THE NEXTDOOR NAME AND CONCEPT WERE NOT PUBLICLY DISLCOSED IS DISPROVEN BY THE '442 APPLICATION.**

As Counterdefendants' Motion explained and Abhyanker does not dispute, he cannot pursue a misappropriation claim based on "secrets" he publicly disclosed in a patent application before the alleged misappropriation. *Forcier v. Microsoft Corp.*, 123 F. Supp. 2d 520, 528 (N.D. Cal. 2000) ("all of Forcier's alleged trade secrets had been placed in the public domain either in patents or in patent applications . . . more than a year before Microsoft purchased the technology from Aha! . . . Consequently, the element of secrecy was gone by the time that Microsoft acquired the information, the 'trade secret' status was extinguished"); *Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp.*, 587 F.3d 1339, 1355-56 (Fed. Cir. 1999) (applying California law and holding that disclosure of trade secret information in a foreign patent eliminates any trade secret protection). The case law cited by Abhyanker's Opposition is not to the contrary. Dkt. 77 ("Opp.") at 7.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

The Opposition essentially concedes that the '442 Application publicly disclosed the use of the name "nextdoor.com."  *See* Opp. at 8 ("The only item from the list of trade secrets that is arguably disclosed in the patent application is the use of the name Nextdoor.com").  Instead, the Opposition attacks a straw man argument:  *i.e.*, whether *all* of the vaguely alleged "LegalForce/Nextdoor Trade Secrets" were disclosed by Abhyanker's '442 Application.  *Id*. at 7-9.  But the Motion does not make that argument.  It merely asserted—correctly—that the '442 Application disclosed the use of the name "nextdoor.com" in connection with an online neighborhood social network, which it plainly does.

Abhyanker does weakly attempt to dispute that the application's reference to the nextdoor.com name was, in fact, in connection with an online social network for neighbors.  He claims that name was merely used in the application "in reference to the placement of advertisements on a nextdoor.com website . . . ."  Opp. at 8.  This ignores that the '442 Application *specifically referred to the name "nextdoor.com" as an embodiment of the supposed social networking invention described by the application*, and that the advertising system described by the paragraph at issue was to be internal to the social network—not an outside website.  Dkt. 64 ("RJN") Ex. 1 at p.56, ¶ 236; Dkt. 63 ("Motion") at 14-15.  Abhyanker has no answer to this indisputable fact.  The Opposition also ignores Abhyanker's own publicly posted and judicially noticeable excerpt of the '442 Application (which he characterized as evidence of his Counterclaim).  There he stated, in his own words, that the '442 Application discloses that "at least one of the embodiments will be used on 'nextdoor.com.'"  RJN Ex. 7; *see also* RJN Ex. 3 (State Court Action, First Amended Complaint or "FAC") at 62 (Summary of Exhibits) (explaining that the '442 Application attached to the First Amended Complaint as Exhibit D shows that "the name 'Nextdoor.com' is clearly associated as the domain name intended to be used by Fatdoor, Inc").

Finally, the Opposition does not meaningfully challenge that the '442 Application is properly the subject of judicial notice, and thus its contents may be considered on this Motion.[1]

---

[1] Abhyanker's Opposition does argue that Nextdoor.com and Janakiraman are "improperly request[ing] that the Court look beyond the pleadings and make factual determinations. . . ."  This ignores well-settled law allowing this Court to consider Abhyanker's '442 Application and his

Abhyanker instead makes the stunning argument that reality should be ignored because Abhyanker has *alleged* that the '442 Application does not disclose any trade secrets. He claims his allegations must be accepted as true for the purposes of a motion to dismiss, even if they contradict judicially noticeable, and therefore undisputable, facts. Opp. at 7. Not so. The content of the '442 Application is not subject to dispute. Allegations that are directly contradicted by documents subject to judicial notice or referenced in the pleadings should be disregarded on a motion to dismiss. *See Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000); *Steckman v. Hart Brewing Inc.*, 143 F.3d 1293 (9th Cir. 1988); *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010); *Parrino v. FHP, Inc.*, 146 F.3d 699, 705-06 (9th Cir. 1998); *Intri-Plex Technologies, Inc. v. Crest Grp., Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007). As the Ninth Circuit recently observed (albeit in another context), a false characterization of the facts does not bind the court: "calling a tail a leg does not make it so . . . ." *Righthaven LLC. v. Hoehn*, No. 11-16751, 11-16776, __ F.3d __, 2013 WL 1908876, at *1 (9th Cir. May 09, 2013).

