Harpreet S. Walia, Esq. (SBN 176136)
Lisa M. Chapman, Esq. (SBN 118113)
ROYSE LAW FIRM, PC
1717 Embarcadero Road
Palo Alto, California   94303
Telephone:   (650) 813-9700
Facsimile:   (650) 813-9777
E-Mail:  hwalia@rroyselaw.com
         lchapman@rroyselaw.com

Attorneys for Counterdefendant SANDEEP SOOD and
MONSOON ENTERPRISES, INC., a California corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NEXTDOOR.COM, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>RAJ ABHYANKER, an individual,<br><br>Defendant. | Case No.: 3:12-cv-05667-EMC<br><br>**COUNTERDEFENDANTS SANDEEP SOOD AND MONSOON ENTERPRISES, INC'S AMENDED MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FIRSTAMENDED COUNTERCLAIM** |
| RAJ ABHYANKER, an individual,<br><br>Counterclaimant,<br><br>v.<br><br>NEXTDOOR.COM, INC., a Delaware corporation; PRAKASH JANAKIRAMAN, an individual; BENCHMARK CAPITAL PARTNERS, L.P., a Delaware limited partnership; BENCHMARK CAPITAL MANAGEMENT CO. LLC, a Delaware limited liability company; SANDEEP SOOD, an individual; MONSOON ENTERPRISES, INC., a California corporation, and DOES 1-50, inclusive<br><br>Counterdefendants. | Complaint Filed:          November 5, 2012<br>Counterclaim Filed:       January 10, 2013<br>First Amended Counterclaim Filed:  April 8, 2013<br><br><br>Date:     June 6, 2013<br>Time:     1:30 PM<br>Judge:    Honorable Edward M. Chen<br>Place:    Courtroom 5 - 17th Floor<br>          450 Golden Gate Avenue<br>          San Francisco, California  94102 |

{00015448;1}

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................. 1

II.   FACTUAL BACKGROUND ................................................................................ 2

      A.    Nextdoor/Fatdoor - LegalForce/Nextdoor.................................................. 2

      B.    Abhyanker's State Court Litigation............................................................ 3

      C.    Instant Action ............................................................................................. 3

III.  ARGUMENT ....................................................................................................... 5

      A.    Abhyanker Admittedly Does Not Own Any of the Purported
            Trade Secrets Asserted Here ...................................................................... 6

      B.    Abhyanker Has Not Adequately Alleged Trade Secret Misappropriation ............ 8

            1.    Abhyanker Has Not Sufficiently Identified Any Trade Secrets................. 8

            2.    Abhyanker Has Failed to Allege How Sood or Monsoon
                  Wrongfully Acquired or Disclosed His Trade Secrets ............................... 10

            3.    Abhyanker Has No Plausible Theory of Damages...................................... 13

      C.    Any Trade Secret Rights in the Nextdoor Name and Concept Disappeared
            When They Were Publicly Disclosed....................................................... 13

IV.   CONCLUSION .................................................................................................. 14

COUNTERDEFENDANTS SANDEEP SOOD AND MONSOON ENTERPRISES, INC.'S AMENDED MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COUNTERCLAIM

# **TABLE OF AUTHORITIES**

<u>**Cases**</u>

*Adams v. Vivo Inc.*
C 12-01854, 2012 U.S. Dist. LEXIS 109199, at *7 (N.D. Cal. Aug. 3, 2012) .................. 6

*Architectural Mailboxes, LLC v. Epoch Design, LLC*
Case No. 10-CV-974, 2011 U.S. Dist. LEXIS 46180, at *18 (S.D. Cal. Apr. 28, 2011)... 5

*Ashcroft v. Iqbal*
556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ..................................... 1, 5, 12

*Bauer v. Goss*
C 12-00876, 2012 U.S. Dist. LEXIS 95334 (N.D. Cal. July 10, 2012) ........................... 6, 7

*Bell Atl. Corp. v. Twombly*
550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ............................. 1, 5

*Bespaq Corp. v. Haoshen Trading Co.*
2005 WL 14841, at *4 (N.D. Cal Jan. 3, 2005)......................................................... 8, 9

*Burch v. GMAC Mortgage, LLC*
No. C-09-4214, 2010 U.S. Dist. LEXIS 23659, at *5 n.1 (N.D. Cal. Mar. 15, 2010) ....... 5

*California Police Activities League v. California Police Youth Charities, Inc.*
2009 WL 537091, at *4 (N.D. Cal. Mar. 3, 2009) ................................................. 6

*Camplaie v. BAC Home Loans Servicing, LP*
706 F. Supp. 2d 1029, 1055 (E.D. Cal. 2009) ................................................. 5

*Clegg v. Cult Awareness Network*
18 F.3d 752, 754-55 (9th Cir. 1994)................................................................ 6

*Computer Sciences Corp. v. Computer Assocs. Int'l, Inc.*
CV 98-1374, 1999 U.S. Dist. LEXIS 21803, at *42 (C.D. Cal. Aug. 13, 1999)............... 13

*Coto Settlement v. Eisenberg,*
593 F.3d 1031, 1038 (9th Cir. 2010) ................................................................ 6

*Diodes, Inc. v. Franzen*
260 Cal. App. 2d 244, 253 (1968) ................................................................ 9

