1

2

3

4

5 UNITED STATES DISTRICT COURT

6 NORTHERN DISTRICT OF CALIFORNIA

7

8 NEXTDOOR.COM, INC.,             No. C-12-5667 EMC

9          Plaintiff,              **ORDER GRANTING IN PART AND**
**DENYING IN PART COUNTER-**
10     v.                         **DEFENDANTS' MOTIONS TO DISMISS**
**COUNTERCLAIM; GRANTING IN**
11 RAJ ABHYANKER,             **PART PLAINTIFF'S MOTION TO**
**STRIKE AFFIRMATIVE DEFENSES;**
12          Defendant.            **AND DENYING DEFENDANT'S**
**MOTION TO DISQUALIFY**
13 _____/     **PLAINTIFF'S COUNSEL**

14                                        **(Docket Nos. 63, 66, 70, 88)**

15

16 **I.    INTRODUCTION**

17       This case involves a dispute over intellectual property related to neighborhood-based social

18 network websites. Plaintiff Nextdoor.com operates such a website; Defendant Raj Abhyanker

19 alleges that he previously developed concepts related to such websites in connection with a company

20 that he formerly ran. Plaintiff in this case brought suit against Defendant seeking declaratory

21 judgment that it was lawfully using its own trademark and not infringing on any trademark of

22 Defendant's. Plaintiff also brought claims against Defendant for cyberpiracy and for violations of

23 the Lanham Act. Defendant filed an answer asserting various affirmative defenses and bringing

24 counterclaims against Plaintiff and various Counter-Defendants alleging misappropriation of trade

25 secrets, breach of contract, and intentional interference with contract. After various Counter-

26 Defendants filed motions to dismiss the counterclaims, Defendant and Counter-Plaintiff Abhyanker

27 filed an amended answer and counterclaim, this time alleging only misappropriation of trade secrets.

28 Currently pending before the Court are (1) Counter-Defendants Nextdoor.com and Prakash

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1    Janakiraman's motion to dismiss the amended counterclaim and motion to strike affirmative

2    defenses, Docket No. 63; (2) Counter-Defendants Sandeep Sood and Monsoon Enterprises' motion

3    to dismiss the amended counterclaim, Docket Nos. 66 (original motion), 88 (amended motion); and

4    (3) Defendant and Counter-Plaintiff's motion to disqualify Plaintiff's counsel, Docket No. 70.

5                    **II.    FACTUAL & PROCEDURAL BACKGROUND**

6         Except as otherwise noted, the following facts are drawn from Abhyanker's amended

7    counterclaim.  Docket No. 59.

8    A.    Abhyanker's Development of LegalForce and Nextdoor Concepts

9         In the fall of 2006, Abhyanker developed the concept of a private online neighborhood social

10   network for inventors.  First Amended Answer and Counter-Claim ("FAAC") ¶ 109.  This concept

11   was to be called LegalForce.  *Id.*  A separate spin off idea using the same code base was called

12   Nextdoor.  *Id.*  In connection with these two concepts, Abhyanker developed and owned various

13   trade secrets, which are discussed in more detail below.  *Id.*

14        In September 2006, Abhyanker hired Counter-Defendant Sandeep Sood and his firm,

15   Counter-Defendant Monsoon Enterprises, Inc. (then called Big Circle Media), to provide software

16   and website development services for Abhyanker's concept, "which was to be an online private

17   social network for neighborhood inventors by geocoding of inventors and owners from public patent

18   and trademark data in a specific neighborhood."  FAAC ¶ 110.  Prior to disclosing information

19   related to this concept, Abhyanker required Sood and Monsoon to execute a Non-Disclosure

20   Agreement requiring them to keep confidential the LegalForce and Nextdoor concepts with all

21   accompanying details and work product.  *Id.*

22        A new corporation, LegalForce, Inc. was formed to own the assets of the LegalForce.com

23   and Nextdoor[1] technology.  FAAC ¶ 111.  As the domain nextdoor.com was not available at this

24   time, Abhyanker purchased nextyard.com and nextlawn.com as substitutes.  *Id.*  Neither Nextdoor

---

[1] In his counterclaim, Abyhanker refers to the "Nextdoor.com technology."  As discussed below, however, Abhyanker never owned the Nextdoor.com domain name, nor does he appear to have ever incorporated a corporation by the name Nextdoor.com.  To avoid confusion with Plaintiff and Counter Defendant Nextdoor.com, this order will use "Nextdoor.com" only to refer to that party, and will refer to any intellectual property of Abhyanker's simply as  "Nextdoor."

United States District Court
For the Northern District of California

1   nor LegalForce.com were ever publically launched, and the information related to these concepts

2   remained a trade secret.  *Id.*

3   B.      Development of Fatdoor Concept and Discussions with Benchmark Capital

4           In the course of his work on Nextdoor and LegalForce.com, Abhyanker "came up with a new

5   concept based on a Wikipedia like public database of neighbor profiles that could be edited and

6   enhanced to provide a "search" and "discover" functionality as opposed to a sign up social

7   network."  FAAC ¶ 112.  Abhyanker called this new idea Fatdoor, and ultimately incorporated

8   Fatdoor, Inc., assigning the Fatdoor intellectual property to the company.  FAAC ¶¶ 112-16.  He

9   alleges, however, that the Fatdoor concept and technology was distinct from the Nextdoor and

10  LegalForce concepts and technology, and that Fatdoor, Inc. never owned any of the intellectual

11  property related to Nextdoor and LegalForce.  FAAC ¶¶ 114-17.  The rights to the Fatdoor, Inc.

12  intellectual property were subsequently acquired by Google from Fatdoor's successor company,

13  Center'd.  FAAC ¶ 119.

14          In June 2007, a meeting was set up with Counter-Defendant Benchmark Capital.  FAAC ¶

15  129.  While Abhyanker was part of this meeting, the counterclaim is not clear whether he was doing

16  so as a representative of Fatdoor, Inc., of LegalForce, Inc., or in some other capacity.  FAAC ¶¶ 129-

17  34.  After an initial meeting in which confidential information was not discussed, Abhyanker sought

18  and obtained assurances that all information he shared with Benchmark would be held strictly

19  confidential.  FAAC ¶ 129.  Based on these assurances, Abhyanker provided a detailed disclosure of

20  LegalForce/Nextdoor trade secrets at a follow up meeting on June 21, 2007.  FAAC ¶ 130.  This

21  meeting was attended by a number of Benchmark's partners and entrepreneurs in residence.  *Id.*

22  After the meeting, Abhyanker sent follow up information to Benchmark that contained a full

23  disclosure of the Nextdoor concept and related trade secrets.  FAAC ¶ 131.

24  C.      Abhyanker Returns to Work on Nextdoor Concept

25          In the summer or fall of 2007, Abhyanker left Fatdoor because the company's investors

26  wanted to bring in a new CEO, and returned to working on the Nextdoor concept.  FAAC ¶ 136.  In

27  2008, Abhyanker purchased all remaining LegalForce, Inc. assets, including the source code that

28  made up the original LegalForce/Nextdoor concept and the LegalForce/Nextdoor trade secrets.

