1 **BRUNO W. TARABICHI**, CA State Bar No. 215129
bruno@legalforcelaw.com
2 **ROY MONTGOMERY**, CA State Bar No. 279531
roy@legalforcelaw.com
3 **KUSCHA HATAMI**, CA State Bar No. 282954
kuscha@legalforcelaw.com
4 **LEGALFORCE RAJ ABHYANKER, P.C.**
1580 W. El Camino Real, Suite 13
5 Mountain View, California 94040
Telephone: 650.965.8731
6 Facsimile: 650.989.2131

7 Attorneys for Defendant
Raj Abhyanker

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NEXTDOOR.COM, INC., a Delaware corporation,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>RAJ ABHYANKER, an individual,<br><br>　　　　　Defendant.<br><br>RAJ ABHYANKER, an individual<br><br>　　　　　Counterclaimant,<br><br>　　vs.<br><br>NEXTDOOR.COM, INC., a Delaware corporation; PRAKASH JANAKIRAMAN, an individual; BENCHMARK CAPITAL PARTNERS, L.P., a Delaware limited partnership; BENCHMARK CAPITAL MANAGEMENT CO. LLC, a Delaware limited liability company; SANDEEP SOOD, an individual; MONSOON ENTERPRISES, INC., a California corporation, and DOES 1–50, inclusive;<br><br>　　　　　Counterdefendants. | Case No. 3:12-cv-05667-EMC<br><br>**DEFENDANT AND COUNTERCLAIMANT RAJ ABHYANKER'S DESIGNATION OF TRADE SECRETS**<br><br>Case Filed:　　November 5, 2012<br>Judge:　　　　Honorable Edward M. Chen |

## I. INTRODUCTION

Around September of 2006, Defendant and Counterclaimant Raj Abhyanker developed the concept of a private online neighborhood social network for inventors to be called LegalForce, and a separate spin off idea using the same code base called Nextdoor. In connection with his LegalForce and Nextdoor concept, Abhyanker developed trade secret information, including, but not limited to, key product details, algorithms, business plans, security algorithms, database structures, user interface designs, software code, product concepts, prototypes, methods, works of authorship, trademarks, white papers, and instrumentalities, information and plans pertaining to, but not limited to, software that makes sure only people who live in a specific neighborhood are able to join its network—giving users a level of privacy that sites like Facebook don't, email lists of inventive neighbors around Cupertino, California, inventive neighbors in the Lorelei neighborhood of Menlo Park, a private social network activation in a geospatially constrained area when 10 neighbors sign up, geo-spatial database, neighborhood member activation through postal mail, public/private geo-location constrained member groups, neighborhood member address verification, sharing of bulletin and wall communications between neighborhood resident users only, customer lists, architecture, social networking, friend grouping, providing real time updates, neighborhood-level privacy controls, feed aggregation, spheres of influence, application technologies, filtering relevant feeds across multiple networks, filtering conversations, adding contextual relevancy to private messages and connections in a geospatially constrained area, and connections across interactions in neighboring communities, providing in depth conversations through a social graph, community governance, bidding history of the Nextdoor.com domain, the activation of the Lorelei neighborhood as a prime testing neighborhood for communication, neighborhood communication and geo-spatial social networking, and the use of the name Nextdoor.com in conjunction with a private social network for neighborhoods.

On or around October 26, 2011, Nextdoor.com publicly launched the www.nextdoor.com online neighborhood social network that uses and was built on the trade secrets misappropriated from Abhyanker. As in virtually all trade secret misappropriation cases, the specific details of

Case3:12-cv-05667-EMC Document105 Filed08/02/13 Page3 of 6

CounterDefendants' misappropriation were not advertised or broadcast; rather, the improper acquisition, disclosure, and use was done secretly—behind closed doors. It is for this reason that plaintiffs are typically permitted to plead the facts relating to misappropriation on information and belief and pursue them through discovery. *See*, *e.g.*, *Brocade Communications Systems, Inc. v. A10 Networks, Inc.*, 2011 U.S. Dist. LEXIS 30227, *19-20 (N.D. Cal. 2011). Despite this widely accepted principle by California federal and state courts, this Court has imposed the undue burden of requiring Mr. Abhyanker to plead—in his trade secret designation—facts regarding misappropriation with particularity akin to a fraud claim, a standard that is impossible to meet when the facts are within the exclusive knowledge of CounterDefendants. By doing so, the Court is effectively depriving Mr. Abhyanker of his trade secret misappropriation claim. Nevertheless, with this impossible standard to meet, Mr. Abhyanker has been forced to limit his identification to the particular trade secrets identified below.

