LAURENCE F. PULGRAM (CSB No. 115163)
lpulgram@fenwick.com
JENNIFER L. KELLY (CSB No. 193416)
jkelly@fenwick.com
CLIFFORD C. WEBB (CSB NO. 260885)
cwebb@fenwick.com
FENWICK & WEST LLP
555 California Street
San Francisco, CA  94104
Telephone:     415.875.2300
Facsimile:     415.281.1350

Attorneys for Plaintiff and Counterdefendant
NEXTDOOR.COM, INC. and Counterdefendant
PRAKASH JANAKIRAMAN

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

| | |
|---|---|
| NEXTDOOR.COM, INC., a Delaware corporation,<br><br>                    Plaintiff,<br><br>          v.<br><br>RAJ ABHYANKER, an individual,<br><br>                    Defendant.<br><br>---<br><br>RAJ ABHYANKER, an individual,<br><br>                    Counterclaimant,<br><br>          v.<br><br>NEXTDOOR.COM, INC., a Delaware corporation; PRAKASH JANAKIRAMAN, an individual; BENCHMARK CAPITAL PARTNERS, L.P., a Delaware limited partnership; BENCHMARK CAPITAL MANAGEMENT CO. LLC, a Delaware limited liability company; SANDEEP SOOD, an individual; MONSOON ENTERPRISES, INC., a California corporation, and DOES 1-50, inclusive,<br><br>                    Counterdefendants. | Case No. 3:12-cv-05667-EMC<br><br>**NEXTDOOR.COM, INC.'S NOTICE OF MOTION AND MOTION FOR RULE 11 SANCTIONS**<br><br>Date:        January 16, 2014<br>Time:       1:30 p.m.<br>Judge:     Honorable Edward M. Chen |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ................................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES .......................................................... 2

INTRODUCTION ................................................................................................................... 2

FACTUAL BACKGROUND .................................................................................................. 3

    A.    Abhyanker's Failed Fatdoor Social Network ............................................... 3

    B.    Fatdoor's Termination of Abhyanker and Abandonment of FATDOOR .............. 5

    C.    Nextdoor.com and Prakash Janakiraman ..................................................... 5

    D.    Abhyanker's Bad Faith Litigation Campaign Against Nextdoor.com .................... 6

    E.    The Present Proceedings ............................................................................... 7

    F.    Abhyanker's Trade Secret Disclosures ......................................................... 8

    G.    Abhyanker's Motion for Leave and Amended Disclosure of Trade
        Secrets ........................................................................................................... 8

ARGUMENT .......................................................................................................................... 10

I.     ABHYANKER HAD NO BASIS TO ALLEGE THAT NEXTDOOR.COM
      INDUCED ITS USERS TO INFRINGE HIS PATENT .................................... 11

    A.    Abhyanker Had No Basis to Assert that Anyone Infringed his Patent. ............... 13

    B.    Abhyanker Had No Basis to Assert that Nextdoor.com Encouraged
        Anyone to Practice Abhyanker's Patent. ....................................................... 14

    C.    Abhyanker Had No Basis to Allege that Nextdoor.com Had a Specific
        Intent to Induce Infringement of his Patent When he Filed his SACC. ............... 15

II.    ABHYANKER HAD NO BASIS FOR HIS ALLEGATIONS OF TRADE
      SECRET MISAPPROPRIATION OF SOURCE CODE. .................................. 16

III.   ABHYANKER HAD NO BASIS TO ALLEGE THAT JANAKIRAMAN
      AND TOLIA ACCESSED HIS SUPPOSED TRADE SECRETS. ................... 19

IV.   ABHYANKER'S BASELESS ALLEGATIONS IN THIS ACTION WERE
      MADE FOR AN IMPROPER PURPOSE. ....................................................... 20

V.    ABHYANKER AND HIS COUNSEL SHOULD BE SANCTIONED AND
      NEXTDOOR.COM AWARDED ITS ATTORNEYS' FEES. ........................... 22

CONCLUSION ....................................................................................................................... 23

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Avocet Sports Tech., Inc. v. Garmin Int'l, Inc.*,
    C 11-04049 JW, 2012 WL 2343163 (N.D. Cal. June 5, 2012).............................................. 11

*Christian v. Mattel, Inc.*,
    286 F.3d 1118 (9th Cir. 2006).................................................................................................. 10

*F & G Research, Inc. v. Google Inc.*,
    06-60905-CIV, 2007 WL 2774031 (S.D. Fla. Sept. 21, 2007).................................... 12, 15, 16

*Fuzzysharp Technologies Inc. v. NVIDIA Corp.*,
    12-CV-06375-JST, 2013 WL 2249707 (N.D. Cal. Apr. 18, 2013) ....................................... 11

*G.C. and K.B. Invs., Inc. v. Wilson*,
    326 F.3d 1096 (9th Cir. 2003)................................................................................................... 21

*Golden Eagle Distr. Corp. v. Burroughs Corp.*,
    801 F.2d 1531 (9th Cir. 1986)................................................................................................... 11

*Grobler v. Sony Compuer Entm't Am. LLC*,
    5:12-CV-01526-LHK, 2013 WL 308937 (N.D. Cal. Jan. 25, 2013) ....................................... 11

*Ip Venture, Inc. v. ASUS Computer Int'l, et al.*,
    No. C 12-04143 JSW, Dkt. 159 at 5 (N.D. Cal. Jan. 29, 2013) ............................................ 15

*Judin v. United States*,
    110 F.3d 780 (Fed.Cir.1997)...................................................................................................... 12

*Kendrick v. Zanides*,
    609 F. Supp. 1162 (N.D. Cal. 1985) ................................................................................. 21, 22

*Kinderstart.com LLC v. Google, Inc.*,
    C06-2057JFRS, 2007 WL 831811 (N.D. Cal. Mar. 16, 2007) .............................................. 18

*Mendez-Aponte v. Bonilla*,
    645 F.3d 60 (1st Cir. 2011) ....................................................................................................... 18

*Proxyconn, Inc. v. Microsoft Corp.*,
    No. 11-cv-1681-DOC, 2012 WL 1835680 (C.D. Cal. May 16, 2012) ................................... 15

*Rachel v. Banana Republic, Inc.*,
    831 F.2d 1503 (9th Cir. 1987).................................................................................................... 11

*Smith v. Ricks*,
    31 F.3d 1478 (9th Cir. 1994)...................................................................................................... 11

*Stewart v. American Intern. Oil & Gas Co.*,
    845 F.2d 196 (9th Cir. 1988)...................................................................................................... 21

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

*View Eng'g, Inc. v. Robotic Vision Sys., Inc.*,
  208 F.3d 981 (Fed. Cir. 2000) ............................................................... 12

*Warren v. Guelker*,
  29 F.3d 1386 (9th Cir. 1994) ................................................................. 10

*Young v. Polo Retail, LLC*,
  C 02 4546 VRW, 2007 WL 951821 (N.D. Cal. Mar. 28, 2007) ........................ 22

*Zaldivar v. City of Los Angeles*,
  780 F.2d 823 (9th Cir. 1986 ................................................. 10, 11, 21

**STATUTES**

 35 U.S.C. § 112 ...................................................................................... 13

California Business and Professions Code § 17200 ............................................ 9

**RULES**

Fed. R. Civ. P. 11 .............................................................................. *passim*

Fed. R. Civ. P. 11(b) .............................................................................. 10

Fed. R. Civ. P. 11(b)(1) .......................................................................... 21

Fed. R. Civ. P. 11(c)(1) .......................................................................... 22

Fed. R. Civ. P. 11(c)(2) .......................................................................... 10

Fed. R. Civ. P. 11(c)(4) .......................................................................... 22

