LAURENCE F. PULGRAM (CSB No. 115163)
lpulgram@fenwick.com
JENNIFER L. KELLY (CSB No. 193416)
jkelly@fenwick.com

FENWICK & WEST LLP
555 California Street
San Francisco, CA 94104
Telephone:     415.875.2300
Facsimile:     415.281.1350

Attorneys for Plaintiff and Counterdefendant
NEXTDOOR.COM, INC. and Counterdefendant
PRAKASH JANAKIRAMAN

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NEXTDOOR.COM, INC., a Delaware corporation,<br><br>             Plaintiff,<br><br>    v.<br><br>RAJ ABHYANKER, an individual,<br><br>             Defendant. | Case No.: 3:12-cv-05667-EMC<br><br>**THIRD SUPPLEMENTAL JOINT CASE MANAGEMENT STATEMENT**<br><br>Date:        December 12, 2013<br>Time:        10:30 a.m.<br>Judge:       Honorable Edward M. Chen |
| RAJ ABHYANKER, an individual,<br><br>             Counterclaimant,<br><br>    v.<br><br>NEXTDOOR.COM, INC., a Delaware corporation; PRAKASH JANAKIRAMAN, an individual; BENCHMARK CAPITAL PARTNERS, L.P., a Delaware limited partnership; BENCHMARK CAPITAL MANAGEMENT CO. LLC, a Delaware limited liability company; SANDEEP SOOD, an individual; MONSOON ENTERPRISES, INC., a California corporation, and DOES 1-50, inclusive,<br><br>             Counterdefendants. | |

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

THIRD SUPPLEMENTAL JOINT CMC
STATEMENT

Case No. 3:12-cv-05667-EMC

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Pursuant to Civ. L.R. 16-9, the Court's Standing Order, and the Court's Minute Order following the November 21, 2013 hearing on Defendant and Counterclaimant Raj's Abhyanker's Motion for Leave to Amend to File Second Amended Answer and Counterclaims (Dkt. 127), the undersigned parties respectfully submit the following Third Supplemental Joint Case Management Statement.

## 1.   **Jurisdiction and Service**

The Declaratory Judgment Complaint ("DJ Complaint") filed by Plaintiff Nextdoor.com, Inc. ("Nextdoor.com") is within the Court's federal question jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338, and 1367.  Dkt. 1.  Venue is proper in this District pursuant to 28 U.S.C. § 1291. Nextdoor.com, Inc. has completed service of the DJ Complaint, and no party has raised any objection to venue or personal jurisdiction.

Defendant and Counterclaimant Abhyanker ("Abhyanker") submits that this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over his counterclaim for trade secret misappropriation.  Abhyanker has completed service of the counterclaim.[1]  The Court has not yet ruled on whether Abhyanker may file some or all of his proposed Second Amended Answer and Counterclaims.

## 2.   **Facts**

**Plaintiff and Counterdefendants' Statement of Facts.**  Abhyanker alleges that he founded a company called Fatdoor ("Fatdoor") in late 2006 to pursue a neighborhood-based social networking business.  Fatdoor operated a beta-website for this business at www.fatdoor.com for a short period of time before shutting down and eventually being acquired by Google (after changing its name and business model multiple times).  In relation to this Fatdoor business, Abhyanker applied for trademarks for FATDOOR, FATDOOR GET TO KNOW YOUR NEIGHBORS, and GET TO KNOW YOUR NEIGHBORS.  Abhyanker

---

[1] Abhyanker did not serve Counterdefendant Benchmark Capital Partners, L.P. and Benchmark Capital Management Co. LLC (collectively, "Benchmark") until September 24, 2013.  Because Abhyanker moved for leave to amend his counterclaim shortly thereafter on September 26, 2013, Benchmark and Abhyanker agreed that Benchmark would not respond to the counterclaim until after the court's disposition on his motion for leave.

allegedly made attempts to obtain the domain name www.nextdoor.com in 2006 but was unable to do so. Fatdoor never launched any website using the name Nextdoor, and Abhyanker did not launch a website using the Nextdoor name until 2012.

Independently of Abhyanker, Plaintiff and Counterdefendant Nextdoor.com, along with its co-founder Counterdefendant Prakash Janakiraman ("Janakiraman"), developed in 2010 the concept for an online social network designed to help neighbors connect. This network was developed based on entirely original software code written by Nextdoor.com's engineers. In January 2011, the company obtained the domain www.nextdoor.com to use for this website, and in February 2011, Nextdoor.com applied for a trademark in the NEXTDOOR mark. In October 2011, Nextdoor.com publicly launched its website and social network bearing that name. Nextdoor.com and Janakiraman had no knowledge of Abhyanker's alleged previous plans for a social network to be called Nextdoor or his previous attempts to obtain the domain at this time.

In his Amended Counterclaim, Abhyanker alleges that he, independent of his company Fatdoor, developed and owns various trade secrets related to an online social network to be called Nextdoor. Abhyanker alleges that he disclosed those secrets to Counterdefendant Sandeep Sood while Sood was a contractor working for him in 2006 and 2007. Abhyanker also alleges that he disclosed his Nextdoor-related trade secrets to Counterdefendant Benchmark Capital in 2007 in an effort to obtain funding for his Fatdoor entity. Abhyanker contends that either or both Sood and Benchmark then disclosed those trade secrets to Nextdoor.com and Janakiraman, and that they misappropriated the secrets in developing their business three years later. The trade secrets that Abhyanker has disclosed, pursuant to Court order that he specify trade secrets, consist of (i) unspecified "source code" allegedly owned by an unspecified entity related to Abhyanker[2]; (ii) Abhyanker's bids made to third parties in an attempt to purchase the Nextdoor.com domain; and (iii) the fact that the Lorelei neighborhood in Menlo Park would be a suitable place to beta-test a

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

---

[2]Abhyanker has informed Nextdoor.com that he will be amending his trade secret designation to withdraw his "source code" trade secret claim on or before December 9, 2013.

