1    **BRUNO W. TARABICHI**, CA State Bar No. 215129
     bruno@legalforcelaw.com
2    **HEATHER R. NORTON**, CA State Bar No. 257014
     heather@legalforcelaw.com
3    **ROY MONTGOMERY**, CA State Bar No. 279531
     roy@legalforcelaw.com
4    **LEGALFORCE RAJ ABHYANKER, P.C.**
     1580 W. El Camino Real, Suite 13
5    Mountain View, California 94040
     Telephone:  650.965.8731
6    Facsimile:   650.989.2131

7    Attorneys for Defendant
     Raj Abhyanker
8
                    UNITED STATES DISTRICT COURT
9
                   NORTHERN DISTRICT OF CALIFORNIA
10
                      SAN FRANCISCO DIVISION
11

12   NEXTDOOR.COM, INC., a Delaware
     corporation,                              Case No. 3:12-cv-05667-EMC
13
                    Plaintiff,                 **DEFENDANT AND
                                               COUNTERCLAIMANT RAJ
14          vs.                                ABHYANKER'S NOTICE REGARDING
                                               SECOND AMENDED ANSWER AND
15   RAJ ABHYANKER, an individual,             COUNTERCLAIMS**

16                  Defendant.                 Courtroom:      5 – 17th Floor
                                               Judge:          Honorable Edward M. Chen
17   RAJ ABHYANKER, an individual

18                  Counterclaimant,

19          vs.

20   NEXTDOOR.COM, INC., a Delaware
     corporation; PRAKASH
21   JANAKIRAMAN, an individual;
     BENCHMARK CAPITAL  PARTNERS,
22   L.P., a Delaware limited partnership;
     BENCHMARK CAPITAL
23   MANAGEMENT CO. LLC, a Delaware
     limited liability company; SANDEEP
24   SOOD, an individual; MONSOON
     ENTERPRISES, INC., a California
25   corporation, and DOES 1–50, inclusive;

26                  Counterdefendants.

27

28

On November 21, 2013, this Court heard oral argument on Mr. Abhyanker's Motion for Leave to File Second Amended Answer and Counterclaims.  During the hearing, this Court ordered Mr. Abhyanker to inform the Court whether his proposed Third Counterclaim for infringement of an unregistered trademark would be premised solely on his common law rights in the FATDOOR trademark or whether it would be premised on common law rights in both the FATDOOR trademark and NEXTDOOR trademark.  This Order is reflected in the Court's November 22, 2013 Minute Order.  ECF No. 127.

Pursuant to the Court's Order, Mr. Abhyanker hereby informs the Court that he intends to maintain his claim for common law trademark infringement of his NEXTDOOR trademark in his Third Counterclaim.  In addition, Mr. Abhyanker also informs the Court of two other changes to the proposed Second Amended Answer and Counterclaims, namely, the deletion of the patent infringement claim and a wording change to paragraph 144.  In this regard, Mr. Abhyanker has attached as **Exhibit A** the final revised version of the Second Amended Answer and Counterclaim and has attached as **Exhibit B** a redline showing the changes made to the Second Amended Answer and Counterclaim from the last version of the pleading that was before the Court during the November 21, 2013 hearing.  Each of these issues is discussed in more detail below.

## I.    NEXTDOOR COMMON LAW TRADEMARK INFRINGEMENT

Mr. Abhyanker intends to pursue his counterclaim for infringement of his common law rights in his unregistered NEXTDOOR trademark in the Third Counterclaim.  Even with his counterclaim for common law infringement of NEXTDOOR, the claim is still simply a mirror claim of Nextdoor.com's affirmative declaratory claims.  Specifically, Count I in Nextdoor.com's Complaint seeks a declaration that Nextdoor.com does not infringement Mr. Abhyanker's rights in NEXTDOOR.  ECF No. 1, ¶¶ 57-59.

In addition, Mr. Abhyanker has revised the title of the Third Counterclaim from "False Designation of Origin" to "Infringement of an Unregistered Trademark" because Nextdoor.com's counsel believes that the two are different.  In any event, because Mr. Abhaynker's claim is simply a claim for an infringement of an unregistered trademark, the counterclaim was revised to

NOTICE RE 2ND AMENDED ANSWER
CASE NO. 3:12-cv-05667-EMC

1    make that even clearer.

2    **II.    DELETION OF PATENT INFRINGEMENT CLAIM**

3           On November 21, 2013, Nextdoor.com filed a Rule 11 Motion for Sanctions alleging that

4    Mr. Abhyanker's proposed patent infringement claim is frivolous.  ECF No. 125.  However,

5    Nextdoor.com filed the Rule 11 Motion without providing Mr. Abhyanker with the statutorily

6    required 21 day safe harbor period.  When Mr. Abhyanker's counsel informed Nextdoor.com's

7    counsel of this procedural deficiency, Nextdoor.com withdrew the deficient Rule 11 Motion.

8    ECF No. 130.

9           For the reasons discussed at length in the briefing on Mr. Abhyanker's Motion for Leave

10   to Amend and during oral argument, Mr. Abhyaner firmly believes that his patent infringement

11   claim is not only not frivolous but that Nextdoor.com is liable for patent infringement.  However,

12   during oral argument, the Court expressed its reluctance to permit Mr. Abhyanker to add the

13   claim at this juncture.  As such, it appears that, in any event, leave to amend to add this claim will

14   not be permitted.

15          Accordingly, Mr. Abhyanker will continue his due diligence regarding Nextdoor.com's

16   infringement of his patent and assert it in a separate lawsuit as appropriate rather than opposing

17   Nextdoor.com's frivolous Rule 11 Motion.  As such, the proposed Second Amended Answer and

18   Counterclaims attached as Exhibit A has been revised to delete the patent infringement

19   counterclaim.

20   **III.    REVISION TO ALLEGATION IN PARAGRAPH 144**

21          Finally, at Nextdoor.com's request, Mr. Abhyanker has made a small revision to the

22   language in Paragraph 144 of the proposed Second Amended Answer and Counterclaims.

23   Previously, Paragraph 144 alleged on information and belief that Nirav Tolia and Prakash

24   Janakiraman looked through the electronic archives at Benchmark.  As revised, Paragraph 144

25   alleges on information and belief that Nirav Tolia and Prakash Janakirman had the capability of

26   reviewing confidential pitch information at Benchmark.

27                                              ***

28          In conclusion, Mr. Abhyanker respectfully requests that he be allowed to file the proposed

2

1   Second Amended Answer and Counterclaims attached as Exhibit A hereto or that the Court deem

2   it filed.

3   Dated: December 5, 2013                    Respectfully submitted,

4                                              LEGALFORCE RAJ ABHYANKER, P.C.

5

6                                              By _____/s/_____

7                                                 Bruno W. Tarabichi
                                                  Heather R. Norton
8                                                 Roy Montgomery
                                                  Attorneys for Defendant
9                                                 Raj Abhyanker

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A

NOTICE RE 2ND AMENDED ANSWER
CASE NO. 3:12-cv-05667-EMC

1  **BRUNO W. TARABICHI**, CA State Bar No. 215129
   bruno@legalforcelaw.com
2  **HEATHER R. NORTON**, CA State Bar No. 257014
   heather@legalforcelaw.com
3  **ROY MONTGOMERY**, CA State Bar No. 279531
   roy@legalforcelaw.com
4  **LEGALFORCE RAJ ABHYANKER, P.C.**
   1580 W. El Camino Real, Suite 13
5  Mountain View, California 94040
   Telephone: 650.965.8731
6  Facsimile:  650.989.2131

7
   Attorneys for Defendant
8  Raj Abhyanker

9                    UNITED STATES DISTRICT COURT

10                  NORTHERN DISTRICT OF CALIFORNIA

11                     SAN FRANCISCO DIVISION

12  NEXTDOOR.COM, INC., a Delaware
    corporation,                              Case No. 3:12-cv-05667-EMC
13
                                              **DEFENDANT RAJ ABHYANKER'S**
14              Plaintiff,                     **[PROPOSED] SECOND AMENDED**
                                              **ANSWER AND COUNTERCLAIMS FOR**
15      vs.
                                              1.  **TRADE SECRET**
16  RAJ ABHYANKER, an individual,                 **MISAPPROPRIATION**
                                              2.  **TRADEMARK INFRINGEMENT**
17              Defendant.                     3.  **INFRINGEMENT OF UNREGISTERED**
                                                  **TRADEMARK**
18  RAJ ABHYANKER, an individual              4.  **CALIFORNIA UNFAIR**
                                                  **COMPETITION**
19              Counterclaimant,
                                              **DEMAND FOR JURY TRIAL**
20      vs.
                                              Case Filed:  November 5, 2012
21  NEXTDOOR.COM, INC., a Delaware            Judge:       Honorable Edward M. Chen
    corporation; PRAKASH
22  JANAKIRAMAN, an individual;
    BENCHMARK CAPITAL PARTNERS,
23  L.P., a Delaware limited partnership;
    BENCHMARK CAPITAL
24  MANAGEMENT CO. LLC, a Delaware
    limited liability company; SANDEEP
25  SOOD, an individual; MONSOON
    ENTERPRISES, INC., a California
26  corporation, and DOES 1–50, inclusive;

27              Counterdefendants.

28

Defendant Raj Abhyanker ("Abhyanker"), through his attorneys, hereby answers Plaintiff Nextdoor.com, Inc.'s ("Nextdoor.com") Complaint as follows:

### The Nature of the Action

1.      In response to paragraph 1, Abhyanker denies each and every allegation in paragraph 1.

2.      In response to paragraph 2, Abhyanker denies each and every allegation in paragraph 2.

3.      In response to paragraph 3, Abhyanker denies each and every allegation in paragraph 3.

4.      In response to paragraph 4, Abhyanker denies each and every allegation in paragraph 4.

5.      In response to paragraph 5, Abhyanker denies each and every allegation in paragraph 5.

### Parties

6.      In response to paragraph 6, Abhyanker responds that he lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 6 and, therefore, denies each and every allegation in paragraph 6.

7.      In response to paragraph 7, Abhyanker admits the allegations in paragraph 7.

### Jurisdiction and Venue

8.      In response to paragraph 8, Abhyanker denies that any conduct or omission giving rise to any claims against him has occurred.  Abhyanker further responds that Nextdoor.com's allegations in paragraph 8 are legal conclusions and jurisdictional allegations that do not require a response.

9.      In response to paragraph 9, Abhyanker denies that any conduct or omission giving rise to any claims against him has occurred.  Abhyanker further responds that Nextdoor.com's allegations in paragraph 9 are legal conclusions and jurisdictional allegations that do not require a response.

[PROPOSED] SECOND AMENDED
ANSWER & COUNTERCLAIM
(case no. 3:12-cv-05667-EMC)

10.     In response to paragraph 10, Abhyanker admits that he resides and conducts business in this judicial district and is subject to personal jurisdiction in this judicial district. Except as expressly admitted, Abhyanker denies each and every allegation in paragraph 10.

**Intradistrict Assignment**

11.     In response to paragraph 11, Abhyanker denies each and every allegation in paragraph 11.

**General Allegations**

12.     In response to paragraph 12, Abhyanker responds that he lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 12 and, therefore, denies each and every allegation in paragraph 12.

13.     In response to paragraph 13, Abhyanker responds that he lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 13 and, therefore, denies each and every allegation in paragraph 13.

14.     In response to paragraph 14, Abhyanker denies each and every allegation in paragraph 14.

15.     In response to paragraph 15, Abhyanker denies each and every allegation in paragraph 15.

16.     In response to paragraph 16, Abhyanker responds that he lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 16 and, therefore, denies each and every allegation in paragraph 16.

17.     In response to paragraph 17, Abhyanker denies each and every allegation in paragraph 17.

18.     In response to paragraph 18, Abhyanker responds that he lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 18 and, therefore, denies each and every allegation in paragraph 18.

19.     In response to paragraph 19, Abhyanker responds that he lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 19 and, therefore, denies each and every allegation in paragraph 19.

20.     In response to paragraph 20, Abhyanker responds that he lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 20 and, therefore, denies each and every allegation in paragraph 20.

21.     In response to paragraph 21, Abhyanker responds that he lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 21 and, therefore, denies each and every allegation in paragraph 21.

22.     In response to paragraph 22, Abhyanker admits that on, October 27, 2011, he sent an email to Nirav Tolia and that Nirav Tolia never responded to the email.  Abhyanker further states that the email speaks for itself.  Except as expressly admitted, Abhyanker denies each and every allegation in paragraph 22.

23.     In response to paragraph 23, Abhyanker admits that, on November 10, 2011, he filed Civil Action No. 1-11-CV-212924 in the Superior Court of California for the County of Santa Clara against Nextdoor.com and other defendants.  Abhyanker further responds that the pleadings on file in Civil Action No. 1-11-CV-212924 speak for themselves.  Except as expressly admitted, Abhyanker denies each and every allegation in paragraph 23.

24.     In response to paragraph 24, Abhyanker responds that the pleadings on file in Civil Action No. 1-11-CV-212924 speak for themselves.  Except as expressly admitted, Abhyanker denies each and every allegation in paragraph 24.

25.     In response to paragraph 25, Abhyanker admits that, on December 28, 2011, he filed U.S. Trademark Application Serial No. 85/504,896 for the NEXTDOOR standard character mark in connection with services in International Class 42 with the U.S. Patent and Trademark Office.  Except as expressly admitted, Abhyanker denies each and every allegation in paragraph 25.

26.     In response to paragraph 26, Abhyanker admits that he did not file a trademark application for the NEXTDOOR mark prior to December 28, 2011.  Except as expressly admitted, Abhyanker denies each and every allegation in paragraph 26.

27.     In response to paragraph 27, Abhyanker admits that he filed U.S. Trademark Application Serial Nos. 77/049,286 for FATDOOR and 77/049,854 for GET TO KNOW YOUR NEIGHBORS with the U.S. Patent and Trademark Office and that these two specific applications did not mature into registrations.  Except as expressly admitted, Abhyanker denies each and every allegation in paragraph 27.

28.     In response to paragraph 28, Abhyanker admits that, on February 28, 2012, he filed U.S. Trademark Application Serial No. 85/537,718 for the FATDOOR GET TO KNOW YOUR NEIGHBORS design mark with the U.S. Patent and Trademark Office.

29.     In response to paragraph 29, Abhyanker denies each and every allegation in paragraph 29.

30.     In response to paragraph 30, Abhyanker admits that he registered the nextdoor.cm domain name.  Abhyanker responds that he lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 30 and, therefore, denies each and every remaining allegation in paragraph 30.

31.     In response to paragraph 31, Abhyanker admits that he owns and controls the nextdoor.cm domain name.  Abhyanker responds that he lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 31 and, therefore, denies each and every remaining allegation in paragraph 31.

32.     In response to paragraph 32, Abhyanker responds that Exhibit A to the Complaint speaks for itself.  Except as expressly admitted, Abhyanker denies each and every allegation in paragraph 32.

33.     In response to paragraph 33, Abhyanker responds that Exhibit B to the Complaint speaks for itself.  Except as expressly admitted, Abhyanker denies each and every allegation in paragraph 33.

[PROPOSED] SECOND AMENDED
ANSWER & COUNTERCLAIM
(case no. 3:12-cv-05667-EMC)

34.     In response to paragraph 34, Abhyanker responds that Exhibits C and D to the Complaint speak for themselves.  Except as expressly admitted, Abhyanker denies each and every allegation in paragraph 34.

35.     In response to paragraph 35, Abhyanker responds that Exhibit A to the Complaint speaks for itself.  Except as expressly admitted, Abhyanker denies each and every allegation in paragraph 35.

36.     In response to paragraph 36, Abhyanker responds that Exhibit B to the Complaint speaks for itself.  Except as expressly admitted, Abhyanker denies each and every allegation in paragraph 36.

37.     In response to paragraph 37, Abhyanker responds that Exhibit B to the Complaint speaks for itself.  Except as expressly admitted, Abhyanker denies each and every allegation in paragraph 37.

38.     In response to paragraph 38, Abhyanker responds that Exhibit B to the Complaint speaks for itself.  Except as expressly admitted, Abhyanker denies each and every allegation in paragraph 38.

39.     In response to paragraph 39, Abhyanker denies each and every allegation in paragraph 39.

40.     In response to paragraph 40, Abhyanker admits that, on or around February 9, 2012, he re-registered the nextyard.com and nextlawn.com domain names and that these two domain names pointed to a web server owned by Abhyanker.  Except as expressly admitted, Abhyanker denies each and every allegation in paragraph 40.

41.     In response to paragraph 41, Abhyanker denies each and every allegation in paragraph 41.

42.     In response to paragraph 42, Abhyanker admits that he registered the edirectree domain name on or around September 2007 and that, at some point, the domain name registration was not renewed.  Abhyanker responds that he lacks knowledge or information sufficient to form

a belief about the truth of the remaining allegations in paragraph 42 and, therefore, denies each and every remaining allegation in paragraph 42.

43.     In response to paragraph 43, Abhyanker responds that he lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 43 and, therefore, denies each and every allegation in paragraph 43.

44.     In response to paragraph 44, Abhyanker admits that, on or around February 9, 2012, he registered the edirectree.com domain name.  Except as expressly admitted, Abhyanker denies each and every allegation in paragraph 44.

45.     In response to paragraph 45, Abhyanker admits that, at one time, a web page accessible at the edirectree.com contained a social networking feature that was an extension of its previous "Friends" feature.  Except as expressly admitted, Abhyanker denies each and every allegation in paragraph 45.

46.     In response to paragraph 46, Abhyanker admits that, at one time, a web page accessible at the edirectree.com contained a "Friends" social networking feature.  Except as expressly admitted, Abhyanker denies each and every allegation in paragraph 46.

47.     In response to paragraph 47, Abhyanker denies each and every allegation in paragraph 47.

48.     In response to paragraph 48, Abhyanker denies each and every allegation in paragraph 48.

49.     In response to paragraph 49, Abhyanker admits that, on January 20, 2012, he filed a Notice of Opposition with the Trademark Trial and Appeal Board that was instituted as Opposition No. 91203462 and that, on February 9, 2012, he filed a Notice of Opposition with the Trademark Trial and Appeal Board that was instituted as Opposition No. 91203762.  Abhyanker further responds that the pleadings in these oppositions speak for themselves.  Except as expressly admitted, Abhyanker denies each and every allegation in paragraph 49.

50.     In response to paragraph 50, Abhyanker responds that the pleadings on file in Opposition Nos. 91203462 and 91203762 speak for themselves.  Except as expressly admitted, Abhyanker denies each and every allegation in paragraph 50.

51.     In response to paragraph 51, Abhyanker responds that, on or around February 7, 2012, he filed a Request for Dismissal Without Prejudice in Civil Action No. 1-11-CV-212924 in the Superior Court of California for the County of Santa Clara.  Except as expressly admitted, Abhyanker denies each and every allegation in paragraph 51.

52.     In response to paragraph 52, Abhyanker admits that his attorneys sent a letter to Nextdoor.com.  Abhyanker further responds that the letter speaks for itself.  Except as expressly admitted, Abhyanker denies each and every allegation in paragraph 52.

53.     In response to paragraph 53, Abhyanker responds that the pleadings on file in Opposition Nos. 91203462 and 91203762 speak for themselves.  Except as expressly admitted, Abhyanker denies each and every allegation in paragraph 53.

54.     In response to paragraph 54, Abhyanker denies each and every allegation in paragraph 54.

### Count I – Declaratory Judgment Under 28 U.S.C. § 2201

55.     In response to paragraph 55, Abhyanker refers to his responses to the allegations in paragraphs 1–54 and incorporates by reference such responses as if set forth in full herein.  In addition, Abhyanker denies that there is any basis for Nextdoor.com to bring a claim against him for declaratory relief.

56.     In response to paragraph 56, Abhyanker responds that he lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 56 and, therefore, denies each and every allegation in paragraph 56.

57.     In response to paragraph 57, Abhyanker responds that the pleadings on file in Opposition Nos. 91203462 and 91203762 speak for themselves.  Except as expressly admitted, Abhyanker denies each and every allegation in paragraph 57.

[PROPOSED] SECOND AMENDED
ANSWER & COUNTERCLAIM
(case no. 3:12-cv-05667-EMC)

58.     In response to paragraph 58, Abhyanker responds that the allegation in paragraph 58 is a legal conclusion that does not require a response.

59.     In response to paragraph 59, Abhyanker responds that he lacks knowledge or information sufficient to form a belief about what Nextdoor.com does or does not seek by way of declaration from this Court or the truth of the allegations in paragraph 59 and, therefore, denies each and every allegation in paragraph 59.

### Count II – Declaratory Judgment Under 28 U.S.C. § 2201

60.     In response to paragraph 60, Abhyanker refers to his responses to the allegations in paragraphs 1–59 and incorporates by reference such responses as if set forth in full herein.  In addition, Abhyanker denies that there is any basis for Nextdoor.com to bring a claim against him for declaratory relief.

61.     In response to paragraph 61, Abhyanker responds that the pleadings on file in Opposition Nos. 91203462 and 91203762 speak for themselves.  Except as expressly admitted, Abhyanker denies each and every allegation in paragraph 61.

62.     In response to paragraph 62, Abhyanker responds that the allegation in paragraph 62 that an actual controversy exists is a legal conclusion that does not require a response.  With regard to the remaining allegations in paragraph 62, Abhyanker responds that he lacks knowledge or information sufficient to form a belief about what Nextdoor.com does or does not contend or the truth of the remaining allegations in paragraph 62 and, therefore, denies each and every remaining allegation in paragraph 62.

63.     In response to paragraph 63, Abhyanker responds that he lacks knowledge or information sufficient to form a belief about what Nextdoor.com does or does not seek by way of declaration from this Court or the truth of the allegations in paragraph 63 and, therefore, denies each and every allegation in paragraph 63.

### Count III – Violation of 15 U.S.C. § 1125(D)(1)

64.     In response to paragraph 64, Abhyanker refers to his responses to the allegations in paragraphs 1–63 and incorporates by reference such responses as if set forth in full herein.  In

addition, Abhyanker denies that there is any basis for Nextdoor.com to bring a claim against him for violation of 15 U.S.C. § 1125(D)(1).

65.     In response to paragraph 65, Abhyanker admits that he registered the nextdoor.cm domain name.

66.     In response to paragraph 66, Abhyanker denies each and every allegation in paragraph 66.

67.     In response to paragraph 67, Abhyanker denies each and every allegation in paragraph 67.

68.     In response to paragraph 68, Abhyanker denies each and every allegation in paragraph 68.

69.     In response to paragraph 69, Abhyanker denies each and every allegation in paragraph 69.

70.     In response to paragraph 70, Abhyanker denies each and every allegation in paragraph 70.

71.     In response to paragraph 71, Abhyanker denies each and every allegation in paragraph 71.

**Count IV – Violation of 15 U.S.C. § 1125(A)**

72.     In response to paragraph 72, Abhyanker refers to his responses to the allegations in paragraphs 1–71 and incorporates by reference such responses as if set forth in full herein.  In addition, Abhyanker denies that there is any basis for Nextdoor.com to bring a claim against him for violation of 15 U.S.C. § 1125(A).

73.     In response to paragraph 73, Abhyanker denies each and every allegation in paragraph 73.

74.     In response to paragraph 74, Abhyanker denies each and every allegation in paragraph 74.

75.     In response to paragraph 75, Abhyanker denies each and every allegation in paragraph 75.

[PROPOSED] SECOND AMENDED
ANSWER & COUNTERCLAIM
(case no. 3:12-cv-05667-EMC)

76.     In response to paragraph 76, Abhyanker denies each and every allegation in paragraph 76.

77.     In response to paragraph 77, Abhyanker denies each and every allegation in paragraph 77.

78.     In response to paragraph 78, Abhyanker denies each and every allegation in paragraph 78.

In response to Nextdoor.com's Prayer for Relief paragraphs A–G, Abhyanker denies that there is a basis for judgment against him, damages of any kind for any reason, declaratory relief, an order transferring any domain names, statutory damages, profits, prejudgment interest, punitive damages, attorneys' fees, litigation expenses, costs, liquidated damages, injunctive relief, penalties, restitution, or any other relief. Abhyanker further prays that Nextdoor.com take nothing by its Complaint, that the Complaint be dismissed with prejudice, that Abhyanker be awarded his attorneys' fees and costs, and that the Court order such further relief as it deems just and proper.

## AFFIRMATIVE DEFENSES

By way of further answer, Abhyanker alleges and asserts the following defenses in response to the allegations contained in the Complaint. In this regard, Abhyanker undertakes the burden of proof only as to those defenses that are deemed affirmative defenses by law, regardless of how such defenses are denominated in the instant Answer. Abhyanker reserves the right to assert other affirmative defenses as this action proceeds based on further discovery, legal research, or analysis that may supply additional facts or lend new meaning or clarification to the claims contained in the Complaint.

## FIRST AFFIRMATIVE DEFENSE
## FAILURE TO STATE A CLAIM

79.     Plaintiff's claims are barred, in whole or in part, because the Complaint fails to state a claim upon which relief can be granted.

10      [PROPOSED] SECOND AMENDED
ANSWER & COUNTERCLAIM
(case no. 3:12-cv-05667-EMC)

**SECOND AFFIRMATIVE DEFENSE**
**LACK OF STANDING**

80.     Plaintiff's claims are barred, in whole or in part, because Plaintiff lacks standing.

**THIRD AFFIRMATIVE DEFENSE**
**UNCLEAN HANDS**

81.     Plaintiff's claims are barred, in whole or in part, by the doctrine of unclean hands.

**FOURTH AFFIRMATIVE DEFENSE**
**UNENFORCEABILITY**

82.     Plaintiff's claims are barred, in whole or in part, because Plaintiff's alleged trademark(s) are unenforceable.

**FIFTH AFFIRMATIVE DEFENSE**
**BREACH**

83.     Plaintiff's claims are barred, in whole or in part, because Plaintiff's use of its alleged trademark(s) is a breach of one or more agreements or duties of confidentiality.

**SIXTH AFFIRMATIVE DEFENSE**
**PRIOR TRADEMARK RIGHTS**

84.     Plaintiff's claims are barred, in whole or in part, because Abhyanker has prior and superior rights in the NEXTDOOR mark.

**SEVENTH AFFIRMATIVE DEFENSE**
**RIGHT TO ASSERT ADDITIONAL DEFENSES**

85.     Abhyanker expressly reserves the right to amend its Answer to assert additional affirmative defenses upon the revelation of more definitive facts by Plaintiff and upon Abhyanker taking of discovery and investigation of this matter.

11     [PROPOSED] SECOND AMENDED
ANSWER & COUNTERCLAIM
(case no. 3:12-cv-05667-EMC)

## COUNTERCLAIMS

Pursuant to Rule 13 of the Federal Rules of Civil Procedure, Counterclaimant Abhyanker counterclaims against Nextdoor.com, Prakash Janakiraman, Sandeep Sood, Monsoon Enterprises, Inc., Benchmark Capital Partner, L.P., Benchmark Management Co. LLC, and Does 1 – 50 as follows:

## PARTIES

86.     Raj Abhyanker ("Abhyanker") is an individual and resident of Cupertino, California.

87.     Nextdoor.com, Inc. ("Nextdoor.com") is a Delaware corporation having its principal place of business at 110 Sutter Street, Suite 700, San Francisco, California, 94104.

88.     Prakash Janakiraman ("Janakiraman") is an individual and resident of San Francisco, California.  Janakiraman is the co-founder and Vice President, Engineering of Nextdoor.com.

89.     Sandeep Sood ("Sood") is an individual and resides in the San Francisco Bay Area.  Sood is the President of Monsoon.

90.     Monsoon Enterprises, Inc. ("Monsoon") is a California corporation having its principal place of business at 350 Frank Ogawa Plaza, Suite 100, Oakland, California 94612.

91.     Benchmark Capital Partners, L.P. is a Delaware limited partnership and Benchmark Capital Management Co. LLC is a Delaware limited liability company (hereinafter collectively referred to as "Benchmark Capital"), both having their principal place of business at 2480 Sand Hill Road, Suite 200, Menlo Park, California, 94025.

92.     Abhyanker is ignorant of the true names of the other Counterdefendants sued herein as Does 1 – 50, inclusive, and therefore, sues these Doe Counterdefendants by such fictitious names.  Abhyanker will amend his counterclaim to allege their true names and capacities when ascertained.

**JURISDICTION AND VENUE**

93.     This Court has supplemental jurisdiction over this counterclaim pursuant to 28 U.S.C. § 1367.

94.     Nextdoor.com and Counterdefendants are subject to personal jurisdiction in this district due to their systematic and continuous contacts with this district.  In addition, Nextdoor.com is subject to personal jurisdiction as a result of initiating this lawsuit in this district.

95.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391.

**FACTS RELEVANT TO ALL COUNTERCLAIMS**

A.      **Nextdoor.com And Benchmark Capital Have A History Of Stealing Information And Ideas**

96.     Nextdoor.com, Benchmark Capital, and the individuals associated with them have a pattern and practice of building companies based on stolen information and engaging in dishonest business practices at the expense of entrepreneurs.  By way of one example, Nirav Tolia ("Tolia"), one of the founders of Nextdoor.com, admitted that he had been helping Benchmark evaluate confidential ideas of entrepreneurs since at least 2006.  For example, in 2006, at the behest of Benchmark partner Peter Fenton, Tolia met with Jeremy Stoppelman, the founder of Yelp, to discuss the Yelp concept.  At that meeting, Tolia stated that Stoppelman and Yelp had misappropriated trademarks and the trade identity belonging to Tolia's former employer, eBay, Inc.  However, Tolia proceeded with a positive investment recommendation and Benchmark invested in Yelp.  Put simply, Benchmark has a pattern and practice of choosing to hire and retain consultants and employees known to be dishonest and with questionable ethical standards, placing such consultants and employees in positions to evaluate confidential ideas from entrepreneurs, and then investing in companies having stolen intellectual property and assets.

97.     Benchmark is in the minority of venture capitalists that employ the practice of Entrepreneurs-in-Residence ("EIRs").  *See, e.g.,* Boonsri Dickinson, So What The Heck Is An Entrepreneur In Residence Anyway?, Business Insider, Mar. 15, 2012.  Benchmark's EIRs are people who do not have a formulated business concept while they are in residence, but Benchmark aims to invest in the EIRs if and when they do formulate a business concept.  *See id.*

13      [PROPOSED] SECOND AMENDED
        ANSWER & COUNTERCLAIM
        (case no. 3:12-cv-05667-EMC)

In the meantime, Benchmark allows the EIRs to listen in on pitches by outside startups pitching ideas to Benchmark.  This highly unethical practice frequently leads to EIRs stealing ideas from the entrepreneurs who are pitching their ideas to Benchmark, and then forming companies to pursue such stolen ideas with funding from Benchmark.   At least three of the co-founders of the Nextdoor.com were EIRs in formal and informal capacities at least since 2006 when the Abhyanker pitched his ideas to Benchmark.

98.     Moreover, Nextdoor.com has a history of failing on its own merits before succeeding in its present incarnation, which is based on misappropriated trade secrets.  According to its own Complaint in this action, Nextdoor.com was founded in December 2007 as SPN, Inc.  In January 2008, SPN, Inc. changed its name to Round Two, Inc. and launched an online almanac of professional and college athletes at www.fanbase.com.  Round Two, Inc. later changed its name to Fanbase Inc.  However, Fanbase Inc. and its Fanbase online almanac was a failure, and by Spring 2010, the Fanbase concept was abandoned.  These failures set the stage for Fanbase Inc. and the persons associated with Fanbase to yet again build a company based on stolen information and misappropriated trade secrets.  As detailed below, the failed company Fanbase Inc. renamed itself Nextdoor.com and radically shifted its business model from an online almanac for athletes to an online neighborhood social network after misappropriating Abhyanker's trade secrets.

B.     **Abhyanker Develops The LegalForce/Nextdoor Online Neighborhood Social Network Concepts and Trade Secrets**

99.     In or around September 2006, Abhyanker developed the concepts for two private online neighborhood social networks.  The first concept, LegalForce.com, was to be an online private social network for neighborhood inventors, created by geocoding inventors and owners from public patent and trademark data.  The second concept, Nextdoor.com, was to use the same source code as Legal Force.com to create a private social network for secure collaboration of neighbors in a geospatial area.  Both the LegalForce.com and the Nextdoor.com websites were to be used by neighbors who registered with the site.

100.    In connection with his LegalForce and Nextdoor concepts, Abhyanker developed trade secrets including, but not limited to, key product details, algorithms, business plans, security algorithms, database structures, user interface designs, software code, product concepts, prototypes, methods, works of authorship, trademarks, white papers, and instrumentalities, information and plans.  Abhyanker's trade secret information pertains to, but is not limited to, software to ensure that the networks are limited to people within a certain neighborhood, which provides users with a level of privacy that sites like Facebook do not provide.  The trade secret information further pertains to email lists of inventive neighbors around Cupertino, California, inventive neighbors in the Lorelei neighborhood of Menlo Park, a private social network activation in a geospatially constrained area, a geo-spatial database, neighborhood member activation through postal mail, public/private geo-location constrained member groups, neighborhood member address verification, sharing of bulletin and wall communications between neighborhood resident users only, customer lists, architecture, social networking, friend grouping, providing real time updates, neighborhood-level privacy controls, feed aggregation, spheres of influence, application technologies, filtering relevant feeds across multiple networks, filtering conversations, adding contextual relevancy to private messages and connections in a geospatially constrained area, and connections across interactions in neighboring communities, providing in depth conversations through a social graph, community governance, bidding history of the Nextdoor.com domain, the activation of the Lorelei neighborhood as a prime testing neighborhood for communication, and neighborhood communication and geo-spatial social networking.  (Abhyanker's "Trade Secrets").  Abhyanker also conceived of using the name Nextdoor in connection with a neighborhood social networking website.  The name Nextdoor was chosen as the name of the new website based on Abhyanker's previous use of the name Nextdoor in connection with creating neighborhood walking maps in Cupertino City Council campaigns in 2005.

101.    The Lorelei neighborhood was chosen to prototype the LegalForce/Nextdoor concepts in part because of its high concentration of technology savvy inventors and

neighborhood activism.  The Lorelei neighborhood was not randomly chosen.   The selection of

the Lorelei neighborhood was based a mathematical geocoding of all public addresses of

inventors listed on U.S. patent applications during the years 2005 and 2006 in terms of calculated

latitude and longitude coordinates, and simultaneously plotting this resultant data set on a map of

the United States.   Then, a pushpin density map, a shaded area map, a symbol map, and a density

map sequentially generated, analyzed, and narrowed based upon the resultant data set.

102.    The pushpin density map and the shaded area map were further divided based on

inventor classification based on the classification index on United States patent applications in the

software, privacy, database, and internet arts.   All data records were then again simultaneously

geocoded to create the shaded area map.  The shaded area map was analyzed to determine regions

in statistical probability reveal that there are the highest concentrations of technology savvy,

forward thinking individuals intimately familiar with modern web technologies as of September

2006.  Menlo Park was identified to be a city having the right inventor dynamics of a city in

which there is a strong likelihood of user adoption.

103.    From there, the Lorelei neighborhood of Menlo Park (on Lorelei Street) was

further narrowed careful analysis of the data, as it contained the right attributes for potential

LegalForce & Nextdoor users based on an analysis of neighborhood sophistication, and its

proximity to Abhyanker's Menlo Park office.  At less than .1 miles away from Abhyanker's

office in Menlo Park at 4400 Bohannan St, Menlo Park, the Lorelei neighborhood had the right

characteristics as being a neighborhood in which there exists a strong likelihood of user

acceptance and adoption of new web concepts challenging traditional forms of neighborhood

communication, and it was walking distance away.

C.    **Abhyanker Hires Sood To Work On His Trade Secret LegalForce/Nextdoor Concept**

104.    Abhyanker formed a new corporation LegalForce, Inc. through the law firm of

Fenwick & West in or around May 2006.  LegalForce, Inc. owned the assets of the original

LegalForce.com and Nextdoor.com technology.   On or around September 21, 2006, Abhyanker

hired Sandeep Sood and his firm Big Circle Media (now called Monsoon) to provide software and

website development services for the LegalForce and Nextdoor concepts.  Before disclosing his

concepts and Trade Secrets, Abhyanker required Sood and Big Circle Media to execute an

Independent Contractor Agreement and Non-Disclosure Agreement, which were executed on

September 21, 2006.  These Agreements required Sood and Big Circle to keep the

LegalForce.com and Nextdoor.com concepts and all accompanying details and work product

relating to it confidential.

105.     Between August 21, 2005 and June 15, 2006, Abhyanker worked to get a

prototype Nextdoor website built along with his business partner and assistant Babar Rana

("Rana").  During this period, Rana created screenshots and wireframes of the Nextdoor concept

using PowerPoint.  See Exhibits A and B, attached hereto.  The screenshots and wireframes

included the name "Nextdoor."  There were two mockup images of the Nextdoor concept

prepared by Rana during this time period.  The first mockup image showed a photograph of Rana,

with a personal profile wall feed from neighbors who provided comments on Rana's wall.  A

search area box read "search neighborhood."  The word "Nextdoor" was clearly shown in the

upper, left-hand side of the screenshot. A map was shown in the screenshot illustrating the

location of Rana's hypothetical home and images indicating which neighbors had and had not

joined the neighborhood surrounding Rana's home.

106.     The second mockup image of the Nextdoor concept prepared by Rana between on

or about August 21, 2005 and June 15, 2006 also visibly and clearly showed the name

"Nextdoor" in the upper, left-hand side of the site as well.  A message appeared on that mockup

stating, "[g]et to know your neighbors."  Abhyanker's home was pictured on the map, along with

photos of Abhyanker's family and next door residential and business neighbors visible on a map.

107.     These two mockup images of the Nextdoor concept were shared, pursuant to an

oral confidentiality agreement, on or around June 22, 2007, between Abhyanker and Benchmark.

The Benchmark members with whom the Nextdoor concept was shared were Kevin R. Harvey

("Harvey"), and Peter Fenton ("Fenton"), both of whom are General Partners of Benchmark

Capital Partners VII, L. P., equity holders in Benchmark Capital Management Co. VII LLC, and through the fund, later became equity holders of Nextdoor. com, Inc.

108.     Abhyanker attempted to purchase the Nextdoor.com domain names multiple times, starting in 2006.  However, the domain name was not for sale, and Abhyanker's attempts to purchase it failed.  Accordingly, Abhyanker purchased Nextyard.com and Nextlawn.com domains on or around October 20, 2006 to serve as placeholders for the Nextdoor.com website.  Following the purchase of Nextyard.com and Nextlawn.com, Abhyanker continued his attempts to purchase the Nextdoor.com domain name.

**D.     Abhyanker Forms Fatdoor, Inc.**

109.     During Abhyanker's development of the LegalForce.com and Nextdoor.com websites, he also originated a new concept based on a Wikipedia-like public database of neighbor profiles that could be edited and enhanced to provide a "search" and "discover" functionality as contrasted with a sign-up social network.  Abhyanker named this new functionality "Fatdoor.com."  Abhyanker first disclosed this idea to Jeffrey Drazan, an equity investor in LegalForce on or around October 2006.

110.     Jeffrey Drazan recommended that Abhyanker carve out IP related to Fatdoor from LegalForce and Nextdoor, and form and raise money for a new corporation to be called Fatdoor, Inc.  Abhyanker also disclosed the concept to Sandeep Sood, who agreed it would be best to start a separate venture from LegalForce and Nextdoor to pursue the Fatdoor concept.

111.     Sandeep Sood charged and billed $4,185 for Fatdoor consulting services, separate from his work on LegalForce and Nextdoor, on or about November 12, 2006.  This amount was paid by Fatdoor, Inc.  The development of the LegalForce and Nextdoor website, the cost of which totaled $15,000, remained separate and was paid by Abhyanker and LegalForce, Inc. after the formation of Fatdoor using non-Fatdoor bank accounts and checks.

112.     Based on Drazan's recommendation, on or around October 25, 2006, Abhyanker put his LegalForce and Nextdoor concepts on hold to found and pursue Fatdoor.com, around this new and separate idea for Fatdoor.  To ensure that the $150,000 in convertible note holders

18        [PROPOSED] SECOND AMENDED
ANSWER & COUNTERCLAIM
(case no. 3:12-cv-05667-EMC)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

backing the LegalForce, Inc. venture that funded the development of both LegalForce.com and Nextdoor would be protected, Drazan recommended an attorney named Daniel Hansen to form the new Fatdoor, Inc. entity and carve out all trade secrets and intellectual property related to LegalForce and Nextdoor.  While the name "Nextdoor" was considered for Fatdoor.com, it was decided to not pursue that name because of the mixed ownership of Nextdoor and LegalForce, and because the name was not available.  As such, the name "Nextdoor" as applied to a private social network for neighborhoods remained private and a trade secret associated with investors in LegalForce, Inc.

113.    Abhyanker proceeded to assign trade secrets, inventions, patent rights (including several pending patent applications), and other proprietary information relating to the Fatdoor concept to Fatdoor, Inc. on or around February 1, 2007 through a document drafted by Drazan's attorney Hansen.  Because Drazan and Abhyanker remained equity holders in LegalForce, Inc., purposefully excluded from this transfer were all technologies related to LegalForce and Nextdoor, including the exclusion of the LegalForce and Nextdoor Trade Secrets and the Nextyard, Nextlawn, and LegalForce domains.   Drazan's attorney Daniel Hansen drafted this agreement expressly under the wishes of Drazan and Abhyanker.  To provide equity to Fatdoor, Inc. investors, trade secrets related to Fatdoor were assigned to Fatdoor, Inc.  Those trade secrets included hundreds of pages of documents that became the basis for more than 46 patent applications assigned by Abhyanker, the lead inventor, to Fatdoor, Inc.  Each and all of these 46 patent application covered the public 'wiki' based Fatdoor commenting tool only, and did not relate to the private social network of LegalForce or Nextdoor developed by Sood for Abhyanker and LegalForce, or the code base for the original Nextdoor concept.

114.    After the Fatdoor, Inc. business was formed, in or about February 2007, an entirely new code base was built for the wiki based commenting tool by Chandu Thota ("Thota"), a Chief Technology Officer hired by Abhyanker to develop the Fatdoor concept.   None of the original code base developed for LegalForce, Inc. by Sood around the Nextdoor concept was used in the

1
2
creation of Fatdoor.  A board of directors for Fatdoor, Inc. was formed consisting of Raj

Abhyanker, Jeffrey Drazan, Willian Harris, and Chandu Thota.

3
4
        115.    In or about May 2007, a convertible note holder in LegalForce, Inc., Mr. Warren

Myers complained to the Fatdoor Board of Directors that he was concerned that technologies and

5
6
trade secrets owned by Nextdoor and LegalForce were used or planning to be used in Fatdoor,

Inc.  This dispute was disclosed to Series B investors in Fatdoor, Inc. in board minutes and in

7
8
disclosures in conjunction with Series B financing.  A decision was made that if the Nextdoor

domain would be desired for Fatdoor again, permission from the LegalForce, Inc. equity investors

9
10
and convertible note holders, including Warren Myer would first be required.  These disclosures

were prepared by Daniel Hansen, and it was stated that Mr. Myers now understood that the

11
12
original LegalForce trade secrets including the Nextdoor name as useable with a private social

network for neighbors remained property of LegalForce, Inc.

13
       **E.**    **Sood Was Not Chosen To Be Part of Fatdoor's Founding Team**

14
15
        116.    Before the formation of Fatdoor, Abhyanker and Sood had discussed the

possibility of Sood becoming a co-founder of Nextdoor.  However, when Fatdoor was formed,

16
17
Sood was not selected to be part of Fatdoor's founding team.  There were several reasons that

Sood was not selected, including Sood's other obligations and his outspoken disagreement with

18
19
Fatdoor's chosen direction and technology.  As can be expected, Sood was disappointed when he

learned that he was not selected to be part of Fatdoor, leaving him disgruntled and with a clear

20
axe to grind.

21
22
       **F.**    **Abhyanker Confidentially Discloses His Trade Secrets To Benchmark Capital**

23
        117.    On or around December 15, 2006, Abhyanker showed his Fatdoor prototype to

Drazan.  Drazan agreed to fund a separate entity from LegalForce, Inc., in order to launch the new

24
25
public Wikipedia-like neighborhood commenting tool, Fatdoor.com.  On or about January 5,

2007, Drazan agreed to personally invest $500,000.00 in Fatdoor, Inc.  Drazan also introduced

26
27
Abhyanker to William H. Harris, Jr. ("Harris, Jr.").  On or about February 1, 2007, Abhyanker

28

    [PROPOSED] SECOND AMENDED
ANSWER & COUNTERCLAIM
(case no. 3:12-cv-05667-EMC)

closed a $1,000,000.00 Series A round of equity financing with Drazan and Harris, Jr. for Fatdoor, Inc.

118.    Abhyanker then hired the best engineers that he could find to help build working products for Fatdoor, Inc., including Thota as Chief Technology Officer of Fatdoor, Inc.

119.    The prototype of Fatdoor.com was developed into a working beta website. However, based on feedback from users, an internal decision was made to work on an improved version of Fatdoor.com centered on security and privacy.  To this end, Abhyanker believed this new version of Fatdoor.com could be accomplished by using some of Abhyanker's LegalForce and Nextdoor Trade Secrets.

120.    On or around June 20, 2007, an initial meeting was set with Benchmark Capital to discuss funding for the new version of Fatdoor.com, which was to incorporate LegalForce and Nextdoor Trade Secrets.  The initial meeting did not involve the disclosure of any non-confidential, trade secret information.  Instead, at that meeting it was discussed that a confidential meeting would take place only after assurances were received that all information shared by Abhyanker would be maintained strictly confidential.  In a follow-up telephone call Harvey, a general partner of Benchmark capital, agreed to maintain confidential any and all information disclosed by Abhyanker during any future meetings.  It is the pattern and practice of Benchmark Capital, its general partners, and entrepreneurs in residence (EIRs) to agree to non-disclosure agreements via verbal and email "handshakes."  *See* Randall E. Stross, eBoys: The First Inside Account of Venture Capitalists at Work, xviii (2000).

121.    Based on Benchmark Capital's assurances of confidentiality, a follow up meeting was set for on or about June 21, 2007.  During that meeting, Abhyanker provided a detailed disclosure of Abhyanker's LegalForce and Nextdoor Trade Secrets.  The meeting was attended by a majority of the Benchmark partners and EIRs, including Harvey.

122.    In addition, at Harvey's request, Abhyanker sent confidential and trade secret presentations relating to the Nextdoor concept to Benchmark Capital partner Mitch Lasky

("Lasky") and a diligence file ("Diligence Package") fully disclosing his Nextdoor concept and the trade secrets to Benchmark Capital partner Fenton.

123.    Harvey then informed Abhyanker that he would be discussing the trade secret information with his team at an offsite meeting that would be occurring between June 23 -25, 2007.

124.    At Benchmark Capital's request, Abhyanker had various follow-up meetings with Benchmark Capital discussing the confidential technical details of his trade secrets.  During those meetings, Abhyanker disclosed key details of his Trade Secrets, including, but not limited to, the Diligence Package, which included, at least key product details, algorithms, business plans, security algorithms, database structures, user interface designs, software code, product concepts, prototypes, methods, works of authorship, trademarks, white papers, and instrumentalities.  The Diligence Package also contained a mockup images showing a photograph of sample user, with a personal profile virtual wall feed from neighbors who provided comments on the user's wall.  A search area box read "search neighborhood."  The word "Nextdoor" was clearly shown in the upper, left-hand side of the screenshot.  A map was shown in the screenshot illustrating the location of the user's hypothetical home and images indicating which neighbors had and had not joined the neighborhood surrounding the user's home.

125.    Following Abhyanker's disclosure of his Trade Secrets, Benchmark Capital misappropriated the Trade Secrets by disclosing and using them in violation of the confidentiality agreement.

126.    Meanwhile, the Fatdoor, Inc. series B investors that Abhyanker brought in the summer of 2007 desired to take the company Fatdoor in a different direction than Abhyanker had originally envisioned.  In particular, the investors, at the recommendation of Benchmark Capital, requested that a headhunter be hired to find a new Chief Executive Officer.  In response, Abhyanker conveyed to the Board of Directors that he would be willing to leave the position of Chief Executive Officer if he was permitted to run for another city council campaign and restart a new business around his original Nextdoor concept of a private neighborhood social network for

inventors and neighbors in a constrained geospatial area.  Although Abhyanker believed he did not need permission by Fatdoor, he made the request to ensure there would be not dispute over his plans.  Fatdoor agreed that he could pursue his LegalForce/Nextdoor business.  After leaving Fatdoor, Inc. in the Fall of 2007, Abhyanker again began trying to acquire the Nextdoor.com domain around his ideas for a private neighborhood social network and restarted his LegalForce.com website, before discovering that his trade secrets had been misappropriated.

### G.      The Subsequent History Of Fatdoor and LegalForce, Inc.

127.     On or around April 2, 2008, Fatdoor, Inc. was renamed Center'D Corporation. Center'D Corporation is still in existence today.  On or around August 2011, Google acquired 46 patent applications and six international PCT applications that Abhyanker had assigned to Fatdoor/Center'D.  Abhyanker is listed as the lead inventor on each of those applications.  Those patent applications and the technology acquired by Google relate to Abhyanker's Fatdoor concept.  They do not relate to or cover Abhyanker's separate and distinct LegalForce/Nextdoor concept.  The trade secrets that form the basis for Abhyanker's trade secret misappropriation claim in the instant pleading were never assigned, purchased, or transferred to Fatdoor/Center'D or Google—they remain owned by Abhyanker personally.

128.     Since the patent applications acquired by Google, including Patent Application No. 11/603,442, only relate to the Fatdoor Concept and do not cover or relate to Abhyanker's LegalForce/Nextdoor concept, the patent applications do not disclose or reveal the trade secrets that form the basis for Abhyanker's trade secret misappropriation claim in the instant pleading. The trade secrets at issue in the instant pleading have never been publicly disclosed in published patent applications, issued patents, or anywhere else for that matter.

129.     After Fatdoor, Inc. changed its name to Center'D, it abandoned its usage of the Fatdoor mark.  When Center'D abondoned the use fo the Fatdoor mark, Abhyanker requested and received the approval of Center'D Board to begin using the Fatdoor name and logo in commerce. Abhyanker commenced doing so on or around April 15, 2008.

130.    LegalForce, Inc. subsequently went through an orderly wind-down in 2008 led by the same Fatdoor, Inc. counsel Daniel Hansen that drafted Abhyanker's February 1, 2007 assignment agreement on behalf of Drazan and Abhyanker, and its assets were purchased by Raj Abhyanker.  Those assets included the source code that made up the original LegalForce and Nextdoor concepts and Abhyanker's LegalForce and Nextdoor Trade Secrets.  All convertible debt notes including the $125,000 debt note to Mr. Warren Myer was assumed by Abhyanker in exchange for all assets in LegalForce, Inc. including the LegalForce and Nextdoor Trade Secrets. Abhyanker continued to work on trying to restart the Nextdoor private neighborhood social network based on his acquired trade secrets.

131.    In August 2011, Abhyanker filed a new private neighborhood social networking ecommerce patent application that has now received a notice of allowance.   In addition, Abhyanker again started trying to acquire the Nextdoor domain.

132.    In early 2010, Abhyanker spoke with Sood and informed him of his desire to restart the Nextdoor business and acquire rights to the Nextdoor domain.  Abhyanker also placed numerous bids in an effort to try to secure the Nextdoor.com domain in 2010.  However the Defendant was unsuccessful in bidding given that Sood, upon reason and belief, had disclosed the Abhyanker's bidding to Nextdoor.com.

133.    The original LegalForce, Inc. is not to be confused with the currently active LegalForce, Inc., which incorporated in or about March 2009.  This new venture is a separate and distinct entity formed by Abhyanker, with equity investment from Drazan and Hansen. LegalForce, Inc. currently owns the Trademarkia.com domain, and purchased rights to the LegalForce.com domain from Abhyanker.

**H.    Nextdoor.com's Founders Janakiraman And Tolia Were EIRs At Benchmark Capital**

134.    Nextdoor.com's founders are Janakiraman and Nirav Tolia ("Tolia").  As detailed above, Abhyanker had previously disclosed Abhyanker's Trade Secrets to Benchmark Capital. Abhyanker discovered that both Janakiraman and Tolia were EIRs at Benchmark Capital at the time Abhyanker disclosed his trade secrets to Benchmark Capital.

135.     On information and belief, Benchmark Capital disclosed Abhyanker's Trade Secrets to both Janakiraman and Tolia, who then proceeded to misappropriate and use Abhyanker's Trade Secrets as the foundation of Nextdoor.com.

**I.      Nextdoor.com, Inc. Founder Janakiraman's Secret Communications With Sood**

136.     In addition, one of the founders of Nextdoor.com, Janakiraman, had another source of inside information about Abhyanker's Trade Secrets.  In trying to ascertain exactly how Nextdoor misappropriated Abhyanker's Trade Secrets, Abhyanker discovered that Janakiraman and Sood, who Abhyanker had hired to work on the Nextdoor concept, both attended the University of California, Berkeley, had been friends and the university, and had remained friends and been in communication with each other at various times since 1995.

137.     When Abhyanker discovered that Sood and Janakiraman were friends, he confronted Sood and asked him about his relationship with Janakiraman.  Sood reluctantly admitted to knowing Janakiraman, but tried to downplay their relationship by saying that they have not really kept in touch over the years.  This turned out not to be true.  Through his own investigation, Abhyanker discovered that Janakiraman and Sood had stayed in touch, exchanging numerous messages as recently as October 28, 2012, a week before Nextdoor filed the instant lawsuit.

138.     Sood's dishonesty about his friendship with Janakiraman supports an inference that he wrongfully disclosed the LegalForce/Nextdoor Trade Secrets to Janakiraman, and then attempted to conceal his wrongdoing.

**J.      Sood Communicates With Prakash Janikiraman About Abhyanker's Trade Secrets**

139.     On or around the fall of 2010, Janakiraman and Nextdoor.com sent a survey to friends and family seeking feedback on the online neighborhood social networking concept that was misappropriated from Abhyanker.

140.     One of the recipients of the survey was Sood.  Sood completed and returned the survey, informing and/or reminding his long time friend Janakiraman and Nextdoor that he had

actually worked on Abhyanker's original Nextdoor concept and had been privy to Abhyanker's Trade Secrets.

141.   Upon information and belief, after completing the survey, Janikiraman spoke with Sood over a number of separate and distinct phone conversations and in person in which he discussed with Sood his knowledge and experience related to Abhyanker's Trade Secrets.  Upon information and belief, along the course of these conversations, Sood disclosed Abhyanker's Trade Secrets to Janakiraman and Nextdoor.  In addition, Janakiraman met in a number of social settings with Sood, and exchanged private messages over social networks including Facebook and Twitter with Sood with respect to Abhyanker's Trade Secrets.

142.   Tolia has admitted that in the course of these conversations, Janakiraman suggested the name "Nextdoor" to be used with the private neighborhood social network.  In addition, Tolia admitted that Janakiraman came up with the "key technologies" including neighborhood level privacy controls that Janakiraman misappropriated from Abhyanker's LegalForce/Nextdoor Trade Secrets through his conversations with Sood.  Specifically, in a Mercury News article on October 26, 2011, Tolia stated that "The key . . . is software developed by an early Google (GOOG) Maps employee that makes sure only people who live in a specific neighborhood are able to join its network -- giving users a level of privacy that sites like Facebook don't".   Janakiraman was the early Google (GOOG) Maps employee to whom Tolia referred.  An article by Liz Gannes from the Wall Street Journal's AllThingsd blog on November 11, 2011 clarified that "Tolia said he was referring to Prakash Janakiraman, his co-founder at Fanbase and Nextdoor who formerly worked at Google on Maps".  These disclosures were material breaches of Sood's Independent Contractor Agreement and Non-Disclosure Agreement.

143.   Despite knowing that Sood had worked on Abhyanker's proprietary and trade secret LegalForce/Nextdoor concept as disclosed in the survey that Sood filled, Janakiraman and Nextdoor encouraged Sood to improperly disclose Abhyanker's trade secret information and proceeded to use the information as the foundation of their business.

144.     On information and belief, as Entrepreneurs in Residence at Benchmark, Janakiraman and Tolia had access to confidential pitches that were delivered to Benchmark.

**K.     Nextdoor.com, Inc. Prototypes Abhyanker's LegalForce/Nextdoor Concept In Abhyanker's Neighborhood**

145.     In or around October 2010, Nextdoor.com set up a website at loreleineighbors.reallifelabs.com to surreptitiously prototype Abhyanker's online neighborhood social networking concept under the temporary name "Neighborly."  As Nextdoor.com stole the concept from Abhyanker, it is not surprising that Tolia admits that Janakiraman came up with the idea to prototype the Nextdoor.com website in the Lorelei neighborhood, the same Lorelei neighborhood referenced in Abhyanker's LegalForce/Nextdoor Trade Secrets.

146.     When Abhyanker conceived and developed the Nextdoor concept, his offices were located in Palo Alto, California and Menlo Park, California.  The Lorelei neighborhood abutted Abhyanker's Menlo Park office.  Given the neighborhood's proximity to Abhyanker, and its high concentration of technology savvy inventors and neighborhood activism, Abhyanker selected the Lorelei neighborhood to test his trade secret Nextdoor concepts and execution plans.

147.     In stark contrast, Nextdoor.com had no connection or reason to prototype the misappropriated concept in the Lorelei neighborhood.  Not only is Nextdoor based in San Francisco, but all the individuals at Nextdoor involved in misappropriating Abhyanker's Nextdoor concept also live in San Francisco — approximately 30 miles from Menlo Park.  There are many hundreds of neighborhoods in the San Francisco Bay Area, a number of which have high concentrations of inventors.  It is clear that Nextdoor.com did not randomly choose the Lorelei neighborhood, but rather chose the Lorelei neighborhood because it was the neighborhood selected by Abhyanker in his trade secret Nextdoor concepts and execution plans that Nextdoor misappropriated. Abhyanker had already prototyped his own Nextdoor and Fatdoor concepts in Lorelei, as it was one of the three early prototype neighborhoods for Abhyanker's Trade Secrets.  Accordingly, Nextdoor.com was able to use the neighborhood's familiarity with the concept to obtain a competitive advantage.

148.   Nextdoor.com's brazen decision to prototype the concept it stole from Abhyanker in Abhyanker's own Lorelei neighborhood is irrefutable evidence that Nextdoor misappropriated Abhyanker's trade secret information.  Moreover, given Janakiraman's long-time friendship with Sood and close association with Benchmark Capital, it is clear that Nextdoor had the connections and means for accessing and stealing Abhyanker's Trade Secrets.

149.   On or around March 2011, according to Nextdoor.com's own Complaint, it changed its corporate name from Fanbase Inc. to Nextdoor.com, Inc.

150.   Finally, on or around October 26, 2011, Nextdoor.com publicly launched the www.nextdoor.com online neighborhood social network that uses and was built on the trade secrets misappropriated from Abhyanker.

**L.   After Sood's Wrongful Disclosure, Nextdoor.com Adopts The Stolen Nextdoor Name**

151.   In or around January 2011, shortly after Sood completed and returned the survey and Nextdoor.com prototyped the misappropriated concept in Abhyanker's neighborhood, Nextdoor.com attempted to register the www.nextdoor.com domain name.  Sood was aware that Abhyanker had been bidding and trying to purchase the www.nextdoor.com domain name since late 2006.  In fact, Sood was copied on many emails relating to Abhyanker's attempts to purchase the domain name.

152.   Sood proceeded to disclose confidential information relating to Abhyanker's attempts to purchase the domain name to Janakiraman and Nextdoor.com, which prompted and enabled them to outbid Abhyanker and register the nextdoor.com domain name, thereby preventing Abhyanker from rightfully obtaining the domain name.

**M.   The Counterdefendants' Misappropriation And Wrongful Acts Lead To Litigation**

153.   Left with no recourse against Counterdefendants' willful misappropriation, on November 10, 2011, Abhyanker filed a complaint in the Superior Court of California for the County of Santa Clara, which was instituted as Case No. 1-11-CV-212924.  In that case,

Abhyanker asserted claims for trade secret misappropriation, breach of contract, and additional torts.

154.     Shortly after filing the state court action, Abhyanker also filed two third-party opposition proceedings against Nextdoor's trademark application for the NEXTDOOR mark with the U.S. Patent and Trademark Office's Trademark Trial and Appeal Board ("TTAB"). The two third-party oppositions on the basis of priority and fraud were filed on January 20, 2012 and February 9, 2012, and were instituted as Opposition No. 91203462 and Opposition No. 91203762, respectively.

155.     Abhyanker chose to dismiss his state court action *without prejudice* on February 8, 2012. By dismissing the state court action, Abhyanker's resources were freed and directed towards litigating the TTAB oppositions, which he did with some success.   In or about September 15, 2012, Nextdoor.com's motions to dismiss the TTAB oppositions were defeated and formal discovery was to commence before TTAB to determine whether the Nextdoor.com should be denied federal trademark rights because of fraud on the United States Trademark Office.

156.     However, on November 5, 2012, Nextdoor filed the instant lawsuit seeking declaratory relief regarding trademark infringement and cyberpiracy. As a result, the TTAB oppositions have been suspended pending the disposition of this lawsuit. Back in Court as a result of the instant lawsuit, Abhyanker now reasserts his claim for trademark misappropriation against Nextdoor.com and the other counterdefendants.

157.     Counterdefendants have attempted to mischaracterize Abhyanker's allegations in prior pleadings as admissions that Abhyanker does not own the trade secrets that are the subject of Abhyanker's trade secret misappropriation counterclaim in the instant lawsuit. However, the trade secrets that form the basis for the misappropriation counterclaim in the instant lawsuit are owned by Abhyanker personally and were never assigned, purchased, or otherwise transferred to Fatdoor, Center'D, or Google.

158.    More specifically, and as discussed in paragraph 113 above, Abhyanker is the lead inventor on 46 patent applications and six international PCT patent applications that Abhyanker assigned to Fatdoor, Inc. and that were eventually purchased by Google.  The subject matter of these patent applications relate generally to geo-spatial database, architecture, and application technologies associated with neighborhood communication and social networking.   But the trade secrets that form the basis of the instant lawsuit are not disclosed in those patent applications and were not assigned to Fatdoor or purchased by Google; rather, Abhyanker owns them personally. In fact, this is made clear in Paragraph 23 of Abhyanker's First Amended Complaint in the state court action in which he alleges, when discussing the misappropriation, that only "***some*** of which are now owned by Google … through its acquisition of the … patent portfolio."  To underscore this point, nowhere in any of Abhyanker's prior pleadings in the state court action or TTAB oppositions are there any allegations or statement that "any and all" trade secrets relating to the Abhyanker's private online neighborhood social network were assigned to Fatdoor or purchased by Google.

**N.    Abhyanker's Trademark Rights in The NEXTDOOR Mark**

159.    On December 28, 2011, Abhyanker filed a trademark application, Serial No. 85504896 (the '"896 application"), with the United States Patent and Trademark Office with the for the standard character mark NEXTDOOR.  The application is for goods and services in International Category 42, and United States Categories 100 and 101.

160.    The goods and services listed on the application include:  "Computer services in the nature of customized web pages featuring user-defined information, personal profiles and information, namely, providing location tagged profiles using spatial and geo-coded information through the Internet."  The listed goods and services also include "computer services for creating an on-line community for registered users, students, families; computer services, namely, hosting online web facilities for others for organizing and conducting online meetings, gatherings, and interactive discussions; computer services in the nature of customized web pages featuring user-defined information, personal profiles and information; computer services, namely, creating an

on-line community for registered users to participate in discussions, get feedback from their peers, form virtual communities, and engage in social networking."

161.     Abhyanker used the NEXTDOOR word mark in commerce in connection with goods and services involving the use proprietary geo-spatial software and technology, including but not limited to geo-spatial databases, architecture, social networking, friend grouping, real time updates, feed aggregation, spheres of influence, application technologies associated with aggregate, filtering of relevant feeds across multiple networks, filtering conversations across cross group interactions, providing of in depth conversations through a social graph, editable user pages, community governance, neighborhood communication and geo-spatial social networking since as early as October 25, 2006.

162.     In addition, Abhyanker used the NEXTDOOR mark on his websites eDirectree. com, Nextyard.com, Nextlawn.com, Fatdoor.us and later EatBid. com since at least as early as April 15, 2008.

163.     Abhyanker expended considerable time, effort, and financial resources building and marketing the NEXTDOOR mark and brand. As a result thereof, the NEXTDOOR mark, and the goodwill associated therewith are of inestimable value to Abhyanker.

**O.     Abhyanker's Trademark Rights In The FATDOOR Marks**

164.     Abhyanker began using the Fatdoor name as early as April 15, 2008, the day after Fatdoor, Inc. changed its name to Center'D Corporation and abandoned its use of the Fatdoor names, logos, and other intellectual property.

165.     On August 22, 2013, Abhyanker filed a trademark application, for the standard character mark FATDOOR, Serial No. 86045328.  The application lists goods and services in International Category 42, as well as United States Categories 100 and 101.

166.     The goods and services listed on the application include:  "Computer services in the nature of customized web pages featuring user-defined information, personal profiles and information, namely, providing location tagged profiles using spatial and geo-coded information

through the Internet; Computer services, namely, providing a specialized search engine for finding personal, geographical and business data on a global network."

167.    The date of first use in commerce listed on the Registration is April 15, 2008.

168.    Abhyanker owns the federal registration for a logo mark for FATDOOR GET TO KNOW YOUR NEIGHBORS, Registration No. 4287987.  The registration is for goods and services in International Category 42, as well as United States Categories 100 and 101.

169.    The registration lists goods and services including:  "Computer services in the nature of customized web pages featuring user-defined information, personal profiles and information, namely, providing location tagged profiles using spatial and geo-coded information through the Internet; Computer services, namely, providing a specialized search engine for finding personal, geographical and business data on a global network…."

170.    The date of first use in commerce listed on the Registration is  April 15, 2008.

171.    Abhyanker has been and continues to use the word mark FATDOOR and the design mark FATDOOR GET TO KNOW YOUR NEIGHBORS (collectively known as the "FATDOOR Marks") in commerce in connection with goods and services involving the use proprietary geo-spatial software and technology, including but not limited to geo-spatial databases, architecture, social networking, friend grouping, real time updates, feed aggregation, spheres of influence, application technologies associated with aggregate, filtering of relevant feeds across multiple networks, filtering conversations across cross group interactions, providing of in depth conversations through a social graph, editable user pages, community governance, neighborhood communication and geo-spatial social networking since as early as April 15, 2008.

172.    For example, Abhyanker used the FATDOOR Marks along with the NEXTDOOR mark on his websites eDirectree. com, Nextyard.com, Nextlawn.com, Fatdoor.us and later EatBid. com at least as early asApril 15, 2008.

173.    Abhyanker has expended considerable time, effort, and financial resources building and marketing the FATDOOR Marks and brand. As a result thereof, the FATDOOR Marks, and the goodwill associated therewith, are of inestimable value to Abhyanker.

[PROPOSED] SECOND AMENDED
ANSWER & COUNTERCLAIM
(case no. 3:12-cv-05667-EMC)

P.    **Nextdoor.com's Infringing Trademark Application**

174.    On or around February 8, 2011, Nextdoor (still called Fanbase at the time) filed a federal trademark application for the standard character mark NEXTDOOR with the United States Patent and Trademark Office, Serial No. 85236918 (the "Infringing Application").

175.    The Infringing Application was filed as a 1(b) intent-to-use application indicating that Nextdoor had not used the NEXTDOOR mark in commerce as of the filing of the application. The Infringing Application was filed on February 8, 2011.

176.    The application includes goods and services in International Category 42, and Unites States Categories 100 and 101.  The goods and services listed in the application include: "Computer services, namely, online non-downloadable software which allows users to create on-line communities related to shared geographic boundaries, common interests, and local events and activities."  Also listed in the application is "computer software providing a communications platform enabling users to create private networks and online communities based on geographic locations; and software to enable uploading, posting, showing, displaying, tagging, blogging, sharing or otherwise providing electronic media or information over the Internet or other communications network."

177.    There has been and continues to be actual confusion between Netxdoor.com's use of the NEXTDOOR name and mark with Abhyanker's Nextdoor concept and mark as well as Abhyanker's FATDOOR Marks and concept.

178.    Upon information and belief, Nextdoor.com was well aware of Abhyanker's NEXTDOOR mark prior to filing the its own application for the NEXTDOOR mark, and selected the NEXTDOOR mark with the specific intent to create confusion.

179.    On October 17, 2012, the United States Patent and Trademark Office suspended Abhyanker's '896 trademark application for the NEXTDOOR mark, pending the resolution of opposition proceedings in the TTAB.

### O.  Nextdoor.com, Inc. Knew Of Abhyanker's Rights In The Nextdoor/Fatdoor Names Prior To Filing Its Federal Trademark Application For NEXTDOOR

180.     The Nextdoor and Fatdoor concepts, business ideas, trade secrets, and the NEXTDOOR mark were developed by Abhyanker on or around August 2005 over a year prior to his employment with Fatdoor, Inc.

181.     Abhyanker also used the NEXTDOOR mark to identify a software application intended to assist neighbors around Abhyankder's residence to organize, communicate, and network, on or aroundAugust 2005.  The software was created in conjunction with public elections in the city of Cupertino, California on or about August 2005, in which Abhyanker was a candidate for office with the City Council. This software application continues to be a publicly accessible in various improved forms up and until the filing of this suit.

182.     Upon information and belief, Tolia had access to Abhyanker's confidential material including the NEXTDOOR mark, business ideas, and trade secrets relating to the Nextdoor/Fatdoor either at Benchmark's offsite meeting and/or through Tolia's interactions with Harvey, Taylor and/or Norris while working as an EIR at Benchmark on or before the first week of September 2007.  On information and belief, Tolia then used this information to develop the Fanbase.com and Nextdoor.com websites.

183.     On information and belief, on or about February 7, 2011, Nextdoor, via its authorized representative, co-founder and CEO Nirav Tolia, knowingly made a false and fraudulent statement and declaration in the infringing application wherein Nextdoor falsely claimed, "he/she believes the applicant to be the owner of the trademark/service mark sought to be registered, or, if the application is being filed under 15 U. S. C. Section 1051(b), he/she believes applicant to be entitled to use such mark in commerce; to the best of his/her knowledge and belief no other person, firm, corporation, or association has the right to use the mark in commerce, either in the identical form thereof or in such near resemblance thereto as to be likely, when used on or in connection with the goods/services of such other person, to cause."

184.    At the time Nextdoor and Tolia made the statement referred to above, Nextdoor and Tolia knew of Abhyanker's prior use of the NEXTDOOR mark in connection with the goods and services.

185.    The false and fraudulent declaration referred to above with respect to the infringing application was made by Nextdoor and Tolia with actual knowledge of its falsity and was not made on information and belief.  Instead, it was made by a person or entity which knew or should have known the same was false and fraudulent.

186.    Nextdoor and Tolia thereby knowingly made a false, material misrepresentation of fact in connection with the infringing application.  On information and belief, the false and fraudulent statement was made with the intent to deceive the USPTO into granting the NEXTDOOR mark to Nextdoor (then called Fanbase).  The USPTO relied on the same when it acknowledged filing of the application and allowed it to proceed to publication in the Official Gazette.

As a result, Nextdoor knowingly perpetrated a fraud on the United States Patent and Trademark Office.  Mr. Abhyanker intends to pursue a fraud claim should the application mature into a registration.

### FIRST COUNTERCLAIM
### TRADE SECRET MISAPPROPRIATION
### (Against All Defendants)

187.    Abhyanker repeats, realleges and incorporates each and every allegation of the foregoing paragraphs, as though fully set forth in this cause of action.

188.    As detailed above in Paragraph 102, Abhyanker developed and owned trade secret information relating to the concept of an online neighborhood social network.

189.    Abhyanker's Trade Secrets derived independent economic value from not being known to the public or other persons who could obtain economic value from their disclosure or use.

190.    Abhyanker's Trade Secrets were also the subject of efforts that were reasonable under the circumstances to maintain their secrecy.  As detailed above, Abhyanker only disclosed

his Trade Secrets to Sood and Monsoon and Benchmark Capital pursuant to strict confidentiality agreements.

191.     Benchmark Capital misappropriated Abhyanker's Trade Secrets by using improper means to acquire and then disclose the Trade Secrets to Nextdoor.com and its founders in violation of its confidentiality agreement with Abhyanker and without Abhyanker's consent. Among other things, Benchmark fraudulently and intentionally misrepresented that it would maintain the confidentiality of Abhyanker's Trade Secrets when it had no intention of doing so and fraudulently and intentionally misrepresented that Benchmark Capital's use of Abhyanker's Trade Secrets would be limited solely to evaluation for investment purposes.  Benchmark Capital also improperly induced and encouraged Nextdoor.com and its founders to use Abhyanker's Trade Secrets.

192.     Sood and Monsoon misappropriated Abhyanker's Trade Secrets by using improper means to acquire and then disclose Abhyanker's Trade Secrets to Nextdoor.com and its founders in violation of the Independent Contractor Agreement and Non-Disclosure Agreement with Abhyanker and without Abhyanker's consent.  Among other things, Sood and Monsoon fraudulently and intentionally misrepresented that they would maintain the confidentiality of Abhyanker's Trade Secrets when they had no intention of doing so.  Sood and Monsoon also improperly induced and encouraged Nextdoor.com and its founders to use Abhyanker's Trade Secrets.

193.     Janakiraman and Nextdoor misappropriated Abhyanker's Trade Secrets by using improper means to acquire and then use Abhyanker's Trade Secrets as the foundation of their business.  Janakiraman and Nextdoor.com induced both Benchmark Capital and Sood and Monsoon to breach the confidentiality agreements and obligations to Abhyanker by persuading them to disclose Abhyanker's Trade Secrets to them.  Despite being fully aware of Benchmark Capital's, Sood's, and Monsoon's confidentiality obligations and agreements, Janakiraman and Nextdoor.com proceeded to use the Abhyanker's Trade Secrets to build their business.

194.     Counterdefendants' aforesaid misappropriation has caused and continues to cause Abhyanker damages and irreparably injury.  Moreover, Counterdefendants' aforesaid acts constitute willful and malicious misappropriation, thereby entitling Abhyanker to an award of exemplary damages.

**SECOND COUNTERCLAIM**
**TRADEMARK INFRINGEMENT**
**(Against Nextdoor.com)**

195.     Abhyanker repeats, realleges and incorporates each and every allegation of the foregoing paragraphs, as though fully set forth in this cause of action.

196.     Nextdoor.com's use of the NEXTDOOR mark is without the permission of Abhyanker.

197.     Nextdoor.com's use of the NEXTDOOR mark infringes on Abhyanker's rights in the common law rights in the FATDOOR word mark, and the registered FATDOOR GET TO KNOW YOUR NEIGHBOR mark.

198.     Nextdoor.com's use of the NEXTDOOR mark in interstate commerce is likely to cause, and has caused, confusion, deception, and mistake by creating the false and misleading impression that Nextdoor.com's services are provided or distributed by Abhyanker, associated or connected with Abhyanker and/or his Fatdoor concepts or have the sponsorship, endorsement, or approval of Abhyanker, in violation of 15 U.S.C. §1114.

199.     As a direct and proximate result of Nextdoor.com's misconduct, Abhyanker has been, and will continue to be irreparably harmed, injured and damaged, and such harm will continue unless enjoined by this Court.

200.     As a direct and proximate result of Nextdoor.com's misconduct, Abhyanker has suffered and is entitled to monetary relief in an amount not yet determined.

201.     Abhyanker is informed and believes, and on that basis alleges, that Nextdoor.com's misconduct has been knowing, deliberate and willful.

**THIRD COUNTERCLAIM**
**INFRINGEMENT OF UNREGISTERED TRADEMARK**
**(Against Nextdoor.com)**

202.     Abhyanker repeats, realleges and incorporates each and every allegation of the foregoing paragraphs, as though fully set forth in this cause of action.

203.     Nextdoor.com's use of the NEXTDOOR mark infringes on Abhyanker's common law rights in the NEXTDOOR and FATDOOR Marks, in violation of 15 U.S.C. §1125.

204.     Nextdoor.com's unauthorized use of Abhyanker's marks in interstate commerce is likely to cause, and has caused, confusion, deception, and mistake by creating the false and misleading impression that Nextdoor.com's products and services are provided or distributed by Abhyanker, associated or connected with Abhyanker and/or his Nextdoor and Fatdoor concepts, or have the sponsorship, endorsement, or approval of Abhyanker.

205.     Nextdoor.com's misconduct resulting in such likelihood of confusion, deception, and mistake will continue unless enjoined by this Court.

206.     As a direct and proximate result of Nextdoor.com's misconduct, Abhyanker has been, and will continue to be irreparably harmed, injured and damaged, and such harm will continue unless enjoined by this Court.

207.     As a direct and proximate result of Nextdoor.com's misconduct, Abhyanker has suffered and is entitled to monetary damages in an amount to be determined at trial.

**FOURTH COUNTERCLAIM**
**CALIFORNIA UNFAIR COMPETITION**
**(Against Nextdoor.com)**

208.     Abhyanker repeats, realleges and incorporates each and every allegation of the foregoing paragraphs, as though fully set forth in this cause of action.

209.     By the acts described herein, Counterdefendants have engaged in unlawful and unfair business practices that have injured and will continue to injure Abhyanker in its business and property, in violation of California Business and Professions Code § 17200, *et seq*.

210.     Counterdefendants' acts alleged herein have causes monetary damages to Abhyanker in an amount to be proven at trial, and have caused and will continue to cause,

38          [PROPOSED] SECOND AMENDED
            ANSWER & COUNTERCLAIM
            (case no. 3:12-cv-05667-EMC)

irreparable injury to Abhyanker and its business, reputation, and trademarks, unless and until Counterdefendants are permanently enjoined by this Court.

211.    As a direct and proximate result of Counterdefendants' conduct alleged herein, Counterdefendants have been unjustly enriched and should be ordered to disgorge any and all profits earned as a result of such unlawful conduct.

## PRAYER FOR RELIEF

WHEREFORE, Abhyanker prays for judgment against Counterdefendants as follows:

1. That Nextdoor.com take nothing by its Complaint;

2. That Nextdoor.com's Complaint be dismissed with prejudice;

3. That Abhyanker be awarded his costs of suit and attorneys' fees;

4. That all Counterdefendants be preliminarily and permanently enjoined from further disclosing or using Abhyanker's Trade Secrets, as well as Abhyanker's confidential and proprietary non-trade secret information, including, but not limited to, the nextdoor.com website and domain name;

5. That counterdefendant Nextdoor.com be enjoined from the practice of hiring and/or placing EIRs that the fund intends to invest in, and which have not yet come up with a public business plan for their venture, to listen in on or participate in any way in meetings involving other entrepreneurs pitching ideas to the fund in an area of technology specialization that the EIRs intend to start a company of their own within and has not thought of or publicly released;

6. That the Court order Nextdoor.com to transfer the nextdoor.com domain name to Abhyanker and order and direct VeriSign, Inc., the domain name registry for the nextdoor.com domain name, to change the registrar of record for the nextdoor.com domain name to a registrar selected by Abhyanker;

7. That Abhyanker recover damages for his actual loss caused by the trade secret misappropriation;

8.  That Abhyanker recover for the unjust enrichment caused by Counterdefendants' trade secret misappropriation;

9.  That Abhyanker recover a reasonable royalty for misappropriation of his trade secrets to the extent neither damages nor unjust enrichment are provable;

10. That Abhyanker recover exemplary damages for trade secret misappropriation;

11. That the Court grant injunctive relief enjoining Nextdoor.com, its principals, officers, directors, employees, agents, representatives, and all others acting in concert with it, from:

    a.  Using the NEXTDOOR mark, or terms, marks, symbols or indicia confusingly similar to Abhyanker's NEXTDOOR and FATDOOR Marks in connection with the creation, production, provision, advertisement, promotion, distribution, offering for sale, or selling of online social media platforms and/or any websites; and

    b.  Performing any acts or using any service marks, trademarks, names, words or phrases that are likely to confuse, deceive, or otherwise mislead the trade or public into believing that Abhyanker's businesses and Nextdoor.com are one and the same or are in some way connected, that Abhyanker is a sponsor of Nextdoor.com, or that Nextdoor.com's goods or services originate or are associated with Abhyanker and/or his Nextdoor and Fatdoor concepts;

12. That the Court order Nextdoor.com to abandon all NEXTDOOR trademark applications;

13. That the Court order Nextdoor.com to pay Abhyanker monetary damages for the harm resulting from infringement of Abhyanker's marks, in an amount to be determined at trial;

14. That the Court order Abhyanker's trademark damages be trebled and Nextdoor.com to pay Abhyanker's reasonable attorneys' fees on the basis that this is an exceptional case;

15. That the Court order Nextdoor.com to pay Abhyanker restitution for violation of California Business and Professions Code section 17200, et seq.;

16. That the Court order such further relief as it deems just and proper; and

17. That this Court retain jurisdiction of this action for the purpose of enabling Abhyanker to apply to the Court at any time for such further orders and interpretation or execution of any order entered in this action, for the modification of any such order, for the enforcement or compliance therewith and for the punishment of any violations thereof.


## DEMAND FOR A JURY TRIAL

Abhyanker hereby demands a trial by jury on both Nextdoor.com's claims in the Complaint and his Counterclaims.


Dated: December 5, 2013                    Respectfully submitted,

                                           LEGALFORCE RAJ ABHYANKER, P.C.

                                           /s/ Bruno W. Tarabichi
                                           Bruno W. Tarabichi
                                           Heather R. Norton
                                           Roy Montgomery
                                           Attorneys for Defendant
                                           Raj Abhyanker

41        [PROPOSED] SECOND AMENDED
          ANSWER & COUNTERCLAIM
          (case no. 3:12-cv-05667-EMC)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT B

NOTICE RE 2ND AMENDED ANSWER
CASE NO. 3:12-cv-05667-EMC

1   **BRUNO W. TARABICHI**, CA State Bar No. 215129
    bruno@legalforcelaw.com
2   **HEATHER R. NORTON**, CA State Bar No. 257014
    heather@legalforcelaw.com
3   **ROY MONTGOMERY**, CA State Bar No. 279531
    roy@legalforcelaw.com
4   **LEGALFORCE RAJ ABHYANKER, P.C.**
    1580 W. El Camino Real, Suite 13
5   Mountain View, California 94040
    Telephone:  650.965.8731
6   Facsimile:  650.989.2131

7

    Attorneys for Defendant
8   Raj Abhyanker

9                  UNITED STATES DISTRICT COURT

10              NORTHERN DISTRICT OF CALIFORNIA

11                   SAN FRANCISCO DIVISION

12  NEXTDOOR.COM, INC., a Delaware          Case No. 3:12-cv-05667-EMC
    corporation,
13                                          **DEFENDANT RAJ ABHYANKER'S**
                   Plaintiff,               **[PROPOSED] SECOND AMENDED**
14                                          **ANSWER AND COUNTERCLAIMS FOR**
           vs.
15                                          1.  **TRADE SECRET**
    RAJ ABHYANKER, an individual,               **MISAPPROPRIATION**
16                                          2.  **TRADEMARK INFRINGEMENT**
                   Defendant.               ~~3.~~  <span style="color:green">**INFRINGEMENT OF UNREGISTERED**</span>
17                                              <span style="color:green">**TRADEMARK**</span><span style="color:red">~~FALSE DESIGNATION~~</span>
    _____         <span style="color:red">~~OF ORIGIN~~</span>
18  RAJ ABHYANKER, an individual              <span style="color:red">~~4.~~</span><span style="color:green">3.</span><span style="color:red">~~PATENT INFRINGEMENT~~</span>
                                            <span style="color:red">~~5.~~</span><span style="color:green">4.</span>**CALIFORNIA UNFAIR**
19                 Counterclaimant,             **COMPETITION**

20         vs.                              **DEMAND FOR JURY TRIAL**

21  NEXTDOOR.COM, INC., a Delaware          Case Filed:  November 5, 2012
    corporation; PRAKASH                    Judge:       Honorable Edward M. Chen
22  JANAKIRAMAN, an individual;
    BENCHMARK CAPITAL PARTNERS,
23  L.P., a Delaware limited partnership;
    BENCHMARK CAPITAL
24  MANAGEMENT CO. LLC, a Delaware
    limited liability company; SANDEEP
25  SOOD, an individual; MONSOON
    ENTERPRISES, INC., a California
26  corporation, and DOES 1–50, inclusive;

27                 Counterdefendants.

28

Defendant Raj Abhyanker ("Abhyanker"), through his attorneys, hereby answers Plaintiff Nextdoor.com, Inc.'s ("Nextdoor.com") Complaint as follows:

### The Nature of the Action

1.      In response to paragraph 1, Abhyanker denies each and every allegation in paragraph 1.

2.      In response to paragraph 2, Abhyanker denies each and every allegation in paragraph 2.

3.      In response to paragraph 3, Abhyanker denies each and every allegation in paragraph 3.

4.      In response to paragraph 4, Abhyanker denies each and every allegation in paragraph 4.

5.      In response to paragraph 5, Abhyanker denies each and every allegation in paragraph 5.

### Parties

6.      In response to paragraph 6, Abhyanker responds that he lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 6 and, therefore, denies each and every allegation in paragraph 6.

7.      In response to paragraph 7, Abhyanker admits the allegations in paragraph 7.

### Jurisdiction and Venue

8.      In response to paragraph 8, Abhyanker denies that any conduct or omission giving rise to any claims against him has occurred.  Abhyanker further responds that Nextdoor.com's allegations in paragraph 8 are legal conclusions and jurisdictional allegations that do not require a response.

9.      In response to paragraph 9, Abhyanker denies that any conduct or omission giving rise to any claims against him has occurred.  Abhyanker further responds that Nextdoor.com's allegations in paragraph 9 are legal conclusions and jurisdictional allegations that do not require a response.

[PROPOSED] SECOND AMENDED
ANSWER & COUNTERCLAIM
(case no. 3:12-cv-05667-EMC)

10.     In response to paragraph 10, Abhyanker admits that he resides and conducts business in this judicial district and is subject to personal jurisdiction in this judicial district. Except as expressly admitted, Abhyanker denies each and every allegation in paragraph 10.

**Intradistrict Assignment**

11.     In response to paragraph 11, Abhyanker denies each and every allegation in paragraph 11.

**General Allegations**

12.     In response to paragraph 12, Abhyanker responds that he lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 12 and, therefore, denies each and every allegation in paragraph 12.

13.     In response to paragraph 13, Abhyanker responds that he lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 13 and, therefore, denies each and every allegation in paragraph 13.

14.     In response to paragraph 14, Abhyanker denies each and every allegation in paragraph 14.

15.     In response to paragraph 15, Abhyanker denies each and every allegation in paragraph 15.

16.     In response to paragraph 16, Abhyanker responds that he lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 16 and, therefore, denies each and every allegation in paragraph 16.

17.     In response to paragraph 17, Abhyanker denies each and every allegation in paragraph 17.

18.     In response to paragraph 18, Abhyanker responds that he lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 18 and, therefore, denies each and every allegation in paragraph 18.

19.     In response to paragraph 19, Abhyanker responds that he lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 19 and, therefore, denies each and every allegation in paragraph 19.

20.     In response to paragraph 20, Abhyanker responds that he lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 20 and, therefore, denies each and every allegation in paragraph 20.

21.     In response to paragraph 21, Abhyanker responds that he lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 21 and, therefore, denies each and every allegation in paragraph 21.

22.     In response to paragraph 22, Abhyanker admits that on, October 27, 2011, he sent an email to Nirav Tolia and that Nirav Tolia never responded to the email.  Abhyanker further states that the email speaks for itself.  Except as expressly admitted, Abhyanker denies each and every allegation in paragraph 22.

23.     In response to paragraph 23, Abhyanker admits that, on November 10, 2011, he filed Civil Action No. 1-11-CV-212924 in the Superior Court of California for the County of Santa Clara against Nextdoor.com and other defendants.  Abhyanker further responds that the pleadings on file in Civil Action No. 1-11-CV-212924 speak for themselves.  Except as expressly admitted, Abhyanker denies each and every allegation in paragraph 23.

24.     In response to paragraph 24, Abhyanker responds that the pleadings on file in Civil Action No. 1-11-CV-212924 speak for themselves.  Except as expressly admitted, Abhyanker denies each and every allegation in paragraph 24.

25.     In response to paragraph 25, Abhyanker admits that, on December 28, 2011, he filed U.S. Trademark Application Serial No. 85/504,896 for the NEXTDOOR standard character mark in connection with services in International Class 42 with the U.S. Patent and Trademark Office.  Except as expressly admitted, Abhyanker denies each and every allegation in paragraph 25.

26.     In response to paragraph 26, Abhyanker admits that he did not file a trademark application for the NEXTDOOR mark prior to December 28, 2011.  Except as expressly admitted, Abhyanker denies each and every allegation in paragraph 26.

27.     In response to paragraph 27, Abhyanker admits that he filed U.S. Trademark Application Serial Nos. 77/049,286 for FATDOOR and 77/049,854 for GET TO KNOW YOUR NEIGHBORS with the U.S. Patent and Trademark Office and that these two specific applications did not mature into registrations.  Except as expressly admitted, Abhyanker denies each and every allegation in paragraph 27.

28.     In response to paragraph 28, Abhyanker admits that, on February 28, 2012, he filed U.S. Trademark Application Serial No. 85/537,718 for the FATDOOR GET TO KNOW YOUR NEIGHBORS design mark with the U.S. Patent and Trademark Office.

29.     In response to paragraph 29, Abhyanker denies each and every allegation in paragraph 29.

30.     In response to paragraph 30, Abhyanker admits that he registered the nextdoor.cm domain name.  Abhyanker responds that he lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 30 and, therefore, denies each and every remaining allegation in paragraph 30.

31.     In response to paragraph 31, Abhyanker admits that he owns and controls the nextdoor.cm domain name.  Abhyanker responds that he lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 31 and, therefore, denies each and every remaining allegation in paragraph 31.

32.     In response to paragraph 32, Abhyanker responds that Exhibit A to the Complaint speaks for itself.  Except as expressly admitted, Abhyanker denies each and every allegation in paragraph 32.

33.     In response to paragraph 33, Abhyanker responds that Exhibit B to the Complaint speaks for itself.  Except as expressly admitted, Abhyanker denies each and every allegation in paragraph 33.

34.     In response to paragraph 34, Abhyanker responds that Exhibits C and D to the Complaint speak for themselves.  Except as expressly admitted, Abhyanker denies each and every allegation in paragraph 34.

35.     In response to paragraph 35, Abhyanker responds that Exhibit A to the Complaint speaks for itself.  Except as expressly admitted, Abhyanker denies each and every allegation in paragraph 35.

36.     In response to paragraph 36, Abhyanker responds that Exhibit B to the Complaint speaks for itself.  Except as expressly admitted, Abhyanker denies each and every allegation in paragraph 36.

37.     In response to paragraph 37, Abhyanker responds that Exhibit B to the Complaint speaks for itself.  Except as expressly admitted, Abhyanker denies each and every allegation in paragraph 37.

38.     In response to paragraph 38, Abhyanker responds that Exhibit B to the Complaint speaks for itself.  Except as expressly admitted, Abhyanker denies each and every allegation in paragraph 38.

39.     In response to paragraph 39, Abhyanker denies each and every allegation in paragraph 39.

40.     In response to paragraph 40, Abhyanker admits that, on or around February 9, 2012, he re-registered the nextyard.com and nextlawn.com domain names and that these two domain names pointed to a web server owned by Abhyanker.  Except as expressly admitted, Abhyanker denies each and every allegation in paragraph 40.

41.     In response to paragraph 41, Abhyanker denies each and every allegation in paragraph 41.

42.     In response to paragraph 42, Abhyanker admits that he registered the edirectree domain name on or around September 2007 and that, at some point, the domain name registration was not renewed.  Abhyanker responds that he lacks knowledge or information sufficient to form

a belief about the truth of the remaining allegations in paragraph 42 and, therefore, denies each and every remaining allegation in paragraph 42.

43.     In response to paragraph 43, Abhyanker responds that he lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 43 and, therefore, denies each and every allegation in paragraph 43.

44.     In response to paragraph 44, Abhyanker admits that, on or around February 9, 2012, he registered the edirectree.com domain name.  Except as expressly admitted, Abhyanker denies each and every allegation in paragraph 44.

45.     In response to paragraph 45, Abhyanker admits that, at one time, a web page accessible at the edirectree.com contained a social networking feature that was an extension of its previous "Friends" feature.  Except as expressly admitted, Abhyanker denies each and every allegation in paragraph 45.

46.     In response to paragraph 46, Abhyanker admits that, at one time, a web page accessible at the edirectree.com contained a "Friends" social networking feature.  Except as expressly admitted, Abhyanker denies each and every allegation in paragraph 46.

47.     In response to paragraph 47, Abhyanker denies each and every allegation in paragraph 47.

48.     In response to paragraph 48, Abhyanker denies each and every allegation in paragraph 48.

49.     In response to paragraph 49, Abhyanker admits that, on January 20, 2012, he filed a Notice of Opposition with the Trademark Trial and Appeal Board that was instituted as Opposition No. 91203462 and that, on February 9, 2012, he filed a Notice of Opposition with the Trademark Trial and Appeal Board that was instituted as Opposition No. 91203762.  Abhyanker further responds that the pleadings in these oppositions speak for themselves.  Except as expressly admitted, Abhyanker denies each and every allegation in paragraph 49.

50.     In response to paragraph 50, Abhyanker responds that the pleadings on file in Opposition Nos. 91203462 and 91203762 speak for themselves.  Except as expressly admitted, Abhyanker denies each and every allegation in paragraph 50.

51.     In response to paragraph 51, Abhyanker responds that, on or around February 7, 2012, he filed a Request for Dismissal Without Prejudice in Civil Action No. 1-11-CV-212924 in the Superior Court of California for the County of Santa Clara.  Except as expressly admitted, Abhyanker denies each and every allegation in paragraph 51.

52.     In response to paragraph 52, Abhyanker admits that his attorneys sent a letter to Nextdoor.com.  Abhyanker further responds that the letter speaks for itself.  Except as expressly admitted, Abhyanker denies each and every allegation in paragraph 52.

53.     In response to paragraph 53, Abhyanker responds that the pleadings on file in Opposition Nos. 91203462 and 91203762 speak for themselves.  Except as expressly admitted, Abhyanker denies each and every allegation in paragraph 53.

54.     In response to paragraph 54, Abhyanker denies each and every allegation in paragraph 54.

### Count I – Declaratory Judgment Under 28 U.S.C. § 2201

55.     In response to paragraph 55, Abhyanker refers to his responses to the allegations in paragraphs 1–54 and incorporates by reference such responses as if set forth in full herein.  In addition, Abhyanker denies that there is any basis for Nextdoor.com to bring a claim against him for declaratory relief.

56.     In response to paragraph 56, Abhyanker responds that he lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 56 and, therefore, denies each and every allegation in paragraph 56.

57.     In response to paragraph 57, Abhyanker responds that the pleadings on file in Opposition Nos. 91203462 and 91203762 speak for themselves.  Except as expressly admitted, Abhyanker denies each and every allegation in paragraph 57.

[PROPOSED] SECOND AMENDED
ANSWER & COUNTERCLAIM
(case no. 3:12-cv-05667-EMC)

58.     In response to paragraph 58, Abhyanker responds that the allegation in paragraph 58 is a legal conclusion that does not require a response.

59.     In response to paragraph 59, Abhyanker responds that he lacks knowledge or information sufficient to form a belief about what Nextdoor.com does or does not seek by way of declaration from this Court or the truth of the allegations in paragraph 59 and, therefore, denies each and every allegation in paragraph 59.

**Count II – Declaratory Judgment Under 28 U.S.C. § 2201**

60.     In response to paragraph 60, Abhyanker refers to his responses to the allegations in paragraphs 1–59 and incorporates by reference such responses as if set forth in full herein.  In addition, Abhyanker denies that there is any basis for Nextdoor.com to bring a claim against him for declaratory relief.

61.     In response to paragraph 61, Abhyanker responds that the pleadings on file in Opposition Nos. 91203462 and 91203762 speak for themselves.  Except as expressly admitted, Abhyanker denies each and every allegation in paragraph 61.

62.     In response to paragraph 62, Abhyanker responds that the allegation in paragraph 62 that an actual controversy exists is a legal conclusion that does not require a response.  With regard to the remaining allegations in paragraph 62, Abhyanker responds that he lacks knowledge or information sufficient to form a belief about what Nextdoor.com does or does not contend or the truth of the remaining allegations in paragraph 62 and, therefore, denies each and every remaining allegation in paragraph 62.

63.     In response to paragraph 63, Abhyanker responds that he lacks knowledge or information sufficient to form a belief about what Nextdoor.com does or does not seek by way of declaration from this Court or the truth of the allegations in paragraph 63 and, therefore, denies each and every allegation in paragraph 63.

**Count III – Violation of 15 U.S.C. § 1125(D)(1)**

64.     In response to paragraph 64, Abhyanker refers to his responses to the allegations in paragraphs 1–63 and incorporates by reference such responses as if set forth in full herein.  In

addition, Abhyanker denies that there is any basis for Nextdoor.com to bring a claim against him for violation of 15 U.S.C. § 1125(D)(1).

65.     In response to paragraph 65, Abhyanker admits that he registered the nextdoor.cm domain name.

66.     In response to paragraph 66, Abhyanker denies each and every allegation in paragraph 66.

67.     In response to paragraph 67, Abhyanker denies each and every allegation in paragraph 67.

68.     In response to paragraph 68, Abhyanker denies each and every allegation in paragraph 68.

69.     In response to paragraph 69, Abhyanker denies each and every allegation in paragraph 69.

70.     In response to paragraph 70, Abhyanker denies each and every allegation in paragraph 70.

71.     In response to paragraph 71, Abhyanker denies each and every allegation in paragraph 71.

### Count IV – Violation of 15 U.S.C. § 1125(A)

72.     In response to paragraph 72, Abhyanker refers to his responses to the allegations in paragraphs 1–71 and incorporates by reference such responses as if set forth in full herein.  In addition, Abhyanker denies that there is any basis for Nextdoor.com to bring a claim against him for violation of 15 U.S.C. § 1125(A).

73.     In response to paragraph 73, Abhyanker denies each and every allegation in paragraph 73.

74.     In response to paragraph 74, Abhyanker denies each and every allegation in paragraph 74.

75.     In response to paragraph 75, Abhyanker denies each and every allegation in paragraph 75.

[PROPOSED] SECOND AMENDED
ANSWER & COUNTERCLAIM
(case no. 3:12-cv-05667-EMC)

76.     In response to paragraph 76, Abhyanker denies each and every allegation in paragraph 76.

77.     In response to paragraph 77, Abhyanker denies each and every allegation in paragraph 77.

78.     In response to paragraph 78, Abhyanker denies each and every allegation in paragraph 78.

In response to Nextdoor.com's Prayer for Relief paragraphs A–G, Abhyanker denies that there is a basis for judgment against him, damages of any kind for any reason, declaratory relief, an order transferring any domain names, statutory damages, profits, prejudgment interest, punitive damages, attorneys' fees, litigation expenses, costs, liquidated damages, injunctive relief, penalties, restitution, or any other relief.  Abhyanker further prays that Nextdoor.com take nothing by its Complaint, that the Complaint be dismissed with prejudice, that Abhyanker be awarded his attorneys' fees and costs, and that the Court order such further relief as it deems just and proper.

## AFFIRMATIVE DEFENSES

By way of further answer, Abhyanker alleges and asserts the following defenses in response to the allegations contained in the Complaint.  In this regard, Abhyanker undertakes the burden of proof only as to those defenses that are deemed affirmative defenses by law, regardless of how such defenses are denominated in the instant Answer.  Abhyanker reserves the right to assert other affirmative defenses as this action proceeds based on further discovery, legal research, or analysis that may supply additional facts or lend new meaning or clarification to the claims contained in the Complaint.

## FIRST AFFIRMATIVE DEFENSE
## FAILURE TO STATE A CLAIM

79.     Plaintiff's claims are barred, in whole or in part, because the Complaint fails to state a claim upon which relief can be granted.

[PROPOSED] SECOND AMENDED
ANSWER & COUNTERCLAIM
(case no. 3:12-cv-05667-EMC)

**SECOND AFFIRMATIVE DEFENSE**
**LACK OF STANDING**

80.   Plaintiff's claims are barred, in whole or in part, because Plaintiff lacks standing.

**THIRD AFFIRMATIVE DEFENSE**
**UNCLEAN HANDS**

81.   Plaintiff's claims are barred, in whole or in part, by the doctrine of unclean hands.

**FOURTH AFFIRMATIVE DEFENSE**
**UNENFORCEABILITY**

82.   Plaintiff's claims are barred, in whole or in part, because Plaintiff's alleged trademark(s) are unenforceable.

**FIFTH AFFIRMATIVE DEFENSE**
**BREACH**

83.   Plaintiff's claims are barred, in whole or in part, because Plaintiff's use of its alleged trademark(s) is a breach of one or more agreements or duties of confidentiality.

**SIXTH AFFIRMATIVE DEFENSE**
**PRIOR TRADEMARK RIGHTS**

84.   Plaintiff's claims are barred, in whole or in part, because Abhyanker has prior and superior rights in the NEXTDOOR mark.

**SEVENTH AFFIRMATIVE DEFENSE**
**RIGHT TO ASSERT ADDITIONAL DEFENSES**

85.   Abhyanker expressly reserves the right to amend its Answer to assert additional affirmative defenses upon the revelation of more definitive facts by Plaintiff and upon Abhyanker taking of discovery and investigation of this matter.

## COUNTERCLAIMS

Pursuant to Rule 13 of the Federal Rules of Civil Procedure, Counterclaimant Abhyanker counterclaims against Nextdoor.com, Prakash Janakiraman, Sandeep Sood, Monsoon Enterprises, Inc., Benchmark Capital Partner, L.P., Benchmark Management Co. LLC, and Does 1 – 50 as follows:

## PARTIES

86.    Raj Abhyanker ("Abhyanker") is an individual and resident of Cupertino, California.

87.    Nextdoor.com, Inc. ("Nextdoor.com") is a Delaware corporation having its principal place of business at 110 Sutter Street, Suite 700, San Francisco, California, 94104.

88.    Prakash Janakiraman ("Janakiraman") is an individual and resident of San Francisco, California.  Janakiraman is the co-founder and Vice President, Engineering of Nextdoor.com.

89.    Sandeep Sood ("Sood") is an individual and resides in the San Francisco Bay Area.  Sood is the President of Monsoon.

90.    Monsoon Enterprises, Inc. ("Monsoon") is a California corporation having its principal place of business at 350 Frank Ogawa Plaza, Suite 100, Oakland, California 94612.

91.    Benchmark Capital Partners, L.P. is a Delaware limited partnership and Benchmark Capital Management Co. LLC is a Delaware limited liability company (hereinafter collectively referred to as "Benchmark Capital"), both having their principal place of business at 2480 Sand Hill Road, Suite 200, Menlo Park, California, 94025.

92.    Abhyanker is ignorant of the true names of the other Counterdefendants sued herein as Does 1 – 50, inclusive, and therefore, sues these Doe Counterdefendants by such fictitious names.  Abhyanker will amend his counterclaim to allege their true names and capacities when ascertained.

**JURISDICTION AND VENUE**

93.     This Court has supplemental jurisdiction over this counterclaim pursuant to 28

U.S.C. § 1367.

94.     Nextdoor.com and Counterdefendants are subject to personal jurisdiction in this

district due to their systematic and continuous contacts with this district.  In addition,

Nextdoor.com is subject to personal jurisdiction as a result of initiating this lawsuit in this district.

95.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391.

**FACTS RELEVANT TO ALL COUNTERCLAIMS**

A.     **Nextdoor.com And Benchmark Capital Have A History Of Stealing Information And Ideas**

96.     Nextdoor.com, Benchmark Capital, and the individuals associated with them have

a pattern and practice of building companies based on stolen information and engaging in

dishonest business practices at the expense of entrepreneurs.  By way of one example, Nirav Tolia

("Tolia"), one of the founders of Nextdoor.com, admitted that he had been helping Benchmark

evaluate confidential ideas of entrepreneurs since at least 2006.  For example, in 2006, at the

behest of Benchmark partner Peter Fenton, Tolia met with Jeremy Stoppelman, the founder of

Yelp, to discuss the Yelp concept.  At that meeting, Tolia stated that Stoppelman and Yelp had

misappropriated trademarks and the trade identity belonging to Tolia's former employer, eBay,

Inc.  However, Tolia proceeded with a positive investment recommendation and Benchmark

invested in Yelp.  Put simply, Benchmark has a pattern and practice of choosing to hire and retain

consultants and employees known to be dishonest and with questionable ethical standards,

placing such consultants and employees in positions to evaluate confidential ideas from

entrepreneurs, and then investing in companies having stolen intellectual property and assets.

97.     Benchmark is in the minority of venture capitalists that employ the practice of

Entrepreneurs-in-Residence ("EIRs").  *See, e.g.,* Boonsri Dickinson, <u>So What The Heck Is An</u>

<u>Entrepreneur In Residence Anyway?</u>, Business Insider, Mar. 15, 2012.  Benchmark's EIRs are

people who do not have a formulated business concept while they are in residence, but

Benchmark aims to invest in the EIRs if and when they do formulate a business concept. *See id.*

In the meantime, Benchmark allows the EIRs to listen in on pitches by outside startups pitching ideas to Benchmark. This highly unethical practice frequently leads to EIRs stealing ideas from the entrepreneurs who are pitching their ideas to Benchmark, and then forming companies to pursue such stolen ideas with funding from Benchmark. At least three of the co-founders of the Nextdoor.com were EIRs in formal and informal capacities at least since 2006 when the Abhyanker pitched his ideas to Benchmark.

98.     Moreover, Nextdoor.com has a history of failing on its own merits before succeeding in its present incarnation, which is based on misappropriated trade secrets. According to its own Complaint in this action, Nextdoor.com was founded in December 2007 as SPN, Inc. In January 2008, SPN, Inc. changed its name to Round Two, Inc. and launched an online almanac of professional and college athletes at www.fanbase.com. Round Two, Inc. later changed its name to Fanbase Inc. However, Fanbase Inc. and its Fanbase online almanac was a failure, and by Spring 2010, the Fanbase concept was abandoned. These failures set the stage for Fanbase Inc. and the persons associated with Fanbase to yet again build a company based on stolen information and misappropriated trade secrets. As detailed below, the failed company Fanbase Inc. renamed itself Nextdoor.com and radically shifted its business model from an online almanac for athletes to an online neighborhood social network after misappropriating Abhyanker's trade secrets.

**B.      Abhyanker Develops The LegalForce/Nextdoor Online Neighborhood Social Network Concepts and Trade Secrets**

99.     In or around September 2006, Abhyanker developed the concepts for two private online neighborhood social networks. The first concept, LegalForce.com, was to be an online private social network for neighborhood inventors, created by geocoding inventors and owners from public patent and trademark data. The second concept, Nextdoor.com, was to use the same source code as Legal Force.com to create a private social network for secure collaboration of neighbors in a geospatial area. Both the LegalForce.com and the Nextdoor.com websites were to be used by neighbors who registered with the site.

100.    In connection with his LegalForce and Nextdoor concepts, Abhyanker developed trade secrets including, but not limited to, key product details, algorithms, business plans, security algorithms, database structures, user interface designs, software code, product concepts, prototypes, methods, works of authorship, trademarks, white papers, and instrumentalities, information and plans.  Abhyanker's trade secret information pertains to, but is not limited to, software to ensure that the networks are limited to people within a certain neighborhood, which provides users with a level of privacy that sites like Facebook do not provide.  The trade secret information further pertains to email lists of inventive neighbors around Cupertino, California, inventive neighbors in the Lorelei neighborhood of Menlo Park, a private social network activation in a geospatially constrained area, a geo-spatial database, neighborhood member activation through postal mail, public/private geo-location constrained member groups, neighborhood member address verification, sharing of bulletin and wall communications between neighborhood resident users only, customer lists, architecture, social networking, friend grouping, providing real time updates, neighborhood-level privacy controls, feed aggregation, spheres of influence, application technologies, filtering relevant feeds across multiple networks, filtering conversations, adding contextual relevancy to private messages and connections in a geospatially constrained area, and connections across interactions in neighboring communities, providing in depth conversations through a social graph, community governance, bidding history of the Nextdoor.com domain, the activation of the Lorelei neighborhood as a prime testing neighborhood for communication, and neighborhood communication and geo-spatial social networking.  (Abhyanker's "Trade Secrets").  Abhyanker also conceived of using the name Nextdoor in connection with a neighborhood social networking website.  The name Nextdoor was chosen as the name of the new website based on Abhyanker's previous use of the name Nextdoor in connection with creating neighborhood walking maps in Cupertino City Council campaigns in 2005.

101.    The Lorelei neighborhood was chosen to prototype the LegalForce/Nextdoor concepts in part because of its high concentration of technology savvy inventors and

neighborhood activism.  The Lorelei neighborhood was not randomly chosen.   The selection of the Lorelei neighborhood was based a mathematical geocoding of all public addresses of inventors listed on U.S. patent applications during the years 2005 and 2006 in terms of calculated latitude and longitude coordinates, and simultaneously plotting this resultant data set on a map of the United States.   Then, a pushpin density map, a shaded area map, a symbol map, and a density map sequentially generated, analyzed, and narrowed based upon the resultant data set.

102.    The pushpin density map and the shaded area map were further divided based on inventor classification based on the classification index on United States patent applications in the software, privacy, database, and internet arts.   All data records were then again simultaneously geocoded to create the shaded area map.  The shaded area map was analyzed to determine regions in statistical probability reveal that there are the highest concentrations of technology savvy, forward thinking individuals intimately familiar with modern web technologies as of September 2006.  Menlo Park was identified to be a city having the right inventor dynamics of a city in which there is a strong likelihood of user adoption.

103.    From there, the Lorelei neighborhood of Menlo Park (on Lorelei Street) was further narrowed careful analysis of the data, as it contained the right attributes for potential LegalForce & Nextdoor users based on an analysis of neighborhood sophistication, and its proximity to Abhyanker's Menlo Park office.  At less than .1 miles away from Abhyanker's office in Menlo Park at 4400 Bohannan St, Menlo Park, the Lorelei neighborhood had the right characteristics as being a neighborhood in which there exists a strong likelihood of user acceptance and adoption of new web concepts challenging traditional forms of neighborhood communication, and it was walking distance away.

C.    **Abhyanker Hires Sood To Work On His Trade Secret LegalForce/Nextdoor Concept**

104.    Abhyanker formed a new corporation LegalForce, Inc. through the law firm of Fenwick & West in or around May 2006.  LegalForce, Inc. owned the assets of the original LegalForce.com and Nextdoor.com technology.   On or around September 21, 2006, Abhyanker hired Sandeep Sood and his firm Big Circle Media (now called Monsoon) to provide software and

website development services for the LegalForce and Nextdoor concepts.  Before disclosing his

concepts and Trade Secrets, Abhyanker required Sood and Big Circle Media to execute an

Independent Contractor Agreement and Non-Disclosure Agreement, which were executed on

September 21, 2006.  These Agreements required Sood and Big Circle to keep the

LegalForce.com and Nextdoor.com concepts and all accompanying details and work product

relating to it confidential.

105.    Between August 21, 2005 and June 15, 2006, Abhyanker worked to get a

prototype Nextdoor website built along with his business partner and assistant Babar Rana

("Rana").  During this period, Rana created screenshots and wireframes of the Nextdoor concept

using PowerPoint.  See Exhibits A and B, attached hereto.  The screenshots and wireframes

included the name "Nextdoor."  There were two mockup images of the Nextdoor concept

prepared by Rana during this time period.  The first mockup image showed a photograph of Rana,

with a personal profile wall feed from neighbors who provided comments on Rana's wall.  A

search area box read "search neighborhood."  The word "Nextdoor" was clearly shown in the

upper, left-hand side of the screenshot. A map was shown in the screenshot illustrating the

location of Rana's hypothetical home and images indicating which neighbors had and had not

joined the neighborhood surrounding Rana's home.

106.    The second mockup image of the Nextdoor concept prepared by Rana between on

or about August 21, 2005 and June 15, 2006 also visibly and clearly showed the name

"Nextdoor" in the upper, left-hand side of the site as well.  A message appeared on that mockup

stating, "[g]et to know your neighbors."  Abhyanker's home was pictured on the map, along with

photos of Abhyanker's family and next door residential and business neighbors visible on a map.

107.    These two mockup images of the Nextdoor concept were shared, pursuant to an

oral confidentiality agreement, on or around June 22, 2007, between Abhyanker and Benchmark.

The Benchmark members with whom the Nextdoor concept was shared were Kevin R. Harvey

("Harvey"), and Peter Fenton ("Fenton"), both of whom are General Partners of Benchmark

Capital Partners VII, L. P., equity holders in Benchmark Capital Management Co. VII LLC, and through the fund, later became equity holders of Nextdoor. com, Inc.

108.   Abhyanker attempted to purchase the Nextdoor.com domain names multiple times, starting in 2006.  However, the domain name was not for sale, and Abhyanker's attempts to purchase it failed.  Accordingly, Abhyanker purchased Nextyard.com and Nextlawn.com domains on or around October 20, 2006 to serve as placeholders for the Nextdoor.com website.  Following the purchase of Nextyard.com and Nextlawn.com, Abhyanker continued his attempts to purchase the Nextdoor.com domain name.

**D.    Abhyanker Forms Fatdoor, Inc.**

109.   During Abhyanker's development of the LegalForce.com and Nextdoor.com websites, he also originated a new concept based on a Wikipedia-like public database of neighbor profiles that could be edited and enhanced to provide a "search" and "discover" functionality as contrasted with a sign-up social network.  Abhyanker named this new functionality "Fatdoor.com."  Abhyanker first disclosed this idea to Jeffrey Drazan, an equity investor in LegalForce on or around October 2006.

110.   Jeffrey Drazan recommended that Abhyanker carve out IP related to Fatdoor from LegalForce and Nextdoor, and form and raise money for a new corporation to be called Fatdoor, Inc.  Abhyanker also disclosed the concept to Sandeep Sood, who agreed it would be best to start a separate venture from LegalForce and Nextdoor to pursue the Fatdoor concept.

111.   Sandeep Sood charged and billed $4,185 for Fatdoor consulting services, separate from his work on LegalForce and Nextdoor, on or about November 12, 2006.  This amount was paid by Fatdoor, Inc.  The development of the LegalForce and Nextdoor website, the cost of which totaled $15,000, remained separate and was paid by Abhyanker and LegalForce, Inc. after the formation of Fatdoor using non-Fatdoor bank accounts and checks.

112.   Based on Drazan's recommendation, on or around October 25, 2006, Abhyanker put his LegalForce and Nextdoor concepts on hold to found and pursue Fatdoor.com, around this new and separate idea for Fatdoor.  To ensure that the $150,000 in convertible note holders

backing the LegalForce, Inc. venture that funded the development of both LegalForce.com and Nextdoor would be protected, Drazan recommended an attorney named Daniel Hansen to form the new Fatdoor, Inc. entity and carve out all trade secrets and intellectual property related to LegalForce and Nextdoor.  While the name "Nextdoor" was considered for Fatdoor.com, it was decided to not pursue that name because of the mixed ownership of Nextdoor and LegalForce, and because the name was not available.  As such, the name "Nextdoor" as applied to a private social network for neighborhoods remained private and a trade secret associated with investors in LegalForce, Inc.

113.     Abhyanker proceeded to assign trade secrets, inventions, patent rights (including several pending patent applications), and other proprietary information relating to the Fatdoor concept to Fatdoor, Inc. on or around February 1, 2007 through a document drafted by Drazan's attorney Hansen.  Because Drazan and Abhyanker remained equity holders in LegalForce, Inc., purposefully excluded from this transfer were all technologies related to LegalForce and Nextdoor, including the exclusion of the LegalForce and Nextdoor Trade Secrets and the Nextyard, Nextlawn, and LegalForce domains.   Drazan's attorney Daniel Hansen drafted this agreement expressly under the wishes of Drazan and Abhyanker.  To provide equity to Fatdoor, Inc. investors, trade secrets related to Fatdoor were assigned to Fatdoor, Inc.  Those trade secrets included hundreds of pages of documents that became the basis for more than 46 patent applications assigned by Abhyanker, the lead inventor, to Fatdoor, Inc.  Each and all of these 46 patent application covered the public 'wiki' based Fatdoor commenting tool only, and did not relate to the private social network of LegalForce or Nextdoor developed by Sood for Abhyanker and LegalForce, or the code base for the original Nextdoor concept.

114.     After the Fatdoor, Inc. business was formed, in or about February 2007, an entirely new code base was built for the wiki based commenting tool by Chandu Thota ("Thota"), a Chief Technology Officer hired by Abhyanker to develop the Fatdoor concept.   None of the original code base developed for LegalForce, Inc. by Sood around the Nextdoor concept was used in the

creation of Fatdoor. A board of directors for Fatdoor, Inc. was formed consisting of Raj Abhyanker, Jeffrey Drazan, Willian Harris, and Chandu Thota.

115.    In or about May 2007, a convertible note holder in LegalForce, Inc., Mr. Warren Myers complained to the Fatdoor Board of Directors that he was concerned that technologies and trade secrets owned by Nextdoor and LegalForce were used or planning to be used in Fatdoor, Inc. This dispute was disclosed to Series B investors in Fatdoor, Inc. in board minutes and in disclosures in conjunction with Series B financing. A decision was made that if the Nextdoor domain would be desired for Fatdoor again, permission from the LegalForce, Inc. equity investors and convertible note holders, including Warren Myer would first be required. These disclosures were prepared by Daniel Hansen, and it was stated that Mr. Myers now understood that the original LegalForce trade secrets including the Nextdoor name as useable with a private social network for neighbors remained property of LegalForce, Inc.

### E.    Sood Was Not Chosen To Be Part of Fatdoor's Founding Team

116.    Before the formation of Fatdoor, Abhyanker and Sood had discussed the possibility of Sood becoming a co-founder of Nextdoor. However, when Fatdoor was formed, Sood was not selected to be part of Fatdoor's founding team. There were several reasons that Sood was not selected, including Sood's other obligations and his outspoken disagreement with Fatdoor's chosen direction and technology. As can be expected, Sood was disappointed when he learned that he was not selected to be part of Fatdoor, leaving him disgruntled and with a clear axe to grind.

### F.    Abhyanker Confidentially Discloses His Trade Secrets To Benchmark Capital

117.    On or around December 15, 2006, Abhyanker showed his Fatdoor prototype to Drazan. Drazan agreed to fund a separate entity from LegalForce, Inc., in order to launch the new public Wikipedia-like neighborhood commenting tool, Fatdoor.com. On or about January 5, 2007, Drazan agreed to personally invest $500,000.00 in Fatdoor, Inc. Drazan also introduced Abhyanker to William H. Harris, Jr. ("Harris, Jr."). On or about February 1, 2007, Abhyanker

closed a $1,000,000.00 Series A round of equity financing with Drazan and Harris, Jr. for Fatdoor, Inc.

118.    Abhyanker then hired the best engineers that he could find to help build working products for Fatdoor, Inc., including Thota as Chief Technology Officer of Fatdoor, Inc.

119.    The prototype of Fatdoor.com was developed into a working beta website. However, based on feedback from users, an internal decision was made to work on an improved version of Fatdoor.com centered on security and privacy.  To this end, Abhyanker believed this new version of Fatdoor.com could be accomplished by using some of Abhyanker's LegalForce and Nextdoor Trade Secrets.

120.    On or around June 20, 2007, an initial meeting was set with Benchmark Capital to discuss funding for the new version of Fatdoor.com, which was to incorporate LegalForce and Nextdoor Trade Secrets.  The initial meeting did not involve the disclosure of any non-confidential, trade secret information.  Instead, at that meeting it was discussed that a confidential meeting would take place only after assurances were received that all information shared by Abhyanker would be maintained strictly confidential.  In a follow-up telephone call Harvey, a general partner of Benchmark capital, agreed to maintain confidential any and all information disclosed by Abhyanker during any future meetings.  It is the pattern and practice of Benchmark Capital, its general partners, and entrepreneurs in residence (EIRs) to agree to non-disclosure agreements via verbal and email "handshakes."  *See* Randall E. Stross, eBoys: The First Inside Account of Venture Capitalists at Work, xviii (2000).

121.    Based on Benchmark Capital's assurances of confidentiality, a follow up meeting was set for on or about June 21, 2007.  During that meeting, Abhyanker provided a detailed disclosure of Abhyanker's LegalForce and Nextdoor Trade Secrets.  The meeting was attended by a majority of the Benchmark partners and EIRs, including Harvey.

122.    In addition, at Harvey's request, Abhyanker sent confidential and trade secret presentations relating to the Nextdoor concept to Benchmark Capital partner Mitch Lasky

[PROPOSED] SECOND AMENDED
ANSWER & COUNTERCLAIM
(case no. 3:12-cv-05667-EMC)

("Lasky") and a diligence file ("Diligence Package") fully disclosing his Nextdoor concept and the trade secrets to Benchmark Capital partner Fenton.

123.    Harvey then informed Abhyanker that he would be discussing the trade secret information with his team at an offsite meeting that would be occurring between June 23 -25, 2007.

124.    At Benchmark Capital's request, Abhyanker had various follow-up meetings with Benchmark Capital discussing the confidential technical details of his trade secrets.  During those meetings, Abhyanker disclosed key details of his Trade Secrets, including, but not limited to, the Diligence Package, which included, at least key product details, algorithms, business plans, security algorithms, database structures, user interface designs, software code, product concepts, prototypes, methods, works of authorship, trademarks, white papers, and instrumentalities.  The Diligence Package also contained a mockup images showing a photograph of sample user, with a personal profile virtual wall feed from neighbors who provided comments on the user's wall.  A search area box read "search neighborhood."  The word "Nextdoor" was clearly shown in the upper, left-hand side of the screenshot.  A map was shown in the screenshot illustrating the location of the user's hypothetical home and images indicating which neighbors had and had not joined the neighborhood surrounding the user's home.

125.    Following Abhyanker's disclosure of his Trade Secrets, Benchmark Capital misappropriated the Trade Secrets by disclosing and using them in violation of the confidentiality agreement.

126.    Meanwhile, the Fatdoor, Inc. series B investors that Abhyanker brought in the summer of 2007 desired to take the company Fatdoor in a different direction than Abhyanker had originally envisioned.  In particular, the investors, at the recommendation of Benchmark Capital, requested that a headhunter be hired to find a new Chief Executive Officer.  In response, Abhyanker conveyed to the Board of Directors that he would be willing to leave the position of Chief Executive Officer if he was permitted to run for another city council campaign and restart a new business around his original Nextdoor concept of a private neighborhood social network for

inventors and neighbors in a constrained geospatial area.  Although Abhyanker believed he did not need permission by Fatdoor, he made the request to ensure there would be not dispute over his plans.  Fatdoor agreed that he could pursue his LegalForce/Nextdoor business.  After leaving Fatdoor, Inc. in the Fall of 2007, Abhyanker again began trying to acquire the Nextdoor.com domain around his ideas for a private neighborhood social network and restarted his LegalForce.com website, before discovering that his trade secrets had been misappropriated.

### G. The Subsequent History Of Fatdoor and LegalForce, Inc.

127.    On or around April 2, 2008, Fatdoor, Inc. was renamed Center'D Corporation. Center'D Corporation is still in existence today.  On or around August 2011, Google acquired 46 patent applications and six international PCT applications that Abhyanker had assigned to Fatdoor/Center'D.  Abhyanker is listed as the lead inventor on each of those applications.  Those patent applications and the technology acquired by Google relate to Abhyanker's Fatdoor concept.  They do not relate to or cover Abhyanker's separate and distinct LegalForce/Nextdoor concept.  The trade secrets that form the basis for Abhyanker's trade secret misappropriation claim in the instant pleading were never assigned, purchased, or transferred to Fatdoor/Center'D or Google—they remain owned by Abhyanker personally.

128.    Since the patent applications acquired by Google, including Patent Application No. 11/603,442, only relate to the Fatdoor Concept and do not cover or relate to Abhyanker's LegalForce/Nextdoor concept, the patent applications do not disclose or reveal the trade secrets that form the basis for Abhyanker's trade secret misappropriation claim in the instant pleading. The trade secrets at issue in the instant pleading have never been publicly disclosed in published patent applications, issued patents, or anywhere else for that matter.

129.    After Fatdoor, Inc. changed its name to Center'D, it abandoned its usage of the Fatdoor mark.  When Center'D abondoned the use fo the Fatdoor mark, Abhyanker requested and received the approval of Center'D Board to begin using the Fatdoor name and logo in commerce. Abhyanker commenced doing so on or around April 15, 2008.

130.     LegalForce, Inc. subsequently went through an orderly wind-down in 2008 led by the same Fatdoor, Inc. counsel Daniel Hansen that drafted Abhyanker's February 1, 2007 assignment agreement on behalf of Drazan and Abhyanker, and its assets were purchased by Raj Abhyanker.  Those assets included the source code that made up the original LegalForce and Nextdoor concepts and Abhyanker's LegalForce and Nextdoor Trade Secrets.  All convertible debt notes including the $125,000 debt note to Mr. Warren Myer was assumed by Abhyanker in exchange for all assets in LegalForce, Inc. including the LegalForce and Nextdoor Trade Secrets. Abhyanker continued to work on trying to restart the Nextdoor private neighborhood social network based on his acquired trade secrets.

131.     In August 2011, Abhyanker filed a new private neighborhood social networking ecommerce patent application that has now received a notice of allowance.   In addition, Abhyanker again started trying to acquire the Nextdoor domain.

132.     In early 2010, Abhyanker spoke with Sood and informed him of his desire to restart the Nextdoor business and acquire rights to the Nextdoor domain.  Abhyanker also placed numerous bids in an effort to try to secure the Nextdoor.com domain in 2010.  However the Defendant was unsuccessful in bidding given that Sood, upon reason and belief, had disclosed the Abhyanker's bidding to Nextdoor.com.

133.     The original LegalForce, Inc. is not to be confused with the currently active LegalForce, Inc., which incorporated in or about March 2009.  This new venture is a separate and distinct entity formed by Abhyanker, with equity investment from Drazan and Hansen. LegalForce, Inc. currently owns the Trademarkia.com domain, and purchased rights to the LegalForce.com domain from Abhyanker.

**H.     Nextdoor.com's Founders Janakiraman And Tolia Were EIRs At Benchmark Capital**

134.     Nextdoor.com's founders are Janakiraman and Nirav Tolia ("Tolia").  As detailed above, Abhyanker had previously disclosed Abhyanker's Trade Secrets to Benchmark Capital. Abhyanker discovered that both Janakiraman and Tolia were EIRs at Benchmark Capital at the time Abhyanker disclosed his trade secrets to Benchmark Capital.

135.    On information and belief, Benchmark Capital disclosed Abhyanker's Trade Secrets to both Janakiraman and Tolia, who then proceeded to misappropriate and use Abhyanker's Trade Secrets as the foundation of Nextdoor.com.

**I.    Nextdoor.com, Inc. Founder Janakiraman's Secret Communications With Sood**

136.    In addition, one of the founders of Nextdoor.com, Janakiraman, had another source of inside information about Abhyanker's Trade Secrets.  In trying to ascertain exactly how Nextdoor misappropriated Abhyanker's Trade Secrets, Abhyanker discovered that Janakiraman and Sood, who Abhyanker had hired to work on the Nextdoor concept, both attended the University of California, Berkeley, had been friends and the university, and had remained friends and been in communication with each other at various times since 1995.

137.    When Abhyanker discovered that Sood and Janakiraman were friends, he confronted Sood and asked him about his relationship with Janakiraman.  Sood reluctantly admitted to knowing Janakiraman, but tried to downplay their relationship by saying that they have not really kept in touch over the years.  This turned out not to be true.  Through his own investigation, Abhyanker discovered that Janakiraman and Sood had stayed in touch, exchanging numerous messages as recently as October 28, 2012, a week before Nextdoor filed the instant lawsuit.

138.    Sood's dishonesty about his friendship with Janakiraman supports an inference that he wrongfully disclosed the LegalForce/Nextdoor Trade Secrets to Janakiraman, and then attempted to conceal his wrongdoing.

**J.    Sood Communicates With Prakash Janikiraman About Abhyanker's Trade Secrets**

139.    On or around the fall of 2010, Janakiraman and Nextdoor.com sent a survey to friends and family seeking feedback on the online neighborhood social networking concept that was misappropriated from Abhyanker.

140.    One of the recipients of the survey was Sood.  Sood completed and returned the survey, informing and/or reminding his long time friend Janakiraman and Nextdoor that he had

actually worked on Abhyanker's original Nextdoor concept and had been privy to Abhyanker's Trade Secrets.

141.   Upon information and belief, after completing the survey, Janikiraman spoke with Sood over a number of separate and distinct phone conversations and in person in which he discussed with Sood his knowledge and experience related to Abhyanker's Trade Secrets.  Upon information and belief, along the course of these conversations, Sood disclosed Abhyanker's Trade Secrets to Janakiraman and Nextdoor.  In addition, Janakiraman met in a number of social settings with Sood, and exchanged private messages over social networks including Facebook and Twitter with Sood with respect to Abhyanker's Trade Secrets.

142.   Tolia has admitted that in the course of these conversations, Janakiraman suggested the name "Nextdoor" to be used with the private neighborhood social network.  In addition, Tolia admitted that Janakiraman came up with the "key technologies" including neighborhood level privacy controls that Janakiraman misappropriated from Abhyanker's LegalForce/Nextdoor Trade Secrets through his conversations with Sood.  Specifically, in a Mercury News article on October 26, 2011, Tolia stated that "The key . . .  is software developed by an early Google (GOOG) Maps employee that makes sure only people who live in a specific neighborhood are able to join its network -- giving users a level of privacy that sites like Facebook don't".  Janakiraman was the early Google (GOOG) Maps employee to whom Tolia referred.  An article by Liz Gannes from the Wall Street Journal's AllThingsd blog on November 11, 2011 clarified that "Tolia said he was referring to Prakash Janakiraman, his co-founder at Fanbase and Nextdoor who formerly worked at Google on Maps".  These disclosures were material breaches of Sood's Independent Contractor Agreement and Non-Disclosure Agreement.

143.   Despite knowing that Sood had worked on Abhyanker's proprietary and trade secret LegalForce/Nextdoor concept as disclosed in the survey that Sood filled, Janakiraman and Nextdoor encouraged Sood to improperly disclose Abhyanker's trade secret information and proceeded to use the information as the foundation of their business.

144.   On information and belief, as Entrepreneurs in Residence at Benchmark, because Janakiraman and Tolia had access to confidential pitches that were delivered to Benchmark in their capacity as Entrepreneurs in Residence for the fund, and because they had access to the Benchmark offices, Janakiraman and Tolia researched the history of Abhyanker's Trade Secrets by looking through electronic archives stored at Benchmark Capital.

**K.     Nextdoor.com, Inc. Prototypes Abhyanker's LegalForce/Nextdoor Concept In Abhyanker's Neighborhood**

145.   In or around October 2010, Nextdoor.com set up a website at loreleineighbors.reallifelabs.com to surreptitiously prototype Abhyanker's online neighborhood social networking concept under the temporary name "Neighborly."  As Nextdoor.com stole the concept from Abhyanker, it is not surprising that Tolia admits that Janakiraman came up with the idea to prototype the Nextdoor.com website in the Lorelei neighborhood, the same Lorelei neighborhood referenced in Abhyanker's LegalForce/Nextdoor Trade Secrets.

146.   When Abhyanker conceived and developed the Nextdoor concept, his offices were located in Palo Alto, California and Menlo Park, California.  The Lorelei neighborhood abutted Abhyanker's Menlo Park office.  Given the neighborhood's proximity to Abhyanker, and its high concentration of technology savvy inventors and neighborhood activism, Abhyanker selected the Lorelei neighborhood to test his trade secret Nextdoor concepts and execution plans.

147.   In stark contrast, Nextdoor.com had no connection or reason to prototype the misappropriated concept in the Lorelei neighborhood.  Not only is Nextdoor based in San Francisco, but all the individuals at Nextdoor involved in misappropriating Abhyanker's Nextdoor concept also live in San Francisco — approximately 30 miles from Menlo Park.  There are many hundreds of neighborhoods in the San Francisco Bay Area, a number of which have high concentrations of inventors.  It is clear that Nextdoor.com did not randomly choose the Lorelei neighborhood, but rather chose the Lorelei neighborhood because it was the neighborhood selected by Abhyanker in his trade secret Nextdoor concepts and execution plans that Nextdoor misappropriated. Abhyanker had already prototyped his own Nextdoor and Fatdoor concepts in Lorelei, as it was one of the three early prototype neighborhoods for Abhyanker's Trade Secrets.

Accordingly, Nextdoor.com was able to use the neighborhood's familiarity with the concept to obtain a competitive advantage.

148.    Nextdoor.com's brazen decision to prototype the concept it stole from Abhyanker in Abhyanker's own Lorelei neighborhood is irrefutable evidence that Nextdoor misappropriated Abhyanker's trade secret information.  Moreover, given Janakiraman's long-time friendship with Sood and close association with Benchmark Capital, it is clear that Nextdoor had the connections and means for accessing and stealing Abhyanker's Trade Secrets.

149.    On or around March 2011, according to Nextdoor.com's own Complaint, it changed its corporate name from Fanbase Inc. to Nextdoor.com, Inc.

150.    Finally, on or around October 26, 2011, Nextdoor.com publicly launched the www.nextdoor.com online neighborhood social network that uses and was built on the trade secrets misappropriated from Abhyanker.

**L.    After Sood's Wrongful Disclosure, Nextdoor.com Adopts The Stolen Nextdoor Name**

151.    In or around January 2011, shortly after Sood completed and returned the survey and Nextdoor.com prototyped the misappropriated concept in Abhyanker's neighborhood, Nextdoor.com attempted to register the www.nextdoor.com domain name.  Sood was aware that Abhyanker had been bidding and trying to purchase the www.nextdoor.com domain name since late 2006.  In fact, Sood was copied on many emails relating to Abhyanker's attempts to purchase the domain name.

152.    Sood proceeded to disclose confidential information relating to Abhyanker's attempts to purchase the domain name to Janakiraman and Nextdoor.com, which prompted and enabled them to outbid Abhyanker and register the nextdoor.com domain name, thereby preventing Abhyanker from rightfully obtaining the domain name.

**M.    The Counterdefendants' Misappropriation And Wrongful Acts Lead To Litigation**

153.    Left with no recourse against Counterdefendants' willful misappropriation, on November 10, 2011, Abhyanker filed a complaint in the Superior Court of California for the

County of Santa Clara, which was instituted as Case No. 1-11-CV-212924.  In that case, Abhyanker asserted claims for trade secret misappropriation, breach of contract, and additional torts.

154.    Shortly after filing the state court action, Abhyanker also filed two third-party opposition proceedings against Nextdoor's trademark application for the NEXTDOOR mark with the U.S. Patent and Trademark Office's Trademark Trial and Appeal Board ("TTAB").  The two third-party oppositions on the basis of priority and fraud were filed on January 20, 2012 and February 9, 2012, and were instituted as Opposition No. 91203462 and Opposition No. 91203762, respectively.

155.    Abhyanker chose to dismiss his state court action *without prejudice* on February 8, 2012.  By dismissing the state court action, Abhyanker's resources were freed and directed towards litigating the TTAB oppositions, which he did with some success.   In or about September 15, 2012, Nextdoor.com's motions to dismiss the TTAB oppositions were defeated and formal discovery was to commence before TTAB to determine whether the Nextdoor.com should be denied federal trademark rights because of fraud on the United States Trademark Office.

156.    However, on November 5, 2012, Nextdoor filed the instant lawsuit seeking declaratory relief regarding trademark infringement and cyberpiracy.  As a result, the TTAB oppositions have been suspended pending the disposition of this lawsuit.  Back in Court as a result of the instant lawsuit, Abhyanker now reasserts his claim for trademark misappropriation against Nextdoor.com and the other counterdefendants.

157.    Counterdefendants have attempted to mischaracterize Abhyanker's allegations in prior pleadings as admissions that Abhyanker does not own the trade secrets that are the subject of Abhyanker's trade secret misappropriation counterclaim in the instant lawsuit.  However, the trade secrets that form the basis for the misappropriation counterclaim in the instant lawsuit are owned by Abhyanker personally and were never assigned, purchased, or otherwise transferred to Fatdoor, Center'D, or Google.

158.    More specifically, and as discussed in paragraph 113 above, Abhyanker is the lead inventor on 46 patent applications and six international PCT patent applications that Abhyanker assigned to Fatdoor, Inc. and that were eventually purchased by Google.  The subject matter of these patent applications relate generally to geo-spatial database, architecture, and application technologies associated with neighborhood communication and social networking.   But the trade secrets that form the basis of the instant lawsuit are not disclosed in those patent applications and were not assigned to Fatdoor or purchased by Google; rather, Abhyanker owns them personally. In fact, this is made clear in Paragraph 23 of Abhyanker's First Amended Complaint in the state court action in which he alleges, when discussing the misappropriation, that only "*some* of which are now owned by Google … through its acquisition of the … patent portfolio."  To underscore this point, nowhere in any of Abhyanker's prior pleadings in the state court action or TTAB oppositions are there any allegations or statement that "any and all" trade secrets relating to the Abhyanker's private online neighborhood social network were assigned to Fatdoor or purchased by Google.

N.    **Abhyanker's Trademark Rights in The NEXTDOOR Mark**

159.    On December 28, 2011, Abhyanker filed a trademark application, Serial No. 85504896 (the '"896 application"), with the United States Patent and Trademark Office with the for the standard character mark NEXTDOOR.  The application is for goods and services in International Category 42, and United States Categories 100 and 101.

160.    The goods and services listed on the application include:  "Computer services in the nature of customized web pages featuring user-defined information, personal profiles and information, namely, providing location tagged profiles using spatial and geo-coded information through the Internet."  The listed goods and services also include "computer services for creating an on-line community for registered users, students, families; computer services, namely, hosting online web facilities for others for organizing and conducting online meetings, gatherings, and interactive discussions; computer services in the nature of customized web pages featuring user-defined information, personal profiles and information; computer services, namely, creating an

[PROPOSED] SECOND AMENDED
ANSWER & COUNTERCLAIM
(case no. 3:12-cv-05667-EMC)

on-line community for registered users to participate in discussions, get feedback from their peers, form virtual communities, and engage in social networking."

161.    Abhyanker used the NEXTDOOR word mark in commerce in connection with goods and services involving the use proprietary geo-spatial software and technology, including but not limited to geo-spatial databases, architecture, social networking, friend grouping, real time updates, feed aggregation, spheres of influence, application technologies associated with aggregate, filtering of relevant feeds across multiple networks, filtering conversations across cross group interactions, providing of in depth conversations through a social graph, editable user pages, community governance, neighborhood communication and geo-spatial social networking since as early as October 25, 2006.

162.    In addition, Abhyanker used the NEXTDOOR mark on his websites eDirectree. com, Nextyard.com, Nextlawn.com, Fatdoor.us and later EatBid. com since at least as early as April 15, 2008.

163.    Abhyanker expended considerable time, effort, and financial resources building and marketing the NEXTDOOR mark and brand. As a result thereof, the NEXTDOOR mark, and the goodwill associated therewith are of inestimable value to Abhyanker.

**O.    Abhyanker's Trademark Rights In The FATDOOR Marks**

164.    Abhyanker began using the Fatdoor name as early as April 15, 2008, the day after Fatdoor, Inc. changed its name to Center'D Corporation and abandoned its use of the Fatdoor names, logos, and other intellectual property.

165.    On August 22, 2013, Abhyanker filed a trademark application, for the standard character mark FATDOOR, Serial No. 86045328.  The application lists goods and services in International Category 42, as well as United States Categories 100 and 101.

166.    The goods and services listed on the application include:  "Computer services in the nature of customized web pages featuring user-defined information, personal profiles and information, namely, providing location tagged profiles using spatial and geo-coded information

through the Internet; Computer services, namely, providing a specialized search engine for finding personal, geographical and business data on a global network."

167.    The date of first use in commerce listed on the Registration is April 15, 2008.

168.    Abhyanker owns the federal registration for a logo mark for FATDOOR GET TO KNOW YOUR NEIGHBORS, Registration No. 4287987.  The registration is for goods and services in International Category 42, as well as United States Categories 100 and 101.

169.    The registration lists goods and services including:  "Computer services in the nature of customized web pages featuring user-defined information, personal profiles and information, namely, providing location tagged profiles using spatial and geo-coded information through the Internet; Computer services, namely, providing a specialized search engine for finding personal, geographical and business data on a global network…."

170.    The date of first use in commerce listed on the Registration is  April 15, 2008.

171.    Abhyanker has been and continues to use the word mark FATDOOR and the design mark FATDOOR GET TO KNOW YOUR NEIGHBORS (collectively known as the "FATDOOR Marks") in commerce in connection with goods and services involving the use proprietary geo-spatial software and technology, including but not limited to geo-spatial databases, architecture, social networking, friend grouping, real time updates, feed aggregation, spheres of influence, application technologies associated with aggregate, filtering of relevant feeds across multiple networks, filtering conversations across cross group interactions, providing of in depth conversations through a social graph, editable user pages, community governance, neighborhood communication and geo-spatial social networking since as early as April 15, 2008.

172.    For example, Abhyanker used the FATDOOR Marks along with the NEXTDOOR mark on his websites eDirectree. com, Nextyard.com, Nextlawn.com, Fatdoor.us and later EatBid. com at least as early asApril 15, 2008.

173.    Abhyanker has expended considerable time, effort, and financial resources building and marketing the FATDOOR Marks and brand. As a result thereof, the FATDOOR Marks, and the goodwill associated therewith, are of inestimable value to Abhyanker.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### P.     Nextdoor.com's Infringing Trademark Application

174.     On or around February 8, 2011, Nextdoor (still called Fanbase at the time) filed a federal trademark application for the standard character mark NEXTDOOR with the United States Patent and Trademark Office, Serial No. 85236918 (the "Infringing Application").

175.     The Infringing Application was filed as a 1(b) intent-to-use application indicating that Nextdoor had not used the NEXTDOOR mark in commerce as of the filing of the application. The Infringing Application was filed on February 8, 2011.

176.     The application includes goods and services in International Category 42, and Unites States Categories 100 and 101.  The goods and services listed in the application include: "Computer services, namely, online non-downloadable software which allows users to create on-line communities related to shared geographic boundaries, common interests, and local events and activities."  Also listed in the application is "computer software providing a communications platform enabling users to create private networks and online communities based on geographic locations; and software to enable uploading, posting, showing, displaying, tagging, blogging, sharing or otherwise providing electronic media or information over the Internet or other communications network."

177.     There has been and continues to be actual confusion between Netxdoor.com's use of the NEXTDOOR name and mark with Abhyanker's Nextdoor concept and mark as well as Abhyanker's FATDOOR Marks and concept.

178.     Upon information and belief, Nextdoor.com was well aware of Abhyanker's NEXTDOOR mark prior to filing the its own application for the NEXTDOOR mark, and selected the NEXTDOOR mark with the specific intent to create confusion.

179.     On October 17, 2012, the United States Patent and Trademark Office suspended Abhyanker's '896 trademark application for the NEXTDOOR mark, pending the resolution of opposition proceedings in the TTAB.

33    [PROPOSED] SECOND AMENDED
ANSWER & COUNTERCLAIM
(case no. 3:12-cv-05667-EMC)

**O.  Nextdoor.com, Inc. Knew Of Abhyanker's Rights In The Nextdoor/Fatdoor Names Prior To Filing Its Federal Trademark Application For NEXTDOOR**

180.    The Nextdoor and Fatdoor concepts, business ideas, trade secrets, and the NEXTDOOR mark were developed by Abhyanker on or around August 2005 over a year prior to his employment with Fatdoor, Inc.

181.    Abhyanker also used the NEXTDOOR mark to identify a software application intended to assist neighbors around Abhyankder's residence to organize, communicate, and network, on or aroundAugust 2005.  The software was created in conjunction with public elections in the city of Cupertino, California on or about August 2005, in which Abhyanker was a candidate for office with the City Council. This software application continues to be a publicly accessible in various improved forms up and until the filing of this suit.

182.    Upon information and belief, Tolia had access to Abhyanker's confidential material including the NEXTDOOR mark, business ideas, and trade secrets relating to the Nextdoor/Fatdoor either at Benchmark's offsite meeting and/or through Tolia's interactions with Harvey, Taylor and/or Norris while working as an EIR at Benchmark on or before the first week of September 2007.  On information and belief, Tolia then used this information to develop the Fanbase.com and Nextdoor.com websites.

183.    On information and belief, on or about February 7, 2011, Nextdoor, via its authorized representative, co-founder and CEO Nirav Tolia, knowingly made a false and fraudulent statement and declaration in the infringing application wherein Nextdoor falsely claimed, "he/she believes the applicant to be the owner of the trademark/service mark sought to be registered, or, if the application is being filed under 15 U. S. C. Section 1051(b), he/she believes applicant to be entitled to use such mark in commerce; to the best of his/her knowledge and belief no other person, firm, corporation, or association has the right to use the mark in commerce, either in the identical form thereof or in such near resemblance thereto as to be likely, when used on or in connection with the goods/services of such other person, to cause."

34      [PROPOSED] SECOND AMENDED
ANSWER & COUNTERCLAIM
(case no. 3:12-cv-05667-EMC)

184.   At the time Nextdoor and Tolia made the statement referred to above, Nextdoor and Tolia knew of Abhyanker's prior use of the NEXTDOOR mark in connection with the goods and services.

185.   The false and fraudulent declaration referred to above with respect to the infringing application was made by Nextdoor and Tolia with actual knowledge of its falsity and was not made on information and belief.  Instead, it was made by a person or entity which knew or should have known the same was false and fraudulent.

186.   Nextdoor and Tolia thereby knowingly made a false, material misrepresentation of fact in connection with the infringing application.  On information and belief, the false and fraudulent statement was made with the intent to deceive the USPTO into granting the NEXTDOOR mark to Nextdoor (then called Fanbase).  The USPTO relied on the same when it acknowledged filing of the application and allowed it to proceed to publication in the Official Gazette.

187.   As a result, Nextdoor knowingly perpetrated a fraud on the United States Patent and Trademark Office.  Mr. Abhyanker intends to pursue a fraud claim should the application mature into a registration.

Q.     Abhyanker's Patent Rights

188.   In August 2011, Abhyanker filed a private neighborhood social networking ecommerce patent application (No. 13/310,819).  On April 20, 2013, that application issued as U.S. Patent 8,433,609 ("the '609 patent").   A true and correct copy of the '609 patent is attached hereto as Exhibit C.

189.   The '609 patent, titled "Geospatially Constrained Gastronomic Bidding," discloses a method for presenting gastronomical offers to users who reside within a particular zip code, and allowing those users to bid on the offer.

190.   Abhyanker is the sole inventor listed on the '609 patent, and the assignee of the patent.

191. Abhyanker is informed and believes that Nextdoor.com, in conjunction with its customers, has infringed and continues to infringe the '609 patent, either literally or under the doctrine of equivalents. Upon information and belief, Nextdoor.com and its customers have collectively infringed and continue to infringe one or more claims of the '609 patent by making, using, selling, and/or providing, in this district and elsewhere in the United States, methods and devices for geospatially constrained bidding on gastronomical offers.

192. Nextdoor.com's infringing functionality includes, but is not limited to, the "Classified" portion of its website, which allows users in the same geospatial region to post, among other things, advertisements and offers for goods and services, including gastronomical goods and services such as catering or restaurant services, as well as culinary goods. Users can create their own offers in this space that are accessible only by others in their neighborhoods, or they can provide a link to existing geospatially constrained offers, such as "Groupon Now" offers.

193. Nextdoor.com's infringing functionality further includes, but is not limited to, the Nextdoor.com mobile app, which allows users to post, among other things, advertisements and offers for goods and services, including gastronomical goods and services such as catering or restaurant services, as well as culinary goods. Users can create their own offers in this space that are accessible only by others in their neighborhoods, or they can provide a link to existing geospatially constrained offers, such as "Groupon Now" offers.

194. Abhyanker is informed and believes that Nextdoor.com has intentionally induced and continues to induce infringement of one or more claims of the '609 patent in this district and elsewhere in the United States, by its acts which have successfully, among other things, encouraged, instructed, enabled and otherwise caused its customers to use its products and services for presenting gastronomical offers to users who reside within a particular zip code, and allowing those users to bid on the offer, in this district and elsewhere in the United States through its website.

36    [PROPOSED] SECOND AMENDED
ANSWER & COUNTERCLAIM
(case no. 3:12-cv-05667-EMC)

**FIRST COUNTERCLAIM**
**TRADE SECRET MISAPPROPRIATION**
**(Against All Defendants)**

195.187.    Abhyanker repeats, realleges and incorporates each and every allegation of the foregoing paragraphs, as though fully set forth in this cause of action.

196.188.    As detailed above in Paragraph 102, Abhyanker developed and owned trade secret information relating to the concept of an online neighborhood social network.

197.189.    Abhyanker's Trade Secrets derived independent economic value from not being known to the public or other persons who could obtain economic value from their disclosure or use.

198.190.    Abhyanker's Trade Secrets were also the subject of efforts that were reasonable under the circumstances to maintain their secrecy.  As detailed above, Abhyanker only disclosed his Trade Secrets to Sood and Monsoon and Benchmark Capital pursuant to strict confidentiality agreements.

199.191.    Benchmark Capital misappropriated Abhyanker's Trade Secrets by using improper means to acquire and then disclose the Trade Secrets to Nextdoor.com and its founders in violation of its confidentiality agreement with Abhyanker and without Abhyanker's consent. Among other things, Benchmark fraudulently and intentionally misrepresented that it would maintain the confidentiality of Abhyanker's Trade Secrets when it had no intention of doing so and fraudulently and intentionally misrepresented that Benchmark Capital's use of Abhyanker's Trade Secrets would be limited solely to evaluation for investment purposes.  Benchmark Capital also improperly induced and encouraged Nextdoor.com and its founders to use Abhyanker's Trade Secrets.

200.192.    Sood and Monsoon misappropriated Abhyanker's Trade Secrets by using improper means to acquire and then disclose Abhyanker's Trade Secrets to Nextdoor.com and its founders in violation of the Independent Contractor Agreement and Non-Disclosure Agreement with Abhyanker and without Abhyanker's consent.  Among other things, Sood and Monsoon fraudulently and intentionally misrepresented that they would maintain the confidentiality of

Abhyanker's Trade Secrets when they had no intention of doing so.  Sood and Monsoon also improperly induced and encouraged Nextdoor.com and its founders to use Abhyanker's Trade Secrets.

201.193.        Janakiraman and Nextdoor misappropriated Abhyanker's Trade Secrets by using improper means to acquire and then use Abhyanker's Trade Secrets as the foundation of their business.  Janakiraman and Nextdoor.com induced both Benchmark Capital and Sood and Monsoon to breach the confidentiality agreements and obligations to Abhyanker by persuading them to disclose Abhyanker's Trade Secrets to them.  Despite being fully aware of Benchmark Capital's, Sood's, and Monsoon's confidentiality obligations and agreements, Janakiraman and Nextdoor.com proceeded to use the Abhyanker's Trade Secrets to build their business.

202.194.        Counterdefendants' aforesaid misappropriation has caused and continues to cause Abhyanker damages and irreparably injury.  Moreover, Counterdefendants' aforesaid acts constitute willful and malicious misappropriation, thereby entitling Abhyanker to an award of exemplary damages.

### SECOND COUNTERCLAIM
### TRADEMARK INFRINGEMENT
### (Against Nextdoor.com)

203.195.        Abhyanker repeats, realleges and incorporates each and every allegation of the foregoing paragraphs, as though fully set forth in this cause of action.

204.196.        Nextdoor.com's use of the NEXTDOOR mark is without the permission of Abhyanker.

205.197.        Nextdoor.com's use of the NEXTDOOR mark infringes on Abhyanker's rights in the common law rights in the FATDOOR word mark, and the registered FATDOOR GET TO KNOW YOUR NEIGHBOR mark.

206.198.        Nextdoor.com's use of the NEXTDOOR mark in interstate commerce is likely to cause, and has caused, confusion, deception, and mistake by creating the false and misleading impression that Nextdoor.com's services are provided or distributed by Abhyanker,

associated or connected with Abhyanker and/or his Fatdoor concepts or have the sponsorship,

endorsement, or approval of Abhyanker, in violation of 15 U.S.C. §1114.

207.199.        As a direct and proximate result of Nextdoor.com's misconduct,

Abhyanker has been, and will continue to be irreparably harmed, injured and damaged, and such

harm will continue unless enjoined by this Court.

208.200.        As a direct and proximate result of Nextdoor.com's misconduct,

Abhyanker has suffered and is entitled to monetary relief in an amount not yet determined.

209.201.        Abhyanker is informed and believes, and on that basis alleges, that

Nextdoor.com's misconduct has been knowing, deliberate and willful.

**THIRD COUNTERCLAIM**
**INFRINGEMENT OF UNREGISTERED TRADEMARKFALSE DESIGNATION OF**
**ORIGIN**
**(Against Nextdoor.com)**

210.202.        Abhyanker repeats, realleges and incorporates each and every allegation of

the foregoing paragraphs, as though fully set forth in this cause of action.

211.203.        Nextdoor.com's use of the NEXTDOOR mark infringes on Abhyanker's

common law rights in the NEXTDOOR and FATDOOR Marks, in violation of 15 U.S.C. §1125.

212.204.        Nextdoor.com's unauthorized use of Abhyanker's marks in interstate

commerce is likely to cause, and has caused, confusion, deception, and mistake by creating the

false and misleading impression that Nextdoor.com's products and services are provided or

distributed by Abhyanker, associated or connected with Abhyanker and/or his Nextdoor and

Fatdoor concepts, or have the sponsorship, endorsement, or approval of Abhyanker.

213.205.        Nextdoor.com's misconduct resulting in such likelihood of confusion,

deception, and mistake will continue unless enjoined by this Court.

214.206.        As a direct and proximate result of Nextdoor.com's misconduct,

Abhyanker has been, and will continue to be irreparably harmed, injured and damaged, and such

harm will continue unless enjoined by this Court.

215.207.　　　As a direct and proximate result of Nextdoor.com's misconduct, Abhyanker has suffered and is entitled to monetary damages in an amount to be determined at trial.

**FOURTH COUNTERCLAIM**
**PATENT INFRINGEMENT**
**(Against Nextdoor.com)**

216.　　Abhyanker repeats, realleges and incorporates each and every allegation of the foregoing paragraphs, as though fully set forth in this cause of action.

217.　　Abhyanker is the owner of all right, title, and interest in the '609 patent.

218.　　Nextdoor.com has infringed and continues to infringe the '609 patent, directly or indirectly, either literally or under the doctrine of equivalents, by making, using, selling, and/or providing, in this district and elsewhere in the United States, methods and devices for geospatially constrained bidding on gastronomical offers in violation of 35 U.S.C. § 271.

219.　　As a result of Nextdoor.com's patent infringement, Abhyanker has suffered and will continue to suffer damages and irreparable injury as Nextdoor.com continues offering and promoting its infringing website functionality in the marketplace.

**FOURTH~~IFTH~~ COUNTERCLAIM~~LAIM FOR RELIEF~~**
**CALIFORNIA UNFAIR COMPETITION**
**(Against Nextdoor.com)**

220.208.　　　Abhyanker repeats, realleges and incorporates each and every allegation of the foregoing paragraphs, as though fully set forth in this cause of action.

221.209.　　　By the acts described herein, Counterdefendants have engaged in unlawful and unfair business practices that have injured and will continue to injure Abhyanker in its business and property, in violation of California Business and Professions Code § 17200, *et seq*.

222.210.　　　Counterdefendants' acts alleged herein have causes monetary damages to Abhyanker in an amount to be proven at trial, and have caused and will continue to cause, irreparable injury to Abhyanker and its business, reputation, and trademarks, unless and until Counterdefendants are permanently enjoined by this Court.

223.211.     As a direct and proximate result of Counterdefendants' conduct alleged herein, Counterdefendants have been unjustly enriched and should be ordered to disgorge any and all profits earned as a result of such unlawful conduct.

**PRAYER FOR RELIEF**

WHEREFORE, Abhyanker prays for judgment against Counterdefendants as follows:

1.   That Nextdoor.com take nothing by its Complaint;

2.   That Nextdoor.com's Complaint be dismissed with prejudice;

3.   That Abhyanker be awarded his costs of suit and attorneys' fees;

4.   That all Counterdefendants be preliminarily and permanently enjoined from further disclosing or using Abhyanker's Trade Secrets, as well as Abhyanker's confidential and proprietary non-trade secret information, including, but not limited to, the nextdoor.com website and domain name;

5.   That counterdefendant Nextdoor.com be enjoined from the practice of hiring and/or placing EIRs that the fund intends to invest in, and which have not yet come up with a public business plan for their venture, to listen in on or participate in any way in meetings involving other entrepreneurs pitching ideas to the fund in an area of technology specialization that the EIRs intend to start a company of their own within and has not thought of or publicly released;

6.   That the Court order Nextdoor.com to transfer the nextdoor.com domain name to Abhyanker and order and direct VeriSign, Inc., the domain name registry for the nextdoor.com domain name, to change the registrar of record for the nextdoor.com domain name to a registrar selected by Abhyanker;

7.   That Abhyanker recover damages for his actual loss caused by the trade secret misappropriation;

8.   That Abhyanker recover for the unjust enrichment caused by Counterdefendants' trade secret misappropriation;

41     [PROPOSED] SECOND AMENDED
ANSWER & COUNTERCLAIM
(case no. 3:12-cv-05667-EMC)

9.  That Abhyanker recover a reasonable royalty for misappropriation of his trade secrets to the extent neither damages nor unjust enrichment are provable;

10. That Abhyanker recover exemplary damages for trade secret misappropriation;

11. That the Court grant injunctive relief enjoining Nextdoor.com, its principals, officers, directors, employees, agents, representatives, and all others acting in concert with it, from:

    a.  Using the NEXTDOOR mark, or terms, marks, symbols or indicia confusingly similar to Abhyanker's NEXTDOOR and FATDOOR Marks in connection with the creation, production, provision, advertisement, promotion, distribution, offering for sale, or selling of online social media platforms and/or any websites; and

    b.  Performing any acts or using any service marks, trademarks, names, words or phrases that are likely to confuse, deceive, or otherwise mislead the trade or public into believing that Abhyanker's businesses and Nextdoor.com are one and the same or are in some way connected, that Abhyanker is a sponsor of Nextdoor.com, or that Nextdoor.com's goods or services originate or are associated with Abhyanker and/or his Nextdoor and Fatdoor concepts;

12. That the Court order Nextdoor.com to abandon all NEXTDOOR trademark applications;

13. That the Court order Nextdoor.com to pay Abhyanker monetary damages for the harm resulting from infringement of Abhyanker's marks, in an amount to be determined at trial;

14. That the Court order Abhyanker's trademark damages be trebled and Nextdoor.com to pay Abhyanker's reasonable attorneys' fees on the basis that this is an exceptional case;

15. For a judgment declaring that Nextdoor.com has infringed the '609 patent;

[PROPOSED] SECOND AMENDED
ANSWER & COUNTERCLAIM
(case no. 3:12-cv-05667-EMC)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

16.  For a judgment awarding Abhyanker compensatory damages as a result of Nextdoor.com's infringement of the '609 patent, together with interest and costs, and in no event less than a reasonable royalty;

17. 14.      For a grant of a permanent injunction pursuant to 35 U.S.C. § 283, enjoining Nextdoor.com from further acts of patent infringement;

18. 15.      That the Court order Nextdoor.com to pay Abhyanker restitution for violation of California Business and Professions Code section 17200, et seq.;

19. 16.      That the Court order such further relief as it deems just and proper; and

20. 17.      That this Court retain jurisdiction of this action for the purpose of enabling Abhyanker to apply to the Court at any time for such further orders and interpretation or execution of any order entered in this action, for the modification of any such order, for the enforcement or compliance therewith and for the punishment of any violations thereof.

## **DEMAND FOR A JURY TRIAL**

Abhyanker hereby demands a trial by jury on both Nextdoor.com's claims in the Complaint and his Counterclaims.

Dated: December 5October 17, 2013                    Respectfully submitted,

                                        LEGALFORCE RAJ ABHYANKER, P.C.

                                        /s/ Bruno W. Tarabichi
                                        Bruno W. Tarabichi
                                        Heather R. Norton
                                        Roy Montgomery
                                        Attorneys for Defendant
                                        Raj Abhyanker

43        [PROPOSED] SECOND AMENDED
          ANSWER & COUNTERCLAIM
          (case no. 3:12-cv-05667-EMC)