1    **BRUNO W. TARABICHI**, CA State Bar No. 215129
     bruno@legalforcelaw.com
2    **HEATHER R. NORTON**, CA State Bar No. 257014
     heather@legalforcelaw.com
3    **ROY MONTGOMERY**, CA State Bar No. 279531
     roy@legalforcelaw.com
4    **LEGALFORCE RAJ ABHYANKER, P.C.**
     1580 W. El Camino Real, Suite 13
5    Mountain View, California 94040
     Telephone:  650.965.8731
6    Facsimile:   650.989.2131

7    Attorneys for Defendant
     Raj Abhyanker

8

              UNITED STATES DISTRICT COURT

9

          NORTHERN DISTRICT OF CALIFORNIA

10

               SAN FRANCISCO DIVISION

11

12    NEXTDOOR.COM, INC., a Delaware
     corporation,                   Case No. 3:12-cv-05667-EMC

13             Plaintiff,
                       **DEFENDANT AND**
                       **COUNTERCLAIMANT RAJ**
14             vs.                 **ABHYANKER'S SECOND AMENDED**
                       **DESIGNATION OF TRADE SECRETS**
15    RAJ ABHYANKER, an individual,

16             Defendant.          Case Filed:        November 5, 2012
                       Judge:             Honorable Edward M. Chen

17    RAJ ABHYANKER, an individual

18             Counterclaimant,

19             vs.

20    NEXTDOOR.COM, INC., a Delaware
     corporation; PRAKASH
21    JANAKIRAMAN, an individual;
     BENCHMARK CAPITAL  PARTNERS,
22    L.P., a Delaware limited partnership;
     BENCHMARK CAPITAL
23    MANAGEMENT CO. LLC, a Delaware
     limited liability company; SANDEEP
24    SOOD, an individual; MONSOON
     ENTERPRISES, INC., a California
25    corporation, and DOES 1–50, inclusive;

26             Counterdefendants.

27

28

1   **I.     INTRODUCTION**

2          Around September of 2006, Defendant and Counterclaimant Raj Abhyanker developed

3   the concept of a private online neighborhood social network for inventors to be called

4   LegalForce, and a separate spin off idea using the same code base called Nextdoor.  In connection

5   with his LegalForce and Nextdoor concept, Abhyanker developed trade secret information,

6   including, but not limited to, key product details, algorithms, business plans, security algorithms,

7   database structures, user interface designs, software code, product concepts, prototypes, methods,

8   works of authorship, trademarks, white papers, and instrumentalities, information and plans

9   pertaining to, but not limited to, software that makes sure only people who live in a specific

10  neighborhood are able to join its network—giving users a level of privacy that sites like Facebook

11  don't, email lists of inventive neighbors around Cupertino, California, inventive neighbors in the

12  Lorelei neighborhood of Menlo Park, a private social network activation in a geospatially

13  constrained area when 10 neighbors sign up, geo-spatial database, neighborhood member

14  activation through postal mail, public/private geo-location constrained member groups,

15  neighborhood member address verification, sharing of bulletin and wall communications between

16  neighborhood resident users only, customer lists, architecture, social networking, friend grouping,

17  providing real time updates, neighborhood-level privacy controls, feed aggregation, spheres of

18  influence, application technologies, filtering relevant feeds across multiple networks, filtering

19  conversations, adding contextual relevancy to private messages and connections in a geospatially

20  constrained area, and connections across interactions in neighboring communities, providing in

21  depth conversations through a social graph, community governance, bidding history of the

22  Nextdoor.com domain, the activation of the Lorelei neighborhood as a prime testing

23  neighborhood for communication, neighborhood communication and geo-spatial social

24  networking, and the use of the name Nextdoor.com in conjunction with a private social network

25  for neighborhoods.

26          On or around October 26, 2011, Nextdoor.com publicly launched the www.nextdoor.com

27  online neighborhood social network that was created and built using at least some of the trade

28  secrets improperly acquired and used from Abhyanker.  As in virtually all trade secret

DESIGNATION OF TRADE SECRETS
CASE NO. 3:12-cv-05667-EMC

1   misappropriation cases, the specific details of CounterDefendants' misappropriation were not

2   advertised or broadcast; rather, the improper acquisition, disclosure, and use was done secretly—

3   behind closed doors.  It is for this reason that plaintiffs are typically permitted to plead the facts

4   relating to misappropriation on information and belief and pursue them through discovery.  *See*,

5   *e.g.*, *Brocade Communications Systems, Inc. v. A10 Networks, Inc.*, 2011 U.S. Dist. LEXIS

6   30227, *19-20 (N.D. Cal. 2011).  Despite this widely accepted principle by California federal and

7   state courts, Mr. Abhyanker has been required to plead—in his trade secret designation—facts

8   regarding misappropriation with particularity, a standard that is impossible to meet when the facts

9   are within the exclusive knowledge of CounterDefendants.  By imposing this standard, Mr.

10  Abhyanker is effectively being deprived to pursue discovery on his trade secret misappropriation

11  claim.  Nevertheless, with this standard in mind, Mr. Abhyanker has been forced to limit his

12  identification to the particular trade secrets identified below.

13  **II.      IDENTIFICATION OF TRADE SECRETS**

14          At this time, Mr. Abhyanker is limiting his identification of trade secrets in this

15  designation to two trade secrets: the bidding history of the Nextdoor.com domain and the

16  identification of the Lorelei neighborhood in Menlo Park, California as the ideal first

17  neighborhood to use to test and launch a neighborhood social network.

18  **III.     MISAPPROPRIATION OF TRADE SECRETS**

19          **A.      Whether the Trade Secret Was Acquired By Each Defendant and Supporting**

20                  **Factual Basis**

21          Mr. Abhyanker alleges that the bidding history and the identification of the Lorelei

22  neighborhood were acquired by Counterdefendants Sandeep Sood and Monsoon Enterprises.  The

23  factual bases for these allegations include (1) Mr. Abhyanker hired Counterdefendants Sandeep

24  Sood and Monsoon Enterprises pursuant to a confidentiality agreement to work on his LegalForce

25  and Nextdoor ideas; (2) Mr. Abhyanker confidentially disclosed the bidding history to

26  Counterdefendants Sandeep Sood and Monsoon Enterprises, who were copied on confidential

27  bids for the domain Nextdoor.com; and (3) the identification and selection of the Lorelei

28  neighborhood as an optimal testing neighborhood was confidentially disclosed by Mr. Abhyanker

DESIGNATION OF TRADE SECRETS
CASE NO. 3:12-cv-05667-EMC

1   to Counterdefendants Sandeep Sood and Monsoon Enterprises.

2        Mr. Abhyanker alleges that the bidding history and identification of the Lorelei

3   neighborhood were acquired by the Counterdefendant Benchmark entities.  The factual basis for

4   this allegation is that Abhyanker confidentially disclosed the bidding history and identification of

5   the Lorelei neighborhood to Benchmark during a meeting in June of 2007, which was attended by

6   the majority of Benchmark partners and many Entrepreneurs-in-Residence (EIRs).

7        Mr. Abhyanker alleges that the bidding history and identification of the Lorelei

8   neighborhood were improperly acquired by Counterdefendants Nextdoor.com and Prakash

9   Janakiraman when they were improperly disclosed to them by Counterdefendants Sandeep Sood,

10  Monsoon Enterprises, and Benchmark as described in Section III.B below.

11       **B.      Whether the Trade Secret Was Disclosed by Each Defendant and Supporting**

12               **Factual Basis**

13       Mr. Abhyanker alleges that Counterdefendants Sandeep Sood and Monsoon Enterprises

14  disclosed Mr. Abhyanker's trade secret bidding history for the Nextdoor name and the

15  identification of the Lorelei neighborhood to Counterdefendants Nextdoor.com and Prakash

16  Janikaraman.  The factual bases for the allegations are (i) in December 2012, Counterdefendant

17  Sood filled out a Survey for Counterdefendants Nextdoor.com and Prakash Janakiraman, (ii)

18  Counterdefendant Sandeep Sood purposely and intentionally concealed from Mr. Abhyanker the

19  fact that he went to college with Nextdoor.com's Prakash Janakirman and that they have been

20  very good friends for many years and frequently communicate; (iii) Counterdefendant Sood has

21  admitted to Mr. Abhyanker that he has frequently communicated with Mr. Janakiraman but

22  refused to disclose the actual communications; (iv) Nextdoor.com actually ended up testing and

23  prototyping their social networking in the Lorelei neighborhood despite having no connection to

24  that neighborhood and the existence of approximately 1,500 neighborhoods in the San Francisco

25  Bay Area; and (v) Nextdoor.com used Abhyanker's confidential and trade secret bidding history

26  on the nextdoor.com domain name to outbid Mr. Abhyanker for the domain name.

27       Mr. Abhyanker alleges that the Counterdefendant Benchmark entities disclosed Mr.

28  Abhyanker's trade secret bidding history for the Nextdoor name and the identification of the

1   Lorelei neighborhood to Counterdefendants Nextdoor.com and Prakash Janikaraman.  The factual

2   bases for the allegations are that Mr. Abhyanker alleges (i) Nextdoor.com's founders Nirav Tolia

3   and Prakash Janakiraman were EIRS at Benchmark and on information and belief, by virtue of

4   their status as EIRs, had the ability or opportunity to access the trade secrets delivered by

5   Abhyanker to Benchmark partner Peter Fenton on or about June 22, 2007 as described above; (ii)

6   Tolia has admitted to taking a calculated 'MBA' approach to pivoting his company from Fanbase

7   to Nextdoor rather than taking the risk of building something original to ensure success; (iii) Tolia

8   is part of the CEO Roundtable, a collection of Benchmark Entrepreneurs-In-Residence that

9   secretly meet monthly to share tips about ideas that they have heard from others (see:

10  http://www.businessinsider.com/silicon-valley-secret-power-dinners-2013-1); (iv) Tolia had the

11  means, opportunity, and need to pivot his company from Fanbase to Nextdoor or risk losing his

12  business; (v) Benchmark expressed a great deal of interest and enthusiasm over Abhyanker's

13  trade secret concepts and was about to invest before suddenly pulling the plug, only to later invest

14  in and start its own knock-off business based on Abhyanker's trade secrets, namely,

15  Nextdoor.com; (vi) Abhyanker confidentially disclosed his trade secrets to Benchmark EIRs Bret

16  Taylor and Reid Hoffman in 2007, who are both informal advisors to Tolia as part of the CEO

17  Roundtable and meet monthly to share ideas and tips from businesses that they have heard about;

18  (vii) Abhyanker possesses emails from individuals, such as Sergio Monsalve and Bill Harris,

19  raising suspicions that Benchmark EIRs , including Brett Taylor and Jim Norris, were intending

20  on building a competing start-up based on Abhyanker's confidential trade secrets; (viii)

21  Abhyanker spoke to Benchmark EIRs Brett Taylor and Jim Norris regarding their intent to build a

22  competing start-up and they assured Abhyanker that they were interested in starting their own

23  company in a non-competitive space but then proceeded to do the exact opposite through their

24  involvement with the directly competitive Nextdoor.com based on Abhyanker's confidential trade

25  secrets; (ix) based on the representations of Benchmark EIRs Brett Taylor and Jim Norris that

26  they would not enter a competing space, agreements were prepared and sent to Brett Taylor and

27  Jim Norris to reflect that agreement, but they *tellingly* refused to sign them; (x) Brett Taylor is the

28  former manager/supervisor of Counterdefendant Janikiraman at Google; and (xi) Brett Taylor and

1     Tolia are close personal friends that meet socially and part of the CEO Roundtable group.

2            **C.      Whether the Trade Secret Was Used by Each Defendant and Supporting**

3                     **Factual Basis**

4            Mr. Abhyanker alleges that Counterdefendants Nextdoor.com and Prakash Janikaraman

5     used Mr. Abhyanker's trade secret bidding history and identification of the Lorelei neighborhood

6     in the development and launch of their www.nextdoor.com website.  The factual basis for these

7     allegations include: (i) Nextdoor.com used Abhyanker's confidential and trade secret bidding

8     history on the nextdoor.com domain name to outbid Mr. Abhyanker for the domain name, and (ii)

9     Nextdoor.com tested and prototyped its social networking in the Lorelei neighborhood using the

10    website at loreleineighbors.reallifelabs.com.

11           Mr. Abhyanker alleges that Benchmark used at least the bidding history for the

12    nextdoor.com domain name to outbid Abhyanker.  The factual basis for this allegation is that Mr.

13    Abhyanker had made confidential bids to purchase the nextdoor.com from Kevin Watson of Next

14    Door, LLC.  After someone had outbid Mr. Abhyanker, Mr. Abhyanker sent an email to Kevin

15    Watson inquiring about the bidding and the identity of the successful bidder.  In a November 29,

16    2011 email string, Mr. Watson responded that "the person who contacted me was Josh Becker"

17    and "if I recall he was representing Benchmark I think."  Moreover, Benchmark is a large

18    investor in Nextdoor.com.  Therefore, by way of this relationship, Benchmark is also illicitly

19    benefiting from Nextdoor.com's improper use of Abhyanker's trade secrets.

20    **IV.    CONCLUSION**

21           Finally, in addition to the above identified trade secrets, Mr. Abhyanker reserves the right

22    to identify additional trade secrets upon the revelation of more definitive facts through discovery

23    or other investigation.

24    Dated: December 11, 2013                    Respectfully submitted,

25                                               LEGALFORCE RAJ ABHYANKER, P.C.

26

27    By    /s/
                 Bruno W. Tarabichi
                 Heather R. Norton
28               Attorneys for Defendant Raj Abhyanker

                                               DESIGNATION OF TRADE SECRETS
                                               CASE NO. 3:12-cv-05667-EMC