Pages 1 - 20

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Edward M. Chen, District Judge

| | |
|---|---|
| NEXTDOOR.COM, INC. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| VS. | )   NO. C12-5667 EMC |
| | ) |
| ABHYANKER, et al., | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

SAN FRANCISCO, CALIFORNIA
THURSDAY, DECEMBER 12, 2013

**TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND
RECORDING**

APPEARANCES:
For Plaintiff:

                    Fenwick & West LLP
                    555 California Street, 12th Fl Ste 1200
                    San Francisco, CA 94104
         BY:        **JENNIFER LLOYD KELLY, ATTORNEY AT LAW**
                    **LAURENCE F. PULGRAM**
For Defendant:

                    Harmon & Seidman
                    2627 18th Avenue
                    San Francisco, CA 94116
         BY:        **HEATHER RACHEL NORTON, ATTORNEY AT LAW**
For Counter-Defendant:

                    Latham & Watkins LLP
                    140 Scott Drive
                    Menlo Park, CA 94025
         BY:        **MATTHEW RAWLINSON, ATTORNEY AT LAW**
For Counter-Defendant:

                    Royse Law Firm, PC
                    1717 Embarcadero Road
                    Palo Alto, CA 94303
         BY:        **HARPREET SINGH WALIA, ATTORNEY AT LAW**

Transcribed:               Carrie E. McKee-Parks, CSR #13200
                           Transcriber 510-637-9897
                           McKee-Parks65@att.net

```
 1    Thursday - December 12, 2013                    11:31 a.m.

 2                      P R O C E E D I N G S

 3                          ---oOo---

 4         THE CLERK:  Calling case C12-5667; Nextdoor v.

 5    Abhyanker.

 6       Counsel, please come to the podium and state your name for

 7    the record.

 8         MR. PULGRAM:  Good morning, your Honor.  Laurence

 9    Pulgram for plaintiff and counter-defendant, Nextdoor.com; and

10    counter-defendant, Janakiraman.

11         THE COURT:  Thank you, Mr. Pulgram.

12         MS. KELLY:  Jennifer Kelly on behalf of the same

13    plaintiffs.

14         MS. NORTON:  Heather Norton on behalf of Raj

15    Abhyanker.

16         THE COURT:  Thank you, Ms. Norton.

17         MR. WALIA:  Good morning, your Honor.  Harpreet Walia

18    appearing on behalf of codefendants, Sandeep Sood and Monsoon

19    Enterprises.

20         THE COURT:  Thank you, Mr. Walia.

21         MR. RAWLINSON:  Matt Rawlinson on behalf of

22    Benchmark.

23         THE COURT:  Thank you, Mr. Rawlinson.

24       So I issued the order this morning that you've received

25    granting Mr. Abhyanker's motion for leave.  And knowing that a
```

1    number of -- gone through several literations, but the scope of

2    the counterclaim has been narrowed to some degree.

3        But I think what I want to do is talk about how we -- what

4    the next step is and how we move this thing along.

5        And it seems like the first issue is this question about

6    whether we should put on a schedule -- an expeditious hearing

7    on the adequacy of the Trade Secret Claim; is that --

8            MR. PULGRAM:  Your Honor, that is our position at

9    Nextdoor.  And our sense on this -- and you've probably noticed

10   this morning also there was an amended Trade Secret disclosure

11   filed; a second amended.  One of the three Trade Secrets

12   identified has been withdrawn.  That was the Source Code.

13           THE COURT:  Yeah.

14           MR. PULGRAM:  And so we have these two left that we

15   believe are not secrets; they're public.  They haven't been

16   adequately disclosed because they aren't secrets.  And we think

17   the best way to go about addressing them is by a motion for

18   judgment on the pleadings and or Rifle Shot summary judgement

19   where we would say this is public.  These are facts that are in

20   possession of the plaintiffs.  Nothing we need to have

21   discovery about.  We don't have to get into, quote, the

22   adequacy of the designations as much as disposition of the

23   claim.

24       We think that we can do that on a motion for judgment or on

25   the pleadings.  Or, as I said if necessary, we would put in

1    Rifle Shot facts and we request an exception from the One

2    Summary Judgment Rule.

3        I think one other advantage of that is five of the six

4    counter-defendants are only on the Trade Secret Claim.  And we

5    could get rid of all those counter-defendants and I think we

6    can do all of that quite quickly.

7            THE COURT:  How long will it take you to get such a

8    motion on file?

9            MR. PULGRAM:  We could do it within a matter of a few

10   weeks.  And Mr. Rawlinson, who has got a client with some of

11   the same defenses -- but more because he hasn't answered at all

12   yet -- also has an initial response to the complaint that's

13   due.  I can't speak for him.

14           MR. RAWLINSON:  Yes, your Honor.  We have an

15   agreement with defendant, counter-plaintiff.

16       When we were served at about the time that they requested

17   leave to file the complaint that your Honor ruled on today --

18   and partly because of the history both in the State Court and

19   this Court -- we said we've now filed a number of motions to

20   dismiss and each time it gets superseded by a new complaint.

21       We'd like to know what target we're shooting at and so we

22   agreed we'd file our motion to dismiss 21 days after your

23   Honor's ruling on the motion for leave.

24       So it's currently due, I think, on January 2nd; unless

25   there's a dispute on that.  We can probably file it more

1    quickly.

2         But the basis for our motion is primarily -- although, it

3    may involve some of the same issues that Nextdoor just brought

4    up.  When the original complaint in this matter was filed,

5    there was a Contract Claim against us; which is the basis, I

6    think, for the idea that there was any duty of confidentiality

7    by Benchmark at all.

8         We wrote a motion to dismiss and filed it in the Court that

9    said no, that's not a valid contract; Statute of Clause, etc.,

10   etc.  And then that issue was never ruled on by the Court

11   because Mr. Abhyanker filed an amended complaint which removed

12   the Contract Claim and just asserted the Trade Secret Claim.

13        We think it's a legal issue that was not addressed in your

14   Honor's prior motion to dismiss about whether you can avoid the

15   Statute of Clause issue just by calling it a Trade Secret Claim

16   if the underlying duty is just a Contract Claim; an asserted

17   oral contact.

18        We also think in light of the pleadings that have been

19   filed; as I understand it, the only two Trade Secrets that are

20   now asserted are one of bidding history on the term

21   Nextdoor.com, which you've already held is not a trade -- the

22   term is not a Trade Secret and the Laurel Line (phonetic)

23   neighborhood.  I'm not sure either of those is a Trade Secret.

24        I need to do the research on whether I can properly file

25   that on a motion on the pleadings in light of how they were

1    disclosed, but I might add that issue to the motion as well.

2    It's currently due January 2nd.

3        I do have one other issue.  Not to burden your Honor, but

4    I'm a little concerned.  I know the parties submitted their

5    proposed dates that Mr. Abhyanker has proposed a January 12th

6    or January 13th, 2014 deadline for further amendments to the

7    pleadings.  I found that a little bit puzzling because you just

8    ruled on the second amended complaint.

9        And I'm a little bit concerned I'm being set up for the

10   third or fourth time where I file my motion to dismiss only to

11   have it superseded by yet another complaint.

12       I guess I would ask Mr. Abhyanker's counsel here today; you

13   know, what's the purpose of yet another date for amendment on

14   the pleadings and is there some contemplated amendment and

15   should we coordinate that with whatever motions the parties are

16   going to file?

17           THE COURT:  Yeah, I think that's a fair question.

18           MS. NORTON:  There's no plans to further amendment

19   the pleadings.  When we were coming up with this schedule, we

20   received this schedule from Nextdoor.com first and they

21   included a date to amend the pleading.  And we also included a

22   date just to be consistent with the rest of the calendar, but

23   we're fine with moving that forward.

24           THE COURT:  Nobody plans to amend pleadings at this

25   point?  Or I'm just going to delete that.  We don't need that.

6

1    If someone wants to seek leave to amend, you'll have to go by

2    Rule 15; but otherwise, I'm not going to anticipate -- I'm not

3    gonna --

4         MR. RAWLINSON:  In terms of timing, your Honor, we

5    can certainly file January 2nd.  I wouldn't mind another week

6    just so I don't have to make --

7         THE COURT:  It makes sense to coordinate all these.

8    I don't want to get it ad seriatim.  I'd rather have one

9    consolidated hearing on this since there's going to be some

10   overlap.

11        MR. PULGRAM:  There is.  And there's one other issue,

12   which you'll remember from the discussion we had about

13   amendment of the complaint.  And Mr. Abhyanker advised that he

14   was attempting to plead a Common Law Trademark Claim on

15   Nextdoor and our position was he hasn't plead any Use in

16   Commerce that can support such a claim.  I was going to suggest

17   until your order preceded me here today by being entered.

18        But rather than us making a motion to dismiss on that basis

19   and they're saying oh, we've got more facts that we could

20   plead, that the plaintiffs actually identify what it is that

21   they claim is their Commercial Use in Commerce that can

22   establish priority of use in the name Nextdoor.

23        The current pleading has general allegations at paragraphs

24   161 and 162 that include a lot of things that can't possibly be

25   Use that would be priority of Use here.  And they don't

1   identify any actual Use in Commerce.

2       Putting the word "Nextdoor" on your name site -- or your

3   website as one line is not a Use in Commerce that can designate

4   origin.  So that's what I was going to suggest, but your Honor

5   already entered the order.

6       I suppose if I were going to trouble you with that, I would

7   say it would make sense to say to the plaintiffs within seven

8   days, identify the specific Uses in Commerce that you contend

9   support priority of Use and attach the exhibits that show them;

10  otherwise, I'm afraid we're going to keep punching at clouds as

11  we have so far.

12      THE COURT:  The other way to do this is to include

13  that as a partial motion for summary adjudication then on that

14  particular element.  You believe that they failed to have any

15  evidence of that element.  And rather than doing this as

16  motions to dismiss or statements with pleadings, let's just

17  handle it as an adjudication.

18      MR. PULGRAM:  Well, we can; but what we are going to

19  have to do in that case is continue to produce the discovery

20  we're having the disputes over where they claim they've got

21  something that would demonstrate Use and we haven't seen it.

22      And so until we get through with all that discovery -- my

23  view on the pleading was if they would just say what it is that

24  purported to establish that Use, then we'd know whether or not

25  that's something that could potentially state a claim.

1    But I don't think we're in a position to do a summary

2    judgment motion on that.  I think if they actually stood up

3    straight and tall and said this is where we claim we Use that,

4    then we'd have no motion to dismiss on.

5         THE COURT:  Well, what's your -- let me hear from --

6    from you.  What is the alleged -- what's your response to the

7    Commercial Use?

8         MS. NORTON:  Our view is this was something that

9    would be more appropriate to motion practice, but it is part of

10   the operative pleading now.

11    And if they want to challenge that pleading, it would be

12   better dealt with through a motion to dismiss or a summary

13   judgment motion rather than deviating from the normal

14   procedures and requiring some statement within a certain number

15   of days.

16        THE COURT:  Well, that is the subject, I take it, of

17   discovery at this point.  Is there a contention interrogatory?

18        MR. PULGRAM:  There is and there's all the document

19   issues that are in the pleading here.

20    What I think that it would take would be an addition of two

21   sentences to the amended order by your Honor that they're

22   permitted leave to amend as you've permitted, but they're

23   directed to state the specific uses and the dates and attach

24   those uses on which they claim priority.

25    It's a one-sentence addition, which I think is a completely

1    reasonable request for your Honor to make at this point where

2    we're at round four of the pleadings.

3              THE COURT:  Right.  Let me ask --

4              MR. PULGRAM:  We don't want to go around anymore.

5              THE COURT:  -- what objection do you have to that

6    proposal?  I mean, you have the information so it's not like

7    you need discovery rather than -- I understand this is a little

8    different and I would be requiring some degree of specificity

9    and I could do that under the Rubric of Plausibility under

10   *Iqbal* and *Twombly* if I wanted to; but as a practical matter,

11   what's -- why not?

12             MS. NORTON:  If that's the way your Honor wishes to

13   proceed, then we wouldn't have an objection.

14             THE COURT:  All right.  Then we at least get that

15   issue at least off the table at this pleading stage.

16             MR. PULGRAM:  Exactly.

17             THE COURT:  And then we go on to other stuff.

18             MR. PULGRAM:  Either we'll have a motion or we won't.

19   Exactly.  And --

20             THE COURT:  All right.  Then I will order that the --

21   I amend my order orally here to require Mr. Abhyanker to

22   identify the prior commercial use.

23        Now, you're suggesting that documentation be attached to

24   that?

25             MR. PULGRAM:  The Trademark.  I mean, it has to

1    actually have been a mark.  There must be a picture.

2           THE COURT:  All right.  I think that's a fair request

3    and I'd do that under the Plausibility Requirements of *Iqbal*

4    and *Twombly* that such Use -- any documentation of such Use be

5    attached.  And we'll call it a -- just -- we have to amend the

6    complaint again.  And I don't want another -- third or whatever

7    -- fourth, but just call it a supplement to the complaint.

8        And how long will you need to do that, Counsel?

9           MS. NORTON:  My schedule -- I know that the holidays

10   are approaching and my client has some travel plans.  I think

11   if we said two weeks, that would probably be safe.

12          THE COURT:  Okay.  All right.  Within two weeks,

13   supplementation of the counterclaim to identify the prior

14   Commercial Use and any exhibits thereto.

15          MR. PULGRAM:  But that would take us to the 26th.

16   And I think within two weeks after that, we could probably file

17   our motions.  And I think we'll file a judgment on the

18   pleadings and or summary judgment on the Trade Secrets and we

19   could also -- if we have a motion on the pleadings on the

20   Trademark, we'll add that; but if we don't, we'll answer.

21          THE COURT:  All right.

22       And with respect to your question about you think it's more

23   appropriate to have a targeted summary judgment motion without

24   exhausting potential summary judgment motions on the larger

25   questions.  I'm inclined to do that because we have a discrete

1    issue I and don't want to lock ourselves in; if for some

2    reason, it can't be resolved by a judgment on the pleadings;

3    but could be resolved by a summary judgment process.  So I

4    think that I will make an exception -- one exception for that,

5    but I don't want a whole series of summary judgment motions.

6              MR. PULGRAM:  Thank you, your Honor.

7              THE COURT:  But it's targeted enough and makes sense

8    to advance the litigation and I think we need to resolve that.

9        I know there's questions about getting discovery, but I

10   think we ought to resolve that before opening discovery on the

11   question of Trade Secrets so that portion of discovery will

12   continue to be deferred until we resolve the motion.

13       You going to file that motion along with the -- your

14   motion?  What's the date?

15             MR. PULGRAM:  January 9th.

16             THE COURT:  With respect to these other discovery

17   issues that are impending, I'm not sure what the problem is

18   here.

19       I mean, I've seen your little -- your summaries.  The first

20   question is the adequacy of the search for responsive

21   documents.  And that Nextdoor is asking for some specificity as

22   to that search process; is that correct, Mr. Pulgram?

23             MR. PULGRAM:  Yes, your Honor.

24             THE COURT:  And -- which is sometimes ordered.  It

25   doesn't seem to be too onerous just to identify what the

1    processes were.

2          Is there an objection to that?

3          MS. NORTON:  No, there's no objection.

4    The issue is that this wasn't raised prior to our meet and

5    confer so we weren't able to properly meet and confer about the

6    issue.

7          And we're, frankly, not quite sure why the adequacy of our

8    production is being called into question, but we would -- we've

9    already offered to agree on a list of search terms if they

10   wanted to provide us with the list or to hash out together a

11   list of search terms to make sure that all the basis are

12   covered.  We offered to do that and didn't hear a response back

13   on that.

14         THE COURT:  They also wanted to know what

15   repositories were looked at to make sure that -- it seems to be

16   that's a -- that's not overly onerous and I think that's a fair

17   request.

18         With respect to the second issue; producing a copy of the

19   due diligence CD or package provided at Benchmark; I understand

20   that the concern is there may be some sensitive information in

21   there.  But if this is done under a protective order, I'm not

22   sure what the -- why that wouldn't --

23         MS. NORTON:  Our confusion is that our

24   understanding -- and I think your Honor just confirmed it -- is

25   that discovery on Trade Secret is not yet open and that CD

1    really is on the issue of Trade Secrets.

2        I know that Nextdoor maintains that it has Trademark

3    implications as well, but they mention that the Trademark on a

4    confidential CD provided in a pitch is not actually Use of the

5    mark.  So the CD was really a Trade Secret CD.  And if

6    discovery is not mutually open on that issue right now, then we

7    think it's appropriate to --

8            THE COURT:  Right.  Is there any objection to

9    deferring this item until we resolve the Trade Secret question?

10           MR. PULGRAM:  So their allegation specifically said

11   that the CD included business plans, Trademarks, and mockups

12   with the word "Nextdoor" in the upper left-hand side.  So

13   they've identified the CD as including Trademark stuff.

14       But second, I'm not interested in going into a lot of other

15   Trade Secret discovery at this point; but the reason we have a

16   hold on Trade Secret discovery until a plaintiff or a claimant

17   can identify the Trade Secret is so they don't start rummaging

18   around without having any claim.

19       And generally, it's a one-way blockade.  I'm not trying to

20   break down the blockade in general; I'm -- we're fine deferring

21   the discovery on that overall, but denied a CD that they first

22   say they didn't have at all and now say oh, we want to pull

23   those things that we think are relevant to Trademark and not

24   give you the rest of.  I'm not sure why they don't just give it

25   to us.  I think this is to hide --

```
 1                    THE COURT:  So what's the harm in -- I mean,

 2      Trademark -- Trade Secret discovery -- assuming that the claim

 3      stays in -- is going to be opened up soon anyway.  And if this

 4      has -- I don't know what portion of this contains Trade

 5      Secret -- relates to the Trade Secret Claim as opposed to

 6      Trademark and everything else.

 7                    MS. NORTON:  Our view is that the entire CD relates

 8      just to the Trade Secret Claim because this is the pitch that

 9      was given in confidentiality -- in confidential -- sorry -- the

10      confidential pitch that was provided with Mr. Abhyanker's

11      information about his business plans and so the entire CD

12      really relates to Trade Secrets.

13                    THE COURT:  But not to the two Trade Secrets that are

14      at issue now in this counterclaim necessarily?

15                    MS. NORTON:  It --

16                    THE COURT:  Well --

17                    MR. PULGRAM:  But, your Honor, their point is they

18      already gave it to Benchmark.  I mean, it's not as though this

19      hasn't been provided to someone before.  We'll trade it EAO

20      (phonetic).  We're fine with that.

21                    THE COURT:  All right.  I'm going to order it

22      produced for attorneys' eyes only at this point.

23          The third issue pertains to supplemental verified

24      responses.  Is that a form problem that certain things were

25      included, but not pursuant to a verified interrogatory
```

1    response?

2              MR. PULGRAM:  Yeah.  There was back and forth in the

3    correspondence.  And I -- we had a little progress actually

4    since our meet and confer on a couple issues and this may be

5    one where I think if we identified them; we want you to verify

6    this, this, this, this, and this; we think those are responsive

7    interrogatories; then we'll be able to have a universe of

8    information that we think actually needs to get put in a

9    verified response rather than a letter.

10        We'll highlight those points for them; and unless they

11   disagree that those are related to the interrogatory, we think

12   they should be included in the response.

13             THE COURT:  Right.  Why don't meet -- why don't you

14   do that; meet and confer.  As long as there's not a relevancy

15   problem, seems to me it's fair to back up whatever those sort

16   of facts are with the verification.

17             MS. NORTON:  It will be a help if they'll provide the

18   specific facts they want us to include.  There may be a

19   relevancy problem, but I'm happy to meet and confer about it

20   and see if we can resolve the issue.

21             THE COURT:  All right.  Good.

22        And the last one pertains to documents relating to the

23   transfer between various entities.

24        And now, what's the relevance of that?

25             MR. PULGRAM:  Mr. Abhyanker claims that he has rights

1    in the FatDoor Mark, which belonged to FatDoor.  He also claims

2    that he has rights in the Nextdoor -- the term Nextdoor, which

3    we believe he represented to Benchmark way back when was part

4    of his FatDoor pitch.

5        We want the documentation that relates to his transfers of

6    those marks.  They've produced two documents so far and a

7    number haven't been produced.  And none of the correspondence

8    relating to the two that have been produced has been found.  We

9    don't have any e-mail on this as with other things.

10       But one thing in particular that is an example of where we

11   think we haven't gotten things; FatDoor changed its name after

12   Mr. Abhyanker.  It became Center'd.  And there is a transfer

13   that we have seen signed by Mr. Abhyanker purporting to act on

14   behalf of Center'd -- the company that he was not with because

15   it changed the name after he left -- purporting to inside to

16   himself Center'd's rights in the term FatDoor.

17       We want to know how on Earth he got the right to act on

18   behalf of Center'd to take what were the company's rights that

19   he had left and conveyed to himself and we no documentation of

20   that.

21       Another example is where -- at the time that FatDoor was

22   first set up, Mr. Abhyanker claims that he carved out certain

23   rights in Nextdoor and held them himself; and that there were

24   documents that explained this that were created at that time

25   and provided to a specific guy, Mr. Warren.  We don't have

1     those communications.

2          So, I mean, these are things that are, you know, legally

3     binding and operative documents that were created in the time

4     that we still haven't been provided.

5               THE COURT:  Okay.  What's your response?

6               MS. NORTON:  Some of the things that they're asking

7     for don't exist.  There simply may not be correspondence

8     surrounding the transfer from Center'd Corporation to

9     Mr. Abhyanker, but we have produced what is in his possession

10    and control and what he's been able to locate.

11              THE COURT:  Are you saying that you produced

12    everything that's responsive that's within his possession,

13    control, and custody?

14         Well, then what I think is fair because it sounds like

15    there's some apparent holes where would one expect some

16    documents is to do the same kind of verification to state what

17    was searched, how it was searched, and do that under

18    verification to give some assurance that the search was

19    thorough; and in fact, everything that's responsive has been

20    produced.  And if it's not there, it's not there.  What else --

21              MR. PULGRAM:  Understood.

22              THE COURT:  Verification of search process; and

23    again, verification.

24         All right.  So it sounds like the next step is to hear

25    those motions, which we will hear in February.  We'll set that

1   as a status date as well.

2       In terms of scheduling, based on the -- what I've seen

3   here, I'm inclined to set this for trial on December -- is that

4   1st or 9th?

5               (Whereupon there was a discussion off the record.)

6           THE COURT:  1st or 9th.  I can't -- December 1st,

7   yeah -- which gives you until June 12th as a nonexpert

8   discovery close.

9           MR. PULGRAM:  And do the rest of the dates fall off

10  the Rules or --

11          THE COURT:  I will include that in my scheduling

12  order that -- you know, I have a template.

13      So pretrial conference would be in -- on November 18th;

14  last day to hear dispositive motions would be September 4th;

15  and I have a whole thing about when you have to meet and confer

16  and everything else; close of expert discovery in July.

17      So that will all fall out.  I'll provide you with that.

18          MR. PULGRAM:  May I ask just one question?

19          THE COURT:  Yeah.

20          MR. PULGRAM:  How long for rebuttal expert reports?

21  Sometimes, we see three weeks; sometimes we see a month.  And

22  my experience is a month is almost always required.

23          THE COURT:  Well, I usually give three weeks.  Exert

24  disclosure is June 12th; rebuttal July 3rd; and close of expert

25  discovery July 24th.

1          You can stipulate to extend that a bit; particularly, if

2     that doesn't interfere with any summary judgment motion.

3          Frankly, I don't care.  My main thing is I need to hear any

4     summary judgment motion by that day and I've got to have time

5     to resolve it in time for you to meet and confer in preparation

6     for the pretrial conference.

7          So these other dates, I don't mind some slippage as long as

8     it doesn't affect the dates that you're here and the hearing

9     dates.

10              MR. PULGRAM:  Well, I would just suggest maybe as a

11    beginning, we do July 11th instead of July 3rd and that would

12    still give us almost two weeks to complete expert discovery

13    after that and not have to move any other dates; if that's

14    acceptable with Benchmark?

15              MR. RAWLINSON:  Yes.

16              THE COURT:  All right.  We'll change that one.

17              MR. PULGRAM:  It's not a Saturday.

18              THE COURT:  Nope.  Well, I assume that it's not.

19          And let me last -- let me last ask; I know you've had a

20    settlement conference with Judge Vadas and it didn't settle; is

21    there a juncture that you foresee where it might be useful to

22    regenerate ADR efforts and or whether you want to try a

23    different forum?

24              MS. NORTON:  From our point of view, probably not

25    until after the dispositive motions are resolved.

1          THE COURT:  Okay.

2          MR. PULGRAM:  We'll have a first set of those in

3    February so we probably will want to look up then and see where

4    things are.

5          THE COURT:  All right.  Well, I'll probably raise it

6    anyway as I always do and see if something has changed at that

7    point.  Okay.  All right.  Thank you.

8          MR. PULGRAM:  Thank you for your time.

9          THE COURT:  Thank you.

            (Proceedings adjourned at 12:00 p.m.)

## CERTIFICATE OF REPORTER

I certify that the foregoing is a true and correct transcript, to the best of my ability, of the pages of the official electronic sound recording provided to me by the U.S. District Court, Northern District of California, of the proceedings taken on the date and time previously stated in the above matter.

I further certify that I am neither counsel for, related to, nor employed by any of the parties to the action in which this hearing was taken; and, further, that I am not financially nor otherwise interested in the outcome of the action.

_____DATE 12-27-13

Carrie McKee-Parks, CSR #13200          Date
McKee-Parks65@att.net
510-637-9897