| | |
|---|---|
| 1 | **BRUNO W. TARABICHI**, CA State Bar No. 215129 |
| | bruno@legalforcelaw.com |
| 2 | **HEATHER R. NORTON**, CA State Bar No. 257014 |
| | heather@legalforcelaw.com |
| 3 | **LEGALFORCE RAJ ABHYANKER, P.C.** |
| | 1580 W. El Camino Real, Suite 13 |
| 4 | Mountain View, California 94040 |
| | Telephone:  650.965.8731 |
| 5 | Facsimile:   650.989.2131 |
| 6 | Attorneys for Defendant |
| | Raj Abhyanker |
| 7 | |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| NEXTDOOR.COM, INC., a Delaware corporation, | | Case No. 3:12-cv-05667-EMC |
| Plaintiff, | | **DEFENDANT AND COUNTERCLAIMANT RAJ ABHYANKER'S OPPOSITION TO NEXTDOOR.COM, INC. AND PRAKASH JANAKIRAMAN'S SUPPLEMENTAL BRIEF IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT ON ABHYANKER'S TRADE SECRET MISAPPROPRIATION CLAIM** |
| vs. | | |
| RAJ ABHYANKER, an individual, | | |
| Defendant. | | |
| RAJ ABHYANKER, an individual | | |
| Counterclaimant, | | |
| vs. | | |
| NEXTDOOR.COM, INC., a Delaware corporation; PRAKASH JANAKIRAMAN, an individual; BENCHMARK CAPITAL PARTNERS, L.P., a Delaware limited partnership; BENCHMARK CAPITAL MANAGEMENT CO. LLC, a Delaware limited liability company; SANDEEP SOOD, an individual; MONSOON ENTERPRISES, INC., a California corporation, and DOES 1–50, inclusive; | | |
| Counterdefendants. | | |

OPP. TO NEXTDOOR SUPPLEMENTAL
BRIEF
(CASE NO. 3:12-cv-05667-EMC)

**Background**

Nextdoor.com, Inc ("Nextdoor") has wasted the Court's time by submitting evidence that is irrelevant and outside of the scope of the Court's directive. At the February 20, 2014 hearing, Nextdoor argued that Lorelei residents must have been aware that their neighborhood had been identified as the ideal neighborhood in which to prototype a neighborhood social networking concept. The Court specifically found that Nextdoor's motion for summary judgment did not include any evidence supporting that argument. Nevertheless, the Court allowed Nextdoor a chance to try to present evidence specifically showing that the Lorelei residents were specifically aware that Mr. Abhyanker's social networking site was being prototyped within the boundaries of the Lorelei neighborhood.

Despite being given that opportunity, Nextdoor has again failed to introduce a single piece of evidence that supports its argument, and its brief simply restates the same arguments that this Court already rejected.

**Nextdoor Fails to Introduce any Evidence that Supports its Argument**

Exhibits E, H, I, and K consist of articles discussing the launch of Fatdoor.[1] None of those articles mentions the word "Lorelei" even once. The articles in fact contradict Nextdoor's claim that the secrecy of Mr. Abhyanker's trade secret was not maintained.

Exhibits E and H both explain that Fatdoor was to "start out covering Silicon Valley and spread outward." Ex. H at p. 1; *see also* Ex. E at p. 9. Exhibit H further states that the alpha version "covered only a small part of Cupertino, CA." Ex. H at p. 2. Neither exhibit identifies Lorelei, discusses how Fatdoor defined neighborhoods, or explains what users understood to be the boundaries of their neighborhood in the Fatdoor site.

Exhibit I states that Fatdoor "has been under wraps for some time now". Ex. I at p. 1. Accordingly, this exhibit supports Mr. Abhyanker's assertions that his selection and transformation of the Lorelei neighborhood was a closely held secret.

Exhibit K does not mention the Lorelei neighborhood. Instead, it explains that the manner in which neighborhoods were defined by Fatdoor was in flux. In particular, the article states,

---

[1] All references to exhibits refer to exhibits to the Kelly Declaration, ECF 166-4.

1  "We've been playing around with the distance, and after some testing we've found that keeping it
2  at a 5 mile radius [from the user's residence] is the most reasonable," he said. "It keeps the focus
3  on the neighborhood and also keeps the feeling of community. Of course, this is something that
4  we're going to have to change depending on the size and layout of a city, but during testing it
5  seemed like the ideal distance." Ex. K at p. 1. Accordingly, the article undermines the argument
6  that a resident of Lorelei must have known the geographic boundaries of the prototype. To the
7  contrary, it explains that the boundaries of a given neighborhood changed during testing.

Exhibit F is entirely irrelevant. First, it is an article from October 2010. On that basis alone it is irrelevant given that secrecy is evaluated at the time of misappropriation. In addition, the subject of the article is the Lorelei Manor neighborhood, which is a different neighborhood than the Lorelei neighborhood in which Mr. Abhyanker prototyped his social networking concept as admitted on Nextdoor's own website.[2] Exhibit F does not relate to or mention Fatdoor or Mr. Abhyanker at all. Accordingly, this exhibit has abolutely no bearing on the issue at hand.

Exhibits C and J are screenshots that fail to provide support for Nextdoor.com's argument. Exhibit C is screenshot that was provided to Benchmark in confidence on the Due Diligence CD. As an initial matter, the screenshot was not taken from a publicly available website, and Nextdoor.com does not introduce any evidence to the contrary. Instead the screenshot simply captured an HTML file, which was provided to Benchmark for informational purposes, pursuant to a confidentiality agreement. Moreover, the screenshot depicts a concept called FatPak, not Fatdoor. Thus, even if it had been publicly available, it would be irrelevant to the present motion.

Exhibit J is a screen capture of a website that was publicly available, but the website does not mention Lorelei anywhere, nor does it mention any definition of "neighborhood" in the Fatdoor site. The website is simply a blog that discusses the launch of Fatdoor, and explains that Fatdoor is a "hyperlocal" website. The fact that Fatdoor was focused on connecting neighbors does not demonstrate that residents of the Lorelei neighborhood were aware of the details of how Mr. Abhyanker chose to prototype his website. There is a large gap between learning of a website that has a local focus, and learning that the website is being prototyped within particular

---

[2] Compare https://loreleimanor.nextdoor.com/login/ with https://lorelei.nextdoor.com/login/.

SUPPLEMENTAL BRIEF ATTACHING
CONFIDENTIALITY AGREEMENT
CASE NO. 3:12-cv-05667-EMC

1   geographical boundaries for a particular reason.

2        Exhibit D also consists of material from the Due Diligence CD that was provided to Benchmark in confidence, and filed under seal by Nextdoor. That exhibit merely describes Lorelei as a pilot neighborhood for a Private Alpha Test launch. The exhibit does not consist of materials that were provided to Lorelei residents, and does not relate to what the Lorelei residents know about the test launch. In fact, the exhibit again undermines Nextdoor's argument, given that it confirms the privacy of the test.

     Exhibit G is a copy of Mr. Abhyanker's State court complaint, which is irrelevant to the present action. Nextdoor does not refer to this exhibit in its brief. Instead the Kelly declaration points to a statement in Exhibit G explaining that the pilot in the Lorelei neighborhood included an "activation process through which new users are permitted to view information only within their present geospatial boundaries." Kelly Decl., ¶ 8. The Exhibit does not explain how the "geospatial boundaries" were defined, and does not explain what users knew about geographic boundaries. The exhibit therefore does not provide evidence to support Nextdoor's argument.

     Exhibits A and B, which likewise are not mentioned in Nextdoor's brief are each terms of use for the Fatdoor public website post launch in 2007 and do not mention the word Lorelei, or discuss at all the definition of a neighborhood. They are therefore utterly irrelevant to the Court's request.[3]

     To cover-up its lack of evidence, Nextdoor offers only conjecture and reiterates arguments that the court has already found insufficient to prevail at the summary judgment stage. Nextdoor argues that because Fatdoor had a local focus, users must have known Mr. Abhyanker's trade secrets. But Nextdoor failed to offer a single piece of evidence in support of that argument. Given that the evidence Nextdoor has submitted in fact supports Mr. Abhyanker's arguments, Mr. Abhyanker should be allowed to proceed to the discovery phase on his trade secret claims.

---

[3] Nextdoor submits those exhibits purportedly to show that they do not contain confidentiality provisions. That submission is beyond the scope of the Court's order. In addition, Nextdoor appears to assume that Exhibits A and B were the online agreements that were used when the prototype was conducted, but they were not.

| | | |
|---|---|---|
| 1 | Dated: March 6, 2014 | Respectfully submitted, |
| 2 | | LEGALFORCE RAJ ABHYANKER, P.C |
| 3 | | BY: /s Heather R. Norton |
| 4 | | Bruno W. Tarabichi<br>Heather R. Norton<br>Attorneys for Defendant |
| 5 | | Raj Abhyanker |

SUPPLEMENTAL BRIEF ATTACHING
CONFIDENTIALITY AGREEMENT
CASE NO. 3:12-cv-05667-EMC

4