Raj V. Abhyanker
1580 W. El Camino Real Suite 13
Mountain View, California
408-398-3126

*FILED*
2014 JUN 13 P 3: 21

June 13, 2014

Hon. Edward M. Chen
United States District Judge
Northern District of California
450 Golden Gate
Courtroom 5, 17th Floor
San Francisco, CA 94102

Case No. 3:12-cv-05667-EMC

**Re: Discovery Close and Attorney Representation**

Dear Judge Cousins and Judge Chen:

First, I submit this Discovery Letter brief in defense of allegations made against me in the letter filed with the court on June 9, 2014 (Dkt. 212). The attached **Exhibit One** is a point-by-point rebuttal of each allegation made against me in Exhibit A of Dkt. 212-1.

Second, I submit this Discovery Letter brief to appeal to the court to not permit my counsel from withdrawing from this case at this late stage in the proceedings. I understand that my counsel has claimed that they must mandatorily withdraw on June 11, 2014 (Dkt. 217). However, I believe that my counsel's concerns largely stem from the harassment and fear that they have suffered at the hands of counsel for Nextdoor, and are not genuinely supported in any State Bar requirement requiring them to withdraw based on my **Exhibit One**.

My counsel is well versed on the facts in this case, and I need their support for the remainder of this case through trial. Permitting my counsel to withdraw at this late stage of discovery will create irreparable harm to me and my rights in this case. Particularly, the facts in my case are detailed and complex. It will be extremely difficult for me to find new counsel in my case with the remaining months before trial. For these reasons, I respectfully request that the Court not permit my counsel to withdraw in this case until and unless I am able to find counsel to represent me with respect to remaining issues in this matter.

Respectfully submitted,

/s/ Raj Abhyanker

Defendant

# EXHIBIT ONE

**Defendant Raj Abhyanker's point by point rebuttal to Exhibit A filed in**

**Case3:12-cv-05667-EMC Document212-1 Filed June 9, 2014**

1. Admitted. Abhyanker respectfully states that redacted portions of Exhibit G were privileged communications to his client Jeffrey Drazan and former client Center'd, Inc. Abhyanker's understanding of "true and correct" was based on his knowledge of quotations in his field of practice, patent prosecution. An unredacted copy has been provided after privilege review.

2. Denied. Nextdoor assumes facts not in evidence. Abhyanker respectfully maintains that Hansen said to Abhyanker that absent a functioning Board of Directors, he believed that a vote from a voting Series A preferred shareholder (Jeffrey Drazan) would suffice.[1] Abhyanker does not believe that a Board of Directors operated for Center'd in November 2012 after diligently trying to find out from previous board members and Hansen. [2]

3. Denied. Nextdoor assumes facts not in evidence. There are no facts to establish that the former Board Members were board members in 2012.[3] Abhyanker respectfully submits that there are no facts to support that the former Board members to whom Abhyanker was communicating with were in fact on the Board of Directors in November 2012. To the contrary, Abhyanker maintains that in a follow up call to the communication opposing counsel cites, former Director Alessandro Biral believed that all Board Members had resigned by November 2012 and there was no active Board of Center'd, Inc. as of November 2012.[4]

4. Denied. Nextdoor assumes facts not in evidence. There are no facts to establish that the former Board Members were board members in 2012 or 2013.[5] Abhyanker respectfully maintains that Hansen said to Abhyanker that absent a functioning Board of Directors, he believed that a vote from a voting Series A preferred shareholder (Jeffrey Drazan) would

---

[1] see Abhyanker Rough Transcript, Day 1, section 201, page 217, lines 8-11,

[2] (Hansen Rough Transcript, page 0119, lines 8-12)

[3] (Hansen Rough Transcript, page 0119, lines 8-12)

[4] see Abhyanker's deposition day 1, section 0211 and 0212, page 228, lines 24-25

[5] (Hansen Rough Transcript, page 0119, lines 8-12).

suffice.[6] Abhyanker does not believe that a Board of Directors operated for Center'd in November 2012 after diligently trying to find out from previous board members and Hansen.[7] For at least these reasons, Abhyanker continues to believe his $1 assignment agreement between himself and Center'd is valid.[8]

5. Denied. Nextdoor assumes facts not in evidence. Abhyanker maintains that Abhyanker handed a Due Diligence CD to Benchmark in June 2007. Abhyanker never claimed that the original Due Diligence CD was found, but only recovered data of the original CD was restored in December 2013. Abhyanker no longer as present memory of what contents were on the Due Diligence CD provided to Benchmark in June 2007, but believes that included Executive_Summary_Fatdoor 6-21-2007.[9]

6. Denied. Nextdoor assumes facts not in evidence. Abhyanker maintains that Abhyanker handed a Due Diligence CD to Benchmark in June 2007. Abhyanker never claimed that the original Due Diligence CD was found, but only recovered data of the original CD was restored in December 2013. Abhyanker no longer as present memory of what contents were on the Due Diligence CD provided to Benchmark in June 2007, but believes that included Executive_Summary_Fatdoor 6-21-2007. Abhyanker denies creating the Executive_Summary_Fatdoor 6-21-2007 for the purposes of supporting his allegations in the instant suit.[10]

7. Denied. Nextdoor assumes facts not in evidence. Abhyanker explained his meaning of 90% penetration rate during his deposition.[11]

---

[6] see Abhyanker Rough Transcript, pages 242-243, section 0224 and 0225, lines 25 on 242 continued to lines 15 on page 243.

[7] (Hansen Rough Transcript, page 0119, lines 8-12). (Hansen Rough Transcript, page 0126, lines 6-8 (Hansen Rough Transcript, page 0126, lines 12-17).

[8] see Abhyanker's deposition day 1, section 0211 and 0212, page 228, lines 24-25 and continued to page 229 lines 1-5

[9] see Abhyanker Rough Transcripts including but not limited to Abhyanker Rough Transcript, pages 242-243, section 0224 and 0225, lines 25 on 242 continued to lines 15 on page 243.

[10] see Abhyanker Rough Transcripts including but not limited to Abhyanker Rough Transcript, pages 242-243, section 0224 and 0225, lines 25 on 242 continued to lines 15 on page 243.

[11] see Abhyanker Rough Transcripts including but not limited to Abhyanker Rough Transcript, pages 242-243, section 0224 and 0225, lines 25 on 242 continued to lines 15 on page 243.

8. Denied. Nextdoor assumes facts not in evidence. Abhyanker maintains that Lorelei is mentioned in numerous places in the Benchmark Diligence CD including in references to Fatpak previously referenced by opposing counsel in their own Motion for Summary Judgment on Abhyanker's trade secret misappropriation claim. [12]

9. Denied. Nextdoor assumes facts not in evidence. Abhyanker maintains that the June 4, 2007 agreement is authentic and is consistent with documents provided by third parties as explained during his deposition. [13]  Further, Babar Rana recalled seeing this agreement before.[14]

10. Denied. Nextdoor assumes facts not in evidence. Abhyanker maintains that the June 4, 2007 agreement is authentic and is consistent with documents provided by third parties as explained during his deposition including with respect to the wind down in December 2008. [15]

11. Denied. Nextdoor assumes facts not in evidence. Abhyanker has turned over all records with respect to his email accounts and custodial files to his counsel in this case. [16]

12. Denied.   Nextdoor assumes facts not in evidence. Abhyanker maintains that Abhyanker handed a Due Diligence CD to Benchmark in June 2007.   Abhyanker never claimed that the original Due Diligence CD was found, but only recovered data of the original CD was restored in December 2013.   Abhyanker no longer as present memory of what contents were on the Due Diligence CD provided to Benchmark in June 2007, but believes that included Executive_Summary_Fatdoor 6-21-2007. Abhyanker denies creating the

---

[12] see Dkt. #166's sealed Exhibits B, C, D, and E to the Declaration of Jennifer Kelly In Support of Nextdoor.com, Inc. and Prakash Janakiraman's Supplemental Brief in Support of Motion for Summary Judgment on Abhyanker's Trade Secret Misappropriation Claim

[13] see Abhyanker Rough Transcripts, section 0057 page 61.

[14] See Rana transcript page 015 lines 10-25.

[15] see Abhyanker Rough Transcripts, section 0057 page 61.

[16] see Abhyanker Rough Transcripts

Executive_Summary_Fatdoor 6-21-2007 for the purposes of supporting his allegations in the instant suit. [17]

13. Denied. Nextdoor assumes facts not in evidence. Abhyanker has no recollection of how the case and labels were created other than that it was created by a legal assistant and provided to Abhyanker. [18]

14. Denied. Nextdoor assumes facts not in evidence. Abhyanker has provided evidence of a discounted stock sale in reliance of this oral agreement to permit Abhyanker to continue using the Fatdoor brand. [19]

15. Denied. Nextdoor assumes facts not in evidence. Abhyanker respectfully requests that Nextdoor view pages of the Internet Achives showing use of Fatdoor on the eDirectree website in at least 2008. [20]

16. Denied. Nextdoor assumes facts not in evidence. Abhyanker maintains that he used the Nextdoor mark on eDirectree prior to use by Nextdoor. [21]

17. Denied. Nextdoor assumes facts not in evidence. Abhyanker has explained that Sood said "oh okay" demonstrating willing consent to being recorded. [22]

18. Denied. Nextdoor assumes facts not in evidence. Abhyanker respectfully submits Sood admitted being subject to a confidentiality and non disclosure agreement, five years in effect. [23] Notwithstanding this, Abhyanker maintains that it would be absurd to think

---

[17] see Abhyanker Rough Transcripts

[18] see Abhyanker Rough Transcripts

[19] see Abhyanker Rough Transcripts

[20] For example, see https://web.archive.org/web/20080901000000*/http://www.edirectree.com , an October 10, 2008 shapshot of eDirectree showing the 'Fatdoor' private social network on the home page. During Abhyanker's deposition, Abhyanker explained that eDirectree created private social networks between people with a common association based on tagging of faces in group pictures.

[21] see Abhyanker Rough Transcripts

[22] see Sood transcript, page 1

[23] see Sood transcript, page 3

that Sood, a professional work-for-hire software developer would not sign NDAs and Confidentiality Agreements. Further, Abhyanker respectfully submits that during the deposition Babar Rana, Babar described that he was almost 100 percent sire that Sood would have signed an NDA, and getting NDAs was standard procedure form Abhyanker's firm. [24]

19. Denied. Nextdoor assumes facts not in evidence. Abhyanker respectfully submits that Hansen was hired on the recommendation of LegalForce investor Jeffrey Drazan and was fully aware of intellectual property owned by LegalForce. [25] For this reason, the February 1, 2007 assignment agreement omits assets of LegalForce such as the "Legalforce.com" domain in its attached exhibit, and does not include LegalForce, Inc. as a party to the February 1, 2007 assignment agreement. [26]

20. Denied. Nextdoor assumes facts not in evidence. Abhyanker explained Myers concerns in his deposition with respect to LegalForce's fiduciary duty as the largest convertible note holder in LegalForce, Inc. [27]

---

[24] see Rana Rough Transcript, page 0164 lines 14-24.

[25] see Hansen Rough Transcript, and Abhyanker Rough Transcripts

[26] see February 1, 2007 assignment agreement.

[27] see Abhyanker Rough Transcripts