Hon. Nathanael M. Cousins
United States District Court
450 Golden Gate Avenue
San Francisco, CA 94102

      Re: *Nextdoor.com, Inc. v. Raj Abhyanker*, No. 3:12-cv-05667-EMC,
           <u>Joint Discovery Letter: Completion of outstanding discovery</u>

Dear Judge Cousins:

      On June 13, the Court ordered Nextdoor.com, Inc. ("Nextdoor.com") and Raj Abhyanker ("Mr. Abhyanker") to update the Court as to whether they had reached an agreement on a search protocol for remaining discovery obligations. The parties have met and conferred on and have been unable to reach agreement on all aspects of the proposed document review protocol. They jointly submit this Letter Brief seeking the Court's assistance.

**Issue One: Whether documents identified as already in Abhyanker's counsel's possession should be produced immediately.**

      **Nextdoor.com's Position:** In its Document Production Protocol[1] paragraph 3(a)-(g), Nextdoor.com has listed specific documents and/or files that have been identified in the course of discovery, including during Mr. Abhyanker's deposition on June 6, 7 and 11, as being both relevant and already in the possession of Mr. Abhyanker's counsel. Yet counsel has indicated that for certain categories, Mr. Abhyanker is unable locate the documents or information sought. Specifically, item (b) a copy of the "CD or flash drive" that Mr. Abhyanker claims he received from his assistant containing the Benchmark Diligence CD; and (d) original physical copies of the 2006 LegalForce entity corporate records. For those categories of documents which were previously represented to Nextdoor.com as having been provided to counsel, but which Mr. Abhyanker now claims to not be able to locate, Nextdoor.com seeks a description under oath of the efforts undertaken to locate the documents or information in question, and an explanation of what happened to them, as they evidently existed at some point during the course of the litigation and now do not.

      **Mr. Abhyanker's Position: Since the hearing on June 13, Mr. Abhyanker has worked with Nextdoor.com to identify which of the categories of documents listed in paragraph 3(a)-(g) have been produced, and which have not but are within Mr. Abhyanker's possession, custody or control. Mr. Abhyanker has produced the documents responsive to (a) and (g). The items in paragraph (b) request production of the same external hard drive that has previously been produced in this case. Mr. Abhyanker has sought copies of the remaining documents requested in paragraphs (c)-(f), and will produce them to the extent they are within his possession, custody, or control.**

---

[1] This proposed protocol was provided to counsel for Mr. Abhyanker on Thursday June 12, 2014 and to the Court during the discovery hearing held on Friday, June 13, 2014. Counsel for Nextdoor.com will gladly provide additional copies and/or file a copy of its proposed protocol at the Court's request.

**Issue Two:  Whether paragraph 4 of the proposed search protocol should be adopted as-is.**

  **Nextdoor.com's Position:**  Counsel for Mr. Abhyanker has engaged Blackstone Discovery ("Blackstone") to perform searches and review and produce documents from those repositories that have been sequestered and preserved.  At this juncture, Nextdoor.com does not request that Mr. Abhyanker search for and produce all documents responsive to its outstanding discovery requests.  Instead, in line with the principle of proportionality set forth in Fed. R. Civ. Proc. 26, and given the remaining issues in this suit, Nextdoor.com has proposed a narrow set of search terms.  These terms are targeted at locating documents that will show (1) whether Mr. Abhyanker ever had a good faith basis to assert his counterclaims; and/or (2) whether and to what extent any documents produced by Mr. Abhyanker in discovery in this action were fabricated or altered, and to what extent.  While Mr. Abhyanker has now withdrawn his counterclaims against Nextdoor.com (nearly 3 years after filing them, on the eve of the close of discovery with motions pending), that does not absolve him of his discovery obligations.  *See* Fed. R. Civ. Proc. 54 (fees may be sought, upon motion by a party based on statute, rule or other grounds); Cal. Civ. Code §3426.4.

  The narrow requests set forth in paragraph 4 (which counsel characterized as "workable" during the June 13 hearing) are of continued relevance and importance given that, over the nearly three years of legal proceedings initiated by Mr. Abhyanker when he filed the State Court Action and then opposition proceedings before the Trademark Trial and Appeals Board Mr. Abhyanker has made multiple baseless allegations that are contradictory on their face, and advanced for no discernable purpose other than to mislead the Court, harass Nextdoor.com, and increase the cost of proceedings.  The frivolity of these claims is evidenced by the fact that most of the claims, across the various venues where they have been asserted, have been dismissed or withdrawn.[2]

  Given Mr. Abhyanker's multitudinous assertions and dismissals/withdrawals, the documents and information Nextdoor.com seeks (and has sought for some time) are directly relevant to Nextdoor.com's claim for attorney's fees.  For example, Nextdoor.com seeks further support for the fact that the purported June 4, 2007 assignment of assets from LegalForce to Mr. Abhyanker is a fraud.  This would demonstrate that from Mr. Abhyanker's initiation of this legal battle, regardless of whether any trade secrets existed (Nextdoor.com disputes that any ever did); Mr. Abhyanker never had any claim to assert them against Nextdoor.com.  In fact, he never acquired from LegalForce, any of the supposed IP assets he asserted against Nextdoor.com.  Moreover, this point is central to Nextdoor.com's defense against Mr. Abhyanker's efforts to disqualify counsel for Nextdoor.com in its defense against him.  *See* Dkt. 70, 100. Mr. Abhyanker's motion to disqualify counsel was rejected by Judge Chen as without merit, and if, as Nextdoor.com suspects, Mr. Abhyanker never had any basis to assert any grounds for disqualification on behalf of LegalForce, Nextdoor.com will be able to demonstrate its entitlement to fees it incurred associated with that motion.

---

[2] *See* Case No. 11-cv-212924 (Abhyanker's request for dismissal of the State Court Action he had filed against Nextdoor.com on November 10, 2011); Dkt. 132 (withdrawing claims for patent infringement); Dkt. 182, (granting in part Nextdoor.com's Motion for Summary Judgment, dismissing Abhyanker's claim for trade secret misappropriation based on purported trade secret of bidding history); Dkt. 194 (Partial final judgment dismissing Mr. Abhyanker's claims to priority and use of ownership of the NEXTDOOR mark with prejudice); Dkt. 224 (stipulation dismissing all of Abhyanker's remaining counterclaims).

Nor are the searches themselves overly broad. Instead, they are specifically designed to be limited in time and scope to avoid privileged or potentially privileged items, thus minimizing the need for intensive review and reducing the likely scope and length of a privilege log. Moreover, Nextdoor.com has expressly offered to remove some of its proposed search terms if Mr. Abhyanker will separately produce certain discrete categories of documents. For example, in its proposed protocol, paragraph 4(c), Nextdoor.com has requested a search specifically aimed at locating Mr. Abhyanker's income tax returns from 2006-2009 to the extent they reflect any loss taken for LegalForce during that period. These documents are relevant because, if such a loss were in fact taken, it would confirm that in the course of the dissolution of LegalForce, he received only the LegalForce domain name and a patent application, not any other IP owned by LegalForce which he later asserted against Nextdoor.com. Nextdoor.com, however, has offered to forgo that search inquiry if Mr. Abhyanker can simply provide the documents, which ought to be easily located. Mr. Abhyanker has not indicated whether for this or other categories, he can simply provide the documents rather than necessitating search. Instead, he asks Nextdoor.com to simply relinquish its ability to obtain key evidence in support of its fee motion. This is hardly a tenable position given the substantial cost Nextdoor.com has incurred defending against his baseless claims, not to mention the significant disruption to its business it has suffered.

Counsel for Mr. Abhyanker has not indicated which of Nextdoor.com's proposed search terms, if any, they believe to be overbroad, stating only a blanket objection that discovery is no longer needed given that Mr. Abhyanker has withdrawn his claims against Nextdoor.com. As described above, this is simply not the case: the requests are narrowly tailored to issues that are very much live – namely, Nextdoor.com's entitlement to attorneys' fees.

Thus, Nextdoor.com's Document Production Protocol should be adopted as-is. The results of this protocol, together with a corresponding privilege log, should be produced to Nextdoor by 12 pm on July 3rd and, given the holiday immediately thereafter, Mr. Abhyanker's additional four hours of deposition should take place on July 14, 2014. Additionally, the deadline for submission of Nextdoor.com's forensic expert reports should be extended until July 24, 2014 in order to allow him to review the evidence not previously produced in the action.

**Mr. Abhyanker's Position:** As discovery has progressed in this case, Mr. Abhyanker has narrowed the scope of issues remaining by voluntarily withdrawing claims in a timely manner when it became necessary to do so. Mr. Abhyanker has now voluntarily dismissed all counterclaims against Nextdoor.com as well as the other Counterdefendants.

Of course, the fact of this withdrawal does not establish the "frivolity" of the claims, or else no party could narrow the scope of issues following discovery. At the time his counterclaims were filed, Mr. Abhyanker was not aware that witnesses who he believed would support his case in fact could not in light of the 7 years of time that passed since the issues in dispute occurred. The coincidence that Nextdoor.com piloted its product in the Lorelei neighborhood adjacent to Mr. Abhyanker's office was highly suspicious on its face in light of the lack of any connection between Nextdoor.com and the neighborhood known by Mr. Abhyanker at the time his claims were filed.

Nonetheless, given these changes in the case, the scope of issues in dispute has been narrowed to Nextdoor.com's claims for cyberpiracy and a declaratory judgment holding the term "Nextdoor" does not infringe Mr. Abhyanker's rights in "Fatdoor." However, Nextdoor.com's current discovery requests extend well beyond these relatively narrow issues. The information sought in paragraph 4 is largely coextensive with the scope of discovery on all the withdrawn claims. Unfortunately, complying with these discovery requests will be very expensive.

Mr. Abhyanker's electronic discovery consultant has estimated that extracting, performing an "initial cull," and running data processing searches on the items listed in Nextdoor.com's proposed search protocol will cost at least $100,000. And this does not even account for the time spent by attorneys to review the resulting documents. Mr. Abhyanker asked the consultants whether narrowing the search terms would result in a lowering of the cost. Unfortunately, the consultants indicated that this would not impact the "initial cull" quote, since that is based solely on the quantity of data culled – i.e., the sheer volume of data turned over, before any searches are run. And they could not predict what impact this would have on the following stages involving searching the data until they had imported the information and run the searches. Mr. Abhyanker's best estimate is that running the searches requested in paragraph 4 of the protocol, reviewing the responsive documents, and producing them will be well over $100,000.

This significant cost is simply not justified by the limited relevance of this information in the case. In particular, the information sought in paragraphs 4(b) and (e)-(k) does not relate to any claim remaining in this case. The sole basis for needing this information is so Nextdoor.com can pursue fees against Mr. Abhyanker. In light of Mr. Abhyanker's voluntary withdrawal of his counterclaims, the limited relevance of this discovery, and the substantial burden and cost associated with producing it, Mr. Abhyanker requests the Court deny Nextdoor.com's request, or alternatively shift the costs to Nextdoor.com to pursue the information.

**Issue Three:  Searches on the sequestered repositories should be performed at Mr. Abhyanker's expense.**

**Nextdoor.com's Position:** The costs for the limited, targeted searches proposed by Nextdoor should be borne by Mr. Abhyanker for a number of reasons.  First, as the Court recognized during the June 13 hearing, the documents and information sought should have been provided in the course of discovery long ago.  Nextdoor.com has, in good faith, narrowed its discovery requests in response to the ever-changing landscape of Mr. Abhyanker's claims of increasing dubiousness, to focus on the issues at the heart of the dispute between the parties.

Second, despite his protestations to the contrary, Mr. Abhyanker is not without funds to engage in discovery.  It is no secret that discovery is costly.  Indeed Mr. Abhyanker's claims regarding his ability to bear the costs of Nextdoor.com's narrowed requests seem to constitute yet another misrepresentation to the Court: in his Declaration in Support of his Opposition Nextdoor.com's Motion for Summary Judgment, he touted his strong financial position "I am a highly successful entrepreneur and do not need to glom success or money from Nextdoor…" (Dkt. 150-1, ¶¶ 3-4).  That he now claims to be financially incapable of meeting his obligations

4

is laughable, particularly in light of the numerous separate suits and proceedings he has recently instituted against Nextdoor.com, including a separate suit alleging patent infringement which, during his deposition, he has indicated he intends to continue to pursue against Nextdoor.com.

Third, Nextdoor.com has expended upwards of $1million in defending against Mr. Abhyanker's various claims.  This legal dispute, instigated by Mr. Abhyanker, has been very costly to Nextdoor.com, and was formulated in bad faith based upon claims that were demonstrably without merit from the outset.  Nextdoor should not be prejudiced it its efforts to demonstrate entitlement to attorneys' fees just because Mr. Abhyanker now realizes that litigation is expensive.  If anything, the requirement that he bear this cost may be just what he needs to come to his senses, and stop his campaign of harassment against Nextdoor.com.

Finally, there are simply no circumstances justifying cost shifting.  While Fed. R. Civ. Proc. allows a court to shift costs onto the party requesting discovery upon a finding of "good cause," no such circumstances have been shown here.

**Mr. Abhyanker's Position:** Mr. Abhyanker is willing to produce the information sought by Nextdoor.com provided Nextdoor.com continue working in good faith with Mr. Abhyanker to tailor the requests and that Nextdoor.com cover the costs of the production. Good cause exists to shift these costs to Nextdoor.com.

First, as noted above, the vast majority of information sought in the protocol relates solely to allegations of bad faith and attorneys' fees. This limited relevance is simply outweighed by the burden and expense of producing this information.

Second, Mr. Abhyanker has worked diligently to respond to the numerous discovery requests sought by Nextdoor.com as well as the other parties in this case, and has expended significant sums in legal fees to do so. Mr. Abhyanker has produced hundreds of thousands of documents in response to these requests, including substantial quantities of email records and native versions of documents. This discovery allowed Nextdoor.com to investigate allegations of bad faith for purposes of pursuing fees. The remaining discovery requests will serve primarily to harass Mr. Abhyanker rather than serve any legitimate informational needs of Nextdoor.com.

In contrast, it is worth noting that Nextdoor.com produced nothing but a few public documents such as printouts of its website and trademark filings in this case. Nextdoor.com never produced a single email from a custodian in this case.


/s/ *Ilana Rubel*                               /s/ *Brian Orion*
Attorneys for Nextdoor.com          Attorneys for Mr. Abhyanker