1  LAURENCE F. PULGRAM (CSB No. 115163)
   lpulgram@fenwick.com
2  JENNIFER L. KELLY (CSB No. 193416)
   jkelly@fenwick.com
3  ILANA S. RUBEL (CSB No. 221517)
   irubel@fenwick.com
4  GUINEVERE L. JOBSON (CSB No. 251907)
   gjobson@fenwick.com
5  FENWICK & WEST LLP
   555 California Street
6  San Francisco, CA 94104
   Telephone: (415) 875-2300
7  Facsimile: (415) 281-1350

8  ERIC J. BALL (CSB No. 241327)
   eball@fenwick.com
9  MATTHEW B. BECKER (CSB No. 291865)
   mbecker@fenwick.com
10 Fenwick and West LLP
   801 California Street
11 Mountain View, CA 94041
   Telephone: (650) 988-8500
12 Facsimile: (650) 938-5200

13 Attorneys for Plaintiff
   NEXTDOOR.COM, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NEXTDOOR.COM, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>RAJ ABHYANKER, an individual,<br><br>Defendant. | Case No.: 3:12-cv-05667-EMC<br><br>**FOURTH SUPPLEMENTAL JOINT CASE MANAGEMENT STATEMENT**<br><br>Date: June 26, 2014<br>Time: 10:30 a.m.<br>Judge: Honorable Edward M. Chen |

Pursuant to Civ. L.R. 16-10, the Court's Standing Order, and the Court's Minute Order following the February 21, 2014 hearing on Nextdoor.com's Motion for Summary Judgment [Dkt No. 163], the undersigned parties respectfully submit the following Fourth Supplemental Joint Case Management Statement.

**1.** **<u>Only Counts 2-4 of Nextdoor's Affirmative Claims Remain in the Case</u>**

<u>**Nextdoor.com's Summary of the Remaining Claims:**</u> In this matter alone,[1] Defendant, and formerly Counterclaimant, Raj Abhyanker has pled at least seven different theories of liability against Plaintiff Nextdoor.com. These include claims based on four trade secrets, two trademarks and one patent. Each of these theories was either dismissed with prejudice by the Court or voluntarily – without any compensation from Nextdoor.com – by Abhyanker. But before dismissal, Nextdoor.com had to expend substantial attorneys' fees and costs responding to Abhyanker's ever changing and baseless theories of liability. Nextdoor.com now seeks recovery for having to respond to Abhyanker's actions.

First, on March 15, 2013 Nextdoor.com filed a motion to dismiss Abhyanker's baseless trade secret claim because his idea (but not use) of the NEXTDOOR name was public and not a secret. [Dkt No. 38]. On June 6, 2013 the Court granted Nextdoor.com's motion to dismiss the trade secret claim to the extent it was based on the idea for the NEXTDOOR name. [Dkt No. 95]. Second, after multiple rounds of discussions, on November 21, 2013, Nextdoor.com served a Rule 11 motion asking Abhyanker to withdraw his baseless putative patent infringement claim (for which he had sought leave to assert) and a second trade secret claim based on his "source code." [Dkt No. 125]. In response to the Rule 11 letter, Abhyanker advised the Court that he no longer intended to pursue these claims. [Dkt No. 132 and 135]. Third, on January 9, 2014, Nextdoor.com filed a motion for summary judgment addressing Abhyanker's two remaining trade secret claims (alleged bidding history for the nextdoor.com domain and his alleged pilot in

---

[1] Abhyanker has also plead additional theories of liability against Nextdoor.com in: (1) a previously filed and dismissed action in Santa Clara County Superior Court; (2) two trademark oppositions currently pending before the Trademark Trial and Appeal Board; and (3) a recently filed and related patent infringement case in the Northern District of California, Case No. 14-cv-02335.

Lorelei). [Dkt No. 143]. On April 23, 2014, the Court again dismissed one of Abhyanker's alleged trade secrets (bidding history)—because it was not a secret. Fourth, on April 16, 2014, Nextdoor.com served Abhyanker with a second Rule 11 letter asking Abhyanker to withdraw his baseless claim for infringement of the NEXTDOOR mark, premised on his allegation that he used that mark in commerce before Nextdoor.com did. On May 5, 2014, Abhyanker agreed to withdraw this claim and the Court entered a Partial Judgment against Abhyanker. [Dkt No. 193]. Remarkably, Mr. Abhyanker withdrew his claims for infringement of the NEXTDOOR mark only five months after Abhyanker asked the Court to allow him to add this claim to his Counterclaims. Fifth, after multiple rounds of discovery, depositions, discovery motions and hearings regarding Abhyanker's baseless claims and fabricated evidence, on June 13, 2014, Abhyanker agreed to dismiss all of his remaining claims (trade secret and trademark infringement). [Dkt No. 224]. Notably, Abhyanker's agreement to dismiss his claims came *after* Nextdoor.com confronted Abhyanker with substantial evidence that Abhyanker fabricated evidence and mislead the Court in connection with his opposition to Nextdoor.com's summary judgment motion. Abhyanker's agreement to dismiss the remainder of his claims also came only after a June 13, 2014 hearing before Judge Cousins during which Judge Cousins repeatedly warned Abhyanker of the likelihood of sanctions for the pursuit of baseless claims.

With the dismissal of each of Abhyanker's claims, the only remaining claims in this matter are Nextdoor.com's affirmative claims for relief under:

- Count 2—Seeking a declaratory judgment of non-infringement of Abhyanker's FATDOOR marks;
- Count 3—Nextdoor.com's cyberpricy claim based on Abhyanker's use of domain names confusingly similar to Nextdoor's NEXTDOOR mark; and
- Count 4—Nextdoor.com's trademark infringement claim based on Abhyanker's use of Nextdoor.com's NEXTDOOR mark.

As part of Abhyanker's dismissal of his trademark infringement claim regarding the NEXTDOOR mark, the Court entered a Judgment in Nextdoor.com's favor on Nextdoor.com's Count 1 for a declaratory judgment that Nextdoor.com owns the NEXTDOOR mark. [Dkt No.

193]. Nextdoor.com also voluntarily agreed to waive the right to seek damages or disgorgement of profits under Count 4 of Nextdoor.com's Complaint. Nextdoor.com retained all other remedies relating to Count 4, including its attorneys' fees and costs.

Additionally, with the dismissal of Abhyanker's claims, the only remaining parties in this matter are Abhyanker and Nextdoor.com. All claims have been dismissed against Prakash Janakiraman, Benchmark Capital Partners VII, L.P., Benchmark Capital Management Co. VII LLC, Monsoon Company and Sandeep Sood.

**2.** **Facts**

**Nextdoor.com's Statement of Facts** For more than two and half hears, (and eighteen months before this Court), Nextdoor.com has had to expend substantial attorneys' fees, costs and time defending against Abhyanker's baseless claims. During this process, Nextdoor.com has learned that Abhyanker mislead the Court, fabricated evidence, and continued to pursue his claims in bad faith. Such actions include:

- Misleading the Court in his statements and sworn attestation regarding the completeness of his document production, when, in fact, he had not searched or produced email documents off a later "found" hard drive. [*Compare* Dkt. No. 165-1 ¶ 2 with June 6, 2014 Rough Tx., pp. 233-250]. Since Abhyanker's certification, he has produced additional information and documents that address the core trademark issues in dispute and reveal his efforts to mislead the Court. Even more, Nextdoor.com continues to wait for the substantial remainder of Abhyanker's document production.
- Falsely alleged a trade secret relating to his use of the Lorelei neighborhood, when, in fact, he did not know of any Lorelei residents that joined his service, and his claims of 90% penetration in the Lorelei neighbor had in fact represented no such thing. [*Compare* MSJ Decl. ¶ 14 with June 6, 2014 Rough Tx., pp. 279-282].
- Fabricating evidence by adding the term "Lorelei" to a PowerPoint purportedly provided to former counterclaim-defendant Benchmark. (RA000396). [*Compare* MSJ Decl. ¶ 24 with June 6, 2014 Rough Tx. pp.233-234].

- Fabricating evidence by portraying a collection of files he gathered in 2013 as a "Due Diligence CD" that he provided to Benchmark in 2007.
- Fabricating evidence by modifying the purported source code of his www.edirectree.com website.
- Misleading the Court regarding the dates of his first use of the NEXTDOOR mark. [Dkt. Nos. 141 and 153].
- Misleading the Court regarding the existence of "source code" and "database structures" for his www.edirectree.com website which purportedly showed the NEXTDOOR mark. [Dkt. Nos. 141 and 153].
- Misleading the Court regarding the dates on which the images shown in Exhibit D to his Supplemental Statement Regarding Prior Trademark Use [Dkt No. 141] and Errata to his Supplemental Statement Regarding Prior Trademark Use [Dkt No. 153] appeared on the www.edirectree.com website.
- Destroying evidence relating to his www.edirectree.com website.
- Destroying evidence regarding the creation of his Due Diligence CD.
- Fabricating evidence by relying on documents in which he claimed the authority to assign himself assets of various companies, including Legalforce, Inc. and Center'd Corporation. Abhyanker had no authority to assign himself any remaining assets of these companies. [*See e.g.*, June 6, 2007 Rough Tx., pp. 56-57, 168].
- Fabricating evidence by claiming that Sood signed the alleged NDA and Confidentiality Agreement that formed the basis of Abhyanker's claim that Sood owed him a duty of confidentiality with respect to the alleged trade secrets asserted in this case. As explained in Mr. Sood's declaration, he never signed these documents. [*Compare* Dkt. No. 155-1 ¶ 2 with Dkt. No.171 ¶ 3].
- Illegally recording two separate conversations with Nextdoor.com's CEO Nirav Tolia and Sandeep Sood. [*Compare* Dkt. No. 165-1 Supp. MSJ Decl. ¶ 7 and 155-5 Reply MSJ Decl. ¶¶ 2-16 with Dkt. No.171 ¶ 4 and Dkt No. 150-1 ¶¶ 52-70].

- Attempted *ex parte* communications with the Court by failing to serve Nextdoor.com with his June 13, 2014 letter to the Court. [Dkt. No. 225].
- Continued failure to comply with his discovery obligations by, for example:
  - Stipulating to further specific document production, only to later backtrack and claim that prior productions were sufficient.
  - Claiming to have produced specific documents, only to later backtrack and claim that that he cannot locate the specific documents that were supposedly in the production.
  - Failing to search for relevant documents from each of Abhyanker's relevant email addresses.
  - Failing to review documents prior to production and instead merely comingling unresponsive and irrelevant files with any potentially relevant materials.
  - Multiple productions on the eve of and even during depositions.
  - Failing to produce more than a handful of documents dated between 2012 and the present.
  - Failing to provide a privilege log for the majority of his production.
- Multiple additional instances of perjury and efforts to mislead the Court uncovered during Abhyanker's deposition, including:
  - That the document attached as Exhibit G to Abhyanker's Declaration in Support of his Opposition to Nextdoor.com's Motion for Summary Judgment was a true and correct copy thereof, when in fact, it was a truncated version of that document. [*Compare* Dkt. No. 150-1 ("MSJ Decl.") ¶ 44, Exhibit G with June 6, 2014 Rough Tx., p. 198 at 7-9; 198-203; and 219, Deposition Exhibit 82].
  - That in November 2012, attorney Daniel Hansen advised Abhyanker that Jeff Drazan had the authority to appoint him interim CEO of Center'd, without any further action required, when, in fact, Hansen wrote and said that he could give no such advice. [*Compare* MSJ ¶ 46 with June 6, 2014 Rough Tx. pp., 203-205, Deposition Exhibit 84].

- That Abhyanker believed he had authority to act as interim CEO of Center'd in November 2012 (when he purported to execute an agreement on its behalf, assigning all Center'd assets to himself for $1), when in fact, he admitted to its Board members that, without their consent, he knew he did not have such authority. [*Compare* MSJ Decl. ¶¶ 45-50 with June 6, 2014 Rough Tx., p. 209 at 1-6 and pp. 208-212, Deposition Exhibit 85].
- That, at the time of the presentation of the $1 assignment agreement between himself and Center'd to the Court in his Opposition to Nextdoor's Motion for Summary Judgment (MSJ Decl., Exhibit H) in 2014, Abhyanker believed this agreement was valid, when in fact, he knew the Center'd Board had again in 2013 refused to allow him to act on its behalf (even after being threatened with breach of fiduciary duty claims by Abhyanker if it refused). [*Compare* MSJ Decl. ¶ 44-48 with June 6, 2014 Rough Tx., pp. 199-200, 212-213].
- That he disclosed "much of this information" about his selection of and efforts in the Lorelei neighborhood to Benchmark via the alleged Due Diligence CD he provided to them on June 22, 2007, when, other than the fabricated *Lorelei PPT*, the alleged CD contained no mention of Lorelei, and Abhyanker could not identify a single document in his files, other than the *Lorelei PPT* that mentioned Lorelei. [*Compare* MSJ Decl. ¶ 23 with June 6, 2014 Rough Tx., pp. 83-84, 86-89].
- That in October 2007, Legalforce was dissolved at the direction of the Board of Directors (when there was in fact no Board) and that he was assigned all of its assets (Dkt. No. 71 ¶ 3)—when, in fact, Legalforce was wound up only in December 2008, and the only assets Abhyanker received were the domain name Legalforce.com and its patent applications. [*Compare* Dkt. No. 165-1 ¶ 4-5 with June 6, 2014 Rough Tx., pp. 129-130, 143-145, Deposition Exhibit 76].
- That he did not add the Diligence CD to the "found" hard drive in an effort to make it appear like it had been there all along, or know that it had been added after December 5, 2013. [June 7, 2014 Rough Tx., pp. 6-20].

- That, when he created a "Diligence CD" for this case and included labels on it when producing it (in order to make it look like it was an actual CD provided to Benchmark), those labels were the originals created and placed on the CD in 2007, when, in fact, those labels appear to have been created for the purpose of this litigation. [*Compare* MSJ Decl. ¶ 25 with June 7, 2014 Rough Tx., pp. 33-34].
- That in or about April, 2008, he received express permission from the Center'd Board to continue using the Fatdoor brand (after he had been fired from the company in 2007), when no action or permission by the Board exists. [*Compare* MSJ Decl. ¶ 44 with June 6, 2014 Rough Tx., pp. 170-196, Deposition Exhibits 78-79].
- That that he began personally using the "FATDOOR" mark in commerce as soon as he got the Center'd Board's approval (which he never got), when in fact, there is no evidence that he made any use of that mark in commerce between 2008 and 2012. [*Compare* Dkt. No. 132 ¶ 29 (Second Amended Counterclaim) with June 7, 2014 Rough Tx., p. 22].
- That attorney Daniel Hansen drafted documents to carve out Legalforce's private social network assets separately from those of Fatdoor, when no such document exists, and Abhyanker's deposition testimony was that Legalforce's patent applications were in fact assigned to Fatdoor. [*Compare* Dkt. No. 71 (Declaration of Raj Abhyanker in Support of Motion to Disqualify ("DQ Decl.") ¶ 12-13) with June 6, 2014 Rough Tx., pp. 130-136, Deposition Exhibit 74].
- That Legalforce's ownership of the alleged trade secrets was evidenced by Warren Myers' complaint that Fatdoor had Legalforce's assets, and that this was disclosed to Fatdoor investors, when, in fact, Myers complained that Fatdoor had his real estate company's assets, and this is what was disclosed. [*Compare* DQ Decl. ¶ 15 with June 6, 2014 Rough Tx., pp. 106-111, Deposition Exhibit 71].

Against this backdrop, his own attorneys (and employees of Abhyanker's own law firm) now believe that they are professionally obligated to withdraw from further representing

Abhyanker in this matter. [Dkt. No. 217].

Based on Nextdoor.com's remaining claims and the undisputed fact that Nextdoor.com owns the right to the NEXTDOOR mark, the remaining issues center on calculating how Abhyanker will compensate Nextdoor.com for his pursuit of baseless claims and improper actions in this matter. In particular, Nextdoor.com intends to pursue statutory damages, attorneys' fees and costs relating to Nextdoor.com's affirmative claims for relief and Abhyanker's dismissal of his counterclaims.

**Mr. Abhyanker's Statement of Facts.**

As discovery has progressed in this case, Mr. Abhyanker has narrowed the scope of issues remaining by voluntarily withdrawing claims in a timely manner when it became necessary to do so. Mr. Abhyanker has now voluntarily dismissed all counterclaims against Nextdoor.com as well as the other Counterdefendants.

Of course, the fact of this withdrawal does not establish that the claims were "baseless" when pled, or else no party could narrow the scope of issues following discovery. At the time his counterclaims were filed, Mr. Abhyanker was not aware that witnesses who he believed would support his case in fact could not in light of the 7 years of time that passed since the issues in dispute occurred. The coincidence of Nextdoor.com piloting its product in the Lorelei neighborhood adjacent to Mr. Abhyanker's office was highly suspicious on its face in light of the lack of any connection between Nextdoor.com and the neighborhood known by Mr. Abhyanker at the time his claims were filed.

Nonetheless, given these changes in the case, the scope of issues in dispute has been narrowed to Nextdoor.com's claims for cyberpiracy (Count 3) and a declaratory judgment holding the term "Nextdoor" does not infringe Mr. Abhyanker's rights in "Fatdoor" (Count 2).

However, the Statement of Facts provided by Nextdoor.com demonstrates that this case is no longer really about any substantive claims for relief. Instead, the focus of this case has shifted from proving or disproving substantive allegations to an effort by Nextdoor.com to recover its attorneys' fees and costs. Nextdoor.com says as much when it states above: "[T]he remaining issues center on calculating how Abhyanker will compensate Nextdoor.com for his pursuit of

baseless claims and improper actions in this matter." This is why the Statement of Facts provided above makes almost no mention of any issue of fact relevant to the substance of the remaining claims. Instead, it provides a long list of factual allegations that reads like a motion for attorneys' fees.

Indeed, Nextdoor.com has focused almost entirely on these issues in its recent discovery to Mr. Abhyanker. It has shifted its attention to pursuing native versions of documents previously produced in an effort to establish that documents were falsified. It has deposed third party witnesses – both among Mr. Abhyanker's staff and from outside computer services companies – to try to pin down facts surrounding alleged tampering with evidence. And it has sent email after email seeking further production of a long list of documents that it claims have been improperly modified in an effort to show exceptional circumstances for an award of attorneys' fees. The fact that essentially all that remains is a dispute about attorneys' fees demonstrates that the burden and expense of extending discovery by 30 days, as requested by Nextdoor.com below, is not justified by any need to establish the merits of its substantive claims. Discovery has been open on those claims for many months. No further discovery is warranted.

Mr. Abhyanker also disputes Nextdoor.com's suggestion of continued failures to fulfill discovery obligations. In the past two months, Mr. Abhyanker has produced substantial amounts of materials in discovery, including a storage drive containing approximately 200,000 individual electronic documents, original electronic archives of email accounts from various individuals dating back as far as 2006, and hundreds of pages of hard copies of other documents. As noted below, Mr. Abhyanker's counsel has also taken steps to preserve all electronic data on 16 separate computers and storage drives, as well as multiple email accounts used by Mr. Abhyanker or used for common storage of data. The total user generated data preserved (with operational "system" files removed) is approximately 1 terabyte. The parties have presented their dispute over whether and to what extent Mr. Abhyanker must make further searches of that data (the cost of the search is likely to exceed $100,000) to Magistrate Judge Cousins, and the matter is under submission.

### 3. Motions

Abhyanker's counsel's motion to withdraw from representing Abhyanker is currently

pending before the Court and set for hearing on July 24, 2014 at 1:30 p.m. Abhyanker's counsel has asked Nextdoor.com to stipulate to having the hearing advanced to July 10, 2014. While Nextdoor.com has no objection in concept to having the motion heard on that earlier date and anticipates entering into such a stipulation, it intends to reserve the right to object to or impose conditions on the withdrawal to ensure that Abhyanker's discovery obligations are met.

Nextdoor.com anticipates filing a motion for summary judgment on its affirmative claims—including that that Abhyanker does not own any rights in the FATDOOR, GET TO KNOW YOUR NEIGHBORS, or FATDOOR GET TO KNOW YOUR NEIGHBORS marks, that Nextdoor's mark does not infringe those marks, and that Abhyanker engaged in cybersquatting in registering and using the www.nextdoor.cm domain as soon as certain necessary additional discovery (as has been briefed to Magistrate Judge Cousins) has been completed. Nextdoor.com also anticipates filing a motion for attorneys' fees and costs in connection with Nextdoor's affirmative claims and Abhyanker's counterclaims.

**4.** **Evidence Preservation**

Nextdoor.com has identified multiple instances of Abhyanker fabricating or destroying evidence in this matter. Because of this, Nextdoor.com asked Abhyanker's counsel to confirm that it has properly captured and preserved all of Abhyanker's potentially relevant materials. On June 13, 2014, the parties appeared before Judge Cousins who subsequently issued an order requiring such preservation [Dkt. No. 223].

**Mr. Abhyanker's Statement**: On June 9, 2014, days before appearing before Judge Cousins, Mr. Abhyanker's counsel provided 16 separate computers and storage drives to a computer forensic expert for forensic imaging to preserve the electronic evidence. The forensic expert was also given exclusive access to various email accounts used (or formerly used) by Mr. Abhyanker to capture the electronic information on those accounts.

**5.** **Discovery**

On June 17, 2014, the parties filed with Judge Cousins a Joint Letter Brief summarizing the parties' respective proposals for completing outstanding discovery sought from Abhyanker. [Dkt No. 227]. As explained in the letter brief and by Nextdoor.com at the June 18, 2014 hearing

on that matter, the further discovery Nextdoor.com seeks, which will necessitate some adjustment to the discovery, expert and dispositive motion deadlines (but leave the trial date and other pre-trial dates intact), that discovery is relevant and necessary both to Nextdoor.com's affirmative claims, which remain in the case, as well as its anticipated motion for attorneys' fees on both its own pending and Abhyanker's dismissed counterclaims. Judge Cousins has taken the matter under submission.

Relatedly, on June 9, 2014, Nextdoor.com sent a letter to Abhyanker confirming that because of his pending dismissal of all claims, that no further discovery of Nextdoor.com was necessary. On June 13, 2014, Judge Cousins denied Abhyanker's request to take the depositions of Nextdoor.com personnel Prakash Janakiraman, Nirav Tolia, and a third-party Jon Love for failure to show relevance or good cause for not having deposed the witnesses sooner. [Dkt No. 223]. At the hearing on June 18, 2014, Judge Cousins ordered Nextdoor.com to put up a 30(b)(6) deponent on the limited subject of its first use of the Nextdoor.com mark in commerce. The parties were ordered to meet and confer on a date for the deposition to take place.

**Mr. Abhyanker's Statement**: Mr. Abhyanker has argued that the electronic records searches requested by Nextdoor.com impose an undue burden in light of the high cost of such a search (estimated at over $100,000) and the limited relevance of the information, especially since Mr. Abhyanker has dismissed his counterclaims.

As emphasized above, Nextdoor.com's outstanding discovery requests are primarily directed to the limited issue of attorneys' fees and costs. Nextdoor.com's request to modify the entire pretrial schedule so it can expand on the discovery it has already received on these issues is simply not justified. The parties have had many months to pursue discovery, and the Court has twice denied the parties' requests to extend the deadline. The present request should be likewise be denied.

### 6. Related Cases

On May 20, 2014, Abhyanker filed a new complaint against Nextdoor.com in the Northern District of California, Case No. 14-cv-02335. Having dismissed his trademark, trade secret, and prior patent claims against Nextdoor.com, Abhyanker once again changes course and

now alleges that Nextdoor.com infringes United States Patent No. 8,732,091. This case is currently pending before Judge Kandis A. Westmore. On June 18, 2014, Nextdoor.com filed motion seeking to relate Abhyanker's patent infringement claims with this matter. [Dkt No. 229].

Mr. Abhyanker intends to oppose the motion to relate the cases given that, among other things, on June 18, 2014 (before the motion to relate was filed), Mr. Abhyanker dismissed his personal claims in the patent case, leaving only a separate legal entity, Fatdoor, Inc. (not a party to this action), as the plaintiff in that case. Thus, the parties in the two cases are not substantially the same. Civ.L.R. 3-12(a). Nor does Mr. Abhyanker believe that there would be an undue burden or duplication of effort or expense if the cases are conducted before a different judge. Civ.L.R. 3-12(b).

There are also co-pending oppositions to Nextdoor.com's registration of its NEXTDOOR mark in the Trademark Trial and Appeal Board ("TTAB") filed by Abhyanker (Opposition Nos. 31203462 and 91203762). Those opposition proceedings have been suspended pending the outcome of this case. However, because of the Court's Judgment confirming Nextdoor.com's right to the NEXTDOOR mark [Dkt Nos. 192-193] and Abhyanker's dismissal of all claims [Dkt No. 226], the parties are required to notify the TTAB of the resolution of Abhyanker's claims so that the TTAB proceedings can resume and Nextdoor.com's application for the NEXTDOOR mark can proceed to registration.

**7.    Settlement and ADR**

The parties attended a settlement conference before Magistrate Judge Vadas on November 21, 2013. The parties also had substantive settlement discussions on June 7 and 8, and exchanged proposed settlement drafts. Mr. Abhyanker remains willing to discuss settlement; Nextdoor.com, however, does not believe that further settlement discussions are likely to be productive.

**8.    Narrowing of Issues**

As discussed above, it is Nextdoor.com's position that based on the Court's Partial Judgment [Dkt. No. 193] and Abhyanker's stipulation for dismissal of his remaining counterclaims [Dkt. No. 226], the issues in this case are effectively narrowed to calculating Nextdoor.com's claims for damages, attorneys' fees and costs relating to Nextdoor.com's

affirmative claims for relief and Abhyanker's dismissal of his counterclaims.

**9. Proposed Modifications to the Current Schedule**

Subject to the Court's calendar, Nextdoor.com proposes the following modifications to the pretrial schedule in light of the additional discovery Nextdoor.com has represented is needed (as has been briefed and argued to Judge Cousins on June 13, 2014 and June 18, 2014) and the time that Abhyanker's counsel has represented is needed to supply it:

|  | Current Schedule | Proposed Modification |
|---|---|---|
| • Fact Discovery Cutoff:[2] | June 19, 2014 | July 18, 2014 |
| • Opening expert reports: | June 19, 2014 | July 25, 2014 |
| • Rebuttal expert reports | July 17, 2014 | August 8, 2014 |
| • Expert discovery cutoff | August 7, 2014 | August 22, 2014 |
| • L/D to hear dispositive motions: | September 4, 2014 | October 2, 2014 |
| • Final pretrial conference: | 11/18/2014 | No change |
| • Trial: | 12/1/2014 | No change |

**Mr. Abhyanker's Statement:**

For the reasons discussed above, Mr. Abhyanker opposes any modification to the existing schedule.

**10. Trial**

All parties have consented to a trial by jury. Based on the current knowledge of all parties, it is believed that the case should last between 5 to 7 days of trial based on the Court's current published trial scheduling procedures.

---

[2] Any fact discovery occurring beyond the current deadline of June 19, 2014 is to be limited to the discovery expressly ordered by Judge Cousins following the parties June 13 and June 18, 2014 hearings [Dkt Nos. 223 and 233] the continued deposition of Ravi Soni and any additional discovery ordered by the Court or agreed to by the parties.

| | | |
|---|---|---|
| Dated: June 19, 2013 | FENWICK & WEST LLP | |
| | By: */s/ Jennifer L. Kelly* | |
| | Jennifer L. Kelly | |
| | Attorneys for Plaintiff and Counterdefendant NEXTDOOR.COM, INC. and Counterdefendant PRAKASH JANAKIRAMAN | |
| | LEGALFORCE RAJ ABHYANKER, P.C. | |
| | By: */s/ Scott Allen* | |
| | Scott Allen | |
| | Attorneys for Defendant and Counterclaimant RAJ ABHYANKER | |

## ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1

I, Jennifer L. Kelly, am the ECF User whose identification and password are being used to file this **FOURTH SUPPLEMENTAL JOINT CASE MANAGEMENT STATEMENT**. In compliance with Civil Local Rule 5-1, I hereby attest that all signatories have concurred in this filing.

Dated: June 19, 2014
　　　　　　　　　　　　　　　　　　*/s/ Jennifer L. Kelly*
　　　　　　　　　　　　　　　　　　Jennifer L. Kelly