

**BRUNO W. TARABICHI**, CA State Bar No. 215129
bruno@legalforcelaw.com
**HEATHER R. NORTON**, CA State Bar No. 257014
heather@legalforcelaw.com
**SCOTT J. ALLEN**, CA State Bar No. 178925
scott@legalforcelaw.com
**BRIAN ORION,** State Bar No. 239460
brian@legalforcelaw.com

**LEGALFORCE RAJ ABHYANKER, P.C.**
1580 W. El Camino Real, Suite 13
Mountain View, California 94040
Telephone: 650.965.8731
Facsimile: 650.989.2131

Attorneys for Defendant
Raj Abhyanker

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NEXTDOOR.COM, INC., a Delaware corporation,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>RAJ ABHYANKER, an individual,<br><br>　　　　　Defendant. | Case No. 3:12-cv-05667-EMC<br><br>**RESPONSE TO SUPPLEMENTAL BRIEF IN SUPPORT OF COUNSELS' MOTION TO WITHDRAW**<br><br>Date:　　　July 10, 2014<br>Time:　　　9:00 a.m.<br><br>Courtroom:　2 – 17th Floor<br><br>Judge:　　　Honorable William H. Orrick, III |

　　　As an opening matter, it should be noted that it is my preference that all hearings with respect to this mandatory withdrawal request be held before the Honorable Judge Edward M. Chen because he is deciding on surrounding issues raised by opposing counsel. Further, I do not believe that I will be prejudiced if the Honorable Judge Edward M. Chen were to decide on this

Motion to Withdraw. In contrast, I believe that I will be prejudiced if the Honorable Judge Edward M. Chen were not permitted to review the circumstances of this Motion to Withdraw.

Also, I hereby waive confidentiality requirements by my counsel for issues related to their mandatory withdrawal request if the communication is made directly, under seal, to the Honorable Judge Edward M. Chen. Given my waiver here, I permit and ask my counsel to openly and transparently submit any and all confidential information related to why they believe state bar rules requires them to mandatory withdraw directly to the Honorable Judge Edward M. Chen under seal.

My counsel is the best counsel that I could find given my means. They have prior experience with complex federal litigation. They are primarily solo practitioners and skilled in areas being litigated. Many were trained at large established law firms as associates prior to branching off into solo practices.

I have relied on my counsel in this case, and continue to do so. While I understand the difficulty they have faced in keeping documents organized since a majority of them work in remote offices as solo practitioners, I need my counsel to continue representing me otherwise I will be greatly prejudiced in this case.

My counsel has explained to me the reason necessitating their mandatory withdrawal relates to a redacted Exhibit G in my declaration in PACER Document **150-1**, represented to the court as a 'true and correct' copy (**Exhibit A**). They have not explained any other issues to me that they believe mandate mandatory withdrawal. When I signed my declaration, I understood that quoted words are true and correct. A non-redacted copy was provided after privilege review, and prior to my first day of deposition on June 6, 2014 (**Exhibit B**).

I sent a draft of my declaration to counsel on January 19, 2014 for review and verification. My draft declaration did not include the words 'true and correct', as they are not words that I use in patent prosecution practice. In patent prosecution practice, I have been taught to quote specifications in support of arguments in office actions and claim support charts using redaction for brevity and clarity if it does not alter any meaning of points being discussed. Further, to me, a redacted text focusing on essential text was a true and correct representation as long as words are not altered.

My counsel revised my draft declaration adding the words 'true and correct' on January 22, 2014. My counsel did not include the non-redacted Exhibit G that I provided to them on December 9, 2013 and despite me providing my counsel with full and unfettered access to my office, my records, and my emails at all times during this litigation. This became an issue in the afternoon of my first day of deposition on June 6, 2014 when I honestly answered questions of opposing counsel by telling them Exhibit G was a redacted copy.

During that afternoon break during my first day of deposition; my counsel became very upset with me. A temporary breakdown in communication with my counsel ensued. My counsel explained that as an attorney by profession myself I should have known this meaning as I should know federal civil procedure. They said I was fully liable because I signed the declaration. I told them I relied on them to advise me as I am not a litigator and do not have experience in federal courts. I told them that it was my understanding that a document was true and correct even if it was redacted if the words themselves were not altered. They unanimously disagreed. This disagreement resulted in a strained relationship for about one week mid June 2014 between me and my counsel. Until that week, there were no shouting matches. To come to a resolution, I proposed rules for effective communication and committed to moving forward with dignity and mutual respect the following week. In addition, I agreed to correct any mistakes with the court, which I have done in PACER Document **225**.

At this stage, I need my counsel to remain with me through the conclusion of this case. I continue to trust their counsel. I need their support to preserve, review, and produce forensic evidence. Further, I need my counsel to assist in procedural and substantive aspects of my upcoming jury trial including in the selection of jurors, and examination of witnesses. Given the jury trial is months away and the discovery period is bearing close, I need the support of my counsel at this critical time as there is no time to adequately find new counsel given the late stages of this case, and the complexity of the discovery issues raised.

My counsel's request to withdraw at this late stage in the proceedings is exacerbated by fear of retaliation by Fenwick in light of a State Bar ethics complaint I filed against Fenwick & West in May 2014 (**Exhibit C**). My counsel has expressed that they would fear retribution if I filed this complaint in email correspondence to me.

I continue to trust my counsel despite the difficulties they have faced.   For at least these reasons, I respectfully request the court to DENY my counsel's motion to withdraw.

Respectfully submitted,

/s/ Raj Abhyanker/

Raj V. Abhyanker

Defendant

# EXHIBIT A

---------- Forwarded message ----------

From: **Jeff Drazan** <jeff@bertramcapital.com>
Date: Sun, Nov 11, 2012 at 9:27 PM
Subject: Re: Center'd Inc. , CEO?
To: Raj Abhyanker <raj@legalforcelaw.com>
Cc: Daniel Hansen <dhansen@mh-llp.com>, "bill@harris.vu" <bill@harris.vu>
You have my vote
Jeff Drazan
Bertram Capital
650.358.5010
On Nov 11, 2012, at 6:52 PM, "Raj Abhyanker" <raj@legalforcelaw.com> wrote:
Dan, Jeff, and Bill,
……. Would the current directors/equity owners be ok with me serving as the interim CEO again for the purpose of recovering $ for the company to restart? …..
Thoughts?
Raj

# EXHIBIT B

---------- Forwarded message ----------

From: **Jeff Drazan** <jeff@bertramcapital.com>
Date: Sun, Nov 11, 2012 at 9:27 PM
Subject: Re: Center'd Inc. , CEO?
To: Raj Abhyanker <raj@legalforcelaw.com>
Cc: Daniel Hansen <dhansen@mh-llp.com>, "bill@harris.vu" <bill@harris.vu>
You have my vote
Jeff Drazan
Bertram Capital
650.358.5010
On Nov 11, 2012, at 6:52 PM, "Raj Abhyanker" <raj@legalforcelaw.com> wrote:


Dan, Jeff, and Bill,


 I see Center'd, Inc. is still alive as a corporate entity in Delaware and it's corporate taxes are overdue.   Who is on the Center'd board, who are shareholders and/or can speak on behalf of it?  Would the current directors/equity owners be ok with me serving as the interim CEO again for the purpose of recovering $ for the company to restart?  Nothing is happening with the entity as far as I can tell and it will perhaps soon need to be dissolved.    It is likely I will win a litigation on the Nextdoor matter (they lost a fraud motion in TTAB, have removed to federal court to save face, and we are in settlement negotiations) and I'd like Center'd shareholders to share in that recovery.   I have always tried to protect shareholder interests at Center'd, including the interest in the patent portfolio, leading toward interest and asset sale to Google.    I see a separate company was formed the Dealmap, Inc. for that purpose, and the original Fatdoor.com domain was never transferred to Google.


Thoughts?


Raj

# EXHIBIT C

**Raj V. Abhyanker**

859 Bette Avenue

Cupertino California

408-398-3126 (cellular phone)

Monday May 5, 2014

Re:

Ethics Violation under California State Bar:

    (1) **Ethics Rule 5-100, Threatening Criminal, Administrative, or Disciplinary Charges.**
    (2) **Ethics Rule 3-100, Confidential Information of a Client.**
    (3) **Ethics Rule 3-200, Prohibited Objectives of Employment.**
    (4) **Ethics Rule 3-210, Advising the Violation of Law.**
    (5) **Ethics Rule 3-300, Avoiding the Representation of Adverse Interests.**
    (6) **Ethics Rule 3-310, Avoiding the Representation of Adverse Interest.**
    (7) **Ethics Rule 3-600, Organization as Client.**

Dear State Bar of California,

    My name is **Raj V. Abhyanker** (hereinafter "Complaining Witness"), and I am a counter-plaintiff in a lawsuit against Benchmark Capital and Nextdoor.com, Inc. in United States District Court for the Northern District of California, Case No. 3:12-cv-05667-EMC (hereinafter "Litigation"). Complaining Witness brings this complaint for violations of **Rule 5-100 (Exhibit A)** against Fenwick & West LLP, and **Jennifer L. Kelly** and **Laurence F. Pulgram** (collectively "Accused Attorneys") both employed as partner attorneys of accused law firm Fenwick & West LLP in San Francisco California. Accused Attorneys represent counter-defendant Nextdoor.com, Inc. in the Litigation. Accused law firm Fenwick & West is a former counsel to Complaining Witness's company 102103, Inc.

    First, Rule 5-100 is applicable to a member of the State Bar of California (hereinafter "State Bar"). Jennifer Kelly is a member of the State Bar because she holds an active State Bar Reg. 193,416.

Laurence F. Pulgram is a member of the State Bar because he holds an active State Bar Reg. 115,163. Therefore, the Accused Attorneys are members of the State Bar.

Second, Rule 5-100 requires that there be a civil dispute. In subsection (C) of Rule 5-100, the term "civil dispute" is defined to include "a controversy or potential controversy over the rights and duties of two or more parties under civil law" (**Exhibit A**). Here, there is a civil dispute because the Lawsuit is a controversy over the rights and duties of the Complaining Witness, a first party, and Nextdoor.com, Inc. represented by the Accused Attorneys, and which is a second party. In addition, the Lawsuit is brought under civil law for civil claims before a federal judge Honorable Edward Chen on the basis of civil claims including trademark infringement, cyber piracy, and misappropriation of trade secrets in the United States District Court for the Northern District of California, Case No. 3:12-cv-05667-EMC. Therefore, there is a civil dispute.

Third, Rule 5-100 requires that the member of the State Bar to obtain an advantage through the threat of the criminal, administrative or disciplinary charge in the civil dispute.

Accused Attorney Jennifer Kelly (hereinafter "Kelly") threatens to present administrative and disciplinary charges against the Complaining Witness through a letter to Complaining Witness's counsel Bruno Tarabichi on May 1, 2014 via electronic mail and U.S. Mail (**Exhibit B**). Kelly threatens that Complaining Witness should be afraid of her accusations because "given that Mr. Abhyanker himself is a practicing attorney and knows the ramifications of such conduct" (**Exhibit B**, page 1, paragraph 2).

Furthermore, Kelly threatens to present a criminal charge against the Complaining Witness through this very same letter of May 1, 2014 (**Exhibit B**). Kelly threatens the Complaining Witness of criminal charges by writing "Mr. Abhyanker has surreptitiously recorded two conversations in violation of Penal Code Section 632(b)" (**Exhibit B**, page 3, lines 1-2).

Kelly makes these claims despite knowing that her statements are false. Particularly, Complaining Witness ("Mr. Abhyanker") has never surreptitiously recorded conversations in violation of Penal Code

Section 632(a), has never been charged with any criminal violation by any court, and has never been found guilty by any court of such conduct.

Even more perplexingly, Kelly makes these statements knowing full well that no such rulings for violations under Penal Code Section 632(a) were made against the Complaining Witness. In contrast, both audio recordings demonstrate accepted and informed two-party consent as demonstrated through:

**(1)** Client Nirav Tolia of Accused Attorneys admitting on a first audio recording itself that he is giving "full disclosure" so that Complaining Witness can take the recording and "do with it what you will" (PACER document 150-1).

**(2)** Mr. Sood referenced as the subject of the second recording was provided and admitted informed consent by plainly saying "Oh, Okay" in response to a statement by Complaining Witness that he would "record everything" (PACER document 165-1).

Despite these facts, Kelly goes on to threaten presenting an additional criminal charge by writing Complaining Witness has "fabricated, tampered with, or destroyed other key evidence" (**Exhibit B**, page 2, paragraph 2). To support her statement here, Kelly points to a file titled "Executive Summary-Fatdoor-06-11-07.pdf" (hereinafter Document) as being "one of the most startling examples" that "contained no references to the only two trade secrets" (**Exhibit B**, page 2, paragraph 2). The date mentioned on the file name of the Document is June 11, 2007, which is days before Complaining Witness was even first introduced to the party Benchmark Capital, the party to whom Kelly refers.

In addition, Kelly ignores the fact that Document is not described as part of the Complaining Witness's trade secret. In fact, this Document was provided to numerous venture capitalists to whom the Complaining Witness pitched his company and contained all materials except Complaining Witness's trade secret materials. In contrast, the Due Diligence CD having the Complaining Witness's trade secret materials was provided solely to Benchmark Capital on their request on June 22, 2007 a day after assurances of confidentiality were provided via written correspondence in emails.

In summary, despite clear facts to the contrary, Kelly numerously threatens the Complaining Witness with criminal, administrative, and disciplinary charges to obtain an unfair advantage in settlement talks in the civil Litigation because she feels that through her falsities her client can gain an advantage over the Complaining Witness and thereby coerce an "overall settlement" that would "dispose of the entire case" **(Exhibit B,** page 1, paragraph 1) in light of Kelly's client Nextdoor.com losing a Summary Judgment Motion on the basis of trade secret theft to the Complaining Witness one week prior on April 23, 2014 **(Exhibit C).** Kelly continues to threaten the Complaining Witness by writing "all of these acts will, at the end of the day, come back to haunt him." For this reason, Kelly threatened to present criminal, administrative and disciplinary charges to obtain an advantage over the Complaining Witness in a civil dispute of the Litigation.

Upon reason and belief, accused Attorney Laurence Pulgram (hereinafter "Pulgram") supported Kelly's statements and collaborated with Kelly in her letter of May 1, 2014 to counsel for Complaining Witness. For at least the reasons specified above, Complaining Witness hereby submits that Accused Attorneys have violated Rule 5-100 to the detriment of the Complaining Witness.

### Harm

Complaining Witness feels like he is being blackmailed by Accused Attorneys and his former counsel, the law firm of the Accused Attorneys into accepting a settlement that is unjust because of the threats described herein with particularity in violations of Rule 5-100. Particularly, the Accused Attorneys make these blackmailed threats ignorantly without prior to the taking of even a single Discovery deposition of the Complaining Witness's witnesses despite only less than seven weeks remaining for the end of the Discovery Period of June 19, 2014.

For example, the Accused Attorneys have threatened not one but multiple motions in the coming weeks to increase expenses of the Complaining Witness fighting motions designed to attack the

Complaining Witnesses professional character and confuse the court with their accusations in violation of Rule 5-100 as refuted here. As a result, Complaining Witness feels harassed and intimidated.

In addition, Complaining Witness feels that his former law firm, the law firm of the Accused Attorneys, has unethically abandoned representation of the Complaining Witness in favor of representing an adverse party that is well heeled and which has raised more than $100 million dollars in venture capital. Complaining Witness further assets that the Accused Attorneys and law firm of the Accused Attorneys now unethically represents an adverse party Nextdoor.com, Inc.:

(1) which now asks for **Mr. Babar Rana**, a former Chief Executive Officer and Chief Operating Officer of its former client 102103, Inc. to be deposed and produce documents around the same Lorelei and Nextdoor trade secret at the heart of the Litigation.[1]

(2) which now asks for **Mr. Daniel Hansen**, a former co-counsel of its former client 102103, Inc. to be deposed and produce documents around the same Lorelei and Nextdoor trade secret at the heart of the Litigation.[2]

(3) which now asks for **Mr. Jeffrey Drazan**, a co-founder, investor, and director of its former client 102103, Inc. to be deposed and produce documents around the same Lorelei and Nextdoor trade secret at the heart of the Litigation.[3]

---

[1] The Accused Attorneys and the law firm of Accused Attorneys refused to withdraw, or have not withdrawn, subpoenas for depositions and productions of documents against all the other individuals listed herein primarily affiliated with its former client 102103, Inc.

[2] Brazenly, the Accused Attorneys and the law firm of Accused Attorneys have even asked to depose Mr. Daniel Hansen, a licensed California attorney and their fellow co-counsel of their former client 102103, Inc. around the very same issues that the law firm of the Accused Attorneys was hired to help protect.

[3] Tellingly, Accused Attorneys and law firm of Accused Attorneys recently withdrew a served subpoena on Mr. Jeffrey Drazan, a powerful venture capitalist with whom Accused Attorneys and law firm of Accused Attorneys likely wishes to maintain relations after being informed by Mr. Drazan's counsel of their prior representation creating a conflict. Despite this withdrawn subpeona, Accused Attorneys decided to have an 'informal conversation' with Mr. Drazan, violating attorney client privilege with its former client 102103, Inc.

(4) which now asks for **Mr. Raj Abhyanker**, the Complaining Witness, and a former Chief Executive Officer and founder of its former client 102103, Inc. to be deposed and produce documents around the same Lorelei and Nextdoor trade secret at the heart of the Litigation.

(5) which now is presented with **Mr. Alex Gault**, former VP of Marketing of its former client 102103, Inc., as a key witness for the Complaining Witness with respect to the Lorelei and Nextdoor trade secret that the law firm of the Accused Attorneys was retained to protect.

(6) which now is presented with **Mr. Ankur Verma**, former Engineering Lead of its former client 102103, Inc., as a key witness for the Complaining Witness with respect to the Lorelei and Nextdoor trade secret that the law firm of the Accused Attorneys was retained to protect.

(7) which now is asked to consider **Mr. Sandeep Sood** (hereinafter 'Sood') former Independent Contractor of its former client 102103, Inc., as an adverse witness for the Complaining Witness with respect to the Lorelei and Nextdoor trade secret that the law firm of the Accused Attorneys was retained to protect.

(8) which now colludes with the adverse witness Sood, former Independent Contractor of its former client 102103, Inc. on a number of motions in the civil Litigation with respect to the Lorelei and Nextdoor trade secret when it knows or should know that Sood's

positions are in direct conflict with its former client 102103, Inc. with respect to the Lorelei and Nextdoor trade secrets.

(9)   which was started with the exact same name 'nextdoor.com' that was then a trade secret of its former client 102103 of the Accused Attorneys at the time of disclosure to Benchmark on June 2007 (then a trade secret disclosed in then unpublished patent application 11/603,442) by virtue of its explicit claim to priority to its 102103 client owned application which was then entirely a trade secret through a provisional patent application 60/817,470 on which each page of the as filed USPTO copy listed as the owner as being 102103, the client of the law firm of the Accused Attorneys.

What is further troubling the Accused Attorneys and the law firm of the Accused Attorneys continues to represent an adverse party to a former client 102103 despite knowing of an actual conflict and despite its client the adverse party Nextdoor.com, Inc. :

A.   being affiliated with a venture capitalist ('Benchmark') who has been accused of having confidential information of the former client 102103, Inc. and of the Complaining Witness in the Litigation.

B.   being started by a chief executive officer Nirav Tolia (hereinafter 'Tolia') who was an entrepreneur-in-residence employee of Benchmark allegedly at the time of learning of the 102103 trade secrets.

C.   who is accused having confidential information of the former client of the Accused Attorneys 102013, Inc. through at least the entrepreneur-in-residence status in Benchmark of Tolia and Prakash Janikiraman, VP of Engineering of adverse client Nextdoor.com Inc. allegedly at the time of learning of the 102103 trade secrets.

    D.  who has a current chief executive officer Tolia shortlisted as a chief executive officer candidate of Complaining Witness's company Fatdoor in 2007 through his entrepreneur-in-residence status at Benchmark allegedly at the time of learning of the 102103 trade secrets.

Complaining Witness originally retained the law firm of the Accused Attorneys on July 27, 2006 to protect his personal trade secrets into a new corporation name he was organizing, LegalForce, Inc. (renamed from a dormant corporation formed months earlier by the Complaining Witness 102103, Inc., hereinafter '102103'). Complaining Witness later reacquired all rights in 102103 personally in late 2007, and this fact is not in dispute.

During the scope of the Engagement of 102103, Inc., the law firm of the Accused Attorneys provided significant legal advice on the protection of intellectual property including the trade secrets at the heart of the civil Litigation. Particularly, as is customary with Silicon Valley law firms, the law firm of the Accused Attorneys provided significant legal advice directly to the Complaining Witness personally for which they did not bill time in the form of intellectual property advice including advice related to protection of patents and trade secrets.

In fact, the Complaining Witness hired the law firm of the Accused Attorneys solely because of his close personal friendship with an intellectual property partner of the law firm of the Accused Attorneys, Rajiv P. Patel (hereinafter 'Patel'). Because of Complaining Attorney's close personal friendship with Patel and given the pattern and practice of how law firms in Silicon Valley work with pre-funded startups, none of the legal advice related to trade secrets provided by Patel to Complaining Witness at the heart of the civil Litigation was ever documented in archived billing records of the Accused Attorneys. Despite this, Complaining Witness still paid approximately $10,000 to the law firm of the Accused Attorneys in 2006 for corporate legal services, many of which memorialized the distribution of intellectual property now argued to be at the heart of the civil Litigation.

The Engagement Letter of July 27, 2006 with the law firm of the Accused Attorneys was personally signed by Complaining Witness on behalf of 102103 as the Chief Executive Officer on July 27, 2006 (see handwritten note on the first page of the Engagement Letter of **Exhibit D**). The Engagement Letter of July 27, 2006 between 102103 and the Law Firm of the Accused Attorneys and signed by the Complaining Witness explicitly states that the "Scope of the Firm's Representation" includes "corporate matters relating to the Company's formation, financing, and structure" (page 1, section 1, Exhibit D). It further explains in the "Staffing" section that the law firm of the Accused Attorneys would use its intellectual property partner, Rajiv P. Patel for all "intellectual property related matters" (page 1, section 2, Exhibit D).

In the handling of the Company's responsibilities, the Engagement Letter of July 27, 2006 explains that Complaining Witness would provide law firm of the Accused Attorneys of "any relevant information that bears on our representation" (page 3, section 7, Exhibit D) and that Complaining Witness should keep the law firm of the Accused Attorneys "informed of parties who may be in conflict with or adverse to the Company or the legal representation we have undertaken for the Company." (page 3, section 7, Exhibit D) When the Complaining Witness informed the law firm of the Accused Attorneys at the very commencement of the Litigation, the law firm of the Accused Attorneys refused to withdraw from representing the adverse party.

Particularly, the Complaining Witness has been attempting to disqualify the law firm of the Accused Attorneys from the representation of the adverse party Nextdoor.com, Inc. related to trade secrets since the very first start of the Litigation (Exhibit E). However, the Complaining Witnesses requests to have the law firm of the Accused Attorneys withdraw were unsatisfactorily addressed. For this reason, Complaining Witness filed a Motion to Disqualify the Law Firm of the Accused Attorneys in the Litigation around May 2013. However because of:

1. a lack of proper documentation and billing maintained by the law firm of the Accused Attorneys for legal advice time of Patel,

2. an purported self-imposed 'ethical wall' of Patel and other attorneys who worked on 102103 from the Litigation, and

3. an alleged "waiver" through Complaining Witness's counsel

Complaining Witness was unsuccessful in disqualifying the law firm of the Complaining Witness as counsel to the adverse party in the civil Litigation at that early stage in the Litigation (Exhibit F).

However, Complaining Witness now appeals to the State Bar of California that this failure to disqualify the law firm of the Accused Attorneys early in the Litigation because of an alleged counsel imposed "waiver" and findings above does not and should not absolve the law firm of the Accused Attorneys of all ethical liabilities of the State Bar of California and to the Complaining Witness as a former client when a critical issue of discovery related to trade secrets is directly and substantially related to the Law Firm's prior representation of its former client 102103.

Furthermore, Complaining Witness now appeals to the State Bar of California that this failure to disqualify the law firm of the Accused Attorneys early in the Litigation because of an alleged counsel imposed "waiver" and findings above does not and should not absolve the law firm of the Accused Attorneys of all ethical liabilities of the State Bar of California when adverse depositions and adverse discovery of privileged information from officers and employees is sought by the law firm of the Accused Attorneys that is substantially privileged because of the services the law firm of the Accused Attorneys was first hired to first protect.

Particularly, Complaining Witness submits that the law firm of the Accused Attorneys should not be permitted to continue representing the adverse party when the very subject matter of what they are

advocating now creates a direct and substantial conflict with their prior representation of a client. Here, the prior representation of 102103 around corporate matters, intellectual property and trade secrets is now at the very heart of the issues of the Lorelei trade secret because of the recent ruling of Hon. Judge Chen to permit discovery to continue on the basis of trade secrets on April 23, 2014.

What is troubling is that the law firm of the Accused Attorneys has now served discovery demands for adverse documents, adverse admissions, and adverse depositions in the past two weeks on former employees and counsel of its former client 102103 related primarily to matters *substantially related* to its previous representation of 102103. In fact, a majority of the individuals that the law firm of the Accused Attorneys now seek discovery from are former officers, directors, shareholders, and even co-counsel to the very same 102103 entity previously represented by the law firm of the Accused Counsel. Even more astounding is that the requested discovery directly covers intellectual property, ownership, trade secret, and corporate matters of 102103 on which the law firm of the Accused Attorneys had privileged and confidential information. Despite this, the law firm of the Accused Attorney continues to represent the adverse party boldly. For this reason, the Complaining Witness hereby makes an appeal to the State Bar of California for violations of Professional Responsibility ethics rules described herein by the Accused Attorneys, and the law firm of the Accused Attorneys.

For the reasons explained above, the Complaining Witness appeals to the State Bar of California that there is now a direct conflict which ethically requires the law firm of the Accused Attorneys from withdrawing representation of the Litigation or face discipline by the State Bar of California.

### Timeliness of this Complaint to the State Bar of California

Complaining Witness brings this State Bar complaint on a timely basis because of issues presented were not ripe at earliest until Friday May 2, 2014 (three days ago) and at earliest issues April 23, 2014 (less than two weeks ago) when Hon. Judge Edward Chen made a ruling on a Summary Judgment Motion

by the Accused Attorneys and the law firm of the Accused Attorneys in favor of the Complaining Witness on the basis of Trade Secret misappropriation.

### Conclusion

Complaining Witness feels coerced through blackmail into providing the opposing counsel with unfair advantage in an overall settlement of this case because of threats made by the Accused Attorney and his former counsel, the law firm of the Accused Attorneys in violation **of Rule 5-100** (Exhibit A).

In addition, Complaining Witness believes that there is now a direct conflict which ethically cannot excuse the law firm of the Accused Attorneys from continuing to represent the adverse party Nextdoor.com, Inc. under numerous California rules of professional conduct notwithstanding the non-disqualification of the law firm of the Accused Attorneys earlier in the proceedings of the Litigation (Exhibit F). Particularly, Complaining Witness believes that for the Accused Attorneys and his former counsel, the law firm of the Accused Attorneys to continue representing the adverse party on the trade secrets they previously helped to protect would cause irreparable harm to the Complaining Witness and would be in direct violation of numerous California Bar rules of ethical conduct including **Rules 3-100, 3-200, 3-210, 3-300, 3-310, and Rule 3-600** (Exhibit A).

For at least these reasons, Complaining Witness requests that an investigation and prosecution of the Accused Attorneys and the law firm of the Accused Attorneys by the State Bar of California.

Respectfully submitted,

Raj V. Abhyanker

Complaining Witness

Monday May 5, 2014