July 16, 2014

Hon. Nathanael M. Cousins
United States District Court
450 Golden Gate Avenue
San Francisco, CA 94102

  Re: *Nextdoor.com, Inc. v. Raj Abhyanker,* **No. 3:12-cv-05667-EMC,**
    **July 16, 2014 Joint Discovery Letter: Completion of outstanding discovery**

Dear Judge Cousins:

  Nextdoor.com, Inc. ("Nextdoor.com") and Raj Abhyanker ("Mr. Abhyanker") jointly submit this Discovery Letter Brief seeking the Court's assistance with disputed discovery issues. Counsel represent they have met and conferred on these issues in person on July 11 and by repeated communications thereafter, and have been unable to reach agreement.

**Issue One: Whether Mr. Abhyanker must inform Nextdoor.com of the MAC addresses identifying the computers and devices he has forensically preserved.**

  **Nextdoor.com's Position:** Because of concerns over repeated spoliation by Mr. Abhyanker, he has been ordered [Dkt. 223] to retain a computer expert (Mr. Berryhill) to create forensic copies of all of the computers and devices in his possession that may contain relevant and discoverable evidence, and to identify the computers and devices that have been preserved in this manner. In conjunction with this effort, Nextdoor.com sent an email to Mr. Abhyanker's counsel and Mr. Berryhill jointly, asking Mr. Berryhill to provide it with a list identifying the preserved devices by their MAC addresses and to confirm that certain MAC addresses that are the source of key evidence were among those preserved. Even though this information is essential for determining that all relevant devices have been adequately preserved according to this Court's order, and even though providing the MAC addresses should be a trivial exercise, Mr. Abhyanker has refused to provide the MAC addresses to Nextdoor.com, thereby attempting to block effective forensic analysis.

  The MAC address is a unique identifier for a computer or computer device (such as an external hard drive). This address appears in the computer's files, allowing the computer or device to identify itself to other computers or devices that it is connected to. For instance, when an external hard drive is plugged into a computer, it shares this MAC address with the computer, and the external hard drive's MAC address is then recorded on system files within the computer. A MAC address is trivial to look up, even by a lay person, often listed on the outside of the device or, if not, requiring just 2 to 5 short steps depending on the operating system. *See, e.g.*, *How to Find the MAC Address of Your Computer*, wikiHow, http://www.wikihow.com/Find-the-MAC-Address-of-Your-Computer (last visited July 15, 2014).

  By analyzing files previously produced in this case, Nextdoor.com's computer expert has only last week identified seven MAC addresses associated with seven computers or devices that may have been used to access or store suspicious files of direct evidentiary importance to the litigation. One MAC address is particularly important (00-24-8C-F8-70-B2). It identifies the device that Mr. Abhyanker used to load onto the Toshiba hard drive the suspect "06-21-07" "Lorelei PowerPoint" file that he has been using to assert that Fatdoor, Inc. had a claim to priority in the NEXTDOOR mark and a supposed Lorelei trade secret. Our expert needs the

MAC addresses to (i) identify whether the relevant devices have been preserved or still need to be found, and (ii) to identify which devices could be the source of suspicious documents for further investigation.  Mr. Abhyanker has refused to provide the MAC addresses for the sixteen devices that have been preserved by Mr. Berryhill, complaining that it would be burdensome to do so while they are focused on producing documents.  However, Abhyanker's late production of documents in this matter is his fault, not one that should prejudice Nextdoor.com.  Further as the website above indicates (and consultation with our expert has confirmed), finding a computer's MAC address is a simple and quick process that even someone without technical expertise can do in a matter of minutes.  For only 16 computers or devices, this should not be a burden.

Nextdoor.com therefore requests an order that (A) Mr. Abhyanker identify the computers and devices preserved by Mr. Berryhill by their MAC addresses and confirm that the six MAC addresses Nextdoor.com has indicated are listed among them and, (B) if not, that Abhyanker and his counsel search for the missing devices and, if found, preserve them.  At minimum, Nextdoor.com requests an order to identify whether the device with the above-mentioned MAC address (00-24-8C-F8-70-B2) has been preserved, or whether it has so far been concealed from discovery.

Abhyanker's claim that Nextdoor.com "delayed" asking for MAC addresses is spurious.  In fact, Nextdoor.com still has not received *any* of the materials ordered to be produced from Mr. Abhyanker's own custodial accounts, materials originally due last September.  Abhyanker's conduct has forced us to engage in piece meal, document-by-document analysis of incomplete data, that only recently revealed the necessity of having MAC addresses to complete the search

**Mr. Abhyanker's Position:**

Nextdoor.com unduly delayed requesting the MAC addresses, and collection of the addresses at this time would pose an undue hardship in terms of money and time. Mr. Abhyanker also asserts that Nextdoor.com has failed to demonstrate that the MAC addresses are relevant to proof of Nextdoor.com's claims for declaratory judgment or cyberpiracy - Judge Chen's case management order made clear that discovery would be allowed only on those claim, and not on the issue of Mr. Abhyanker's alleged bad faith in bringing his trade secret or trademark infringement claims.  For example, the so-called "Lorelei PowerPoint" document (the only document specifically mentioned by Nextdoor.com) is a document that Nextdoor.com claims is evidence of Mr. Abhyanker's bad faith, and has nothing to do with the declaratory judgment or cyberpiracy claims.  Thus, Mr. Abhyanker submits that Nextdoor.com is impermissibly seeking the MAC addresses as a means of bolstering their bad faith allegations and not in order to prove their affirmative claims in this case.

As for Nextdoor.com's undue delay, the Court should be aware that, prior to the June 18, 2014 hearing on their discovery dispute, Mr. Abhyanker's counsel gave Nextdor.com's counsel a list of the computers and drives that had been forensically preserved in connection with this case. The list identified the computers and drives by serial number, brand/computer type, and a list of the amount of electronic information preserved (by gigabyte, etc).  Nextdoor.com never objected, either prior to or during the hearing, that the identifying information provided by Mr. Abhyanker was inadequate, and Nextdor.com did not ask for MAC numbers prior to or during the hearing.

2

Following the hearing, at the suggestion of the Court, the parties met and conferred about the protocol for production of electronic documents by Mr. Abhyanker. One of the items discussed at that time was the list of identifying information for each computer previously provided by Mr. Abhyanker. Nextdoor.com's counsel agreed at that time that the list previously provided by Mr. Abhyanker was satisfactory. On June 19, 2014, the day immediately following the hearing, the parties filed a joint statement with the Court reflecting their agreement that the detailed list provided by Mr. Abhyanker was sufficient and that no further action was needed from the Court to require Mr. Abhyanker to provide additional information. *See,* "Nextdoor.com v. Raj Abhyanker: Document Production Guidelines UPDATED June 19, 2014 (ECF No. 232-1) paragraph 1.

Further, in the past month or so since the discovery hearing, the parties have met and conferred to devise a protocol for searching and producing the large amount of electronic records preserved by Mr. Abhyanker's forensic expert. During the meet and confer process, Nextdoor.com's counsel never asked for the MAC addresses. The electronic search protocol has been jointly agreed upon by the parties and the process of searching and producing records has begun in earnest. Mr. Abhyanker's counsel are currently working nearly full time with its e-discovery contractor to produce responsive, non-privileged documents prior to this Friday's (July 18) discovery cutoff.

It was not until July 11, 2014 that Nextdoor.com's counsel finally got around to asking for the MAC addresses. It had thus been nearly a month since the discovery hearing, and was a mere 7 days before the discovery cutoff. Mr. Abhyanker's counsel is nearly fully occupied in attempting to complete production. Nextdoor.com offers no sound explanation for why it failed to request the MAC addresses when it first received Mr. Abhyanker's detailed list of identifying information for each computer, or why it failed to tell the Court during the discovery hearing or in its June 19, 2014 filing that it needed the MAC addresses.

As for the undue burden of collecting the MAC addresses, the Court should note that, in order for Mr. Abhyanker's forensic expert to collect the MAC addresses at this time, Mr. Abhyanker would incur a cost of approximated $3,000-$5,000 in expert fees (the expert would have to travel from his office in Benicia to LegalForce's three offices in Mountain View and then inspect each computer and storage drive to collect the information, and the expert's hourly rate is $500 per hour). Furthermore, Mr. Abhyanker's counsel is working full time to produce the requested discovery documents by the cutoff and cannot afford the time to spend a day collecting the MAC addresses that should have been requested long ago when there was no such "time crunch."

**Issue Two As Framed by Nextdoor.com: Whether Mr. Abhyanker may further withhold documents in contravention of both the agreed upon Document Production Guidelines as submitted to the Court, and Judge Orrick's Order [Dkt. 263]**

**Issue Two as framed by Raj Abhyanker: Mr. Abhyanker's attorneys may review the documents returned by Blackstone's search pursuant to the search protocol to ensure the documents are responsive to Nextdoor.com's requests and this lawsuit. [Dkt.263]**

3

**Nextdoor.com's Position:** After continuously failing to meet his discovery obligations to date, Mr. Abhyanker now seeks further to circumvent agreed-upon document production protocol and the Court orders approving them by imposing an additional subjective "relevance" screen to exclude documents the protocol required be produced. In June, given the serious concerns regarding Mr. Abhyanker's spoliation and fabrication of evidence, and his failure to produce more than a negligible set of documents of which he was a custodian, counsel for Mr. Abhyanker agreed, and this Court ordered, sequestration of document repositories for review and production. Dkt. 213, 221 (Joint Letter describing the immediate need for sequestration); Dkt. 223 (ordering preservation of discovery materials). To finally produce records from that mass of information, counsel met and conferred and agreed to a document review and production protocol consisting of various date restrictions and narrow keyword searches. At the request of the Court the parties submitted this protocol as it was originally drafted, as well as two updated versions. *See* Second Updated Document Production Guidelines [Dkt. 256, submitted July 3, 2014]; Updated Document Production Guidelines [Dkt. 232, submitted June 19, 2014]; original Document Production Guidelines [Dkt. 228, submitted June 18, 2014]. The date restrictions and key words discussed and agreed on by the parties are narrow and designed specifically to target relevant responsive documents. Counsel also met and conferred regarding an appropriate privilege review (and corresponding privilege log) to apply to the sequestered documents.[1] The combination of the keyword searches and privilege screen were intended to be the sole filters to be applied to the sequestered documents, which were to be produced by July 18, 2014.

On Friday July 11, Judge Orrick heard in camera Abhyanker's counsels' motion to withdraw. He granted that motion conditioned on withdrawing counsel cooperating in the privilege screen. Dkt. 263 (noting that "Counsel are in the midst of producing documents for Abhyanker in response to a Discovery Order of Judge Cousins" and requiring their participation in "the privilege review that is required"). After 8:00 p.m. on July 11, Mr. Abhyanker filed a Notice Regarding Plan to Transition Discovery Tasks From Withdrawing Counsel to Remaining Counsel of Record ("Transition Plan") (Dkt. 262), describing his intention to exclude additional materials from production applying some kind of undefined "relevancy screen" that would be conducted not by withdrawing counsel, but by a new contract service.

This "relevance" screen is inconsistent with the Document Production Guidelines [Dkt. 232], which established an objective, defined basis for production, and appears to be yet another attempt by Mr. Abhyanker to prevent Nextdoor.com from obtaining the discovery it is entitled to. Yet another selection of documents *not* to be produced also defies numerous agreements made by withdrawing counsel during discovery that agreed to withdraw objections and producing all document *responsive* to Nextdoor.com's requests, not merely those Abhyanker views as "relevant." [*See, e.g.*, correspondence from May 21 to 28 and Dkt. 198]. Subsequently, Mr. Abhyanker represented that he is not doing a "relevancy" screen, but refuses to identify whether or what other screens he is imposing, and what prior agreements of counsel as to production he is following or not (i.e., producing all responsive documents). Any exclusion now, other than for privilege is, at this stage, inappropriate. If documents are privileged—

---

[1] While it is true that Nextdoor.com always agreed to a (logged) review for privilege, as indicated in Abhyanker's quotes below, Abhyanker is incorrect in insinuating that this agreed to any other screen of keyword hits.

including any documents relating to services performed by Mr. Abhyanker or his firm for other client—they will be captured on a review for privilege and included in the log (excepting privileged items within the categories that the Court and parties have agreed need not be logged). All others hits on the agreed upon keywords, given that they are not privileged, should be produced. If confidential, they should be produced subject to the protective order.

Nextdoor.com therefore requests an order that Mr. Abhyanker produce all documents and information within the production protocol, subject to the Protective Order [Dkt. 102], without limitation on production other than for privileged materials logged per the Court's order.

Nextdoor.com made a request to meet and confer regarding the "additional relevancy screen" (Issue Two below) on July14, 2014, but Abhyanker's counsel never agreed to do so, yet now contend that Nextdoor.com may not bring the motion because of their own refusal.

**Mr. Abhyanker's Position:**

As an initial matter, Judge Cousins' Civil Standing Order requires that the parties meet and confer *in person* before submitting this joint discovery letter. Nextdoor.com is well aware of this requirement, as the parties have had numerous *in person* meet and confers with Nextdoor.com repeatedly reiterating that telephonic meet and confers are insufficient. With regard to "Issue Two," the parties have not met and conferred in person nor have they even met and conferred by telephone. The only thing that has occurred is an exchange of emails. Therefore, Nextdoor.com's requests on "Issue Two" should be denied from the outset for failing to properly meet and confer.

Substantively, Nextdoor.com's assertions are disingenuous. First, Nextdoor.com's counsel Guinevere Jobson was made aware from the outset that, after Blackstone performed the searches set out in the agreed-upon search protocol, Mr. Abhyanker would be using another ediscovery vendor called Essential and its contract attorney team to review the documents returned by Blackstone's search. Counsel for both parties even explicitly argued over whether the cost for the contract attorney review had to be split between Nextdoor.com and Mr. Abhyanker. In a July 10, 2014 email, Nextdoor.com's counsel Guinevere Jobson wrote:

> With respect to the post-filter attorney review, given the unambiguous language of Judge Cousins' order ("The parties are each to bear the cost of their own attorneys' fees spent on review of the production"), Nextdoor.com will not pay for Mr. Abhyanker's review prior to production. Your suggestion that the language of the order is confusing or ambiguous is untenable. Not only is this a cost normally incurred by the producing party, but specifically ordered by Judge Cousins to be borne separately by the parties.

Notably, Ms. Jobson did not object to a review being done, simply to the cost. It was always contemplated that Mr. Abhyanker would be able to actually review the documents returned by Blackstone's search to ensure they were responsive to Nextdoor's requests and this lawsuit.

In this regard, Mr. Hatami already emailed Ms. Jobson on July 15 to inform her that the documents were being reviewed for responsiveness as opposed to relevance. Nevertheless, Nextdoor.com has persisted to manufacture this discovery dispute where none exists. This is part of Nextdoor.com's pattern and practice of scorched earth discovery tactics and attempts to overload Mr. Abhyanker's counsel unnecessarily.

Importantly, Nextdoor.com's proposed search protocol (that Mr. Abhyanker agreed to in order to move forward and finalize discovery in this case) was not sufficiently narrow because, after Blackstone performed the search, there were a substantial number of documents that had nothing even remotely to do with this case. For example, there were numerous documents related to Mr. Abhyanker's law firm LegalForce's representation of third party clients in trademark prosecution matters. Likewise, there were documents relating to his firm's contemplated immigration practice or plans for events at his Palo Alto store on University Avenue. None of these documents have anything to do with this case. It is simply unsupportable for Nextdoor.com to argue that Mr. Abhyanker cannot review documents for responsiveness – especially given how may unresponsive documents were returned by Nextdoor.com's overly broad search. Therefore, Nextdoor.com's demand that Mr. Abhyanker should not be permitted to engage in a responsiveness review should be denied.

With respect to Nextdoor.com's assertion that a meet and confer was requested on July 14, 2014. Nextdoor.com is well aware that Mr. Abahyanker's former attorneys have been afforded mandatory withdrawal, and are only involved in accordance with Honorable William H. Orrick's order on 7/14/2014. *See* ECF 263. Nextdoor,com is also aware that Mr. Abhyanker's current representation consists of only one counsel, namely, Kuscha Hatami. With pending document requests due on July 18 involving volumes of files and a privilege log, two declarations, joint discovery letter, multiple email correspondences from Nextdoor.com's counsel requiring a response, production of Mr. Abhyanker's tax documents, and transition from former counsel to Mr. Hatami, Mr. Abhyanker's counsel was simply not afforded reasonable notice nor time for an in person meet and confer by Nextdoor.com's counsel.

/s/ *Laurence Pulgram*                                          /s/ *Kuscha Hatami*
Attorneys for Nextdoor.com                            Attorneys for Mr. Abhyanker