July 31, 2014

Hon. Nathanael M. Cousins
U.S. Magistrate Judge
United States District Court
450 Golden Gate Avenue
San Francisco, CA 94102

> Re: *Nextdoor.com, Inc. v. Raj Abhyanker,* No. 3:12-cv-05667-EMC
> Joint Discovery Letter Re Deficiencies in Mr. Abhyanker's Privilege Log

Dear Judge Cousins:

Nextdoor.com, Inc. ("Nextdoor.com") and Raj Abhyanker ("Mr. Abhyanker") jointly submit this Discovery Letter Brief seeking the Court's assistance with issues related to Mr. Abhyanker's assertions of privilege.[1] Counsel represent they have met and conferred on these issues in person, and have been unable to reach agreement.

**Issue One: Whether Mr. Abhyanker must produce documents, or at a minimum supplement his privilege log as to entries for which his log does not establish privilege, in advance of his deposition scheduled for August 4, 2014.**

**Nextdoor.com's position**: On July 18, 2014, the last day of discovery, Mr. Abhyanker provided a privilege log which purports to cover that day's production. However, that log does not approach his burden of providing a factual basis for his claims to privilege. *Clarke v. American Commerce Nat. Bank*, 974 F.2d 127, 129 (9th Cir. 1992) ("the burden of establishing that the attorney-client relationship applies to the documents in question rests with the party asserting the privilege."). Nor does the log seem to cover all of Mr. Abhyanker's productions despite being under an obligation and Court order to do so [*See* Dkt. Nos. 256, 259], and to date, counsel has been unable to answer this question. Despite the Court-ordered resumed deposition of Mr. Abhyanker scheduled for August 4—the last chance to inquire about these documents—Abhyanker has provided no additional information to substantiate the claimed privilege nor agreed to do so in time for adjudication or use during the deposition. Instead, he has continued to withhold hundreds of documents which are either (1) completely devoid of information regarding the document's author, recipients or dates and other key information; or (2) with individuals or from sources whose identities and relationship to Mr. Abhyanker have not been shown to fall within any privilege. Nextdoor.com requests an order that these items, for which no *prima facie* showing of privilege has been made, be ordered (i) produced, or (ii) submitted for in camera review, or (iii) have their log entries supplemented, with adequate opportunity to raise the issue and depose Mr. Abhyanker thereafter.

Entries 153, 159, 172, 173, 180, 186, 189, 197, 198, 207 and 281-284 are devoid of any information regarding the document's author, date of creation/modification, or basis for any claim to privilege. Similarly, documents identified as purportedly 'standalone' (non-email) documents in which privileged advice may be reflected (*e.g.*, Entries 143-201, 207-284) lack the date, author, recipient, what attorney's advice is purportedly reflected in the document, or

---

[1] Nextdoor.com has also submitted a Motion for Administrative Relief requesting leave to file Mr. Abhyanker's privilege log so that the Court may review the lack of information described herein for each of these items.

whether Mr. Abhyanker contends that the entirety of the document is comprised of such advice or only some redactable portion.  The mere assertion that a document of an unidentified author and content "reflect legal advice" does not approach a showing that the document, much less all of it, was delivered in a privilege context.  Again, such documents should be ordered produced in redacted form, submitted for inspection, or specific factual information logged with an opportunity for a further motion and deposition.  *See Clarke v. American Comm. Nat. Bank*, 974 F.2d at 129 (approving district court requiring individual explanations justifying the assertion of privilege) *citing United States v. El Paso Co.*, 682 F.2d 530, 541–42 (5th Cir.1982) (attempt to invoke privilege rejected, due in part to failure to "particularize its assertion of the privilege" with respect to each document), cert. denied, 466 U.S. 944 (1984).

      For yet another set of entries, author information has been provided, but there is no indication as to how that author could fall within any attorney client relationship to Mr. Abhyanker.  The following individuals or sources were not on the list of counsel provided by Mr. Abhyanker, and without more, Mr. Abhyanker has not met his burden for his claims to privilege when these persons create documents: "Dad" (Entries 150, 177, 187, 188, 192, 208-210); "RAPC 13" (Entries 275-277, 279); "RAPC 14" (Entries 199-201); "RAPC 17" (Entries 223, 258); Krithika (Entries 3, 4, 19, 20); Tre (Entries 190-91); Owner (Entries 169, 211-12, 214, 216-22, 224-230, 232, 234-37, 241-42, 244-251, 259-262, 267-269, 272-74); Dan Carlson (Entries 278; Prasun Sarkar (Entries 255-56, 270-71); H60sere (Entries 181-83, 194); Clientrelations (Entry 196); Isra Abid (Entry 243); Jacob Chapman (Entry 231); Ahmed (Entries 151, 179, 181); Christoph Zier (Entries 152, 155-57, 160-61); David Owens (Entries 143, 162); MP015096 (Entries 144-47, 163-68); Arthi (Entry 213, 215); Venkat Balasubramani (Entries 2, 53, 112 ); Randall Morrison (Entries 6, 7); Matt Powers (Entries 50-51 ); IT Admin (Entry 154 ); Ashwin (Entries 141-142, 233, 238-40, 265-66; R (Entry 257); Front14 (Entries 252, 263); RTeich (Entry 286); Anthony Meredith  (Entry 30); Thomas Kawaii (Entry 30).

      If any of these authors were Abhyanker, his ruminations are not privileged unless sent to counsel, and none is so identified.  If the author is an attorney, there is no indication of who received these documents, as necessary to establish that they were circulated only within the attorney-client relationship.

      If any of the "authors" listed above are a computer/drive or user account rather than a person, Mr. Abhyanker needed to so state and: (1) identify the computer/drive (specifying whether it has been forensically preserved, and if so, which device it is); (2) identify who is the user of the computer/drive listed on Mr. Abhyanker's privilege log; and (3) identify who is the author of each file listed on Mr. Abhyanker's privilege log.

      For each document for which a privilege is claimed, especially the entries without any information associated with an attorney, Nextdoor.com needs to know its source – i.e. the preserved device or email collection, and the location on any preserved device.  As a hypothetical example, if the "Owner" emails came from Mr. Abhyanker's Counsel's laptop, preserved device 870-01, then there could be less of a concern regarding the validity of the privilege claim.  This source information is not privileged, even if the underlying document might be.  Mr. Abhyanker's e-discovery vendor can automatically add this source information to the excel spreadsheet that makes up the privilege log (as they have done with portions of the

recent production). Without it, Nextdoor.com and the Court are unable to assess Mr. Abhyanker's privilege claims.

**Mr. Abhyanker's position**: Because counsel for Nextdoor.com has raised three substantially similar issues, Mr. Abhyanker's counsel has included one comprehensive position statement at the bottom of Nextdoor.com's statements.

**Issue Two: Whether Mr. Abhyanker's must produce documents which are plainly not privileged prior to his August 4, 2014 deposition.**

**Nextdoor.com's position**: Mr. Abhyanker's has logged several categories of documents and communications which are plainly not privileged. First, are his own communications directly with his expert, Mr. Vladimir Atanasov (*e.g.* Entries 8, 11, 22, 26, 28-29, 37-38, 54, 66, 109-111, 193, 195). Rule 26(b)(2) is clear that communications of information to experts is not privileged except for "communications between the party's attorney and any [expert] witness." These should be produced immediately, not after Mr. Abhyanker's deposition.

Second, Mr. Abhyanker has logged a number of communications with third parties that are clearly not an attorney, and in some cases are known fact witnesses in this matter. Again, these are not privileged and should be produced. These include entries 1,13,14, 32-33 (correspondence with Dongxia Liu, a lay witness and employee of a non-party); 6-7 (correspondence copying Randall Morrison); 2 (correspondence including no attorneys); 202-206 (correspondence drafted by "customer service"); 196 (email drafted by "clientrelations"); 3, 4, 19, 20 (correspondence with or copying 'Krithika'); 285 (correspondence copying RTeich); 141-142 (correspondence with Ashwin Anand); 158 (correspondence with Jolly Matthew) 21, 38, 110 (correspondence between Mr. Abhyanker and his assistant, Ravi Soni only or with both Mr. Soni and a third party, about Mr. Soni's deposition testimony as a witness). Each of these communications with non-parties, especially non-party witnesses, must be produced. No explanation has been given justifying withholding this information.

Third, Mr. Abhyanker has logged a number of emails from himself to himself, including some purported "drafts" of emails. (Entries 5, 9-10, 12, 15-16, 23-25, 27, 95, 113-114). Party statements are generally evidence, not privileged communications. To the extent that Mr. Abhyanker claims that any of these emails are drafts intended to be provided to an attorney, he should identify: (1) who the attorney is; (2) whether the attorney is identified in the "To" line of the email (which the log does not say); and (3) whether a final version of the email was ever sent to an attorney. Without this information there is no demonstration that the email is indeed a draft communication to counsel, or merely the ruminations of a party. Accordingly, these documents should be produced to Nextdoor.com. Alternatively, Nextdoor.com is agreeable to the Court's *in camera* review thereof to determine whether the entirety of the email is privileged as a draft email to counsel and/or draft email reflecting counsel's advice.

**Mr. Abhyanker's position**: Because counsel for Nextdoor.com has raised three substantially similar issues, Mr. Abhyanker's counsel has included one comprehensive position statement at the bottom of Nextdoor.com's statements.

3

**Issue Three: Must Mr. Abhyanker clarify whether, for entries that are logged as "with attachments", the attachments been separately logged or produced.**

  **Nextdoor.com's position**: Mr. Abhyanker has included in his privilege log, a number of entries as "with attachments." (Entries 2, 9-12, 30-31, 51-52, 64, 111, 113-114, 141-142). An otherwise non-privileged attachment does not become privilege merely by forwarding the attachment to an attorney. During the parties' July 11 meet and confer, Mr. Abhyanker's prior counsel stated that non-privileged attachments would be produced. Nextdoor.com has asked whether Mr. Abhyanker's contract lawyers that reviewed documents abided by that agreement. Mr. Abhyanker has, to date, refused to answer.

  Finally, Mr. Abhyanker is simply blowing smoke with the insinuations below that the items in question might constitute communications between lawyers in his firm, between his firm and *other* clients on *other* matters, or merely between himself and his lawyers in this matter. Nothing in the record, nor on the log itself, suggests as much. In fact, communications strictly between Mr. Abhyanker and lawyers in his firm, or only among lawyers in his firm, were *all omitted from the log*, by agreement. The log is about communications involving *non-counsel*. There is no indication that Mr. Abhyanker was acting as a lawyer for any person he communicated with in these matters—which were screened for responsiveness to this action—and which, on the log's own description, refer to discussions of strategy *in this action*. A simple review of the log, which Nextdoor.com has requested permission to file in an accompanying Motion for Administrative Relief, debunks the claims below. As for Mr. Abhyanker's claim that his counsel lacks the manpower to provide full and accurate privileged information, Mr. Abhyanker had no problem hiring contract lawyers to screen out documents from the production; contract lawyers could similarly provide the full and accurate descriptive information needed here.

  **Mr. Abhyanker's position regarding issues 1 - 3**:

  Nextdoor.com's legal team has propounded what can only be described as exhaustive if not exhausting discovery demands, up through, and beyond the fact discovery cutoff. The principal problem with Nextdoor.com's discovery demands is that they show no proper respect and deference to the fact that Mr. Abhaynker is a lawyer, and that most of the demanded documents come from sources at his law firm. The problem with such indiscriminant requests is, of course, the inevitable encounter with information privileged from disclosure through attorney-client privilege, work product protection, and other privileges and immunities.

  In spite of this obvious problem, Mr. Abhaynker has indicated to Nextdoor.com, that he will more completely fill in his privilege log – and this despite the fact that a prior order from the Court has absolved the parties in this case from having to log attorney client privileged communications. Nevertheless, Mr. Abhyanker has pledged to provide a privilege log that more completely characterizes the communications at issue, so that the basis for the application of privilege can be, more clear.

  Mr. Abhyanker's law firm clients seek advice and/or aid from Mr. Abhyanker in his legal capacity and they should be completely free of any fear that their secrets be uncovered. Thus, the underlying principle of the attorney client-privilege is to provide for "sound legal advice and

advocacy. *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). If Nextdoor.com's counsel were to be allowed to view matters regarding Mr. Abhyanker's legal advice, including the forwarding of attachments, which often contain matters related to Mr. Abhyanker's opinion, it would set a precedent where clients would be in fear of speaking frankly and openly to legal counsel, and of disclosing all relevant information to the attorney. Clients should not have to live in such fear. Cathryn M. Sadler, *The Application of the Attorney-Client Privilege to Communications Between Lawyers Within the Same Firm: Evaluating United States v. Rowe*, 30 ARIZ. ST. L. J. 859, 859 (1998). The attorney-client privilege protects client communications with the attorney, and also extends to responsive communications from the lawyer to the client. In other words, if the attorney-client communications cannot be shielded by the privilege, clients will no longer be willing to communicate to counsel things that would otherwise be disclosed.

 Moreover, many of the communications are also between Mr. Abhyanker and his in house/firm counsel, or outside counsel, where he himself is seeking legal advice. These are communications that rise to the classic attorney-client relationship, which should, under normal circumstances, be applicable to the attorney-client privilege covering those communications. *See U.S. v. Rowe*, 96 F.3d 1294, (9th Cir. 1996). Here, in a reversal by the Ninth Circuit, the Court found that associates were acting as in-house counsel to the law firm, and noted that there was "virtual unanimity by American courts" that no distinction would be made between "inside" and "outside' counsel for the purpose of the application of the privilege. *Id.* at 1296. Communications between the associates and Mr. Rowe/the law firm were privileged, even if rendered in the course of fact finding relating to legal advice. *Id.* at 1296-97. As illustrated above, case law illustrates that, intra-firm communications are protected from compelled disclosure by the attorney-client privilege – at least where disclosure is sought by a non-client.

 In addition to the attorney-client privilege, a high number of Mr. Abhyanker's communications outlined by Nextdoor.com, would in the least, fall under the attorney work product doctrine. *Coito v. Superior Court*, 2012 Cal. LEXIS 5823 (June 25, 2012). Here, the Court held that while certain witness statements obtained through an attorney-directed interview may be entitled to absolute protection, almost all are at least subject to qualified work product protection as a matter of law. In addition, absolute protection is given to any writings that reflect an attorney's impressions, conclusions, opinions, or legal research or theories. CCP § 2018.030(a); Nacht & Lewis Architects, Inc. v. Superior Court (1996) 47 Cal.App.4th 214. Conditional protection is provided to any other work product, which is discoverable if "the court determines that denial of discovery will unfairly prejudice the party seeking discovery in preparing that party's claim or defense or will result in injustice. CCP § 2018.030(b). The majority of communications outlined by Nextdoor.com's counsel are communications between attorneys, in house/firm attorneys, clients of Mr. Abhyanker's law firm, and employees of Mr. Abhyanker's law firm in regards to client matters. These all relate to either the at-issue case, or other legal matters pertaining to Mr. Abhaynker's client, and/or communications between Mr. Abhyanker and attorneys acting in a representative capacity. Therefore, Nextdoor.com's laundry list of requests, and blanket assertion for any and all documents, communications, email accounts, computers etc., that they opine is in their right to view simply because they feel like it, is highly improper.

25592/00404/LIT/1367341.10

In sum, the majority of these documents either fall under the attorney-client privilege and/or attorney work product doctrine, and there would be no prejudice to Nextdoor.com because they will have the opportunity to inquire with Mr. Abhyanker in regards to his asserted privileges during his upcoming deposition on August 4, 2014.

Finally, Nextdoor.com's assertion that Mr. Abhaynker is simply blowing smoke, albeit amusing, is quite improper and lacks merit. Nextdoor.com fancies outrageous allegations of non-compliance based on circumstantial evidence and a wild imagination. By way of example, by just a cursory glance at the 25 individuals and sources cited by Nextdoor.com in its Issue statement 1 above, Mr. Abhyanker was able to immediately identify ten of those individuals as attorney communications by either independent or in-house counsel, five of which were in-house counsel or agents working for Mr. Abhyanker, and three internal firm communications likely between employees and clients. Nevertheless, Mr. Abhyanker stands by his pledge above, and will update its log accordingly.

*/s/ Laurence Pulgram*  
Attorneys for Nextdoor.com

*/s/ Kuscha Hatami*  
Attorneys for Mr. Abhyanker