August 6, 2014

Hon. Nathanael M. Cousins
U.S. Magistrate Judge
United States District Court
450 Golden Gate Avenue
San Francisco, CA 94102

> Re:  *Nextdoor.com, Inc. v. Raj Abhyanker,* No. 3:12-cv-05667-EMC
>  Joint Discovery Letter Re Withheld Documents

Dear Judge Cousins:

Nextdoor.com, Inc. ("Nextdoor.com") and Raj Abhyanker ("Mr. Abhyanker") jointly submit this Discovery Letter Brief seeking the Court's assistance with issues related to Mr. Abhyanker's production of documents previously withheld as "duplicates," but which also come from different sources.  Counsel represent they have met and conferred on these issues in person, and have been unable to reach agreement.

**Issue: Whether Mr. Abhyanker must produce or include in a privilege log, documents previously withheld as "duplicates," but which also come from different sources.**

**Nextdoor.com's position**:  As demonstrated to the Court during the August 1, 2014 hearing, Mr. Abhyanker has again withheld documents, this time on the basis that such documents were "duplicates" of other previously produced files.  He did so, despite the relevance and import of the unique source of files which directly relates to who fabricated the documents underlying Mr. Abhyanker's claim to the NEXTDOOR mark, when the fabrication occurred, and who had possession of or was potentially aware of the fabricated documents.  Even more, Abhyanker withheld documents despite the fact that Nextdoor.com and the Court have been repeatedly told that Mr. Abhyanker would produce all responsive files.  *See, e.g.*, Dkt. Nos. 267 and 270.  To have removed responsive files from the documents provided to Nextdoor.com is directly counter to these representations.  Now, instead of simply handing over all of the files and their corresponding metadata – which admittedly hit on the keywords agreed upon by the parties – Mr. Abhyanker again appears to be obstructing Nextdoor.com's access to documents that are relevant and responsive.

On July 25, well after the close of discovery, Mr. Abhyanker first informed Nextdoor.com that it had withheld keyword hits as "duplicates."  Despite multiple requests, it was not until the afternoon of August 1 that counsel for Mr. Abhyanker provided Nextoor.com with a list of over 4,000 documents that it had withheld.  Though Nextdoor.com believes all of these files, their attachments and corresponding metadata should have been produced (or logged on a privilege log), in an effort to streamline outstanding discovery and compromise, on Sunday, August 3, counsel for Nextdoor.com identified a subset of the documents in that list that it believes are critical.[1]  This subset was identified by searching for keywords in the filenames including "Lorelei" and "Executive Summary."  The subset consists of approximately 200 documents (and their attachments, if applicable), a mere 5 percent of the total documents Mr. Abhyanker had removed from the required production.

---

[1] Should the Court deem it useful, Nextdoor.com will submit the spreadsheet which identifies, as highlighted entries, the subset of withheld documents which it has identified as the most critical.

Throughout Monday, August 4, and the morning of Tuesday August 5, counsel for Mr. Abhyanker made various representations to the effect that searches for the identified subset were underway and that documents would be produced. On the afternoon of August 4, however, during the parties' in-person meet and confer, Mr. Abhyanker backtracked, refusing to commit to produce the documents we identified from the "duplicate" set or the remaining documents in that set. Counsel was unwilling or unable to state whether any of the documents would be produced or logged, which documents might be produced or when any would be produced, if at all. As a result, Nextdoor.com is left without critical documents and no commitment from Mr. Abhyanker whether or when they will be produced. Nextdoor.com therefore requests that the Court enter an order that Mr. Abhyanker produce or log the subset of documents identified by Nextdoor.com from the list of "duplicate" documents. Given that documents should have been produced on or before July 18, 2014, *the documents should be produced immediately*. Any further delay would result in harm to Nextdoor.com, in particular with respect to its expert analysis (opening reports are due this week) and upcoming dispositive motion deadlines.

Mr. Abhyanker's production or log should include information to identify the specific source of the withheld "duplicate" documents. This information is necessary to assess the fabrication issues above as well as Mr. Abhyanker's claims that these documents are "duplicates" of documents previously produced. Mr. Abhyanker has this information readily available and has previously agreed to provide this critical information in connection with his July 18, 2014 production. He should not be able to hide the ball by refusing to provide this information in connection with this belated production. To the extent that Mr. Abhyanker views identification and location of the subset to be difficult or time consuming, Nextdoor.com proposes that the entire set of "duplicate" documents be provided to Nextdoor.com subject to the protective order: any documents in that set that are later identified as privileged can easily be clawed back without waiving any protection thereto.

Mr. Abhyanker now, in his portion of the instant Letter Brief, indicates that he will be further withholding documents from the subset identified by Nextdoor.com on the basis of relevancy. He has not, however, identified which those he now claims are not relevant. Given the timing constraints, Nextdoor.com requests that Mr. Abhyanker immediately produce the entire subset identified by Nextdoor.com. Any relevance or privilege concerns that might arise can be addressed by the Protective Order in place in this matter, as the parties have done in the past.

**Mr. Abhyanker's position:** Mr. Abhyanker disagrees with Nextdoor.com that that he has withheld documents. What Nextdoor.com is requesting are duplicate documents of documents already produced, under the notion that this will lead to evidence of fabrication in regards to Mr. Abhyanker's claims to the NEXTDOOR mark. What Nextdoor.com fails to appreciate is that Mr. Abhyanker's claims in the NEXTDOOR mark have previously been adjudicated. *See, e.g.,* Dkt. No. 192. This new request amounts to a fishing expedition in hopes of miraculously finding a document that does not exist. Furthermore, Mr. Abhyanker's production included documents that were located on numerous preserved devices and email accounts that naturally would include multiple electronic copies of the same document.

2

Nevertheless, in the interest of justice and cooperation, Mr. Abhyanker agreed to provide certain duplicate documents subject to any privilege or non-responsive designation.

Although the list of duplicate documents provide to Nextdoor.com contained over 4,000 files, a high number of these files are non-responsive documents that do not require production to Nextdoor.com, nor is Mr. Abhyanker under any obligation to log them on a privilege log. Moreover, the subset that Nextdoor.com provided to Mr. Abhyanker does not contain 200 documents, but rather approximately 162 documents, which also include a high volume of non-responsive and several privileged documents. By way of example, approximately 75 of the duplicated out files are for non-responsive documents.

Between August 4 and the morning of August 5, Mr. Abhyanker's counsel, after discussing the matter with Blackstone discovery, was under the impression that the production of the documents in the identified subset could be produced in an expedited fashion, but, counsel for Mr. Abhyanker quickly realized that they would first have to determine (a) which of the documents in the subset corresponded to the documents already produced, (b) which corresponded to the ones that were non-responsive, and (c) which corresponded to documents on the privilege log. This involved further discussion with Essential Discovery where Mr. Abhyanker's counsel was informed that the analysis would take several hours to complete. Moreover, the process also involved inquiries by Mr. Abhaynker's counsel to Blackstone and Essential in regards to (a) which documents had to be produced, (b) how many duplicates were in existence of each document in the subset, (c) why certain document were duplicated out, (d) how to acquire the duplicated out documents, etc. In light of the fact that discovery was handled by Mr. Abhaynker's previous counsel, who are no longer available to Mr. Abhyanker, it is unreasonable to expect new counsel to provide everything requested by Nextdoor.com in an expedited fashion, not withstanding other multiple discovery requests by Nextdoor.com on a daily basis, with request after request for meet and confer during unreasonable times, by way of example, when Nextdoor.com counsel insisted on a meet and confer on this same issue on August 4, the same day Mr. Abhyanker's counsel was preparing him for his deposition.

Nextdoor.com, once again, is going beyond the bounds of the Court's order, Dkt. No. 289, when it is now requesting not only production of the duplicated out files and/or a log, but also identities of source of the duplicate documents, which, as previously asserted above, are no longer relevant to this proceeding. Furthermore, to request the entire set of duplicate documents to be provided to Nextdoor.com subject to the protective order is improper given the fact that (a) a great majority of these documents are non-responsive, and (b) most if not all of the documents in question, including the privileged or non-responsive ones, come from devices used at and for Mr. Abhyanker's law firm, which naturally include sensitive law firm client attorney privileged communications, and the burden on Mr. Abhyanker to produce all of these documents is substantially outweighed by any benefit to Nextdoor.com.

Furthermore, counsel for Nextdoor.com continues to confuse relevance with responsiveness. *See, e.g.,* Dok. No. 269 ¶ 3. Mr. Abhyanker's position is that he will provide certain duplicate documents subject to any privilege or non-responsiveness, as he is well within his rights to do. In fact, Nextdoor.com is in possession of Mr. Abhyanker's privilege log, and knows that a number of documents in Nextdoor.com's subset have already been designated as

3

privileged by Mr. Abhyanker.  Mr. Abhyanker has not identified which of those documents will fall within those parameters because Nextdoor.com's counsel has not given Mr. Abhyanker the opportunity to gather and review the duplicate subset documents.  In fact, Mr. Abhyanker informed Nextdoor.com earlier today that Blackstone Discovery has informed him that it will provide him with the duplicate documents from the subset late afternoon, and Mr. Abhyanker requested additional time to review and prepare them for production tonight.  Rather than afford Mr. Abhyanker this opportunity, Nextdoor.com opted to file this joint statement sooner rather than later.

It is becoming quite obvious that Nextdoor.com is endeavoring to review documents simply because it feels it is entitled to do so, with complete disregard to the fact that many of these have already been designated as privileged, and/or not produced due to non-responsiveness.  What Nextdoor.com is attempting to accomplish is to go beyond the confines of proper discovery in a continued effort to acquire documents 19 days after fact discovery has closed.



*/s/ Guinevere L. Jobson*　　　　　　　　　*/s/ Kuscha Hatami*
Attorneys for Nextdoor.com　　　　　　　　Attorneys for Mr. Abhyanker