Hon. Nathanael M. Cousins
U.S. Magistrate Judge
United States District Court
450 Golden Gate Avenue
San Francisco, CA 94102

>    **Re:** *Nextdoor.com, Inc. v. Raj Abhyanker,* No. 3:12-cv-05667-EMC
>    **Joint Discovery Letter Re Abhyanker's Compliance With Prior Court Orders**

Dear Judge Cousins:

Nextdoor.com, Inc. ("Nextdoor.com" or "Nextdoor") and Raj Abhyanker ("Mr. Abhyanker") jointly submit this Discovery Letter Brief seeking the Court's assistance with issues related to taking the depositions of Nirav Tolia and Prakash Janikiraman, as well as with respect to difficulties encountered in expert deposition scheduling. Counsel represent they have met and conferred on these issues in person, and have been unable to reach agreement.

**Issue One: Whether Mr. Abhyanker should be able to depose selected Nextdoor.com witnesses?**

**Mr. Abhyanker's position:** At hearing in this Court on August 12, 2014, Mr. Abhyanker raised that he faces the prospect of defending himself at trial without the benefit of any depositions taken by him. In response, it was explained by the Court and opposing counsel that a prior order had precluded Mr. Abhyanker from taking the deposition of two witnesses connected to Nextdoor.com – Nirav Tolia and Prakash Janikiraman – and had restricted the "person(s) most knowledgeable" deposition of Nextdoor.com to a single topic, trademark priority. The reasoning supplied by the order was questioned relevance of the proposed depositions and, most strongly, the approaching fact discovery cut-off five days later. This order effectively cut off meaningful oral discovery for Mr. Abhyanker – indeed, discovery from the very party which has sued Mr. Abhyanker, accused him of bad faith, and which plans to seek over $1 million in attorneys' fees - - even as Nextdoor.com itself has conducted six depositions, including a deposition of party-opponent Abhyanker which lasted four sessions and continued through many hundreds of transcript pages.

Mr. Abhyanker hereby requests an order permitting the three noted depositions to go forward. In an effort to be reasonable, Mr. Abhyanker is foregoing any request to go forward with other depositions for which subpoenas were also issued: to Jennifer Dulski and Sandeep Sood.

Both the relevance and timing of the proposed depositions are supported below. As can be seen, the relevance of the proposed depositions remains as palpable as ever, while the procedural history of this case has changed markedly as causes of action have been dismissed, discovery deadlines have been extended, and fact discovery continues even now at this late date.

**Fact discovery has been extended, both by deadlines delayed by the Court and by continued motion practice resulting in new document production**

The primary concern raised by the Court in denying Mr. Abhyanker's planned oral discovery was the approaching fact discovery cut-off, just five days away at that time. In the meantime, Judge Chen extended that deadline – and then further extended the motion to compel and expert discovery deadlines – to the dates in place today. So the particular concern posed by the fact discovery cut-off date then in place became less pressing with Judge Chen's series of deadline extensions.

Notably, when Mr. Abhyanker joined in the request for discovery deadline extensions, his brand-new counsel noted to the Court that, rather than seek a continuance of the trial date in order to have time to come up to speed on a case with a difficult history and more than its fair share of protracted litigation disputes, Mr. Abhyanker was at least initially amenable to working within the existing trial date constraint so long as discovery, dispositive motion practice and pre-trial deadlines would budge to permit adequate preparation. The Court obliged.

In the meantime, new counsel for Mr. Abhyanker has learned that the earlier deposition notices and subpoenas, exhibited hereto as Exhibits A, B, and C, though served on opposing counsel in mid-May 2014, remain uneffectuated to this day. Those notices and subpoenas, including topics to be inquired into and document requests as appropriate, are attached to this letter brief for the Court's review – and though Mr. Abhyanker would like to add to them, he has left them as they were served three months ago in order to avoid a claim of surprise or other objection. It is unclear to the undersigned precisely why the depositions could not have taken place in the last three months – though it would appear that defense counsel disruption and withdrawal, together with sustained resistance by Nextdoor.com, were prominent factors. Nevertheless, Mr. Abhyanker's intent to take these depositions is evident from the notices prepared three months ago. Though the hour is late to follow through, Mr. Abhyanker should not be denied basic party-opponent discovery.

Mr. Abhyanker acknowledges that this request comes late, and that there was earlier opportunity to serve and carry out discovery and/or related motion practice. But for something as fundamental to the fairness of a federal trial as party discovery – especially given that Nextdoor.com has taken ample party discovery – it is respectfully requested that Mr. Abhyanker's lateness be excused for the limited purpose of taking the three (or, if the "persons most knowledgeable" designee(s) overlap with the two individuals, then perhaps only two) requested depositions.

**The requested depositions are designed to elicit relevant testimony needed by the defense**

All three deposition notices request information relevant to the complaint allegations or defenses:

### (a) 30(b)(6) deposition

As the undersigned understands it, this deposition was previously noticed and allowed, but was limited to trademark priority. By its nature, a "person(s) most knowledgeable" deposition is, by design, meant to cover a range of topics, as crafted by the deposing party, subject to objection by the deposed party. This is especially true of a party deposition – there is perhaps no more useful discovery tool than depositions of party-opponents, and they should be comprehensive and broad-based for maximum effect. Artificial limitation of topics – especially to a single one – will defeat the purpose of a "person(s) most knowledgeable" party deposition.

The attached notice served in May 2014 delineates 35 topics. Generally described, those topics speak to Nextdoor.com's corporate structure and environment, the genesis of and business plan for its neighborhood-based social networking concept, those involved with that effort, the selection of the Lorelei neighborhood of Menlo Park for a pilot, the creation and use of the Nextdoor trademark, marketing efforts for its business, any attempts by Nextdoor to discern public confusion between Nextdoor and Fatdoor, venture capital or other funding sought by Nextdoor, assets and revenues of Nextdoor, the role of Sandeep Sood in the development or operation of neighborhood social networking for Nextdoor, and any connections between Nextdoor and a precursor company known as Fanbase, Inc.

These topics serve several relevant purposes. They will provide information about the formation, business plan, operations, personnel and revenue sources of Nextdoor as a general matter – just as it is standard to make general inquiries about the operations of a corporate party during a deposition. They will also lead to responses about where Nextdoor's neighborhood-based social networking concept came from – whether it was invented organically or borrowed from other sources such as Mr. Abhyanker's pre-existing efforts in the same direction – and thus will shed light on whether Mr. Abhyanker had priority from earlier use in commerce, and whether Mr. Abhyanker acted in bad faith with respect to the Nextdoor mark. They will also lead to responses about any evidence of actual or perceived confusion between the Nextdoor and Fatdoor marks that came to Nextdoor's attention – which go to the heart of the Lanham Act-based declaratory relief claim, whose purpose, in part, is to rule out such confusion to avoid later infringement claims by Fatdoor against Nextdoor.

Mr. Abhyanker acknowledges that this deposition notice – and some of its topics – were drafted while the counterclaims were still active. As such, some of these topics may speak in some fashion to trade secret misappropriation. Nevertheless, the topics are fundamentally designed to elicit information about (1) alleged bad faith as an element of the cybersquatting statute, based on which company was first in the neighborhood-based social networking field, and (2) the

likelihood of public confusion as an element of both the Lanham Act and declaratory relief claims, based on what confusion Nextdoor became aware of with respect to Fatdoor. Such information is needed for Mr. Abhyanker to establish his lack of bad faith and profit motive (or, more accurately, Nextdoor's inability to prove bad faith) to support the cybersquatting claim, and the presence of confusion among consumers sufficient to defeat the Lanham Act-based declaratory relief claim.

Accordingly, the information sought to be elicited in the "person(s) most knowledgeable" deposition will speak either to the quality and character of Nextdoor's evidence to prove its Lanham-Act based declaratory relief claim and cybersquatting claim, or to the flip side of Mr. Abhyanker's ability to defend against those claims. Of paramount importance is that Mr. Abhyanker should not be required to defend against such claims without the available supporting and countervailing evidence being made available to it.

### (b) Nirav Tolia and Prakash Janikiraman depositions

Mr. Abhyanker also issued deposition notices/subpoenas to these two Nextdoor-related individuals in mid-May 2014. Given that Mr. Tolia has been the CEO of Nextdoor, and Mr. Janikiraman has been the Vice President of Engineering at Nextdoor, it may be that one or both of them would also serve as "persons most knowledgeable" on the 30(b)(6) topics discussed above, in which case the requested depositions could be consolidated and likely take somewhat less time to complete. In any event, whether they are produced as individuals or corporate representatives, Mr. Tolia and Mr. Janikiraman would be asked questions on the following non-exclusive topics:

- What they knew about Mr. Abhyanker's prior use of the Fatdoor mark prior to the naming of the Nextdoor business;
- What they knew about Mr. Abhyanker's selection of the Lorelei neighborhood of Menlo Park, where his office was located, prior to launching San Francisco-based Nextdoor there – and then why the boundaries of that pilot neighborhood were changed to specifically exclude his office area;
- What they knew of why the Nextdoor name was chosen;
- What information they knew to be received from Benchmark Capital concerning use or contemplated use of the Nextdoor and Fatdoor names;
- What they knew of why a sports-based website (Fanbase) pivoted to become Nextdoor;
- What they knew of Mr. Abhyanker's blog posts and other information output concerning neighborhood-based social networking;
- What patent applications and other research they knew of conducted at or on behalf of Nextdoor about Fatdoor prior to launch;
- What level of access they had to confidential information Mr. Abhyanker earlier shared by Mr. Abhyanker with Benchmark Capital, especially as to content on what has become known in this case as the Due Diligence CD;

- ■ Their relations with and connection to Sandeep Sood (in particular, with Mr. Sood's completed survey prior to the Nextdoor name being adopted), and with/to Salim Shaikh;
- ■ Conversations between Nirav Tolia and Jennifer Dulski regarding the Nextdoor mark prior to launch; and
- ■ What Nirav Tolia knew of the need to replace Mr. Abhyanker with himself as CEO.

As with the "person(s) most knowledgeable" deponents, Mr. Tolia and Mr. Janikiraman will by their answers to these inquires shed light on the primacy of work as between Mr. Abhyanker and themselves or other Nextdoor personnel in the neighborhood-based social networking arena – that is, who was working in this area first, the source of information used by Nextdoor in selecting that trade name and in creation of the post-Fanbase business that came to be known as Nextdoor, and what public confusion came to light from the competing efforts of Fatdoor and Nextdoor. As with the 30(b)(6) deposition, responses to questions from these topics by Mr. Tolia and Mr. Janikiraman will go toward proving or disproving the element of bad faith from the cybersquatting statute, and the element of likelihood of confusion between the Fatdoor and Nextdoor marks from the Lanham Act-based declaratory relief claim.

Mr. Abhyanker anticipates that each of the requested depositions will take approximately one business day – and less if the individual depositions can be merged with the 30(b)(6) deposition.

> ### (c) Jennifer Dulski and Sandeep Sood Depositions

As noted above, despite the need for these additional depositions, and in an effort to be reasonable given the late date, Mr. Abhyanker is prepared to forego these depositions.

## Conclusion

Based on the above, Mr. Abhyanker respectfully submits that he has made a showing or relevance and need for the requested fact depositions. He also respectfully asks the Court to conclude that the lateness of this request, though not entirely blameless, is, on balance, outweighed by the need of defendant Abhyanker to conduct at least basic party-opponent and company manager depositions. Accordingly, the three depositions should be ordered to go forward as requested. Given the short time within which to hold them, Mr. Abhyanker further requests that the depositions go forward based on the previously-issued notices and subpoenas exhibited hereto, or that any updated notices and subpoenas be permitted to be served on Nextdoor counsel alone by hand delivery, mail or electronic mail, as was apparently agreed to the first time around in May 2014.

**Issue One (as reframed by Nextdoor.com): Whether Mr. Abhyanker has met his burden of establishing the relevancy of his request to depose Nextdoor.com's witnesses in light of the remaining claims in this matter, whether he met his burden of showing prior diligence in seeking these depositions and whether there is good cause to reopen fact discovery?**

**Nextdoor.com's position:**

## I.     Introduction

Fact discovery, even as extended, is closed.  The cut-off for filing discovery motions passed weeks ago, the parties are well into expert discovery, and dispositive motions are due September 11.  Though Abhyanker had every opportunity to depose Nextdoor.com's witnesses during the discovery period, he expressly waived his right to do so after proclaiming their innocence at his own deposition, after which he dismissed all of his claims *with prejudice*.  His belated attempt to take their depositions on matters that have no relevance to the remaining issues in the case should be seen for what it is:  an attempt to harass them and increase the company's litigation costs.  The Court can and should swiftly deny his motion, just like it rightly denied this request before.  Nothing has changed.  That explains why Abhyanker's portion of this brief fails to meet the Court's directive to explain his diligence in seeking these depositions during the discovery period, and their continued relevance in light of the current status of the case.

## II.     The Discovery Mr. Abhyanker Belatedly Seeks Is Not Relevant

All of Abhyanker's claims in this matter have been dismissed.  *See*, Dkt. 100 (dismissing counterclaim for trade secret misappropriation of the Nextdoor name in connection with a neighborhood-based social network); Dkt. 182 at 19 (granting summary judgment against Abhyanker's claim to a trade secret in his alleged bidding history for the www.nextdoor.com domain); Dkt. 193 (partial judgment against Abhyanker finding that: (1) Nextdoor.com owns trademark rights in the NEXTDOOR mark; (2) that Nextdoor.com has priority of use of the NEXTDOOR mark in the field of online social networking; (3) dismissing with prejudice all of Abhyanker's claims to priority in or ownership of the NEXTDOOR mark; and (4) enjoining Abhyanker from use of the NEXTDOOR mark for online social networking); Dkt. 226 (dismissing with prejudice all of Abhyanker's remaining claims, including his alleged trade secret in the Lorelei neighborhood and trademark infringement of his alleged FATDOOR marks).

Even more, during his June 7 deposition, Abhyanker stated on the record that he now knows his misappropriation claims were unfounded.  June 7, 2014 Deposition Transcript at 382-385.  Then he said: "I think Nirav is innocent.  I think Prakash is innocent." 385:20-21.  He further explained that "I think we should cancel all the depositions and cancel this case.  I want to drop both counterclaims.  I want this case to go away."  June 7 Depo. Tx. at 389:15-17.

With the Court's judgment and dismissal with prejudice of Abhyanker's claims, the only remaining claims are Nextdoor.com's affirmative claims of cybersquatting (Count III) and

trademark infringement (Count IV).[1] Nextdoor.com's affirmative claims seek to stop Abhyanker's use of the name "Nextdoor," as well as his use of the domain name www.nextdoor.cm to pretend to be Nextdoor.com, both of which activities commenced shortly after Nextdoor.com's public launch. Nextdoor.com does not claim any actual damages, only statutory damages and attorney's fees. In fact, the only real issue to determine is whether Abhyanker's use of the NEXTDOOR mark and www.nextdoor.cm domain were in bad faith.

There is no issue regarding the existence or ownership of trademark rights in the NEXTDOOR mark: Mr. Abhyanker has acknowledged, and the Court has found, that Nextdoor.com has trademark rights in the NEXTDOOR mark, and that it owns such rights in the field of social networking. Dkt. Nos. 190, 193. There is likewise no debate regarding the parties' services. A party's services are irrelevant to a cybersquatting claim. 15 U.S.C. § 1125(d)(1)(A) (providing that the cybersquatting analysis is to occur "without regard to the goods or services of the parties"). Even still, for the trademark infringement claim, Abhyanker admitted in his complaint that he, like Nextdoor.com, offered an online social network under the NEXTDOOR mark. Dkt. 132 at ¶159-162. There is also no debate that there is confusion between the NEXTDOOR mark and Mr. Abhyanker's use of the term Nextdoor, that the marks are identical, or that Abhyanker has been enjoined from such use [Dkt. 193 ¶3]. He admits to this confusion, and the identical nature of the marks, in his complaint with allegations that Nextdoor.com's NEXTDOOR mark and his own use are confusingly similar. Dkt. 193 ¶1; Dkt. 132 at ¶177 ("There has been and continues to be actual confusion between Nextdoor.com's use of the NEXTDOOR name and mark with Abhyanker's Nextdoor concept and mark").

Mr. Abhyanker has made no attempt to tie the proposed depositions to any issues still in dispute. Instead, he simply points to an outdated (and withdrawn) 30(b)(6) notice, and withdrawn notices for Messrs. Tolia and Janakiraman. But Abhyanker has made no showing that Mr. Tolia, Mr. Janakiraman or anyone else at Nextdoor.com has any knowledge necessary to resolve the question of Abhyanker's own bad faith use of the NEXTDOOR mark. Further, the withdrawn 30(b)(6) notice is rife with topics that are no longer relevant. Indeed, a substantial number of the topics seek information in support of Mr. Abhyanker's dismissed trade secret claims, about Nextdoor.com's ownership of the NEXTDOOR mark and Nextdoor.com's services, and about Nextdoor.com's now withdrawn claims to actual damages. None of these issues remain in play.

There is no justification for any further depositions of Nextdoor.com on any topic, much less on the topics set forth in the outdated notice. Having requested for, and received, dismissal of his claims, and having waived his right to take those depositions, Mr. Abhyanker is barred

---

[1] On August 8, 2014, Nextdoor.com filed a motion to dismiss without prejudice Count II of its complaint which sought a declaratory judgment of non-infringement of Abhyanker's alleged FATDOOR marks. [Dkt. No. 303]. Because Abhyanker dismissed, with prejudice, his parallel counterclaims, no justiciable controversy remains between the parties on this issue, and Nextdoor.com's Count II should be dismissed without prejudice. [Dkt. Nos. 224, 226]. Nextdoor.com's motion is scheduled for a hearing before Judge Chen on September 18, 2014.

from seeking to overturn that result and take fact discovery regarding long resolved issues.

Instead, all relevant evidence with respect to the remaining claims resides in Abhyanker's possession, though he continues to resist its production.[2]

## III.    There Is No Excuse For Mr. Abhyanker's Lack Of Diligence During the Discovery Period, And He Cannot Show Good Cause To Re-Open Discovery

Not only are the late-requested depositions irrelevant to the live issues in this case, but Abhyanker's lack of diligence and express waiver precludes him from re-opening discovery.

Abhyanker had ample opportunity to take depositions.  On May 12, 2014—more than a year after discovery opened—he finally served a deposition notice on Nextdoor.com for June 10. He also issued a notice for the deposition of Prakash Janakiraman (Nextdoor.com's VP of Engineering) for June 11, and, oddly, a subpoena for the deposition of Nirav Tolia (Nextdoor.com's CEO) for June 13.  But at his deposition the week before, Abhyanker proclaimed their innocence and acknowledged his misappropriation claim was baseless.  He then affirmatively withdrew all outstanding discovery: "I think we should cancel all the depositions and cancel this case.  I want to drop both counterclaims.  I want this case to go away."  June 7 Depo. Tx. at 389:15-17.  Thereafter, counsel for Abhyanker confirmed the withdrawal of outstanding discovery and Abhyanker dismissed his remaining claims against Nextdoor.com. Discovery is now closed.  End of story.  Abhyanker's protestations to the contrary now are nothing more than an attempt to unnecessarily prolong litigation over issues that were disposed of at the time he dismissed his claims, through counsel who understood the case and the issues at stake.

Moreover, the Court has already considered, and, on June 13, rejected Abhyanker's request to put the depositions of Messrs. Tolia and Janakiraman back on calendar notwithstanding that fact discovery was about to close at the time of the request.  Dkt. 223.  "The Court denies defendant's request to take the depositions of Janakiraman, Tolia, and Love for failure to show relevance or good cause for not having deposed the witnesses sooner." Abhyanker could have objected to this ruling.  Fed. R. Civ. Proc. 72(b) ("Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.").  He did not.

As a compromise, Nextdoor.com offered a deposition of its 30(b)(6) witness on the limited topic of priority and, on June 18 the Court ruled that Abhyanker could "take the deposition of Nextdoor's 30(b)(6) on the subject of priority of use."  Dkt. 233.  Again, if Mr. Abhyanker disagreed, he could have sought relief from Judge Chen.  He did not.  Nor did he make any real effort to take that deposition.  After initially asking for a date for the deposition

---

[2] It is unclear why Mr. Abhyanker might think that additional depositions are warranted, well after the close of discovery, while simultaneously persisting in withholding a number of documents as not responsive.

within the fact discovery period (as it had been extended [Dkt. 241]), he decided he did not want to take it within that period, insisting that he should be allowed to take it after fact discovery had closed. Although Nextdoor.com did not agree that this was appropriate, in the interest of avoiding still more motion practice, it agreed, and offered to make its 30(b)(6) designee available on any date between August 5 and 8. Mr. Abhyanker declined those dates too. Nextdoor.com then offered to make its designee available on August 13. On August 2, Abhyanker's counsel finally accepted that date, but never served a deposition notice or even identified the time, place or manner of the deposition. Nextdoor.com's counsel and designee nonetheless held that date open, and were prepared to go forward. However, during the August 12 hearing, Abhyanker's counsel announced he did not wish to go forward with the deposition on August 13, even though Nextdoor.com's witness was ready and available, ostensibly on the basis that he wanted much more than what the Court previously had granted and Nextdoor.com had agreed to. In so doing, Abhyanker waived his final opportunity. This was, without question, a conscious choice, stated clearly on the record at the August 12 hearing after warnings from both the Court and counsel for Nextdoor.com that he might lose the opportunity for any deposition at all. The Court should thus have no trouble concluding he waived his right to that limited 30(b)(6) deposition[3], along with the other depositions he now seeks.

Further, to re-open discovery at this late stage would be prejudicial to Nextdoor.com. The parties are in the midst of expert discovery, with rebuttal reports due next week, and the depositions of seven experts needing to take place between now and September 2. Even more, having to identify, prepare and attend additional depositions, on additional topics, would unduly prejudice Nextdoor.com. Nextdoor.com should be able to focus its resources on ensuring that Abhyanker complies with the Court's discovery orders, pursuing expert discovery, preparing for the parties' settlement conference and the upcoming motions for summary judgment. There is no justification for making Nextdoor.com suffer the consequences of Abhyanker's failure to diligently pursue the discovery that he claims, but certainly has not shown, that he needs. It has endured enough.

**Issue Two:  Whether Nextdoor's attempted service of deposition subpoenas with unilaterally-selected deposition dates prior to meeting and conferring about available deposition dates, and whether Nextdoor's subsequent limiting of its experts' available deposition dates to the very end of the expert discovery period, such that double-tracking the depositions would be required, violate this Court's local rule governing deposition scheduling, and warrant an order requiring Nextdoor to properly meet and confer and to offer expanded deposition date options prior to re-service?**

**Mr. Abhyanker's position:**  Following receipt of Nextdoor's expert report and required disclosures, Mr. Abhyanker sent a request on Monday, August 11, 2014 to Nextdoor for

---

[3] As counsel for Nextdoor.com represented at the hearing, its 30(b)(6) designee who was prepared and ready to be deposed on August 13 on the subject of priority of use is leaving for vacation on August 21, 2014.

available expert deposition dates by mid-week.  On August 13, 2014, no such dates were provided, prompting Mr. Abhyanker to send another request for available deposition dates no later than noon the next day.  Instead, early on August 14, 2014, Mr. Abhyanker received fully-completed subpoenas, notices and document requests for Mr. Abhyanker's expert depositions, with unilaterally-selected dates for those depositions, and without any regard to the experts' or defense counsel's schedules.  At the same time, Mr. Abhyanker received an e-mail indicating that Nextdoor's experts' availability was limited to the very last days of the expert discovery period, with the implication clearly being that double-tracking those depositions would likely be required.  The cover e-mail also noted that if electronic service was not agreed to by that same morning, personal service would be initiated.

During meet and confer among counsel later on August 14, 2014, Mr. Abhyanker demanded, in compliance with NDCA Local Civil Rule 30 governing deposition scheduling, that Nextdoor (1) withdraw the subpoenas, notices and document requests for the moment, in favor of first meeting and conferring toward deposition dates acceptable to all; and (2) providing an expanded range of acceptable deposition dates for Nextdoor's expert witnesses, given the two weeks available to us for expert discovery and to avoid double-tracking these depositions.  Nextdoor did not agree and instead wanted to quibble with the meaning of the applicable local rule.

NDCA Local Civil Rule 30-1, as incorporated into and reaffirmed by Judge Chen's Civil Standing Order on Discovery at paragraph 3(a), requires that "[f]or the convenience of witnesses, counsel and parties, before noticing a deposition of a party or witness affiliated with a party, the noticing party must confer about the scheduling of the deposition with opposing counsel…".  Rather than doing so, Nextdoor sent subpoenas, notices and document requests to Mr. Abhyanker, with unilaterally-selected dates inserted – and with no regard to expert witness or defense counsel availability.  Almost to underscore the point of how important checking expert witness schedules is prior to sending deposition process, in the same transmission, Nextdoor also noted that its expert witnesses had very limited deposition availability – just in the very last days of the expert discovery period.

So, Nextdoor would have Mr. Abhyanker (1) produce his expert witnesses without the scheduling input of his witnesses or counsel, *and* (2) force his depositions of Nextdoor's expert witnesses into double-tracked sessions in the last days of the expert discovery period.

Ordinarily, one would expect a meet-and-confer to expose such tactics and undo the resulting scheduling unfairness in favor of a more balanced approach.  With Nextdoor, this did not happen at the meet-and-confer session.  Instead, Nextdoor's heavy-handedness is, and remains, evident, and requires corrective action.

Indeed, between the time of the preparation of this letter brief and its filing, Nextdoor has provocatively served subpoenas for records with an extremely short turnaround time on Mr. Abhyanker's expert witnesses – again, without meeting and conferring on the production

timeframes that would not be too burdensome and make sense for all. There seems to be no interest on Nextdoor's part in working cooperatively with Mr. Abhyanker on expert discovery scheduling.

Accordingly, Mr. Abhyanker respectfully requests an order withdrawing the attempted service of Nextdoor's expert subpoenas, notices and document requests, and requiring Nextdoor prior to re-service to meet and confer with expanded deposition dates options for its witnesses, while permitting due consideration of defense experts' and counsel's schedules in setting those experts' deposition dates. The local rules, standing orders, and common courtesy require no less.

### Issue Two (as reframed by Nextdoor.com): Whether Court intervention is needed at this time regarding the scheduling of expert depositions?

### Nextdoor.com's position:

Since the parties are still actively conferring on a schedule for the expert depositions, Nextdoor.com does not believe there is any need for intervention by the Court at this time. That said, Nextdoor.com notes that Abhyanker's refusal to: (1) accept service of the subpoenas (after insisting subpoenas are required); or (2) agree to schedule *any* depositions until *all* the depositions have been scheduled only exacerbates the time crunch. To the extent that counsel and the parties' experts are available there is no need to obstruct or delay expert discovery.

On Monday August 11, Nextdoor.com met and conferred with Abhyanker to discuss dates for expert depositions. A few days later, Mr. Abhyanker still had not provided any proposed dates, so on August 14 Nextdoor.com sent an email to Abhyanker that included *proposed* dates for the depositions of both Nextdoor.com's and Mr. Abhyanker's experts. Nextdoor.com's email explicitly said that the dates were proposals open to discussion. For its part, Nextdoor.com offered at least two available dates for each of its expert witnesses. It also proposed a schedule where the deposition of Abhyanker's purported expert on the cybersquatting issues would occur last in the time. Nextdoor.com expected that its proposal of depositions dates would be the catalyst for further meet and confer discussions—and it was. On the afternoon of August 14, the parties again met and conferred and Abhyanker finally provided proposed dates for the depositions of his expert witnesses. These proposed dates were similar to those proposed by Nextdoor.com. One of Abhyanker's experts is only available on single day, another on two days, another on three days, and one on five days. All but two of the dates proposed by Abhyanker were during the last week of expert discovery (which, ironically, is his chief complaint about the dates Nextdoor.com offered for its experts).

Nextdoor.com's August 14 email also asked whether Abhyanker would accept service of the notice of subpoenas by email and also accept service of the subpoenas on the experts' behalf. In response, Abhyanker refused to accept service of the notice or the subpoenas. Instead, Abhyanker's stated that he would only consider accepting service after all depositions had been

scheduled to his satisfaction.  Absent service of the notice and subpoenas, there were no subpoenas for Nextdoor.com to withdraw.

Respectfully Submitted,


*/s/ Eric Ball*
Attorneys for Nextdoor.com

*/s/ David Lavine*
Attorneys for Mr. Abhyanker

# EXHIBIT A

**BRUNO W. TARABICHI**, CA State Bar No. 215129
bruno@legalforcelaw.com
**HEATHER R. NORTON**, CA State Bar No. 257014
heather@legalforcelaw.com
**SCOTT J. ALLEN**, CA State Bar No. 178925
scott@legalforcelaw.com
**LEGALFORCE RAJ ABHYANKER, P.C.**
1580 W. El Camino Real, Suite 13
Mountain View, California 94040
Telephone:  650.965.8731
Facsimile:  650.989.2131

Attorneys for Defendant and Counterclaimant
Raj Abhyanker

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| NEXTDOOR.COM, INC., a Delaware corporation, | Case No. 3:12-cv-05667-EMC |
| Plaintiff, | **DEFENDANT AND COUNTERCLAIMANT RAJ ABHYANKER'S NOTICE OF DEPOSITION TO PLAINTIFF AND COUNTERDEFENDANT NEXTDOOR.COM, INC., FED.R.CIV.P. 30(B)(6)** |
| vs. | |
| RAJ ABHYANKER, an individual, | |
| Defendant. | |
| RAJ ABHYANKER, an individual | |
| Counterclaimant, | |
| vs. | |
| NEXTDOOR.COM, INC., a Delaware corporation; PRAKASH JANAKIRAMAN, an individual; BENCHMARK CAPITAL PARTNERS, L.P., a Delaware limited partnership; BENCHMARK CAPITAL MANAGEMENT CO. LLC, a Delaware limited liability company; SANDEEP SOOD, an individual; MONSOON ENTERPRISES, INC., a California corporation, and DOES 1–50, inclusive; | |
| Counterdefendants. | |

NOTICE OF DEPOSITION
Case No. 12-CV-4413YGR

Pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, Defendant and Counterclaimant Raj Abhyanker ("Abhyanker") hereby intends to take the deposition of Plaintiff and Counterdefendant Nextdoor.com, Inc. ("Nextdoor.com"), on topics including those listed below. The deposition will be recorded stenographically and/or by audio-video recording. The deposition will held at the following date, time and location, and will continue until completed:

DATE:       JUNE 10, 2014

TIME:       10:00 a.m.

LOCATION:   Offices of LegalForce RAPC Worldwide

            451 N. Shoreline Blvd.

            Mountain View, CA 94043

## TOPICS OF DEPOSITION

The topics of the deposition will include, but not necessarily be limited to the following:

## DEFINITIONS

1.      "Nextdoor.com," "You," and "Your" mean Plaintiff and Counterdefendant Nextdoor.com, Inc., including without limitation wholly owned subsidiaries, and past and present officers, directors, and employees, including, but not limited to, Nextdoor.com, Inc.'s predecessor Fanbase, Inc.

2.      "Communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise), and encompasses every medium of information transmittal, including but not limited to oral, written, graphic, and electronic communication, including communications sent through social media such as facebook, twitter, linkedin, and any other social media platform.

3.      "Person" means an individual, proprietorship, partnership, firm, corporation, association, governmental agency, or other organization or entity.

4.      "Include" or "including" are to be read as followed by the phrase "without limitation," so as to acquire the broadest meaning possible.

5.      "Concern," "concerning," "evidence," "evidencing," "relating to," "relate to," "relates to," "related to," "referring or relating to," "referring to," "regarding," and "refer or relate

to" shall be construed broadly to mean in whole or in part alluding to, responding to, concerning, relating to, connected with, involving, commenting on, in respect of, about, associated with, discussing, evidencing, showing, describing, reflecting, analyzing, summarizing, memorializing, consisting of, constituting, identifying, stating, tending to support, tending to discredit, referring to, or in any way touching upon.

6.      "And" and "or" shall be construed either conjunctively or disjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

7.      "Any" and "each" should be understood to include and encompass "all."

8.      Where appropriate, the singular form of a word should be interpreted in the plural and vice versa, to acquire the broadest possible meaning.

9.      "Benchmark" means Counterdefendants Benchmark Capital Partners, L.P., and Benchmark Capital Management Co. LLC.

10.     The term "USE" or "USED" means "use in commerce" as defined in 15 U.S.C. 1127.

11.     The term "ABHYANKER" means Defendant and Counterclamant Raj Abhyanker as well as the former legal entities known as Fatdoor.com and/or Center'd and any employees, agents, officers, directors, contractors, partners, joint ventures, or other persons acting for or on behalf of Raj Abhyanker, Fatdoor.com or Center'd.

## TOPICS

1.      The identity of each person or legal entity involved in the conception and/or decision to adopt "Nextdoor.com" as part of YOUR name and/or to use the domain name "nextdoor.com" to operate a social network focused on neighborhoods, and the rationale and timing for the decision to adopt "Nextdoor.com" as part of YOUR name and/or to use the domain name "nextdoor.com."

2.      The contents, process for development and dates of development of each plan or concept for YOUR business, including but not limited to the nature of anticipated business, the perceived consumer need for the products or services to be offered by YOU and the likely consumer demand for

such products or services, and any plans or proposals to target specific areas or neighborhoods or users (including but not limited to individuals and local fire and/or police departments) with YOUR products or services, anticipated need for investment funding, and anticipated sources and amounts of revenues for the entity.

3.      The date, persons involved, scope and development of any decisions or plans to target any specific demographic and/or geographic locations or neighborhoods, including but not limited to the Lorelei neighborhood, with YOUR products or services, and/or to target any particular types of users with YOUR products or services.

4.      The date on which Nextdoor.com first made actual USE of the trademarks NEXTDOOR and/or NEXTDOOR.COM  to offer goods or services, and the nature of the goods or services on which said trademarks were USED.

5.      The date on which YOU first became aware that ABHYANKER intended or desired to use the domain name www.nextdoor.com for a social network focused on neighborhoods, and/or the way in which Nextdoor.com first became aware of ABHYANKER's intent or desire to use the domain name www.nextdoor.com for a social network focused on neighborhoods and the person or persons that first became aware of ABHYANKER"s intent.

6.      The details regarding YOUR decision to implement, and the details of implementing, a pilot neighborhood for neighborhood social networking in the Lorelei neighborhood, the rationale for YOUR to implement such a pilot neighborhood, and the course of action YOU undertook to implement such a pilot neighborhood.

7.      If YOU contend that YOU independently conceived of implementing a pilot social network in the Lorelei neighborhood without first having knowledge of any other person's plans or desire to implement such a network in the Lorelei neighborhood, the facts that support that contention.

8.      The content of communications between YOU and Benchmark between 2009 and the present.

9.      The facts and circumstances surrounding the conception, development and operation of a prototype neighborhood social network in the Lorelei neighborhood, including but not limited to the date of such prototype, persons or legal entities involved in conceiving, developing and operating the prototype, the consumer response to such prototype, the rationale for choosing the Lorelei neighborhood, and data reflecting the results of such prototype.

10.     The goods and/or services on which YOU claim that you have USED or do USE the trademark NEXTDOOR, and/or the similarities and/or differences between such goods and/or services and the goods and/or services on which ABHYANKER has USED or does USE the trademarks NEXTDOOR and/or FATDOOR.

11.     Any instances of actual consumer confusion between the YOUR prior or current USE of the trademark NEXTDOOR and ABHYANKER's prior or current USE of the trademarks NEXTDOOR and/or FATDOOR.

12.     YOUR knowledge of ABHYANKER's prior or current USE of the trademarks FATDOOR and/or NEXTDOOR on goods or services at any time between 2006 and the present.

13.     The channels of marketing or advertising YOU use for YOUR goods and/or services under the trademark NEXTDOOR, as well as the amounts of time and money invested or spent on marketing or advertising such goods and/or services.

14.     The methods and results of any surveys or research of any kind conducted to test the potential for or likelihood of confusion by consumers due to YOUR past or present USE of the trademark NEXTDOOR and ABHYANKER's past or present USE of the trademarks NEXTDOOR and/or FATDOOR.

15.     The steps taken to develop, and the contents of, the source code for YOUR neighborhood social networking site at any time between the time that YOU first conceived of a neighborhood social networking site to the present.

16.     The identity of any person that have performed tasks or services for YOU between 2009 and the present that also performed services for ABHYANKER at any time (including but not limited to

Sandeep Sood), including the dates, nature and extent of the services performed by such persons for YOU and for ABHYANKER.

17.     The dates, facts and/or circumstances leading to YOUR need to transform Fanbase.com into a different concept and/or create a different product or concept aside from Fanbase.com.

18.     The facts and/or circumstances leading to, and the timeframe in which Fanbase, Inc. had to either create a new product, service or concept aside from Fanbase.com, or liquidate Fanbase, Inc.

19.     Personnel changes at Fanbase, Inc. between April and July of 2010.

20.     The facts and circumstances surrounding or leading to, and the timeframe of the potential loss of funding for Fanbase, Inc. from Benchmark.

21.     The facts and circumstances surrounding or leading to, and the timeframe of any plans for, or the possibility of, returning Fanbase, Inc. funds to Benchmark.

22.     The facts and circumstances surrounding or leading to, and the timeframe of YOUR decision to develop a new concept, service or product aside from Fanbase.com and the conception, development and testing of such new concept, service or product, and the persons or legal entities involved in such conception, development and/or testing.

23.     The facts and circumstances surrounding or leading to, and the timeframe of the conception, development, and testing of the social networking concept that became Nextdoor.com, including but not limited to the persons or legal entities involved in such conception, development and/or testing.

24.     YOUR knowledge of ABHYANKER's actual development or plan to develop a social network focused on neighborhoods, including but not limited to YOUR knowledge of ABHYANKER's funding pitch to BENCHMARK.

25.     YOUR knowledge of or familiarity with the Lorelei neighborhood prior to YOUR conception, development and/or testing of any prototype for a social network focused on

neighborhoods, including but not limited to any and all data regarding Lorelei that YOU knew about or were familiar with.

26.     The facts and circumstances surrounding or leading to, and the timeframe of YOUR efforts to obtain funding for a social network focused on neighborhoods.

27.     The identities of persons that used YOUR prototype of social network in the Lorelei neighborhood at any time, including the dates on which said persons signed up to use the prototype.

28.     Among the persons that used the Lorelei prototype, any pre-existing knowledge by said persons of the terms "Fatdoor" and/or "Nextdoor" in connection with social networks.

29.     The results of any focus groups, surveys, questionnaires and/or informational interviews that YOU conducted among Lorelei residents relating in any way to YOUR prototype social network in the Lorelei neighborhood.

30.     Comments, complaints or other feedback that YOU have received regarding the quality of goods or services offered by Nextdoor.com and/or the goodwill attributable to said goods or services.

31.     YOUR gross revenues and the sources of same from 2010-present.

32.     The nature and amount of any costs or deductions that YOU believe are justified in calculating YOUR profit and/or loss for each year from 2010-present.

33.     The amount and basis for the current or anticipated future valuation of YOUR assets or YOU as a corporation, including but not limited to the current or future anticipated valuation of the social network for neighborhoods known as Nextdoor or nextdoor.com.

34.     YOUR knowledge of any patent application(s) naming ABHYANKER as an inventor, the individuals that had such knowledge, the dates that such individuals first had knowledge of any such patent application(s), and whether YOU relied on knowledge of any part of such patent applications in conceiving, developing and/or operating a social network for neighborhoods.

35.     The role played by Sandeep Sood on YOUR behalf in the conception, plan, design, programming, and/or operation of a social network for neighborhoods.

Dated: May 12, 2014

Respectfully submitted,

LEGALFORCE RAJ ABHYANKER, P.C.

/s/  SCOTT J. ALLEN
Bruno W. Tarabichi
Heather R. Norton
Scott J. Allen
Attorneys for Defendant
Raj Abhyanker

**CERTIFICATE OF SERVICE**

I hereby certify that on the date set forth below, a true and correct copy of the foregoing

**DEFENDANT AND COUNTERCLAIMANT RAJ ABHYANKER'S NOTICE OF**

**DEPOSITION TO PLAINTIFF AND COUNTERDEFENDANT NEXTDOOR.COM, INC.,**

**FED.R.CIV.P. 30(B)(6)** was sent by first class mail to counsel listed below:

Lisa Madeline Chapman
Harpreet Singh Walia
Royse Law Firm, PC
1717 Embarcadero Road
Palo Alto, CA 94303

Guinevere Louise Jobson
Jennifer Lloyd Kelley
Laurence F. Pulgram
Clifford Charles Webb
Fenwick & West LLP
555 California Street
12th Floor
San Francisco, CA 94104

Matthew Rawlinson
Adam Michael Regoli
Latham & Watkins LLP
140 Scott Drive
Menlo Park, CA 94025

Dated: May 12, 2014

Chancellor Tseng

EXHIBIT B

1   **BRUNO W. TARABICHI**, CA State Bar No. 215129
    bruno@legalforcelaw.com
2   **HEATHER R. NORTON**, CA State Bar No. 257014
    heather@legalforcelaw.com
3   **ROY MONTGOMERY**, CA State Bar No. 279531
    roy@legalforcelaw.com
4   **LEGALFORCE RAJ ABHYANKER, P.C.**
    1580 W. El Camino Real, Suite 13
5   Mountain View, California 94040
    Telephone:  650.965.8731
6   Facsimile:  650.989.2131

7   Attorneys for Defendant and Counterclaimant
    Raj Abhyanker
8

9                  **UNITED STATES DISTRICT COURT**

10                **NORTHERN DISTRICT OF CALIFORNIA**

11                    **SAN FRANCISCO DIVISION**

12  NEXTDOOR.COM, INC., a Delaware          Case No. 3:12-cv-05667-EMC
    corporation,
13                                          **AMENDED NOTICE OF SUBPOENA TO**
                    Plaintiff,              **NIRAV TOLIA**
14
15          vs.

16  RAJ ABHYANKER, an individual,

17                  Defendant.

18  RAJ ABHYANKER, an individual

19                  Counterclaimant,

20          vs.

21  NEXTDOOR.COM, INC., a Delaware
    corporation; PRAKASH
22  JANAKIRAMAN, an individual;
    BENCHMARK CAPITAL PARTNERS,
23  L.P., a Delaware limited partnership;
    BENCHMARK CAPITAL
24  MANAGEMENT CO. LLC, a Delaware
    limited liability company; SANDEEP
25  SOOD, an individual; MONSOON
    ENTERPRISES, INC., a California
26  corporation; and DOES 1–50, inclusive,

27                  Counterdefendants.

28

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** pursuant to Federal Rule of Civil Procedure 45, Defendant and Counterclaimant Raj Abhyanker will serve a Subpoena to Testify at a Deposition in a Civil Matter, said subpoena to include a commandment to bring certain documents to the deposition, on Nirav Tolia, who may be currently serving as the Chief Executive Officer of Plaintiff and Counterdefendant Nextdoor.com, Inc.  A copy of the subpoena, to be delivered to and accepted by Fenwick & West LLP pursuant to the agreement of counsel, is attached.

Dated: May 21, 2014

Respectfully submitted,

LEGALFORCE RAJ ABHYANKER, P.C.

Bruno W. Tarabichi
Heather R. Norton
Roy Montgomery
Attorneys for Defendant
Raj Abhyanker

AMENDED NOTICE OF SUBPOENA TO NIRAV TOLIA
3:12-cv-05667-EMC

1

2

**CERTIFICATE OF SERVICE**

3

I am employed in the County of Santa Clara, State of California, I am over the age of 18 years and not a party to the within action. My business address is 1580 W. El Camino Real, Suite 13,

4

Mountain View, California 94040. On May 21, 2014, I caused copies of the document(s) described as follows:

5

**AMENDED NOTICE OF SUBPOENA AND SUBPOENA TO NIRAV TOLIA**

6

to be served on:

7

Laurence F. Pulgram
lpulgram@fenwick.com
Jennifer L. Kelly

Matthew Rawlinson
matt.rawlinson@lw.com
Adam M. Regoli

8

jkelly@fenwick.com
Eric J. Ball

adam.regoli@lw.com
Latham & Watkins LLP

9

eball@fenwick.com
Matthew B. Becker

140 Scott Drive
Menlo Park, California 94025

10

mbecker@fenwick.com
Fenwick & West LLP

11

555 California Street
San Francisco, CA  94104

12

13

Harpreet S. Walia
hwalia@rroyselaw.com
Lisa M. Chapman

14

lchapman@rroyselaw.com
Royse Law Firm, PC

15

135 Main Street, 12th Floor
San Francisco, CA  94105

16

17

☑ (BY FIRST CLASS MAIL) I caused each such envelope to the addressee(s) noted above, with postage thereon fully prepaid, to be placed in the United States mail in San Jose, California. I am

18

readily familiar with the practice of Raj Abhyanker, P.C. for the collection and processing of correspondence for mailing, said practice being that in the ordinary course of business mail is

19

deposited in the United States Postal Service the same date as it is placed for collection.

20

☐ (BY PERSONAL SERVICE)  The person whose name is noted below caused to be delivered by hand each such envelope to the addressee(s) noted above.

21

☐ (BY FACSIMILE)  The person whose name is noted below caused to be transmitted by facsimile each such document to the addressee(s) noted above.

22

☑ (BY ELECTRONIC MAIL)  The person whose name is noted below caused to be transmitted

23

by electronic mail to the addressee(s) noted above.

24

I declare under penalty of perjury under the laws of the State of California that the foregoing is

25

true and correct.

26

Dated: May 21, 2014

27

28

Alexis H. Rudd

AO 88A (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Northern District of California

| | |
|---|---|
| NEXTDOOR.COM, INC. | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No.   3:12-cv-05667-EMC |
| RAJ ABHYANKER, et al. | ) |
| | ) |
| *Defendant* | ) |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:          Nirav Tolia
c/o Matthew Becker, Fenwick & West LLP, 801 California Street, Mountain View, CA
*(Name of person to whom this subpoena is directed)*

☑ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

| Place:  Offices of LegalForce Raj Abhyanker, P.C. 451 N. Shoreline Blvd. Mountain View, CA 94043 | Date and Time: 06/17/2014 9:00 am |
|---|---|

The deposition will be recorded by this method:   Stenography, Audio/Video Recording

☑ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material: See Exhibit A.

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:    05/21/2014

| *CLERK OF COURT* | | |
|---|---|---|
| | OR | |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*    Defendant, RAJ ABHYANKER                                                                 , who issues or requests this subpoena, are:

Roy Montgomery, 1580 W. El Camino Real, Ste. 13, Mountain View, CA 94040, roy@legalforcelaw.com, (650) 965-8731

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.   3:12-cv-05667-EMC

## PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)*   Nirav Tolia, CEO of Nextdoor.com, Inc.
on *(date)*      05/21/2014      .

☑ I served the subpoena by delivering a copy to the named individual as follows:  I handed the subpoena and

witness fees to the lobby receptionist at Fenwick & West LLP in Mountain View, CA with a request that she

convey them to Attorney Matthew Becker                              on *(date)*      05/21/2014     ; or

☐ I returned the subpoena unexecuted because:

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$          82.56          .

My fees are $       0.00      for travel and $      0.00      for services, for a total of $      0.00      .

I declare under penalty of perjury that this information is true.

Date:  5/21/14

_____
*Server's signature*

Ravi Soni, Legal Assistant
*Printed name and title*
1580 W. El Camino Real, Suite 13
Mountain View, CA  94040

*Server's address*

Additional information regarding attempted service, etc.:

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*

  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## EXHIBIT A

### DEFINITIONS:

1. "Document" shall have the meaning accorded by Rule 34(a) of the Federal Rules of Civil Procedure including, but not limited to all of the matters defined in Rule 1001 of the Federal Rules of Evidence and any written, printed, typed, recorded, magnetic, punched, copied, graphic, or other tangible thing in which information may be embodied, translated, conveyed, or stored. If a draft document has been prepared in several copies that are not identical, or if the original identical copies are no longer identical due to subsequent notation, each non---identical document is a separate document.

2. "Communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise), and encompasses every medium of information transmittal, including but not limited to oral, written, graphic, and electronic communication, including communications sent through social media such as Facebook, Twitter, LinkedIn, and any other social media platform.

3. "Person" means an individual, proprietorship, partnership, firm, corporation, association, governmental agency, or other organization or entity.

4. "Include" or "including" are to be read as followed by the phrase "without limitation," so as to acquire the broadest meaning possible.

5. "Concern," "concerning," "evidence," "evidencing," "relating to," "relate to," "relates to," "related to," "referring or relating to," "referring to," "regarding," and "refer or relate to" shall be construed broadly to mean in whole or in part alluding to, responding to, concerning, relating to, connected with, involving, commenting on, in respect of, about, associated with, discussing, evidencing, showing, describing, reflecting, analyzing, summarizing, memorializing, consisting of, constituting, identifying, stating, tending to support, tending to discredit, referring to, or in any way touching upon.

6. "And" and "or" shall be construed either conjunctively or disjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

7. "Any" and "each" should be understood to include and encompass "all."

8. Where appropriate, the singular form of a word should be interpreted in the plural and vice versa, to acquire the broadest possible meaning.

## Materials To Be Produced At Deposition Pursuant To Subpoena:

1. All Communications between you and Jennifer Dulski between January 2006 and today, including emails, communications, messages, and chats through websites such as Facebook and Google mail, relating to Raj Abhyanker.

2. All Communications between you and Jennifer Dulski between January 2006 and today, including emails, communications, messages, and chats through websites such as Facebook and Google mail, relating to the use of the FATDOOR mark.

3. All Communications between you and Jennifer Dulski between January 2006 and today, including emails, communications, messages, and chats through websites such as Facebook and Google mail, relating to Raj Abhyanker or Jennifer Dulski's employment as the Chief Executive Officer of Fatdoor, Inc.

4. All Communications between you and any individual working at Benchmark Capital between January 2006 and today, including emails, communications, messages, and chats through websites such as Facebook and Google mail, relating to Raj Abhyanker or Jennifer Dulski's employment as the Chief Executive Officer of Fatdoor, Inc.

5. All Communications referring to Raj Abhyanker generated during the time period you were an Entrepreneur in Residence at Benchmark Capital.

6. All documents in your possession, custody or control relating to the circumstances under which the company now known as Nextdoor.com, Inc. selected the "Nextdoor" name.

7. All documents in your possession, custody or control relating to the decision to change the legal name of Fanbase, Inc. to Nextdoor.com, Inc.

8. All documents in your possession, custody or control relating to Raj Abhyanker's FATDOOR marks.

9. All Communications between you and Sandeep Sood, including all correspondence concerning, referring or relating to the FATDOOR trademark, Raj Abhyanker, Benchmark Capital, or this lawsuit.

10. All Communications between you and Sandeep Sood, including all correspondence concerning, referring or relating to the FATDOOR trademark, Raj Abhyanker, Benchmark Capital, or this lawsuit.

11. All Communications between you and any individual working at Monsoon Enterprises, including all correspondence concerning, referring or relating to the FATDOOR trademark, Raj Abhyanker, Benchmark Capital, or this lawsuit.

12. All Communications between you and any individual working at Benchmark Capital, including all correspondence concerning, referring or relating to the FATDOOR trademark, Raj Abhyanker, or this lawsuit.

13. All Communications relating to the company now known as Nextdoor.com, Inc.'s selection, adoption and registration of any Internet domain names incorporating the word "Nextdoor".

14. All Communications between you and any other person relating to surveys or studies concerning the names "nextdoor" or "nextdoor.com" or any variation thereof, including marketing, purchasing, brand awareness, or other studies to determine the familiarity of the public with Nextdoor.com, Inc.'s products, services, company or brand.

EXHIBIT C

**BRUNO W. TARABICHI**, CA State Bar No. 215129
bruno@legalforcelaw.com
**HEATHER R. NORTON**, CA State Bar No. 257014
heather@legalforcelaw.com
**SCOTT J. ALLEN**, CA State Bar No. 178925
scott@legalforcelaw.com
**LEGALFORCE RAJ ABHYANKER, P.C.**
1580 W. El Camino Real, Suite 13
Mountain View, California 94040
Telephone: 650.965.8731
Facsimile: 650.989.2131

Attorneys for Defendant and Counterclaimant
Raj Abhyanker

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| NEXTDOOR.COM, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>RAJ ABHYANKER, an individual,<br><br>Defendant.<br><hr>RAJ ABHYANKER, an individual<br><br>Counterclaimant,<br><br>vs.<br><br>NEXTDOOR.COM, INC., a Delaware corporation; PRAKASH JANAKIRAMAN, an individual; BENCHMARK CAPITAL PARTNERS, L.P., a Delaware limited partnership; BENCHMARK CAPITAL MANAGEMENT CO. LLC, a Delaware limited liability company; SANDEEP SOOD, an individual; MONSOON ENTERPRISES, INC., a California corporation, and DOES 1–50, inclusive;<br><br>Counterdefendants. | Case No. 3:12-cv-05667-EMC<br><br>**DEFENDANT AND COUNTERCLAIMANT RAJ ABHYANKER'S NOTICE OF DEPOSITION TO COUNTERDEFENDANT PRAKASH JANAKIRAMAN** |

To All Counsel and their Attorneys of Record:  Defendant and Counterclaimant Raj Abhyanker ("Abhyanker") hereby intends to take the deposition of Counterdefendant Prakash Janakiraman.  The deposition will be recorded stenographically and/or by audio-video recording. The deposition will held at the following date, time and location, and will continue until completed:

DATE:        JUNE 11, 2014

TIME:        10:00 a.m.

LOCATION:  Offices of LegalForce RAPC Worldwide

451 N. Shoreline Blvd.

Mountain View, CA  94043

Dated: May 12, 2014                     Respectfully submitted,

LEGALFORCE RAJ ABHYANKER, P.C.

/s/  SCOTT J. ALLEN
Bruno W. Tarabichi
Heather R. Norton
Scott J. Allen
Attorneys for Defendant
Raj Abhyanker

## CERTIFICATE OF SERVICE

I hereby certify that on the date set forth below, a true and correct copy of the foregoing

**DEFENDANT AND COUNTERCLAIMANT RAJ ABHYANKER'S NOTICE OF**

**DEPOSITION TO PLAINTIFF AND COUNTERDEFENDANT NEXTDOOR.COM, INC.,**

**FED.R.CIV.P. 30(B)(6)** was sent by first class mail to counsel listed below:

Lisa Madeline Chapman
Harpreet Singh Walia
Royse Law Firm, PC
1717 Embarcadero Road
Palo Alto, CA 94303

Guinevere Louise Jobson
Jennifer Lloyd Kelley
Laurence F. Pulgram
Clifford Charles Webb
Fenwick & West LLP
555 California Street
12th Floor
San Francisco, CA 94104

Matthew Rawlinson
Adam Michael Regoli
Latham & Watkins LLP
140 Scott Drive
Menlo Park, CA 94025

Dated: May 12, 2014

Chancellor Tseng