LAURENCE F. PULGRAM (CSB No. 115163)
lpulgram@fenwick.com
JENNIFER L. KELLY (CSB No. 193416)
jkelly@fenwick.com
ILANA S. RUBEL (CSB No. 221517)
irubel@fenwick.com
GUINEVERE L. JOBSON (CSB No. 251907)
gjobson@fenwick.com
FENWICK & WEST LLP
555 California Street
San Francisco, CA  94104
Telephone: (415) 875-2300
Facsimile:  (415) 281-1350

ERIC J. BALL (CSB No. 241327)
eball@fenwick.com
MATTHEW B. BECKER (CSB No. 291865)
mbecker@fenwick.com
Fenwick and West LLP
801 California Street
Mountain View, CA 94041
Telephone: (650) 988-8500
Facsimile:  (650) 938-5200

Attorneys for Plaintiff
NEXTDOOR.COM, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NEXTDOOR.COM, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>RAJ ABHYANKER, an individual,<br><br>Defendant. | Case No.: 3:12-cv-05667-EMC<br><br>**SIXTH SUPPLEMENTAL JOINT CASE MANAGEMENT STATEMENT**<br><br>Date:       September 17, 2014<br>Time:      9:30 a.m.<br>Judge:     Honorable Edward M. Chen |

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Pursuant to Civ. L.R. 16-10, the Court's Standing Order, and the Court's Minute Order following the July 25, 2014 hearing [Dkt. 274], the undersigned parties respectfully submit the following Sixth Supplemental Joint Case Management Statement.

At the outset, defendant Raj Abhyanker ("Abhyanker") objects to the presentation of plaintiff Nextdoor.com, Inc.'s ("Nextdoor.com's") contributions to this case management statement. The purpose of a case management statement – to educate the Court as to recent case events and the future intentions of the parties – is all but lost in the self-serving grandstanding of Nextdoor.com. The editorializing directed against Abhyanker is inappropriate and should be disregarded – and Nextdoor.com admonished that there is a time for partisan argument, but this is not it.

**1.      Status Report**

**Nextdoor.com's Statement of Current Status and Developments**

Abhyanker has dismissed, and the Court has ordered dismissed, all of his claims in this action *with prejudice*. Dkt. Nos. 192 (stipulation and corresponding order dismissing Abhyanker's counterclaim premised on infringement of the NEXTDOOR mark with prejudice); Dkt. 224 (stipulation and order dismissing all of Abhyanker's remaining counterclaims with prejudice). Further, the Court previously entered partial judgment under Rule 54(b) that Nextdoor.com owns and has priority in the NEXTDOOR mark, enjoining Abhyanker's use of that mark, thereby resolving Nextdoor.com's declaratory relief claim based on the NEXTDOOR mark. Dkt. 193. This judgment has now become final as Abhyanker did not appeal from it.

That leaves only three claims by Nextdoor.com left in this case: (1) Nextdoor.com's claim for declaratory relief that it does not infringe Abhyanker's purported rights in the FATDOOR marks (Count II); (2) Nextdoor.com's claim for infringement of its NEXTDOOR mark (Count IV); and (3) Nextdoor.com's claim for cyberpiracy based on Abhyanker's bad faith registration and use of the "nextdoor.cm" domain (Count III). All three claims can and should be resolved without a trial.

**Count II/Declaratory Relief Claim**: Set for hearing at the same time as this status conference, is Nextdoor.com's motion to dismiss its declaratory relief claim relating to

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

Abhyanker's alleged FATDOOR marks. Because that claim for declaratory judgment is the mirror image of Abhyanker's affirmative claim that Nextdoor.com infringed those marks, and because his dismissal with prejudice resolves against him on the merits all claims that were or could have been raised in his action, there is no live dispute left to declare. Nextdoor.com will not address that motion to dismiss further here, other than to note that, because the deadline for filing dispositive motions (September 11) falls before the motion to dismiss will be heard, Nextdoor.com intends also to file a motion for summary judgment on its Fatdoor claim for declaratory judgment. This will provide "belt and suspenders," to ensure that no trial is needed in the event the Court determined a motion to dismiss did not resolve this claim.

**Count VI/ Trademark Infringement Claim Based on the NEXTDOOR mark**:

Nextdoor.com's motion for summary judgment will also seek judgment on its claim that Abhyanker infringed Nextdoor.com's rights in its NEXTDOOR mark. That motion will present a fairly simple issue, since it has already been adjudged that Nextdoor.com owns the NEXTDOOR mark; the undisputed evidence shows that Abhyanker used the identical NEXTDOOR mark on his various sites with full knowledge of Nextdoor.com's prior use; and Abhyanker has not only admitted, but himself alleged, likelihood of confusion stemming from the parties' respective uses of the identical NEXTDOOR mark. Dkt. 132 ¶¶ 159-163; Dkt. 141. Further, Nextdoor.com has not requested any relief on this claim other than injunctive relief and attorneys' fees, thereby eliminating any issue as to damages (and also meaning that, at most, this claim would be tried to the Court, not jury, on the purely equitable relief requested). Nextdoor.com asked Abhyanker to stipulate to entry of judgment on this claim. But without identifying any issue he thinks remains for the Court to decide, Abhyanker has refused. He has required Nextdoor.com to burden the Court with this motion as well.

**Count III/Claim for Cyberpiracy**: Abhyanker has, during the litigation, ceased using the offending "nextdoor.cm" site, the domain on which this claim is based. The site is presently disabled. As a result, so long as Abhyanker does not reinstitute use, all Nextdoor.com could gain by continuing to pursue this claim to trial is $100,000 in statutory damages (the maximum recovery allowed under 15 U.S.C. §1125(d)(1)). At this point, that potential recovery is dwarfed

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

by the sum that Nextdoor.com has already been required to spend to defeat Abhyanker's baseless claims, and which it seeks to recover in a fee award.  Trials are not cheap.  The economics thus do not justify taking the cybersquatting case to trial.  Nextdoor.com has offered Abhyanker to dismiss the claim as long as he agrees not to recommence use of nextdoor.cm.  To date, Abhyanker has refused to agree to do so.  He appears bent on attempting to hold the Court hostage to a trial, without any explanation of a good faith basis to refuse to stipulate to dismissal.

**Nextdoor.com's motion for attorneys' fees and sanctions:**  As set forth above, motions and dismissals should dispense with all remaining pending claims, eliminating the need for a trial and leaving nothing for resolution other than Nextdoor.com's ultimate motion for attorneys' fees and sanctions.  As set forth in more detail in Section 3, Nextdoor.com believes it is entitled to fees under applicable law.  It seeks those fees both to obtain justice (because Abhyanker's entire case has been based on provable deceptions of monumental proportions (*see* Dkt. 235, Fourth Supplemental Case Management Statement)), and because absent deterrence, Abhyanker seems bent on continuing to wage his senseless and fabricated war on Nextdoor.com.  For example, Abhyanker's opposition [Dkt. 317] to Nextdoor.com's motion to dismiss its declaratory relief claim [Dkt. 303] describes a litany of far-fetched trademark claims that he and/or his company, Fatdoor Inc., ostensibly hope to file against Nextdoor.com, its partners and its customers in the future, even after dismissing all his claims in this action with prejudice.

Additionally, the separate patent infringement suit Abhyanker and his company filed against Nextdoor.com is still pending before Judge Freeman.  *See Fatdoor, Inc. and Raj Abhyanker v. Nextdoor.com, Inc.*, Case No. 4:14-cv-02335-BLF, filed May 20, 2014 ("the Patent Suit").  Abhyanker's claim in that suit is every bit as much a sham as the claims he asserted and eventually dropped here.  Indeed, Nextdoor.com's belief—set forth in its Motion to Relate Cases [Dkt. 229], that Abhyanker fabricated the document on which he bases his claim of ownership over the subject patents—has now been confirmed to be true.  This latest fabrication is exposed in a separate lawsuit filed against Abhyanker by his own client, GeoTag, Inc. (on whose behalf Abhyanker claims to have acted in assigning rights to himself).  GeoTag alleges, with reference to supporting documents, that Abhyanker's purported assignment from GeoTag to himself of an

ownership interest in the patents he asserts against Nextdoor.com was without GeoTag's knowledge or authorization. *See GeoTag, Inc. and IP Analytics, LLC v. Raj Abhyanker et. al,.* Case No. 4:14-cv-00562, E.D. Texas, Complaint filed August 27, 2014 (asserting claims for breach of fiduciary duty; malpractice/professional negligence; conversion and slander of title). Thus, Abhyanker has not only caused the Court to expend substantial resources on fabricated claims in this action (and Nextdoor.com to incur well in excess of a million dollars defending against those claims), he is continuing to burden the Court and Nextdoor.com with fabricated claims in other actions. Justice requires that Abhyanker be called to account for his fundamental abuse of the judicial system.

### Abhyanker's Statement of Current Status and Developments

It is clear from Nextdoor.com's presentation here, and from its recent interactions with Abhyanker, that Nextdoor.com has lost its appetite for this case. What Abhyanker does not understand is why this is occurring now, after the great expense of completing fact discovery and expert discovery? Nextdoor's change-of-heart seems premised on Abhyanker's dismissal of his counterclaims – but this event took place months ago, when the time would have been much riper than now to take steps through agreement or noticed motion to dismiss one or more of Nextdoor.com's causes of action. Abhyanker favors a cost-effective approach to completion of this case – but now, after months of the most expensive phases of this case could have been avoided by Nextdoor.com? It is backward and unwarranted for Nextdoor.com to blame Abhyanker about his defense of Nextdoor's own complaint, with his defense effort staffed much more leanly and cost-effectively than Nextdoor's own sizable prosecution effort. There has been little moderation in Nextdoor.com's over-the-top litigation approach to date – an approach which continues even with its stated desire to dismiss one or more of its claims.

What concerns Abhyanker most of all is Nextdoor.com's focus on moving the case away from contesting the claims it has relied on for two years, and toward litigating its attorneys' fees. Somehow, between the last status conference and this one, the litigation has come to appear less about vindicating Nextdoor.com's position that Abhyanker was interfering with its business, and more about its legal team's overriding concern about the fees spent to date. Abhyanker's concern

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

is heightened by the fact that the Court specifically ordered Nextdoor.com to refrain from

discovery and concern about recouping fees for perceived discovery abuse by Abhyanker until

after trial.  *See* Dkt. 241 order.  Instead, Nextdoor.com's focus has moved to long discourses

about alleged discovery abuse by Abhyanker and recovering its fees from him, when that

discussion was supposed to be held in abeyance until after trial in December.  Ironically, some of

the acts allegedly constituting discovery abuse by Mr. Abhyanker would never have occurred had

Nextdoor.com simply taken stock of its own case following Abhyanker's dismissal of its

countercomplaint and concluded *then* that, in light of Abhyanker's dismissal, it did not care to

press some of its claims any further.  Despite the Court's order, Nextdoor.com's persistent march

toward end-of-the-case attorneys' fees motions has displaced its trial and settlement focus.

That said, Abhyanker's current review of Nextdoor.com's complaint is as follows.[1]

Abhyanker has consistently contested the Fatdoor-v-Nextdoor declaratory relief claim seeking

clarity as to confusion between their marks.  As noted at length in his opposition to

Nextdoor.com's motion, resolution of this claim, by agreement or by trial, is necessary for the

two companies to draw proper boundaries between them.  Abhyanker was surprised to hear last

week that Nextdoor.com was looking to drop its cyberpiracy claim – the long-heralded flagship

claim of Nextdoor's complaint -- so long as Abhyanker committed to abandon its

www.nextdoor.cm domain.  Abhyanker is prepared to consider that offer after the Court issues its

order on Nextdoor's motion to dismiss the declaratory relief claim to minimize the shifting sands

beneath his feet.  Abhyanker was also surprised to hear last week that Nextdoor.com wishes not

to pursue its Lanham Act infringement claim through to trial, in favor of Abhyanker's full

capitulation to a judgment equitable relief permitted by that claim (Nextdoor has given up

damages for this claim).  Abhyanker is not prepared to stipulate to judgment on this claim in lieu

of putting Nextdoor.com to its burden of proof at trial.  For Abhyanker to concede judgment that

he infringed Nextdoor.com's trademark, on bended knee, solely in response to Nextdoor.com's

demand for such a result, appears unwarranted in that it is not an inevitable consequence of the

---

[1] Some of what follows Abhyanker would generally respect as confidential settlement communications, but as Nextdoor.com has revealed them to the Court, Abhyanker feels obliged to respond.

5

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

partial judgment on the Nextdoor-v-Nextdoor declaratory relief claim already issued, especially in light of the fact that the order and judgment on that claim specifically reserve the right to both parties to bring forward evidence and argument for and against all other claims – language that would be superfluous if Nextdoor.com truly believed that the partial judgment inevitably dictates judgment in its favor on the Lanham Act claim.  All told, Abhyanker is willing to work with Nextdoor.com to narrow the case, just not in precisely the way Nextdoor.com is demanding, and not with a triple-barreled threat of attorneys' fees lurking just around the corner, especially when it appears to Abhyanker that Nextdoor's delay in proposing dismissal or other manner of case narrowing comes after it has needlessly prolonged its case and run up case expense.

Finally, Abhyanker has urged Nextdoor.com to consider a global resolution, not only of the claims in this case, but together with the claims in the much-newer patent rights case pending in this Court before Judge Freeman – largely because even if Nextdoor were to win everything it hopes to in this case, its way forward toward initial public offering or other big plans will remain clouded while patent ownership concerning its core neighborhood-based social networking concept remains in dispute over the next year or two.  Though Nextdoor.com pays lip service to also wanting a global resolution, it has refused to pursue one with Abhyanker – see the settlement section below.

**2.** **Pending Discovery Issues**

**Nextdoor.com's position.**

Fact discovery has been closed since August 1, 2014.  But since the last CMC, Judge Cousins has issued several orders compelling Abhyanker to provide improperly withheld discovery, and then further orders requiring compliance with those orders.  *See* Dkt. Nos. 250, 259, 289, 306, 313.  For example, as of July 7, 2014 (after the initial date discovery was to close) when Abhyanker had not even begun the process of actually collecting his own documents, Judge Cousins had to order Abhyanker to "begin the process of data collection and processing immediately."  Dkt. 250 at 3.  Even after the parties' agreement on a proposed protocol to finally extract Abhyanker's documents, Nextdoor.com was forced to file multiple discovery letters in an endeavor to achieve Abhyanker's compliance [*e.g.*, Dkt. Nos. 265, 267, 281, 283, 293, 304]

Several disputes still remain with respect to the pending claims, which Nextdoor.com has raised before Judge Cousins.  A Joint Letter Briefs was filed on September 9 and one more may be filed on September 11, 2014, on the schedule Judge Cousins has provided. As discussed below, there are also open discovery issues respecting the motion for attorneys' fees.

**Abhyanker's Statement of Pending Discovery Issues**

Over the last several months, Nextdoor.com has met and conferred with Abhyanker concerning dozens of perceived discovery deficiencies.  Apparently impervious to the notion that a litigant should choose its battles wisely, and not pursue every possible battle, Nextdoor.com has brought many of these disputes to Magistrate Judge Cousins for hearing on multiple occasions – thereby driving up litigation costs.  As the undersigned composes this statement, Nextdoor.com is preparing to file yet another discovery motion with multiple issues it has termed growing out of expert discovery, when the issues appear more of the fact-discovery variety, even though fact discovery and related motion practice has concluded.  To show little moderation in initiating discovery motion practice over a broad range of items – while at the same time professing to want to narrow the case so that it can move to pursue bloated attorneys' fees – would seem at odds.

Two more expert depositions remain – of Nextdoor.com's marketing survey expert and of its forensic tax accountant rebuttal expert – both of which are scheduled for the fourth week of September pursuant to agreement between the parties.  With these depositions, all discovery in this case should be concluded.

**3.      Motions**

**Nextdoor.com's position:**

Nextdoor.com anticipates bringing a motion to recover its attorneys' fees and potentially for evidentiary sanctions (if a trial were needed).  In its fee motion, Nextdoor.com will seek to recover its fees under the Lanham Act for this "exceptional case"—a standard that the Supreme Court has recently substantially relaxed.[2]  It also will seek its fees under the California Uniform

---

[2] Following recent the Supreme Court's recent decision in *Octane Fitness* which lowered the standard for an award of fees in an "exceptional case" under §285 of the Patent Act, the standard for an award of fees under the Lanham Act is also lowered.  *See Fair Wind Sailing, Inc., v. H. Scott Dempster et. al.*, 2014 WL 4358471 (3d. Cir. Sept. 4, 2014) ("Under Octane Fitness, a district court may find a case 'exceptional' and therefore award fees to the prevailing party, when (a) there is an unusual discrepancy in the merits of the positions taken by the parties or (b) the losing

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

Trade Secrets Act, which authorizes award of fees and expert costs in cases brought in bad faith, as well as under the Court's inherent authority and Civil Rules.  Cal. Civ. Code § 3426.4; *see also CRST Van Expedited, Inc. v. Werner Enterprises, Inc.*, 479 F.3d 1099 (9th Cir. 2007) (district court correctly awarded attorneys' fees where plaintiff's trade secret claims were objectively specious and the district court could infer plaintiff's subjective bad faith, despite the fact that the trade secret claims had been abandoned before trial).

As Nextdoor.com's motion will show, Abhyanker brought all of his claims in bad faith, based on invented evidence and factual allegations that are demonstrably false and insupportable. Both he and his attorneys have unnecessarily prolonged this litigation by raising additional false claims at every stage, whenever a prior theory was defeated.  Additionally, Abhyanker and (in some instances his attorneys) repeatedly failed to comply with discovery obligations, destroyed and rendered unavailable critical evidence, invented documents, altered documents, and failed to produce evidence.

As just one of many, many examples, Abhyanker provided a sworn statement on December 26, 2013, following this Court's order that he do so, attesting that he had searched for and produced all responsive documents.  *See* Dkt. 155-5 ¶ 41, Exhibit Y ("After a diligent search and reasonably inquiry as outlined in Section I, Abhyanker hereby certifies that to his knowledge all non-privileged documents in his possession, custody or control responsive to Nextdoor.com's outstanding document requests have been produced.").  That attestation was utterly false, but it took Nextdoor.com months to prove it, requiring discovery motion after discovery motion that eventually led to Judge Cousins entering orders requiring Abhyanker's counsel to sequester, preserve and then to search electronic evidence in Abhyanker's possession.  Dkt. 223 ("The Court orders preservation of discoverable materials as proposed by plaintiff…"); 218 (Nextdoor.com's proposed sequestration and subsequent search of electronic evidence); 218-1(email from counsel for Abhyanker acknowledging need to secure and preserve electronic evidence, and describing efforts to do so beginning in *June 2014*).

party has litigated the case in an 'unreasonable manner'") *citing Octane Fitness, LLC v. Icon Health & Fitness, Inc.*, 134 S.Ct. 1749 (2014)

As mentioned in the previous CMC statement, Nextdoor.com has gradually uncovered a shocking number of fabrications, including outright lies in Abhyanker's declaration that prevented earlier summary judgment on his claim to misappropriation of the "Lorelei trade secret"—all of which led his prior team of five attorneys to make a noisy withdrawal.   Dkt. Nos. 217 & 263.  These are not trivial matters.  During the course of the litigation, entire documents have been created out of whole cloth for no purpose other than to attempt to backfill otherwise baseless claims.  Many other documents have been altered, including many in December 2013, to attempt to support new claims.  As Nextdoor.com's retained expert, Mr. David McCain, has attested, the paper (or digital) trails of these records reflect many of these alterations.  But many other records that indisputably existed during this case have been destroyed and/or not turned over in discovery.  Nextdoor.com has been forced to expend exorbitant amounts of time and effort uncovering these lies, in some instances frustrated by Abhyanker's claims that the evidence disappeared, and his unwillingness to produce for analysis the mirror copies of his computers. *See* Dkt. Nos. 264, 289.1, 291, 309 (Abhyanker's multiple amended declarations claiming to have handed over critical documents to counsel, documents which are now lost or were otherwise not provided in the course of discovery).

The Court previously limited discovery to the pending causes of action, stating that its priority was disposition of those claims.  The Court noted, however, that separate discovery could be appropriate in the attorneys' fee phase.  Nextdoor.com believes that such discovery—and in particular, forensic examination of Abhyanker's computers and some depositions of counsel he claims "lost" records—is justifiable.  Nextdoor.com now seeks the Court's input as to when it wishes Nextdoor.com to present the question of further discovery of computers and attorneys as relevant to its upcoming fees motion.

As the Court is aware, Nextdoor.com is gravely concerned by the inconsistencies and record of alterations in key documents and files Abhyanker has produced.  These documents go to the very heart of whether or not Abhyanker ever had a good faith basis to pursue claims against Nextdoor.com, or whether he instead fabricated and destroyed evidence to support his litigation goals.  *See* Dkt. Nos. 213 (describing the need for forensic preservation of Abhyanker's

1   computers and devices); 281 (detailing specific documents Nextdoor.com believes were tampered

2   with or destroyed, and their significance to this case).  In fact, based on Nextdoor.com's justified

3   concerns, Judge Cousins ordered, without objection from Abhyanker's former counsel, that

4   forensic copies of all of the computers and devices in Abhyanker's possession be made,

5   sequestered from him and provided to an outside expert.  Dkt. 223; *see also* Dkt. 289 (noting in

6   the context of Nextdoor.com's request for forensic examination of selected drives from

7   Abhyanker based on likely evidence fabrication and spoliation "there is good cause for

8   concern.").  Even after that order, both Nextdoor.com's expert Mr. McCain, and Abhyanker's

9   own forensic collector, Mr. Berryhill, opined that he had *not* produced drives containing user

10  accounts and data critical to determining just who fabricated the files.  Although the record of

11  fabrication and destruction of evidence is very solid without such evidence, at this point, only

12  forensic review of the actual drives will reveal to the Court exactly how Abhyanker accomplished

13  his various fabrications, and to what extent.  In the interest of getting through discovery to trial,

14  Judge Cousins stopped short of ordering production of forensic images for analysis in the

15  discovery phase.   But Nextdoor.com submits that a detailed analysis of the forensic information

16  is necessary in this extreme case to ensure that the judicial system functions properly and that

17  appropriate measures are levied against those who seek to circumvent it.

18       Accordingly, Nextdoor.com is prepared, should the Court deem it suitable, to brief the

19  discovery issues first; alternatively, Nextdoor.com is prepared to submit its motion for fees and

20  sanctions first, along with a simultaneous explanation of why the additional discovery could be

21  appropriate in light of the facts already known.

22       **Abhyanker's Statement of Remaining Motion Practice**

23       As noted above, Nextdoor.com is primarily focused on post-trial motion practice for

24  attorneys' fees.  Though it is perfectly appropriate to indicate an intent to proceed in this fashion,

25  the amount of airtime Nextdoor.com has given over to its plans skews what this case is all about –

26  resolving differences between the inventor of the neighborhood-based social networking concept

27  and the company which has developed that concept over the last several years.  Abhyanker will

28  face any motions filed, but continues to wonder aloud why the case is not more constructively

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

directed.

**4.        Related Cases**

Abhyanker still has co-pending oppositions to Nextdoor.com's registration of its NEXTDOOR mark in the Trademark Trial and Appeal Board ("TTAB") filed by Abhyanker (Opposition Nos. 31203462 and 91203762).  Nextdoor.com's motion to dismiss the TTAB oppositions in light of the Court's Judgment confirming Nextdoor.com's right to the NEXTDOOR mark [Dkt Nos. 192 & 193] and Abhyanker's dismissal with prejudice of all claims [Dkt. 226], is fully briefed and currently pending decision before the TTAB.

**Abhyanker's Statement of Related Cases**

As noted above, Abhyanker sees any sustained peace between the parties running through not only thoughtful resolution of this case, but also thoughtful resolution of the patent rights case pending before Judge Freeman.  As Nextdoor.com has stated on multiple occasions, its goal is to be rid of Abhyanker as an impediment to its business operation plans.  Abhyanker shares the goal of ending these disputes, but the way to its fruition is not only resolution of the current case; per force, only quieting title among all claimants to patent rights in the neighborhood-based social networking setting will enable Nextdoor.com to move forward with its business plans unobstructed.  For reasons mysterious and unknown to Abhyanker, Nextdoor.com has shown no desire to work with Abhyanker toward parent rights resolution and a permanent peace between them.

**5.        Settlement and ADR**

The parties attended a second settlement conference before Magistrate Judge Vadas on September 8, 2014.  The conference was unsuccessful.  The parties agreed with Judge Vadas to have a telephone update on September 23, 2014, following this Court's hearing on September 17.

**Nextdoor.com's Statement**

Abbyanker's suggestion of a mediation that would include persons not party to this action, with whom Nextdoor.com has no dispute, makes no sense, for reasons Nextdoor.com explained to Judge Vadas at the settlement conference September 8.  Nextdoor.com's dispute is with Mr. Abhyanker only.  He has complete authority and power to resolve this dispute and provide all the

consideration that Nextdoor.com requires.  Nextdoor.com expects to be able to provide more information on this point at the status conference.

**Abhyanker's Statement of Pursuing Dispute Resolution and Settlement**

As noted above, settlement has eluded the parties.  Both parties seem to agree, even to insist on, global settlement across all pending cases and issues if there is to be a settlement at all – yet when it came to Abhyanker's suggestion of a multilateral mediation with an experienced intellectual property and complex case mediator at JAMS, to include both parties and all stakeholders in the patent rights dispute, Nextdoor.com summarily rejected the idea.  Abhyanker hopes that Nextdoor.com will change its mind, as a mediation which seeks to resolve both trademark claims and patent claims is the surest road toward comprehensive resolution and a permanent peace between the parties.

**6.     Case Schedule**

Given Nextdoor.com's pending dispositive motions and potential dismissals, it believes that the current trial schedule will likely become obsolete.  If a trial does remain necessary, it will be a bench trial, as the only relief still being sought is injunctive relief and attorneys' fees (assuming dismissal of Nextdoor.com's cybersquatting claim for damages).  Nextdoor.com thus suggests that the Court set a status conference for October 16, 2014 (the date on which dispositive motions will be heard).  Or, if it can be agreed that all remaining claims are resolved now by dismissal or stipulation, then Nextdoor.com respectfully suggests that the appropriate course is to vacate the trial date and set a schedule for briefing and hearing on Nextdoor.com's motion for attorneys' fees and sanctions and any related discovery.

**Abhyanker's Statement of Case Schedule**

Abhyanker looks forward to trying this case with Nextdoor.com if the parties cannot first settle all pending and related claims at a multilateral mediation.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

Dated:  September 10, 2014

FENWICK & WEST LLP

By: */s/ Laurence F. Pulgram*
    Laurence F. Pulgram

Attorneys for Plaintiff
NEXTDOOR.COM, INC.


LEGALFORCE RAJ ABHYANKER, P.C.


By: */s/ David Lavine*
    David Lavine

Attorneys for Defendant
RAJ ABHYANKER

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

SIXTH SUPPLEMENTAL JOINT CMC
STATEMENT

13

Case No. 3:12-cv-05667-EMC

## ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1

I, Laurence F. Pulgram, am the ECF User whose identification and password are being used to file this **SIXTH SUPPLEMENTAL JOINT CASE MANAGEMENT STATEMENT**. In compliance with Civil Local Rule 5-1, I hereby attest that all signatories have concurred in this filing.


Dated:     September 10, 2014                   */s/ Laurence F. Pulgram*
                                                Laurence F. Pulgram

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW