LAURENCE F. PULGRAM (CSB No. 115163)
lpulgram@fenwick.com
JENNIFER L. KELLY (CSB No. 193416)
jkelly@fenwick.com
ILANA S. RUBEL (CSB No. 221517)
irubel@fenwick.com
GUINEVERE L. JOBSON (CSB No. 251907)
gjobson@fenwick.com
FENWICK & WEST LLP
555 California Street
San Francisco, CA 94104
Telephone: (415) 875-2300
Facsimile: (415) 281-1350

ERIC J. BALL (CSB No. 241327)
eball@fenwick.com
MATTHEW B. BECKER (CSB No. 291865)
mbecker@fenwick.com
FENWICK AND WEST LLP
801 California Street
Mountain View, CA 94041
Telephone: (650) 988-8500
Facsimile: (650) 938-5200

Attorneys for Plaintiff
NEXTDOOR.COM, INC.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NEXTDOOR.COM, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>RAJ ABHYANKER, an individual,<br><br>Defendant. | Case No.: 3:12-cv-05667-EMC-NMC<br><br>**NEXTDOOR.COM, INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT ON NEXTDOOR.COM'S COUNTS II AND IV OF ITS COMPLAINT**<br><br>Date: October 16, 2014<br>Time: 1:30 p.m.<br>Courtroom: 5, 17th Floor<br>Judge: Hon. Edward M. Chen |

**<u>REDACTED VERSION OF DOCUMENT SOUGHT TO BE FILED UNDER SEAL</u>**

## TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................ 1

INTRODUCTION ............................................................................................... 1

FACTUAL BACKGROUND ............................................................................... 3

    A.     Nextdoor.com's Adoption Of And Priority In The NEXTDOOR Mark. .............. 3

    B.     Abhyanker Used The NEXTDOOR Mark. ............................................................. 4

    C.     Abhyanker Has No Evidence That He Used The FATDOOR Marks In Commerce Before Nextdoor.com's First Use Of Its NEXTDOOR Mark. ............................................................................................................ 6

    D.     Abhyanker's Fabrication Of An Assignment To Himself Did Not Convey To Him Earlier Rights Of Fatdoor, Inc. In The FATDOOR Mark. ......................................................................................................... 10

ARGUMENT ..................................................................................................... 12

I.     SUMMARY JUDGMENT STANDARD ................................................ 12

II.     ABHYANKER'S USE OF PLAINTIFF'S NEXTDOOR MARK CONSTITUTES TRADEMARK INFRINGEMENT ...................................... 14

    A.     There Is No Question Of Fact As To Ownership, Validity Or Priority ............... 14

    B.     Abhyanker's Own Pleadings And Admissions As Well As The Undisputed Facts Conclusively Demonstrate Likelihood Of Confusion. ............. 15

         1.     Abhyanker's Intent Is Conclusive As To Likelihood Of Confusion ...................................................................................... 16

         2.     Actual Confusion ................................................................... 16

         3.     Abhyanker's Use Is Identical To Nextdoor.com's NEXTDOOR Mark ............................................................... 17

         4.     The Parties' Purported Services Are Virtually Identical ............................ 18

         5.     Both Nextdoor.com And Abhyanker Use The Internet As A Primary Marketing Channel ........................................... 19

         6.     The Degree of Care Consumers Are Likely To Exercise ......................... 19

         7.     Expansion of Product Lines ................................................... 20

         8.     Strength Of The NEXTDOOR Mark. .................................. 20

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

NEXTDOOR.COM'S MSJ ON COUNTS II
AND IV OF ITS COMPLAINT

i

CASE NO. 3:12-cv-05667-EMC-NMC

**TABLE OF CONTENTS**
**(CONTINUED)**

**Page**

III.    THERE IS NO DISPUTE OF FACT THAT ABHYANKER FAILS TO
        ESTABLISH PRIORITY IN THE FATDOOR MARK ................................................... 21

        A.    To Establish Priority, Abhyanker Must Provide Admissible Evidence
              Demonstrating that the Relevant Public Associated the FATDOOR
              Mark with a Functioning Service Personally Offered by Abhyanker ................... 21

        B.    Abhyanker Has No Admissible Evidence Demonstrating that the
              Relevant Public Associated the FATDOOR Mark with a Functioning
              Service Personally Offered by Abhyanker ............................................................. 22

CONCLUSION ........................................................................................................................ 25

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page(s)</u>

3

4

**CASES**

5

*555-1212.com, Inc. v. Commc'n House Int'l, Inc.,*
      157 F. Supp. 2d 1084 (N.D. Cal. 2001) ......................................................................23

6

*AMF, Inc. v. Sleekcraft Boats,*
      599 F.2d 341 (9th Cir.1979).............................................................................. *passim*

7

8

*Anderson v. Liberty Lobby, Inc.,*
      477 U.S. 242 (1986) .....................................................................................................13

9

*Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.,*
      457 F.3d 1062 (9th Cir. 2006).....................................................................................13

10

11

*Bloom v. General Truck Drivers, Office, Food & Warehouse Union,*
      783 F.2d 1356 (9th Cir.1986).......................................................................................12

12

*Brookfield Comm. Inc. v. West Coast Entertainment Corp.,*
      174 F.3d 1036 (9th Cir. 1999)............................................................................ *passim*

13

*Celotex Corp. v. Catrett,*
      477 U.S. 317 (1986) .....................................................................................................13

14

15

*China Intl Travel Servs. (USA), Inc. v. China & Asia Travel Serv., Inc.,*
      08-CV-01293 JSW MEJ, 2008 WL 5480840 (N.D. Cal. Dec. 18, 2008)..................18

16

17

*DC Comics v. Towle,*
      989 F. Supp. 2d 948 (C.D. Cal. 2013) .........................................................................20

18

*Dreamwerks Prod. Group v. SKG Studio,*
      142 F.3d 1127 (9th Cir.1998).......................................................................................19

19

*E. & J. Gallo Winery, v. Gallo Cattle Co.,*
      967 F.2d 1280 (9th Cir. 1992)................................................................................15, 19

20

21

*Eichman v. Fotomat Corp.,*
      759 F.2d 1434 (9th Cir.1985).......................................................................................14

22

*Entrepreneur Media, Inc., v. Smith,*
      279 F.3d 1135 (9th Cir. 2002)......................................................................................17

23

24

*F.T.C. v. Stefanchik,*
      559 F.3d 924 (9th Cir. 2009)...................................................................................13, 22

25

*Filipino Yellow Pages, Inc. v. Asian Journal Publications, Inc.,*
      198 F.3d 1143 (9th Cir. 1999)......................................................................................20

26

27

*Fin. Exp. LLC v. Nowcom Corp.,*
      564 F. Supp. 2d 1160 (C.D. Cal. 2008) .......................................................................20

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*GoTo.com, Inc. v. Walt Disney Co.*,
   202 F.3d 1199 (9th Cir. 2000)...............................................................................17, 19

*Guichard v. Universal City Studios, LLLP*,
   No. C 06-6392 JSW, 2007 WL 1750216 (N.D. Cal. June 15, 2007),
   *aff'd*, 261 Fed.Appx. 15 (9th Cir. 2007) ...............................................................24

*Harley-Davidson, Inc. v. Seghieri*,
   1993 WL 645930 (N.D.Cal. 1993)..........................................................................16

*In re A La Vieille Russie, Inc.*,
   60 USPQ2d 1895 (TTAB 2001) ..............................................................................24

*In re Editel Productions, Inc.*,
   189 USPQ 111 (TTAB 1975) ...................................................................................24

*In re McDonald's Corp.*,
   229 USPQ 555 (TTAB 1985) ...................................................................................24

*In re Universal Oil Products Co.*,
   476 F.2d 653, 177 USPQ 456 (C.C.P.A. 1973) .....................................................23

*Intermedics, Inc. v. Ventritex, Inc.*,
   775 F. Supp. 1258 (N.D. Cal. 1991) .......................................................................14

*Lindy Pen Co. v. Bic Pen Corp.*,
   796 F.2d 254 (9th Cir. 1986)...................................................................................18

*Mobile Oil Corp. v. Pegasus Petroleum Corp.*,
   818 F.2d 254 (2d Cir. 1987)....................................................................................16

*Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*,
   638 F.3d 1137 (9th Cir. 2011)..................................................................................20

*New West Corp. v. NYM Co. of Cal., Inc.*,
   595 F.2d 1194 (9th Cir. 1979)..................................................................................16

*Nissan Motor Co. v. Nissan Computer Corp.*,
   378 F.3d 1002 (9th Cir. 2004)...........................................................................13, 17

*Official Airline Guides, Inc. v. Goss*,
   6 F.3d 1385 (9th Cir. 1993).....................................................................................19

*Park 'n Fly, Inc. v. Dollar Park and Fly, Inc.*,
   782 F.2d 1508 (9th Cir. 1986)..................................................................................18

*San Remo Hotel, L.P. v. City & Cnty. of San Francisco*,
   545 U.S. 323 (2005)................................................................................................14

*Sega Enterprises. Ltd. v. MAPHIA*,
   948 F. Supp. 923 (N.D. Cal. 1996) ...................................................................16, 17

*Smith v. Montoro*,
   648 F.2d 602 (9th Cir. 1981)...................................................................................16

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

*Sutton v. Williamsburg Winery, Ltd.*,
   Case No. 2:12-CV-00333-GEB, 2013 WL 5348127 (E.D. Cal. Sept. 23, 2013) ...................10

*T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Assn.*,
   809 F.2d 626 (9th Cir. 1987)............................................................................................13

*Washington Speakers Bureau, Inc. v. Leading Authorities, Inc.*,
   33 F.Supp.2d 488 (E.D. Va. 1999).....................................................................................16

*World Triathlon Corp. v. Dunbar*,
   320 F. App'x 795 (9th Cir. 2009) ......................................................................................18

**STATUTES**

8 Del. C. § 142 ....................................................................................................................23

8 Del. C. § 144 ....................................................................................................................23

U.S.C.A. § 1114 ..................................................................................................................15

15 U.S.C.A. § 1125(A) .......................................................................................................1, 15

15 U.S.C. § 1125(a)(1)(A) ..................................................................................................14

15 U.S.C. § 1127 .................................................................................................................10

Lanham Act, § 43(a) ...........................................................................................................14, 16

**RULES**

Fed. R. Civ. P. 11 ...............................................................................................................1, 2, 3

Fed. R. Civ. P. 54(b) ..........................................................................................................4

Fed. R. Civ. P. 56 ...............................................................................................................1, 13

Fed. R. Civ. P. 56(a)...........................................................................................................13

**OTHER AUTHORITIES**

J.T. McCarthy, Trademarks and Unfair Competition
   § 24.6 (1973)......................................................................................................................19

Trademark Manual of Examining Procedure (TMEP) § 1301.04.................................................23

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

**NOTICE OF MOTION AND MOTION**

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that Plaintiff Nextdoor.com, Inc.'s Motion for Summary Judgment on its claim for infringement of its NEXTDOOR mark under 15 U.S.C.A. § 1125(A) (Count IV) and its claim for declaratory judgment that Nextdoor.com does not infringe on Raj Abhyanker's alleged FATDOOR marks (Count II) will be heard before the Honorable Edward M. Chen, United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, California, on October 16, 2014 at 1:30 p.m.

Pursuant to Federal Rule of Civil Procedure 56, Nextdoor.com, Inc. moves for an order finding that Raj Abhyanker's use of the NEXTDOOR mark constitutes infringement of Nextdoor.com Inc.'s NEXTDOOR mark, and to the extent not moot, a declaration that Nextdoor.com does not infringe on Abhyanker's alleged FATDOOR marks.  This Motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the accompanying declarations of Jennifer L. Kelly, Prakash Janakiraman, Jennifer Dulski and William H. Harris, Jr. in support thereof, the pleadings and other papers on file in this action, and any other oral or written submissions as the Court may entertain.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

As the parties approach a trial date and the truth has been revealed, Nextdoor.com, Inc. ("Nextdoor.com") has attempted to narrow the issues that need be presented for determination by this Court.  However, Defendant and former counterclaimant Raj Abhyanker ("Abhyanker") has resisted these attempts to streamline the case.  Although none of the facts on which this motion is based are disputed (in fact, most are admitted), he has refused to stipulate to judgment on either claim, forcing Nextdoor.com to bring to the Court what should have been unnecessary.  This motion seeks judgment on two of the three claims left in the case: (1) Nextdoor.com's claim for trademark infringement based on Abhyanker's unauthorized use of the NEXTDOOR mark on various websites (Count IV); and (2) Nextdoor.com's claim seeking a declaration that its own use of the NEXTDOOR mark does not infringe any rights Abhyanker purportedly holds in the FATDOOR marks (Count II).  Judgment on both claims in Nextdoor.com's favor is appropriate.

With respect to Count IV, the undisputed facts lead to only one conclusion: Abhyanker infringed Nextdoor's trademark rights in the term NEXTDOOR when, following launch of the www.nextdoor.com site in 2011, he began using NEXTDOOR as branding for websites of his own.  Abhyanker has admitted or stipulated to every fact needed to support a judgment on this claim:  that Nextdoor.com owns and has priority of use in the NEXTDOOR mark; that the mark he used is identical; that Abhyanker used the mark in connection with the same type of service as that offered by Nextdoor.com; and that there is *actual* confusion (not just likelihood of it) created by his use of the mark.[1]  The Court will recall that, as a condition to allow Abhyanker to assert his counterclaim to ownership of the NEXTDOOR mark, the Court ordered him to plead facts showing evidence of his priority of use.  Dkt. 137 (12/13/13 minute order requiring Abhyanker to supplement his pleading to identify prior commercial use and attach evidence of such use as exhibits).  But after Nextdoor.com confirmed, through discovery, that Abhyanker had fabricated the evidence his pleadings cited and served a Rule 11 motion on his former counsel (Dkt. 132

---

[1] Nextdoor.com does not seek damages (other than attorneys' fees) in connection with this claim, leaving nothing for the trier of fact to decide.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

(Abhyanker's Second Amended Answer and Counterclaims ("SAAC")) ¶¶ 159-163; Dkt. 141

(Abhyanker's Supplemental Statement of Trademark Use ("Supp. Statement")) Exs. D, E & F)[2],

he abandoned that counterclaim and _stipulated to a judgment decreeing that Nextdoor.com owns_

_and has priority in the NEXTDOOR mark_.  _See_ Dkt. 193 (Partial Final Judgment).  That partial

final judgment declaring ownership, entered by this Court on May 16, 2014, permanently enjoins

Abhyanker from using the NEXTDOOR mark in connection with online social networking.  Dkt.

193, ¶ 3.  Given the undisputed ownership of Nextdoor.com and use by Abhyanker, there is no

issue left as to his infringement.  The Court can enter judgment in Nextdoor.com's favor.

There is also no dispute of material fact as to Nextdoor.com's Count II, seeking a

declaration that its use of the NEXTDOOR mark does not infringe Abhyanker's purported rights

in the FATDOOR marks.  As explained in Nextdoor.com's motion to dismiss, Count II is already

mooted by Abhyanker's dismissal with prejudice of his counterclaim asserting infringement of

his FATDOOR mark.  But if Nextdoor.com's motion to dismiss is not granted, summary

judgment should be.  The record compels only one outcome—judgment in Nextdoor.com's

favor—since it is undisputed that Abhyanker did not use the FATDOOR marks as a source

identifier before Nextdoor.com began using the NEXTDOOR mark.  To be sure, a prior company

Fatdoor Inc. (which is not a party to this action, and from which Abhyanker was terminated in

2007, referred to herein as "Fatdoor I") did make some use of the mark FATDOOR on its

prototype website in 2007-2008.  But that was not Abhyanker's use.  Further, Abhyanker

admitted that he never used the FATDOOR marks to identify or distinguish any service until at

least February 2012—four months _after_ Nextdoor.com publicly launched and began using the

NEXTDOOR mark to promote its service.  This admission is fatal to his claim:  absent admissible

evidence that _Abhyanker_ began using the FATDOOR marks as a source identifier _before_ October

---

[2] After receiving Abhyanker's Supplemental Statement Regarding His Prior Use And Common
Law Rights In The NEXTDOOR Trademark, (_see_, Dkt. Nos. 141, 153), given the baselessness of
the allegations therein, Nextdoor.com served a Rule 11 motion directed at his allegation that
Exhibit D showed his prior use of the NEXTDOOR mark.  Declaration of Jennifer Kelly ("Kelly
Decl.") ¶¶ 3-4.  In the face of the motion, Abhyanker admitted that his Exhibit D did not show
what he had initially claimed it did, which led to his withdrawal of this claim and the
corresponding judgment in Nextdoor.com's favor. Dkt. Nos. 192 (Stipulation And Order For
Partial Dismissal And Declaratory Judgment) & 193 (Partial Final Judgment).  _See id._

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

2011, he cannot establish priority of use in that mark.  He thus fails to meet an essential element of his claim.   For these reasons, the claims presented in this motion deserve entry of judgment as a matter of law, and Nextdoor.com respectfully requests such an order.

## **FACTUAL BACKGROUND**

### A.    **Nextdoor.com's Adoption Of And Priority In The NEXTDOOR Mark.**

There is no longer any dispute regarding Nextdoor.com's ownership of trademark rights in the NEXTDOOR mark.  Nextdoor.com purchased the www.nextdoor.com domain name on February 4, 2011.  Kelly Decl. ¶ 5 Ex. B (January 14, 2011 email from Nirav Tolia to

████████████████████████████████████████████████████████████

████████████████████████████████████████  A few days later, on February 8, 2011, Nextdoor.com filed its federal trademark application, Serial No. 85/236,918.  *See* Supp. Statement, Dkt. 141, Ex. A (a printout from the United States Patent and Trademark Office website of Nextdoor.com's trademark application for the NEXTDOOR mark).  Around that same time, the Company began using the domain name www.nextdoor.com to operate beta versions of its service, with the public, nationwide launch of the Nextdoor.com service on October 26, 2011.  *See* Supp. Statement, Dkt. 141, Ex. B (press release reporting Nextdoor.com's public launch).  At the time of launch, Nextdoor.com's service was available in 176 neighborhoods across the country and its adoption grew rapidly such that approximately one year later, it was active in nearly 6,000, and is currently available in 35,000 neighborhoods in all 50 states.  Declaration of Prakash Janakiraman, ¶ 3-4.  As a result, Abhyanker admitted that, if Nextdoor.com had priority, its priority date would be *no later* than October 26, 2011.  *See* Abhyanker's Errata to his Supplemental Statement Regarding Trademark Use ("Errata"), Dkt. 153 at ¶ 1 ("Nextdoor.com's earliest priority date will be February 8, 2011, if its federal trademark application registers, or October 26, 2011 when Nextdoor.com publicly launched its website.").

Abhyanker initially claimed that it was he, not Nextdoor.com, that first used the NEXTDOOR mark in commerce, claiming use of the term "nextdoor neighbors" on his edirectree.com website in 2008 or 2009.  *See* Dkt. 141, ¶ 7; Errata, Dkt. 153 ¶ 7; SAAC, Dkt. 132 ¶ 45.  But when faced with the facts and Rule 11 motion (*see n. 2, supra*), he eventually withdrew

Fᴇɴᴡɪᴄᴋ & Wᴇsᴛ LLP
Aᴛᴛᴏʀɴᴇʏs ᴀᴛ Lᴀᴡ
Mᴏᴜɴᴛᴀɪɴ Vɪᴇᴡ

that claim.  He stipulated to Nextdoor.com's ownership and priority, withdrew his claim to the

NEXTDOOR mark with prejudice, and agreed to judgment against him on Nextdoor.com's

corresponding claim for declaratory relief, which was entered by the Court in May, 2014.  Dkt.

Nos. 192 & 193.  That judgment has become final and unappealable under Rule 54(b).

### B.   Abhyanker Used The NEXTDOOR Mark.

There is also no dispute that Abhyanker has used the NEXTDOOR mark.  Approximately

two months after the public launch of Nextdoor.com's service—and nearly a year after

Nextdoor.com's trademark application—Abhyanker applied for a federal registration in the

standard character mark NEXTDOOR in International Class 42 (Application Serial Number

85/504,896).  Abhyanker admitted that at the time he applied to register the mark, he also

registered the domain name www.nextdoor.cm (the ".cm site") and began using the term

"nextdoor" on that and other websites he controlled.  *See* Supp. Statement, Dkt. 141 ¶ 8, Ex. F;

Kelly Decl. ¶ 2, Ex. A, Raj Abhyanker Deposition Transcript ("RA Tx.") at 529:19-24 (admitting

he registered the .cm site after Nextdoor.com's public launch)[3] and 530:11-531:9 (admitting he

used the term "nextdoor" on various websites as a reaction to the launch).  According to

Abhyanker, the .cm site was a social networking site for neighbors.  Dkt. 141 ¶ 8, Ex. F (screen

shot with statement characterizing the offered service as a "private social network for your

neighborhood").  Abhyanker also operated other domains, including www.nextlawn.com and

www.nextyard.com, all of which he admitted redirected to the same website, on which he used

the NEXTDOOR mark.  Abhyanker Tx. at 533:13-534:14; Kelly Decl. ¶¶6-7, Exs. C & D

(printouts of the .cm site dated February 9, 2012 showing Abhyanker's use of the NEXTDOOR

mark); *Id*. at ¶ 8, Ex. E (printout of internet archive record of the www.nextlawn.com site as of

February 16, 2012 showing site being redirected to the same IP address as the .cm site).

Documents submitted to the Court by Abhyanker himself show that he incorporated the term

"nextdoor" and the phrase www.nextdoor.com in various pages of these websites including on the

landing page, Terms of Use, About Us and other sub-pages.  Dkt. 141 ¶ 8, Ex. F; Kelly Decl. ¶ 9,

---

[3] Excerpts to the Deposition of Raj Abhyanker are compiled together as Exhibit A to the
Declaration of Jennifer Kelly.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

Ex. F (webpages had a modified FATDOOR logo using the word "nextdoor" instead of FATDOOR – not true NEXTDOOR logos); *Id.* at ¶ 6, Ex. C (February 2012 screen shot of the .cm site).  These pages pretended to be affiliated with Nextdoor.com.

For example, the "About" section of Abhyanker's websites read "Why don't you give the site a whirl.  www.nextdoor.com."  Kelly Decl. ¶ 9, Ex. F at p. 5; *see also id.* at ¶7, Ex. D ("Terms of Service" page stated "This terms of Use agreement…sets forth the terms and conditions for the use of online marketplace services available at www. Nextdoor.com…The site is owned and operated by Nextdoor, Inc….all content included or available on this site, including site design, text, graphics, interfaces, and the selection and arrangements thereof is ©Nextdoor.com…". ) and ("If you have questions regarding our Privacy Statement, its implementation, failure to adhere to this Privacy Statement and/or our general practices, please contact us by email support@nextdoor.com or send your comments to: Nextdoor, Inc., c/o law firm of Raj Abhyanker P.C.").  The .cm domain URL also displayed the term "nextdoor" as a descriptor of the site in the tab of a web browser.  Dkt. 141, Ex. F; Kelly Decl. ¶ 11-12, Ex. H.

In fact, Abhyanker admitted during his deposition that he himself registered the .cm domain name, and incorporated "nextdoor" into his various websites after Nextdoor.com launched its service.  RA Tx. 529:19-531:9, 532:9-20, 550:19-551:18, and 514:5-24 (admitting he revived sites in February 2012 and used "nextdoor" on them because he was "mad about Nextdoor").  As noted, all the same infringing content appeared on Abhyanker's www.nextyard.com and www.nextlawn.com domain names, which redirected to the same IP address as the www.nextdoor.cm domain.  *See* SAAC, Dkt. 132, ¶¶ 40, 162 (Abhyanker asserting that he used the NEXTDOOR mark on his websites including eDirectree.com, Nextyard.com, Nextlawn.com, Fatdoor.us and EatBid.com).

In addition to his admitted use of the NEXTDOOR mark on his www.nextdoor.cm website, Abhyanker admits that after Nextdoor.com's launch  he incorporated the NEXTDOOR mark into various other of his websites including www.eatbid.com, which Abhyanker has characterized as a "neighborhood commerce website and a social network" that allows users "to connect with like-minded neighbors."  Dkt. 141 ¶ 8 (stating that eatbid.com allows users "to

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

connect with like-minded neighbors"); Kelly Decl. ¶ 10 Ex. G (Abhyanker Response to Interrogatory No. 13 stating "the eatbid.com website was a neighborhood commerce website and social network…") and ¶ 13, Ex. I (RA000125-28) (screenshots of Abhyanker's www.eatbid.com website incorporating the NEXTDOOR mark).

There is thus no dispute that Abhyanker, after the launch of Nextdoor.com, used the NEXTDOOR mark to imitate Nextdoor.com and perform a source-identifying function for services on various websites that purported to be online social networks.  Dkt. 132 at ¶ 162; Kelly Decl. ¶14, Ex. J (Abhyanker's Response to Interrogatory No. 20, stating that the www.fatdoor.us site has been active since February 8, 2012); RA Tx. at 530:11-531:9 (admitting that he began using the NEXTDOOR mark in the registration of the .cm site and on that site after having learned of Nextdoor.com's public launch).

Indeed, Abhyanker's use of the NEXTDOOR mark continued during this litigation, including at and after the time of the issuance of the Court's decree that Nextdoor.com owned the mark.  This post injunction use included use on Abhyanker's www.nextyard, www.nextlawn and www.eatbid sites.  Kelly Decl. ¶18, Ex. M at pp. 4-16 (showing Abhyanker's continued incorporation of the NEXDOOR mark on nextlawn.com and nextyard.com via their redirect to www.eatbid.com as of May 24, 2014).  Only after multiple letters demanding compliance with the Court's injunction to discontinue use of the mark did Abhyanker actually cease his use.  Kelly Decl. ¶ 16-18, Exs. K, L & M (correspondence from counsel for Nextdoor.com repeatedly requesting that Abhyanker comply with the Court's injunction).

**C.      Abhyanker Has No Evidence That He Used The FATDOOR Marks In Commerce Before Nextdoor.com's First Use Of Its NEXTDOOR Mark.**

As explained above, Abhyanker has repeatedly conceded that Nextdoor.com has used the NEXTDOOR mark since at least October 26, 2011.  The evidence confirms that Abhyanker has no claim to any rights in the FATDOOR marks prior to that date.  Rather, as a founder of Fatdoor I, and to secure funding for that venture, he agreed to assign (and did assign) to that company any and all rights in the FATDOOR marks and associated domain names.  *See* SAAC, Dkt. 132 at ¶ 109-115.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1   ███████████████████████████████████████████████████

2   ███████████████████████████████████████████ Kelly Decl. ¶9,

3   Ex. N; RA Tx. at 139-148 (admitting to, authenticating the assignment); *see also* Dkt. 132, Ex. A

4   at ¶ 113.  This assignment covered not only the marks, domain names and website themselves,

5   but also any trademark rights related to these marks, domains and websites.  *Id*.  Thereafter and

6   until April 2008, Fatdoor I allegedly operated or prototyped a social network primarily through

7   the www.fatdoor.com domain.  *See* SAAC Dkt. 132, Ex. A at ¶ 164.  During this period, ████

8   ████████████████████████████████████████████████████ Kelly Decl.

9   ¶ 20, Ex. O.  After his departure, Fatdoor I continued to operate its www.fatdoor.com website and

10  to own the FATDOOR marks.  *See* Dkt. 150-1 at ¶ 5; Dkt. 132, Ex. A at ¶ 164.

11       According to Abhyanker's pleadings, on or about April 14, 2008, Fatdoor I changed its

12  name to Center'd, Corp. and abandoned use of the FATDOOR marks.  *See* SAAC, Dkt. 132, Ex.

13  A at ¶ 164; *see also* Kelly Decl. ¶ 21 Ex. P at pp. 5-6 (Abhyanker response to RFA No. 5

14  acknowledging that Fatdoor I abandoned trademark); *Id*. ¶ 24, Ex. S (November 10, 2008 "Notice

15  of Abandonment' from the USPTO for Fatdoor, Inc.'s application to register the FATDOOR

16  mark).  Abhyanker alleges, without evidentiary support, that he then began using the FATDOOR

17  marks on April 15, 2008.  RA Tx. at 193; *See also*, Kelly Decl. ¶ 21 Ex. P at pp. 5-6 (Abhyanker

18  response to RFA No. 5 claiming use of FATDOOR beginning in April 2008).  But there is no

19  supporting evidence.

20       Abhyanker was unable to produce a single document showing such use, despite multiple

21  Court orders requiring him to produce all such evidence, and having attested that all relevant

22  evidence had been produced.  *See* Dkt. 155-30 (Abhyanker's Statement Regarding Document

23  Collection); RA Tx. at 330-331; 539-543.[4]  Further, Abhyanker admitted in his discovery

24  responses that whatever (undocumented, unidentified) use of the FATDOOR marks he claims to

25  have been making in April 2008 ceased in 2009.  *See* Abhyanker's Responses to Nextdoor.com's

26  Requests for Admission Nos. 24-26, 31-33 and 43-45, Kelly Decl. ¶ 21, Ex. P (conceding that he

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

---

[4] Nor was he able to even describe such use in his deposition; to the contrary, the only use he could describe was that commencing in 2012. *See* RA Tx. at 537-539.

did not use the FATDOOR marks in 2010 or 2011). Thus, Abhyanker does not even claim to have made use of the FATDOOR marks after he allegedly "ceased" using them in 2009 until after Nextdoor.com's public launch in October 2011. *Id.* It was four months later, in February 2012–in an effort to obstruct Nextdoor.com's successful launch–that he registered the domain www.fatdoor.us and later applied for his own trademark registration in the FATDOOR marks that Fatdoor I had owned but let lapse. Kelly Decl. ¶ 23, Ex. R (February 8, 2012 WHOIS registration record for the www.fatdoor.us domain name acquisition); Ex. S (November 10, 2008 "Notice of Abandonment'); SAAC, Dkt. 132 ¶¶ 165 and 168 (Abhyanker allegations that he filed an application for the FATDOOR trademark in 2013).

Abhyanker's claim to trademark use of the FATDOOR name from 2008 to 2009 seems to be based on his registration during that period of the domain at wwww.fatdoor.us. Abhyanker had registered that domain in 2007 (Kelly Decl. ¶22, Ex. Q; RA Tx. at 534 (admitting he registered www.fatdoor.us "in his own name")), while Fatdoor I was operating www.fatdoor.com, but for whatever reason, failed to convey the .us domain to Fatdoor I. Yet he admits facts showing he made no trademark use of the FATDOOR mark as an identification of himself as a source of goods on www.fatdoor.us. Prior to April 2008, the domain www.fatdoor.us had, if visited, redirected users to Fatdoor I's www.fatdoor.com website—a website that provided services of Fatdoor I, not Abhyanker. RA Tx. at 187-188. After www.fatdoor.com shut down in April 2008, Abhyanker admits that the www.fatdoor.us website was not functional and thus offered no service at any time prior to Nextdoor.com's public launch in October 2011. RA Tx. at 187-188, 193 (describing how fatdoor.us redirected to centerd.com and then later to edirectree.com, and sometime later he put his own code on the website but does not recall when); *Id.* at 534-543 (admitting that fatdoor.us expired in 2009 and that he was not offering any services on the website at that time, other than redirecting to edirectree.com). At his deposition, Abhyanker admitted he never offered any service through the www.fatdoor.us site prior to 2012. RA Tx. at 536:24-537:2. Though he hoped to find money to fund developing an operating site, he was unsuccessful. *Id.* at. 541-542. He abandoned the nonworking www.fatdoor.us site in 2009, allowing registration to lapse, and made no use of it whatsoever in 2010 or 11. RA Tx. at

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

535:15-537:2.  He only resurrected his interest in "Fatdoor" at all in 2012, after Nextdoor.com's 2011 launch.  RA Tx. at 537-539.

Abhyanker claims he included the word "Fatdoor" on his eDirectree website at www.edirectree.com, allegedly in 2008-9, but this use did not constitute use as a trademark.  *See* RA Tx. at 542:6-543:13 (describing that there were various 'tags' including a "fatdoor" tag that users could use to identify individuals in photos).  eDirectree.com was an unsuccessful effort by Abhyanker to construct a site allowing users to "build your own wiki groups" or directories of social contacts, and the visual record reflects that the word "fatdoor" appeared on the site as one of the many "tags" for flagging group photos on that website.  Kelly Decl. ¶ 25-27, Exs. T, U & V.  The "fatdoor" tag was intended to identify and group people formerly affiliated with the old (now inoperable) Fatdoor I.  RA Tx. at 542-543.  As visible on the website, other tags include "lawyers," "Family," "team," "stanford," "Obama," and dozens of other terms—each describing some informational attribute useful to group contacts.  *Id.* at ¶ 27, Ex. V; RA Tx. at 541-542.  This informational use of "Fatdoor" did not identify Abhyanker as the source of any service.

The name of Abhyanker's website that included Fatdoor among possible tags—and thus the trademark for the services provided on that website—was "eDirectree"—not FATDOOR. Kelly Decl. ¶ 27, Ex. V (printout of the eDirectree site depicting the eDirectree logo).  Abhyanker has provided no evidence that actual or potential consumers perceived a tag using the defunct company name "Fatdoor" on his eDirectree website as a mark or identified Abhyanker as the source of any service.  Abhyanker has provided no evidence of any visitors to his eDirectree website or any sales of his alleged services, or even that a member of the public saw or used the "Fatdoor" category.  In fact, he admits that eDirectree "wasn't doing very well" and, even after he put the site back up on the internet in 2012, he was not sure if it was actually functioning.  RA Tx. at 508:6-510:4.  Abhyanker has also not offered any advertisements, promotions or even correspondence demonstrating an existing FATDOOR-branded service.  Without this basic evidence, there is no material dispute of fact regarding whether Abhyanker used the FATDOOR marks in commerce prior to Nextdoor.com's use of its NEXTDOOR mark.

**D.    Abhyanker's Fabrication Of An Assignment To Himself Did Not Convey To Him Earlier Rights Of Fatdoor, Inc. In The FATDOOR Mark.**

In opposition to Nextdoor.com's prior motion for summary judgment on trade secrets (Dkt. 143), Abhyanker avoided summary judgment by submitting to the Court a fabricated assignment to himself of rights from Fatdoor I dated November 12, 2012, complete with false testimony about its authority. *See* Abhyanker Opposition to Nextdoor.com's Motion for Summary Judgment, Dkt. 150 ¶ 48 and Ex. H (document Abhyanker claims is an assignment agreement). That document, executed by Abhyanker as "interim CEO" of Center'd, Inc. (the subsequent name of Fatdoor I) purports to convey all residual rights of Center'd/Fatdoor to Abhyanker for $1. The facts obtained in discovery establish that this document did not and could not have conveyed to Abhyanker any pre-2012 rights in the mark FATDOOR.

In the first place, at the time of the alleged assignment, Center'd/Fatdoor had no rights left to convey. ███████████████████████████████████████████████████████████████ █████████████████████████████████████████████ Declaration of Jennifer Dulski ("Dulski Decl.") ¶ 7 & Ex. C (████████████████████████ The purported self-assignment thus could not have conveyed anything to Abhyanker.[5]

Moreover, additional evidence obtained in discovery reveals that Abhyanker indisputably did *not* have authority to act as "interim CEO"—and that his prior statements that he did and was authorized to execute the assignment on Center'd's behalf were false. As Abhyanker previously told the story, he solicited the representatives of Center'd for approval to act as interim CEO and was told "you've got my vote" by Jeff Drazen. *See* Abhyanker's Declaration in Support of his Opposition to Nextdoor.com's Motion for Summary Judgment, Dkt. 150-1 ¶ 44-48, Exs. G, H. He claims that Center'd's counsel then confirmed to him that this was sufficient to appoint him

---

[5] In addition, given Abhyanker's assertion that Center'd/Fatdoor, Inc. abandoned the FATDOOR trademark in April, 2008, it had could have had no rights to convey to him in December, 2012. Indeed, even non-use for 3 years creates a presumption of abandonment, and here, more than four and a half years had expired. 15 U.S.C. § 1127 ("Nonuse for 3 consecutive years shall be prima facie evidence of abandonment"); *Sutton v. Williamsburg Winery, Ltd.*, Case No. 2:12-CV-00333-GEB, 2013 WL 5348127 (E.D. Cal. Sept. 23, 2013) (a showing of three years of non-use "creates a rebuttable presumption [of abandonment] without intent to resume or continue use.").

Fenwick & West LLP
Attorneys at Law
Mountain View

NEXTDOOR.COM'S MSJ ON COUNTS II
AND IV OF ITS COMPLAINT

10

CASE NO. 3:12-cv-05667-EMC-NMC

1   interim CEO, and he then entered into the self-assignment for $1.  *Id.* at ¶ 46.

2       Documents obtained from third parties and testimony from Center'd's Board reveal the

3   utter falsity of this story.  █████████████████████████████████████████

4   ████████████████████████████████████████████████████████  Dulski

5   Decl. ¶ 6-7; Declaration of William H. Harris, Jr. ¶ 6.  █████████████████████

6   █████████████████████████████████████████████

7   █████████████████████████████████

8   ████████████████████████████████████████████████

9   ████████████████████████████████████████████████

10  ████████████████████████████████████████████████

11  ████████████████████████████████████████████████

12

13  Kelly Decl. 28 ¶  Ex. W.  Abhyanker never thereafter received the authority he himself

14  acknowledged he needed to act on behalf of Center'd.  RA Tx. at 216:5-221:10.  He nonetheless

15  signed the assignment on its behalf and dated it November 12, 2012.  Dkt. 150-1 Ex. H.  Further,

16  ████████████████████████████████████████████████

17  ████████████████████████████████████████████████████████

18  ████████████████████████████████████████████████  Kelly

19  Decl. ¶ 29, Ex. X (May 27, 2014 Deposition Testimony of Daniel Hansen at 133-140); *id.* at ¶ 30,

20  Ex. Y.

21  ████████████████████████████████████████████████

22  ██████████████████████████████████  (Harris Decl. ¶ 8),  ████████████

23  ████████████████  in all events, the email Abhyanker submitted to this Court as a "true and

24  accurate" copy of his exchange with Drazan was not:  it was a carefully truncated document that

25  Abhyanker admitted at deposition he had edited before submission to the Court with this

26  summary judgment opposition.  Compare Dkt. 150-1 p. 61 of 155 (Abhyanker submission) with

27  Kelly Decl. ¶ 30-31, Exs. Y & Z. █████████████████████████████████████

28  ████████████████████████████████████████  *Id.* at ¶ 31, Ex. Z.  ██████

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW



3        (*id.*),                                                         Id. at ¶ 30,

4   Ex. Y),

6        But there is more.  Additional documents obtained from third parties reflect that

10       . Kelly ¶ 32, Ex.

11   AA (

14       *Id.* at ¶ 33, Ex. BB (

15       RA Tx. at 224:13-226:12.  As

16       . Harris Decl. ¶ 6; Dulski

17   Decl. ¶ 6-7.  But this did not prevent Abhyanker from fabricating one, complete with a Center'd

18   Logo, and supplying it to the Court as "true and correct."  Dkt. 150-1 ¶ 48, Exh. 8. [6]

19                 **<u>ARGUMENT</u>**

20   **I.**     **SUMMARY JUDGMENT STANDARD**

21        The purpose of summary judgment is to avoid a trial where there is no genuine factual

22   issue and the moving party is entitled to judgment as a matter of law.  *Bloom v. General Truck*

---

[6] It is not known whether the fabricated self-assignment was actually created in 2012 or, more likely, later— for example, after Abhyanker's contact with Center'd's Board in 2013 or at the time Abhyanker prepared his summary judgment opposition in 2014.  A digital version with metadata was never produced by Abhyanker, and his computers have not been made available for inspection.  It is clear, however, that the purported 2012 self-assignment assignment was *not* produced in discovery, nor were the emails (including the full version of the Drazan exchange), at the time that Abhyanker swore, under oath, that he had produced all documents relevant to the trademark claims in December, 2013.  Dkt. 155, Kelly Decl. thereto at ¶ 41, Ex. Y (attesting that all such documents were produced).

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

*Drivers, Office, Food & Warehouse Union*, 783 F.2d 1356, 1358 (9th Cir.1986).  The familiar

standard is stated in Rule 56: "The court shall grant summary judgment if the movant shows that

there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law."  Fed. R. Civ. P. 56(a).

Although the moving party bears the initial burden of showing there is no material factual

dispute, once that party meets its burden of identifying the portions of materials on file which it

believes demonstrate the absence of any genuine issue of material fact, the nonmoving party may

not rely on mere allegations in the pleadings in order to preclude summary judgment, but must

instead set forth specific facts, supported by affidavit or as otherwise provided in Rule 56.  *T.W.*

*Electrical Service, Inc. v. Pacific Electrical Contractors Assn.*, 809 F.2d 626, 630 (9th Cir. 1987)

citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *see also, F.T.C. v. Stefanchik*, 559 F.3d

924, 929 (9th Cir. 2009) ("to avoid summary judgment, a non-movant must show a genuine issue

of material fact by presenting *affirmative evidence* from which a jury could find in his favor.")

(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)) (emphasis in original).

While the element of likelihood of confusion is often considered to be factual, summary

judgment on that question is appropriate where, as here, the evidence is "clear and tilts heavily in

favor of a likelihood of confusion."  *Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*, 457 F.3d

1062, 1075 (9th Cir. 2006) ("in cases where the evidence is clear and tilts heavily in favor of a

likelihood of confusion, we have not hesitated to affirm summary judgment on this point. . . As

part of our de novo review, we conclude as a matter of law that likelihood of confusion is clear

cut here and that [defendants] have made out a prima facie case of infringement") (citing, *Nissan*

*Motor Co. v. Nissan Computer Corp.*, 378 F.3d 1002, 1019 (9th Cir. 2004) (affirming summary

judgment where the marks ("Nissan Motor" and "Nissan Computer") were "legally identical," the

goods at issue (plaintiff sold cars, defendant offered links to automobile-related websites) were

related, and the marketing channels overlapped)).  Even more so where, as here, likelihood of

confusion is admitted based on an alleged infringer's own counterclaims.

Under these standards, summary judgment in Nextdoor.com's favor on Counts II and IV

of its Complaint is plainly appropriate.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1

2

## II.   ABHYANKER'S USE OF PLAINTIFF'S NEXTDOOR MARK CONSTITUTES TRADEMARK INFRINGEMENT

3

4

Section 43(a) of the Lanham Act prohibits use in commerce of any word, name, symbol or

device, or any combination thereof, where such use is likely to cause confusion, or to cause

5

mistake, or to deceive as to the affiliation, connection or association of such person with another

6

person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial

7

activities by another person.  15 U.S.C. § 1125(a)(1)(A).  Thus, proof of trademark infringement

8

under this section requires (a) ownership of a valid trademark and (b) likelihood of confusion due

9

to the defendant's use of that mark in commerce.  *Brookfield Comm. Inc. v. West Coast*

10

*Entertainment Corp.*, 174 F.3d 1036, 1054 (9th Cir. 1999) (citing *AMF, Inc. v. Sleekcraft Boats*,

11

599 F.2d 341, 348–49 (9th Cir.1979)).

12

### A.   There Is No Question Of Fact As To Ownership, Validity Or Priority

13

This Court's partial judgment has already determined the element of ownership of the

14

NEXTDOOR mark.  "Plaintiff Nextdoor.com Inc, owns trademark rights in and has priority of

15

use of the NEXTDOOR in the field of online social networking."  Dkt. 192; Dkt. 193; *see also*

16

Dkt. 188 (stipulation dismissing with prejudice Abhyanker's claim that he owned and has priority

17

of use in the mark NEXTDOOR for uses including in online social networking.).  Abhyanker

18

cannot now reverse course and dispute this issue.  *Intermedics, Inc. v. Ventritex, Inc.*, 775 F.

19

Supp. 1258, 1262-63 (N.D. Cal. 1991) ("voluntary dismissal, with prejudice, entered by

20

stipulation of the parties, is considered a final judgment on the merits for purposes of res

21

judicata") *citing Eichman v. Fotomat Corp.*, 759 F.2d 1434, 1438-39 (9th Cir.1985); *San Remo*

22

*Hotel, L.P. v. City & Cnty. of San Francisco*, 545 U.S. 323, 336 n.16 (2005) (issues previously

23

adjudicated may not be further litigated).  Thus, it has already been established that Nextdoor.com

24

owns valid trademark rights in, and has priority of use of the NEXTDOOR mark in the field of

25

online social networking.

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

Fenwick & West LLP
Attorneys at Law
Mountain View

**B.    Abhyanker's Own Pleadings And Admissions As Well As The Undisputed Facts Conclusively Demonstrate Likelihood Of Confusion. [7]**

The Ninth Circuit considers eight factors for evaluating likelihood of confusion, including strength of the mark; similarity of the marks; relatedness of the goods; marketing channels; type of goods and purchaser's likely degree of care; evidence of actual confusion; likelihood of expansion of the product lines; and defendant's intent in selecting the mark. *AMF Inc.*, 599 F.2d at 348.[8]  These factors are "pliant" with some having more weight than others though similarity of the marks and whether the two companies are competitors are "always important." *Brookfield Comm. Inc.*, 174 F.3d at 1054.  The factors are intended to guide the Court in assessing the basic question of likelihood of confusion, but the presence or absence of a particular factor does not necessarily drive the determination. *E. & J. Gallo Winery, v. Gallo Cattle Co.*, 967 F.2d 1280 (9th Cir. 1992).

Here, the record overwhelmingly supports a finding that Abhyanker's use of the NEXTDOOR mark created a likelihood of confusion.  Indeed his adoption of an identical mark with knowledge of Nextdoor.com's prior use of it (RA Tx. at 530-530), warrants a presumption of confusion.  And if that were not enough, the fact that the marks were identical and both used for social networking over the internet makes confusion inevitable.  Abhyanker's admission that the parties' competing uses of the mark was not only likely to confuse, but actually did confuse, should end the inquiry.  The Court easily can find likelihood of confusion on this record.

---

[7] It is unclear why, at this late stage in the case, Abhyanker refuses to stipulate to judgment on this claim.  Abhyanker has repeatedly represented to the Court that he does not believe Count IV remains disputed in this matter.  *See, e.g.*, Dkt. 235 ("Nonetheless, given these changes in the case, the scope of issues in dispute has been narrowed to Nextdoor.com's claims for cyberpiracy (Count III) and a declaratory judgment holding the term "Nextdoor" does not infringe Mr. Abhyanker's rights in "Fatdoor" (Count II)."); Dkt. 265 (stating that the claims at issue are limited to Nextdoor.com's  affirmative claims for declaratory judgment and cyberpiracy"); Dkt. 266 (same); Dkt. 277 ("Mr. Abhyanker is at a loss to discern how this MAC address could lend any part in revealing the bad faith alleged of him when registering a domain name, or whether there is likelihood of confusion between Fatdoor and Nextdoor."); Dkt. 281 (again stating that the claims at issue are limited to "Nextdoor.com's claims for declaratory judgment or cyberpiracy.")

[8] The legal standards for claims under 15.U.S.C.A. § 1125(A) and U.S.C.A. § 1114 are largely identical, and the *Sleekcraft* factors are applicable equally to both. *See Brookfield Comm. Inc.*, 174 F.3d at 1036 n.8.

### 1.  Abhyanker's Intent Is Conclusive As To Likelihood Of Confusion

"In the Ninth Circuit, a defendant's knowing adoption of a mark similar to the plaintiff's raises a presumption of confusion."  *Sega Enterprises. Ltd. v. MAPHIA*, 948 F. Supp. 923, 937 (N.D. Cal. 1996) *citing Harley-Davidson, Inc. v. Seghieri*, 1993 WL 645930 (N.D.Cal. 1993); *AMF Inc.*, 599 F.2d at 348  ("When the alleged infringer knowingly adopts a mark similar to another's, reviewing courts presume that the defendant can accomplish his purpose: that is, that the public will be deceived."); *accord Mobile Oil Corp. v. Pegasus Petroleum Corp*., 818 F.2d 254, 258 (2d Cir. 1987) ("Intentional copying gives rise to a presumption of a likelihood of confusion.").  Even more, pretending to be the source of a good or service amounts to express false designation of origin in violation of the Lanham Act.  *Smith v. Montoro*, 648 F.2d 602, 606-07 (9th Cir. 1981).  In the Internet context, courts have found that the intentional registration of a domain name knowing it incorporates another company's mark weighs in favor of likelihood of confusion.  *E.g., Washington Speakers Bureau, Inc. v. Leading Authorities, Inc.*, 33 F.Supp.2d 488, 500 (E.D. Va. 1999).

The Court can so find here.  Abhyanker admitted he purchased the nextdoor.cm domain name and began using the NEXTDOOR mark both in the domain and on that site (and the other domains that were integrated with that site) *with full knowledge of Nextdoor.com's prior use of the NEXTDOOR mark*.  RA Tx. at 529:19-531:9 (admitting that he did it because he was "upset" about Nextdoor.com's successful launch).  Abhyanker's uses of the mark were not merely nominal, but included repeated assertions that his site was in fact Nextdoor.com.  Kelly Decl. ¶¶ 6, 7 & 9, Exs. C, D & F (Abhyanker's various websites incorporating references to "Nextdoor" and "Nextdoor.com").  Thus, there is no dispute that Abhyanker intentionally appropriated his competitor's mark, warranting a presumption that consumers were confused.   Under the case law cited above, this *alone* is enough to support a finding of likelihood of confusion, without looking any further.

### 2.  Actual Confusion

Actual confusion is persuasive, but it is "not necessary to finding a likelihood of confusion under the Lanham Act."  *Sega Enterprises Ltd.*, 948 F.Supp. 923, at 937-38 *citing New West*

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

*Corp. v. NYM Co. of Cal., Inc.*, 595 F.2d 1194 (9th Cir. 1979).  Here, Abhyanker has admitted that there is actual confusion between the parties' use of the NEXTDOOR mark.  Dkt. 193 ¶1; SAAC, Dkt. 132 at ¶ 177 ("There has been and continues to be actual confusion between Nextdoor.com's use of the NEXTDOOR name and mark with Abhyanker's Nextdoor concept and mark").  Based on Abhyanker's own affirmative claim that there is actual confusion, and accompanying admissions, there can be no question of fact on this point.

### 3.    Abhyanker's Use Is Identical To Nextdoor.com's NEXTDOOR Mark

It is well established that "the greater the similarity between the two marks at issue, the greater the likelihood of confusion."  *Entrepreneur Media, Inc., v. Smith*, 279 F.3d 1135, 1144 (9th Cir. 2002) (*citing GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1205-1206 (9th Cir. 2000)) (describing similarity of the marks as an "important question").  In the context of a domain name, incorporation of the allegedly infringed mark constitutes likelihood of confusion.  *See Brookfield Comm. Inc.*, 174 F.3d at 1036  (plaintiff likely to succeed on the merits with respect to its likelihood of confusion claim where defendant registered and used "moviebuff.com" and plaintiff had trademark rights in the term "Movie Buff"); *Sega Enterprises Ltd.*, 948 F.Supp. at 937-38 ("no issue as to the similarity of the mark" where defendant incorporated the exact word that comprised plaintiff's mark, defendant used the word "sega," the only word in the SEGA trademark, in the file name).

Here, there is no question that Abhyanker used an *identical* mark (the NEXTDOOR mark in its entirety) on his various websites; he admitted it.  *See, e.g.*, Dkt. 132, Ex. A, ¶ 159-162 (alleging that "Abhyanker used the NEXTDOOR mark on his websites eDirectree.com, Nextyard.com, Nextlawn.com, Fatdoor.us and later EatBid.com…"); RA Tx. at 529:19-531:4, 550:19-551:18 and Kelly Decl. ¶ Exs. C, F, and I (screenshots of Abhyanker's various websites showing, in 2012, his use of the NEXTDOOR mark).  Nor is there any question that the nextdoor.cm domain name incorporates the NEXTDOOR mark in full.  This factor strongly supports a finding of likelihood of confusion, and such identicality between the marks is exactly the scenario in which the Ninth Circuit has affirmed summary judgment.  *Nissan Motor Co.*, 378 F.3d at 1019 (affirming summary judgment where the marks ("Nissan Motor" and "Nissan

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

Computer") were "legally identical," the goods at issue (plaintiff sold cars, defendant offered links to automobile-related websites) were related, and the marketing channels overlapped). Even more so where, as here, likelihood of confusion is admitted based on an alleged infringer's own counterclaims. *World Triathlon Corp. v. Dunbar*, 320 F. App'x 795, 796 (9th Cir. 2009) ("Given [defendant's] counterclaims that his marks were identical to [plaintiff mark holder's], the district court correctly determined that there was no triable issue as to whether customers were likely to be confused about the source of [defendant's] products."); *see also China Intl Travel Servs. (USA), Inc. v. China & Asia Travel Serv., Inc.*, 08-CV-01293 JSW MEJ, 2008 WL 5480840, *6 (N.D. Cal. Dec. 18, 2008) ("In addition to the *Sleekcraft* analysis clearly favoring Counterclaim Plaintiff, Counterclaim Defendant has essentially admitted that a likelihood of confusion between the parties' marks exists by suing Counterclaim Plaintiff for trademark infringement.")

### 4. The Parties' Purported Services Are Virtually Identical

It is common sense, and the law, that where marks are virtually identical, "if they were used with identical products or services likelihood of confusion would follow as a matter of course." *Brookfield Comm. Inc.*, 174 F.3d at 1056 (*citing Lindy Pen Co. v. Bic Pen Corp.*, 796 F.2d 254, 256-57 (9th Cir. 1986)) (reversing a district court's finding of no likelihood of confusion where marks were virtually identical and were offered in the same marketing channels even though remaining likelihood of confusion factors all weighed against a finding of likelihood of confusion); *Park 'n Fly, Inc. v. Dollar Park and Fly, Inc.*, 782 F.2d 1508 (9th Cir. 1986) (where marks are virtually identical, services provided are identical and marketing channels are similar there is a likelihood of confusion even without evidence of actual confusion or an intent to capitalize on the plaintiff's success).

Nextdoor.com is a neighborhood social networking site. *See* SAAC, Dkt. 132 ¶ 98 (calling Nextdoor.com "an online neighborhood social network"). So too were the various sites on which Abhyanker used the NEXTDOOR mark, according to him. *See* Abhyanker's Supplemental Statement, Dkt. 141 ¶ 1, Ex. F (describing his www.nextdoor.cm website as a "private social network for your neighborhood"); RA Tx. 530-534 (testifying that www.nextdoor.cm was just a rebranded version of the Eatbid website, and that nextyard.com and

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

18

nextlawn.com both redirected to the same www.nextdoor.cm IP address).  Indeed it was the supposed similarity of the parties' respective services that supported Abhyanker's assertion that their respective uses of the mark would cause confusion.  Thus, this factor also strongly supports a finding of likelihood of confusion.

### 5.    Both Nextdoor.com And Abhyanker Use The Internet As A Primary Marketing Channel

Convergent marketing channels increase the likelihood of confusion. *AMF Inc.*, 599 F.2d at 353, *citing* J.T. McCarthy, Trademarks and Unfair Competition § 24.6 (1973); *See also Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1393 (9th Cir. 1993) ("Convergent marketing channels increase the likelihood of confusion.").  In the context of the internet, use of the web as a substantial marketing and advertising channel is "consistently recognized as exacerbating the likelihood of confusion." *GoTo.com, Inc.*, 202 F.3d at 1207.  Moreover, this is not merely an amorphous use of internet, but use of the same name to fulfill the same marketing purpose within the internet.  Here, there is no question that Abhyanker has attempted to operate, like Nextdoor.com, an online social network for neighborhoods, using the same as the means of marketing that service. *See* Kelly Decl. ¶ 6, 7 & 9, Exs. C, D & F.

### 6.    The Degree of Care Consumers Are Likely To Exercise

As a general rule, likelihood of confusion is determined on the basis of a "reasonably prudent consumer." *Dreamwerks Prod. Group v. SKG Studio*, 142 F.3d 1127, 1129 (9th Cir. 1998).  This 'reasonably prudent consumer's' behavior will depend on the circumstances, but s/he is expected to be more discerning when purchasing an expensive item, and less discerning (and more easily confused) when dealing with inexpensive products. *E. & J. Gallo Winery*, 967 F.2d at 1290.  More specifically, in the internet context, "entering a web site takes little effort…thus, Web surfers are more likely to be confused as to the ownership of a web site than traditional patrons of a brick-and-mortar store…" *Brookfield Comm. Inc.*, 174 F.3d at 1057.  Both Nextdoor.com's website and the websites Abhyanker operates are internet sites, and both are free of charge. *See* Supp. Statement, Dkt. 141, Exhibit B (describing Nextdoor.com as a "free online platform").  Thus, consumers of the services in question are likely to exercise a low degree of

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

care, and more likely to be confused.  This factor also weighs in favor of likelihood of confusion.

### 7.      Expansion of Product Lines

When there is a strong possibility that either party may expand its business to compete with the other, this factor weighs in favor of finding that use is confusing.  *AMF Inc.*, 599 F.2d at 354.  However, "where two companies are direct competitors, this factor [expansion in product lines] is unimportant."  *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1153 (9th Cir. 2011).  As both the Nextdoor.com service and Abhyanker's purported service are both online social networks, this factor is irrelevant.

### 8.      Strength Of The NEXTDOOR Mark.

Trademarks can be sorted into five categories of increased strength and distinctiveness: (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; or (5) fanciful. *DC Comics v. Towle*, 989 F. Supp. 2d 948, 958 (C.D. Cal. 2013).  The stronger the mark, the greater protection it is afforded.  *Id.* at 958 ("The purpose of examining the strength of the plaintiff's mark is to determine the scope of trademark protection to which the mark is entitled…").  *Id.*  Here, the NEXTDOOR mark is at least suggestive, which is a mark that "requires a mental leap from the mark to the product."  *Fin. Exp. LLC v. Nowcom Corp.*, 564 F. Supp. 2d 1160, 1169 (C.D. Cal. 2008) (finding the term "DealTrace" is suggestive because it 'requires a mental leap from the mark to the product.'"), *quoting Brookfield Comm., Inc.,* 174 F.3d at 1058.  That is because the NEXTDOOR mark requires a "mental leap" from the word "nextdoor" to the service that Nextdoor.com provides, an online social network for neighbors.  The word "nextdoor" does nothing to indicate that there is a computer involved or a network of any kind. [9]

---

[9] Abhyanker is hard pressed to deny that the NEXTDOOR mark is not at least suggestive since he has already acknowledged Nextdoor.com's rights in the NEXTDOOR mark.  Dkt. 193.  He cannot now argue the mark is merely descriptive, as that would mean there could be no trademark rights unless and until the mark acquired secondary meaning (*Filipino Yellow Pages, Inc. v. Asian Journal Publications, Inc.*, 198 F.3d 1143, 1151 (9th Cir. 1999) ("A descriptive term can be protected as a valid trademark only with a showing of secondary meaning."))—a proposition completely at odds with his admission that Nextdoor.com's priority date is no later than October 2011, the date of its public launch.

Fenwick & West LLP
Attorneys at Law
Mountain View

**III.   THERE IS NO DISPUTE OF FACT THAT ABHYANKER FAILS TO ESTABLISH PRIORITY IN THE FATDOOR MARK**

If the Court has granted Nextdoor.com's motion to dismiss its declaratory judgment claim respecting the FATDOOR mark, then it need not reach the propriety of summary judgment as to Count II. But if the Court has not granted the motion to dismiss this claim, then the indisputable record that Abhyanker individually does not have priority in any trademark use of FATDOOR, as compared to Nextdoor.com's use of NEXTDOOR, requires summary judgment here. Whatever the likelihood of confusion of these very different marks, that issue does not come into play where Abhyanker cannot establish priority of use.

**A.   To Establish Priority, Abhyanker Must Provide Admissible Evidence Demonstrating that the Relevant Public Associated the FATDOOR Mark with a Functioning Service Personally Offered by Abhyanker**

To establish infringement of the FATDOOR marks by use of the NEXTDOOR mark by Nextdoor.com, Abhyanker must provide evidence that he used the FATDOOR marks in commerce prior to Nextdoor.com's use of the NEXTDOOR mark in 2011. Such evidence of use must meet "[t]he talismanic test [of] whether or not the use was sufficiently public to identify or distinguish the marked goods in an appropriate segment of the public mind as those of the adopter of the mark." *See Brookfield Comm., Inc.*, 174 F.3d at 1052 (internal quotation marks and citations omitted). Moreover, Abhyanker must prove by *admissible* evidence facts sufficient to show that consumers understand that Abhyanker—not a company—is the personal source of the alleged goods or services. *Id.* And of course, he must identify goods or services being so issued by himself, not just a hope to future issuance of goods or services. *See Id.* ("case law which firmly establishes that trademark rights are not conveyed through mere intent to use a mark commercially…, nor through mere preparation to use a term as a trademark…").

Here, Abhyanker cannot establish facts supporting his trademark use of the FATDOOR mark as an identification of himself as the source of any good or service before Nextdoor.com's use of its NEXTDOOR mark began in 2011. Accordingly, if the Court does not grant Nextdoor.com's Motion to Dismiss Count II of its complaint (Dkt. 303), the Court should issue a declaratory judgment that Nextdoor.com's NEXTDOOR mark does not infringe Abhyanker's

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1    alleged FATDOOR marks.  *See F.T.C.*, 559 F.3d at 929.

2        **B.    Abhyanker Has No Admissible Evidence Demonstrating that the Relevant
             Public Associated the FATDOOR Mark with a Functioning Service
3             Personally Offered by Abhyanker**

4        For starters, as noted above, Abhyanker concedes that Nextdoor.com began using its

5    NEXTDOOR mark by October 26, 2011.  *See, e.g.*, Dkt. 153 at ¶ 1; Dkt. 132, Ex. A at ¶ 150

6    (alleging that Nextdoor.com launched its website on October 26, 2011).  Abhyanker also

7    concedes that he did not use the FATDOOR mark in 2010 or 2011.  *See* Kelly Decl. ¶ 21, Ex. P at

8    pp. 11, 13 & 16 (Abhyanker Responses to Nextdoor.com's Requests for Admission Nos. 24-26,

9    31-33 and 43-45).  And during his deposition, Abhyanker conceded that he did not offer any

10   services under the FATDOOR mark before April 15, 2008.  *See* RA Tx. at 193; 536:24-537:5;

11   Dkt. 132, Ex. A at ¶ 164, 167, 170 (alleging use of the FATDOOR mark as of April 15, 2008).

12   This is because before April 2008, it was Fatdoor I, not Abhyanker, that operated a social network

13   at www.fatdoor.com. Although Abhyanker owned the domain www.fatdoor.us, that site merely

14   linked to Fatdoor I's website; his use of the name provided no services.  RA Tx. at pp. 187-188,

15   193 (describing how fatdoor.us redirected to fatdoor.com, then centerd.com, and then to

16   edirectree.com, and sometime later he put his own code on the website but he does not remember

17   when); pp. 534-543 (admitting that the www.fatdoor.us domain expired in 2009 and that he was

18   not offering any services on the website at that time, other than redirecting to edirectree.com).

19   And after April 2008, when Fatdoor, Inc. stopped operating the www.fatdoor.com website,

20   Abhyanker has admitted that he offered no social networking service called FATDOOR through,

21   and in 2009 abandoned, the domain www.fatdoor.us altogether.  RA Tx. 534-543.

22       Given Abhyanker's unambiguous admissions in his own pleadings and responses to

23   requests for admissions, the only theoretical time frame in which Abhyanker could have used the

24   FATDOOR mark before Nextdoor.com's use of its NEXTDOOR mark, is between April 15,

25   2008 and December 31, 2009.[10]  But Abhyanker has provided no evidence that he used

26   ────────────────
     [10] To the extent Abhyanker attempts to claim earlier rights in the FATDOOR marks based on a
27   document he claims to be an assignment agreement executed by himself as "interim CEO" of
     Center'd (*see* Factual Background § D *supra* ) that document cannot, legally, have any effect.
28   Abhyanker has not offered any board resolution or corporate record appointing him as "interim
     CEO," or any by-laws or records suggesting that his purported method for gaining authority was

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

FATDOOR *as a mark* during this period.  He offered no information regarding sales or users of his alleged services under the FATDOOR mark.  *See 555-1212.com, Inc. v. Commc'n House Int'l, Inc.*, 157 F. Supp. 2d 1084, 1092 (N.D. Cal. 2001) (finding that mere reservation of a domain name, without use in connection with any commercial enterprise, does not rise to the level of infringement, i.e., fails to trigger any trademark implications, either as the mark holder or the alleged infringer).  He has not offered any ads, promotional items or even correspondence demonstrating an existing FATDOOR-specific service during this period.  Nor has he offered any survey of alleged or potential users regarding whether they perceived any  alleged use he did make of the word "Fatdoor" as identifying his services and indicating their source.  *See* Trademark Manual of Examining Procedure (TMEP) § 1301.04 citing *In re Universal Oil Products Co.*, 476 F.2d 653, 177 USPQ 456 (C.C.P.A. 1973) (term that identified only a process not registrable as service mark, though applicant provided services and the name of the process appeared in the brochure the services were advertised).  The reason: Abhyanker admitted at his deposition that he could not raise funds to operate the Fatdoor business after Fatdoor, Inc. abandoned it, and he never got any product or service operational.  RA Tx. at pp. 541-542.

Instead of offering any competent evidence of a service branded "FATDOOR", Abhyanker can at most point to his eDirectree website and his listing of the word "Fatdoor" on that site as one "tag" among many others that one could use to identify particular users.  *See* RA Tx. at 542:6-543:13); Kelly Decl. ¶  25-27 Exs. T, U & V (screenshots of the eDirectree site). But this alleged use does not identify any service offered in connection with the word Fatdoor. Rather, Abhyanker's "Fatdoor" category name appears to operate as an informational reference to his former employer, Fatdoor, Inc.—a company owned and operated by others—not any service offered by Abhyanker himself.  Indeed, his "use" of Fatdoor is listed amongst references to

---

sufficient.  *See, e.g.*, 8 Del. C. § 142 (requiring appointment of officers to be in compliance with a company's by-laws).  Nor does Abhyanker provide documents showing approval of an obviously self-dealing transaction, in which Abhyanker himself signed a purported assignment of any remaining assets of Center'd to himself for only one dollar.  *See* Dkt. 150-1, Ex. H (Abhyanker Decl. ISO his Opp. to Nextdoor.com's Trade Secret MSJ); *see, e.g.*, 8 Del. C. § 144 (any possible self-dealing requires disclosure of financial interest to the board or the stockholders, and requires approval by majority vote of the stockholders, disinterested board members, or committee).

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

ordinary terms or names owned by or associated with others:  "Arizona", "stanford", "web", "president."  Kelly Decl. ¶ 26, Ex.  U.  Abhyanker does not claim any rights to these terms, because just as with his use of "Fatdoor," as a tag or organizational category, none of them is used as a mark to identify his services.  *See* RA Tx. at 544:9-19; Kelly Decl. ¶ 25-27, Exs. T, U & V.  There is nothing that distinguishes the "Fatdoor" tag from these other terms.  Nor is there anything to suggest that the use of "Fatdoor" on a site branded  "eDirectree" functions as a mark, let alone a mark for a service that allows neighbors to connect with each other.  *See, e.g.*, *In re A La Vieille Russie, Inc.*, 60 USPQ2d 1895 (TTAB 2001) (RUSSIANART was informational rather than a service mark for art dealer services, where displayed inconspicuously in specimen in the same size and font as other informational matter).

Merely adding words to webpage does not constitute trademark use.  And this is all the more true where there is no evidence of any actual use or sales under the asserted mark.  *See* RA Tx. at 508:6-510:4 (Abhyanker could not identify any users of the Fatdoor category, and acknowledged the site did not do well); *Guichard v. Universal City Studios, LLLP*, No. C 06-6392 JSW, 2007 WL 1750216, at *2 (N.D. Cal. June 15, 2007), *aff'd*, 261 Fed.Appx. 15 (9th Cir. 2007) (use of name on website having multiple recorded visits was not "use in commerce," as there was "no showing that Plaintiff has used his mark in the actual sale or advertising of services in commerce").  To function as a service mark, the asserted mark must be "used in public in a manner that creates an association among consumers between the mark and the mark's owner."  *Brookfield Comm., Inc.*, 174 F.3d at 1051.[11]  There is no material dispute of fact here, where Abhyanker has no evidence supporting a finding that his use of the Fatdoor tag creates an association among consumers between FATDOOR and Abhyanker personally.  Instead, all he has are informational words on a webpage.  That is not nearly enough to survive summary judgment.

---

[11] *See also*, *In re McDonald's Corp.*, 229 USPQ 555 (TTAB 1985) (APPLE PIE TREE did not function as mark for restaurant services, where the specimen showed use only to identify one character in a procession of characters, and the proposed mark was no more prominent than anything else on specimen); *In re Editel Productions, Inc.*, 189 USPQ 111 (TTAB 1975) (MINI-MOBILE identifies only a vehicle used in rendering services and does not serve to identify the production of television videotapes for others).

## CONCLUSION

Assessing the totality of the facts in the record, it is clear that Abhyanker's use of the NEXTDOOR mark is likely to cause confusion.  Nextdoor.com thus requests that the Court enter summary judgment in its favor on Count IV.

In addition, without use in commerce as a source identifier, Abhyanker cannot have priority in the FATDOOR marks, and thus, Nextdoor.com cannot infringe them.  Accordingly, Nextdoor.com respectfully requests that the Court  grant summary judgment in its favor on Count II and issue a declaratory judgment that Nextdoor.com does not infringe Abhyanker's alleged FATDOOR marks.


Dated:   September 11, 2014                    FENWICK & WEST LLP


                                              By: _/s/ Laurence F. Pulgram_____
                                                    Laurence F. Pulgram

                                              Attorneys for Plaintiff
                                              NEXTDOOR.COM, INC.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW