# EXHIBIT X

```
             UNITED STATES DISTRICT COURT

           NORTHERN DISTRICT OF CALIFORNIA

               SAN FRANCISCO DIVISION


NEXTDOOR.COM, INC., a Delaware
corporation,

          Plaintiff,

          vs.                    No. 3:12-cv-05667-EMC

RAJ ABHYANKER, an individual,

          Defendant.
_____ /

AND RELATED COUNTERCLAIM
_____ /




          VIDEOTAPED DEPOSITION OF DANIEL HANSEN

                   MAY 27, 2014

                   10:09 A.M.


          555 California Street, 12th Floor

              San Francisco, California




REPORTED BY:

Mark W. Banta

CSR No. 6034, CRR
```

1

```
 1                    A P P E A R A N C E S

 2    For the Plaintiff:
          FENWICK & WEST, LLP
 3        555 California Street, 12th Floor
          San Francisco, California  94105
 4        415.875.2300
          BY JENNIFER LLOYD KELLY
 5        BY LAURENCE PULGRAM (as indicated)
          jkelly@fenwick.com
 6        lpulgram@fenwick.com

 7


 8
      For Defendant and Counterclaimant Raj Abhyanker:
 9        LEGALFORCE RAJ ABHYANKER, P.C.
          BY HEATHER NORTON
10        1580 West El Camino Real, Suite 13
          Mountain View, California  94040
11        650.965.8731
          heather@legalforcelaw.com
12


13


14    For Counterdefendants Benchmark Capital Partners, L.P.
      and Benchmark Capital Management Co. LLC:
15        LATHAM & WATKINS LLP
          BY JULIAN W. PARK
16        140 Scott Drive
          Menlo Park, California  94025
17        650.328.4600
          julian.park@lw.com
18

19            - and -

20
          LATHAM & WATKINS
21        BY MELANIE M. BLUNSCHI
          505 Montgomery Street, Suite 2000
22        San Francisco, California  94111-6538
          415.391.0600
23        melanie.blunschi@lw.com

24    /

25    /
```

                                                                    2

```
 1    APPEARANCES (Continued)

 2


 3    For Third-party Witness DANIEL HANSEN:
           ROGERS JOSEPH O'DONNELL
 4         BY MERRI A. BALDWIN
           311 California Street, 10th Floor
 5         San Francisco, California  94104
           415.956.2828
 6         mbaldwin@rjo.com

 7


 8


 9         ALSO PRESENT:  STEVE SPENCER, LVS, Videographer
                          MARCUS MANCUSO, SpiralMoon Media
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

3

1    legal advice.
2        Q.   Okay.  So your understanding is that if there
3    was a client here -- if -- it was Mr. Abhyanker?
4        A.   Again, the -- the term "client" -- it depends
5    on the context on what you mean by the client.
6        Q.   I'm not asking you to agree or disagree that
7    there was an attorney-client relationship.
8        A.   Um-hmm.
9        Q.   I'm asking you to identify the person who might
10   have thought that there was an attorney-client
11   relationship.  The person that was seeking your legal
12   advice.
13       A.   So in connection with these particular e-mails?
14       Q.   Yes.  These series of communications in
15   November 2012.
16       A.   Yes, it would have been Raj Abhyanker.
17       Q.   Okay.
18            (Exhibit 15 marked.)
19   BY MS. KELLY:
20       Q.   Could you take a look at paragraph 46 of the
21   declaration.
22       A.   46.  All right.
23       Q.   Have you seen this document before?
24       A.   This looks to be the declaration that you guys
25   at Fenwick forwarded us.

133

```
 1      Q.   Okay.  Did you read paragraph 46?
 2      A.   Yes, previously I read it.
 3      Q.   Did you in fact have a follow-up telephone
 4   conversation with Mr. Abhyanker?
 5      A.   Not that I recall.
 6      Q.   Okay.  Did you inform him that Mr. Drazan had
 7   the ability to appoint you as interim CEO by himself?
 8      A.   Not that I recall.
 9      Q.   So these statements are not true?
10           MS. BALDWIN:  Objection.  The witness --
11   mischaracterize the witness' -- well, the witness'
12   testimony is what it is.
13           THE WITNESS:  I think I've already answered I
14   don't recall.
15   BY MS. KELLY:
16      Q.   Would you have told him that?
17           MS. BALDWIN:  Objection.  Calls for
18   speculation.
19           THE WITNESS:  You're asking me to speculate
20   would I have told him that?
21   BY MS. KELLY:
22      Q.   Well, based on what you know about how the
23   company operated and what were in its bylaws, and I can
24   put those in front of you, is it your belief that
25   Mr. Drazan could have had the ability to appoint him as
```

134

```
1    interim CEO?
2            MS. BALDWIN:  I'm going to object to the extent
3    you're asking him for his legal conclusion.
4            THE WITNESS:  I don't -- I didn't know the
5    structure of the company at the time, so I don't know how
6    to answer that.
7            MS. KELLY:  So Merri, I think it's pretty clear
8    from what is disclosed in this paragraph that any
9    privilege that did exist in these communications has
10   clearly been waived by Mr. Abhyanker, and he alone had
11   the power to waive it, since he was the purported client.
12   So it's our position that all of these documents that are
13   listed on the log should be produced.
14           MR. NORTON:  I would object that the details of
15   the communications are privileged.  With respect to the
16   details of the communications have been waived, this
17   paragraph here just talks about an outcome or conclusion,
18   it doesn't discuss -- that doesn't reveal any details of
19   the actual communications, the back and forth that took
20   place when he was seeking legal advice from Mr. Hansen.
21           MS. KELLY:  Well, I respectfully disagree.  I
22   think that this is a broad waiver and that it covers all
23   the communications on the subject and that they ought to
24   be produced immediately.
25           MS. BALDWIN:  I don't think that we're in a
```

135

```
 1   position to make a ruling on a waiver issue.  I don't --
 2   we -- Mr. Hansen's a third party, he's not involved in
 3   this case.  I don't have -- all I have is what you've
 4   just given to us here and it's the same thing that you
 5   had sent to us earlier.  This to me does not have enough
 6   facts for me to conclude that a waiver exists.
 7           MS. KELLY:  Well, we've established that the
 8   alleged client, if anybody, was Mr. Abhyanker.  And we've
 9   established not just today -- I gave you this quite some
10   time ago, as you know, and as your client has
11   testified -- that he stated in a declaration filed
12   publicly with the court about the contents of his
13   conversation with Mr. Hansen right there.  So I can't
14   force you to do it, but your client is sitting here and I
15   would like the opportunity to question him about these
16   communications as I've indicated to you in the past.
17           MS. BALDWIN:  I understand.  But I mean let me
18   just clarify with Mr. Abhyanker's counsel who is sitting
19   here who is the holder, represented the holder of the
20   privilege and is really the one to make this
21   determination, not me.
22           Are you instructing Mr. Hansen not to answer
23   communications about the e-mails that are the subject --
24   that are listed on the privilege log and are the subject
25   of this line of questioning?
```

136

1          MR. NORTON:  Yes, it's Mr. Abhyanker position
2   that the details of the communications are privileged.
3          MS. BALDWIN:  I don't see that we have a
4   choice.  We can't make the decision to waive.  You know,
5   you could have included this in your motion to compel
6   that you filed on Friday.
7          MS. KELLY:  This is in our motion to compel.
8          MS. BALDWIN:  Well, then, we go to the second
9   point which is you could have then postponed Mr. Hansen's
10  deposition until resolution of these issues in your
11  motion to compel, but you chose to proceed.  I know you
12  want to question him about it, but you made the choice to
13  proceed today instead of wait a day or two until we got a
14  ruling from Judge Chen.  So we're not in a position
15  pursuant to California Rules of Evidence and
16  attorney-client privilege and the duty of confidentiality
17  to make an independent decision on waiver in the face of
18  an objection by Mr. Abhyanker's counsel that these are
19  privileged.
20         MS. KELLY:  Heather, is it your position that,
21  notwithstanding what Mr. Abhyanker stated in his
22  declaration, that the substance of his conversation with
23  Mr. Hansen on this subject remains privileged?
24         MR. NORTON:  It's his position that the details
25  of his communications are privileged, yes.

137

```
 1              MS. KELLY:  On this particular subject with
 2    Mr. Hansen?
 3              MR. NORTON:  Yes.
 4              MS. KELLY:  Okay.  Obviously, I don't agree,
 5    and we may be back here.
 6              THE WITNESS:  Could we take five?
 7              MS. KELLY:  Yes.
 8              THE VIDEOGRAPHER:  We are going off the record.
 9    The time is 2:35 p.m.
10              (Recess taken from 2:35 to 2:45 p.m.)
11              THE VIDEOGRAPHER:  We are going back on the
12    record.  The time is 2:46 p.m.  Please proceed.
13    BY MS. KELLY:
14       Q.   Okay.  I want to go back to I had asked you a
15    couple of questions about paragraph 46 in Mr. Abhyanker's
16    declaration, and I misspoke in one of my questions, so I
17    want to ask it properly.
18              With respect to the sentence that says "He
19    informed me that Mr. Drazan had the ability to appoint me
20    interim CEO by himself and no further action was
21    required," did you in fact tell Mr. Abhyanker that?
22              MS. BALDWIN:  I'm going to object on the
23    grounds of privilege.
24    BY MS. KELLY:
25       Q.   Are you going to follow your counsel's
```

138

```
 1   instruction?
 2           MS. BALDWIN:  I haven't actually -- I have only
 3   objected.  I haven't made an instruction.  And I'll leave
 4   it to Mr. Abhyanker's counsel to instruct, since he's the
 5   holder of the privilege.
 6           MR. NORTON:  You can answer whether your
 7   recollection comports with the statement in paragraph 46.
 8           THE WITNESS:  Not that I recall.
 9   BY MS. KELLY:
10      Q.   Okay.  In fact, you would not have offered an
11   opinion on that subject because you weren't familiar with
12   the current bylaws of the company.  Is that right?
13           MS. BALDWIN:  Objection.  Calls for
14   speculation.
15           THE WITNESS:  So you're asking me to speculate
16   had I given that information because I'm not familiar
17   with the bylaws of Center'd.  Not because of the bylaws.
18   BY MS. KELLY:
19      Q.   I'm sorry.  I don't understand, not because of
20   the bylaws.  Earlier you had said you didn't know what
21   the current bylaws of the company were; is that correct?
22      A.   I don't recall saying that.
23      Q.   Okay.  Do you know what it would take for
24   somebody to be appointed CEO of Center'd effectively as
25   of 2012?
```

139

1      MS. BALDWIN: You're asking him as he sits here
2  today what his legal conclusion is?
3      THE WITNESS: Are you asking me right now?
4  BY MS. KELLY:
5      Q.  No. I'm asking you in November 2012 would you
6  have known what it would take to appoint somebody CEO of
7  Center'd?
8      A.  I wasn't familiar with the corporate structure
9  of the company at the time.
10     Q.  Okay. So you probably wouldn't have answered a
11 question on that issue, would you?
12     MS. BALDWIN: Objection. Argumentative. Calls
13 for speculation.
14     THE WITNESS: Probably would not have... yeah,
15 I probably would not have.
16     MS. KELLY: Okay. I'd like to have this marked
17 as the next exhibit. What are we on?
18     THE REPORTER: 16.
19     (Exhibit 16 marked.)
20     MS. KELLY: This is the document that was
21 provided to us upon request relating to the index of
22 materials that was transmitted to Goodwin Procter. Would
23 you agree with that, Merri?
24     MS. BALDWIN: It appears to be.
25     MS. PARK: Are they the only copy?

140

```
 1   STATE OF CALIFORNIA

 2   COUNTY OF SAN FRANCISCO

 3

 4          I, MARK W. BANTA, a Certified Shorthand

 5   Reporter, do hereby certify:

 6          That prior to being examined, the witness in

 7   the foregoing proceedings was by me duly affirmed to

 8   testify to the truth, the whole truth, and nothing but

 9   the truth;

10          That said proceedings were taken before me at

11   the time and place therein set forth and were taken down

12   by me in shorthand and thereafter transcribed into

13   typewriting under my direction and supervision;

14           I further certify that I am neither counsel

15   for, nor related to, any party to said proceedings, nor

16   in any way interested in the outcome thereof.

17          In witness whereof, I have hereunto subscribed

18   my name.

19   Dated:  June 5, 2014

20

21

22      _____
23

24   MARK W. BANTA

25   CSR 6034, CRR
```

213