DAVID S. LAVINE, SBN 166744
dave@legalforcelaw.com
NICHOLAS M. GEROVAC, SBN 289910
nick@legalforcelaw.com
LEGALFORCE RAJ ABHYANKER, P.C.
1580 W. El Camino Real, Suite 13
Mountain View, California 94040
Telephone: 650.965.8731
Facsimile: 650.989.2131

Attorneys for Defendant Raj Abhyanker

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| NEXTDOOR.COM., INC., a Delaware corporation,<br><br>        Plaintiff,<br><br>    v.<br><br>RAJ ABHYANKER, an individual,<br><br>        Defendant. | Case No. 3:12-cv-05667-EMC-NMC<br><br>**DEFENDANT RAJ ABHYANKER'S OPPOSITION TO PLAINTIFF NEXTDOOR.COM, INC.'S MOTION FOR SUMMARY JUDGMENT ON NEXTDOOR.COM'S COUNTS II AND IV OF ITS COMPLAINT**<br><br>Date:         October 16, 2014<br>Time:        1:30 p.m.<br>Courtroom:  5 – 17th Floor<br>Judge:      Hon. Edward M. Chen |

# Table of Contents

I      INTRODUCTION …………………………………………….…………. 1

I.     STATEMENT OF PERTINENT FACTS AND PROCEDURAL HISTORY ……..…. 2

       A.   Abyhanker's Invention of and Early Efforts to Develop the Nextdoor
            Concept ……………………………………………………………..... 2

       B.   Nextdoor.com's Adoption of the Unregistered NEXTDOOR
            Mark ……………………………………….................................................. 4

       C.   Abhyanker's Alleged Use of the NEXTDOOR Mark …………………………… 5

       D.   The Court Enters Partial Judgment as to the First Cause of Action ……………. 6

       E.   Expert Testimony Supporting Weakness of the NEXTDOOR Mark …………….. 7

III.   ARGUMENT ………………………………………………………… 9

       A. Legal Standard ……………………………………………………...… 9

       B. Nextdoor.com Has Failed to Establish Infringement of the
          NEXTDOOR Trademark as a Matter of Law …………………………… 10

            1.   Nextdoor.com Has Failed to Establish that the NEXTDOOR
                 Mark Is Presumptively Valid Because the Mark Is Not Registered …………. 11

            2.   The Uncontroverted Evidence Supports That the NEXTDOOR Mark
                 Is a Descriptive Mark, and in any Event Cannot be Found to Be a
                 Distinctive Mark as a Matter of Law ………………………………… 11

                 a.    The NEXTDOOR Mark Is Not a Fanciful or Arbitrary Mark ………….. 13

                 b.    The NEXTDOOR Mark is a Descriptive Mark …………………………..14

            3.   Nextdoor.com Has Failed to Offer Any Evidence that the
                 NEXTDOOR Mark Had Acquired Secondary Meaning by the
                 Time of the Allegedly-Infringing Conduct ……………………………….16

            4.   Assuming the Court Reaches the Likelihood of Confusion Element,
                 There Is a Genuine Issue of Material Fact as to Whether Abhyanker's
                 Use of the NEXTDOOR Mark Was Likely to Cause Confusion …………….. 19

IV.    CONCLUSION …………………………………………………………..21

1

**Table of Authorities**

2

**Cases**

3    *Abercrombie & Fitch Co., v. Hunting World, Inc.,*
4    537 F.2d 4 (2d Cir. 1976) ............................................................................ 13

5    *AMF, Inc. v. Sleekcraft Boats,*
     599 F.2d 341 (9th Cir. 1979) ................................................... 1, 13, 19, 20
6
7    *Anderson v. Liberty Lobby, Inc.,*
     477 U.S. 242 (1986) ............................................................................... 9

8    *Applied Info. Scis. Corp. v. eBay, Inc.,*
9    511 F.3d 966 (9th Cir. 2007) ........................................................ 10, 19

10   *Bada Co. v. Montgomery Ward & Co.,*
     426 F.2d 8 (9th Cir. 1970) ......................................................................... 11
11
12   *Bannf, Ltd. v. Federated Dep't Stores, Inc.,*
     841 F.2d 486 (2d Cir. 1988) ....................................................................... 12
13
14   *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.,*
     174 F.3d 1036 (9th Cir. 1999) ................................................................. 11

15   *Carter-Wallace, Inc. v. Procter & Gamble Co.,*
16   434 F.2d 794 (9th Cir. 1970) ..................................................................... 18

17   *Celotex Corp. v. Catrett,,*
     477 U.S. 317 (1986) ................................................................................... 10
18
19   *CG Roxane LLC v. Fihi Water Co. LLC,*
     569 F. Supp. 2d 1019 (N.D. Cal. 2008) ................................................... 17
20
21   *Comm. for Idaho's High Desert v. Yost,*
     92 F.3d 814 (9th Cir. 1996) ....................................................................... 17

22   *Entrepreneur Media, Inc. v. Smith,*
     279 F.3d 1135 (9th Cir. 2002) ................................................................... 10
23
24   *Filipino Yellow Pages, Inc. v. Asian Journal Pub'ns, Inc.,*
     198 F.3d 1143 (9th Cir. 1999) ................................................................... 14
25
26   *Fontenot v. Upjohn,*
     780 F.2d 1190 (5th Cir. 1986) ................................................................... 10

27

*Fortune Dynamic, Inc. v. Victoria Secret Stores Brand Mgmt.*,
    618 F.3d 1025, 1033 (9th Cir. 2010) ……………………………………………………… 15

*GoTo.com, Inc., v. Walt Disney Co.*,
    202 F.3d 1199 (9th Cir, 2000) …………………………………………………….…... 11

*Houghton v. South*,
    965 F.2d 1532 (9th Cir. 1992) ……………………………………………………… 10

*In re Entenmann's Inc.*,
    928 F.2d 411 (Fed. Cir. 1991) …………………………………………….…… 14

*Interstellar Starship Servs. v. Epix, Inc.*,
    184 F.3d 1107 (9th Cir. 1999) …………………………………………….…… 21

*Japan Telecom, Inc. v. Japan Telecom Am.,Inc.*,
    287 F.3d 866 (9th Cir. 2002) …………………………………………………… 15

*Jockey Club, Inc. v. Jockey Club of Las Vegas, Inc.*,
    595 F.2d 1167 (9th Cir. 1979) …………………………………………….…… 14.

*Kendall-Jackson Winery, Ltd. v. J. Gallo Winery*,
    150 F.3d 1042 (9th Cir. 1998) …………………………………………………… 13.

*KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*,
    408 F.3d 596 (9th Cir. 2005) …………………………………………….…… 10, 11

*Lahoti v. Vericheck, Inc.*,
    586 F.3d 1190 (9th Cir. 2009) ………………………………………….… 12, 13, 15, 16

*Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc.*,
    192 F.3d 337 (2d Cir. 1999) …………………………………………………..… 12

*Levi Strauss & Co. v. Blue Bell, Inc.*,
    778 F.2d 1352 (9th Cir. 1984) ……………………………………………… … 17

*Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*,
    638 F.3d 1137 (9th Cir. 2011) …………………………………………….…… 10

*Pizzeria Uno Corp. v. Temple*,
    747 F.2d 1522 (4th Cir. 1984) …………………………………………….…… 12

*Platinum Home Mortg. Corp. v. Platinum Fin. Group*
149 F.3d 722 (7th Cir. 1998) ……………………………………………………11

*Quiksilver, Inc. v. Kymsta Corp.*,
    466 F.3d 749 (9th Cir. 2006) ……………………………………………………… 11

iii

*Rodeo Collection, Ltd. v. W. Seventh,*
    812 F.2d 1215 (9th Cir. 1987) …………………………………………….. 15

*Sand Hill Advisors, LLC v. Sand Hill Advisors, LLC,*
    680 F. Supp. 2d 1107 (N.D. Cal. 2010) …………………………...…… 12, 16

*Self-Realization Fellowship Church v. Ananda Church of Self-Realization,*
    59 F.3d 902 (9th Cir. 1995) ……………………………………….......… 14, 15
.
*SurfvivorMedia, Inc. v. Survivor Prods.,*
    406 F.3d 625 (9th Cir. 2005) ………………………………………… 12

*Surgicenters of Am., Inc. v. Med. Dental Surgeries, Co.,*
    601 F.2d 1011 (9th Cir. 1979) …………………………………………… 15, 19

*Two Pesos, Inc. v. Taco Cabana, Inc.,*
    505 U.S. 763 (1992) ………………………………………………… 12, 17

*United Steelworkers of Am. v. Phelps Dodge Corp.*
    865 F.2d 1539 (9th Cir. 1989) (en banc) …………………………………...… 9

*Unitek Solvent Servs. v. Chrysler Group LLC,*
    2013 U.S. Dist. LEXIS 141096 (D. Hawaii 2013), aff'd
    2014 U.S. App. LEXIS 11569 (9th Cir. 2014) …………………………….… 14

*Universal Frozen Foods Co. v. Lamb-Weston, Inc.,*
    697 F. Supp. 389 (9th Cir. 1987) …………………………………….... 18

*Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc.,*
    419 F.3d 925 (9th Cir. 2005) …………………………………………… 11, 17

*Zobmondo Entm't, LLC v. Falls Media, LLC,*
    602 F.3d 1108 (9th Cir. 2010) ……………………………………....…… 13

**Statutes**
15 U.S.C. § 1052(f) ……………………………………………………… 18,

**Rules**
Fed. R. Civ. Pro. 56(c) ………………………………………………………… 9

**Other Authorities**
Trademark Manual of Examining Procedure § 1212.5 ……………………… 18

2 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition
    § 11:70 (4th ed. 2010) ("McCarthy on Trademarks") …………………….……… 11, 15

DEFENDANT'S OPPOSITION TO NEXTDOOR.COM'S MOT. FOR SUMMARY JUDGMENT
Case No. 3:12-cv-05667-EMC-NMC

DAVID S. LAVINE, SBN 166744
dave@legalforcelaw.com
NICHOLAS M. GEROVAC, SBN 289910
nick@legalforcelaw.com
LEGALFORCE RAJ ABHYANKER, P.C.
1580 W. El Camino Real, Suite 13
Mountain View, California 94040
Telephone: 650.965.8731
Facsimile: 650.989.2131

Attorneys for Defendant Raj Abhyanker

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| NEXTDOOR.COM, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>RAJ ABHYANKER, an individual,<br><br>Defendant. | Case No. 3:12-cv-05667-EMC-NMC<br><br>**DEFENDANT RAJ ABHYANKER'S OPPOSITION TO PLAINTIFF NEXTDOOR.COM, INC.'S MOTION FOR SUMMARY JUDGMENT ON NEXTDOOR.COM'S COUNTS II AND IV OF ITS COMPLAINT**<br><br>Date:        October 16, 2014<br>Time:        1:30 p.m.<br>Courtroom:  5 – 17th Floor<br>Judge:      Hon. Edward M. Chen |

## I.    INTRODUCTION

Currently pending before the Court is plaintiff Nextdoor.com's Motion for Summary Judgment on Nextdoor.com's fourth cause of action pursuant to Federal Rule of Civil Procedure 56 (the "Motion").  It seeks an order finding that the use by defendant Raj Abhyanker ("Abhyanker") of the NEXTDOOR mark constitutes trademark infringement as a matter of law.  Docket No. 332.[1]  Nextdoor.com's opening papers do not rule out material factual issues concerning both trademark validity and consequent protectability, as well as concerning the likelihood of public confusion it claims was generated by the allegedly-infringing acts of defendant Abhyanker.   As such, this claim should proceed to trial.

Nextdoor.com is so determined to have the Court jump to the conclusion that infringement is pre-ordained based on the procedural history of this case that it skips quickly through and fails to consider the need for a valid, protectable trademark – a necessary predicate of any infringement claim.   Nextdoor.com has not met its burden of demonstrating that its claimed NEXTDOOR trademark is valid and protectable.  Significantly, there exist material disputes of genuine fact as to: (a) whether the NEXTDOOR mark is merely descriptive; and (b) whether the NEXTDOOR mark had achieved secondary meaning by the time of the allegedly-infringing acts.  Indeed, Nextdoor.com has put forward no evidence supporting its bald contention that its mark is suggestive, and thus warrants protection, or that, if merely descriptive, its mark had nevertheless acquired secondary meaning by the time of the allegedly-infringing acts.  The Court thus need not even proceed to consider the likelihood of confusion analysis set forth in *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-349 (9th Cir. 1979).  But assuming *arguendo* that the Court finds as a matter of law that the NEXTDOOR mark is distinctive or that it had acquired secondary meaning

---

[1] The Motion also seeks partial summary judgment on Count II of the Complaint.  However, because the Court granted Nextdoor's motion to dismiss Count II following a September 17, 2014 hearing, there is no further need to take up this claim here.

by the time of the allegedly-infringing acts, there still exists a genuine issue of material fact regarding whether Mr. Abhyanker's alleged uses of the NEXTDOOR mark created a likelihood of confusion pursuant to some of the *Sleekcraft* factors which should prevent summary judgment from issuing here.

## II. STATEMENT OF PERTINENT FACTS AND PROCEDURAL HISTORY

### A. Abhyanker's Invention of and Early Efforts to Develop the Nextdoor Concept

During the 2005 to 2006 timeframe, Abhyanker was surprised by the lack of web-based tools available to aggregate and organize information about next-door neighbors living near each other into social networks. Declaration of Raj Abhyanker ("Abhyanker Decl.") ¶ 4. So, he set about developing the technological tools by which to manage large amounts of user connections, to determine relevancy from large amounts of social network-connected content, to provide real-time updates to users, to create printable walking maps of neighborhoods based on user contributions, to filter relevant feeds across multiple networks and across group interactions, and to annotate information regarding neighbors around a particular focal point. *Id.* The result was a mash-up of maps, and ultimately an entry page for each user-neighbor. *Id.* From this work, Abhyanker hatched the concept of Nextdoor, a neighborhood-based social network geared toward bringing neighbors with like interests, or in need of a product or service offered other neighbors, together for mutual benefit. *Id.*

Abhyanker first began using term "nextdoor" in identifying his neighborhood social network inventions many years before the first adoption of the term "nextdoor" by plaintiff Nextdoor.com, principally through informal use of the term in its commonly-understood sense with staff and in patent applications filed in 2006. *Id.* at ¶ 5. As his ideas started to coalesce, in 2005 and 2006, Abhyanker's assistant and business partner Babar Rana created screenshots and wireframes showing the name "Nextdoor," including two mock-up images with two home addresses – Rana's and his – as focal points. A tag-line message appeared on that mock-up stating "[g]et to know your neighbors." *Id.* at ¶ 6. Over the ensuing months, Abhyanker developed and software code, product concepts, prototypes and other instrumentalities, including

use of the name "nextdoor," in conjunction with his dream of a private social network to bring neighbors closer together and to create stronger neighborhoods. *Id*. at ¶ 7. As part of his efforts, Abhyanker set about transforming the Cupertino, Lorelei (Menlo Park), and other neighborhoods into ideal locations to test a neighborhood-based social network, including manual efforts to establish connections between residents and overcome a lack of interest. *Id.* at ¶ 8. Abhyanker went door-to-door to establish these connections between residents, and engaged in extensive discussions with residents to overcome any initial lack of interest among residents. *Id.*

In September 2006, years before Nextdoor.com came into existence or was even a thought to its 2010 management team, Abhyanker hired Sandeep Sood and his firm to provide software and website development services. *Id.* at ¶ 9. He and his firm agreed to conceptualize, design and build components, including messaging, online identity design, information architecture, and customization of social networking software. *Id.* Abhyanker created a cap table and equity distribution spreadsheet for a company to be called NextDoor, Inc. with Sood in 2006. Sood was to be the CEO of this venture, NextDoor, Inc. *Id.* Together with Sood and engineer Ankur Verma, Abhyanker created the alpha neighborhood-based social networking site displaying the name Nextdoor. The prototype Nextdoor site was developed by Sood with help from Verma. *Id*. at ¶ 10.

Despite his repeated efforts between 2006 and 2010, Abhyanker could not use the domain name Nextdoor.com because he could not purchase the domain from its third-party owner (not Nextdoor.com*). *Id*. at ¶ 11. Abhyanker was, however, successful in purchasing Nextyard.com and Nextlawn.com in 2006, as well as more than a dozen other similarly-sounding domain names, to create and bolster his presence in the neighborhood-based social networking sphere. *Id.*

In September 2007, Abhyanker posted a blog entitled "Creating a Consumer Domain Name," in which the nextdoor concept features as follows: "[w]hen I came up with the name for a start-up that I created last year (Fatdoor, Inc.), at first I wanted to use the name NEXTDOOR. Nextdoor is a nice name because it is descriptive of the geo-spatial social network I wanted to create." *Id.* at ¶ 13.

- 4 -

Also in or around September 2007, a U.S. Patent application Serial 20070218900 was published by the United States Government worldwide through the Patent Gazette on which Abhyanker was the sole inventor. *Id.* at ¶ 14. This application describes Abhyanker's use of the "nextdoor.com" domain within a neighborhood social network. In the background of this published U.S. patent application, Abhyanker refers to the term "next-door" descriptively when he stated "for example, in many American communities, while a few active residents know a lot of their neighbors, there are far more residents who do not even know what professions, interests, and reputations are of their immediate next-door neighbors." *Id.*

In or around September 2007, an international patent application PCT/US2007/005612 on which Abyhanker is also the sole inventor which describes his use of the "nextdoor.com" domain with a neighborhood social network was published. *Id.* at ¶ 15. As was by then his custom, Abhyanker referred to the term "next-door" descriptively in this case as well when he stated "for example, in many American communities, while a few active residents know a lot of their neighbors, there are far more residents who do not even know what professions, interests, and reputations are of their immediate next-door neighbors." *Id.*

In or around November or December 2010, Abhyanker met with Silicon Valley investors to reinvigorate Nextdoor, so as to avoid abandonment of the patents on which he was listed as inventor. *Id.* at ¶16. For similar reasons, on December 28, 2011, Abhyanker filed a trademark application for the NEXTDOOR mark in an effort to protect his rights associated with the Nextdoor name dating back some six years. *Id.* at ¶ 17.

**B.** **Nextdoor.com's Adoption of the Unregistered NEXTDOOR Mark**

By its own admission, Nextdoor.com did not file "its application for the NEXTDOOR Mark [until] February 2011." Compl. ¶ 56. *See also* Mot., at 3:10-13. To date, as Nextdoor concedes, the NEXTDOOR mark has not been registered, as the issue of the registrability of the NEXTDOOR mark is currently pending in "ongoing Opposition proceedings in the TTAB." Compl. ¶ 57.

/////

## C.     Abhyanker's Alleged Use of the NEXTDOOR Mark

In the Motion, Nextdoor.com contends that Mr. Abhyanker "admitted that, if Nextdoor.com had priority [in the NEXTDOOR mark], its priority would be no later than October 26, 2011," Mot., at 3:20-24, which is the date of Nextdoor.com's nationwide launch. *Id.* at 3:13-20. Nextdoor.com further contends that Abhyanker has admitted that he used the NEXTDOOR mark on several occasions after the October 26, 2011 launch date, in the following instances:

a.     Approximately two months after Nextdoor.com's launch when Abhyanker submitted a federal trademark registration application for the mark NEXTDOOR in standard characters (Mot., 4:6-10);

b.     At around the same time when Abhyanker registered the www.nextdoor.cm domain name and began using the term "nextdoor" on other websites that he controlled (Mot., at 4:10-18);

c.     On February 9, 2012 or later, when Abhyanker operated other websites, such as www.nextlawn.com and www.nextyard.com, each of which redirected to a website on which he incorporated the NEXTDOOR mark and the phrase www.nextdoor.com on various pages on the website, including on the landing page, Terms of Use, About Us and other sub-pages (Mot. at 4:18-5:23); and

d.     On some undetermined date after Nextdoor.com's launch, Abhyanker incorporated the NEXTDOOR mark into other websites, such as the www.eatbid.com website. (Mot., at 5:24-6:4).[2]

Abhyanker does not dispute these uses of a Nextdoor name he conceived of, only the legal

---

[2] Nextdoor.com also claims that Abhyanker continued to use the NEXTDOOR mark after the Court issued partial final judgment that Nextdoor.com owned the mark, in that the judgment, *see infra*, applied to Abhyanker's use of the NEXTDOOR mark on www.nextlawn.com, www.nextyard.com, and www.eatbid.com. Mot., at 6:12-20. However, Nextdoor.com also concedes that Abhyanker discontinued his use of these marks on these websites in response to its requests to do so. Mot., at 6:17-20.

significance of having done so, as argued herein.

### D.     The Court Enters Partial Judgment as to the First Cause of Action

Following the filing of its complaint in this case and nearly two years of intensive litigation, Nextdoor.com sought to resolve the first cause of action seeking declaratory relief with respect to ownership and priority of use of the NEXTDOOR mark.  On May 14, 2014, the parties filed an Amended Stipulation for Partial Dismissal and Declaratory Judgment ("Stipulation").  Declaration of Jennifer Kelly ("Kelly Decl."), ¶ 15.  *See also* Dkt. 190 (Stipulation).  On May 16, 2014, the Court entered an Order for Partial Dismissal and Judgment ("Order") and a Partial Final Judgment Pursuant to Fed.R.Civ.P. 54(b) and 58(a) ("Judgment").  Kelly Decl. ¶¶ 15, 16.  *See also* Dkt. 192 (Order and Declaratory Judgment) *and* 193 (Judgment).  The May 16, 2014 Order and Judgment decreed the following:

- "All of Counterclaimant Raj Abhyanker's claims to priority of use and ownership of the NEXTDOOR mark are hereby dismissed with prejudice.**"** Dkt. 192 (Order) ¶ 1.  *See also* Dkt. 193 (Judgment) ¶ 2 (same).

- "Plaintiff Nextdoor.com, Inc. owns trademark rights in and has priority of use of the NEXTDOOR mark in the field of online social networking." Dkt. 192 (Order) ¶ 2. *See also* Dkt. 193 ¶ 1 (same).

- "Nothing herein precludes any party from introducing evidence in support of or opposition to any claim or defense not adjudicated in this Order." Dkt. 192 (Order) ¶ 3.

- "Abhyanker, and each of his agents, servants, and employees, and those persons in active concert or participation with any of them who receive actual notice of this order, shall not use the NEXTDOOR mark, or any colorable imitation thereof or confusingly similar term, in the field of online social networking for so long as Nextdoor.com or its successors has not abandoned the NEXTDOOR mark or ceased use of the mark." Dkt. 192 (Order) ¶ 4. *See also* Dkt. 193 ¶ 3 (same).

- "This order and the Partial Judgment to be entered hereon does not adjudicate the issue of whether Nextdoor.com's use of the NEXTDOOR mark creates a likelihood of confusion as to source with Abhyanker's use of the FATDOOR mark. Nothing in this stipulation and order shall affect or limit Abhyanker's alleged right to use the mark FATDOOR in the field of online social networking, as to which all parties reserve all rights." Dkt. 192 (Order) ¶ 5.

- "The clerk shall enter the attached Partial Judgment pursuant to Rule 54(b), as there is no just reason for delay.  The time for any motion for attorney's fees or costs to be filed

thereon is extended, pursuant to Rule 54(d)(2)(B), through the entry of a final judgment disposing of this entire action." *Id.* ¶ 6.

The Stipulation is clear as to its scope. It is directed to the relief sought by Nextdoor.com in the first cause of action in its Complaint, which seeks "a declaratory judgment that it has established trademark rights, including priority of use, of the NEXTDOOR mark in the field of online social networking." Dkt. 190 (Stipulation) ¶ 3. Nextdoor.com's second, third and fourth causes of action remained "unaffected by and survive this stipulation and order," with the exception of a waiver of recovery of damages and disgorgement of profits as to the fourth cause of action. *Id.* ¶ 3. "Nothing in this Stipulation shall be construed as an admission of liability or wrongdoing of any kind by any of the parties hereto." *Id.* ¶ 4.[3]

As noted above, the second cause of action seeking declaratory relief in the way of protection against future infringement claims against Nextdoor.com by Abhyanker through Fatdoor, Inc. has been voluntarily dismissed by Nextdoor.com. The third cause of action, for cybersquatting by Abhyanker, is not a subject of the Motion – though it is susceptible to the same trademark validity challenge as is the fourth cause of action, as further described below.

### E. Expert Testimony Supporting Weakness of the NEXTDOOR Mark

Abhyanker has retained expert witness Patrick Michael O'Leary to offer an opinion as to "whether the NEXTDOOR trademark is distinctive, as such a finding is a predicate to both infringement and cybersquatting enforcement." Declaration of Patrick Michael O'Leary ("O'Leary Decl.") ¶ 4. In his supporting declaration, O'Leary demonstrates that he has the training and experience to offer an expert opinion on this topic. O'Leary Decl. ¶¶ 2-3.

---

[3] Nextdoor.com contends that thus, it has already been established that Nextdoor.com owns valid trademark rights in . . . the NEXTDOOR mark in the field of online social networking. MSJ 14:12-25. However, the Stipulation, the Order and the Judgment do not address whether the unregistered NEXTDOOR mark is distinctive, valid, or protectable. Rather, their silence on these issues indicates that Abhyanker the ability to challenge validity of the trademark as needed to adjudicate

In particular, O'Leary opines that "[a] trademark is classified along a range or spectrum running from strong marks to weak marks." *Id.* ¶ 5. Consistent with the relevant case law concerning the relative strength of a mark starting from weakest to strongest, he notes that a trademark can be classified as (1) fanciful, (2) arbitrary, (3) suggestive, (4) descriptive, and (5) generic. *Id.* ¶¶ 5-9. Upon due consideration, O'Leary readily concludes that the NEXTDOOR mark is a merely descriptive, *id* at ¶¶ 4, 12, for the following reasons:

First, "[t]he NEXTDOOR name is so commonly used in the common parlance that it is defined by the dictionary as three parts of speech, depending on usage. The public uses this term as an adverb, an adjective, and a noun. Whatever its part-of-speech usage, consumers who use the term "nextdoor" are immediately drawn to the notion of neighborhood, and to structures situated and persons living nearby within it. This is precisely the definitional notion that Nextdoor.com is tapping into when advertising and selling its online service. No imaginative or creative leap is necessary to associate the trademark NEXTDOOR with the notion of bringing neighbors together." *Id.* ¶ 10.

Second, "the term 'nextdoor', in addition to being its own word used in three parts of speech, is a combination of two component words – 'next' and 'door.' Like 'nextdoor', 'next' and 'door' are extremely common, to the point of entering everyday usage. Each component word is itself highly descriptive, and not at all fanciful /arbitrary or even suggestive of anything beyond their normal, everyday meanings." *Id.* ¶ 11.

Third, in considering whether "nextdoor" could be suggestive, O'Leary explains that:

> Suggestive trademarks often contain parts of, or play on, real words – such as Liquid Paper for corrective fluid, or Enchancia for a magical place enjoyed by children in games or on television. From the extensions of real words, or the play on or interplay between words, the consumer's imagination is sparked into an associative jump from the trademark term toward the product or service offered in connection with it. It is this creativity, this imaginative jump from trademark term to product or service offered, that stands as the hallmark of a suggestive mark – and precisely what enables it to gain trademark protection. By contrast, descriptive marks do not spur the consumer's imagination to jump to a far-off place, or to a new commercial notion derived from the playfulness of words comprising the trademark – they simply direct the consumer, in one

> fell swoop, through their dictionary definitions, to the qualities or characteristics of the product or service being offered.
>
> As a term with a fixed meaning in our vernacular, NEXTDOOR does not invite the imagination to leap, but simply takes the mind on a linear course to a characteristic or feature of what it means to be "nextdoor" – that is, interacting with one's neighbors, crossing between one's homes. This is precisely the service offered by Nextdoor.com.

*Id.* ¶¶ 13-14. For these reasons, O'Leary concludes that "the NEXTDOOR trademark is descriptive, not distinctive, and thus cannot form the basis of either an infringement claim or a cybersquatting claim." *Id.* ¶ 14. O'Leary also reviewed the possibility that, though descriptive, the NEXTDOOR mark might have acquired secondary meaning such that it could properly be the basis of an enforcement action. *Id.* at ¶15. But, given the few months Nextdoor.com was in existence at the time of the infringing acts complained of, he concludes that "it was not yet possible for the Nextdoor trademark to have acquired secondary meaning with the public at that early stage of Nextdoor.com's development." *Id.*

The Motion is set for hearing on October 16, 2014. Trial is set for December 8, 2014.

## III. ARGUMENT

### A. <u>Legal Standard</u>

Rule 56(c) of the Federal Rule of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(c). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* The Court may not weigh the evidence. *Id.* at 255. Rather, the nonmoving party's evidence must be believed, and "all justifiable inferences must be drawn in [the nonmovant's] favor." *See United Steelworkers of Am. v. Phelps Dodge Corp.,* 865 F.2d 1539, 1542 (9th Cir. 1989) (en banc), citing *Liberty Lobby,* 477 U.S. at 255.

- 10 -

The moving party bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the pleadings, depositions, interrogatory answers, admissions and affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party "bears the burden of proof at trial, he must come forward with evidence which would entitle him to a directed verdict if the evidence went uncontroverted at trial." *See Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992) (citations omitted); *see also Fontenot v. Upjohn*, 780 F.2d 1190, 1194 (5th Cir. 1986) (when plaintiff moves for summary judgment on an issue upon which he bears the burden of proof, "he must establish beyond peradventure all of the essential elements of the claim . . . to warrant judgment in his favor").

## B.   Nextdoor.com Has Failed to Establish Infringement of the NEXTDOOR Trademark as a Matter of Law

"[S]ummary judgment is generally disfavored in the trademark arena." *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.,* 408 F.3d 596, 602 (9th Cir. 2005), quoting *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1140 (9th Cir. 2002). To prevail on a claim of trademark infringement under the Lanham Act, a party must prove: (1) that it has a protectable ownership interest in the mark; and (2) that the defendant's use of the mark is likely to cause consumer confusion. *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.,* 638 F.3d 1137, 1144 (9th Cir. 2011). It is axiomatic that "***a plaintiff trademark owner must establish a valid, protectable interest in order to proceed to the second prong of the trademark infringement analysis***—the likelihood of confusion resulting from the defendant's alleged infringing use." *Applied Info. Scis. Corp. v. eBay, Inc.,* 511 F.3d 966, 972 (9th Cir. 2007) (emphasis added).

Here, Nextdoor.com has failed to establish as a matter of law that (1) the NEXTDOOR mark is valid and protectable, or that (2) Mr. Abhyanker's use of the NEXTDOOR mark is likely to cause confusion. At a minimum, there exist genuine issues of material fact as to both elements which preclude summary judgment.

1            **1.    Nextdoor.com Has Failed to Establish that the NEXTDOOR Mark Is
                     Presumptively Valid Because the Mark Is Not Registered**

2          To claim trademark infringement, a plaintiff must have a valid, protectable trademark.

3   *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1046 (9th Cir. 1999).  The

4   issue of trademark validity is considered "an intensely factual issue."  *KP Permanent Make-Up,*

5   *Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 605 (9th Cir. 2005).  The plaintiff bears the

6   ultimate burden of proof in a trademark-infringement action that the trademark is valid and

7   protectable.  *Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc.*, 419 F.3d 925, 927-

8   28 (9th Cir. 2005).  The NEXTDOOR mark is and remains unregistered.  There is no dispute as to

9   this fact.  Because Nextdoor.com has not and cannot establish that the NEXTDOOR mark has

10  been registered, it is not entitled to a presumption that the mark is valid and protectable.

11  *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1204 n.3 (9th Cir. 2000).  When a mark "is

12  not registered with the United States Patent and Trademark Office, the burden is on the claimant

13  to establish its entitlement to protection."  *Platinum Home Mortg. Corp. v. Platinum Fin. Group*,

14  149 F.3d 722 (7th Cir. 1998).   As such, at the outset, Nextdoor.com does not obtain the benefit of

15  a presumption of validity, and carries the full, unaided burden of establishing that it has a

16  protectable trademark on which to base its infringement claim.

17           **2.    The Uncontroverted Evidence Supports That the NEXTDOOR Mark
                     Is a Descriptive Mark, and in any Event Cannot be Found to Be a
18                   Distinctive Mark as a Matter of Law**

19         To be valid and protectable, a mark must be distinctive.  Distinctiveness measures the

20  primary significance of the mark to the purchasing public.  *Quiksilver, Inc. v. Kymsta Corp.,* 466

21  F.3d 749, 760 (9th Cir. 2006) (quotations omitted).  In determining distinctiveness, courts are

22  required to consider standards of meaning not of their own, but prevalent among prospective

23  purchasers of the article.  *Bada Co. v. Montgomery Ward & Co.,* 426 F.2d 8, 11 (9th Cir. 1970);

24  *see also* 2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 11:70 (4th

25  ed. 2010) ("*McCarthy on Trademarks*").  The fact-finder is not the designated representative of

26  the purchasing public, and the fact-finder's own perception of the mark is not the object of the

27  inquiry.  Rather, the fact-finder's function is to determine, based on the evidence before it, what

- 12 -

the perception of the purchasing public is. *Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc.,* 192 F.3d 337, 344 (2d Cir. 1999). As demonstrated below, the mark at issue is a descriptive mark; at the very least, there is a genuine issue of material fact as to whether the mark is distinctive or descriptive.

Marks are classified in categories of increasing strength. A mark may be (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; or (5) fanciful. *Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 768 (1992). *See also* O'Leary Decl. ¶¶ 5-9. The latter three categories of marks, because of their intrinsic ability to identify a particular source of a product or service, are deemed inherently distinctive and are therefore entitled to automatic and immediate trademark protection. *Two Pesos,* 505 U.S. at 769. *See* O'Leary Decl. ¶¶ 5-7. At the other end of the spectrum are generic marks, which are never protected. *Two Pesos,* 505 U.S. at 769. *See* O'Leary Decl. ¶ 9. That leaves descriptive marks, which are not considered inherently distinctive because they define a particular characteristic of a product or service in a way that does not require any exercise of the imagination. *SurfvivorMedia, Inc. v. Survivor Prods.,* 406 F.3d 625, 631-32 (9th Cir. 2005). *See* O'Leary Decl. ¶ 8. A descriptive mark can become protectable only after it has acquired distinctiveness through extensive use in commerce. *Sand Hill Advisors, LLC v. Sand Hill Advisors, LLC,* 680 F. Supp. 2d 1107, 1113 (N.D. Cal. 2010), citing *Lahoti v. Vericheck, Inc.,* 586 F.3d 1190, 1196-97 (9th Cir. 2009).

Courts have long recognized the intensively-factual nature of making a determination as to the strength of a given mark, calling the process "a tricky business at best." *Lahoti v. Vericheck, Inc.,* 586 F.3d 1190, 1197-98 (9th Cir. 2009), citing *Bannf, Ltd. v. Federated Dep't Stores, Inc.* 841 F.2d 486, 489 (2d Cir. 1988); *see also Pizzeria Uno Corp. v. Temple,* 747 F.2d 1522, 1528 (4th Cir. 1984) ("The line between descriptive and suggestive marks is scarcely 'pikestaff plain' and the distinction to be given the two terms is frequently made on an intuitive basis rather than as a result of a logical analysis susceptible of articulation"). After taking note of the general rule of law as to what constitutes a suggestive mark, "*a trier of fact* is still left with a hard task of judgment" as to where a particular mark falls in "the continuum between marks" that

- 13 -

are suggestive and those that are only descriptive.  *Lahoti*, 586 F.3d at 1198 (emphasis added).

Recognizing the intensity of this factual exercise, the issue of distinctiveness of a mark is nearly

always a matter found to be "unsuitable for a summary judgment determination." *Zobmondo*

*Entm't, LLC v. Falls Media, LLC,* 602 F.3d 1108, 1120 (9th Cir. 2010).

### a.     The NEXTDOOR Mark Is Not a Fanciful or Arbitrary Mark

A strong mark, and thus a mark that is instantly afforded trademark protection, is a mark

that is either arbitrary or fanciful.  *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 349 (9th Cir.

1979).  Here, Nextdoor.com has not established, and cannot establish, that its mark is either

arbitrary or fanciful.

A fanciful mark is a mark that consists of a made-up, imaginative words; one court has

described such marks as consisting of a "word invented solely for their use as trademarks."

*Abercrombie & Fitch Co.*, 537 F.2d at 11. The mark NEXTDOOR is not a made-up word of the

likes of Exxon, and is therefore not protectable as a fanciful mark.  *See* O'Leary Decl. ¶ 11

("[T]he term 'nextdoor', in addition to being its own word used in three parts of speech, is a

combination of two component words – 'next' and 'door.'  Like 'nextdoor', 'next' and 'door' are

extremely common, to the point of entering everyday usage.   Each component word is itself

highly descriptive, and not at all fanciful / arbitrary or even suggestive of anything beyond their

normal, everyday meanings.").

An arbitrary mark is a real term that in its common meaning "has no relevance to any

feature or characteristic of the product."  *Kendall-Jackson Winery, Ltd. v. J. Gallo Winery*, 150

F.3d 1042, 1046 (9th Cir. 1998).  *See* O'Leary Decl. ¶ 6.  Perhaps the best-known example of an

arbitrary mark is Apple, the name and trademark of a computer company which through its

products and services does not seize on the common meaning of an apple.  The NEXTDOOR

mark is not arbitrary.  There is a clear and logical connection between the services that

Nextdoor.com provides, a social network for connecting neighbors who live close to one another,

or "next door" to one other, and the term NEXTDOOR, a term that is routinely used to refer to a

neighbor who lives in the next house or unit.  *See* O'Leary Decl. ¶ 10 ("Whatever its part-of-

- 14 -

speech usage, consumers who use the term "nextdoor" are immediately drawn to the notion of neighborhood, and to structures situated and persons living nearby within it.").

### b. The NEXTDOOR Mark is a Descriptive Mark

Nextdoor.com's only manner of establishing a protectable trademark right in the NEXTDOOR mark lies in establishing that it is a suggestive mark. In its opening papers, Nextdoor.com makes only the faintest of attempts to establish any manner of mark strength, and therefore falls short of satisfying its burden of establishing that the mark is protectable as a matter of law.

The primary criterion for distinguishing between a suggestive and a descriptive mark is "the imaginativeness involved in the suggestion, that is, how immediate and direct is the thought process from the mark to the particular product." *Self-Realization Fellowship Church v. Ananda Church of Self-Realization*, 59 F.3d 902, 911 (9th Cir. 1995). In order for a mark to be a suggestive mark, there must be a quantifiable amount of "imagination" or a "mental leap" to reach "a conclusion as to the nature of the product being referenced." *Filipino Yellow Pages, Inc. v. Asian Journal Pub'ns, Inc.,* 198 F.3d 1143, 1147 n.3 (9th Cir. 1999). The mental leap that is required is a significant one.

For example, in *Jockey Club, Inc. v. Jockey Club of Las Vegas, Inc.,* 595 F.2d 1167, 1168 (9th Cir. 1979), the mark JOCKEY CLUB, used in the context of a condominium complex and a club, did not rise past its descriptive quality to the level of a distinctive mark because the "known connotations of wealth and high social status" associated with the words "Jockey Club" meant that in the mind of consumers, the words did not denote "a single thing coming from a single source." Similarly, the mark OATNUT, in the context of a bread product, was held to be a merely descriptive mark. *In re Entenmann's Inc.*, 928 F.2d 411 (Fed. Cir. 1991). The mark ECODIESEL, in the context of fuel, was also held to be a merely descriptive mark. *Unitek Solvent Servs. v. Chrysler Group LLC*, 2013 U.S. Dist. LEXIS 141096 (D. Hawaii 2013), *aff'd* 2014 U.S. App. LEXIS 11569 (9th Cir. 2014).

A mark is descriptive when it "describes the product to which it refers or its purpose." *See*

- 15 -

*Self-Realization*, 59 F.3d at 910 (emphasis added) (citations omitted).  Descriptive marks "describe[]a person, a place or an attribute of a product." *Japan Telecom, Inc. v. Japan Telecom Am., Inc.*, 287 F.3d 866, 872 (9th Cir. 2002).  Because descriptive marks "tend to consist of common words that might be the only way to describe a category of goods," courts "do not grant exclusive property rights in them." *Id.* The determination of descriptiveness must be made "by reference to the goods or services that it identifies." *Rodeo Collection, Ltd. v. W. Seventh*, 812 F.2d 1215, 1218 (9th Cir. 1987); *see also McCarthy on Trademarks*, at 11:64 ("[T]he mark BRILLIANT may be 'descriptive' on diamonds, 'suggestive' on furniture polish, and 'arbitrary' on canned applesauce.").  Moreover, a mark does not need to "recite each feature of the relevant goods or services in detail" in order to be a descriptive mark.  *Lahoti*, 586 F.3d at 1201.

Here, after carefully considering the issue of what is the proper categorization of the NEXTDOOR mark, O'Leary readily concluded that the NEXTDOOR mark is merely descriptive.  O'Leary Decl. ¶¶ 4-14.  O'Leary also found that a close analysis of the NEXTDOOR mark makes the descriptive nature of the mark clear, as the mark "is a combination of two component words – 'next' and 'door'," both of which "are extremely common to the point of entering everyday usage." *Id.* at ¶¶ 11-12.  While not determinative, such "dictionary definitions are relevant and often persuasive in determining how a term is understood by the consuming public . . . ." *Surgicenters of Am., Inc. v. Med. Dental Surgeries, Co.*, 601 F.2d 1011, 1015 n.11 (9th Cir. 1979); *see also Fortune Dynamic, Inc. v. Victoria Secret Stores Brand Mgmt.*, 618 F.3d 1025, 1033 (9th Cir. 2010) ("A suitable place for attempting to draw the line between a suggestive and a descriptive mark is the dictionary.").  *See also* O'Leary Decl. ¶ 13 ("descriptive marks do not spur the consumer's imagination to jump to a far-off place, or to a new commercial notion derived from the playfulness of words comprising the trademark – they simply direct the consumer, in one fell swoop, through their dictionary definitions to the qualities or characteristics of the product or service being offered").  This reasoning led O'Leary to conclude that "the NEXTDOOR mark is no stronger than descriptive." *See id.* ¶ 12.

Although Nextdoor.com contends that the NEXTDOOR mark is "at least suggestive," it

- 16 -

offers absolutely no evidence to establish this mistaken assertion.  *See* MSJ, at 20:15-21.  The most Nextdoor.com can muster is that the NEXTDOOR mark must be suggestive because it "requires a 'mental leap' from the word 'nextdoor' to the service that Nextdoor.com provides, an online social network for neighbors."  *Id.*  However, the determination of whether a mark is suggestive or descriptive requires the finder of fact to consider probable consumer reaction in the specific context of how plaintiff's service is offered in the industry.  *Lahoti*, 586 F.3d at 1198. Nextdoor.com has offered no such evidence on this factual inquiry.  Nor did it engage an expert and offer evidence in that way on this issue.  Instead, the only evidence concerning strength or weakness of the NEXTDOOR mark is from Mr. O'Leary: "the term 'nextdoor', in addition to being its own word used in three parts of speech, is a combination of two component words – 'next' and 'door.'  Like 'nextdoor', 'next' and 'door' are extremely common, to the point of entering everyday usage.  Each component word is itself highly descriptive, and not at all fanciful / arbitrary or even suggestive of anything beyond their normal, everyday meanings."  O'Leary Decl. ¶ 11.

Accordingly, the record clearly supports that the NEXTDOOR mark is no more than descriptive.  At a minimum, based on the one-sided evidence presented, there exists a genuine dispute of material fact as to whether the NEXTDOOR mark is descriptive or distinctive - a dispute sufficient to defeat summary judgment here.

> **3.  Nextdoor.com Has Failed to Offer Any Evidence that the NEXTDOOR Mark Had Acquired Secondary Meaning by the Time of the Allegedly-Infringing Conduct**

To have a protectable descriptive mark, Nextdoor.com has to demonstrate that the NEXTDOOR mark had obtained secondary meaning by the time that the allegedly infringing acts occurred.  Nextdoor.com has failed to establish that the NEXTDOOR mark has acquired secondary meaning at any time, much less at the time of the alleged infringement.

Descriptive marks may acquire distinctiveness through use in commerce.  *Sand Hill Advisors, LLC v. Sand Hill Advisors, LLC*, 680 F. Supp. 2d 1107, 1113 (N.D. Cal. 2010) (citing *Lahoti* , 586 F.3d at 1196).  This acquired distinctiveness is generally called "secondary

- 17 -

meaning." *Two Pesos,* 505 U.S. at 769.  Whether a mark has acquired secondary meaning almost always presents a detailed question of fact.  *Levi Strauss & Co. v. Blue Bell, Inc.,* 778 F.2d 1352, 1355 (9th Cir. 1985).  A plaintiff generally cannot establish that secondary meaning was acquired as a matter of law through a summary judgment motion.  *Yellow Cab Co.*, 419 F.3d at 930 (finding summary judgment inappropriate because of the existence of a genuine issue of material fact in relation to the whether secondary meaning had been established).  For its part, Nextdoor.com has offered no evidence whatsoever that the NEXTDOOR mark has acquired secondary meaning.

In determining whether a mark has obtained secondary meaning, courts consider: (1) whether actual purchasers of the product bearing the mark associate the mark with the producer; (2) the degree and manner of advertising under the mark; (3) the length and manner of use of the mark; and (4) whether use of the mark has been exclusive.  *Comm. for Idaho's High Desert v. Yost*, 92 F.3d 814, 822 (9th Cir. 1996*)*.  Critically, a plaintiff alleging trademark infringement must establish that its mark had acquired secondary meaning prior to the occurrence of the infringement at issue.  *CG Roxane LLC v. Fihi Water Co. LLC*, 569 F. Supp. 2d 1019, 1032 (N.D. Cal. 2008) ("[t]he user must [ ] show that secondary meaning existed prior to the date on which the defendant commenced using the same or similar mark") (internal quotations omitted).

Nextdoor.com neither argues that the NEXTDOOR mark has acquired secondary meaning nor offers evidence with respect to any of these factors, and thus concedes the issue.[7]  Indeed,

---

[7] Nextdoor.com has failed to establish that the Nextdoor mark is valid and protectable. Nevertheless, Nextdoor.com argues that Abhyanker should not be able to argue that the NEXTDOOR mark is descriptive.  *See* MSJ, n.9 ("Abhyanker is hard pressed to deny that the NEXTDOOR mark is not at least suggestive since he has already acknowledged Nextdoor.com's rights in the NEXTDOOR mark").  Under the collateral estoppel doctrine, judgment in a prior suit between parties precludes re-litigation by the same parties of issues actually litigated and necessary to the outcome of the first action.  *Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1357 (9th Cir. 1984).  Collateral estoppel is inappropriate here because the partial judgment did not adjudicate whether the NEXTDOOR mark is valid and protectable.  *See* Section III(A), *supra*. Count I of the Complaint, which was resolved by the partial judgment, did not even address or seek a ruling on the validity and protectability of the NEXTDOOR mark.  *See generally,* Compl.

(footnote continued on next page)

Nextdoor.com has not and cannot establish that the mark acquired secondary meaning, let alone that the mark had accrued secondary meaning at the time of the allegedly infringing acts, as required for a finding of liability. The NEXTDOOR mark simply had not achieved the required level of public recognition by the time of the allegedly-infringing acts in 2011 -- just a few short months after Nextdoor.com's launch -- to have secondary meaning. O'Leary Decl. ¶ 15.

Nextdoor.com has yet to apply the secondary meaning test. It has not offered any evidence that actual purchasers of their service bearing the NEXTDOOR mark associate the mark with Nextdoor.com. By Nextdoor.com's own admission, the mark has only been used in the marketplace since late 2011. MSJ 4:6-8. This falls short of the five-year requirement for a presumption of recognition to have developed. 15 U.S.C. § 1052(f); Trademark Manual of Examining Procedure § 1212.5 ("proof of substantially exclusive and continuous use of a designation as a mark by the applicant in commerce for the five years before the date on which the claim of distinctiveness is made may be accepted as prima facie evidence that the mark has acquired distinctiveness as used with the applicant's goods or services in commerce") (internal citations omitted). Similarly, Nextdoor.com has put forth no evidence to establish that the mark has been advertised. Finally, Nextdoor.com's use of the term "nextdoor" has not been exclusive. Indeed, evidence that third parties have made use of a mark before or during the time in which a purported mark holder has made use of the mark indicates that the mark has not obtained secondary meaning. *Carter-Wallace, Inc. v. Procter & Gamble Co.*, 434 F.2d 794 (9th Cir. 1970); *Universal Frozen Foods Co. v. Lamb-Weston, Inc.*, 697 F. Supp. 389, 393 (9th Cir. 1987)

_____

(footnote continued from previous page)

¶¶ 60-61. Rather, its focus was on relative priority between Nextdoor.com and Abhyanker relating to the mark, to forestall a later infringement by Abhyanker. Compl. ¶ 59. Nextdoor's unduly expansive interpretation of the phrase "trademark rights" in the partial judgment presumes those rights as against all comers even though no Court or administrative body had so found. Nextdoor's mistaken belief is inconsistent with the Order. Dkt. 192 (Order) ¶ 5 (parties agree that "[n]othing herein precludes any party from introducing evidence in support of or opposition to any claim or defense not adjudicated in this Order.").

1  (exclusivity as a source not established when a product had been sold for many years under the

2  mark in question by others).  The facts of this case make clear that use of the NEXTDOOR mark

3  originated not with Nextdoor.com but with a separate domain owner as well as with Abhyanker

4  years before its launch in 2011, and that its use by Nextdoor.com has not been exclusive

5  throughout the history of the mark.  Abhyanker Decl. ¶¶ 11.

6      Accordingly, the NEXTDOOR mark had not acquired secondary meaning by the time of

7  the alleged infringement.  At minimum, there is a genuine dispute of material fact as to whether

8  the mark had by then acquired secondary meaning which is sufficient to preclude summary

9  judgment.

10          **4.      Assuming the Court Reaches the Likelihood of Confusion Element,
                     There Is a Genuine Issue of Material Fact as to Whether Abhyanker's
11                   Use of the NEXTDOOR Mark Was Likely to Cause Confusion**

12      As noted above, the Court need not reach the likelihood of confusion analysis because

13  Nextdoor.com has not initially established that the NEXTDOOR mark is valid and protectable.

14  *See Applied Info. Scis. Corp.,* 511 F.3d at 972.  Assuming *arguendo* that the mark is found to be

15  valid as a matter of law, there exist genuine issues of material fact precluding a finding of

16  likelihood of confusion as a matter of law.

17      Courts in this Circuit apply the well-established test set forth in *AMF, Inc. v. Sleekcraft*

18  *Boats*, 599 F.2d 341, 348-349 (9th Cir. 1979) (the "*Sleekcraft* factors"), for determining

19  trademark infringement under the Lanham Act.  The *Sleekcraft* factors are (1) strength of the

20  mark, (2) type of goods and the degree of care likely to be exercised by the purchaser, (3)

21  likelihood of expansion of the product lines, (4) evidence of actual confusion, (5) proximity of the

22  goods, (6) similarity of the marks, (7) marketing channels used, and (8) defendant's intent in

23  selecting the mark.  *Id.* at 348-49.  The existence of genuine issues of material fact as to the

24  application of at least some of the *Sleekcraft* factors should preclude summary judgment.

25      (1) <u>The Strength of the Mark</u>: The strength of a mark "can be measured in terms of its

26  location along a continuum stretching from arbitrary, inherently strong marks, to suggestive

27  marks, to descriptive marks, to generic, inherently weak marks."  *Surgicenters of Am., Inc. v.*

- 20 -

*Medical Dental Surgeries, Co.,* 601 F.2d 1011, 1014-15 (9th Cir. 1979).  Abhyanker has

established in the absence of competing evidence that the mark is merely descriptive, which is

indicative of a weak mark.  Moreover, because the mark is unregistered, Nextdoor.com does not

obtain the benefit of any presumption associated with a distinctive mark.  Nextdoor.com timidly

disagrees, contending that "the NEXTDOOR mark is at least suggestive," and thus protectable as

a distinctive mark.  MSJ, at 20:14-18.  But, as discussed above, Nextdoor.com has offered no

evidence whatsoever to substantiate this contention.  Accordingly, for present purposes, this

factor weighs heavily in Abhyanker's favor.

(2) <u>Type of Goods and the Degree of Care Likely to be Exercised by the Purchaser</u>: In

assessing the likelihood of confusion to the public, the standard used by courts is the typical buyer

exercising ordinary caution.  *AMF,* 599 F.2d at 353.  Nextdoor.com has offered no evidence

regarding the level of sophistication or caution of the typical consumer patronizing its service.

Instead, Nextdoor.com argues that this factor must weigh in favor of Nextdoor.com because (a)

consumers are "expected to be more discerning when purchasing an expensive item and less

discerning (and more easily confused) when dealing with inexpensive products," (b) "web surfers

are more likely to be confused as to the ownership of a web site than traditional patrons of a

brick-and-mortar store," and (c) both parties operate free websites.  MSJ, 19:18-19:1.  But

Nextdoor.com's cursory analysis ignores that its own service requires a consumer to divulge

personal identifying information that consumers are not likely to easily disseminate, especially

online through a website being viewed for the first time.

Indeed, as a prerequisite to accessing its website, Nextdoor.com requires a consumer to (a)

obtain a reference confirming a user's address from a neighbor who's a user the service or (b)

providing his or her name and street address and then providing Nextdoor.com with additional

authenticating information that it requests, such as a credit card number, the last four digits of the

user's social security number, a unique code that Nextdoor.com mails to the user, or the user's

home or mobile phone number.  Abhyanker Decl. ¶ 18.  A consumer will likely exercise caution

before divulging this type of highly-sensitive information, contrary to what Nextdoor.com

- 21 -

contends. For this reason, Nextdoor.com's conclusion that this factor weighs towards a likelihood of confusion is not so easily supported.

Even if other factors support Nextdoor.com's contention of a likelihood of confusion, the existence of multiple issues of material fact concerning the *Sleekcraft* factors addressed above renders summary judgment inappropriate here. *See Interstellar Starship Servs. v. Epix, Inc.*, 184 F.3d 1107, 1110 (9th Cir. 1999) (when there is evidence supporting the non-moving party against finding a likelihood of confusion, "a court should not weigh evidence on a summary judgment motion") (internal citation omitted). Accordingly, as there exists genuine disputes of material fact as to whether Abhyanker's allegedly-infringing use of the NEXTDOOR mark is likely to cause confusion under the *Sleekcraft* Factors, the Motion should be denied for this reason as well.

## IV.    CONCLUSION

Summary judgment is generally not granted in the trademark infringement arena – and from this brief it is easy to see why. Nextdoor.com has not established trademark validity – and thus protectability – as a matter of law. Trademark validity turns on holding a distinctive mark. All evidence in the record on this issue decidedly favors that the NEXTDOOR mark is no stronger than descriptive. This trademark is thus not protectable – that is, it is not capable of supporting an infringement claim – unless it had acquired secondary meaning by the time of the allegedly-infringing acts. Again, Nextdoor.com has presented no evidence that its mark had acquired secondary meaning by the time of the allegedly-infringing acts, and the evidence surrounding the short timeframe between Nextdoor.com's launch in 2011 and the allegedly infringing acts months later demonstrate that secondary meaning could not have been acquired so quickly. At a minimum, there are genuine issues of material fact as to trademark validity and protectability, as well as there is a likelihood of confusion, which prevent summary judgment from being granted at this time.

/////

/////

/////

1    Accordingly, Nextdoor's motion for partial summary judgment on the fourth cause of

2    action for trademark infringement should be denied.

3

4    Dated: September 26, 2014                          **LEGALFORCE RAJ ABHYANKER, P.C.**

5                                                       ___/s/ David Lavine_____
                                                        DAVID LAVINE
6                                                       Attorney for Defendant RAJ ABHYANKER

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27