LAURENCE F. PULGRAM (CSB No. 115163)
lpulgram@fenwick.com
JENNIFER L. KELLY (CSB No. 193416)
jkelly@fenwick.com
ILANA S. RUBEL (CSB No. 221517)
irubel@fenwick.com
GUINEVERE L. JOBSON (CSB No. 251907)
gjobson@fenwick.com
FENWICK & WEST LLP
555 California Street
San Francisco, CA  94104
Telephone: (415) 875-2300
Facsimile:  (415) 281-1350

ERIC J. BALL (CSB No. 241327)
eball@fenwick.com
MATTHEW B. BECKER (CSB No. 291865)
mbecker@fenwick.com
FENWICK AND WEST LLP
801 California Street
Mountain View, CA 94041
Telephone: (650) 988-8500
Facsimile:  (650) 938-5200

Attorneys for Plaintiff
NEXTDOOR.COM, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NEXTDOOR.COM, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>RAJ ABHYANKER, an individual,<br><br>Defendant. | Case No.: 3:12-cv-05667-EMC-NMC<br><br>**NEXTDOOR.COM, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT ON COUNTS II AND IV OF ITS COMPLAINT**<br><br>Date:          October 16, 2014<br>Time:         1:30 p.m.<br>Courtroom: 5, 17th Floor<br>Judge:        Hon. Edward M. Chen |

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE FILED UNDER SEAL**

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ......................................................................................... 1

ARGUMENT ................................................................................................. 2

I.     ABHYANKER'S RECITATION OF PURPORTED FACTS RAISES NO
FACTUAL ISSUES PRECLUDING SUMMARY JUDGMENT ..................... 2

II.    SUMMARY JUDGMENT IS WARRANTED AS TO THE VALIDITY AND
PROTECTABILITY OF NEXTDOOR.COM'S NEXTDOOR MARK ......................... 4

      A.    Issue Preclusion Prevents Abhyanker's Challenge To The
NEXTDOOR Mark's Validity And Protectability................................. 4

      B.    Abhyanker Has Previously Acknowledged, And Is Estopped To Deny,
The Protectability Of The NEXTDOOR Mark ....................................... 5

III.    EVEN IF THIS COURT HAD NOT ALREADY DECIDED THE ISSUE,
AND EVEN IF ABHYANKER'S ADMISSIONS DID NOT PRECLUDE HIS
PRESENT POSITION, HE HAS RAISED NO FACTUAL ISSUE AS TO
PROTECTABILITY ...................................................................................... 7

      A.    Abhyanker's Proffered Expert Testimony Should Be Excluded As
Unreliable And Unhelpful ................................................................... 7

            1.    O'Leary Is Not A Trademark Expert Trademark Expert and
Cannot Expertly Opine On Issues Of Trademark Distinctiveness............. 8

            2.    O'Leary's Opinion Is Not The Product Of Reliable Principals,
Reliably Applied And It Is Not Based on Sufficient Facts or
Data ................................................................................................... 9

            3.    O'Leary's Conclusory Opinion Does Not Help The Trier Of
Fact ................................................................................................. 10

      B.    The Undisputed Facts Demonstrate That The NEXTDOOR Mark Is At
Least Suggestive ................................................................................ 11

            1.    Associating "NEXDOOR" With An Online Social Network
Requires A Mental Leap .................................................................. 12

            2.    Competitors Do Not Need To Use The Term "Nextdoor" To
Describe Their Goods Or Services.................................................... 13

IV.    ABHYANKER INTENDED TO, AND DID, INFRINGE
NEXTDOOR.COM'S RIGHTS BY HIS USE OF THE IDENTICAL MARK
ON AN IDENTICAL PRODUCT .................................................................. 14

CONCLUSION .......................................................................................... 15

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

CASES

*Am. Title Ins. Co. v. Lacelaw Corp.*,
   861 F.2d 224 (9th Cir. 1988)........................................................................................7

*Bourjaily v. United States*,
   483 U.S. 171 (1987)................................................................................................7, 8

*Brookfield Comm. Inc. v. West Coast Entertainment Corp.*,
   174 F.3d 1036 (9th Cir. 1999)..................................................................................12

*Chesebrough-Pond's, Inc. v. Faberge, Inc.*,
   666 F.2d 393 (9th Cir. 1982)....................................................................................14

*Clausen v. M/V New Carissa*,
   339 F.3d 1049 (9th Cir. 2003).....................................................................................9

*Daubert v. Merrell Dow Pharm., Inc.*,
   509 U.S. 579 (1993)................................................................................................7, 9

*Eugene Biro Cop. V. Empire Diamond Corp.*,
   40 U.S.P.Q. 2d 1527 (S.D.N.Y. 1996)......................................................................12

*Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*,
   618 F.3d 1025 (9th Cir. 2010).....................................................................................8

*Guidroz-Brault v. Missouri Pac. R. Co.*,
   254 F.3d 825 (9th Cir. 2001).....................................................................................10

*In re Cantrell*,
   329 F.3d 1119 (9th Cir. 2003).....................................................................................4

*In re Shutts*,
   217 U.S.P.Q. (BNA) 363 (T.T.A.B 1983) ...............................................................13

*In re SPX Corp.*,
   63 U.S.PQ.2d 1592 2002 WL 531128 (T.T.A.B. 2002) ..........................................11

*Intermedics, Inc. v. Ventritex, Inc.*,
   775 F.Supp. 1258 (N.D. Cal. 1991) ............................................................................4

*Jinro v. Secure Investments, Inc.*,
   266 F.3d 993 (9th Cir. 2001).......................................................................................7

*JIPC Mgmt., Inc. v. Incredible Pizza Co.*,
   CV 08-04310 MMM PLAX, 2009 WL 8591607 (C.D. Cal. July 14, 2009) ............11

*Kendall–Jackson Winery, Ltd. v. E. & J. Gallo Winery*,
   150 F.3d 1042 (9th Cir.1998).....................................................................................11

*Keytrack Inc. v. Key Register, L.L.C.*,
    No. C 03-00870, 2004 WL 2944043 (N.D. Cal. Mar. 30, 2004) ............................................11

*Khoury v. Allstate Ins. Co.*,
    CV-02-04487-EFS, 2002 WL 31812912 (C.D. Cal. Nov. 22, 2002)
    aff'd, 99 F. App'x 145 (9th Cir. 2004) ...........................................................................................4

*Lahoti v. VeriCheck, Inc.*,
    586 F. 3d 1190 (9th Cir. 2009) ........................................................................................................5

*Lahoti v. Vericheck, Inc.*,
    636 F.3d 501 (9th Cir. 2011) ........................................................................................................12

*Minnesota Min. & Mfg. Co. v. Johnson and Johnson*,
    454 F.2d 1179 (CCPA 1972) ........................................................................................................14

*Nelson v. Matrixx Initiatives*,
    C 09-02904 WHA, 2012 WL 3627399 (N.D. Cal. Aug. 21, 2012) ...............................................9

*Nissan Motor Co. v. Nissan Computer Corp.*,
    378 F.3d 1002 (9th Cir. 2004) ......................................................................................................15

*Ollier v. Sweetwater Union High Sch. Dist.*,
    12-56348, 2014 WL 4654472 (9th Cir. Sept. 19, 2014) ...............................................................10

*Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*,
    469 U.S. 189 (1985) ......................................................................................................................11

*Playtex Products, Inc. v. Georgia-Pacific Corp.*,
    390 F.3d 158 (2d Cir. 2004) .........................................................................................................13

*Robi v. Five Platters, Inc.*,
    838 F.2d 318 (9th Cir. 1988) ..........................................................................................................4

*Rodeo Collection, Ltd. v. West Seventh*,
    812 F.2d 1215 (9th Cir. 1987) (overruled on other grounds) ......................................................12

*Salem v. U.S. Lines Co.*,
    370 U.S. 31 (1962) ........................................................................................................................10

*Samuels v. Holland Am. Line-USA Inc.*,
    656 F.3d 948 (9th Cir. 2011) ..........................................................................................................9

*Sega Enterprises Ltd.v. MAPHIA*,
    948 F.Supp. 923 (1996) ................................................................................................................15

*Segal v. American Tel. & Tel. Co.*,
    606 F.2d 842 (9th Cir. 1979) ..........................................................................................................4

*Sinhdarella, Inc. v. Vu*,
    No. C 07-04353 WHA, 2008 WL 410246 (N.D.Cal. Feb. 12, 2008) ..........................................13

*Smith v. Montoro*,
    648 F.2d 602 (9th Cir. 1981) ........................................................................................................14

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Sperry Rand Corp. v. Sunbeam Corp.*,
    442 F.2d 979 (CCPA 1971) ...................................................................14

*Surfvivor Media, Inc. v. Survivor Productions*,
    406 F.3d 625 (9th Cir. 2005)..................................................................11

*Transgo, Inc. v. Ajac Transmission Parts Corp.*,
    768 F.2d 1001 (9th Cir. 1985)................................................................14

*United States v. Fuentes-Cariaga*,
    209 F.3d 1140 (9th Cir. 2000)................................................................11

*United States v. Vallejo*,
    237 F.3d 1008, *opinion amended on denial of reh'g*,
    246 F.3d 1150 (9th Cir. 2001)................................................................10

*Visa Int'l Serv. Assoc. v. JSL Corp.*,
    610 F.3d 1088 (9th Cir. 2010)................................................................13

*Wallach v. Longevity Network, LTD.*,
    No. CV 04-2404 SJO, 2006 U.S. Dist. LEXIS 97120 (C.D. Cal. 2006) .............8

*Wynn Oil Co. v. Thomas*,
    839 F.2d 1183 (6th Cir.1988).................................................................13

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,
    259 F.3d 1101 (9th Cir. 2001)................................................................11

*Zig Zag Holdings LLC v. Hubbard*,
    C 13-2643 SI, 2014 WL 2735094 (N.D. Cal. June 11, 2014)........................5

**STATUTES**

15 U.S.C. § 1052(e) (Lanham Act §2(e))........................................................6

15 U.S.C. § 1091(a) ...................................................................................6

15 U.S.C. § 1125(a) .................................................................................15

**RULES**

Fed. R. Civ. P. 26(a)(2)(B)-(C) ..................................................................11

Fed. R. Civ. P. 37 ...................................................................................11

Fed. R. Evid. 702 ........................................................................7, 9, 10, 11

Fed. R. Evid. 702(a) ..................................................................................7

**OTHER AUTHORITIES**

ABA Journal Article: "*Abhyanker says his firm will prepare about 14,000 trademarks this year [2013]*" (September 24, 2013)...............................................7

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

J. McCarthy, McCarthy on Trademarks and Unfair Competition (4th ed. 2004):

§ 11:2.................................................................................................................5
§ 11:63.............................................................................................................12
§ 11:68.............................................................................................................12
§ 11:71.............................................................................................................11
§ 11:72.............................................................................................................11
§ 11:87.............................................................................................................13
§ 19:42...............................................................................................................6

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## INTRODUCTION

As the latest in his perpetually revisionist approach, Defendant Abhyanker now argues that Nextdoor.com's NEXTDOOR mark is not protectable—notwithstanding that this Court on May 16, 2014 entered final judgment as to the validity of Nextdoor.com's rights in that mark, and that Abhyanker himself has always claimed that same mark to be protectable when *he* sought to claim rights in it both in this Court and at the Trademark Trial and Appeal Board ("TTAB"). Abhyanker's desire to prolong this litigation cannot manufacture a factual dispute.

This Court's Partial Final Judgment decreed that "Nextdoor.com owns trademark rights in and has priority of use of the NEXTDOOR mark in the field of online social networking." Dkt. 193 ("Partial Judgment"). Indispensable to this judgment is that there *were* valid trademark rights for Nextdoor.com to own and enforce in this field of use. That conclusion is issue preclusive on Abhyanker's contrary argument now. The parties' stipulation that certain *other* claims would be "unaffected" obviously did not empower this Court to later issue a contradictory ruling on validity, as Abhyanker would now have the Court do. *See* Dkt. 192, ¶ 2; *see* Abhyanker Opposition to Nextdoor.com's MSJ, Dkt. 345 ("Opp." or "Opposition") at 6-7.

In addition to defying the Partial Judgment, Abhyanker's argument that the NEXTDOOR mark is unprotectable because it is allegedly "descriptive" also flouts his own prior pleadings and settled legal doctrine. The fundamental basis for Abhyanker's claims to trademark rights in NEXTDOOR—both in this Court and in his attempt to register that very mark at the TTAB after Nextdoor.com's launch—has always been that NEXTDOOR *is* protectable. Abhyanker's engagement of a former internet entrepreneur to offer an inadmissible "opinion" to the contrary raises no factual issue on this point: Patrick O'Leary has no relevant expertise, applies no accepted methodology, and ignores the relevant facts of record. But even if O'Leary's opinion were not excluded, the underlying facts are undisputed as to what term (NEXTDOOR) is used on what product (an online social network). Because NEXTDOOR does not describe a social network, but requires a mental leap to suggest one, summary judgment is warranted.

Abhyanker's Opposition raises an equally futile alternative argument—that there is a fact issue as to the likelihood of confusion arising from his intentional misuse of the identical

NEXTDOOR mark to brand a retaliatory website that purported itself to *be* "nextdoor.com."  *See* Opp. at 20-22.  It ignores that Abhyanker's attempt to pass off his websites as "nextdoor.com" violates the "passing off" prohibition of the Lanham Act.  And ignores Abhyanker's numerous admissions of likelihood of confusion.  Abhyanker identifies two *Sleekcraft* factors he claims may weigh against confusion, but does not dispute that use of an identical mark with intention to confuse (precisely what happened here) is, alone, enough to support a finding of infringement on summary judgment.  *See* MSJ at 16-18.  Given Abhyanker's admitted intent to retaliate because he was "mad" about Nextdoor.com's launch (Declaration of Jennifer Kelly in Support of Nextdoor.com, Inc.'s Motion for Summary Judgment on Nextdoor.com's Counts II and IV ("Kelly MSJ Decl."), Ex. A, ("RA Tx.") at 514:5-24; 529:19-531:9; 532:9-20; 550:19-551:18), one can only ask: Why are we still litigating this issue?

Summary judgment is appropriate on Nextdoor.com's Count IV.

## **ARGUMENT**

**I.    ABHYANKER'S RECITATION OF PURPORTED FACTS RAISES NO FACTUAL ISSUES PRECLUDING SUMMARY JUDGMENT**

The Opposition's statement of facts recites a history of events to establish Abhyanker's *bona fides* as the creator of a neighborhood online social network, and as such, one justifiably resistant to acknowledging that he lacks a legal claim.  But Nextdoor.com has never disputed that he conceived of an idea, considered purchasing (but did not) the domain www.nextdoor.com, and then transferred the concept to Fatdoor, Inc. in 2007.  What Nextdoor.com consistently has maintained—and what the facts consistently have borne out—is that Nextdoor.com took *nothing* from Abhyanker when it formed its successful network four years later, and that he has utterly no legal claim whatsoever.  Nothing in the Opposition's purported statement of facts changes that.

First, Abhyanker readily admits he engaged in use of the NEXTDOOR mark after Nextdoor.com's launch. Opp. at 6-7.  In a footnote, he argues that he discontinued use a month after the Court's determination of the existence of Nextdoor.com's rights and associated injunction, and after no less than three demands by Nextdoor.com to do so.  *Id.* at 6, n. 2.  *Compare* Kelly MSJ Decl. ¶ 16, Exs. K-M.  Far from warranting praise, these admissions

Fenwick & West LLP
Attorneys at Law
San Francisco

demonstrate infringement.

Second, Abhyanker characterizes his use of the term NEXTDOOR as descriptive, referring to excerpts of documents not provided that, for example, refer to "next-door neighbors." Declaration of Raj Abhyanker, Dkt. 345-2 ("RA Decl.") ¶¶ 13, 14.  But regardless of whether "next-door" were descriptive of "neighbors," Abhyanker ignores his prior acknowledgment that NEXTDOOR is protectable for an online social network.  *See* Abhyanker's Supplemental Statement Regarding His Prior Use and Common Law Rights in the Nextdoor Trademark & Errata ("Supp. Statement" & "Errata"), Dkt. Nos. 141 & 153.

Beyond that, Abhyanker's description of his failed attempts to start a social network is not only irrelevant to the instant motion (and thus cannot create a dispute of material fact), but often fabricated.  His discussion of Lorelei is the most egregious.[1]  In his prior effort to avoid summary judgment, Abhyanker declared that he selected Lorelei to prototype Fatdoor, and this location was not "randomly chosen" but instead was based on extensive research and "mathematical geocoding."  Dkt. 150-1 ("Abhyanker Declaration") ¶¶ 11-14.  Abhyanker swore that he invested "significant manual efforts to transform the Lorelei neighborhood into an ideal neighborhood to test a social network."  *Id.* at ¶ 14.  And he claimed that "much of this information was provided to Benchmark Capital on the Fatdoor Confidential due diligence CD on June 22, 2007."  *Id.* at ¶ 24.  Discovery revealed that all of Abhyanker's hype about Lorelei was made up.[2]

██████████████████████████████ (Harris Decl. ISO MSJ, Dkt. 331 at ¶4), a fact confirmed by numerous documents. *See, e.g.*, Declaration of David McCain in Support of Nextdoor.com, Inc.'s Reply in Support of its Motion for Summary Judgment on Counts II and IV of its Complaint ("McCain Decl.") ¶ 6, Exs. C-G. ████████████████████ ████████████████████ (RA Tx. 276:03-08), ████████████████████████████

---

[1] Though at best tangentially relevant to the subject of this MSJ (since his claim to a trade secret in the Lorelei neighborhood was dismissed with prejudice, Dkt. 226), Abhyanker raised the question of the use of Lorelei in his Opposition and it should not go unrebutted.

[2] Caught in discovery, Abhyanker now hedges, transparently stating that his "efforts to transform" occurred in "Cupertino, Lorelei and other neighborhoods."  RA Decl. ¶ 8.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*See* McCain Decl. ¶ 5 & Ex. A (McCain Report).  Instead, Abhyanker's documents

(*id*. at ¶ 6, Ex. B (at 4, 11), C, D, E, and F);

(*id*. at ¶ 7 Exs. G and H);

(*id*. at ¶ 8 Exs. I, J, K, & L).  What is now clear is that Abhyanker came up with the idea to claim Lorelei as a trade secret only after an October 2012 settlement discussion in which Nextdoor.com's CEO innocently volunteered that Lorelei was where Nextdoor.com had prototyped.  *See* Dkt. 150-1 ¶ 58.[3]  Abhyanker then retroactively manufactured his fake trade secret to match Nextdoor.com's reality, launched a trade secret case against Nextdoor.com, and proceeded to fabricate (and spoliate) all manner of documents in an attempt to prolong it.

## II.   SUMMARY JUDGMENT IS WARRANTED AS TO THE VALIDITY AND PROTECTABILITY OF NEXTDOOR.COM'S NEXTDOOR MARK

### A.   Issue Preclusion Prevents Abhyanker's Challenge To The NEXTDOOR Mark's Validity And Protectability

The doctrine of issue preclusion prevents re-litigation of "issues of fact or law that were actually litigated and necessarily decided" previously.  *Robi v. Five Platters, Inc.*, 838 F.2d 318, 322 (9th Cir. 1988); *Segal v. American Tel. & Tel. Co.*, 606 F.2d 842, 845 (9th Cir. 1979).[4]  This includes issues that are implicit in a prior judgment.  *In re Cantrell*, 329 F.3d 1119 (9th Cir. 2003) (in awarding punitive damages, because prior decision implicitly decided that defendant had acted

---

[3] Communications after this meeting (obtained via third party subpoenas), reflect that Abhyanker

Inc.'s Reply in Support of its Motion for Summary Judgment of Counts II and IV of its Complaint ("Kelly Reply Decl.") ¶ 3, Ex. B

[4] A stipulated judgment, as much as any other judgment, is equivalent to actual litigation on the merits.  *See Khoury v. Allstate Ins. Co.*, CV-02-04487-EFS, 2002 WL 31812912 (C.D. Cal. Nov. 22, 2002) aff'd, 99 F. App'x 145 (9th Cir. 2004).  Thus, it has issue preclusive effect.  *See Intermedics, Inc. v. Ventritex, Inc.*, 775 F.Supp. 1258, 1262-63 (N.D. Cal. 1991).

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

fraudulently, that issue could not be re-litigated).  *Zig Zag Holdings LLC v. Hubbard*, C 13-2643 SI, 2014 WL 2735094, at *6-8 (N.D. Cal. June 11, 2014) (bankruptcy court's approval of sale of defendant's trademark "necessarily decided" and collaterally estopped his later claim he did not own it, as court could not have ordered sale of a mark without determining ownership).  Validity of a trademark is a prerequisite to its ownership: if a mark is invalid, it cannot be owned; nor can an injunction issue or "priority" exist for an invalid mark.  *See* J. McCarthy, McCarthy on Trademarks and Unfair Competition § 11:2, (4th ed. 2004)  ("Without achieving distinctiveness... a designation does not have the legal status of a 'trademark' or 'service mark.' No distinctiveness-no mark."); *see also, Lahoti v. VeriCheck, Inc.*, 586 F. 3d 1190, 1197 (9th Cir. 2009).  Here, the Court has decreed Nextdoor.com's ownership and priority in the field of online social networking.  Dkt. 193.  Because the Partial Judgment *does* decide ownership, injunctive relief and priority, it necessarily resolved the question of the mark's validity and protectability.

If Abhyanker had his way, and the Court were now to find the NEXTDOOR mark not valid or entitled to protection, it would have to directly contradict the Partial Judgment.  Certainly the parties' stipulation that the Partial Judgment on Count I does "not affect[] other claims" (Dkt. 192) cannot render that judgment invalid.  That stipulation means only that, at the time the Partial Judgment was entered, other claims remained pending and would be decided based on the relevant elements and facts.  Specifically, though its ownership of a valid mark was settled, Nextdoor.com would still need to prove infringement as to its Count IV (infringement of its NEXTDOOR mark), and bad faith as to Count II (cybersquatting).  Likewise, the stipulation that "nothing herein precludes any party from introducing evidence in support of or opposition to any claim or defense *not adjudicated in this Order*" does not undo the Partial Judgment's necessary adjudication of validity.  The Court's Partial Judgment necessarily determined validity and protectability, precluding any dispute of that issue factually or legally, now.

## B.    Abhyanker Has Previously Acknowledged, And Is Estopped To Deny, The Protectability Of The NEXTDOOR Mark

Up until this Opposition, Abhyanker's pleadings had always accepted the NEXTDOOR mark as distinctive and protectable.  He asserted affirmative claims on the basis of his own

purported rights in NEXTDOOR, without any claim that he had acquired distinctiveness by use sufficient to establish secondary meaning.  *See* SAAC, Dkt. 132, ¶¶ 202-207.  Indeed, he acknowledged that he had never even possessed the nextdoor.com website, and instead had launched his business under the fatdoor.com name.  RA Tx. 84:07-20.  Abhyanker reaffirmed this belief in the protectability of the mark as distinctive when he submitted statements to the Court describing his supposed prior use of the "NEXTDOOR trademark."  *See* Supp. Statement & Errata, Dkt. Nos. 141 & 153.

Similarly, Abhyanker's conduct in related proceedings before the USPTO demonstrates the speciousness of his current denial of the distinctiveness of the mark NEXTDOOR.  When the USPTO published Nextdoor.com's NEXTDOOR mark for opposition, it noted that "The mark of the application identified appears to be entitled to registration."  Kelly Reply Decl. ¶ 4, Ex. C. ***Abhyanker never objected to the mark as being descriptive.***  Instead, a week later, he submitted his competing application for registration of the identical NEXTDOOR mark for use in connection with a neighborhood social network—an application that implicitly recognized that mark's distinctiveness as a prerequisite to the protectability he claimed.  *See* SAAC, Dkt. 132 ¶ 25 (admitting filing for registration of the NEXTDOOR mark on December 28, 2011).  Tellingly, Abhyanker filed on the Principal Register, used for the registration of distinctive marks.  By contrast, merely descriptive marks may be eligible for registration only on the separate Supplemental Register.  *See* Lanham Act, 15 U.S.C. §§1052(e) & 1091(a); *see also* McCarthy § 19:42 (if a mark is merely descriptive, it is ineligible for registration on the Principal Register). The fact that Abhyanker (a trademark attorney) applied on the Principal Register further confirms that he always considered, the mark distinctive.  Nor has he withdrawn that application which continues to assert trademark rights in NEXTDOOR before the USPTO.

Only now, in Opposition to summary judgment, does Abhyanker do an about face and claim that NEXTDOOR is merely a descriptive term.  The Court can and should reject this transparent contradiction.  As the self-proclaimed filer of more trademark applications than

anyone else in the world,[5] Abhyanker is well aware of the need for distinctiveness in the marks he files.  He is bound by these admissions and conduct.  *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988) (factual assertions in pleadings constitute judicial admissions that are conclusively binding on the party who made them, and "have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact").

## III.   EVEN IF THIS COURT HAD NOT ALREADY DECIDED THE ISSUE, AND EVEN IF ABHYANKER'S ADMISSIONS DID NOT PRECLUDE HIS PRESENT POSITION, HE HAS RAISED NO FACTUAL ISSUE AS TO PROTECTABILITY

### A.   Abhyanker's Proffered Expert Testimony Should Be Excluded As Unreliable And Unhelpful

Under the Court's *Daubert* line of cases and Federal Rule of Evidence 702, the O'Leary Declaration should be excluded, as Abhyanker has not met his burden of establishing its admissibility.  *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 590-97 (1993) (to be helpful, the expert testimony must be more than a "subjective belief or unsupported speculation."); Fed. R. Evid. 702(a) (a witness may not offer expert opinion testimony unless "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue"); *Jinro v. Secure Investments, Inc.*, 266 F.3d 993, 1001 (9th Cir. 2001) (excluding expert testimony where the expert had "no formal education or training" in the subject area of his opinion); *Bourjaily v. United States*, 483 U.S. 171, 175-76 (1987) (party seeking admission of expert testimony must establish admissibility).

The O'Leary Declaration is objectionable and inadmissible at least three respects:  (1) he is not an expert regarding the distinctiveness of trademarks; (2) his opinion on distinctiveness of the NEXTDOOR mark is merely his subjective belief, not the product of reliable principles, reliably applied, based on sufficient facts or data; and (3) his opinion addresses issues within the knowledge of ordinary lay people and therefore would not assist the trier of fact.

---

[5] *See* Dkt. 150-1 ¶¶ 3 & 4 (Abhyanker is the founder of Trademarkia.com); *Id* at Ex. A, p. 21 (September 24, 2013 ABA Journal Article: "Abhyanker says his firm will prepare about 14,000 trademarks this year [2013]"); *Id.* (Trademarkia filed approximately 9,000 trademarks in 2012); *Id*. at 25 (Trademarkia described as "the world's largest trademark firm").

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

**1.    O'Leary Is Not A Trademark Expert Trademark Expert and Cannot Expertly Opine On Issues Of Trademark Distinctiveness**

2

3     O'Leary is not qualified to be an expert on trademarks, let alone on the distinctiveness of

4    trademarks.  He is a self-proclaimed businessman and Internet entrepreneur.  *See* Dkt. 345-1

5    ("O'Leary Decl.") ¶ 2.  He has no formal, or even informal, training regarding trademarks.  He

6    has no degrees in linguistics, marketing, communications, psychology, or anything touching on

7    distinctiveness of trademarks.  Instead, he has a degree in electrical engineering and computer

8    science.  *Id.*  O'Leary does not claim to have ever been previously retained to opine about the

9    distinctiveness of a mark; nor does he claim that any Court has ever admitted him as an expert on

10   trademarks.  *Id.* at ¶ 2-3.  Abhyanker and O'Leary have failed to provide any support for the

11   claim that O'Leary is an expert on the distinctiveness of a trademark.

12        Rather than being a trademark expert, just three days before his expert report was due,

13   Abhyanker's counsel had to educate O'Leary regarding what distinctiveness was about.

14   Abhyanker's counsel sent O'Leary an email attaching and linking to filings with the USPTO

15   discussing trademark distinctiveness standards in order to "help [O'Leary] discern what mark

16   distinctiveness boils down to."  Kelly Reply Decl. ¶ 5, Ex. D.  From O'Leary's document

17   production, it appears that he then visited various websites, including Wikipedia and an article

18   titled "What is a descriptive trademark" to educate himself about trademark distinctiveness.  *Id.*

19   ¶ 5, Ex. E.

20        Fleeting Internet research does not make a trademark expert.  Nor does one's personal

21   business experience.  *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618

22   F.3d 1025, 1040-41 (9th Cir. 2010) (excluding testimony of a 40-year advertising and marketing

23   veteran as to whether a word was used as a trademark as "the basis of his knowledge regarding

24   trademark use is not entirely clear"); *Wallach v. Longevity Network, LTD.*, No. CV 04-2404 SJO

25   (RZx), 2006 U.S. Dist. LEXIS 97120 *6-7 (C.D. Cal. 2006) (excluding an expert that had no

26   experience in the field of trademark infringement: "The simple fact that Mr. Blake has worked for

27   large companies that own and use trademarks does not make him an expert in trademark

28   infringement.").   For this reason alone, the Court should exclude O'Leary's Declaration.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**2.     O'Leary's Opinion Is Not The Product Of Reliable Principals, Reliably Applied And It Is Not Based on Sufficient Facts or Data**

For an expert opinion to be admissible, it also must be the product of reliable principles, reliably applied, based on sufficient facts or data. *See* Fed. R. Evid. 702; *see also Daubert,* 509 U.S. at 592-93. O'Leary's opinion fails to meet this standard.

First, O'Leary's opinion is not based on a reliable set of principles. *See Clausen v. M/V New Carissa*, 339 F.3d 1049, 1056 (9th Cir. 2003) (to be admissible, opinion must point to some objective source to show that the scientific method as practiced by at least a minority of scientists in their field was followed). Instead, ████████████████████████████████████████ ████████████████████████████████████████████████████████ Kelly Reply Decl. ¶ 7, Ex. F ("O'Leary Report") at 14. ████████████████████████ ████████████████████████████████████████████████████████

Second, instead of ████████████████████ O'Leary's *Declaration* does not even mention it. O'Leary Decl. ¶ 4-15. Nor does his Declaration mention or apply a basic dictionary definition ████████████████████ *Compare* Kelly Reply Decl. ¶ 7, Ex. F at 3 ██████████████████. Instead, O'Leary merely assumes that "consumers who use the term 'nextdoor' are immediately drawn to the notion of neighborhood" (O'Leary Decl. ¶10), but offers utterly no support for that assumption, much less for the notion that "consumers' use" (rather than Nextdoor.com's use) is the relevant measure.

Third, O'Leary's opinion is not based on sufficient facts or data. He describes no investigation to support his assumptions on consumers' views. ████████████████████ ████████████████████ O'Leary Report at 14, 16; O'Leary Decl. ¶¶ 10, 11. ██████████████████ *Samuels v. Holland Am. Line-USA Inc.*, 656 F.3d 948, 950 (9th Cir. 2011) (excluding conclusory expert declaration based on little more than "a quick internet search" and a few telephone calls to colleagues in the industry); *Nelson v. Matrixx Initiatives*, C 09-02904 WHA, 2012 WL 3627399, *11 (N.D. Cal. Aug. 21, 2012) (excluding opinion where expert's weak qualifications coupled with "unsupported

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

speculation and unreliable methodology" made his opinion unreliable).



Nor did he review Abhyanker's trademark application for the NEXTDOOR mark, in which Abhyanker again asserts that he has trademark rights for services identical to those which O'Leary claims cannot support trademark rights.  SAAC, Dkt. 132 ¶ 159-162 (identifying the services in his NEXTDOOR trademark application); *cf.* O'Leary Decl. ¶ 4.

Instead, O'Leary offers

O'Leary Decl. ¶¶ 11-12; O'Leary Report at 14.  This is not an opinion based on sufficient facts and data and must be excluded under Rule 702.[6]

### 3.   O'Leary's Conclusory Opinion Does Not Help The Trier Of Fact

Expert testimony is unnecessary and should be excluded "if all the primary facts can be accurately and intelligibly described to the jury, and if they, as men of common understanding, are as capable of comprehending the primary facts and of drawing correct conclusions from them as are witnesses possessed of special or peculiar training, experience, or observation in respect of the subject under investigation."  *Salem v. U.S. Lines Co.*, 370 U.S. 31, 35 (1962) (internal quotations omitted).  On this claim that is limited to injunctive relief, the fact finder is the Court.  The primary facts of O'Leary's opinion—the meaning of the words "nextdoor", "next" and "door"—are part of "the common knowledge of the average layman."  *United States v. Vallejo,*

---

[6] *See Ollier v. Sweetwater Union High Sch. Dist.*, 12-56348, 2014 WL 4654472 at *9-11 (9th Cir. Sept. 19, 2014) (finding "speculative testimony is inherently unreliable" and affirming exclusion of expert testimony based on personal opinion since it was "unsupported by the facts" and "based on, at best, an unreliable methodology); *Guidroz-Brault v. Missouri Pac. R. Co.*, 254 F.3d 825, 829-831 (9th Cir. 2001) (affirming exclusion of "unsupported speculation and subjective beliefs" "not sufficiently founded on facts").

Fenwick & West LLP
Attorneys at Law
San Francisco

237 F.3d 1008, 1019, *opinion amended on denial of reh'g,* 246 F.3d 1150 (9th Cir. 2001).[7]

Because the Court can review a dictionary and itself determine whether NEXTDOOR is

descriptive of a social network, it does not need, and should exclude, O'Leary's opinion.[8]

### B.  The Undisputed Facts Demonstrate That The NEXTDOOR Mark Is At Least Suggestive

Even assuming Mr. O'Leary's opinion was not excluded, it still can raise no question of

fact as to the suggestive, and therefore protectable, nature of the NEXTDOOR mark.  A

suggestive mark is one for which "a consumer must use imagination or any type of multistage

reasoning to understand the mark's significance ... the mark does not describe the product's

features, but suggests them." *Kendall–Jackson Winery, Ltd. v. E. & J. Gallo Winery*, 150 F.3d

1042, 1047 n. 8 (9th Cir.1998); *Surfvivor Media, Inc. v. Survivor Productions*, 406 F.3d 625, 631-

32 (9th Cir. 2005) (considering various attributes of the mark at the summary judgment stage and

finding mark to be suggestive, and therefore protectable); *see also* McCarthy § 11:72 (listing

marks that have been found "suggestive," including "CITIBANK" for an urban bank, "DIAL–A–

MATTRESS" for mattress sales, and "FLORIDA TAN" for suntan lotion).  By contrast,

descriptive marks describe "the qualities or characteristics of a good or service."  *Park 'N Fly,*

*Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 194 (1985); *See In re SPX Corp.*, 63 U.S.PQ.2d

1592 2002 WL 531128 (T.T.A.B. 2002) (E-AUTODIAGNOSTICS descriptive of electronic

---

[7] *See also,* Fed. R. Evid. 702 (expert opinion must "help the trier of fact understand the evidence or to determine a fact in issue"); *United States v. Fuentes-Cariaga*, 209 F.3d 1140, 1142 n.3 (9th Cir. 2000) ("general testimony about an issue within the ken of the jury's knowledge" excludable); *JIPC Mgmt., Inc. v. Incredible Pizza Co.*, CV 08-04310 MMM PLAX, 2009 WL 8591607 *3-4 (C.D. Cal. July 14, 2009) (testimony excluded regarding strength of a mark as it "consists largely of personal observations and conclusions respecting factual issues within the province of the lay jury"; "[t]o the extent that [the expert's] testimony constitutes his personal opinion regarding application of the *Sleekcraft* factors, the court concludes that it will not assist the trier of fact").

[8] For the same reasons described above, O'Leary's opinion regarding secondary meaning (O'Leary Decl.¶¶ 4, 15) should also be excluded: he is not an expert on secondary meaning, his opinion is based on unreliable principles, and it is not helpful to the fact finder.  This opinion should also be excluded ▉▉▉▉▉▉▉▉▉▉▉▉▉. *See* Fed. R. Civ. P. 26(a)(2)(B)-(C).  *Keytrack Inc. v. Key Register, L.L.C.*, No. C 03-00870, 2004 WL 2944043, at *3 (N.D. Cal. Mar. 30, 2004) (limiting expert testimony to the opening report since "[t]hereafter, the expert cannot fix its deficiencies."); Fed. R. Civ. P. 37 (mandating preclusion of undisclosed expert testimony); *See Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) (Rule 37 exclusion is "a 'self-executing,' 'automatic' sanction 'to provide[] a strong inducement for disclosure of material').

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

system to analyze auto engines); *see also Eugene Biro Cop. V. Empire Diamond Corp.*, 40 U.S.P.Q. 2d 1527 (S.D.N.Y. 1996) ("dial-a-diamond" descriptive of service for ordering diamonds by telephone).

To determine whether a mark is suggestive or descriptive, the Ninth Circuit applies two tests:  First is the imagination test, which asks whether the mark "requires a mental leap from the mark to the product." *Brookfield Comm. Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036, 1058 (9th Cir. 1999); *see also,* McCarthy §11:71.  Second, a mark is more likely suggestive if it passes the competitor test, which asks whether the message conveyed by the mark about the goods or services is so direct and clear that competing sellers would *need* to use the term in describing their goods. *Rodeo Collection, Ltd. v. West Seventh*, 812 F.2d 1215, 1218 (9th Cir. 1987) (overruled on other grounds).  These tests naturally blend together: the more imagination needed, the less likely the words used will be needed by competitors.  McCarthy §11:68.

### 1.   Associating "NEXDOOR" With An Online Social Network Requires A Mental Leap

The undisputed facts show that the NEXTDOOR mark is at least suggestive (and therefore distinctive) and not merely descriptive of an online social network. *See Lahoti v. Vericheck, Inc.*, 636 F.3d 501, 505–506, (9th Cir. 2011) (a suggestive mark is inherently distinctive).[9]  Even if his testimony were admitted, O'Leary merely considers two sets of undisputed facts, namely: (1) the meaning of the words, "nextdoor", "next", and "door"; and (2) that Nextdoor.com used the NEXTDOOR mark in some fashion.  *See* O'Leary Decl. ¶¶ 11, 15.  Without disputing the veracity these points, it is indisputable that imagination or a mental leap is required to get from the mark (NEXTDOOR), to the service (and online social network).  Nextdoor.com is neither a purveyor of doors nor a provider of "next."  And even if the combination word "nextdoor" may call to mind the idea of neighbors (among other things),[10] a further imaginative step is needed to

---

[9] Abhyanker dedicates much effort to arguing that the NEXTDOOR mark is not arbitrary or fanciful. *See* Opp. at 14-15. ███████████████████ O'Leary Report at 4; McCarthy § 11:63.

[10] For example, NEXTDOOR might also conjure up the image of the building, house, apartment, dorm room, or fence nextdoor; the girl or boy nextdoor; or the act of borrowing tools or sugar.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  associate the NEXTDOOR mark with an online network. To construe NEXTDOOR as

2  descriptive would be utterly inconsistent with decisions finding other marks to be at least

3  suggestive. *See, e.g., Playtex Products, Inc. v. Georgia-Pacific Corp.,* 390 F.3d 158 (2d Cir.

4  2004) (the term "Wet Ones" found not merely descriptive where it "could plausibly describe a

5  wide variety of products"); *In re Shutts,* 217 U.S.P.Q. (BNA) 363 (T.T.A.B 1983) ("Sno-Rake"

6  not merely descriptive of a snow removal tool); *see also Sinhdarella, Inc. v. Vu*, No. C 07-04353

7  WHA, 2008 WL 410246 (N.D.Cal. Feb. 12, 2008) ("The Boiling Crab" for use in conjunction

8  with a seafood restaurant held suggestive).

9      Moreover, ███████████████████████████████████████

10 ████████████████████████████████████████████████████████████████

11 ████████████████████████ Kelly Reply Decl. at ¶ 7, Ex. F (O'Leary Report at 14); O'Leary Decl. ¶

12 11. As the Ninth Circuit explained in *Visa Int'l Serv. Assoc. v. JSL Corp.*, the prevalence of other

13 non-trademark or generic uses of a word does not undermine the distinctiveness of a specific

14 mark containing that word. 610 F.3d 1088, 1091 (9th Cir. 2010) (citing McCarthy § 11:87).

15 Rather, "the significant factor is not whether the word itself is common, but whether the way the

16 word is used in a particular context is unique enough to warrant trademark protection." *Id*. (citing

17 *Wynn Oil Co. v. Thomas*, 839 F.2d 1183, 1190 n. 4 (6th Cir.1988)). Here, Nextdoor.com's use of

18 the NEXTDOOR mark in the context of an online social network is sufficiently unique to receive

19 trademark protection as at least a suggestive mark. *See* MSJ at 20.

20       **2.**     **Competitors Do Not Need To Use The Term "Nextdoor" To Describe Their Goods Or Services**

21

22     Applying the second "competitor test" reinforces this conclusion. Competitors in the

23 social network space clearly do not need to use the term "nextdoor" in conjunction with their

24 services. ████████████████████████████████████████████████████████

25 ███████████████████████████████ *See* McCain Decl. ¶6, Exs. B (at 9), C, D, E, & F

26 ████████████████████████████████████████████████████████████

27 ████████████████████████████████████████████████

28 ████████████████████ Abhyanker himself chose the names "FATDOOR" and

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

edirectree.com—launching his nextdoor.cm site only out of spite *after* Nextdoor.com's launch. *See Sperry Rand Corp. v. Sunbeam Corp.*, 442 F.2d 979, 980 (CCPA 1971) (LEKTRONIC: "The record gives no indication that anyone would ever need to use LEKTRONIC to describe his goods of similar nature."); *Minnesota Min. & Mfg. Co. v. Johnson and Johnson*, 454 F.2d 1179 (CCPA 1972) (SKINVISIBLE for transparent medical adhesive tape not needed by competitors).

Thus, Abhyanker has presented no facts which raise a factual dispute as to the distinctiveness of the NEXTDOOR mark.[11] O'Leary and Abhyanker's own, self-serving testimony are legal arguments, not disputed facts. Assuming its prior Partial Judgment were not already binding, the Court can and should come to its own conclusion as to the significance of the undisputed facts and find that Nextdoor.com's use of the NEXTDOOR mark is at least suggestive. *See Chesebrough-Pond's, Inc. v. Faberge, Inc.*, 666 F.2d 393, 397–398, (9th Cir. 1982) (when the issue of fact concerned matters of common knowledge and experience and could have been excluded at the discretion of the trial, it "was not error to grant summary judgment even though the expert's conclusion differed from that of the court").

## IV. ABHYANKER INTENDED TO, AND DID, INFRINGE NEXTDOOR.COM'S RIGHTS BY HIS USE OF THE IDENTICAL MARK ON AN IDENTICAL PRODUCT

Abhyanker does not dispute that he pretended to be "nextdoor.com" after the launch of the actual Nextdoor.com website. Kelly MSJ Decl. ¶11-12, Ex. H at RA00116, RA00118-119 (Abhyanker's .cm website repeatedly claims to be Nextdoor.com); *Id*. at ¶18, Ex. M at 5, 9-11, 13, 15 (eatbid.com screen shots dated May 24, 2014 incorporating the "nextdoor.com" name). Nor does he dispute that pretending to be the source of a good or service amounts to express false designation of origin in violation of the Lanham Act. MSJ at 16 citing *Smith v. Montoro*, 648 F.2d 602, 606-607 (9th Cir. 1981). Indeed, the very purpose of the Lanham Act is preventing an individual from misleading the public by placing a competitor's work forward as its own. *See Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001 (9th Cir. 1985) (15 U.S.C. §

---

[11] While not necessary for resolution of this motion because the NEXTDOOR mark is distinctive, even if merely descriptive, it has long since acquired secondary meaning with hundreds of thousands of users, the factual support for which Abhyanker does not dispute. *See* Dkt. 332-31 (Declaration of Prakash Janakiraman In Support of Nextdoor.com's MSJ).

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1125(a) is violated by express passing off of goods or services with a mark identical to that of a competitor).  This alone supports summary judgment on Count IV, and it is undisputed.

Alternatively, Abhyanker's Opposition ignores his prior pleadings that acknowledge the likelihood of confusion caused by use of an identical mark on an identical product.  He does not dispute that he deployed the NEXTDOOR mark with full knowledge of Nextdoor.com's prior use in commerce.  *See* MSJ at 16; Opp., Dkt. 345 at 6-7.  He does not dispute that he branded his imitation sites "NEXTDOOR," described his sites as "a private social network for your neighborhood," and expressly misrepresented that they were affiliated with nextdoor.com.  Kelly MSJ Decl., Ex. C at 2; Ex. F at 2; Ex. M at 17.  And he does not refute that this intentional adoption of the NEXTDOOR mark alone, creates a presumption of confusion.  *See Sega Enterprises Ltd.v. MAPHIA*, 948 F.Supp. 923, 937-938 (1996) (summary judgment on likelihood of confusion where defendant had intentionally adopted an identical mark).  Given that "Abhyanker does not dispute these uses of a Nextdoor name…only the legal significance of having done so" (Opp. at 6-7) this question is clearly appropriate for summary judgment.

Abhyanker does not raise an issue of material fact by his half-hearted disagreement with Nextdoor.com's analysis of two of the *Sleekcraft* factors (Opp. at 20-21).  *See Nissan Motor Co. v. Nissan Computer Corp.*, 378 F.3d 1002, 1019 (9th Cir. 2004) (affirming summary judgment of infringement based on certain of defendants uses, though some factors were "disputable" or "cut both ways").  That NEXTDOOR ranks as suggestive rather than arbitrary, or that consumers receiving its free service allegedly use care in disclosing information cannot negate the likelihood of confusion caused by Abhyanker's intentional misrepresentation that his NEXTDOOR-branded sites were affiliated with Nextdoor.com.  Especially where Abhyanker does not even dispute that the remaining six *Sleekcraft* factors weigh heavily in Nextdoor.com's favor (*compare* Nextdoor.com's MSJ at 16-20 and Opp. at 20-22), the likelihood of confusion is inescapable.

## CONCLUSION

Because there is no genuine factual dispute that Abhyanker has made confusing use of a valid and protectable trademark, no bench trial is necessary, and summary judgment should be entered on Count IV of Nextdoor.com's Complaint.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  Dated:    October 2, 2014                    FENWICK & WEST LLP

2

3                                              By: /s/ Laurence F. Pulgram
                                                   Laurence F. Pulgram
4
                                               Attorneys for Plaintiff
5                                              NEXTDOOR.COM, INC.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28