The use of the name "nextdoor.com" in connection with a neighborhood-based social network was disclosed in September of 2007, years before Sood's alleged disclosure to Nextdoor.com in 2010 and Nextdoor.com's public launch in 2011. *See* Dkt 59 (Amended Counterclaim or "AC") ¶¶ 145-147; *id*. ¶ 159.[2] Accordingly, to the extent Abhyanker's claim is based on alleged misappropriation of the name "nextdoor.com" in connection with a neighborhood-based social network—an allegation which is, in fact, the keystone of Abhyanker's claim—that claim should be dismissed with prejudice. *See, e.g., Architectural Mailboxes, LLC v. Epoch Design, LLC,* Case No. 10-cv-974, 2011 U.S. Dist. LEXIS 46180, at *18 (S.D. Cal. Apr. 28, 2011) (dismissing Lanham Act unfair competition claim to the extent it relied upon an alternate and deficient false designation of origin theory while allowing this same claim to go forward on a false advertising theory); *Burch v. GMAC Mortgage, LLC*, No. C-09-4214, 2010 U.S. Dist. LEXIS 23659, at *5 n.1 (N.D. Cal. Mar. 15, 2010) (dismissing Truth in Lending Act

---

pleadings in the related actions under the doctrines of judicial notice and incorporation by reference. *See* RJN at 3-4.

[2] Abhyanker makes no allegation of when Benchmark Capital supposedly wrongfully disclosed any trade secrets to Nextdoor.com.

REPLY IN SUPPORT OF MOTION TO DISMISS AND STRIKE
4
Case No. 3:12-cv-05667-EMC

claim to the extent it relied upon a deficient failure to deliver theory while allowing this same claim to go forward on a second alternate theory); *Champlaie v. BAC Home Loans Servicing, LP*, 706 F. Supp. 2d 1029, 1055 (E.D. Cal. 2009) (granting motion to dismiss as to certain specific theories plead in support of a cause of action).[3]

Indeed, because this is the *only* purported secret that Abhyanker has actually alleged Nextdoor.com or Janakiraman acquired or used, the claim should be dismissed with prejudice in its entirety. *See* Motion at 15-20.

## II.   ABHYANKER'S OPPOSITION DOES NOT IDENTIFY ANY FACTS HE HAS ALLEGED THAT PLAUSIBLY SUPPORT HIS CLAIM.

Counterdefendants' Motion also explained that Abhyanker's Amended Counterclaim fails to allege *facts* in support of at least two elements of his claim:  (1) wrongful use or disclosure of a bona fide trade secret, and (2) resulting harm.  *See* Motion at 15-16.  These are required elements of a claim for misappropriation.  *See id.*; *see also Nexsales Corp. v. Salebuild, Inc.*, No. C-11-3915, 2012 WL 216260, at *2 (N.D. Cal. Jan. 24, 2012).

### A.   The Amended Counterclaim Alleges No Facts to Plausibly Support an Inference of Wrongful Acquisition.

Abhyanker's Opposition identifies a handful of vague allegations from his Amended Counterclaim, many on information and belief, that he argues support his claim that Nextdoor.com or Janakiraman wrongfully acquired his supposed LegalForce/Nextdoor Trade Secrets from Counterdefendants Benchmark Capital and/or Sandeep Sood.  Opp. at 12:5-12:12 (citing AC ¶¶ 143-144, 146-149, 175).  But as explained in the Motion and below, these allegations consist of nothing but rank speculation that cannot support a claim.

#### 1.   Abhyanker Identifies Nothing but Speculation that Counterdefendants Acquired Trade Secrets from Benchmark or Sood.

As to the supposed acquisition from Benchmark Capital, Abhyanker identifies no facts in his Amended Counterclaim showing that any disclosure of any of his laundry list of "secrets"

---

[3] In asserting that the Court cannot dismiss Abhyanker's claim as to a single theory (Opp. at 9:10-9:12), Abhyanker ignores this case law cited by Counterdefendants' Motion. *See* Motion at 11-12.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

occurred.  The paragraphs Abhyanker points to merely allege that two of Nextdoor.com's founders, Nirav Tolia and Janakiraman, were entrepreneurs in residence (EIRs) at Benchmark Capital at the time Abhyanker purportedly disclosed certain LegalForce/Nextdoor Trade Secrets to Benchmark.  Opp. at 12:5-12:7.  Based on this, Abhyanker opines that it would be "too coincidental" for them to begin to develop (four years later) a neighborhood social network (AC ¶ 143), and speculates, on "reason and belief," that Tolia and Janakiraman must have rooted through Benchmark's "electronic archives" to find some, or all (the Amended Counterclaim never says) of Abhyanker's LegalForce/Nextdoor Trade Secrets.  *Id*. ¶ 149.  The only "fact" pled in support of this wild speculation is that Tolia and Janakiraman had "access to the Benchmark offices."  *Id*. While it is true that a claimant need not identify admissible evidence to survive a motion to dismiss, he must at least allege facts that, if accepted as true, provide a basis to conclude that a wrong occurred.  The mere allegation that the founders of Nextdoor.com were associated with Benchmark at a time that *others* met with Fatdoor about funding is not sufficient for a jury, or court, to conclude that any wrong occurred.

Abhyanker's allegations regarding the purported disclosure by Sood are equally deficient. As Counterdefendants explained in the Motion, there is not a single fact pled to support the conclusory allegation that Sood disclosed even one of his purported secrets to Nextdoor.com or Janakiraman—only conjecture that he might have because he and Janakiraman are college friends.  Motion at 17-18.[4]

To make matters worse, Abhyanker concedes that he has not (and cannot) plead anything more without discovery.  Opp. at 12-13.  He attempts to defend this inability (and his apparent

---

[4] Abhyanker's contention that Tolia "met with Abhyanker and essentially admitted the misappropriation" (Opp. at 1:5-9) is nothing short of appalling.  Putting aside that this appears nowhere in the Amended Counterclaim and thus cannot be considered on this Motion, the meeting that Abhyanker references was a confidential settlement meeting that Abhyanker surreptitiously recorded without Tolia's knowledge or consent.  Abhyanker previously stipulated that the recording would never be used for those very reasons.  He has not only broken that stipulation, but in addition, lied to the Court about the contents and the fact that it was consented to.  Nextdoor.com and/or Tolia intend to seek relief for Abhyanker's conduct in this regard at the appropriate time, and reserve all rights in this regard.  But in any event, even the quoted allegation does not provide any *facts* supporting Abhyanker's claim.  Abhyanker does not identify *any* secret "admittedly" disclosed or used, or when or where or by whom the disclosure purportedly occurred.  An assertion that someone "essentially admitted" a legal conclusion is still no more than a legal conclusion.

6

failure to comply with his Rule 11 obligations) by arguing he can state a claim based on allegations made on "information and belief." *Id*.  He cannot.  Following *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), all claims must be supported by facts showing a plausible entitlement to relief—even those pled in part on information and belief.  *See, e.g., Kemp v. IBM*, No. C-09-4683, 2010 WL 4698490, at *4 (N.D. Cal. Nov. 8, 2010) (dismissing claim based on conclusory allegations made on information because they did not provide "specific facts that would assure the court that there is some plausible basis for liability"); *Poirier v. City of Hollywood*, No. CV 11-2030, 2011 WL 6046920, at *5-*6 (C.D. Cal. Sep. 20, 2011).

In *Kemp*, the Northern District addressed a similar attempt to mask the lack of factual support for a plaintiff's claims through the use of information and belief pleading.  *Kemp*, 2010 WL 4698490, at *4.  That complaint claimed that IBM failed to keep employment records in compliance with California labor law, alleging:

> Plaintiff has been unable to obtain payroll records from any central location in California or from the establishment at which he is employed showing his total hours worked daily and all wages paid.  Upon information and belief, no such centralized records exist in the state of California.

*Id*. at *4.  The court held that these allegations did not rise to the level of plausibility required because they did not demonstrate "beyond a highly speculative level" that IBM engaged in any unlawful record keeping activity.  *Id*.  The court explained that the plaintiff "must provide some reasonable basis for concluding that IBM is not in conformity with the Labor Code" and required factual allegations demonstrating that the plaintiff had at least made a good faith investigation to prove the existence of the records at issue.  *Id*.  Simply offering a conclusion of unlawful activity on information and belief, without any factual support for it, was insufficient, and the complaint had to be dismissed.  *Id*.  In short, while *facts* alleged on information and belief can sustain a claim (and may be permitted in appropriate circumstances under Rule 11), information and belief pleading does not excuse the absence of any allegation of facts.

Likewise here, Abhyanker provides no factual support for his conclusory allegation that Nextdoor.com and Janakiraman wrongfully acquired any of the long list of asserted trade secrets from Benchmark Capital, or from Sood.  He provides only rank and conclusory conjecture,

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

generalized as to all possible "secrets" he can think to include.  This is not nearly enough to allow Abhyanker to get past the pleadings stage and drag Nextdoor.com, its founders, and its investors through discovery in an attempt to learn whether he had any basis to bring this claim in the first place.  *Id.* (plaintiff "cannot 'unlock the doors of discovery' regarding IBM's record-keeping without providing some specific facts that would assure the court that there is some plausible basis for liability") (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

### B.    Abhyanker Has Not Alleged Use of any Trade Secret by Nextdoor.com or Janakiraman.

In response to Counterdefendants' argument that Abhyanker failed to allege that Nextdoor.com or Janakiraman actually *used* any of his purported trade secrets, Abhyanker's Opposition points to two conclusory allegations he has made:  (1) that Nextdoor.com's "social network is built on and uses Abhyanker's trade secrets"  (Opp. at 12 (AC ¶¶ 159, 175)); and (2) that Nextdoor.com and Janakiraman "use [sic] Abhyanker's trade secret testing plan to launch in the same Lorelei neighborhood selected in Abhyanker's trade secrets."  *Id*. (citing AC ¶¶ 150-153).  Neither is sufficient.

As to the former, these allegations are far too conclusory to form the basis of a trade secret claim.  *See* Motion at 19-20.  Abhyanker is required to specify what trade secrets have been used and how; his allegations do not even attempt to do that.  *Id.* (citing *Pellerin v. Honeywell Int'l Inc.*, 11-CV-01278, 2012 U.S. Dist. LEXIS 94635, at \*11 (S.D. Cal. July 6, 2012) (identification of an end product along with conclusory allegations that it uses the plaintiff's trade secrets are insufficient)).  Abhyanker nowhere explains, even in general terms, how Nextdoor.com used any of the thirty five-plus "secrets" listed in his Amended Counterclaim.  AC ¶ 170.  For instance, there is no suggestion anywhere that Nextdoor.com used any "key product details," "algorithms," "business plans," "security algorithms," "database structures," "software code," "instrumentalities," "customer lists," "architecture," "social networking," "spheres of influence," or "application technologies" that were uniquely developed and owned by Abhyanker, much less any indication of what these buzzwords mean.[5]  Indeed, the only "secret" Nextdoor.com is

---

[5] The vast majority of these catchphrases are all but meaningless, falling well below the level of

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

alleged to have used is the name "nextdoor.com," which as discussed above, was not a trade secret.  AC ¶¶ 108, 157-159.

Abhyanker's allegations regarding the alleged use of the Lorelei neighborhood in Menlo Park to test a prototype fare no better.  While there may be characteristics of a neighborhood—or a city or a street corner—that make it particularly suitable to run tests, those characteristics are not a trade secret.  The demographic makeup, proximity to IT centers or resources, and other factors that might lead to use of any particular location are not proprietary to Abhyanker.  He alleges no work he did that converted public information into a "secret" "formula, pattern, compilation, program, device, method, technique or process, that" is not "generally known…to other persons."  Cal. Civ. Code 3426.1(d)(1) (definition of trade secret).[6]

But in any event, Abhyanker does not allege that Nextdoor.com or Janakiraman ever acquired any secret about Lorelei, or even knew that any secret existed.  There are no facts pled to support a conclusion that testing in that neighborhood was based on anything other than public information.  As such, Abhyanker has failed to plausibly allege use of any specific, viable trade secret by Nextdoor.com, warranting dismissal.  *Nexsales*, 2012 WL 216260, at *2 (trade secret plaintiff must alleged that the defendant acquired, disclosed, or used a trade secret through improper means).

**C.   Abhyanker's Opposition Fails to Identify any Facts Pled to Show that He Suffered Damages.**

Abhyanker's Opposition does not identify a single fact that he has pled that shows he has

_____

specificity required to plead the existence of a bona fide trade secret in the face of a motion to dismiss.  *See, e.g.*, *Farhang v. Indian Institute of Technology*, No. C 08–02658, 2010 WL 2228936, at *13 (N.D. Cal. June 1, 2010) (allegation of misappropriation of "business models and implementations" of mobile data access system insufficiently specific to state a misappropriation claim and survive a motion to dismiss); *Diodes, Inc. v. Franzen,* 260 Cal. App. 2d 244, 253 (1968) ("secret process" for the manufacture of diodes insufficient to state a claim); *Bespaq Corp. v. Haoshen Trading Co.*, No. C 04-3698, 2005 WL 14841, at *4 (N.D. Cal Jan. 3, 2005) (allegations that defendant misappropriated "customer lists," "pricing information," and "marketing strategies" regarding dollhouse furniture too conclusory to state a claim).

[6] Abhyanker's allegations in the Amended Counterclaim suggest that he considers the use of the Lorelei neighborhood for testing to be "evidence" that misappropriation occurred, not that he considers, or has any basis to assert, that the reasons to use that neighborhood to test a prototype were unknown to the public.  Compare AC ¶ 109 with ¶ 153.  Indeed it is difficult to fathom how the use of a neighborhood for public testing could possibly be a trade secret.  Neighbors talk.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

suffered damages as a result of the alleged misappropriation.  Opp. at 13; *see also* Section III, *infra*.  Instead, Abhyanker merely repeats his contradictory assertion that he does in fact own the supposed trade secrets.  Because he does not, as explained by Counterdefendants' Motion and below, he could not have suffered any damages.  Motion at 20.

## III.   ABHYANKER'S OPPOSITION DOES NOT RECONCILE THE INCONSISTENCIES IN HIS ALLEGATIONS REGARDING OWNERSHIP.

Abhyanker claims there are no inconsistencies between his admissions in the State Court Action and TTAB that Google owns all of the Nextdoor-related trade secrets, and his allegation in this action that he *personally* owns them.  But those inconsistencies are as plain as day.  *See, e.g.*, RJN Ex. 2 (State Court Action Complaint or "Complaint") ¶ 5 ("[t]he entire basis for Nextdoor.com, Inc.'s business rests on these stolen and misappropriated materials now owned by Google, Inc. through its acquisition of the Nextdoor/Fatdoor patent portfolio"); FAC ¶ 21 (characterizing the business that Fatdoor, Inc. intended to pursue with the Nextdoor.com name as "neighborhood social networking"); *id*. ¶ 169 ("Google, Inc. now owns the rights to the original technology of the Nextdoor/Fatdoor concept"); RJN Ex. 4 ("First Opposition") ¶ 14 ("Fatdoor, Inc. intended to purchase the 'www.nextdoor.com domain name shortly after Series B funding"); AC ¶ 114 (explaining that Abhyanker assigned patent applications and "hundreds of pages of documents that became the basis for more than 46 patent applications" to Fatdoor on or about February 1, 2007).

Unable to erase his prior words, Abhyanker seeks to invent ambiguity.  He claims that there is no contradiction because his pleadings in the State Court Action used only "vague and amorphous phrases like the 'Nextdoor/Fatdoor' concept" to describe the trade secrets he assigned to Fatdoor, hence "there is no way to even compare what was being references in the prior lawsuit."  Opp. at 6.  This argument is wrong for two reasons.  *First*, it does nothing to reconcile his directly contrary allegations regarding who *owned* the alleged trade secret information (including the use of the nextdoor.com name in connection with an online social network for neighbors).  *Second*, it does not show that the trade secrets at issue in the State Court Action were distinct from those asserted here.  Noticeably absent from the Opposition (or Amended

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Counterclaim) is any description of the trade secrets Abhyanker concedes are owned by Google. If there truly were some different universe of trade secrets at issue in the State Court Action, Abhyanker should say so, and provide enough specificity to back it up.  It is his burden to provide a credible explanation for the inconsistencies in his pleadings if he wants them to stand.  *See Bauer v. Goss*, C 12-00876, 2012 U.S. Dist. LEXIS 95334, at *9 (N.D. Cal. July 10, 2012) ("[w]hen the party who made the ostensible judicial admission explains the error in a subsequent pleading or by amendment, the Court must accord the explanation 'due weight.'  Nevertheless, when the party fails to provide a credible explanation for its 'error,' the Court may disregard the contradictory pleading.").  To the contrary, it is inexplicably inconsistent to allege, in this action, that Nextdoor.com used *Abhyanker's* purported secrets as "the foundation of its business" (AC ¶ 175), while asserting in the State Court Action that "the entire basis for Nextdoor.com, Inc.'s business rests . . . on . . . materials now owned by Google, Inc."  Complaint ¶ 5.

Nextdoor.com respectfully suggests that the Court may see Abhyanker's inconsistent allegations for what they are:  an attempt to get around admissions of a reality that is fatal to his claim.  Indeed, it was not until Abhyanker's standing was challenged in the State Court Action that he claimed, in his initial Counterclaim in this action, that he, rather than his former employer Fatdoor, Inc., developed and owned trade secrets distinct from those for which Fatdoor sought funding from Benchmark.  Dkt. 16 ¶ 149.  And it was not until that initial Counterclaim was challenged, again based on standing, that he changed his story yet again, claiming now that it was a defunct company, LegalForce, Inc. that developed the trade secrets at issue, separately from his employment at Fatdoor, Inc., and that he acquired those secrets from LegalForce.  AC ¶ 109.

Abhyanker's continued mutations of his story are impermissible in a judicial system that requires truth, not opportunistic manipulation.  There are no facts alleged in the Amended Counterclaim, and none offered in the Opposition, that could allow this Court to conclude that Abhyanker developed two "separate and distinct" bodies of trade secrets—both of which just happen to cover a neighborhood social network to be named nextdoor.com and each of which forms the entire basis of Nextdoor.com's business. *Compare* AC ¶ 170 ("Abhyanker developed and owned trade secret information relating to the concept of an online neighborhood social

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

network to be called Nextdoor") to FAC ¶ 119 (explaining that an early conception document for Abhyanker's Nextdoor/Fatdoor concept "clearly included the name 'Nextdoor'").

## IV. ABHYANKER'S COUNTERCLAIM SHOULD BE DISMISSED WITH PREJUDICE.

Abhyanker argues that even if this Court grants Counterdefendants' Motion to dismiss, he should be provided leave to amend. Opp. at 14. But Abhyanker already amended his Counterclaim once in an attempt to cure the fatal deficiencies pointed out by Counterdefendants in their motion to dismiss the original Counterclaim. He has not identified a single fact he could allege via amendment to cure the deficiencies with his claims. Nor could he. For the reasons discussed herein, Abhyanker's claims are doomed because he publicly disclosed the only trade secrets he has alleged Nextdoor.com or Janakiraman acquired or used. Even if the name and business concept had not been disclosed, Abhyanker admitted that he does not own those "secrets." Because further amendment would be futile, dismissal with prejudice is appropriate. *See, e.g., Cooney v. California*, No. C-13-0677, 2013 WL 1748053, at *4 (N.D. Cal. Apr. 23, 2013) (Chen, J.) (dismissing complaint with prejudice as amendment would be futile); *Pitsnogle v. City of Reno*, 501 Fed. Appx. 653, 654-55 (9th Cir. 2012) ("[f]inally, we agree with the district court that amendment in this case would be futile. While Pitsnogle argues that he can add 'factual content' that would save his complaint, he has failed to identify any facts he could include. Therefore, it was appropriate to deny Pitsnogle the opportunity to amend his complaint"); *In re VISX, Inc. Sec. Litig.*, Nos. C 00-0649, C-00-0815, 2001 WL 210481, at *11 (N.D. Cal. Feb. 27, 2001) ("[i]n light of [plaintiffs'] failure to identify any additional facts which might change the outcome of this case, leave to amend would be futile and thus will not be granted").

## V. ABHYANKER'S AFFIRMATIVE DEFENSES ARE INSUFFICIENT AND SHOULD BE STRIKEN.

Finally, Abhyanker's Opposition fails to identify any facts pled in support of his affirmative defenses. He asserts, without any specific references, that his "Answer and Counterclaim contain extensive, detailed allegations regarding the misappropriation, which, in turn, make it clear that Nextdoor did not have the right to use the trademark, did not have priority

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

in the trademark, and committed fraud on the USPTO by signing a declaration that it was the exclusive owner of the mark and that no one else had the right to use the mark." Opp. at 13. But the allegations of Abhyanker's *Counterclaim* have nothing to do with Abhyanker's Fourth (Statute of Limitations), Sixth (Estoppel), Seventh (Laches), Eighth (Acquiescence), Ninth (Waiver), Tenth (Unclean Hands), and Eleventh (Unenforceability) Affirmative Defenses in his *Answer*. Even if Nextdoor.com had misappropriated a trade secret, this would not support any defenses to its trademark rights. Abhyanker is required allege a factual and legal basis for each of his affirmative defenses. Motion at 23. His failure to do so warrants striking them.

## CONCLUSION

For the foregoing reasons, Abhyanker's counterclaim for trade secret misappropriation against Nextdoor.com, Inc. and Prakash Janakiraman should be dismissed with prejudice, and his affirmative defenses should be struck.

Dated:   May 16, 2013                FENWICK & WEST LLP


                                     By: */s/ Jennifer L. Kelly*
                                         Jennifer L. Kelly

                                     Attorneys for Plaintiff and Counterdefendant
                                     NEXTDOOR.COM, INC. and Counterdefendant
                                     PRAKASH JANAKIRAMAN