*Facebook, Inc. v. Power Ventures, Inc.*
08-5780, 2009 WL 3429568, at *2 (N.D. Cal. Oct. 22, 2009)............................. 5

*Falcocchia*
    709 F. Supp. 2d at 887 ................................................................... 7

*Farhang v. Indian Institute of Technology*
    08–02658, 2010 WL 2228936, at *13 (N.D. Cal. June 1, 2010).......................... 9

*Forcier v. Microsoft Corp.*
    123 F. Supp. 2d 520, 528 (N.D. Cal. 2000)........................................ 13

*Intri-Plex Technologies, Inc. v. Crest Grp., Inc.*
    499 F.3d 1048, 1052 (9th Cir. 2007) .............................................. 6

*Les Concierges, Inc. v. Robeson*
    C-09-1510, 2009 U.S. Dist. LEXIS 39414, at *4 (N.D. Cal.  Apr. 27, 2009).................... 12

*Nexsales Corp. v. Salebuild, Inc.*
    2012 WL 216260, at *2 (N.D. Cal. Jan. 24, 2012)................................... 8

*Parrino v. FHP, Inc.*
    146 F.3d 699, 705-06 (9th Cir. 1998)............................................. 6

*Pellerin v. Honeywell Int'l Inc.*
    11-CV-01278, 2012 U.S. Dist. LEXIS 94635, at *11 (S.D. Cal. July 6, 2012)................. 10

*Shwarz v. United States*
    234 F.3d 428, 435 (9th Cir. 2000) .............................................. 6

*Steckman v. Hart Brewing Inc.*
    143 F.3d 1293 (9th Cir. 1988) .................................................. 6

*Tripati*
    2005 U.S. Dist. LEXIS 38093, at *6 ............................................ 7

*Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp*
    587 F.3d 1339, 1355-56 (Fed. Cir. 1999) ....................................... 14

*Wilson v. Hewlett-Packard Co.*
    668 F.3d 1136, 1140 (9th Cir. 2012) ........................................... 5

**Statutes**

Cal. Civ. Code § 3426.1 ............................................................ 9

## I.   INTRODUCTION

Defendant and Counterclaimant Raj Abhyanker ("Abhyanker") brings this action against Counterdefendants Sandeep Sood ("Sood") and Monsoon Enterprises, Inc., a California corporation ("Monsoon")[1] for trade secret misappropriation arising from a business, Fatdoor, Inc. ("Fatdoor") that Abhyanker once allegedly worked for and was subsequently fired from and which was ultimately acquired by Google, Inc.

Aside from the glaring issue of standing, Abhyanker's claims are replete with mere speculation. At one point, Abhyanker concludes that because Sood was not selected to be part of Fatdoor's founding team (as a result of, according to Abhyanker's own admission, Sood's "outspoken disagreement with Fatdoor's chosen direction and technology") that Sood was "left disgruntled with a clear axe to grind." *See* Amended Counterclaim ¶123. We are asked to conclude that Sood was so upset about not being chosen to be part of a business model that he clearly did not believe in that he must have disclosed trade secrets. Such leaps of conclusion stretch the limitations of plausibility and certainly don't comport to standards of pleading articulated under *Twombly* and *Iqbal*.

Beyond just resting his claims on mere speculation, there are independent bases upon which the First Amended Counterclaim should be dismissed. First, Abhyanker does not come close to alleging the facts necessary to state a claim for trade secret *misappropriation*. He has failed, *inter alia*, to identify the asserted trade secrets with the requisite level of specificity, to demonstrate if and how Sood or Monsoon had access to Abhyanker's purported trade secrets or what purported trade secrets Sood or Monsoon allegedly disclosed. Second, the only "trade secret" that Abhyanker actually does allege that Plaintiff and Counterdefendant Nextdoor.com, Inc. ("Nextdoor") used -- the idea for a neighborhood-based social networking website called "Nextdoor" -- *was publicly disclosed in a patent application Abhyanker filed that was published before the alleged misappropriation*. Thus, any trade secret protection that could have existed in that idea was long since surrendered. Because the Counterclaim is fatally deficient in numerous respects, the claim against Sood and Monsoon should be dismissed *with prejudice*.

---

[1] Since its formation, Sood has been a shareholder and officer of Monsoon Enterprises, Inc. Monsoon Enterprises, Inc. was formerly known as Big Circle Media, Inc.

COUNTERDEFENDANTS SANDEEP SOOD AND MONSOON ENTERPRISES, INC.'S AMENDED MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COUNTERCLAIM

## II.   FACTUAL BACKGROUND

### A.      Nextdoor/Fatdoor- LegalForce/Nextdoor.

Abhyanker alleges that he developed the "LegalForce" and "Nextdoor" concept for a private online neighborhood social network, the former for inventors, by September 2006.  Dkt. 59 ("Amended Counterclaim") ¶ 109.  While Abhyanker now alleges that the Nextdoor concept was entirely separate from his "Fatdoor" concept (Amended Counterclaim ¶ 112), Abhyanker's previous complaints filed in Santa Clara County Superior Court Case No. 1-11-CV-212924 (the "State Court Action") make clear that they were one and the same.  Indeed, Abhyanker's previous allegations explain that he formed an entity called Fatdoor, Inc. to pursue what he described as the "Nextdoor/Fatdoor" concept, characterizing the "Nextdoor/Fatdoor  business model" as "neighborhood social networking." *See* Counterdefendants' Request for Judicial Notice ("RJN") Exhibit 2 ("State FAC") ¶¶ 3, 21.  Abhyanker alleged that he was working on behalf of his then-employer Fatdoor in developing this Nextdoor/Fatdoor concept, and that Fatdoor owned the resulting intellectual property. *See, e.g., id.* ¶¶ 3, 20, 21, 23, 107, 109, 111.

Abhyanker publicly disclosed this Nextdoor concept by filing a patent application that was published for public view at least as early as September 20, 2007.  RJN Exhibit 3.  This publication occurred at least three years before any alleged disclosure by Sood and nearly four years before the public launch of Nextdoor.com's website.  Amended Counterclaim ¶¶ 145-147, 159.

Abhyanker was terminated by Fatdoor's board of directors in July 2007.  State FAC ¶ 107.  Thereafter, Fatdoor abandoned the idea of a neighborhood social networking website and transitioned into a local website for mothers to plan events, changing its name to "Center'd." which later was changed to DealMap. *Id.* ¶ 111.  In August 2011, DealMap, along with all of its intellectual property, was acquired by Google. *Id.*  Notably, Abhyanker does not allege -- in the Amended Counterclaim or elsewhere -- that he ever reacquired any intellectual property relating to the Nextdoor/Fatdoor concept.

Perhaps because he has no way to dispute his previously stated allegations, Abhyanker now introduces a new player into his Amended Counterclaim-LegalForce.  However, in his complaints filed in the State Court Action and in his Counterclaim in the instant action, Abhyanker makes no mention of LegalForce or that it shared the same code base with Nextdoor. *See generally* RJN Ex. 1 ("Complaint");

State FAC; Dkt. No. 16 ("Counterclaim"). The Nextdoor/Fatdoor reference in the State Court Action is replaced with LegalForce/Nextdoor references in the instant action.

### B.   Abhyanker's State Court Litigation.

On November 10, 2011, Abhyanker filed his initial complaint in the State Court Action. In addition to suing Nextdoor.com, he also named as defendants several of its founders and investors, including Counterdefendant herein, Benchmark Capital ("Benchmark"). *See* Complaint. Abhyanker filed a First Amended Complaint in that action on December 6, 2011. *See* State FAC. Neither Sood nor Monsoon was named defendants in either the Complaint or the First Amended Complaint, even though the thrust of Abhyanker's allegations in the State Court Action mirrored Abhyanker's Counterclaim and Amended Counterclaim.

In contrast to his Amended Counterclaim here, Abhyanker's pleadings in the State Court Action acknowledged that Google, Inc. (not Abhyanker) owns any intellectual property at issue. *See* Complaint ¶ 5; State FAC ¶ 23 ("[t]he entire basis for Nextdoor.com, Inc.'s business rests on these stolen and misappropriated materials now owned by Google, Inc. through its acquisition of the Nextdoor/Fatdoor patent portfolio"); *see also* State FAC ¶ 169 ("Google, Inc. now owns the rights to the original technology of the Nextdoor/Fatdoor concept"). As to the description of the alleged trade secrets of Nextdoor/Fatdoor, Abhyanker defined them as "covering a wide-variety of geo-spatial database, architecture and application technologies associated with neighborhood communication and geo-spatial social networking." *Id* ¶ 20.[2] That Abhyanker now claims that the Fatdoor concept was "a [w]ikipedia like public database of neighborhood profiles" and that it was a not a "social network" is particularly galling in light of this previous allegation. Amended Counterclaim ¶ 112. Abhyanker voluntarily dismissed his First Amended Complaint after defendants filed demurrers thereto.

### C.   Instant Action.

Nextdoor.com brought forth the instant action against Abhyanker before this Court seeking declaratory relief and trademark infringement arising from Abhyanker's use of the NEXTDOOR mark.

---

[2] It should be noted that many of the key words Abhyanker used to describe the Nextdoor/Fatdoor trade secrets are used to describe the LegalForce/Nextdoor Trade Secrets. Amended Counterclaim ¶109.

*See generally* Dkt. No. 1.  Neither Sood nor Monsoon have been named or even mentioned in Nextdoor.com's Complaint.  Abhyanker responded thereto with his Counterclaim alleging various claims against Nextdoor.com and several nonparties to the original action, namely Janakiraman, Sood, Monsoon, and Benchmark.  *See generally* Counterclaim.  Most of these claims are merely restatements of earlier claims made in the State Court Action with certain convenient recharacterizations.  Chief among the recharacterization is that Fatdoor and Nextdoor were "separate" concepts, that he, not Google, owns the Nextdoor Trade Secrets, and that the trade secrets of the technology business models of Nextdoor and Fatdoor were distinct.[3]   In response to the Counterclaim, all Counterdefendants filed separate Motions to Dismiss.  *See generally* Dkt Nos. 38, 40, 45.   Without responding to said motions, Abhyanker filed this First Amended Counterclaim .  *See generally* Dkt No. 59.  The Amended Counterclaim while making the same allegations regarding Nextdoor and Fatdoor as the Counterclaim, further attempts to recharacterize the State Court Action and now the Counterclaim by adding a new entity to the mix, LegalForce- an entity that never appears in the State Court Action or in the Counterclaim.  And, because of the issues surrounding ownership of Fatdoor,  Abhyanker now conveniently changes the alleged trade secrets from "Nextdoor/Fatdoor Trade Secrets" (the State Action) to "Abhyanker's Nextdoor Trade Secrets" (Counterclaim) to now the "LegalForce/Nextdoor Trade Secrets" (Amended Counterclaim).  *See* State FAC" ¶¶ 3, 21; Counterclaim ¶108 ; Amended Counterclaim ¶ 109 .  This is nothing more than a transparent and cynical attempt by Abhyanker  to continue changing the facts to suit his particular need.

Abhyanker makes essentially three allegations against Sood and Monsoon in his Amended Counterclaim. First, that he hired Monsoon to provide certain software and website development services pursuant to an alleged written contract in late 2006[4].  Amended Counterclaim ¶ 110.  During the approximately 30 days from the inception of the alleged contract to when Abhyanker claims to have

---

[3] Additionally, Abhyanker sued Sood and Monsoon though he had previously alleged in the State Court Action that somehow the very same trade secrets alleged to have been disclosed to Nextdoor.com in the Counterclaim had been disclosed without the involvement of Sood or Monsoon.

[4] It is implausible that the alleged agreements would have been signed by both Monsoon and Sood.  Sood was simply an officer of Monsoon and as such would not have signed the documents in his personal capacity.  Moreover, the Counterclaim is void of any claim or allegation for alter ego liability or other theory that would allow for a claim against Sood individually.

1   placed the LegalForce/Nextdoor concept on hold, Abhyanker alleges to have provided Monsoon and

2   Sood  access to certain concept and trade secret information for his LegalForce/Nextdoor concept-

3   presumably the "LegalForce/Nextdoor Trade Secrets".  Second, Abhyanker claims that three years later,

4   Sood responded to a survey circulated by Nextdoor.com.  Amended Counterclaim ¶ ¶ 145-146.  Third,

5   that at some point after his response to the survey (and at a time when Nextdoor.com had already

6   developed the core of their business model), Sood disclosed the alleged trade secrets to Nextdoor.com.

7   Amended Counterclaim ¶ ¶ 147, 156.

8                                **III.   ARGUMENT**

9        A motion to dismiss should be granted if the plaintiff is unable to articulate facts establishing a

10   claim to relief that is "plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173

11   L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167

12   L.Ed.2d 929 (2007)); *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012).  "[A]

13   plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels

14   and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*,

15   550 U.S. at 555 (citations omitted).  The complaint must allege facts which, when taken as true, raise

16   more than a speculative right to relief.  *Id.*  The facts must "nudge [the] claims across the line from

17   conceivable to plausible."  *Id.* at 570.  *Twombly* serves to remind the district courts that they are entitled

18   to "insist upon some specificity in pleading before allowing a potentially massive factual controversy to

19   proceed." *Facebook, Inc. v. Power Ventures, Inc.*, 08-5780, 2009 WL 3429568, at *2 (N.D. Cal. Oct.

20   22, 2009).

21        Where one of multiple theories pled in support of a cause of action is deficient, courts should

22   dismiss those theories separately. *See, e.g., Architectural Mailboxes, LLC v. Epoch Design, LLC,* Case

23   No. 10-CV-974, 2011 U.S. Dist. LEXIS 46180, at *18 (S.D. Cal. Apr. 28, 2011) (dismissing Lanham

24   Act unfair competition claim to the extent it relied upon an alternate and deficient false designation of

25   origin theory while allowing this same claim to go forward on a false advertising theory); *Burch v.*

26   *GMAC Mortgage, LLC*, No. C-09-4214, 2010 U.S. Dist. LEXIS 23659, at *5 n.1 (N.D. Cal. Mar. 15,

27   2010) (dismissing Truth in Lending Act claim to the extent it relied upon a deficient failure to deliver

28   theory while allowing this same claim to go forward on a second alternate theory); *Camplaie v. BAC*

1   *Home Loans Servicing, LP*, 706 F. Supp. 2d 1029, 1055 (E.D. Cal. 2009) (granting motion to dismiss as

2   to certain specific theories plead in support of a cause of action).

3         In ruling on a motion to dismiss, the Court need not accept as true any conclusory allegations,

4   legal conclusions, unwarranted deductions of fact or unreasonable inferences. *See Clegg v. Cult*

5   *Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994).  The Court may also disregard allegations that

6   are contradicted by documents attached to the complaint, incorporated by reference, or otherwise

7   judicially noticeable. *See Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000); *Steckman v. Hart*

8   *Brewing Inc.*, 143 F.3d 1293 (9th Cir. 1988); *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th

9   Cir. 2010); *Parrino v. FHP, Inc.*, 146 F.3d 699, 705-06 (9th Cir. 1998); *Intri-Plex Technologies, Inc. v.*

10  *Crest Grp., Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007).

11        Nor must the Court give credence to allegations that are contradicted by allegations in the

12  plaintiff's prior pleading. *See, e.g., Adams v. Vivo Inc.*, C 12-01854, 2012 U.S. Dist. LEXIS 109199, at

13  *7 (N.D. Cal. Aug. 3, 2012) ("The district court will not accept as true pleading allegations that are

14  contradicted by facts that can be judicially noticed or by other allegations or exhibits attached to or

15  incorporated in the pleading"); *Bauer v. Goss*, C 12-00876, 2012 U.S. Dist. LEXIS 95334, at *9-*10

16  (N.D. Cal. July 10, 2012) (dismissing complaint where plaintiff attempted to contradict allegations in a

17  previous pleading).

### A.    Abhyanker Admittedly Does Not Own Any of the Purported Trade Secrets Asserted Here.

20        Under the California Uniform Trade Secrets Act ("CUTSA"), ownership of a valid trade secret is

21  a prerequisite to a claim for trade secret misappropriation. *See, e.g., California Police Activities League*

22  *v. California Police Youth Charities, Inc.*, 2009 WL 537091, at *4 (N.D. Cal. Mar. 3, 2009) (dismissing

23  claim for failure to allege ownership).  Abhyanker fails to allege facts in support of this threshold

24  element.

25        While Abhyanker now conclusorily alleges that he owns a laundry list of vaguely identified trade

26  secrets related to the Nextdoor/Fatdoor business concept (Amended Counterclaim ¶ 109), that

27  conclusion cannot be credited because it is flatly contradicted by Abhyanker's own previous concessions

28  in the State Court Action.  In the State Court Action, Abhyanker candidly admitted that he does not own

1    any of the Fatdoor/Nextdoor trade secrets—instead explaining that they were acquired by Google

2    through its acquisition of Fatdoor, Abhyanker's previous employer.  Specifically, Abhyanker alleged in

3    his State FAC in the State Court Action that "[t]he entire basis for Nextdoor.com, Inc.'s business rests

4    on these stolen and misappropriated materials *now owned by Google, Inc.* through its acquisition of the

5    Nextdoor/Fatdoor patent portfolio."  State FAC ¶ 23 (emphasis added).  Abhyanker further explained

6    that, having purchased the assets of the successors to Fatdoor, Inc., "Google, Inc. now owns the rights to

7    the original technology of the Nextdoor/Fatdoor concept" ( State FAC ¶ 169) and that he attempted to

8    bring Google into his lawsuit as a plaintiff.  *Id.* ¶ 163.  As Abhyanker's prior pleadings made clear, any

9    trade secrets, including potential use of the domain name "www.nextdoor.com," were the property of

10   Fatdoor, Inc., and now the property of Google.

11        Abhyanker's Amended Counterclaim is a transparent attempt to avoid the effect of these

12   previous concessions by pursuing his claims in a different forum.  But Abhyanker cannot escape his

13   previous admissions.  They are binding, and the Court should not accept Abhyanker's revisionism.  *See,*

14   *e.g.*, *Falcocchia*, 709 F. Supp. 2d at 887 (dismissing based on contradictory allegations in previous state

15   court filings); *Tripati*, 2005 U.S. Dist. LEXIS 38093, at *6 (same); *Bauer*, 2012 U.S. Dist. LEXIS

16   95334, at *8-*10 (dismissing claims based on contradictions between complaints).  *Bauer* is instructive

17   on this point.  In that case, the plaintiff had alleged in its original complaint that it entered into a written

18   agreement with the defendant for the provision of legal services.  *Id.* at *8.  That agreement contained a

19   forum selection clause designating Washington as the proper forum for any dispute.  Following a motion

20   to dismiss the California action for improper venue, the plaintiff filed an amended complaint contending

21   that the defendant was *not* a party to any agreement with the plaintiff.  *Id.* at *8-*9.  The court refused to

22   credit these allegations, explaining that they were contradicted by the plaintiff's original complaint, and

23   dismissed the case.  *Id.*

24        Here, Abhyanker's previous allegations doom his trade secret claim.  Abhyanker's own

25   allegations confirm that he does not own any of the trade secrets asserted here and did not own them at

26

27

28

{00015448;1}                                         7

the time of the alleged misappropriation.[5]  Adding a new entity that now also claims to own the alleged trade secrets independent of Nextdoor/Fatdoor cannot save the claim.  First,  as noted above, Abhyanker makes no mention of LegalForce in the State Court Action.  More importantly Abhyanker's own previous allegations unambiguously states that "[t]he entire basis for Nextdoor.com, Inc.'s business rests on these stolen and misappropriated materials *now owned by Google, Inc."*[6]  Accordingly, to the extent any claims could exist, they do not belong to Abhyanker-whether by way of Nextdoor or LegalForce. As such, Abhyanker lacks standing and his trade secret and intentional interference claims should be dismissed with prejudice.

### B.   Abhyanker Has Not Adequately Alleged Trade Secret Misappropriation.

Even if Abhyanker had standing, his misappropriation claim would still fail because he has failed to allege even the most basic facts in support of the elements of such a claim.  Those elements are:  (1) ownership of a valid trade secret; (2) that the defendant acquired, disclosed, or used the trade secret through improper means; and (3) that the defendant's actions have harmed the plaintiff.  *See, e.g.*, *Nexsales Corp. v. Salebuild, Inc.*, 2012 WL 216260, at *2 (N.D. Cal. Jan. 24, 2012) (Chen, J.). Abhyanker must plead *facts* in support of these elements -- not just conclusions.  *Id.* (conclusory allegations that "fail[] to identify the information that was taken, and do[] not provide facts demonstrating that the information constitutes a trade secret" are insufficient to defeat a motion to dismiss); *Bespaq Corp. v. Haoshen Trading Co.*, 2005 WL 14841, at *4 (N.D. Cal Jan. 3, 2005) (bare allegation that the defendant misappropriated "customer lists," "pricing information," and "marketing strategies" too conclusory to state a claim for trade secret misappropriation).  Abhyanker has failed as to all three elements.

### 1.   Abhyanker Has Not Sufficiently Identified Any Trade Secrets.

It is black letter law that a plaintiff must reasonably identify its trade secrets to survive a motion to dismiss.  Following the California Court of Appeal, the Northern District has explained that:

---

[5] Indeed, Sood is not alleged to have disclosed anything to Nextdoor.com until end of 2010, several years after Abhyanker was fired.  Amended Counterclaim ¶¶ 134-36.

[6] And as stated above, the underlying concepts for both Nextdoor and LegalForce were attributed to Fatdoor in the State Court Action.

> Before a defendant is compelled to respond to a complaint upon claimed
> misappropriation or misuse of a trade secret and to embark on discovery
> which may be both prolonged and expensive, the complainant should
> describe the subject matter of the trade secret with sufficient particularity
> to separate it from matters of general knowledge in the trade or of special
> knowledge of those persons who are skilled in the trade, and to permit the
> defendant to ascertain at least the boundaries within which the secret lies.

*Farhang v. Indian Institute of Technology*, 08–02658, 2010 WL 2228936, at \*13 (N.D. Cal. June 1, 2010) (citing *Diodes, Inc. v. Franzen,* 260 Cal. App. 2d 244, 253 (1968)).

A trade secret is statutorily defined as "information, including a formula, pattern, compilation, program, device, method, technique, or process, that: (1) derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Cal. Civ. Code § 3426.1.  Under the standard articulated in *Farhang*, enough has to be pled for the Court to assess whether the plaintiff plausibly can claim ownership of a valid trade secret under this definition.  Doing so requires more than conclusory labels, buzz words, and vague descriptions. *Farhang*, 2010 WL 2228936, at \*14 ("business models and implementations" of mobile data access system insufficiently specific to state a misappropriation claim); *Diodes,* 260 Cal. App. 2d at 252 ("secret process" for the manufacture of diodes insufficient to state a claim); *Bespaq*, 2005 WL 14841, at \*4 (allegations that defendant misappropriated "customer lists," "pricing information," and "marketing strategies" regarding dollhouse furniture too conclusory to state a claim).

Abhyanker's allegations do not come anywhere near this standard.  Instead, all he offers are labels with no context and no explanation of what was secret and valuable within the broad terms included within his definition of LegalForce/Nextdoor Trade Secrets. *See* Amended Counterclaim ¶ 170 (alleging that Sood and Monsoon misappropriated and disclosed "a wide variety of information" including "key product details," "algorithms," "business plans," "product concepts," "methods," "works of authorship," "instrumentalities").  Nothing even approaching a concrete, viable trade secret is alleged.

While Abhyanker need not fully specify the metes and bounds of his alleged trade secrets in a public complaint, he is obligated to provide enough details to put Sood and Monsoon on notice of precisely what it is they are accused of misappropriating.  Thus, although he need not submit the exact

1   specifications of an algorithm (or concept, method, plan, or instrumentality) with his complaint, he must

2   at least explain what algorithm(s) he is referring to, and why it was valuable and secret. Because

3   Abhyanker has failed to do so, his Counterclaim should be dismissed.

4         **2.**     **Abhyanker Has Failed to Allege How Sood or Monsoon Wrongfully**

5                 **Acquired or Disclosed His Trade Secrets.**

6          Trade secret misappropriation requires either (1) the acquisition of a trade secret by improper

7   means, or (2) the use or disclosure of a trade secret known to have been acquired by improper means.

8   Cal. Civ. Code 3246.1(b)(1) and (2). Abhyanker fails to allege facts explaining how Sood or Monsoon

9   acquired or used his alleged trade secrets. Again, *facts* are required to support these essential elements

10  of the claim. *See Pellerin v. Honeywell Int'l Inc.*, 11-CV-01278, 2012 U.S. Dist. LEXIS 94635, at *11

11  (S.D. Cal. July 6, 2012). Bare conclusions and unwarranted inferences -- which are all the Counterclaim

12  offers -- plainly are insufficient. *Id.*

13         First, Abhyanker fails to allege that Sood or Monsoon acquired the trade secrets by improper

14  means. Abhyanker acknowledges that he voluntarily provided information to Sood and Monsoon

15  sometime in September 2006. Amended Counterclaim ¶ 110. Setting aside the question of what

16  information Abhyanker claims was specifically provided to Monsoon and or Sood and if the

17  information provided even amounted to protectable trade secrets[7]-- none of which is alleged by

18  Abhyanker, the Counterclaim fails to plausibly allege, other than unwarranted inference, any wrong

19  doing by Sood or Monsoon in acquiring any information from Abhyanker.[8]

20         One of the linchpin elements for Abhyanker's claim against Monsoon and Sood is that they each

21  breached a written agreement that purportedly contained some provision that required them to keep

22  certain information confidential. Amended Counterclaim ¶ 110. Without such an agreement, neither

23  Monsoon nor Sood could have acquired the information improperly as Abhyanker alleges (as Abhyanker

24

---

25  [7] As alleged in Section III B above, Abhyanker has failed to specify the alleged trade secrets with any level of required
26  specificity.

27  [8] That Sood and Monsoon had some long elaborate and forward looking plan to obtain the alleged trade secrets, hold them for
28  years and then disclose them to an acquaintance for no apparent financial gain or benefit other than to destroy Abhyanker's
    business.

1  would have voluntarily provided any such information), nor would either have a duty of non-disclosure.

2  However, Abhyanker fails to site the specific provision that would create such an obligation under the

3  alleged agreement nor does he attach a copy of the alleged agreements that form the basis of such

4  obligation. Moreover, Abhyanker fails to disclose any of the potential limiting language that may have

5  been contained in such provisions or more importantly, even who the contracting parties were other than

6  Monsoon and Sood.[9] Thus on an essential linchpin element of his own allegations, all we are left with is

7  more guesswork and speculation. Certainly such allegations do not raise the right to relief beyond the

8  speculative level as admonished under *Twombly*.

9      Second, Abhyanker conclusively alleges Sood and Monsoon disclosed the Nextdoor Trade

10  Secrets to Nextdoor.com and Janakiraman. Amended Counterclaim ¶¶ 147, 174. But there is not a

11  single fact pled in the Amended Counterclaim to warrant this conclusion. As the Amended

12  Counterclaim is devoid of any allegations of fact (even if true) that would support the finding that

13  Nextdoor.com is using any of Abhyanker's trade secrets, there is no basis to even speculate that Sood or

14  Monsoon "disclosed" anything to anyone. As to the alleged disclosure by Sood (who as admitted by

15  Abhyanker worked with or for Abhyanker for a brief period in 2006 (Amended Counterclaim, ¶110),

16  there is only mere allegation that Sood and Janakiraman attended Berkeley and are friends (*Id.* ¶ 138)

17  and that Sood participated in a survey Nextdoor.com sent to its friends and family members in 2010 to

18  gather their feedback regarding the Company's concept for an online neighborhood social network. *Id.*

19  ¶¶ 145-146. It is important to note here that by alleging that Nextdoor.com conducted this survey,

20  Abhyanker necessarily concedes that Nextdoor.com had *already come up with the concept for an online*

21  *neighborhood-based social network* prior to any alleged disclosure of trade secrets that Sood may have

22  made in his survey response or thereafter. *See* ¶ 145-147. Further, Abhyanker tellingly does not allege

23  that Sood actually made any such unlawful disclosure in his survey response, much less what he

24  purportedly disclosed. *Id.* Based on these separate innocuous facts and Sood's alleged "downplay[ing]"

25  of his relationship with Janakiraman, Abhyanker leaps to the conclusion that "Sood was trying to

26  _____

27  [9] It is implausible to that Abhyanker, in his individual capacity, would have entered into a valid written contract with Sood or Monsoon. It is clear from the State Court Action that during the time of the signing of the alleged contract, Abhyanker was

28  acting as an agent of Fatdoor in the development of the Nextdoor concept. State FAC ¶ 12.

1   conceal his wrongful conduct of disclosing Abhyanker's Nextdoor Trade Secrets to Janakiraman and

2   Nextdoor.com." Amended Counterclaim ¶¶ 139, 141.  In essence, Abhyanker asks the Court to

3   conclude that because Sood and Janakiraman were friends, and because Janakiraman was employed by

4   Nextdoor.com, disclosure was inevitable.  However, California courts reject the doctrine of inevitable

5   disclosure even in the employment context, let alone among friends. *See Les Concierges, Inc. v.*

6   *Robeson*, C-09-1510, 2009 U.S. Dist. LEXIS 39414, at *4 (N.D. Cal. Apr. 27, 2009) ("a threat of

7   misappropriation cannot, as a matter of California law, be inferred from the fact Robeson, upon

8   voluntarily terminating his employment with LC US, immediately began working for a direct competitor

9   and appears to be performing for his new employer the same or similar job duties").

10          Further, the mere allegations made herein do no rise to the level of pleading that is "plausible on

11   its face" within the meaning of *Iqbal*.  For example, Abhyanker alleges that Sood and Monsoon

12   "improperly induced and encouraged Nextdoor.com and its founders to use Abhyanker's

13   LegalForce/Nextdoor Trade Secrets." Amended Counterclaim ¶ 173.  In the very next paragraph,

14   Abhyanker claims that Janakiraman and Nextdoor.com induced Sood and Monsoon "to breach the

15   confidentiality agreements and obligations to Abhyanker by persuading them to disclose Abhyanker's

16   Nextdoor Trade Secrets to them." Amended Counterclaim ¶ 174.  However, no facts are provided to

17   support either of these two contradictory conclusions. To compound this failure, by Abhyanker's own

18   admission, as well as his admission in the State Court Action, there are sources other than Sood and

19   Monsoon from whom Nextdoor.com could have received the alleged "LegalForce/Nextdoor Trade

20   Secrets." By way of example, Abhyanker alleges that Janakiraman and Nextdoor.com encouraged

21   Benchmark to improperly disclose Abhyanker's trade secret information.[10] Amended Counterclaim ¶

22   175. As such, Abhyanker's allegation that Monsoon and Sood disclosed the purported trade secrets to

23   Nextdoor.com is simply mere speculation on his part. Abhyanker has thus failed in every respect to

24   allege facts demonstrating that Sood or Monsoon unlawfully acquired, used or disclosed his purported

25   trade secrets.

26

27   _____

28   [10] Abhyanker additionally claims that Benchmark "improperly induced and encouraged Nextdoor.com and its founders to use "Abhyanker's Nextdoor Trade Secrets." *See* Amended Counterclaim ¶ 173.

1    **3.    Abhyanker Has No Plausible Theory of Damages.**

2        California law provides that a plaintiff must establish that he has been directly harmed by the

3    alleged misappropriation. *Computer Sciences Corp. v. Computer Assocs. Int'l, Inc.*, CV 98-1374, 1999

4    U.S. Dist. LEXIS 21803, at *42 (C.D. Cal. Aug. 13, 1999).  Abhyanker's own allegations in the State

5    Court Action (discussed above) make clear that he did not own the trade secrets at issue or even work for

6    the company (Fatdoor and its successors) that did own them at the time of the purported

7    misappropriation.  He is thus hard pressed to argue that he suffered harm from the theft of trade secrets

8    he does not own, either then or now.  Moreover, as the Amended Counterclaim is devoid of any

9    allegations of fact (even if true) that would support the finding that Nextdoor.com is using any of

10   Abhyanker's trade secrets, there can be no basis for any damages against Sood or Monsoon.   Because

11   Abhyanker has failed to allege facts in support of all three elements of his misappropriation claim, it

12   should be dismissed.

13   **C.    Any Trade Secret Rights in the Nextdoor Name and Concept Disappeared When
          They Were Publicly Disclosed.**
14

15       Regardless of the specificity of his allegations, Abhyanker could never base his claim for

16   misappropriation on acquisition or use of the concept of an online neighborhood-based social

17   networking service called "Nextdoor," because Abhyanker disclosed that concept in a patent application

18   he filed in November 2006 and which was published in September 2007.  This was nearly six years

19   before Nextdoor launched its service (Amended Counterclaim ¶¶ 157-159), and well in advance of

20   Sood's alleged disclosure of the concept to Nextdoor.com and Janakiraman, which supposedly took

21   place in October of 2010. *Id.* ¶¶ 145-147.  As noted above, this is the only purported trade secret that

22   Abhyanker describes in anything but the most conclusory terms, as well as the only one that he actually

23   alleges Nextdoor.com or Janakiraman used. *See, e.g.*, Amended Counterclaim ¶ 170.

24       The law is clear that disclosure of a trade secret in a patent application releases that information

25   to the public and, accordingly, extinguishes any trade secret protection that might exist. *See, e.g.,*

26   *Forcier v. Microsoft Corp.*, 123 F. Supp. 2d 520, 528 (N.D. Cal. 2000) ("all of Forcier's alleged trade

27   secrets had been placed in the public domain either in patents or in patent applications . . . more than a

28   year before Microsoft purchased the technology from Aha! . . . Consequently, the element of secrecy

1  was gone by the time that Microsoft acquired the information, the 'trade secret' status was

2  extinguished"); *Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp.*, 587 F.3d 1339, 1355-56 (Fed.

3  Cir. 1999) (applying California law and holding that disclosure of trade secret information in a foreign

4  patent eliminates any trade secret protection).

5      Abhyanker's published patent application described in specific terms a map-based, neighborhood

6  social network in which users could post information about themselves and their communities.  RJN Ex.

7  3 (*see, e.g.*, Abstract and Figures 1, 8, 9).  While most of the figures called this system Fatdoor,

8  Abhyanker explained that one embodiment of that idea was to be called "nextdoor.com."  *Id.*, Ex. 3 at

9  p.56, ¶ 236.  There can be no dispute from the face of this judicially noticeable patent application that

10 the concept of a neighborhood social networking website called "Nextdoor" was disclosed years in

11 advance of Nextdoor's adoption of the "Nextdoor" name for a social networking website, even as

12 alleged by Abhyanker.  Amended Counterclaim ¶¶ 150, 157-159 (alleging that Nextdoor.com in October

13 2010 operated as "'Neighborly' prior to misappropriating Abhyanker's Nextdoor name and mark"; and

14 that the Nextdoor.com acquired the domain "nextdoor.com" in February 2011).  Sood or Monsoon could

15 not have misappropriated or disclosed any trade secrets, as a matter of law, because none existed.

16     Because there was no trade secret in the Nextdoor name or business concept to protect, this Court

17 should dismiss Abhyanker's trade secret misappropriation claim with prejudice to the extent that it is

18 based upon the purported theft of this name and concept.

19                              **IV.  CONCLUSION**

20     For the foregoing reasons, Abhyanker's claim for trade secret misappropriation against

21 Counterdefendants Sood and Monsoon should be dismissed with prejudice.

22

23 Dated:   April 25, 2013                    ROYSE LAW FIRM, PC

24

25                                By: _____*/s/ Harpreet S. Walia*_____
                                       Harpreet S. Walia, Attorneys for Counterdefendants
26                                     SANDEEP SOOD and MONSOON ENTERPRISES,
                                       INC.
27

28

COUNTERDEFENDANTS SANDEEP SOOD AND MONSOON ENTERPRISES, INC.'S AMENDED MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COUNTERCLAIM