3

United States District Court

For the Northern District of California

1  FAAC ¶ 118.  Abhyanker continued to work on trying to restart the Nextdoor private neighborhood

2  social network based on these concepts and trade secrets.  *Id.*  Sometime in either late 2007 or 2008,

3  Abhyanker renewed his efforts to acquire the nextdoor.com domain as part of his efforts to develop

4  the Nextdoor concept.  FAAC ¶¶ 118, 136.  During this time, Abhyanker disclosed to Sood that he

5  was attempting to restart the Nexdoor business and acquire rights to the nextdoor.com domain.  *Id.*

6  D.  Plaintiff and Counter Defendant Nextdoor.com's Development of Nextdoor.com Site

7  During this time period, Plaintiff and Counter-Defendant Nextdoor.com was also developing

8  a neighborhood-based social networking site.  Abhyanker makes a number of allegations about the

9  various ways in which Counter-Defendant Nextdoor.com[2] acquired and used his

10  Nextdoor/LegalForce trade secrets in developing its site.  He alleges that Sood, the LegalForce, Inc.

11  contractor, is friends with Nextdoor.com founder and Counter-Defendant Prakash Janakiraman, and

12  that Sood passed information about Abhyanker's Nextdoor trade secrets to Janakiraman.  FAAC ¶¶

13  139-147.  Abhyanker also alleges that Nextdoor.com founders Janakiraman and Nirav Tolia were

14  entrepreneurs in residence with Benchmark Capital during the time that Abhyanker disclosed the

15  LegalForce/Nextdoor trade secrets to Benchmark, and that they gained access to the Nextdoor trade

16  secrets through their work with Benchmark.  FAAC ¶ 143.

17  In October 2010, Nextdoor.com set up a website at loreleineighbors.reallifelabs.com to

18  create a prototype of a neighborhood social networking site.  FAAC ¶ 150.  This prototype uses the

19  same neighborhood that Abhyanker had selected to test the Nextdoor concept, the Lorelei

20  neighborhood in Menlo Park, California.  FAAC ¶ 151.  Abhyanker alleges that Nextdoor.com's

21  selection of the Lorelei neighborhood to test the prototype is suspicious, as Nextdoor.com is

22  headquartered in San Francisco, and its founders live in San Francisco.  FAAC ¶¶ 152-53.

23  By January 2011, Nextdoor.com had begun efforts to register the nextdoor.com domain.

24  FAAC ¶ 154.  Sood was aware that Abhyanker had been trying to purchase the nextdoor.com

25  domain since late 2006.  FAAC ¶ 155.  Sood disclosed unspecified confidential information about

26

27  _____

    [2] Prior to March 2011, Counter-Defendant Nextdoor.com's corporate name was Fanbase, Inc.
28  FAAC ¶ 158.  To minimize confusion, this order will refer to this Counter-Defendant as
    Nextdoor.com.

United States District Court

For the Northern District of California

1  Abhyanker's attempts to purchase the domain to Janakiriman and Nextdoor.com, and this

2  information ultimately allowed them to outbid Abhyanker and register the domain.  FAAC ¶ 156.  In

3  February 2011, Nextdoor.com filed a federal trademark application for Nextdoor.  FAAC ¶ 157.

4  Nextdoor.com publically launched its website at nextdoor.com on October 26, 2011.  FAAC ¶ 159.

5  E.    State Court and TTAB Proceedings

6       On November 10, 2011, Abhyanker filed suit against Counter-Defendants in state court,

7  alleging misappropriation of trade secrets, breach of contract, and other claims.  FAAC ¶ 160.

8  Abhyanker dismissed this action without prejudice in February 2012.  FAAC ¶ 163.  Additional

9  detail about this litigation will be discussed as relevant to the analysis below.

10      In January and February 2012, Abhyanker filed two third-party opposition proceedings

11  against Nextdoor.com's "Nextdoor" trademark application with the U.S. Patent and Trademark

12  Office's Trademark Trial and Appeal Board ("TTAB").  FAAC ¶ 161.  These oppositions alleged

13  Nextdoor.com's application on the grounds of priority and fraud.[3]  *Id.*  In September 2012,

14  Nextdoor.com's motions to dismiss the oppositions were denied in the TTAB proceedings.  FAAC ¶

15  163.  Those proceedings are currently in discovery.  *Id.*

16  F.    Procedural History of the Instant Suit

17      On November 5, 2012, Nextdoor.com filed the instant suit, bringing claims for declaratory

18  relief, cyberpiracy, and violations of the Lanham Act.  Docket No. 1.  On January 10, 2013,

19  Abhyanker filed an answer asserting various affirmative defenses and bringing counterclaims

20  against Counter-Defendants alleging misappropriation of trade secrets, breach of contract, and

21  intentional interference with contract.  Docket No. 16.  After various Counter-Defendants filed

22  motions to dismiss the counterclaims, Abhyanker filed an amended answer and counterclaim, on

23  March 12, 2013, this time alleging only misappropriation of trade secrets.  Docket No. 59.  The

24  amended answer asserts fifteen amended defenses: (1) failure to state a claim; (2) no injury or

25  damage; (3) lack of standing; (4) statute of limitations; (5) adequate remedy at law; (6) estoppel; (7)

26  laches; (8) acquiescence; (9) waiver; (10) unclean hands; (11) unenforceability of the alleged

27  _____

28      [3] Abhyanker admits in his amended answer that he did not file a trademark application for the Nextdoor mark prior to December 28, 2011.  FAAC ¶ 26.

1   trademarks; (12) fraud on the U.S. Patent and Trademark Office; (13) failure to mitigate damages;

2   (14) breach of one or more duties of confidentiality; and (15) Abhyanker's ownership of prior and

3   superior rights in the Nextdoor mark.  FAAC ¶¶ 79-93.  Abhyanker also reserves the right to assert

4   additional affirmative defenses.  FAAC ¶ 94.

5        On April 25, 2013, Counter-Defendants Nextdoor.com and Prakash Janakiraman filed a

6   motion to dismiss the amended counterclaim and motion to strike affirmative defenses.  Docket No.

7   63.  On the same day, Counter-Defendants Sandeep Sood and Monsoon Enterprises filed a motion to

8   dismiss the amended counterclaim.  Docket Nos. 66 (original motion), 88 (amended motion).

9   Defendant and Counter-Plaintiff Abhyanker has also filed a motion to disqualify Plaintiff's

10   Nextdoor.com's counsel, on the grounds that counsel previously represented LegalForce, Inc.

11   Docket No. 70.

12               **III.   DISCUSSION**

13   A.    <u>Motions to Dismiss Counterclaim</u>

14        As two motions to dismiss Counter-Plaintiff Abhyanker's counterclaim for misappropriation

15   of trade secrets raise largely overlapping arguments, this Court will consider them together.  Under

16   Rule 12(b)(6), a party may move to dismiss based on the failure to state a claim upon which relief

17   may be granted. Fed. R. Civ. P. 12(b)(6).  A motion to dismiss based on Rule 12(b)(6) challenges the

18   legal sufficiency of the claims alleged.  *See Parks Sch. Of Bus. Symington*, 51 F.3d 1480, 1484 (9th

19   Cir. 1995).  In considering such a motion, a court must take all allegations of material fact as true

20   and construe them in the light most favorable to the nonmoving party, although "conclusory

21   allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal."

22   *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).  While "a complaint need not contain

23   detailed factual allegations . . . it must plead 'enough facts to state a claim to relief that is plausible

24   on its face.'"  *Id.*  "A claim has facial plausibility when the plaintiff pleads factual content that

25   allows the court to draw the reasonable inference that the defendant is liable for the misconduct

26   alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp v. Twombly*, 550 U.S.

27   544, 556 (2007).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for

28

1    more than sheer possibility that a defendant acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting

2    *Twombly*, 550 U.S. at 556).

3          In deciding a motion to dismiss, courts are generally limited to considering the allegations

4    contained in the complaint, and may not consider evidence outside the pleadings. *United States v.*

5    *Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Courts may, however, consider documents attached or

6    incorporated by reference in the complaint, and materials subject to judicial notice without

7    converting the motion to dismiss into a motion for summary judgment. *Id.* Although allegations in

8    a complaint are generally accepted as true, a court "need not accept as true allegations contradicting

9    documents that are referenced in the complaint or that are properly subject to judicial notice." *Lazy*

10   *Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

11         1.     <u>Adequacy of Trade Secret Allegations</u>

12         Counter-Defendants argue that Abhyanker's counterclaim for misappropriation of trade

13   secrets must be dismissed, as Abhyanker has failed to allege sufficient facts to state such a claim.

14   Under California's Uniform Trade Secrets Act, a plaintiff must allege that: (1) the plaintiff owned a

15   trade secret; (2) the defendant acquired, disclosed, or used the trade secret through improper means;

16   and (3) the defendant's actions damaged the plaintiff. *Sargent Fletcher, Inc. v. Able Corp.*, 110 Cal.

17   App.4th 1658, 1665 (2003). Counter-Defendants also argue that Abhyanker has failed to

18   sufficiently (1) identify any trade secrets; or (2) allege wrongful acquisition, disclosure, or use of the

19   trade secrets.[4] Docket No. 63 at 15-20; Docket No. 89 at 8-13.

20         Counter-Defendants Sood and Monsoon Enterprises argue that Abhyanker has failed to

21   sufficiently identify any trade secrets in his counterclaim. A party claiming misappropriation of

22   trade secrets "should describe the subject matter of the trade secret with sufficient particularity to

23   separate it from matters of general knowledge in the trade or of special knowledge of those persons

24   skilled in the trade." *Imax Corp. v. Cinema Technologies, Inc*., 152 F.3d 1161, 1164-65 (9th Cir.

25

26   _____

27        [4] Counter-Defendants also argue that Abhyanker has failed to sufficiently allege damages.
     This argument is based entirely on Counter-Defendant's argument, discussed further below, that
28   Abhyanker is bound by allegations he made in state court which Counter-Defendants contend
     indicate that he does not own the trade secrets in question here.

1998) (internal citation and alterations omitted). This standard derives from the California Court of

Appeals case *Diodes, Inc. v. Franzen*, which held:

> One who seeks to protect his trade secrets from wrongful use or disclosure does not have to spell out the details of the trade secret to avoid a demurrer to a complaint. To so require would mean that the complainant would have to destroy the very thing for which he sought protection by making public the secret itself.
>
> The plaintiff must nevertheless allege the ultimate facts showing the existence of a trade secret or other confidential data to state such a cause of action. . . .
>
> Before a defendant is compelled to respond to a complaint based upon claimed misappropriation or misuse of a trade secret and to embark on discovery which may be both prolonged and expensive, the complainant should describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies.

260 Cal. App. 2d 244, 252-53 (1968) (internal citations omitted). The court in *Diodes* found the

complaint insufficient because it simply alleged that the defendant's had misappropriated the

plaintiff's "secret process" without giving any information about that process "except to hint that it

had something to do with the manufacture of diodes." *Id.* at 251.

Reviewing Abhyanker's allegations at a high level of generality at this early stage in this

litigation, the Court finds that he has alleged sufficient facts to survive a motion to dismiss.

Abhyanker's counterclaim states that the Nextdoor trade secrets include:

> key product details, algorithms, business plans, security algorithms, database structures, user interface designs, software code, product concepts, prototypes, methods, works of authorship, trademarks, white papers, and instrumentalities, information and plans pertaining to, but not limited to, software that makes sure only people who live in a specific neighborhood are able to join its network – giving users a level of privacy that sites like Facebook don't, email lists of inventive neighbors around Cupertino, California, inventive neighbors in the Lorelei neighborhood of Menlo Park, a private social network activation in a geospatially constrained area when 10 neighbors sign up, geo-spatial database, neighborhood member activation through postal mail, public/private geo-location constrained member groups, neighborhood member address verification, sharing of bulletin and wallcommunications between neighborhood resident users only, customer lists, architecture, social networking, friend grouping, providing real time updates, neighborhood-level privacy controls, feed aggregation, spheres of influence, application technologies, filtering

8

United States District Court

For the Northern District of California

1    relevant feeds across multiple networks, filtering conversations,
2    adding contextual relevancy to private messages and connections in a
     geospatially constrained area, and connections across interactions in
3    neighboring communities, providing in depth conversations through a
     social graph, community governance, bidding history of the
     Nextdoor.com domain, the activation of the Lorelei neighborhood as a
4    prime testing neighborhood for communication, neighborhood
     communication and geo-spatial social networking, and the use of the
5    name Nextdoor.com in conjunction with a private social network for
     neighborhoods.

6

7    FAAC ¶¶ 109, 170.  Though some of these listed trade secrets are somewhat more general, the list as

8    a whole provides sufficient specificity to give Counter-Defendants notice of Abhyanker's

9    allegations, at least at the pleading stage.  Requiring significantly more detail from Abhyanker at this

10    stage raises the risk of forcing him to publically disclose his trade secrets in the pleadings.

11      Counter-Defendants also argue that Abhyanker's counterclaim should be dismissed because

12    he has failed to sufficiently allege that Counter-Defendants have wrongfully acquired, disclosed, or

13    used the alleged trade secrets.[5]  The counterclaim offers general allegations that Counter-Defendants

14    misappropriated Abhyanker's trade secrets, but provides specific factual allegations supporting

15    misappropriation claims for only a few of the alleged trade secrets, such as the bidding history of the

16    nextdoor.com domain.  As with the identification of trade secrets, however, the Court concludes that

17    these allegations are sufficient at the pleading stage, and that successive rounds of amended pleading

18    are not the most efficient way of requiring Abhyanker to provide additional detail.

19      Further, Defendants are entitled, however, to a more definite identification of Abhyanker's

20    claims at a preliminary stage before this case progresses to full discovery.  Accordingly, at the

21    hearing on this motion, the Court directed the parties to meet and confer to try to reach agreement

22    regarding the appropriate process for identifying the trade secrets and the misappropriation

23    allegations with more specificity.  The Court contemplated that this process would require

24    _____

25       [5] Counter-Defendants also argue that Abhyanker's allegations are deficient in that many of
   them are offered "on information and belief."  Courts have held, however, that pleading on
26    information and belief is acceptable where the information is not presumptively in the knowledge of
   the pleading party. *Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*, 10-CV-03428-LHK, 2011
27    WL 1044899 (N.D. Cal. Mar. 23, 2011).  The facts Abhyanker pleads on information and belief,
   such as those concerning the details of how Counter-Defendants shared information amongst
28    themselves, are not the sort of information that would presumptively be within Abhyanker's
   knowledge, so pleading such facts on information and belief is appropriate here.

Abhyanker to provide additional detail regarding the trade secrets he alleges Counter-Defendants

misappropriated, and how each secret was allegedly misappropriated by Counter-Defendants.

Additionally, this process should include provisions to protect against the public disclosure of any

trade secrets disclosed.  Per this Court's directions at the hearing, the parties filed a joint statement

with the Court on June 27, 2013.  Though the parties agree to many of the details for this process,

they do identify some outstanding disputes, which are discussed further below.

Though the Court thus **DENIES** Counter-Defendants' motions to dismiss for failure to

sufficiently allege trade secret misappropriation at this juncture, this is without prejudice to Counter-

Defendant's ability to bring a motion to dismiss if the disclosure process identified by the parties

reveals deficiencies in Plaintiff's claims.

2.      Public Disclosure of Alleged Trade Secrets

Counter-Defendants also argue that Abhyanker's counterclaim for misappropriation of trade

secrets must fail because the trade secrets he alleges were disclosed in a publically available patent

application, thus destroying the information's trade secret status.  Docket No. 63 at 13-15; Docket

No. 89 at 13-14.  Specifically, Counter-Defendants argue that the trade secrets alleged in this action

were disclosed in public patent application number 11/603,442, which Abhyanker filed on

November 22, 2006.[6]  Docket No. 64-1.  Abhyanker disputes this characterization of the contents of

the '422 patent application, and argues that it covered only Fatdoor technology, and not the

LegalForce/Nextdoor trade secrets alleged in this action.

Under California law, an unprotected disclosure of information terminates the existence of a

trade secret.  *See Vacco Indus., Inc. v. Van Den Berg*, 5 Cal. App. 4th 34, 50 (1992).  Courts have

thus recognized that "disclosure of a trade secret in a patent places the information comprising the

secret into the public domain."  *Stutz Motor Car of Am., Inc. v. Reebok Int'l, Ltd.*, 909 F. Supp.

1353, 1359 (C.D. Cal. 1995) *aff'd*, 113 F.3d 1258 (Fed. Cir. 1997); *Forcier v. Microsoft Corp.*, 123

---

[6] The Court **GRANTS** Counter-Defendants' request for judicial notice of the patent
application.  *See* F.R.E. 201 (court may take judicial notice of a fact that "can be accurately and
readily determined from sources whose accuracy cannot reasonably be questioned"); *Hernandez v.
Path, Inc.*, 12-CV-01515 YGR, 2012 WL 5194120 (N.D. Cal. Oct. 19, 2012) (taking judicial notice
of patent application).

United States District Court

For the Northern District of California

1   F. Supp. 2d 520, 528 (N.D. Cal. 2000) (trade secret status extinguished under California law where

2   information was disclosed in patents or patent applications).  Information related to technology

3   disclosed in a patent or patent application may retain trade secret status, however, if it was not itself

4   disclosed in the application.  *See Imax Corp. v. Cinema Technologies, Inc*., 152 F.3d 1161, 1163

5   (9th Cir. 1998) ("the possibility of trade secrets qualified for protection under state law" existed

6   where company held patent for a "rolling loop" projector but the patent had not disclosed

7   "everything needed to mass-produce" the projector); *Henry Hope X-Ray Prods., Inc. v. Marron*

8   *Carrel, Inc*., 674 F.2d 1336, 1342 (9th Cir. 1982) (where patented apparatus contained features that

9   were not disclosed in patent, the undisclosed features qualified for protection as trade secrets).

10          Abhyanker filed the '442 patent application on November 22, 2006, and the application was

11   published on September 20, 2007.  Docket No. 64-1 at 2 of 65.  The application is titled "Map Based

12   Neighborhood Search and Community Contribution," and the abstract reads:

13          A method, apparatus and system of map based community search and
             neighborhood contribution are disclosed.  In one embodiment, a
14          method includes associating a verified registered user with a user
             profile, associating the user profile with a specific geographic location,
15          generating a map concurrently displaying the user profile and the
             specific geographic location and simultaneously generating, in the
16          map, wiki profiles associated with different geographic locations
             surrounding the specific geographic location associated with the user
17          profile.

18   *Id.*  Counter-Defendants also point to a number of diagrams filed with the application, which appear

19   to depict a schematic of how the site would operate as a whole, and to show mock ups of subpages

20   of the website called a "social community module" and a "user module."  *Id.* at 3, 10-11 of 65.

21   Although the patent application does not prominently describe the proposed method as a social

22   network, it does use that term in some places, and as a practical matter has many of the feature of a

23   social networking site, allowing users to post information about themselves and their neighborhood,

24   and to find and communicate with people in their neighborhood.

25          The patent application does not assign a name to the method claimed.  Counter-Defendants,

26   however, point to the fact that the application does in one place explicitly mention the nextdoor.com

27   name:

28

11

> In one embodiment, the methods and systems illustrated in FIGS. 1-28 enable people to search for things they want e.g. nearby pizzas etc. (e.g. by distance away). Advertisers can 'own' their listing by placing a display ad on nextdoor.com. Instead of click-through revenues when someone leaves the site, revenues will be realized when the link is clicked and someone views a preview html on the right of the visual map. Targeted advertisements may also be placed when someone searches a particular street, name, city, etc.

*Id.* at 57 of 65. This is the only mention of the domain name nextdoor.com in the application. Defendant argues that this mention of nextdoor.com "was made in reference to the placement of advertisements on a nextdoor.com website, not use of the name in connection with a private social network for neighborhoods." Docket No. 77 at 8. The phrasing of the above paragraph, however, implies that nextdoor.com is the name of the website described in the application, or at the very least an associated website. It would make little sense to say that an advertiser could "own" their listing on the website described in the application by placing a display ad on nextdoor.com if nextdoor.com was entirely unrelated to the website described in the application.

Thus, though it does not do so prominently, it does appear that the '442 patent application discloses the use of the name nextdoor.com in connection with a website that provides online social networking (along with other related features) aimed at neighbors and neighborhoods. To the degree that Abhyanker's counterclaim is based on the use of the nextdoor.com name in connection with a neighborhood-based social network, that there is no trade secret subject to misappropriation, since this concept was disclosed in the '442 patent application prior to any of the alleged acts of misappropriation. FAAC ¶¶ 150, 159 (Nextdoor.com's prototype site launched in October 2010; the public website launched in October 2011).[7]

Accordingly, this Court **GRANTS** Defendants' motions to dismiss Abhyanker's counterclaim to the degree that the counterclaim is based on allegations that Counter-Defendants

///

///

///

---

[7] Accordingly, the Court does not address whether the use of nextdoor.com name can qualify as a trade secret.

United States District Court

For the Northern District of California

1   misappropriated the concept of using the name nextdoor.com in connection with a neighborhood-

2   based social network.[8]

3          3.       Counter-Plaintiff's Ownership of Alleged Trade Secrets

4          Finally, Counter-Defendants argue that Abhyanker's counterclaim should be dismissed

5   because he has admitted in various judicially noticeable documents that he does not own the secrets

6   that are at issue in this case.  Specifically, they point to filings from the state court action and

7   proceedings before TTAB in which they contend he conceded that the trade secrets Nextdoor.com

8   has allegedly misappropriated are part of the Fatdoor.com intellectual property that is now owned by

9   Google.  Docket No. 63 at 20-22; Docket No. 89 at 6-8.  Abhyanker argues that the allegations in

10  these other filings are not actually inconsistent with his allegations in his amended counterclaim, and

11  that he has adequately pled ownership of the trade secrets here.

12         In order to bring a viable claim for misappropriation of trade secrets, Abhyanker must own

13  the trade secrets in question.  *Sargent Fletcher, Inc. v. Able Corp.*, 110 Cal. App.4th 1658, 1665

14  (2003).  While the amended counterclaim does allege that Abhyanker owns the trade secrets that

15  form the basis for his claim, *see* FAAC ¶ 168, a court need not accept as true allegations in a

16  pleading that are contradicted by facts that are subject to judicial notice.  *Lazy Y Ranch*, 546 F.3d at

17  588.  As courts "may take judicial notice of court filings and other matters of public record," the

18  state court, and TTAB filings are the proper subject of judicial notice here.  *Reyn's Pasta Bella, LLC

19  v. Visa USA, Inc*., 442 F.3d 741 (9th Cir.2006).

20         Under federal law, "stipulations and admissions in the pleadings are generally binding on the

21  parties and the Court."  *Am. Title Ins. Co. v. Lacelaw Corp*., 861 F.2d 224, 226 (9th Cir. 1988).

22  "Factual assertions in pleadings and pretrial orders, unless amended, are considered judicial

23  admissions conclusively binding on the party who made them."  *Id.*  Where a party later amends the

24  pleadings to contradict the earlier admission and explains the error, however, " the trial court must

25  accord the explanation due weight."  *Sicor Ltd. v. Cetus Corp*., 51 F.3d 848, 860 (9th Cir. 1995).

26

27

28         [8] Counter-Defendants have not argued at this juncture that other alleged trade secrets were
    disclosed by the '442 patent, so the Court does not address them.

13

United States District Court

For the Northern District of California

1    Admissions in one court proceeding, however, are generally not considered binding in other,

2    separate litigation.  *Kohler v. Leslie Hindman, Inc.*, 80 F.3d 1181, 1185 (7th Cir. 1996) ("a statement

3    made in one lawsuit cannot be a judicial admission in another"); *Universal Am. Barge Corp. v.*

4    *J-Chem, Inc.*, 946 F.2d 1131, 1142 (5th Cir. 1991) ("judicial admissions are not conclusive and

5    binding in a separate case from the one in which the admissions were made"); *United States v.*

6    *Raphelson*, 802 F.2d 588, 592 (1st Cir. 1986) ("a pleading in one case is not a conclusive judicial

7    admission in a later one"); *State Farm Mut. Auto. Ins. Co. v. Worthington*, 405 F.2d 683, 686 (8th

8    Cir. 1968) ("judicial admissions are binding for the purpose of the case in which the admissions are

9    made including appeals.  This does not make the same judicial admissions conclusive and binding in

10   separate and subsequent cases.").  While the Ninth Circuit does not seem to have explicitly adopted

11   this rule, California district court decisions have.  *See Grove Lumber & Bldg. Supply, Inc. v.*

12   *Argonaut Ins. Co.*, SACV 07-1396 AHSRNBX, 2008 WL 2705169 (C.D. Cal. July 7, 2008)

13   (Argonaut's allegation in prior litigation . . . is not a judicial admission in this action"); *Rankine v.*

14   *Roller Bearing Co. of Am., Inc.*, 12-CV-2065-IEG BLM, 2013 WL 1942199 (S.D. Cal. May 9, 2013)

15   (holding that a "judicial admission binds only in the litigation in which it is made").  While an

16   admission in a prior lawsuit may be admissible *evidence* in a later proceeding, *see Kohler*, 80 F.3d at

17   1185, it is not a binding *admission*, and thus does not control a motion to dismiss.

18   The cases that Counter-Defendants cite in support of the argument that Abhyanker's state

19   court pleadings are binding judicial admissions are inapposite.  In *Bauer v. Tacey Goss, P.S.*, the

20   court held than a party's argument was precluded because it was contradicted by statements in an

21   earlier complaint in that same litigation.  C 12-00876 JSW, 2012 WL 2838834, *3 (N.D. Cal. July

22   10, 2012).  *Falcocchia v. Saxon Mortgage, Inc.* did involve a state court document that contradicted

23   a party's current position, but it was a declaration that had been filed in the same case prior to its

24   removal to federal court.  709 F. Supp. 2d 873, 887 (E.D. Cal. 2010).  Finally, the court in *Tripati v.*

25   *Thompson*, took judicial notice of orders in a state court case that contradicted the plaintiff's

26   allegations about judicial misconduct in that case.  CV-03-1122, 2005 U.S. Dist. LEXIS 38093, at *

27   (D. Ariz. Dec. 27, 2005).  None of these cases suggests that allegations in state court pleadings

28   constitute binding judicial admissions in a later, separate federal court case.

14

United States District Court

For the Northern District of California

1    As Abhyanker's allegations in the state court and TTAB proceedings are not binding judicial

2    admissions in this action, Counter-Defendants' motion to dismiss Abhyanker's counterclaim on this

3    ground is **DENIED**.  This is, of course, without prejudice as to Counter-Defendants' ability to bring

4    a motion for partial summary judgement raising the issue of Abhyanker's ownership of the trade

5    secrets, at which point they could introduce Abhyanker's allegations in the state court and TTAB

6    proceedings as evidence.

7    B.    Motion to Strike Affirmative Defenses

8    Under Federal Rule of Civil Procedure 12(f), "[a] court may strike from a pleading any

9    insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ.

10   P. 12(f).  Rule 8(c), requires parties to "affirmatively state any avoidance or affirmative defense,"

11   and Rule 8(b)(1) further requires a party to "state in short and plain terms its defenses to each claim

12   asserted against it."  Fed. R. Civ. P. 8(b)(1), (c).  "The key to determining the sufficiency of pleading

13   an affirmative defense is whether it gives plaintiff fair notice of the defense."  *Wyshak v. City Nat'l*

14   *Bank*, 607 F.2d 824, 827 (9th Cir.1979).  While the Ninth Circuit has not addressed whether the

15   *Iqbal/Twombly* pleading standard applies to affirmative defenses, most courts which have

16   considered the issue have applied the heightened pleading standard to affirmative defenses.  *See*

17   *Righetti v. California Dep't of Corr. & Rehab.*, C-11-2717 EMC, 2013 WL 1891374 (N.D. Cal. May

18   6, 2013); *PageMelding, Inc. v. ESPN, Inc*., C 11-06263 WHA, 2012 WL 3877686 (N.D. Cal. Sept.6,

19   2012) ("Within this district . . . there is widespread agreement that" the *Iqbal/Twombly* standard

20   applies to affirmative defenses); *Barnes v. AT & T Pension Ben. Plan–Nonbargained Program*, 718

21   F. Supp. 2d 1167, 1171 (N.D. Cal. 2010) (collecting cases).

22   As this Court has recently held, this standard is appropriate because "*Twombly's* rationale of

23   giving fair notice to the opposing party would seem to apply as well to affirmative defenses given

24   the purpose of Rule 8(b)'s requirements for defenses."  *Righetti*, 2013 WL 1891374, at *3 (quoting

25   *Barnes & Noble, Inc. v. LSI Corp.*, 849 F. Supp.2d 925, 929 (N.D. Cal. 2012)).  Applying the

26   heightened pleading standard to affirmative defenses "serves a valid purpose in requiring at least

27   some valid factual basis for pleading an affirmative defense and not adding it to the case simply

28   upon some conjecture that it may somehow apply."  *Barnes*, 718 F. Supp. 2d at 1172 (citations

United States District Court

For the Northern District of California

1    omitted).  Further, "[a]pplying the same standard will also serve to weed out the boilerplate listing of

2    affirmative defenses which is commonplace in most defendants' pleadings where many of the

3    defenses alleged are irrelevant to the claims asserted." *Barnes & Noble*, 849 F. Supp. 2d at 929

4    (citations omitted).

5         Under this standard, "a defense need not include extensive factual allegations in order to give

6    fair notice, [however] bare statements reciting mere legal conclusions may not be sufficient." *Perez*

7    *v. Gordon & Wong Law Group, P.C.*, No. 11-CV-03323 LHK, 2012 WL 1029425, at *8 (N.D. Cal.

8    Mar.26, 2012) (citations omitted).  "Just as a plaintiff's complaint must allege enough supporting

9    facts to nudge a legal claim across the line separating plausibility from mere possibility, a

10   defendant's pleading of affirmative defenses must put a plaintiff on notice of the underlying factual

11   basis of the defense." *Id.* (citations omitted).

12        In the complaint, Nextdoor.com brings four causes of action.  First, it seeks declaratory

13   judgment that Nextdoor.com is lawfully using the "Nextdoor" mark and not infringing on

14   Abhyanker's rights to same.  Second, it seeks declaratory judgment that Nextdoor.com's use of its

15   "Nextdoor" mark does not infringe on any rights claimed by Abhyanker based on the "Fatdoor"

16   mark.  Third, it asserts a claim for cyberpiracy based on Abhyanker's acquisition of the domain

17   name nextdoor.com.  Fourth, it claims violations of the Lanham act based on Abhyanker's use of the

18   name "nextdoor" in connection with a neighborhood-based social networking site.

19        Abhyanker's amended answer asserts fifteen amended defenses:  (1) failure to state a claim;

20   (2) no injury or damage; (3) lack of standing; (4) statute of limitations; (5) adequate remedy at law;

21   (6) estoppel; (7) laches; (8) acquiescence; (9) waiver; (10) unclean hands; (11) unenforceability of

22   the alleged trademarks; (12) fraud on the U.S. Patent and Trademark Office; (13) failure to mitigate

23   damages; (14) breach of one or more duties of confidentiality; and (15) Abhyanker's ownership of

24   prior and superior rights in the Nextdoor mark.  FAAC ¶¶ 79-93.  Each asserted defense is followed

25   by a sentence simply stating the applicability of the defense, and providing little to no detail about

26   the grounds for the asserted defense.  *Id.*

27        Many of these defenses, however, are supported by facts alleged elsewhere in the amended

28   answer and counterclaim.  For example, the fraud on the U.S. Patent and Trademark Office defense

appears to be based on Abhyanker's claims that Nextdoor.com's application for the "Nextdoor" mark is based on its misappropriation of his trade secrets related to same.  Similarly, the basis for the fifteenth affirmative defense – Abhyanker's prior rights in the Nextdoor mark – is clearly set out in the counterclaim.  The following affirmative defenses are somewhat less clearly set out, but at least plausibly refer to Abhyanker's claims that he is the rightful owner of the Nextdoor trade secrets:  (1) failure to state a claim; (3) lack of standing; (10) unclean hands; and (11) unenforceability of the alleged trademarks.  The fourteenth affirmative defense, that Nextdoor.com's "use of its alleged trademark(s) is a breach of one or more agreements or duties of confidentiality" appears related to his allegations that Nextdoor.com's founders obtained information on Abhyanker's trade secrets through the breach of confidentiality agreements Abhyanker had with Sood and with Benchmark Capital.  All of these affirmative defenses are thus adequately pled in the complaint, and Counter-Defendants' motion to strike is **DENIED** as to these defenses.

    For remaining affirmative defenses, however, it is difficult to discern the basis from the facts alleged in the amended answer and counterclaim.  Thus, Counter-Defendants' motion to strike Abhyanker's affirmative defenses is **GRANTED** as to the following defenses:  (2) no injury or damage; (4) statute of limitations; (5) adequate remedy at law; (6) estoppel; (7) laches; (8) acquiescence; (9) waiver; and (13) failure to mitigate damages.  Abhyanker may file an amended answer providing the factual basis for these affirmative defenses within 21 days.

C.    Motion to Disqualify Plaintiff's Counsel

    Abhyanker moves to disqualify Plaintiff Nextdoor.com's counsel, the firm Fenwick & West. Abhyanker and LegalForce retained Fenwick & West in 2006 and 2007 to incorporate LegalForce, Inc., and prepare various documents for the business.  Nextdoor.com opposes, arguing that the two representations are not sufficiently related to merit disqualification, that Abhyanker waived any conflict through a waiver executed in the state court action, and that Abhyanker's delay in bringing this motion makes disqualification inappropriate.  As this Court concludes that the two representations are not sufficiently related to require disqualification, it need not reach the latter two arguments.

United States District Court

For the Northern District of California

1.      Factual Background

Abhyanker and LegalForce retained Fenwick & West in 2006 and 2007 to incorporate LegalForce, Inc., and to assist in various matters relating to the company's formation.  Declaration of Raj Abhyanker ("Abhyanker Decl.") ¶¶ 2, 9 (Docket No. 73).  The retainer agreement states that Fenwick "would represent the Company in connection with corporate matters relating to the Company's formation, financing, and structure, and such other matters as we may mutually agree upon."  Docket No. 81-20 at 2.  The agreement provides that Sayre Stevick will be the primary partner in charge of LegalForce's account with regards to corporate matters, and that Rajiv Patel would be the primary support partner with regards to matters related to intellectual property.  *Id.*

The parties dispute a number of facts about the scope of the representation.  Abhyanker states that Fenwick helped to prepare confidentiality and non-disclosure agreements that were signed by employees, including Sood.  Abhyanker Decl. ¶¶ 2, 9.  He also alleges that the intellectual property at issue in this case was "protected through instruments negotiated and designed by Fenwick."  Abhyanker Decl. ¶ 4.[9]  Nextdoor.com, however, provides the declaration of Fenwick attorney Tyler Baker, who reviewed the firm's files and correspondence related to the representation of Abhyanker and LegalForce, and states that he found no indication that Fenwick had drafted non-disclosure or confidentiality agreements for LegalForce.  Declaration of Tyler A. Baker ("Baker Decl.") ¶ 28 (Docket No. 81).[10]  Further, Baker found no indication in the firm's files or time records to support the statement that Fenwick negotiated any instruments to protect Abhyanker or LegalForce's intellectual property.  Baker Decl. ¶ 29.  While Fenwick did apparently provide LegalForce with a form agreement titled "Employee Invention Assignment Agreement," this was

---

[9] Nextdoor.com objects to this statement in Abhyanker's declaration, arguing that it violates the best evidence rule, in that Abhyanker's testimony about the contents of any instruments designed by Fenwick is inadmissible as evidence to prove the contents of those instruments.  F.R.E. 1002. As discussed below, the Court does not find Abhyanker's testimony on this front credible, so it need not reach this objection.

[10] Baker is not part of Nextdoor.com's representation, and apparently was brought in solely for the purpose of performing this review.  Baker Decl. ¶ 1.  Baker states has not shared any confidential information obtained from his review of the LegalForce files with the litigation team representing Nextdoor.com.  Baker Decl. ¶ 20.

1    not tailored to LegalForce and there is no indication that Fenwick negotiated this instrument with

2    LegalForce's employees.  *Id.*

3          Abhyanker also claims that Sood worked directly with Fenwick attorneys to prepare

4    confidentiality and non-disclosure agreements for both employees and investors.  Abhyanker Decl. ¶

5    9.[11]  Nextdoor.com has submitted a declaration from Sood, in which he denies that he ever worked

6    with Fenwick attorneys in connection with his work for LegalForce, or that he had any hand in

7    drafting any of the company's corporate documents.  Declaration of Sandeep Sood ("Sood Decl.") ¶

8    5 (Docket No. 80).  Additionally, Baker's declaration states that nothing in Fenwick's files, time

9    records, or correspondence indicates that Sood worked with Fenwick attorneys during the course of

10   Fenwick's representation of LegalForce.  Baker Decl. ¶ 30.

11         Abhyanker does not contend that Fenwick drafted the documents assigning certain of his

12   intellectual property to Fatdoor in February 2007, but does allege that Fenwick advised the attorney

13   who did so, and that Fenwick advised LegalForce about its intellectual property rights during this

14   time.  Abhyanker Decl. ¶¶ 13, 14.[12]  Baker, however, states that Fenwick's billing system contains

15   no entries for LegalForce in February 2007, and that no time was billed to Legal Force after

16   September 30, 2006.  Baker Decl. ¶ 31.  Fenwick's files contain no record of communications with

17   the attorney who drafted the intellectual property assignment.  *Id.*  Moreover, Baker states that

18   Fenwick did not advise LegalForce about trade secrets, and that there is no indication that Fenwick

19   ever received any trade secret information in connection with the representation.  Baker Decl. ¶ 24.

20         In connection with his review of the LegalForce file, Baker reviewed Fenwick's time records

21   related to the LegalForce representation.  Baker Decl. ¶¶ 22, 32.  The attorney who billed the most

22

23         [11] Nextdoor.com objects to this statement in Abhyanker's declaration, arguing that he does
     not indicate how he has personal knowledge that Sood worked with the Fenwick attorneys.  Docket
24   No. 82, Obj. No. 6.  As Abhyanker retained Sood's services and supervised his work with
     LegalForce, the Court overrules this objection.
25
           [12] Nextdoor.com objects to these statements in Abhyanker's declaration, as he fails to
26   indicate how he knew that Fenwick advised the attorney drafting the assignment of rights, and that
     to the degree that he heard this information indirectly it is hearsay.  Docket No. 82 at 4.  Though the
27   declaration is somewhat ambiguous on this point, it does appear to suggest that Abhyanker was part
     of at least some of the conversations in which he alleges that Fenwick gave advice as to the
28   assignment of intellectual property rights.  Accordingly, this objection is overruled.

United States District Court

For the Northern District of California

1    time to LegalForce was a mid-level corporate associate, Guy Ladetzky, who billed 31.1 hours.

2    Baker Decl. ¶¶ 25, 32.  Ladetzky left Fenwick in May 2008.  Baker Decl. ¶ 25.  The main paralegal

3    on the case, Katie Young, left Fenwick in 2009.  Baker Decl. ¶ 32.  The only attorney who billed

4    time to LegalForce that is still with the firm is Sayre Stevick, who billed 3.7 hours to LegalForce.

5    Baker Decl. ¶ 32.  As noted above, the retention agreement identifies Stevick as the lead partner for

6    corporate matters.  Docket No. 81-20.  Notably, Rajiv Patel, who was identified as the lead partner

7    for intellectual property matters, did not bill any time to the LegalForce account.  Baker Decl. ¶ 25.

8           In his reply declaration, Abhyanker contends that Patel helped him with intellectual property

9    strategy, though he does not provide details about what this entailed.  Docket No. 87 at 1-2.  Though

10   it is not entirely clear, it appears that this assistance may have been rendered in an informal, personal

11   capacity, as Abhyanker and Patel are friends.  *Id.*  In his declaration, he states that:

12          In the summer of 2006, I hired my friend Rajiv Patel ("Patel"), a
            partner in the intellectual property group at Fenwick to represent my
13          interests and incorporate a new corporation (102103, later renamed
            LegalForce) to protect the software technologies I was developing,
14          including the technologies related to Nextdoor being developed by
            Sood. Patel is a close family friend and we regularly met on weekends
15          in 2006, including babysitting each other's children and attending
            family functions and outings together.  I hired Fenwick in 2006 based
16          on my personal and  professional friendship with Patel, whom I also
            knew to be a highly regarded intellectual property attorney at Fenwick
17          and a professor of patent law at U.C. Hastings Law School.

18          After Fenwick partner Patel helped me with intellectual property
            strategy, Fenwick sent a new engagement letter for me to sign on July
19          27, 2006.

20   *Id.*[13]

21          In all, this Court finds that Baker's representations of the scope of Fenwick's representation

22   of LegalForce are more credible than Abhyanker's.  Baker's statements were made after what

23   appears to be a fairly comprehensive review of the relevant files, while the basis for Abhyanker's

24   statements is either unclear or simply based on his personal recollection of events that took place

25   ─────────────────

26          [13] Nextdoor.com objects to these statements in Abhyanker's reply declaration, arguing that
     they constitute improper new evidence offered for the first time in a reply, and that they violate the
27   best evidence rule inasmuch as they relate to the contents of the retention letter.  Docket No. 92 at 1,
     3.  Again, as this Court finds that Abhyanker's statements on this front are not credible, it need not
28   reach this objection.

United States District Court

For the Northern District of California

1   between six and seven years ago, and unsupported by any documentary evidence.  The Court finds it

2   particularly telling that Patel, who had been identified as the intellectual property lead on the case,

3   did not bill any hours to LegalForce.[14]  Other than in asserting that Patel did provide assistance on

4   intellectual property strategy, Abhyanker offered nothing in his reply declaration to contradict or

5   question Baker's statements about the work Fenwick performed for LegalForce.  This lack of

6   explanation is notable in light of the fact that Abhyanker apparently requested and received

7   Fenwick's files relating to its representation of LegalForce in the summer of 2008.  Baker Decl. ¶

8   21.  Given Abhyanker's access to Fenwick's file, it is telling that he does not submit any specific

9   information or documents from that file to support his allegations about the scope of representation.

10          2.      Relationship of Current Action to Prior Representation

11          The right to disqualify counsel is a discretionary exercise of the trial court's inherent powers.

12   *Visa U.S.A., Inc. v. First Data Corp.*, 241 F. Supp. 2d 1100, 1104 (N.D. Cal. 2003) (citing *United*

13   *States v. Wunsch*, 84 F.3d 1110, 1114 (9th Cir.1996)).  Pursuant Local Rule 11, every attorney

14   before this Court must "comply with the standards of professional conduct required of the members

15   of the State Bar of California."  N.D. Cal. Civil Local Rule 11-4(a)(1).  Motions to disqualify

16   counsel are decided under state law.  *In re Cnty. of Los Angeles*, 223 F.3d 990, 995 (9th Cir. 2000).

17   Trial courts may resolve disputed factual issues on motions to disqualify counsel.  *People ex rel.*

18   *Dep't of Corporations v. SpeeDee Oil Change Sys., Inc.*, 20 Cal. 4th 1135, 1143 (1999) (holding that

19   where trial court resolved disputed facts, appellate courts review for abuse of discretion, but where

20   there are no disputed factual issues, appellate courts review the trial court's determination as a

21   question of law).

22          Disqualification "ultimately involves a conflict between a client's right to chosen counsel

23   and the need to maintain ethical standards of professional responsibility."  *State Farm Mut. Auto.*

24   *Ins. Co. v. Federal Ins. Co.*, 72 Cal. App. 4th 1422, 1428 (1999). When considering the

25

26   _____

27          [14] Though Abhyanker argues that Patel may have provided assistance for which he did not
bill pursuant to Fenwick's practice of providing some services to start up clients free of charge,
absent any documentary evidence in support of this position, this Court declines to infer that Patel

28   provided uncompensated legal counsel to Abhyanker regarding intellectual property issues.

disqualification of counsel based upon a conflict of interest, courts must consider a host of relevant

factors:

> [T]he court must weigh the combined effect of a party's right to counsel of choice, an attorney's interest in representing a client, the financial burden on a client of replacing disqualified counsel and any tactical abuse underlying a disqualification proceeding against the fundamental principle that the fair resolution of disputes within our adversary system requires vigorous representation of parties by independent counsel unencumbered by conflicts of interest.

*Allen v. Academic Games Leagues of America*, 831 F. Supp. 785, 789 (C.D. Cal.1993) (citing *In re*

*Lee G.*, 1 Cal. App.4th 17, 26 (1991)).  On the one hand, because a motion to disqualify is often

tactically motivated, and can be disruptive to the litigation process, it is a drastic measure that is

generally disfavored.  *Visa U.S.A.*, 241 F. Supp. 2d at 1104.  At the same time, "the paramount

concern must be the preservation of public trust both in the scrupulous administration of justice and

in the integrity of the bar."  *State Farm Mut.*, 72 Cal. App. 4th at 1428.

The California Rules of Professional Conduct provide that

> A member shall not, without the informed written consent of the client or former client, accept employment adverse to the client or former client where, by reason of the representation of the client or former client, the member has obtained confidential information material to the employment.

Cal. R. Prof. Conduct 3-310(E).  Where a former client seeks to disqualify an attorney who is

representing a party now adverse to those former client's interests, the former client must

demonstrate that there is a "substantial relationship" between the subjects of the former

representation and the current matter.  *Flatt v. Superior Court*, 9 Cal. 4th 275, 283 (1994).

> To determine whether there is a substantial relationship between successive representations, a court must first determine whether the attorney had a direct professional relationship with the former client in which the attorney personally provided legal advice and services on a legal issue that is closely related to the legal issue in the present representation.  If the former representation involved such a direct relationship with the client, the former client need not prove that the attorney possesses actual confidential information.  Instead, the attorney is presumed to possess confidential information if the subject of the prior representation put the attorney in a position in which confidences material to the current representation would normally have been imparted to counsel.  When the attorney's contact with the prior client was not direct, then the court examines both the attorney's relationship to the prior client and the relationship between the prior and the present representation. If the subjects of the prior

United States District Court

For the Northern District of California

representation are such as to make it likely the attorney acquired confidential information that is relevant and material to the present representation, then the two representations are substantially related. When a substantial relationship between the two representations is established, the attorney is automatically disqualified from representing the second client.

*City & Cnty. of San Francisco v. Cobra Solutions, Inc*., 38 Cal. 4th 839, 847 (2006) (internal citations omitted).  Once an attorney is found to be disqualified, this disqualification extends to the attorney's firm.  *In re Charlisse C*., 45 Cal. 4th 145, 161 (2008)*; Trone v. Smith*, 621 F.2d 994, 999 (9th Cir. 1980).

As this Court credits Baker's representations regarding the scope of representation, it finds that Fenwick's prior representation of LegalForce is not substantially related to the instant matter. Fenwick's representation of LegalForce appears to have been limited to incorporating the company, drafting documents related to financing and corporate structure.  The fact that Fenwick represented a corporation for the purposes of incorporation and related matters is not likely to put Fenwick in the position where they would ordinarily be expected to have received confidences material to this representation (*e.g.* identity and ownership of trade secrets).  This conclusion is bolstered by the fact that the attorneys billing time to LegalForce worked in Fenwick's corporate practice group, and that the attorney who had been designated lead on intellectual property matters did not bill any time to LegalForce.

Though Fenwick may have provided a template agreement for employee's assignment of intellectual property, or, if Abhyanker's account is to be credited, even a non-disclosure or confidentiality agreement for employees, LegalForce would not have needed to disclose confidential trade secret information to Fenwick in order to receive and make use of such documents.  Perhaps more relevantly for this case, Fenwick's billing records indicate that it was not involved in any assignment of Abhyanker's intellectual property rights in early 2007.  Abhyanker has produced no documents or evidence beyond his own testimony indicating that Fenwick had confidential information about LegalForce's trade secrets, or about the ownership of the intellectual property rights that are contested in this matter.

1    Additionally, it is significant that the attorneys and paralegals who expended the majority of

2    the time on the LegalForce representation are no longer with Fenwick. While Patel is still with

3    Fenwick and may have received confidential information from Abhyanker in the course of their

4    friendship, the fact that he did not bill any hours on the LegalForce matter suggests that he did not

5    receive any confidential information in his role as an attorney at Fenwick.

6    In any case, Fenwick has implemented an ethical screen to ensure that Patel does not provide

7    any information to the Fenwick attorneys involved in representing Nextdoor.com. Fenwick

8    implemented this screen after Abhyanker raised concerns about a conflict in the state court

9    litigation; it has been continually in place since late 2011. Baker Decl. ¶¶ 2-19; Baker Decl. Ex. 6-7.

10   This screen applies to Patel, Stevick, Woods, to all attorneys who billed time to LegalForce, and to

11   attorneys who attended social functions with Abhyanker at Patel's house. Baker Decl. ¶ 8; Baker

12   Decl. Ex. 6-7. It provides that these attorneys shall not work on, consult on, or otherwise participate

13   in any work involving the Nextdoor matter; that no person at Fenwick shall discuss with these

14   attorneys the work they performed for LegalForce; that no person at Fenwick shall provide these

15   attorneys access to confidential, privileged, or work product materials related to Fenwick's work on

16   the Nextdoor matter; and that these attorneys are electronically "locked out" of the files related to

17   the Nextdoor representation. Baker Decl. Ex. 6-7. To the degree that there is any danger of conflict

18   arising from Abhyanker's personal disclosure of confidential information to Patel, this screen

19   alleviates that risk. *See In re Cnty. of Los Angeles*, 223 F.3d 990, 997 (9th Cir. 2000) (recognizing

20   that timely and effective screening mechanisms can render disqualification unnecessary).

21   As Fenwick's representation of LegalForce was not substantially related to the subject matter

22   of the instant case, Abhyanker's motion to disqualify Fenwick as counsel for Nextdoor.com is

23   **DENIED**. The Court finds that the ethical screen Fenwick has set up around attorneys who worked

24   on the LegalForce matter or who otherwise may have received information regarding LegalForce is

25   appropriate and should continue through the duration of this litigation.

26   D.    Disputes Regarding Trade Secret Disclosure Procedure

27   On June 27, 2013 the parties submitted a joint report setting out a plan for designation of

28   trade secrets pursuant to this Court's directions at the hearing on the above motions. The parties

1    agree that as part of this process, Abyhanker should be required to provide the following

2    information:

3          1.      The identification of each trade secret with reasonable particularity as required by

4                  California Code of Civil Procedure § 2019.210;

5          2.      For each trade secret, whether the trade secret was acquired by each particular

6                  Counter Defendant, and the supporting factual basis;

7          3.      For each trade secret, whether the asserted trade secret was disclosed by each

8                  particular Counter Defendant, and the supporting factual basis;

9          4.      For each trade secret, whether the asserted trade secret was used by each Counter

10                  Defendant, and the supporting factual basis.

11   Docket No. 98 at 1-2.  The parties dispute, however, whether Abhyanker should be required to

12   identify documents evidencing the scope of the trade secret asserted.  This Court's directions at the

13   hearing did not contemplate requiring Abhyanker to identify documents in support of his disclosures

14   at this stage of the proceedings.  Counter-Defendants may obtain such documents in the ordinary

15   course of discovery; the Court declines to order Abyhanker to produce them as part of the trade

16   secrets designation process.

17          The parties additionally dispute the appropriate schedule for making such disclosures.  In

18   particular, Abhyanker seeks to delay the disclosure schedule because he states that he intends to file

19   a motion for leave to file a motion to reconsider this Court's order directing him to identify the

20   factual basis for his allegations of misappropriation with respect to each particular trade secret.

21   Abhyanker indicates that his motion is based on the argument that he is not required to make such

22   disclosures as part of the trade secrets designation process is not required by California Code of

23   Civil Procedure § 2019.210 or the cases interpreting that section.  This Court's order, however,

24   while modeled in part on § 2019.210, was made not simply in reliance on the requirements of that

25   section, but also pursuant to this Court's inherent case management power.  Accordingly, the fact

26   that the disclosure of additional detail regarding allegations of acquisition, disclosure, and use of

27   trade secrets is not required by § 2019.210 does not undermine the basis for the Court's order, and

28

United States District Court
For the Northern District of California

the Court **DENIES** Abhyanker's request for leave to file a motion for reconsideration.  The parties shall proceed directly to the trade secret disclosure process, on the schedule set below.

**IV.    CONCLUSION**

For the forgoing reasons, the Court orders as follows:

1.    Counter-Defendants' motions to dismiss Abhyanker's counterclaim is **GRANTED** as to the allegation that Counter-Defendants misappropriated the trade secret concept of using the nextdoor.com name in connection with a neighborhood-based social network;

2.    Counter-Defendants' motions to dismiss Abhyanker's counterclaim is otherwise **DENIED**;

3.    Counter-Defendants' motion to strike Abhyanker's affirmative defenses is **GRANTED** as to the following defenses: (2) no injury or damage; (4) statute of limitations; (5) adequate remedy at law; (6) estoppel; (7) laches; (8) acquiescence; (9) waiver; and (13) failure to mitigate damages.  It is otherwise **DENIED**.  Abhyanker may file an amended answer providing the factual basis for these affirmative defenses within 21 days;

4.    Abhyanker's motion to disqualify Plaintiff Nextdoor.com's counsel is **DENIED**;

5.    Nextdoor.com's counsel shall maintain the ethical wall it has implemented to screen off all attorneys who may have information regarding LegalForce, Inc. from involvement with the representation of Nextdoor.com.

6.    The parties are ordered to comply with the trade secrets disclosure procedure outlined in the June 27, 2013 joint report.  The disclosures need not include a designation of documents identifying the trade secrets.  The schedule for this process shall be as follows:

•    The parties shall file a stipulated protective order by no later than July 19, 2013;

•    Abhyanker shall file under seal his identification of trade secrets and the factual basis for claims of misappropriation by no later than August 2, 2013;

1    •    The parties shall meet and confer regarding any issues relating to the

2         sufficiency of the trade secret designation by no later than August 16, 2013;

3    •    The parties shall address disagreements relating to the sufficiency of the trade

4         secret designations in their respective portions of the CMC statement by no

5         later than August 29, 2013;

6    •    The next further case management conference shall be re-set from August 22,

7         2013 to September 5, 2013 at 10:30 a.m.

8    This order disposes of Docket Nos. 63, 66, 70, and 88.

9

10   IT IS SO ORDERED.

11

12   Dated:  July 19, 2013

13   _____
                                    EDWARD M. CHEN
14                                  United States District Judge