## II. IDENTIFICATION OF TRADE SECRETS

At this time, Mr. Abhyanker is limiting his identification of trade secrets in this designation to three trade secrets: the bidding history of the Nextdoor.com domain, identification of the Lorelei neighborhood as the first neighborhood to launch Nextdoor in, and the source code for the user interface of his online private social network. The source code was developed by CounterDefendants Sandeep Sood and Monsoon Enterprises for Mr. Abhyanker pursuant to a contractual agreement. Sood was privy to confidential bidding history for the Nextdoor domain in 2006, including at least one bid placed with the previous owner for $1300 on which Sood was copied in 2006 prior to Fatdoor being formed and funded. Similarly, Sood was intimately familiar with the locations of Mr. Abhyanker's law office and the testing of the original concept in the Lorelei neighborhood next to Abhyanker's street. The actual source code was stored by CounterDefendants Sandeep Sood and Monsoon Enterprises on a server owned and/or controlled by them. As such, CounterDefendants actually already possess a copy of Mr. Abhyanker's trade secret source code. Although Mr. Abhyanker is the legal owner of the source code per his contractual agreement with CounterDefendants, CounterDefendants failed to provide him with a copy of the source code. As such, Mr. Abhyanker will seek a copy of his source code from

DESIGNATION OF TRADE SECRETS
CASE NO. 3:12-cv-05667-EMC

1  CounterDefendants during discovery.

2  Whether any particular feature of the source code constitutes a trade secret in and of itself will be subject to expert testimony. At a minimum, however, Mr. Abhyanker is claiming that the specific source code itself is information that is not generally known in the industry. Furthermore, the bidding history for the Nextdoor.com domain was not generally known in the industry and the CounterDefendants gained substantial economic advantage by outbidding Mr. Abhyanker for this domain ownership as a result of their misappropriation of bidding history for this domain.

### III. MISAPPROPRIATION OF TRADE SECRETS

#### A. Whether the Trade Secret Was Acquired By Each Defendant and Supporting Factual Basis

Mr. Abhyanker alleges that the bidding history, the identification of the Lorelei neighborhood, and the source code were acquired by Counterdefendants Sandeep Sood and Monsoon Enterprises. The factual bases for these allegations include (i) the fact that Mr. Abhyanker hired Counterdefendants Sandeep Sood and Monsoon Enterprises to create the source code that constitutes Mr. Abhyanker's trade secret; (2) Mr. Abhyanker confidentially disclosed the bidding history to Mr. Sood, who was copied on confidential bids for the domain Nextdoor.com; and (3) the identification and selection of the Lorelei neighborhood as an optimal testing neighborhood was confidentially disclosed by Mr. Abhyanker to Counterdefendants Sandeep Sood and Monsoon Enterprises. As such, there is no dispute that the bidding history, identification of the Lorelei neighborhood, and the source code was acquired by Counterdefendants Sandeed Sood and Monsoon Enterprises.

Mr. Abhyanker alleges that the bidding history, identification of the Lorelei neighborhood, and the source code was acquired by Counterdefendants Nextdoor.com and Prakash Janakiraman when it was disclosed to them by Counterdefendants Sandeep Sood and Monsoon Enterprises as described in Section III.B below.

### B. Whether the Trade Secret Was Disclosed by Each Defendant and Supporting Factual Basis

Mr. Abhyanker alleges that Counterdefendants Sandeep Sood and Monsoon Enterprises disclosed Mr. Abhyanker's trade secret bidding history for the Nextdoor name, the identification of the Lorelei neighborhood, and source code to Counterdefendants Nextdoor.com and Prakash Janikaraman. The factual bases for the allegations are (i) in December 2012, Counterdefendant Sood filled out a Survey for Counterdefendants Nextdoor.com and Prakash Janakiraman, (ii) Counterdefendant Sandeep Sood purposely and intentionally concealed from Mr. Abhyanker the fact that he went to college with Nextdoor.com's Prakash Janakirman and that they have been very good friends for many years and frequently communicate; (iii) Counterdefendant Sood has admitted to Mr. Abhyanker that he has frequently communicated with Mr. Janakiraman; (iv) Nextdoor.com actually ended up testing and prototyping their social networking in the Lorelei neighborhood; (v) Nextdoor.com used Abhyanker's confidential and trade secret bidding history on the nextdoor.com domain name to outbid Mr. Abhyanker for the domain name; and (vi) Nextdoor.com's user interface has strikingly similarities to the Abhyanker's trade secret source code for his user interface.

### C. Whether the Trade Secret Was Used by Each Defendant and Supporting Factual Basis

Mr. Abhyanker alleges that Counterdefendants Nextdoor.com and Prakash Janikaraman used Mr. Abhyanker's trade secret bidding history, identification of the Lorelei neighborhood, and the source code in the development and launch of their www.nextdoor.com website. The factual basis for these allegations include: (i) Nextdoor.com used Abhyanker's confidential and trade secret bidding history on the nextdoor.com domain name to outbid Mr. Abhyanker for the domain name, (ii) Nextdoor.com tested and prototyped its social networking in the Lorelei neighborhood using the website at loreleineighbors.reallifelabs.com, and (iii) Nextdoor.com's use of the source code is conclusively evident by the striking similarities between the user interface generated by Mr. Abhyanker's trade secret source code and the user interface used by Nextdoor.com.

## IV. CONCLUSION

Finally, in addition to the above identified trade secrets, Mr. Abhyanker reserves the right to identify additional trade secrets upon the revelation of more definitive facts through discovery or other investigation.

Dated: August 2, 2013

Respectfully submitted,

LEGALFORCE RAJ ABHYANKER, P.C.

By _____
Bruno W. Tarabichi
Roy Montgomery
Kuscha Hatami
Attorneys for Defendant
Raj Abhyanker