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on January 16, 2014 at 1:30 p.m., or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Edward M. Chen, 450 Golden Gate Avenue, San Francisco, California, Plaintiff and Counterdefendant Nextdoor.com, Inc. will and hereby does move for an order granting sanctions under Federal Rule of Civil Procedure 11.  This motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the accompanying declaration of Jennifer L. Kelly in support thereof, the pleadings and other papers on file in this action, and any other oral or written submissions as the Court may entertain.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Defendant and Counterclaimant Raj Abhyanker ("Abhyanker") has spent the last two years filing complaints, trademark oppositions, and counterclaims in an attempt to manufacture some set of facts he can use to hold Nextdoor.com, its founders, and its investors liable for something.  In furtherance of this effort, Abhyanker's pleadings and other filings have been riddled with allegations that are at best wild speculation, and at worst, maliciously false.  Abhyanker's most recent iterations of this conduct are his proposed Second Amended Answer and Counterclaims and Amended Disclosure of Trade Secrets, which contain allegations he has zero basis for asserting.  Despite repeated requests that Abhyanker withdraw them, he has refused.  His effort to prolong frivolous claims prompts this Motion to hold him accountable.

Abhyanker's filings contain baseless factual and legal assertions designed to harass Nextdoor.com and its founders and delay vindication of their rights.  While Abhyanker's misstatements and mischaracterizations are legion, this Motion focuses only on the most central and egregious examples: (1) Abhyanker's claim that Nextdoor.com has induced its customers to infringe Abhyanker's improbably named "Geospatially Constrained Gastronomic Bidding" patent; (2) Abhyanker's assertion that Nextdoor.com misappropriated Abhyanker's user interface source code; and (3) Abhyanker's continuing false assertion that Counterdefendant Prakash Janakiraman was an entrepreneur-in-residence ("EIR") at Counterdefendant Benchmark Capital, and that Janakiraman and Nextdoor.com co-founder Nirav Tolia rifled through Benchmark's files to steal Abhyanker's trade secrets.

None of these allegations has any basis in fact or law, and Abhyanker's pleadings provide no basis on which he could have believed them to be true, much less objectively.  Abhyanker and his counsel either intentionally made false allegations, or made them without conducting the required pre-filing inquiry.  In either case, sanctions are appropriate.  Federal Rule of Civil Procedure 11 provides for the imposition of sanctions where papers are submitted to the Court that are legally unreasonable, without factual foundation, or brought for an improper purpose.  Here, Abhyanker's allegations fail on each and every level.  He and his counsel should be

1   sanctioned, and Nextdoor.com granted its attorneys' fees for having to respond to these baseless

2   allegations.

3                                      **FACTUAL BACKGROUND**

    **A.      Abhyanker's Failed Fatdoor Social Network**

4

5            Wading through the contradictory allegations of Abhyanker's various complaints,

6   oppositions, and counterclaims over the last two years of litigation, Abhyanker describes his

7   effort to develop anywhere from one to three websites in 2006.  In the latest version of his story,

8   Abhyanker contends he developed the concept for three separate online services in 2006—

9   LegalForce, Nextdoor, and Fatdoor.  Dkt. 115 Ex. A ("SACC") ¶¶ 100, 109.[1]  The first,

10  LegalForce, allegedly was to be an online network for inventors.  *Id*. ¶ 100.  Abhyanker claims he

11  incorporated the LegalForce, Inc. entity in 2006 to pursue this concept, and, based on historic

12  versions of the www.legalforce.com website from www.archive.org, it appears that LegalForce

13  publicly launched in late 2006 or early 2007.  Declaration of Jennifer Kelly in Support of

14  Nextdoor.com's Motion for Rule 11 Sanctions ("Kelly Decl.") ¶ 2; Exs. 1-2.  According to

15  Abhyanker, LegalForce was a marketplace where intellectual property rights holders could sell or

16  license their IP rights, primarily patents.  *Id*. (including LegalForce "About Us" page describing

17  the service and a listing of available patents to purchase).  Abhyanker has alleged in both his

18  SACC and Amended Disclosure of Trade Secrets that the source code for this LegalForce website

19  was created for him by Counterdefendant Sandeep Sood.  *See* SACC ¶ 115; Dkt. 116 ("Amended

20  TS Disclosure") at 3.  Oddly, Abhyanker nonetheless maintains he has never been provided a

21  copy of this code.  *See* Amended TS Disclosure at 3.

22           Abhyanker has implausibly claimed that his concept of neighborhood social website, to be

23  called Nextdoor, was a "spin off" of this patent marketplace.  *See* Dkt. 59 (First Amended

24  Counterclaims ("FACC")) ¶ 109.  But as Abhyanker describes it, Nextdoor was planned to be far

25  afield from LegalForce.  According to Abhyanker, Nextdoor was intended to be a private social

26  network for neighbors to connect and share information (like Facebook for neighbors)—not a

27  _____

    [1] As discussed below, Abhyanker recently filed an updated proposed SACC.  *See* Dkt. 121, Ex.
28  A.  The pertinent claims and allegations for this Motion were not changed by that updated
    version.  Accordingly, Nextdoor.com generally refers to the original proposed SACC throughout.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

means for neighbors to purchase each others' animal trap, dental strip, or man-made island patents.  SACC ¶ 100; Kelly Decl. Ex. 2 (showing available patents for purchase on archived version of LegalForce).  Regardless, Abhyanker has been clear in the sundry formulations of his allegations that his Nextdoor concept was never implemented, and that no social network was ever launched by him under that name.  *See, e.g.*, SACC ¶ 112.

According to Abhyanker, there was also a third social network— which he previously claimed included his Nextdoor concept (*see* Dkt. 64 Ex. 3 (First Amended Complaint in the State Court Action or "FAC") ¶ 3), but now alleges was separate and distinct from his Nextdoor concept—Fatdoor.  He characterizes Fatdoor as "a Wikipedia-like public database of neighbor profiles that could be edited and enhanced to provide a 'search' and 'discover' functionality."  SACC ¶ 109.  Abhyanker alleges that he put his LegalForce and Nextdoor concepts on hold to pursue Fatdoor.  *Id.* ¶ 112.  Abhyanker now staunchly maintains that Nextdoor and Fatdoor were in fact different concepts, contained in different companies.  He asserts that while the name Nextdoor was considered for Fatdoor, it was "decided not to pursue that name because of mixed ownership of Nextdoor and LegalForce, and because the name was not available."  *Id.*  Abhyanker alleges that "an entirely new code base was built" for Fatdoor by Chandu Thota, separate from the LegalForce code developed by Counterdefendant Sood.  *Id.* at 116.[2]

---

[2] As explained in more depth in Nextdoor.com's previous Motion to Dismiss Abhyanker's First Amended Counterclaim (Dkt. 63), Abhyanker's allegation that Nextdoor and Fatdoor were distinct concepts is flatly contradicted by Abhyanker's previous State Court Action against Nextdoor.com.  In that action, Abhyanker admitted that his only relevant previous venture was Fatdoor.  He explained then that Nextdoor and Fatdoor were one and the same concept, and that the name Fatdoor ultimately was used for that business because the Nextdoor.com domain name was not available.  *See, e.g.*, FAC ¶¶ 3, 21, 84-85, 94.  Abhyanker conceded in that action that the relevant Fatdoor IP, which purportedly encompassed the Nextdoor concept and "trade secrets" asserted in that action, had in fact been acquired by Google from a Fatdoor successor.  *See* Dkt. 64 Ex. 2 ("Complaint") ¶ 5; FAC ¶ 23 ("[t]he entire basis for Nextdoor.com, Inc.'s business rests on these stolen and misappropriated materials *now owned by Google, Inc.* through its acquisition of the Nextdoor/Fatdoor patent portfolio"); *see also* FAC ¶ 169 ("Google, Inc. now owns the rights to the original technology of the Nextdoor/Fatdoor concept").  Of course, the fact that Fatdoor owned the Nextdoor IP, and that Google purchased Fatdoor, meant that Abhyanker had no standing to make any claim.  His revised allegations in this counterclaim followed demurrer and dismissal of his state court claims.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**B.     Fatdoor's Termination of Abhyanker and Abandonment of FATDOOR**

Regardless of its name, neither the Fatdoor business, nor Abhyanker's tenure with it, were long lived.  Again by his own admission, Abhyanker was terminated by the Fatdoor board of directors in July 2007.  SACC ¶ 127.  Thereafter, Fatdoor abandoned the business model of a neighborhood social networking website and transitioned the company into a local website for mothers to plan events, changing its name to Center'd.  *Id.* ¶ 130.  That business then transitioned again into the local deal space and changed its name to DealMap.  FAC ¶ 111.  Finally, in August 2011, Fatdoor's former IP was acquired by Google.  *Id.*

**C.     Nextdoor.com and Prakash Janakiraman**

In December 2007, after Fatdoor had already abandoned the neighborhood social networking space, fired Abhyanker, and changed its name, the company that would eventually become Nextdoor.com (referred to here as the "Company" or "Nextdoor.com") was founded as SPN, Inc.  SACC ¶ 99.  Two of the founders of that entity were Nirav Tolia ("Tolia") and Counterdefendant Prakash Janakiraman ("Janakiraman").  In January, 2008, SPN, Inc. changed its name to Round Two, Inc.  *Id.*  After nearly two years of work, the Company launched an online almanac of professional and college athletes at www.fanbase.com.  *See id.*  In conjunction with this launch, the Company changed its name to Fanbase, Inc.  *Id.*  Over the next year, Fanbase, while achieving some success, failed to get the traction that was hoped for, and the company decided to change direction.

Fanbase began considering new business concepts.  In the spring of 2010, the Company decided on an online neighborhood social networking concept.  Dkt. 1 ¶ 14.  In January 2011, the Company acquired the domain name www.nextdoor.com (*Id.* ¶ 16) and the Company changed its name to Nextdoor.com, Inc. a few months later.  SACC ¶ 150.  On February 8, 2011, Nextdoor.com applied for a federal registration for the "NEXTDOOR" trademark for local social networking.  *Id.* ¶ 175.  On October 26, 2011, Nextdoor.com publicly launched its online neighborhood social networking service at www.nextdoor.com.  *Id.* ¶ 151.  That service is a growing success.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

### D.    Abhyanker's Bad Faith Litigation Campaign Against Nextdoor.com

Having failed in his efforts to launch a neighborhood website six years ago, Abhyanker has decided to seek a piece of Nextdoor.com's success through serial litigation.  Abhyanker is a lawyer himself who has been using his own law firm to represent him.  Kelly Decl. Ex. 3.  He took his opening shot in Santa Clara Superior Court less than a month after Nextdoor.com's highly publicized, successful launch (the "State Court Action").  On November 10, 2011, Abhyanker filed his initial Complaint in the State Court Action, naming Nextdoor.com and several of its founders and investors, including Nirav Tolia and Benchmark Capital.  Shortly thereafter, he filed a First Amended Complaint.  Abhyanker's allegations in that action were based on a number of outlandish theories, including a prejudice against Arizonans in favor of Texans within Nextdoor.com's investor Benchmark (FAC ¶¶ 142-43), a bias in favor of "hunters" at Benchmark (*id*. ¶ 144), a "culture of communism" purportedly leading to the stealing of ideas within Benchmark (*id*. ¶ 145), and a prejudice against married fathers with children, like Abhyanker (*id*. ¶¶ 147-48).  These oddities aside, the State Court Action centered on the same factual allegations at play here—allegations that because Nextdoor.com settled on the same name Abhyanker had once considered but never purchased, it must have, somehow, misappropriated trade secrets relating to its business concept, name and technology.

Based on Abhyanker's concessions in the State Court Action that all of the relevant IP asserted by Abhyanker had been owned by Fatdoor, Inc. and eventually acquired by Google, Inc.—not Abhyanker—Nextdoor.com, Tolia and Benchmark demurred in the State Court Action based on a lack of standing.  Facing those demurrers, Abhyanker went shopping for a new forum.

On January 20, 2012, Abhyanker filed a Notice of Opposition to Nextdoor.com's application to register the NEXTDOOR mark with the Trademark Trial and Appeal Board ("TTAB"), alleging that the NEXTDOOR mark infringed Abhyanker's supposed rights in that same mark.  Dkt. 64 Ex. 4 ("First Opposition").  Then, on February 9, 2012, Abhyanker filed a separate second notice of opposition to Nextdoor.com's application, this time claiming that it was invalid due to the existence of his trademark application for the phrase FATDOOR GET TO KNOW YOUR NEIGHBORS—an application Abhyanker had filed only one day prior to

submitting this second opposition. *Id*. Ex. 6 ("Second Opposition").[3]  With this alternate

litigation at the TTAB in place, and facing a meritorious demurrer, Abhyanker abruptly dismissed

the State Court Action on February 7, 2012 before the court could rule. *Id*. Ex. 5.

### E.     The Present Proceedings

On November 5, 2012, Nextdoor.com instituted the present action seeking to vindicate

rights that could not be decided by the TTAB, and put an end to Abhyanker's harassment. *See*

Dkt. 1.  Nextdoor.com's DJ Complaint both seeks a declaration that it is lawfully using the

NEXTDOOR mark and asserts affirmative claims against Abhyanker for Cyberpiracy and

violation of the Lanham Act.  *See* Dkt. 1 (the "DJ Complaint").  Nextdoor.com's affirmative

claims seek to stop Abhyanker's use of the name "Nextdoor," as well as his use of the domain

name www.nextdoor.cm to pretend to be Nextdoor.com, both of which activities commenced

shortly *after* Nextdoor.com's public launch.  Nextdoor.com alleges that Abhyanker took these

steps for the purpose of confusing the public and attempting to leverage a claim against

Nextdoor.com.  *Id*.

Abhyanker responded to Nextdoor.com's DJ Complaint with a Counterclaim, which

partially recycled and partially contradicted his previously abandoned claims in the State Court

Action (as explained above).  Dkt. 16.  But despite manipulating his allegations in an effort to

prolong his claims, Abhyanker again failed to allege facts plausibly supporting either of his two

causes of action.  *Id*.  Accordingly, Counterdefendants filed motions to dismiss those claims.  In

the face of those motions Abhyanker tried another dodge, filing a First Amended Counterclaim

that narrowed his causes of action to just one—trade secret misappropriation.  Dkt. 59 ("FACC").

Counterdefendants again moved to dismiss.  This Court granted those motions in part and

denied them in part.  Specifically, the Court dismissed any trade secret misappropriation claims

based on the allegation that Counterdefendants misappropriated the name Nextdoor.com for an

online social network—the heart of Abhyanker's claims here. *See* Dkt. 100 at 12-13 (dismissing

counterclaim for trade secret misappropriation to the extent it relates to alleged misappropriation

of the Nextdoor name in connection with a neighborhood-based social network).  In partially

---

[3] These oppositions have been suspended pending resolution of Nextdoor's claims in this action.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

denying those motions, the Court did not endorse the remainder of Abhyanker's claims.  Rather, the Court recognized that before he could proceed, Abhyanker needed to disclose much more about the scope of his alleged trade secrets, as well as how those trade secrets allegedly were acquired, disclosed or used, before this claim can proceed in this action.  *Id.* at 26-27.  The Court ordered Abhyanker to file, under seal, trade secret disclosures making these specific factual allegations.  *Id.*

### F.    Abhyanker's Trade Secret Disclosures

Conceding that he did not have facts to support the laundry list of trade secrets he pled in his Counterclaim and FACC, but trying to keep something alive, Abhyanker publicly filed a purported trade secret disclosure on August 2, 2013 limited to just three supposed secrets, and which did not come anywhere close to the specificity the Court had ordered.  Dkt. 105 at 2. Despite multiple attempts to meet and confer regarding the insufficiency of these disclosures, counsel for Abhyanker never responded.  *See* Dkt. 118-1 (Declaration of Jennifer Kelly in Support of Nextdoor.com Opposition to Abhyanker Motion for Leave to File the SACC) ¶ 3. Counterdefendants were therefore forced to submit a unilateral case management statement addressing the insufficiency of Abhyanker's trade secret disclosures.  Abhyanker never addressed or purported to defend the sufficiency of his disclosures in any filing made with the Court.

At the September 5, 2013 case management conference—which this Court had set as the time to address Abhyanker's trade secret disclosures—counsel for Abhyanker again did not argue that Abhyanker's disclosures were sufficient.  Instead, counsel explained that Abhyanker intended to serve Benchmark Capital (after having waited nearly five months to do so since filing the FACC), to amend his trade secret disclosure to cover Benchmark Capital, and to file a Motion for Leave to Amend his Counterclaim.  The Court ordered that Abhyanker do so no later than September 26, 2013.  Dkt. 110.

### G.    Abhyanker's Motion for Leave and Amended Disclosure of Trade Secrets

On September 26, 2013, pursuant to this Court's order, Abhyanker filed a motion for leave to amend, attaching his proposed SACC (Dkt. 115) and an Amended Trade Secret Disclosure (Dkt. 116) (Amended Disclosure of Trade Secrets or "Amended TS Disclosures").

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Far from streamlining this litigation or providing a coherent factual basis for his claims, those documents only heaped on further obfuscation and ensured delay.

In his proposed SACC, Abhyanker purported to plead, in addition to his conclusory allegations of trade secret misappropriation, new claims for copyright infringement, trademark fraud, inducement to patent infringement, trademark infringement, false designation of origin, and unfair competition under California Business and Professions Code § 17200. *See* SACC. And while he had more than two months to prepare trade secret disclosures from the date of the Court's original order that he do so, Abhyanker's Amended TS Disclosures still failed to offer anything approaching an adequately detailed identification of secrets. Abhyanker's Amended TS Disclosures parrot the deficient identification of the same three supposed secrets he originally made in August: (1) the bidding history of the Nextdoor.com domain, (2) use of the Lorelei neighborhood for beta-testing an unidentified service of Abhyanker's, and (3) "the source code for the user interface" for an unidentified "private social network." Amended TS Disclosures at 2. As before, these disclosures also fail to offer any facts suggesting that Abhyanker had any basis to assert misappropriation of even these trade secrets—only rank conjecture.

In response to the baseless claims and allegations Abhyanker made in these documents— and, frankly, fed up with the nonsense of Abhyanker's tactics—Nextdoor.com sent a Rule 11 letter to Abhyanker's counsel on October 4, 2013 explaining that Abhyanker needed to withdraw various baseless allegations or face sanctions. Kelly Decl. ¶ 4 & Ex. 4. That letter identified each of the baseless claims and allegations raised by this Motion: (1) Abhyanker's baseless claims for inducement to patent infringement, (2) Abhyanker's false assertion that Nextdoor.com misappropriated his source code, and (3) Abhyanker's false assertion that Janakiraman was an EIR at Benchmark Capital, and that Janakiraman and Tolia searched through Benchmark's files to steal Abhyanker's trade secrets. *Id.* Ex. 4. Nextdoor.com also identified as objectively baseless a claim Abhyanker had made for copyright infringement. *Id.* Abhyanker did not even respond to that letter. *Id.* ¶ 4.

On October 10, 2013, Nextdoor.com opposed Abhyanker's motion for leave to file the SACC, further explaining the futility and baseless nature of Abhyanker's claims. *See* Dkt. 118.

In reply to that opposition, Abhyanker admitted, rightly, that his copyright infringement and trademark fraud claims were without basis and dropped them from his proposed SACC. *See* Dkt. 121 at 9-10. But despite Nextdoor.com's repeated explanation of the baseless nature of Abhyanker's inducement to patent infringement claim, Abhyanker stuck to it in his reply, offering purported "evidence" supposedly supporting the merits of the claim. He also attached an updated SACC reasserting the claim and the same baseless allegations that were the subject of the Rule 11 letter. *See* Dkt. 121 at 10-14, Ex. A. On October 24, 2013, Nextdoor.com sought leave to file a surreply addressing this supposed "evidence" of infringement and explaining the futility of Abhyanker's inducement to patent infringement claim. *See* Dkt. 122.

On October 31, 2013, Nextdoor.com and Mr. Janakiraman served a copy of this motion on Abhyanker, through his counsel, in compliance with Rule 11(c)(2). Kelly Decl. ¶ 5 & Ex. 5. As of the filing of this Motion 21 days later, neither Abhyanker nor his counsel has withdrawn the claims that violate Rule 11. The allegations that are the subject of that letter and this Motion continue to be asserted.

### **ARGUMENT**

"Filing a complaint in federal court is no trifling undertaking." *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2006). "An attorney's signature on a complaint is tantamount to a warranty that the complaint is well grounded in fact and 'existing law' (or proposes a good faith extension of existing law) and that it is not filed for an improper purpose." *Id.* Under Rule 11, sanctions are appropriate if, measured objectively, a pleading is (1) legally unreasonable, (2) without factual foundation, or (3) brought for an improper purpose. *See, e.g.*, *Warren v. Guelker*, 29 F.3d 1386, 1388 (9th Cir. 1994); *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 831 (9th Cir. 1986), *overruled on other grounds*, *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 399-405 (1990). Any of these three is, alone, sufficient to establish a violation warranting sanctions. *Zaldivar*, 780 F.2d at 830-32.

Rule 11 serves the important purpose of ensuring that a factual and legal foundation exists for assertions made in documents filed with the Court. To accomplish this, Rule 11 creates and imposes an affirmative duty to investigate the law and facts *before* filing. Fed. R. Civ. P. 11(b);

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    *Rachel v. Banana Republic, Inc.*, 831 F.2d 1503, 1508 (9th Cir. 1987).  Imposing this duty deters

2    plaintiffs from making wild accusations, in harmony with Rule 11's purposes in deterring

3    "abusive pretrial tactics" and unnecessary expense.  *Golden Eagle Distr. Corp. v. Burroughs*

4    *Corp.*, 801 F.2d 1531, 1536 (9th Cir. 1986).  As such, Rule 11 does not tolerate a "shoot first, ask

5    questions later" approach to litigation.  Importantly, while an improper purpose is, in and of itself,

6    a violation of Rule 11, an absence of bad faith does *not* absolve a party or his counsel from

7    liability for claims made without reasonable inquiry or support.  *See Zaldivar*, 780 F.2d at 829

8    (subjective good faith is no defense to Rule 11); *see also Smith v. Ricks*, 31 F.3d 1478, 1488 (9th

9    Cir. 1994) (if a pleading or motion is filed frivolously from an objective view, it is

10   inconsequential that it was not filed in subjective bad faith).  Whether a sufficient factual basis

11   existed at the time of the filing is assessed under an objective standard.  *Zaldivar*, 780 F.2d at

12   830-32.

13   **I.      ABHYANKER HAD NO BASIS TO ALLEGE THAT NEXTDOOR.COM**
14           **INDUCED ITS USERS TO INFRINGE HIS PATENT.**

15           As Nextdoor.com explained in its opposition to Abhyanker's motion for leave to amend

16   his counterclaim, Abhyanker's proposed inducement to patent infringement claim requires three

17   separate elements: (1) the existence of direct infringement of his patent; (2) facts showing that

18   Nextdoor.com encouraged or induced its users to perform the acts that allegedly infringe

19   Abhyanker's patent; and (3) facts showing that Nextdoor.com intentionally encouraged conduct

20   that it knew infringes that patent.  *See, e.g., Fuzzysharp Technologies Inc. v. NVIDIA Corp.*, 12-

21   CV-06375-JST, 2013 WL 2249707, at *2 (N.D. Cal. Apr. 18, 2013); *Grobler v. Sony Compuer*

22   *Entm't Am. LLC*, 5:12-CV-01526-LHK, 2013 WL 308937, at *2 (N.D. Cal. Jan. 25, 2013); *Avocet*

23   *Sports Tech., Inc. v. Garmin Int'l, Inc.*, C 11-04049 JW, 2012 WL 2343163, at *3 (N.D. Cal. June

24   5, 2012); *see also* Dkt. 121 at 10 (Abhyanker's reply on motion for leave also laying out these

25   requirements).  Abhyanker's own attestations in this litigation confirm that he had no basis to

26   claim that any of these elements were met, either when he originally filed his proposed SACC or

27   when he later refiled it (unchanged) in support of his reply to Nextdoor.com's opposition to his

28   motion for leave to amend.

The Federal Circuit has explained that Rule 11 plays an "extremely important" role in patent litigation in avoiding the significant expense and burden of baseless claims.  *See View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 208 F.3d 981, 986 (Fed. Cir. 2000).  As such, "the patent holder, if challenged, must be prepared to demonstrate to both the court and the alleged infringer exactly why it believed before filing the claim that it had a reasonable chance of proving infringement.  Failure to do so *should ordinarily result* in the district court [exercising] its broad discretion in favor of Rule 11 sanctions, at least in the absence of a sound excuse or considerable mitigating circumstances."  *Id.* (emphasis added).  In order to have a reasonable factual basis to allege patent infringement under Rule 11, a claimant must carefully evaluate the patent claims and the accused device.  Speculation as to infringement does not constitute a reasonable inquiry. *See id.* at 985 (counterclaimant did not conduct a reasonable inquiry prior to asserting patent infringement where "the only basis for their filing was the belief of [the inventor] that the View devices probably infringed the Robotic patents [which], in turn, was based solely on his knowledge of the Robotic patents, the View's advertising, and the statements the View made to its own customers"); *Judin v. United States,* 110 F.3d 780, 784 (Fed.Cir.1997) (mere belief that a device infringes does not constitute a reasonable pre-filing investigation).  Where, as here, allegations of inducement are at issue, a claimant must also have to have a reasonable factual basis to assert the elements of specific intent to infringement and encouragement.  *See F & G Research, Inc. v. Google Inc.*, 06-60905-CIV, 2007 WL 2774031, at *15-*16 (S.D. Fla. Sept. 21, 2007) (granting Rule 11 sanctions on patent inducement claim).  Abhyanker has none of this.

Abhyanker's patent involves a system of geospatially constrained "bidding" on "gastronomical" items.  At least three elements—an offer for customers to make *bids*, on *gastronomical* items, on a bidding platform *periodically across a spectrum of time*—are essential to every claim in the patent.  *See* Kelly Decl. Ex. 6 at col. 14:30-14:35, 14:45-14:49 (independent claim 1, claiming a method for determining through a central server associated with a "gastronomic bidding service provider, that a bidding platform provided by the gastronomic bidding service provider has a number of requests for gastronomic offers within at least one of a residential location zip code and a daytime location zip code associated with a user thereof" and

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

further "permitting the user to create a series of standing bid amounts spread across a spectrum of time such that the standing bid amounts are submitted periodically to a set of retail establishments based on at least one of a gastronomical item").[4]  These are not complicated technical terms that require any construction by this Court; they are everyday terms used by the patent with their plain meaning.

### A.    Abhyanker Had No Basis to Assert that Anyone Infringed his Patent.

As to the first element of his inducement claim, the existence of a direct infringer, Abhyanker's proposed SACCs and the papers in support of his motion for leave offer no basis to allege direct infringement by any Nextdoor.com customer.  On its face, the proposed SACC does not assert that any user of Nextdoor.com's service has ever infringed Abhyanker's patent.  Instead, Abhyanker merely asserts that Nextdoor.com users "can" create offers that Abhyanker believes would infringe his patent—not that anyone has or does.  *See* SACC ¶ 205.  In response to this explanation in opposition to his motion for leave, Abhyanker came forward with a number of documents that he claims support his allegations of direct infringement.  *See* Dkt. 121-1 (Declaration of Bruno Tarabichi in Support of Reply on Motion for Leave to Amend or "Tarabichi Decl.") Ex. A-C.  But far from supporting an inference of direct infringement, those documents confirm that Abhyanker did not and has never had any.

---

[4] All subsequent dependent claims incorporate claim 1, either directly or indirectly.  *See, e.g. id.*, col. 14:61:14:64, col.15:27-15:30 (dependent claim 2, requiring all elements in claim 1, and further providing that the method "permit[] a retail establishment within . . . at least one of the residential location zip code and the daytime location zip code of the user to create a minimum reserve price of a gastronomical item"); col. 15:31-15:50 (dependent claim 3, requiring all elements in claim 2, which in turn incorporates all elements of claim 1, and further requiring the generation of "a user feed that publishes the winning bid of a particular user); col. 15:56-16:4, 16:12-16:16, 16:17-16:18 (dependent claim 4, requiring all elements of claim 2, which incorporates all elements of claim 1, and further requiring that a "threshold number of retail establishments agree [with the gastronomic bidding service provider] to permit the user and other users to receive corresponding gastronomical items . . . based on receipts generated through at least one central server upon securitization of at least one . . . winning bid" and "appending a delivery charge to . . . the winning bid[s]"); col. 16:28-16:32 (dependent claim 5, requiring all elements in claim 1 and further calling for the "marketing, to a plurality of users, the set of gastronomical items through the bidding platform provided by the gastronomic bidding service provider"); col. 16:33-16:59 (dependent claim 6, requiring all elements of claim 1, and further requiring that a central server process a "conditional purchase offer having an offer price of the user . . . for a gastronomical item associated with a plurality of retail establishments"); *see also* 35 U.S.C. § 112 ("A claim in dependent form shall be construed to incorporate by reference all the limitations of the claim to which it refers").

Fenwick & West LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Indeed, none of Exhibits A through C show direct infringement of the patent's gastronomic bidding system. Exhibit A describes how "[s]ome restaurants in Potrero Hill . . . offer specials one night a week just for local Nextdoor.com members." *Id.* Ex. A at 2. But offering a special is not soliciting a bid for food, that might be accepted or rejected, through a system that creates a series of standing bid amounts over time—which is what Abhyanker's patent requires. Exhibit B describes how a neighbor hopes to, in the future, advertise his guitar lessons and solicit discounts from sellers of lawn care for a group of neighbors. *Id.* Ex. B at 3-4. Again, there is no offer from a seller to accept bids on anything, much less food. And Exhibit C merely explains that a user "posted a brief notice on the Village Shores Estates page a few months ago when he started his private contracting business." *Id.* Ex. C at 2. None of this has anything to do with bidding or gastronomy or suggests that anyone has ever thought of, much less practiced Abhyanker's invention: offering persons geospatially constrained opportunities to bid a series of prices for food items. Thus, Abhyanker had no basis to assert that any Nextdoor.com user infringed his asserted patent, much less an objectively reasonable one. As such, for this reason alone, sanctions on this claim are appropriate.

**B.      Abhyanker Had No Basis to Assert that Nextdoor.com Encouraged Anyone to Practice Abhyanker's Patent.**

The second element of Abhyanker's inducement claim is that Nextdoor.com actively encouraged its users to engage in conduct that Abhyanker alleges infringed his patent. Again, Abhyanker's SACC is completely devoid of any facts supporting such an assertion. Instead, Abhyanker's proposed SACC merely contains the wholly unsupported conclusion, made on information and belief, that Nextdoor.com "encouraged, instructed, enabled and otherwise caused its customers to use its products and service for presenting gastronomic offers to users who reside within a particular zip code." *See* SACC ¶ 207.[5]

---

[5] Violations of Rule 11 also include making unfounded allegations supposedly "on information and belief." The comments to the 1993 amendments to Rule 11 explain that "[t]olerance of factual contentions in initial pleadings by plaintiffs or defendants when specifically identified as made on *information and belief does not relieve litigants from the obligation to conduct an appropriate investigation* into the facts that is reasonable under the circumstances; *it is not a license to join parties*, make claims, or present defenses without any factual basis or justification." *See* 1993 Advisory Committee Notes to Fed. R. Civ. P. 11. (emphasis added).

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

In response to Nextdoor's and Janakiraman's opposition to Abhyanker's motion for leave, all that Abhyanker points to as supporting this assertion is a publicly available presentation by Nextdoor.com, which explains that Nextdoor.com's "business model will focus on working with local businesses to provide special offers to neighbors."  Tarabichi Decl. Ex. D at 10.  On its face, this has nothing to do with offers to *bid* on any product, much less bidding on *gastronomical items*.  At most, it shows that Nextdoor.com has plans for businesses to use its service for future advertising.  This is not the purported invention claimed by Abhyanker's patent—not even close.  As such, this document does not and could not have provided Abhyanker with any objective basis to allege that Nextdoor.com encouraged acts that infringe his patent.  This is precisely the type of situation in which sanctions are appropriate.  *See F & G Research*, 2007 WL 2774031, at *16 (general purpose documentation on the use of the defendants products which could benefit infringers and non-infringers alike is not sufficient to establish a Rule 11 basis for alleging inducement).  Again, on its own, this failure is sufficient to warrant sanctions.

## C.   Abhyanker Had No Basis to Allege that Nextdoor.com Had a Specific Intent to Induce Infringement of his Patent When he Filed his SACC.

Finally, Abhyanker's own statements confirm that he had no basis to assert that Nextdoor.com met the final element of this claim when he filed his SACC:  specific intent to induce infringement.  *See* SACC ¶ 207.  Abhyanker does not allege anywhere in his SACC that he provided Nextdoor.com notice of his patent prior to filing the SACC.  He did not.  Instead, in response to Nextdoor.com's opposition to his motion for leave, Abhyanker suggested that in settlement negotiations Nextdoor.com became aware that Abhyanker claimed to own *some* patent interest.  Tarabichi Decl. ¶ 5.  This is not sufficient.

Absent actual notice of the *specific* patent Abhyanker asserted before filing the SACC, Nextdoor.com could not have the specific intent required for inducement.  *See Proxyconn, Inc. v. Microsoft Corp.*, No. 11-cv-1681-DOC (ANx), 2012 WL 1835680, at *5, *7 (C.D. Cal. May 16, 2012) (first notice of patent at issue must precede filing); *Ip Venture, Inc. v. ASUS Computer Int'l, et al.*,  No. C 12-04143 JSW, Dkt. 159 at 5 (N.D. Cal. Jan. 29, 2013) (same).  Indeed, as a self-proclaimed "patent attorney," Abhyanker certainly is aware of this requirement.  Kelly Decl.,

Ex. 3.  That he nonetheless alleges that Nextdoor.com possessed such specific intent, despite

knowing that he never put Nextdoor.com on notice of his patent, confirms his lack of basis for his

allegation in this regard.  *See F & G Research*, 2007 WL 2774031, at *15 (considering lack of

prefiling notice of patent in finding a plaintiff lacked a sufficient Rule 11 basis to assert an

inducement claim).  For this reason too, sanctions are warranted on this claim.

## II.   ABHYANKER HAD NO BASIS FOR HIS ALLEGATIONS OF TRADE SECRET MISAPPROPRIATION OF SOURCE CODE.

Abhyanker likewise had no reasonable basis to assert that Nextdoor.com misappropriated

"his" "user interface source code."  Abhyanker asserts that Nextdoor.com must have been

provided the source code for its user interface from either Counterdefendant Sandeep Sood or

Benchmark because the interface generated by Abhyanker's code purportedly has "strikingly

similarities" to that used by Nextdoor.com.  *See* Amended TS Disclosures at 5.  In fact, there is

minimal similarity in the appearance of the user interfaces, nor would any resemblance require, or

indicate, that source code was duplicated.  But more importantly, as shown below, the only user

interface to which Abhyanker arguable has rights in source code—that created for LegalForce

(which Abhyanker claims to have acquired when that company folded)**— has no similarity

whatsoever to Nextdoor.com's interface**.  While Abhyanker's allegations in his Amended Trade

Secret Disclosures are carefully crafted to obfuscate what source code he is referring to, at

bottom, there is absolutely no basis for his source code misappropriation claim.

Abhyanker has asserted two inconsistent theories of *how* Nextdoor might have come into

possession of source code:  either Nextdoor.com got his secrets from Benchmark Capital when its

co-founder Nirav Tolia was briefly an EIR there in 2007 (after Benchmark had already rejected

Abhyanker's funding proposal for Fatdoor, and years before Nextdoor.com's business was

conceived), or Nextdoor.com received code from Sandeep Sood years later, in 2010.  *See Id*. at 4-

5.  Abhyanker alleges that Benchmark was provided a copy of certain code on a Diligence CD-

ROM in June of 2007, but despite requests by Nextdoor.com's counsel, Abhyanker has not

provided a copy so that any materials thereon can be reviewed.  As to Sood, Abhyanker claims

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   that he did not ever receive a copy of whatever code Sood created—making his assertion that

2   Nextdoor somehow must have used such code particularly baseless.

3       As to *what* source code Nextdoor purportedly received, Abhyanker first pled in his

4   amended counterclaim that Nextdoor.com and Janakiraman misappropriated dozens of vaguely

5   identified trade secrets, including "software code."  *See* Dkt. 16 ¶ 108; FACC ¶ 109.[6]  When

6   forced to provide more specificity, Abhyanker vaguely alleged in his Amended Trade Secret

7   Disclosures that they misappropriated "the source code for the user interface of his [Abhyanker's]

8   online private social network."  Amended TS Disclosures at 2:16-2:17.  Despite Nextdoor.com's

9   request to clarify, this allegation remained opaque as to which of Abhyanker's alleged services,

10  LegalForce or Fatdoor, this purported code was for.  The allegations in the SACC, however, make

11  clear that the alleged "theft" had to be the LegalForce source code.  Abhyanker alleges in his

12  Amended Trade Secret Disclosure that he "hired Counterdefendants Sandeep Sood and Monsoon

13  Enterprises to create the source code that constitutes Mr. Abhyanker's trade secret."  *Id*. at 3.  In

14  turn, the SACC alleges that the *only* code Sood developed for Abhyanker was for LegalForce.

15  *See* SACC ¶ 115.[7]  Abhyanker alleged that there was code for the *Fatdoor* service, but that it was

16  not only distinct, but developed by a different person, Chandu Thota.  *Id*.  Thus, however he

17  might attempt to fudge the issue, the only way his claim of misappropriation can hold together is

18  if the source code allegedly stolen was that Sood wrote for LegalForce, not the code Thota wrote

19  for Fatdoor.  This is doubly true because Abhyanker, as discussed above, Abhyanker did not own

20  the Fatdoor assets; Fatdoor, Inc. and its corporate successors did.

21      Abhyanker has pleaded no factual basis to believe that Nextdoor ever obtained the

22  Sood/LegalForce source codes.  Indeed, the facts countermand that proposition.  The only "fact"

23  Abhyanker offers in support of his allegation of source code misappropriation in his Amended

24  Trade Secret Disclosures is the supposed "striking similarities" between the interface for "his"

25  unnamed private social network and the user interface used by Nextdoor.com.  Amended TS

26  Disclosures at 6.  Abhyanker's proposed SACC reveals that the purported similarities to which he

---

[6] Abhyanker repeats this allegation in his proposed SACC.  *See* SACC ¶ 100.

[7] Abhyanker alleges he planned to use this same code for his Nextdoor concept, which he concedes he never launched.  SACC ¶ 99.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  vaguely refers here are to *Fatdoor, not LegalForce*.  In his proposed SACC, Abhyanker discusses

2  the supposed striking similarities between Nextdoor.com's user interface and that for

3  Abhyanker's Fatdoor service.  *See* SACC ¶¶ 198-200.  The SACC even alleged that

4  Nextdoor.com engaged in copyright infringement by copying the Fatdoor interface, and presented

5  copies of the Fatdoor interface side by side with the Nextdoor.com interface.[8]  Abhyanker does

6  not, and cannot make any such allegations of similarity between the Nextdoor code and the

7  *LegalForce* service—which in fact looked nothing like Nextdoor.com's interface.  *Compare*

8  Kelly Decl. Exs. 1-2 (archived version of the LegalForce website) to Ex. 7 (Nextdoor.com's

9  website).[9]

10      Abhyanker's suggestion that Nextdoor.com's user interface is (purportedly) similar to

11  *Fatdoor's* interface (which Abhyanker did not own) provides no basis to claim that Nextdoor.com

12  misappropriated the separate code base from LegalForce, which looks nothing like the

13  Nextdoor.com site.  What makes this baseless claim especially sanctionable is Abhyanker's

14  attempt to conceal its fundamental deficiency in vague phrasing calculated to mask the truth.

15      There is, in short, absolutely no basis whatsoever for the spurious assertion that

16  Nextdoor.com obtained or used a shred of LegalForce source code.  Where a party makes

17  allegations of only what is possible without any facts to conclude it is actually true, they violate

18  Rule 11.  *See, e.g., Kinderstart.com LLC v. Google, Inc.*, C06-2057JFRS, 2007 WL 831811 (N.D.

19  Cal. Mar. 16, 2007) (vague, second-hand allegations that were merely consistent with Google

20  modifying searching list rankings insufficient).  Beyond wild speculation—which would be

21  insufficient to meet the standards of Rule 11—misappropriation of LegalForce interface source

22  code is disproven by the very dissimilarity of the user interfaces on their face.  *See, e.g., Mendez-*

23  *Aponte v. Bonilla*, 645 F.3d 60, 68 (1st Cir. 2011) (affirming grant of Rule 11 sanctions where

24  factual allegations were based on only "speculation and conclusory allegations").

25  [8] Abhyanker ultimately withdrew his copyright claim, in the face of Nextdoor.com's Rule 11

26  Letter, which explained how there was no copyrightable expression copied, and that Abhyanker did not own the Fatdoor.com IP in any event.

27  [9] Even if the interfaces at issue were similar in appearance, this would not be indicative of

28  misappropriation of the source code for those interfaces.  Two services could have identical appearances without sharing a single relevant line of code.

It is all the more difficult to fathom how Abhyanker could, in good faith, purport to allege misappropriation of source code that he expressly alleges he never even received and thus could not know the contents. *See* Amended TS Disclosures at 3 ("Although Mr. Abhyanker is the legal owner of the source code per his contractual agreement with CounterDefendants, CounterDefendants failed to provide him with a copy of the source code"). Abhyanker had no basis to assert misappropriation of his source code, and he should be sanctioned for seeking to prolong this case by doing so.

## III. ABHYANKER HAD NO BASIS TO ALLEGE THAT JANAKIRAMAN AND TOLIA ACCESSED HIS SUPPOSED TRADE SECRETS.

Finally, Abhyanker makes a number of wild and reckless allegations in support of his theory that Nextdoor.com co-founders Janakiraman and Tolia accessed—and misappropriated—his trade secrets from Benchmark.

Abhyanker alleges in his Amended Trade Secret Disclosures that Janakiraman and Tolia "operated their Nextdoor.com business and were employed inside the offices of Benchmark and had full access to, and accessed analyst notes, diligence materials, and the Diligence CD-ROM" containing Abhyanker's trade secrets. *Id.* at 5. The SACC further alleges that both Janakiraman and Tolia were EIRs at Benchmark Capital (SACC ¶ 135) and that, in this capacity, they "researched the history of Abhyanker's Trade Secrets by looking through electronic archives stored at Benchmark Capital." SACC ¶ 145.[10] These allegations are the sole basis for Abhyanker's theory that Nextdoor.com must have misappropriated Abhyanker's trade secrets while Tolia and Janakiraman were EIRs and Benchmark. They are totally without factual basis.

As an initial matter, Janakiraman was never an EIR at Benchmark, as Abhyanker has been informed on numerous occasions. *See* Dkt. 38 at 15 n.9; Dkt. 63 at 17 n.8. There was and is no basis for Abhyanker to continue to allege otherwise. And he could easily have confirmed Mr. Janakiraman's employment history by looking at his publicly available LinkedIn profile. *See*

---

[10] As explained above, that this latter allegation is made on information and belief does not immunize Abhyanker from his Rule 11 obligations.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Kelly Decl. Ex. 8 (Janakiraman LinkedIn page not noting any employment at Benchmark).  The Janakiraman allegations thus have no good faith factual basis.

While Tolia was for a short time an EIR at Benchmark, he did not become one until two months *after* Abhyanker unsuccessfully sought funding for Fatdoor in June, 2007.  *See* Kelly Decl. Ex. 9 (Tolia LinkedIn page showing that he joined Benchmark in August 2007); SACC ¶ 121 (alleging that Abhyanker sought funding for Fatdoor from Benchmark in June 2007).  These are publicly available documents that any reasonable investigation by Abhyanker or his counsel would and should have turned up.  Abhyanker has no basis to allege that Tolia was an EIR at Benchmark during the time he pitched Fatdoor.

Moreover, Abhyanker has himself acknowledged that when the Company was founded in December 2007, after Tolia had left Benchmark, it had a different name (SPN and then Fanbase) and pursued a totally different business model—an online almanac of professional and college athletes.  *See* SACC ¶ 99.  There is not a shred of evidence or factual basis to suggest that Janakiraman and Tolia began pursuing a business in the neighborhood social networking space prior to the Spring of 2010, years later.  *Id.*

The bare fact that Tolia was an EIR at Benchmark for several months that did not coincide with Abhyanker's pitch of Fatdoor cannot support any inference that Tolia and Janakiraman had access to, much less rifled through Benchmark's "electronic archives" in search of, trade secrets related Abhyanker's failed business.   The fact that Janakiraman and Tolia never entered the neighborhood social network space until three years *after* Tolia left Benchmark renders this allegation as nonsensical as it is reckless.  Abhyanker should be sanctioned for it.  A creative allegation of conduct that the plaintiff imagines could be possible, without any foundation in fact for the accusation, is impermissible under Rule 11.

## IV.   ABHYANKER'S BASELESS ALLEGATIONS IN THIS ACTION WERE MADE FOR AN IMPROPER PURPOSE.

Beyond the lack of any objective basis for these allegations, the history of Abhyanker's litigation campaign strongly supports an inference that Abhyanker made these allegations that for an improper purpose.  This is an independent basis on which this Court should find a violation if

Rule 11.  *Zaldivar*, 780 F.2d at 830-32.  Under Rule 11, an "improper purpose" is a purpose to "harass or to cause unnecessary delay or needless increase in the cost of litigation."  Fed. R. Civ. P. 11(b)(1). The test for finding an improper purpose, like factual or legal frivolity, is an objective one.  *G.C. and K.B. Invs., Inc. v. Wilson,* 326 F.3d 1096, 1109 (9th Cir. 2003).  Such a finding is warranted here.

Abhyanker has spent the better part of two years dragging Nextdoor.com, its founders, investors, and their friends through baseless and harassing litigation.  He has resisted and attempted to dodge every attempt by Nextdoor.com to pin down his meritless claims so they may be dispensed with.  When Nextdoor.com and Benchmark demurred in the State Court Action, he abruptly dismissed and filed an action in the TTAB.  When Nextdoor.com filed this action to vindicate rights that could not be adjudicated in the TTAB, Abhyanker answered with a Counterclaim that directly contradicted his previous allegations in the State Court Action.  In the face of motions to dismiss in this Court, Abhyanker filed an FACC that did little to address the concerns raised by Counterdefendants' previous motions—only delaying a determination on the merits.  Now that the Court has rejected the heart of his counterclaim—that Nextdoor.com misappropriated the name Nextdoor which he never acquired or used—Abhyanker has provided baseless trade secret designations in the hopes of keeping this case alive.  Most recently, he has proposed to drag out matters even longer with a frivolous (but expensive) patent infringement claim targeting Nextdoor.com and its users, as discussed above.

This is precisely the type of behavior that Rule 11 is meant to punish and deter.  *See, e.g., Stewart v. American Intern. Oil & Gas Co.*, 845 F.2d 196, 201 (9th Cir. 1988) (affirming sanctions imposed for filing groundless third-party complaint for improper purpose of delaying and multiplying proceedings); *Kendrick v. Zanides*, 609 F. Supp. 1162, 1173 (N.D. Cal. 1985) (the "only reasonable conclusion is that Kendrick and his attorneys filed the amended complaint, and the subsequent declarations, not to prevail in the action, which they knew they could not, but to serve their vindictive purpose to damage the defendants' reputations and subject them to personal harassment.  Sanctions must therefore be imposed").  Given that Abhyanker had no reasonable basis for any of his allegations, and has resisted every attempt to provide any

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   explanation for them, this Court can and should conclude that his allegations here were made for

2   an improper purpose.  Abhyanker should be sanctioned for this reason as well.

3   **V.    ABHYANKER AND HIS COUNSEL SHOULD BE SANCTIONED AND**
       **NEXTDOOR.COM AWARDED ITS ATTORNEYS' FEES.**

4

5        The final question this Court must confront is the nature of the sanction appropriate for

6   these violations and against whom it should be imposed.  Rule 11 provides that the Court may

7   impose "an appropriate sanction on any attorney, law firm, or party that violated the rule or is

8   responsible for the violation." Fed. R. Civ. P. 11(c)(1).  "Absent exceptional circumstances, a

9   law firm must be held jointly responsible for a violation committed by its partner, associate, or

10  employee." *Id*.  The sanction itself should be sufficient "to deter repetition of the conduct or

11  comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4).  Payment to the

12  opposing party of "reasonable attorneys' fees and other expenses directly resulting from the

13  violation" are generally appropriate as well. *Id*.; *see also Young v. Polo Retail, LLC*, C 02 4546

14  VRW, 2007 WL 951821, at *8-*9 (N.D. Cal. Mar. 28, 2007) (granting award of attorneys' fees

15  for responding to frivolous motion to dismiss); *Kendrick*, 609 F. Supp. at 1173 (awarding

16  attorneys fees for defending the entire action for violation of Rule 11).  Where an attorney and his

17  client share responsibility for the violation, they should both be held jointly and severally

18  responsible for it. *See Kendrick*, 609 F. Supp. at 1173 (where "[n]othing in the record indicates

19  that as between the client and counsel, one should be regarded as less blameworthy than the

20  other," the court imposed sanctions jointly and severally between the lawyer and client).

21       Abhyanker and his attorney were provided more than ample opportunity to retract the

22  frivolous allegations made in both the proposed SACCs and the Amended Trade Secret

23  Disclosures.  In addition to the 21-day safe harbor provided by the service of this Motion,

24  Nextdoor.com and Janakiraman also provided Abhyanker and his counsel nearly a month to

25  investigate their allegations with their Rule 11 letter. *See* Kelly Decl. Ex. 4.  Neither Abhyanker

26  or his counsel made any efforts to correct the violations at issue here.  Nextdoor.com,

27  Janakiraman, and this Court consequently have been forced to spend a significant amount of time

28  addressing these frivolous claims and allegations.  At minimum, Abhyanker should be forced to

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    pay Nextdoor.com and Abhyanker their reasonable attorneys' fees for defending against these

2    allegations and to pay some sanction into the Court that it deems reasonable.  At least this is

3    required to deter Abhyanker and his counsel and reimburse Nextdoor.com, Janakiraman, and this

4    Court for their time and expenses.[11]

5         If ever there were a case in which responsibility for the sanctions should be shared jointly

6    and severally by the lawyer and the client, this is it.  The record reveals that it is Abhyanker who

7    is driving this case.  In addition to the fact that it is his law firm, and thus, his employees, who are

8    representing him in this case, it was Abhyanker, not his counsel, who drafted the Amended Trade

9    Secret Disclosures challenged by this Motion.  When counsel for Nextdoor.com tried to meet and

10   confer with Abhyanker's counsel regarding the sufficiency of his original Trade Secret

11   Designation (Dkt. 82), his counsel (Mr. Tarabichi) admitted he was unable to discuss their

12   substance or how they would be amended because his client, not him, was drafting them.  *See*

13   Kelly Decl. ¶ 10.  Abhyanker should be appropriately sanctioned for his actions.

14                                    **<u>CONCLUSION</u>**

15        Because Abhyanker and his counsel have made frivolous and improper allegations in this

16   matter, and because they refused to retract or otherwise correct those allegations in response to

17   either Nextdoor.com and Janakiraman's Rule 11 letter or Motion, Abhyanker and his counsel

18   should be sanctioned for violation of Rule 11 in the manner requested herein.

19   Dated:   November 21, 2013              FENWICK & WEST LLP

20

21                                          By: */s/ Jennifer L. Kelly*
                                                 Jennifer L. Kelly
22

23                                          Attorneys for Plaintiff and Counterdefendant
                                            NEXTDOOR.COM, INC. and Counterdefendant
24                                          PRAKASH JANAKIRAMAN

25

26

27   _____
     [11] Nextdoor.com and Janakiraman propose that, should the Court grant this Motion, they be
28   ordered to submit materials substantiating their attorneys fees incurred in responding to these
     allegations.

MOTION FOR RULE 11 SANCTIONS              23              Case No. 3:12-cv-05667-EMC