THIRD SUPPLEMENTAL JOINT CMC STATEMENT

2

Case No. 3:12-cv-05667-EMC

neighborhood social network  Counterdefendants deny that the trade secret disclosure is adequate (as discussed below), or that any trade secret was misappropriated.

Based on this alleged misappropriation, in November 2011, Abhyanker originally filed an action for trade secret misappropriation and various related causes of action in Santa Clara Superior Court,  Case No. 11-cv-212924 (the "State Court Action") against Nextdoor.com, Janakiraman, and Benchmark (among others).  The defendants demurred to Abhyanker's amended complaint on the grounds that, *inter alia*, he had no standing or viable trade secrets. Abhyanker never opposed the demurrers.  Instead, he filed two oppositions to Nextdoor.com's application to register the NEXTDOOR mark in the Trademark Trial and Appeal Board in early 2012.  Those oppositions argued that Nextdoor.com's mark infringed the FATDOOR, FATDOOR GET TO KNOW YOUR NEIGHBOR, GET TO KNOW YOUR NEIGHBOR, and NEXTDOOR marks all allegedly owned by Abhyanker.  After filing those oppositions, Abhyanker voluntarily dismissed the State Court Action before the court could rule on the defendants' demurrers.

In the interim, around February 2012, Nextdoor.com alleges that Abhyanker, for leverage in litigation against Nextdoor.com, registered the www.nextdoor.cm domain name and began publicly using the NEXTDOOR mark for the first time.  Based on these actions and Abhyanker's allegations of infringement, Nextdoor.com filed this action for a declaration of non-infringement and cybersquatting.  Abhyanker filed a Counterclaim and an Amended Counterclaim reasserting his trade secret misappropriation claim, now against Nextdoor.com, Janakiraman, Sandeep Sood ("Sood"), Sood's company Monsoon Enterprises, Inc. ("Monsoon"), and Benchmark (collectively, "Counterdefendants").  Abhyanker is seeking leave to amend his Amended Counterclaim to assert additional claims, including trademark infringement and patent infringement (though Abhyanker on December 3 informed Nextdoor.com that he will now be withdrawing his request to add the patent infringement claim).  The Court heard argument on that motion on November 21, 2013, and will take it under submission once Abhyanker informs the

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Court whether he will further amend his amendment to remove "nextdoor" from his common law trademark claim. *See* 11/22/13 Minute Order (Dkt. No. 127).

**Defendant and Counterclaimant Abhyanker's Statement of Facts.** Nextdoor.com, Benchmark, and the individuals associated with them have a pattern and practice of building companies based on stolen information. This case is one example of their common pattern and practice. Around September 2006, Abhyanker developed the concept of a private online neighborhood social network for inventors to be called LegalForce, and a separate spin off idea using the same code base called Nextdoor. In connection with his LegalForce and Nextdoor concept, Abhyanker developed and owned trade secret information, a list of which is described in Abhyanker's counterclaim. Abhyanker disclosed the trade secrets to Counterdefendants Sandeep Sood, Monsoon Enterprises, and the Benchmark entities under obligations of confidentiality. Despite their obligations of confidentiality, Sandeep Sood, Monsoon, and Benchmark disclosed the trade secrets to Nextdoor.com and Prakash Janakiraman. Despite knowing that the trade secret information was improperly acquired (and encouraging the improper disclosure), Nextdoor.com and Janakiraman publicly launched the www.nextdoor.com online neighborhood social network that uses and was built on the trade secrets misappropriated from Abhyanker.

In addition to Counterdefendants' trade secret misappropriation, Mr. Abhyanker has prior trademark rights in the NEXTDOOR and FATDOOR trademarks. Nextdoor.com's unauthorized subsequent use of the NEXTDOOR trademark infringes Mr. Abhyanker's trademark rights.

**3.      Legal Issues**

At this point in the case, Plaintiff Nextdoor.com and all Counterdefendants submit that the manner in which the case will proceed depends substantially on the resolution of the following legal issues:

- Whether Nextdoor.com has priority of use for the NEXTDOOR mark for online social networking.

- Whether Abhyanker's use of the NEXTDOOR mark creates a likelihood of confusion

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

with Nextdoor.com's mark.

- Whether Nextdoor's use of its NEXTDOOR mark creates any likelihood of confusion between Abhyanker's claimed FATDOOR, GET TO KNOW YOUR NEIGHBORS, or FATDOOR GET TO KNOW YOUR NEIGHBORS marks.

- Whether Abhyanker owns any rights in the NEXTDOOR, FATDOOR, GET TO KNOW YOUR NEIGHBORS, or FATDOOR GET TO KNOW YOUR NEIGHBORS marks.

- Whether Abhyanker registered the www.nextdoor.cm domain in a bad faith attempt to profit from Nextdoor.com's NEXTDOOR mark.

- Whether Abhyanker is the owner of any of the purported trade secrets he asserts in his amended designation of trade secrets (Dkt. 116).

- Whether Abhyanker's purported trade secrets identified in his trade secret designation qualify as trade secrets.

- Whether Monsoon, Sood and/or Benchmark are subject to a contractual obligation of confidentiality to Abhyanker in connection with Abhyanker's purported trade secrets.

- Whether Monsoon, Sood and/or Benchmark disclosed to Nextdoor.com or Janakiraman any of the purported trade secrets Abhyanker identified in his amended trade secret designation.

- Whether Nextdoor.com or Janakiraman used any of the purported trade secrets Abhyanker identified in his amended trade secret designation.

Defendant and Counterclaimant Abhyanker submits that there are no "disputed points of law." Abhyanker respectfully submits that the above bulleted list provided by Counterdefendants are not disputed points of law, but simply issues involving the application of law to facts that remain subject to dispute and discovery, and which need to be decided in the case.

### 4.   **Motions**

Abhyanker's Motion for Leave to File Second Amended Answer and Counterclaims

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

remains pending.  If Abhyanker advises the Court that he intends to pursue a claim for common law trademark infringement based on his alleged ownership of the NEXTDOOR mark, Counterdefendants expect to file a Rule 12(b)(6) motion to dismiss that claim.

Nextdoor.com and Janakiraman also desire to file an early dispositive motion on the remainder of Abhyanker's trade secret misappropriation claim, and anticipate coordinating the timing of that motion with Benchmark's anticipated motion to dismiss (as discussed below), since those motions are likely to raise many of the same arguments.  Nextdoor.com's and Janakiraman's motion would be a Rule 12(c) motion for judgment on the pleading (or possible summary judgment motion, if the Court agrees that this will not preclude a summary judgment motion later on other issues). As explained in detail in Section 20, below, Counterdefendants maintain that: (i) Abhyanker's amended trade secret disclosure remains grossly deficient, rendering Abhyanker's taking of any discovery on that claim inappropriate; and (ii) Abhyanker's two remaining identified trade secrets (bidding for the domain name and Lorelei neighborhood) cannot qualify as secrets under governing law, rendering them particularly suitable for early disposition.

Nextdoor.com anticipates eventually filing a motion for summary judgment on its affirmative claims and any trademark counterclaims—including that Nextdoor.com has priority of use in the NEXTDOOR mark, that Abhyanker's recent use of the NEXTDOOR mark is infringing, that Abhyanker does not own any rights in the FATDOOR, GET TO KNOW YOUR NEIGHBORS, or FATDOOR GET TO KNOW YOUR NEIGHBORS marks, that Nextdoor's mark does not infringe those marks, and that Abhyanker engaged in cybersquatting in registering and using the www.nextdoor.cm domain.

Monsoon Enterprises, Inc., Sood and Benchmark anticipate joining in Counterdefendants' motion on the trade secret issues, and potentially filing their own motions for summary judgment on Abhyanker's Amended Counterclaim.

Benchmark, which has not yet filed any answer in the action (as it was belatedly served with the First Amended Counterclaim on September 24, 2013, two days before Abhyanker filed

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

his  Motion for Leave to Amend), anticipates potentially filing a Rule 12(b)(6) motion once the content of any proposed Second Amended Counterclaim is established.

Defendant and Counterclaimant Abhyanker anticipates filing one or more motions for summary judgment directed at Nextdoor.com's claims and/or Abhyanker's counterclaim.

**5.      Amendment of Pleadings**

Plaintiff and Counterdefendant Nextdoor.com, Inc. does not currently plan to amend its DJ Complaint, but may seek leave to do so depending on the facts learned through discovery.

Defendant and Counterclaimant Abhyanker has sought leave to amend his pleading.   That motion is pending.

**6.      Evidence Preservation**

The parties have taken reasonable steps to preserve evidence.

**7.      Disclosures**

The parties have not yet exchanged initial disclosures.  They propose exchanging them with respect to the non-trade secret issues in the action within one week following the Case Management Conference (by December 19, 2013).

**8.      Discovery**

**Discovery Served by Nextdoor.com:**  Nextdoor.com served an initial set of requests for production and interrogatories on Defendant Abhyanker on April 24, 2013 in support of its affirmative claims.  Abhyanker served responses to that discovery on May 28, 2013. Nextdoor.com believes the responses are deficient, but Mr. Abhyanker disagrees.  At the September 5, 2013 Case Management Conference, Abhyanker represented to the Court that he intended to provide supplemental responses, and the Court ordered him to do so no later than September 19, 2013 (Dkt. No. 110).  On September 19, 2013, Abhyanker served amended responses and documents, which Nextdoor.com believed were still deficient.  Thus, on October 1, 2013, Nextdoor.com sent a letter to Abhyanker regarding those deficiencies and requesting an in person conference as required by this Court's Standing Order.  Abhyanker took the position that the matters could be addressed by letter, and the parties exchanged substantial correspondence on

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

the issue until November 14, 2013.  An in person conference was finally held on November 21, 2013.  The disputed issues relating to that discovery were not resolved, and the parties' joint summary of those issues is noted below, pursuant to the Court's directive [Dkt. No. 127] that they be addressed in this Case Management Conference.

**Discovery Served by Abhyanker**: On November 14, 2013, Mr. Abhyanker served requests for documents and admissions on Counterdefendants Sandeep Sood, Monsoon, and Benchmark relating to his trade secret misappropriation claim.  These Counterdefendants have indicated that they do not believe trade secret-related discovery is appropriate because they believe that Mr. Abhyanker's purported trade secret designation is insufficient.  No motions have been filed with the Court addressing the adequacy of the designation.

Mr. Abhyanker has not yet served discovery on Nextdoor.com or Janakiraman, but intends to do so this month.

**Summary of Disputed Issues**:

Nextdoor.com alleges that there are four principal issues (and many subsidiary ones not discussed here) that remain in dispute with respect to the discovery requests Nextdoor.com served on Abhyanker.  Mr. Abhyanker does not believe there is any merit to the four purported issues raised by Nextdoor.com.  The parties' respective positions on the Nextdoor.com's four alleged issues are as follows:

**Issue No. 1**:  The adequacy of Abhyanker's search for all responsive documents in his possession, custody, or control.

Nextdoor's Position:   Given the dearth of documents produced (especially email) Nextdoor.com has sought to look behind Abhyanker's blanket assertion that "all relevant documents have been produced after a reasonable search."  At meet and confer, counsel for Abhyanker could not identify what email accounts or other repositories of documents were searched, or what search terms were used.  They represented that they did not know, as they left both collection and review of documents to Mr. Abhyanker himself.  Abhyanker's counsel must determine and disclose what repositories exist; identify the terms searched; and ensure that

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

counsel, not client, has performed the search and review.  Abhyanker's offer to consider any search terms proposed by Nextdoor.com is useless in a vacuum—divorced from identification of the repositories against which those terms will run, what terms have already been searched, and the volume of materials prior terms elicited—and, in any event, cannot satisfy counsel's affirmative duty to perform the search and production rather than leave it to the client.

Abhyanker's Position:

Mr. Abhyanker respectfully submits that Nextdoor.com and its counsel are intentionally mischaracterizing the discovery requests and responses, as well as the meet and confer efforts between counsel.  Unfortunately, the only way for this Court to truly evaluate Nextdoor.com's purported discovery complaints is by reviewing and evaluating Mr. Abhyanker's actual interrogatory and document request responses, as well as all the meet and confer correspondence between counsel.  Otherwise, there is simply no way for this Court to adjudicate the veracity of the parties' positions.  Accordingly, Mr. Abhyanker requests that he be permitted to submitted a supplemental notice to the Court with exhibits of the discovery responses and correspondence between counsel to allow the Court to properly evaluate the alleged discovery issues.

With regard to Nextdoor.com's allegation that Mr. Abhyanker did not produce all responsive documents, this allegation is nothing more than pure speculation without any factual basis.  Mr. Abhyanker has repeatedly stated that all responsive documents have been produced, including in the document request responses themselves, Mr. Tarabichi's October 8, 2013 letter, Ms. Norton's November 5, 2013 letter, during the in-person meet and confer, and yet again in Mr. Tarabichi's December 2, 2013 email (which tracks your Honor's language in the standing order).  Therefore, Nextdoor.com is incorrect to claim that this representation has not been made when it has been made repeatedly.

With regard to the search performed for the documents, it is important to first note that this issue was not raised as one of the topics to be addressed in the in-person meet and confer.  This is clearly evident by reviewing all of the correspondence occurring before the in-person November 21, 2013 meet and confer (which Mr. Abhyanker proposes providing to the Court).

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Therefore, Mr. Abhyaker's counsel did not have any information regarding search terms with them at that meet and confer.  Moreover, Mr. Abhyanker's counsel never stated that they were not involved or that other attorneys were not involved in the search.  To the contrary, Mr. Abhyanker's counsel stated that Mr. Abhyanker was aided by counsel in his searches. Mr. Abhyanker asked Nextdoor.com for legal authority showing that they are entitled to the search terms used by Mr. Abhyanker to search for responsive documents, but Nextdoor.com completely ignored that request.  Mr. Abhyanker has not located any case law indicating that Nextdoor.com is entitled to this information, which should be considered work-product.  Moreover, Mr. Abhyanker offered to allow Nextdoor.com to provide it with a list of search terms, but Nextdoor.com refused despite allegedly being concerned about the adequacy of the search performed.  It is clear that there is no merit to Nextdoor.com's questioning of the adequacy of Mr. Abhyanker's document production.

**Issue No. 2**:  Whether Abhyanker is obligated to produce a copy of the alleged "due diligence" CD or package that he provided to Benchmark (or confirm that it does not exist)

Nextdoor's Position: Abhyanker's refusal to produce, or confirm non-existence of, the due diligence package he alleges in his Amended Counterclaim he provided to Benchmark is explicable only as a hide-the-ball game.  While the CD may contain materials relevant to his trade secret claims, it also clearly contains material relevant to the trademark issues.  His Amended Counterclaim alleges that the due diligence CD provided to Benchmark contained materials "fully disclosing his Nextdoor concept" which he later alleges included "business plans" "trademarks" and "a mockup . . . with the word "nextdoor" clearly shown in the upper, Left-handside of the screenshot."  Dkt. 59 at 23:26-24:6.  Such materials are plainly relevant to his claim of priority of use of trademarks dating to that period, or earlier.  They are responsive to numerous document requests, including:

REQUEST NO. 34:
All business plans and marketing plans that refer or relate to use or planned use of the names "nextdoor" or "nextdoor.com," or any variant thereof.

REQUEST NO. 14:
Documents sufficient to show the manner and extent of any actual or intended use by you, Fatdoor, Inc., or LegalForce, Inc. of the marks "nextdoor" or "nextdoor.com," or any variation thereof.

Abhyanker's Position:

On December 3, 2013, Mr. Abhyanker's counsel sent the following email to Nextdoor.com's counsel:

> With regard to the due diligence CD given to Benchmark, I have reviewed Nextdoor.com's document requests and it does not appear responsive to any requests.  Could you please specify which request you believe it is response to?

> In addition, the due diligence CD relates to Mr. Abhyanker's trade secret misappropriation claim.  Please correct me if I am remembering incorrectly, but I believe it is your position that all discovery relating to the trade secret misappropriation claim is on "hold."  If so, then documents and materials relating to the trade secret misappropriation claim are premature.  Please let me know your position on this and whether you believe the parties may pursue discovery on the trade secret claim.

Nextdoor.com's counsel did not respond to this portion of the email.  Rather, on December 5, 2013 at 4:35pm, Nextdoor.com provided their revised portion on this issue identifying the relevant requests for the *first time*, leaving no time for the parties to properly meet and confer on the issue.  Nextdoor.com did not respond with the appropriate document request number or regarding the trade secret issue.  The due diligence CD relates only to the trade secret claims, and this Court has already dismissed the trade secret claim to the extent it was based on the use of Nextdoor as a trademark.   Therefore, Nextdoor.com is improperly attempting to obtain unilateral discovery on the trade secret claims while preventing Mr. Abhyanker from doing the same.  Nevertheless, now that Nextdoor.com has identified for the first time on December 5, 2013 at 4:35pm the relevant request numbers, Mr. Abhyanker will review the due diligence CD to determine if it contains portions relating to the trademark claims that can be produced separate and apart from the entire CD until discovery on the trade secret claim opens.

**Issue No. 3**:  Whether Abhyanker is obligated to provide supplemental, verified interrogatory responses that contain the facts responsive to those interrogatories, which to date have only been disclosed in letters from his counsel.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Nextdoor's Position:  Numerous statements have been made in meet and confer letters as to both specific facts and the non-existence of facts requested in interrogatories.  But a letter is neither verified, nor admissible in the same manner as an interrogatory response, and its introduction at trial (or summary judgment) brings added complexity to the process.   Complete facts should be included in supplemental responses, and verified.  Abhyanker has refused to provide supplementation of interrogatory responses to include all information, notwithstanding lengthy letters explaining facts.[3]

Abhyanker's Position:  Mr. Abhyanker served comprehensive supplemental interrogatory responses on Nextdoor.com on September 19, 2013.  Accordingly, Nextdoor.com's statement that Mr. Abhyanker has refused to provide any supplementation of interrogatory responses is incorrect.  Although Nextdoor.com objected to certain of those supplemental responses, its objections sought to obtain information outside of the scope of the interrogatories.

For example, the correspondence referenced by Nextdoor.com in footnote 2 relates to interrogatories 2-4.  Those interrogatories request that Mr. Abhyanker state all facts supporting his ownership of the FATDOOR, FATDOOR GET TO KNOW YOUR NEIGHBORS, AND GET TO KNOW YOUR NEIGHBORS trademarks (the "Marks").  Mr. Abhyanker fully responded to those interrogatories by explaining that his claim to ownership is based on his personal use of the Marks in commerce and his personal ownership of trademark registrations for

---

[3] Abhyanker's assertion that there are no additional facts to be verified is false.  The letters on their face purport to disclose facts the interrogatory responses do not.  For example, one (of many) points in Mr. Tarabichi's letter of October 8 reads:

> Nevertheless, in an attempt to avoid an unnecessary discovery dispute, Mr. Abhyanker offers the following explanation: **After Mr. Abhyanker left Fatdoor, Fatdoor decided to abandon and cease using the FATDOOR trademark. Fatdoor then consented to Mr. Abhyanker personally adopting and using the FATDOOR trademark.** He did so in connection with the www.fatdoor.us website at least as early as April 15, 2008, which is accessible. In addition, Mr. Abhyanker also used the FATDOOR trademark on the eDirectree website. Mr. Abhyanker then also filed trademark applications in his personal name to secure his rights to the FATDOOR trademark. Mr. Abhyanker's personal use of FATDOOR precedes Nextdoor's first use of NEXTDOOR.

(emphasis added).  Such "explanation" of an interrogatory response needs to be verified in the response.  Abhyanker's argument that this information is not responsive to an interrogatory that requests all facts supporting his claim of ownership of the Fatdoor marks is nonsensical.  This is but one example of many.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

certain of the Marks.

In subsequent correspondence, Nextdoor.com argued that Mr. Abhyanker's responses are insufficient because they do not explain why Fatdoor, Inc. does not own the Marks.  The interrogatories at issue do not ask Mr. Abhyanker for facts supporting Fatdoor, Inc's interest, or lack thereof, in the Marks.  Indeed the interrogatories do not refer at all to Fatdoor, Inc. Nevertheless, in an attempt to avoid an unnecessary discovery dispute, counsel for Mr. Abhyanker provided an explanation as to why Fatdoor, Inc. does not own the Marks.

As the above example illustrates, Mr. Abhyanker's willingness to provide additional information to counsel in order to avoid discovery disputes does not warrant additional supplemental interrogatory responses to the interrogatories that Nextdoor.com has propounded.

**Issue No. 4:**  Whether Abhyanker must search for and produce documents relating to transfer between his various entities of ownership rights in assets and trademarks.

Nextdoor's Position:  It recently came to light that Abhyanker created, in late 2012, a new corporation called Fatdoor, Inc. (the prior corporation of the same name having been changed to Center'd, Inc., and its assets ultimately sold to Google).  A subpoena to the new Fatdoor, Inc. resulted in production of a November, 2012 agreement in which Abhyanker, signing on behalf of Center'd, purporting to assign certain assets of Center'd to Abhyanker (who also signed on behalf of himself). Despite the responsiveness of these documents to discovery requests as to Mr. Abhyanker's standing to assert Fatdoor's (subsequently known as Center'd's) rights, Abhyanker had not produced such documents in his own, personal production.  Even after meet and confer, Mr. Abhyanker has not personally produced this document nor any documents that would reflect his authority to act on behalf of Center'd years after he had been fired as its CEO.  Nor has he produced other documents relating to assignments, including documentation of the purported retention in "LegalForce, Inc." of ownership of assets (including the name "nextdoor") when it assigned assets to Fatdoor in 2007.  It is not plausible that Abhyanker, or his agents, do not retain copies of these operative corporate records, or if he claims these documents that will confirm or

defeat his standing do not exist, he should say so.[4]

Abhyanker's Position:  First, Mr. Abhyanker has searched for and produced documents relating to transfer between his various entities of ownership rights in assets and trademarks. Agreements between Mr. Abhyanker and Fatdoor, Inc. were produced in this action as documents Bates numbered RA374-RA383, which were produced on October 8, 2013.  Furthermore, in response to a third-party subpoena, Fatdoor, Inc. produced an assignment transferring rights from Center'd to Mr. Abhyanker.  That document was obtained by Fatdoor, Inc. on or about November 9, 2013, when it obtained and reactivated the Fatdoor.com domain.  Upon accessing that domain, Fatdoor gained access to some Fatdoor, Inc. documents that remained available on the Fatdoor.com portal.  Those documents represent only a subset of all the Fatdoor, Inc. documents. There are no further relevant assignment agreements in Mr. Abhyanker's custody, control, or possession that have not been produced.

**9.     Class Actions**

Not applicable.

**10.     Related Cases**

There are co-pending oppositions to Nextdoor.com's registration of its NEXTDOOR mark in the Trademark Trial and Appeal Board ("TTAB") filed by Abhyanker (Opposition Nos. 31203462 and 91203762).  Those opposition proceedings have been suspended pending the outcome of this case.

**11.     Relief**

Nextdoor.com's DJ Complaint against Abhyanker seeks a declaration that Nextdoor.com is lawfully using its NEXTDOOR mark and not infringing any trademark rights held by Abhyanker; that Nextdoor.com has priority of use of the NEXTDOOR mark in the field of online social networking; and that there is no likelihood of confusion between Nextdoor.com's use of its

---

[4] While Abhyanker did produce a copy of an assignment of his rights to Fatdoor in 2007, he has still not produced a host of documents including:  (i) the documents that purported to reserve rights in Nextdoor to LegalForce in 2007 (*see* Abhyanker's First Amended Answer and Counterclaim, Dkt. 59 at 18:14-22); (ii) the documents that purportedly gave Abhyanker rights to sign for Center'd in 2012; and (iii) emails associated with all of these assignments.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

NEXTDOOR mark and any purported trademark rights of Abhyanker with respect to the terms "fatdoor" or "fatdoor get to know your neighbors." Nextdoor.com also seeks transfer of the www.nextdoor.cm domain name; an award of statutory damages up to $100,000 for Abhyanker's registration and use of that domain; an award of Abhyanker's profits from his infringing conduct; an order enjoining Abhyanker from use of the NEXTDOOR mark, or any colorable imitation thereof, in the field of online social networking; and Nextdoor.com's costs and attorneys' fees.

Monsoon, Sood and Benchmark seek to have the Abhyanker's Amended Counterclaim dismissed with prejudice, that Abhyanker take nothing by way of his counterclaim and for an award of their respective costs and attorneys' fees.

Defendant and Counterclaimant Abhyanker seeks the following relief: (i) that Nextdoor.com take nothing by its Complaint; (ii) that Nextdoor.com's Complaint be dismissed with prejudice; (iii) that Abhyanker be awarded his costs of suit and attorneys' fees; (iv) that all Counterdefendants be preliminarily and permanently enjoined from further disclosing or using Abhyanker's LegalForce/Nextdoor trade secrets, as well as Abhyanker's confidential and proprietary non-trade secret information, including, but not limited to, the nextdoor.com website and domain name; (v) that Counterdefendant be enjoined from the practice of hiring and/or placing Entrepreneurs in Residence (EIR) that the fund intends to invest in, and which have not yet come up with a public business plan for their venture, to listen in on or participate in any way in meetings involving other entrepreneurs pitching ideas to the fund in an area of technology specialization that the EIRs intend to start a company of their own within and has not thought of or publicly released; (vi) that the Court order Nextdoor.com to transfer the nextdoor.com domain name to Abhyanker and order and direct VeriSign, Inc., the domain name registry for the nextdoor.com domain name, to change the registrar of record for the nextdoor.com domain name to a registrar selected by Abhyanker; (vii) on his trade secret misappropriation claim, that Abhyanker recover damages for his actual loss caused by the misappropriation; (viii) on his trade secret misappropriation claim, that Abhyanker recover for the unjust enrichment caused by Counterdefendants' misappropriation; (ix) on his trade secret misappropriation claim, that

Abhyanker recover a reasonable royalty to the extent neither damages nor unjust enrichment are provable; (x) on his trade secret misappropriation claim, that Abhyanker recover exemplary damages;  (xi) that the Court enjoin Nextdoor.com from using NEXTDOOR and confusingly similar marks,  (xii) that he recover monetary and treble damages for trademark infringemetn, and (xiii) that the Court order such further relief as it deems just and proper.

**12.**     **Settlement and ADR**

The parties attended a settlement conference before Magistrate Judge Vadas on November 21, 2013.  The case did not settle, and based on the conference, the parties do not anticipate that further settlement talks are likely to be productive.

**13.**     **Consent to Magistrate Judge**

Nextdoor.com, Prakash Janakiraman, Monsoon, and Benchmark do not consent to a Magistrate Judge.

Defendant and Counterclaimant Abhyanker consents to have a magistrate judge conduct all further proceedings, including trial and entry of judgment.

**14.**     **Other References**

No other references are necessary.

**15.**     **Narrowing of Issues**

As discussed above, Nextdoor.com and the other Counterdefendants believe the issues can be narrowed through resolution of Abhyanker's trade secret misappropriation claim through a targeted motion for judgment on the pleadings and/or a motion for summary judgment.

At this time, Defendant and counterclaimant Abhyanker does not believe that there are issues that can be narrowed by agreement or motion, has no suggestions to expedite the presentation of evidence at trial, and does not request to bifurcate any issues, claims, or defenses.

**16.**     **Expedited Schedule**

The parties do not believe that this case is suitable for an expedited schedule.

**17.**     **Scheduling**

Subject to the Court's calendar, Nextdoor.com and the other Counterdefendants propose

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

to set October 20, 2014 as a date to start trial; in accordance therewith, the parties propose to set the following pretrial schedule.  Mr. Abhyanker disagrees with the schedule proposed by Nextdoor.com and the other Counterdefendants in light of the fact that this case is in its early stages, the Court has not yet ruled on Mr. Abhyanker's pending motion to amend the pleadings, and discovery on the trade secret claim has not yet opened according to Counterdefendants.  The respective pretrial schedules proposed by the parties are set forth below:

|  | Nextdoor.com | Abhyanker |
|---|---|---|
| • Initial Disclosures: | December 19, 2013 | December 19, 2013 |
| • Last day to amend pleadings: | December 19, 2013 | January 13, 2014 |
| • Fact Discovery Cutoff: | March 21, 2014 | June 6, 2014 |
| • Opening expert reports: | April 25, 2014 | July 2, 2014 |
| • Supplemental/Rebuttal Expert Reports: | May 23, 2014 | August 6, 2014 |
| • Expert Discovery Cutoff: | June 6, 2014 | September 10 , 2014 |
| • Last day to file dispositive motions: | June 27, 2014 | October 88, 2014 |
| • Dispositive Motion hearing date: | TBD | TBD |
| • Final pretrial conference: | September 15, 2014 | December 8, 2014 |
| • Trial: | October 20, 2014 | January 12, 2015 |

**18.    Trial**

All parties have consented to a trial by jury.  Based on the current knowledge of all parties, it is believed that the case should last between 8 to 10 days of trial based on the Court's current published trial scheduling procedures.

**19.    Disclosure of Non-Party Interested Entities**

All parties have made the required disclosures.

Plaintiff and Counterdefendant Nextdoor.com has no parent corporation and no publicly held corporation is known to own 10% or more of Nextdoor.com's stock.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Counterdefendant Monsoon has no parent corporation and no publicly held corporation is known to own 10% or more of Monsoon's stock.

The Benchmark entities do not have any parent corporation, and no public corporation is known to own 10% or more of Benchmark entities' stock.  Pursuant to Civil L.R. 3-16, Benchmark certifies that its insurer Chartis Specialty Insurance Corporation maintains an interest.

Pursuant to Civil Local Rule 3-16, Defendant and Counterclaimant Abhyanker certifies that, as of this date, other than the named party, there is no such interest to report.

## 20.   Other Matters – Abhyanker's Amended Trade Secret Disclosure [Dkt. 116]
### Counterdefendants' Position:

Pursuant to this Court's Order on Counterdefendants' motions to dismiss, (Dkt. 100 at 26-27), Abhyanker was required to disclose, under seal and signed under Rule 11, his asserted trade secrets and further disclose detailed facts supporting his contention that Counterdefendants acquired, disclosed, or used his asserted trade secrets as outlined in the parties' June 27, 2013 Joint Report on Trade Secret Designation (Dkt. 98).  The Court explained at the hearing on the motion that it believed it ultimately would be a better use of resources for Abhyanker to make that detailed disclosure through that process, early in the case, rather than going through multiple rounds of pleading challenges.  *See* Dkt. 97 at 18-20.

In response to this directive, Abhyanker publicly filed a document on August 2, 2013 which was limited to just three purported secrets:  (1) the bidding history of the Nextdoor.com domain, (2) use of the Lorelei neighborhood for beta-testing an unidentified service of Abhyanker's, and (3) "the source code for the user interface" for an unidentified "private social network."  Dkt. 105 at 2.  In Counterdefendants' view, this disclosure does not come close to providing the level of detail contemplated by this Court's order and the parties' Joint Report on Trade Secret Designation.  *See id.* at 26-27; Dkt. 98 at 1-2.  Nextdoor.com made multiple attempts to meet and confer with Abhyanker regarding the insufficiency of these disclosures prior to the September 5, 2013 case management conference (which the Court had set as the time to discuss their adequacy).  Abhyanker never responded to those requests, or to Counterdefendants'

request to confer about the contents of the joint CMC statement due in advance of that CMC. Counterdefendants[5] were thus forced to submit a unilateral case management statement addressing the insufficiency of Abhyanker's trade secret disclosures. *See* Dkt. 106. Abhyanker later filed an untimely CMC statement of his own, in which he did not even attempt to defend the sufficiency of his original trade secret disclosures. Dkt. 108.

At the September 5, 2013 case management conference, Abhyanker represented that he intended to amend his disclosure to cover Benchmark, which he had delayed serving with his Amended Counterclaim for nearly five months. Recognizing a need to move this case forward, the Court ordered that Abhyanker do so no later than September 26, 2013 and further ordered that the parties were to meet and confer *prior to* Abhyanker's filing any amended trade secret disclosure. Dkt. 113. The Court further stated that "I do think it's appropriate to hold off on discovery related [to trade secrets] until we determine if there have been adequate disclosures." RT Sept. 5, 2013 at 12:17-19.

Nextdoor.com thereafter sent Abhyanker's counsel a detailed letter on September 13, 2013 explaining, again, the deficiencies in Abhyanker's previous trade secret disclosures and how they should be remedied. (That letter essentially restated the issues Nextdoor.com identified in its August 29, 2010 Case Management Statement [Dkt. No 106 at Section 20], which provides a clear explanation of the inadequacies that still persist).[6] Nextdoor.com requested that Abhyanker provide Counterdefendants with draft amended disclosures before they were filed, so that the parties could have a meaningful discussion and potentially avoid any further disputes regarding their adequacy. Abhyanker ignored that request. During the call that finally took place on September 24, 2013, Abhyanker's counsel was unprepared to discuss the substance of his amended disclosure, representing that Abhyanker himself was drafting those disclosures, and that counsel had no insight as to what they would contain. With no ability to discuss the substance of the amendment, counsel for Nextdoor.com was left to reiterate the points set forth in their Case

---

[5] Because Benchmark still had not been served as of that time, they did not participate in that statement; it was filed on behalf of Nextdoor.com, Janakiraman, Sood and Monsoon.
[6] The specific deficiencies in Abhyanker's disclosures are reflected in that document.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Management Statement and subsequent letters on the matter.

These inadequacies were not remedied.  On September 26, 2013, Abhyanker publicly filed his First Amended Designation of Trade Secrets ("Amended Disclosures").  *See* Dkt. 116.  The Amended Disclosures identify the same three supposed secrets and still fail to offer anything approaching the level of detailed required.  Apart from including conclusory allegations concerning Benchmark's  supposed involvement, Abhyanker made only trivial changes from his previous deficient designation of trade secrets.

Indeed, the only import of the amended disclosure is to further underscore that the first two trade secrets Abhyanker has claimed (the bidding history of the Nextdoor.com domain and the use of the Lorelei neighborhood for beta testing of an unidentified service) cannot be trade secrets under the California Uniform Trade Secrets Act because they are public activities that Abhyanker engaged in—not confidential information that he developed and protected in secrecy.  Abhyanker has not identified any NDA, confidentiality agreement, or other reasonable steps to keep this information secret.  As to the third disclosed trade secret, "the source code for the user interface of his online private social network," Abhyanker has informed Nextdoor.com that he will be withdrawing this claim.[7]

Abhyanker's amended disclosure was ordered for the purpose of supplementing his pleading and avoiding potential serial motions to dismiss.  But Abhyanker has shown that he has no intent (or ability) to provide any further details about his alleged trade secrets, how they actually could be secret, and how they were disclosed, acquired, and/or used by any of the Counterdefendants.

Counterdefendants thus respectfully submit that the time has come for the trade secret claim to be resolved via a motion for judgment on the pleadings (or possible summary judgment motion, if the Court agrees that this will not preclude a summary judgment motion later on other issues).

---

[7] As Abhyanker notes below, he has withdrawn his claim relating to source code (and his patent claim) after being served with a motion for Rule 11 sanctions based on those claims.  Nextdoor.com does not agree that the motion was defective (it withdrew it without prejudice).

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

THIRD SUPPLEMENTAL JOINT CMC STATEMENT                                20                        Case No. 3:12-cv-05667-EMC

**Abhyanker's Position:**

Although Mr. Abhyanker filed his trade secret designation on September 26, 2013, Counterdefendants still have not challenged the adequacy of the designation. ECF No. 116. Over two months have past, yet neither Nextdoor.com nor the other Counterdefendants have filed any sort of motion challenging the designation. It appears that Counterdefendants have delayed challenging the designation because they want to continue the hold on trade secret related discovery.

In addition, on November 21, 2013, Nextdoor.com filed a Rule 11 Motion for Sanctions without complying with the 21 day safe harbor period statutorily required by FRCP 11. ECF No. 125. When Mr. Abhyanker informed Nextdoor.com of the deficiency, Nextdoor.com withdrew the deficient Motion. ECF No. 130. Nevertheless, one of the issues raised in Nextdoor.com's prematurely filed Rule 11 Motion was Mr. Abhyanker's claim of trade secret misappropriation based on the user interface source code.

Even though Nextdoor.com withdrew its admittedly deficient Rule 11 Motion, Mr. Abhyanker undertook an additional evaluation of the claim. Although Mr. Abhyanker still believes that Nextdoor.com did obtain access to the source code, Mr. Abhyanker has been unable to obtain a copy of the source code, which was last in the possession of Counterdefendant Sandeep Sood. At present, Mr. Abhyanker is apparently not permitted to request that Mr. Sood produce the source code, which Mr. Sood has not yet confirmed whether he still possesses or not. This leaves Mr. Abhyanker in a difficult position with regard to this claim. Accordingly, in an abundance of caution, Mr. Abhyanker is reluctantly removing the source code as a basis for his trade secret claim, pending the revelation of any additional facts. Mr. Abhyanker has already informed Nextdoor.com of this.

Mr. Abhyanker believes the remaining trade secrets have been adequately disclosed so as set the appropriate scope of trade secret-related discovery in this case. Accordingly, Mr. Abhyanker requests that he be permitted to proceed with discovery.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

2   Dated:    December 5, 2013                FENWICK & WEST LLP

3
                                             By: /s/ Jennifer L. Kelly
4                                                Jennifer L. Kelly

5                                            Attorneys for Plaintiff and Counterdefendant
                                             NEXTDOOR.COM, INC. and Counterdefendant
6                                            PRAKASH JANAKIRAMAN

7
                                             LATHAM & WATKINS LLP
8
                                             By: /s/ Matthew Rawlinson
9                                                Matthew Rawlinson

10                                           Attorneys for Counterdefendants BENCHMARK
                                             CAPITAL PARTNERS, L.P. and BENCHMARK
11                                           CAPITAL MANAGEMENT CO. LLC.

12
                                             LEGALFORCE RAJ ABHYANKER, P.C.
13
                                             By: /s/ Bruno W. Tarabichi
14                                               Bruno W. Tarabichi

15
                                                 Attorneys for Defendant and Counterclaimant
16                                               RAJ ABHYANKER

17
                                             ROYSE LAW FIRM, PC
18
                                             By: /s/ Harpreet S. Walia
19                                               Harpreet S. Walia

20
                                                 Attorneys for Counterdefendants SANDEEP
21                                               SOOD and MONSOON ENTERPRISES, INC.

22

23

24

25

26

27

28
     THIRD SUPPLEMENTAL JOINT CMC            22              Case No. 3:12-cv-05667-EMC
     STATEMENT

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1

I, Jennifer L. Kelly, am the ECF User whose identification and password are being used to file this **THIRD SUPPLEMENTAL JOINT CASE MANAGEMENT STATEMENT**.  In compliance with Civil Local Rule 5-1, I hereby attest that all signatories have concurred in this filing.

Dated:    December 5, 2013                      _/s/ Jennifer L. Kelly_
                                                Jennifer L. Kelly

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO