DAVID S. LAVINE, SBN 166744
dave@legalforcelaw.com
NICHOLAS M. GEROVAC, SBN 289910
nick@legalforcelaw.com
LEGALFORCE RAJ ABHYANKER, P.C.
1580 W. El Camino Real, Suite 13
Mountain View, California 94040
Telephone: 650.965.8731
Facsimile: 650.989.2131

Attorneys for Defendant
Raj Abhyanker

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| NEXTDOOR.COM, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>RAJ ABHYANKER, an individual,<br><br>Defendant. | Case No. 3:12-cv-05667-EMC-NMC<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION TO PRESERVE CONFIDENTIALITY DESIGNATIONS ON ENUMERATED DOCUMENTS PURSUANT TO PROTECTIVE ORDER**<br><br>Date: December 4, 2014<br>Time: 1:30 p.m.<br>Court: 5 – 17th Floor<br>Judge: Hon. Edward M. Chen |

1 TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

2     PLEASE TAKE NOTICE that on Thursday, December 4, 2014 at 1:30 p.m., or as soon thereafter as counsel may be heard by the Court, in the Courtroom of the Honorable Edward M. Chen, located at 450 Golden Gate Avenue, San Francisco, California 94102, Defendant Raj Abhyanker ("Abhyanker") will move the Court, pursuant to the earlier-issued protective order in this case, Fed.R.Civ. P. 7(b), and L.Civ.R. 7, for an order rejecting the challenge to confidentiality designations on enumerated documents produced through discovery in this case, and preserving such designations.

    This Motion is based on the Notice of Motion and Motion, the accompanying memorandum of points and authorities in support of this Motion, the accompanying declaration filed in support of this Motion, the protective order on file in this case, other pleadings and papers on file in this action, the arguments of counsel at the hearing on this Motion, and any such further evidence and material that the Court may allow.

## I. INTRODUCTION

    At the parties' bidding, the Court entered a Stipulated Protective Order (the "Protective Order") on July 31, 2013. Declaration of Raj Abhyanker ("Abhyanker Decl."), ¶2, Ex. A. The Protective Order provides, *inter alia*, that either party may designate any document disclosed in this case as confidential, and may thereby limit its further disclosure to designated persons associated with the case. *Id.* A further limitation in the event of "Attorneys Eyes Only" confidential designation constrains disclosure to only the attorneys in this case or to those professionally assisting them. *Id.*

    Should a party wish to challenge such confidentiality designations, the challenging party must meet and confer with the designating party toward resolution. *Id.* at ¶6.2. Failing resolution, the designating party must file a motion with the Court to preserve disputed confidentiality designations. *Id.* at ¶6.3. The Court is then to review the designated documents in order to decide whether to preserve or reject the confidentiality designations. *Id.* Through counsel, Abhyanker has met and conferred with Nextdoor.com, Inc. regarding its designation challenges, Declaration of David Lavine, ¶5, and has timely brought this motion for the Court's

1

consideration of disputed designations.

As is common when commercial interests are at stake, Mr. Abhyanker designated portions of his fact and expert discovery productions, as well as expert reports and deposition testimony drawing on such documents and records, as confidential or "attorneys eyes only." By so doing, Abhyanker has endeavored to keep private, apart from required discovery disclosures in this case, business documents he indicates were private within his business interests, shared only on an as-needed basis, and not made available for public disclosure or general circulation, particularly to business competitors for fear that unfair commercial advantage might come to them. Abhyanker Decl., ¶¶3-5.

No objection regarding Abhyanker's confidentiality designations was heard for months after production. Only in the last several weeks did Nextdoor.com register designation objections with him. Indeed, the objections have come so late in this case that this motion is noticed to be heard almost on the eve of the December 8, 2014 trial date.

II. **BRIEF FACTUAL BACKGROUND TO ESTABLISH COMMERICAL INTEREST**

During the 2005 to 2006 timeframe, Abhyanker was surprised by the lack of web-based tools available to aggregate and organize information about nextdoor neighbors living near each other into social networks. So, he set about developing the technological tools by which to manage large amounts of user connections, determine relevancy from large amounts of social network-connected content, provide real-time updates to users, create printable walking maps of neighborhoods based on user contributions, filter relevant feeds across multiple networks and across group interactions, and annotate information regarding neighbors around a particular focal point. The result was a mash-up of maps and, ultimately, an entry page for each user-neighbor. From this work, Abhyanker hatched the concept of Nextdoor, a neighborhood-based social network geared toward bringing neighbors with like interests, or in need of a product or service offered by other neighbors, together for mutual benefit.

Abhyanker first began using the term "nextdoor" in identifying his neighborhood social network inventions many years before the first adoption of the term "nextdoor" by plaintiff Nextdoor.com, principally through informal use of the term in its commonly-understood sense,

1  with staff and in patent applications filed in 2006. As his ideas started to coalesce in 2005 and
2  2006, Abhyanker's assistant and business partner Babar Rana created screenshots and wireframes
3  showing the name "Nextdoor," including two mock-up images with two home addresses – Rana's
4  and his own – as focal points. A tag-line message appeared on that mock-up stating "[g]et to
5  know your neighbors." Over the ensuing months, Abhyanker developed software code, product
6  concepts, prototypes and other instrumentalities, including use of the name "nextdoor," in
7  conjunction with his dream of a private social network to bring neighbors closer together and
8  create stronger neighborhoods. As part of his efforts, Abhyanker set about transforming the
9  Cupertino, Lorelei (Menlo Park), and other neighborhoods into ideal locations to test a
10 neighborhood-based social network, including manual efforts to establish connections between
11 residents and overcome a lack of interest. Abhyanker went door-to-door to establish these
12 connections between residents, and engaged in extensive discussions with residents to overcome
13 any initial lack of interest.

14  In September 2006, years before Nextdoor.com came into existence or was even a thought
15 to its 2011 management team, Abhyanker hired Sandeep Sood and his firm to provide software
16 and website development services. He and his firm agreed to conceptualize, design and build
17 components, such as messaging, online identity design, information architecture, and customized
18 social networking software. Abhyanker created a cap table and equity distribution spreadsheet
19 for a company to be called NextDoor, Inc. with Sood in 2006. Sood was to be the CEO of this
20 venture, NextDoor, Inc. Together with Sood and engineer Ankur Verma, Abhyanker created an
21 alpha neighborhood-based social networking site displaying the name Nextdoor. The prototype
22 Nextdoor site was developed by Sood with help from Verma.

23  In October and November 2006, respectively, Abhyanker filed a provisional patent
24 application and utility patent application, each of which mentioned Nextdoor or nextdoor.com.
25 Also in November 2006, Abhyanker filed for trademark registration of "GET TO KNOW YOUR
26 NEIGHBOR."

27  On or about December 15, 2006, Abhyanker showed his prototype to investor Jeff Drazen
and then, at his suggestion, to William Harris, Jr. Together, they gave Abhyanker a $1,000,000

3

equity capital term sheet with attractive terms of fully-vested stock to pursue development of what would become Fatdoor, Inc. – an expansion of the Nextdoor neighborhood-based social network to include a public database of neighbor profiles which could be edited and enhanced to provide a more broadly-usable "search" and "discover" functionality. Abhyanker enlisted attorney Daniel Hansen to form the Fatdoor, Inc. corporate entity, and to carve out all trade secrets and intellectual property related to LegalForce, Inc. and Nextdoor so as not to confuse investments and rights between entities. Nextdoor, through LegalForce, Inc., continued to operate as a private social network for neighborhoods apart from the public database of neighborhoods built for Fatdoor.com.

On or about February 1, 2007, Abhyanker closed a $1,000,000 Series A round of equity financing with Drazen and Harris for Fatdoor, Inc., which then received most of his attention and effort. Abhyanker hired the best engineers that he could find in the geospatial and database fields to convert portions of his trade secrets into working products. With their help, the prototype of Fatdoor.com was developed into a working beta website in 2007. A limited release version of Fatdoor, Inc. followed, including about 700 residents in Abhyanker's Cupertino neighborhood.

In or around September 2007, U.S. Patent application Serial 11/603,442 was published by the United States Government worldwide through the Patent Gazette, on which Abhyanker was the sole inventor. This application describes Abhyanker's use of the "nextdoor.com" domain within a neighborhood social network. Also in or around September 2007, international patent application PCT/US2007/005612 on which Abyhanker is also the sole inventor and which describes his use of the "nextdoor.com" domain with a neighborhood social network, was published. In the meantime, Ahbyanker has sought and been granted dozens of other patents associated with the neighborhood-based social networking concept.

### III. ARGUMENT

#### A. Legal Standard

The Ninth Circuit has laid out two standards for limiting disclosure of documents generated in a case – a more stringent standard for judicially-filed documents, and a more liberal standard for confidentiality designations restricting disclosure of discovered documents not filed

4

1  in a case. In *Pintos v. Pacific Creditors Association*, 605 F.3d 665 (9th Cir. 2010), the Ninth
2  Circuit explained the differences between the standard for entering a protective order and
3  the standard for entering a sealing order. In that case, the Court held that there are two different
4  standards for sealing documents, depending on how the document has been used. When a
5  document is part of the judicial record, a "compelling reasons" standard applies. However, when
6  the document has simply been produced during discovery, a lower "good cause" standard
7  applies. The need to demonstrate "compelling reasons" applies to most judicial records. *See*
8  *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (holding that
9  "[a] party seeking to seal a judicial record . . . bears the burden of . . .meeting the 'compelling
10 reasons' standard"); *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135–36 (9th Cir.
11 2003). This standard derives from the common law right "to inspect and copy public records and
12 documents, including judicial records and documents." *Kamakana*, 447 F.3d at 1178 (internal
13 citation and quotation marks omitted). To limit this common law right of access, a party seeking
14 to seal judicial records must show that "compelling reasons supported by specific factual findings
15 . . . outweigh the general history of access and the public policies favoring disclosure." *Id.* at
16 1178–79 (internal quotation marks and citations omitted).

17    By contrast, a lower standard applies to "private materials unearthed during discovery"
18 not made a part of the judicial record. *Id.* at 1180. Rule 26(c) of the Federal Rules of
19 Civil Procedure governs here, providing that a trial court may grant a protective order "to protect
20 a party or person from annoyance, embarrassment, oppression, or undue burden or expense" with
21 respect to, *inter alia*, "commercial information." The relevant standard for purposes of Rule
22 26(c) is whether "'good cause' exists to protect th[e] information from being disclosed to the
23 public by balancing the needs for discovery against the need for confidentiality." *Phillips ex rel.*
24 *Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1213 (9th Cir. 2002). This "good
25 cause" standard presents a lower burden for a party wishing to designate documents confidential
26 to limit their circulation than does the "compelling reasons" standard governing the sealing of
27 judicially-filed documents. The public interest in access to judicial records that underlies the
   "compelling reasons" standard simply does not come into play for documents produced

1 between private litigants. *See Kamakana,* 447 F.3d at 1180 (holding that "[d]ifferent interests are
2 at stake with the right of access than with Rule 26(c)"); *Foltz,* 331 F.3d at 1134 ("When discovery
3 material is filed with the court . . . its status changes.").

4 These standards overlap when discovered documents are themselves the subject of a non-
5 dispositive motion, when, as here, a party seeks guidance or enforcement under a protective
6 order. In this event, the "good cause" standard is the proper standard. *Phillips,* 307 F.3d at 1213
7 ("when a party attaches a sealed discovery document to a nondispositive motion, the
8 usual presumption of the public's right of access is rebutted"). Nondispositive motions "are often
9 'unrelated', or only tangentially related, to the underlying cause of action," and, as a result,
10 the public's interest in accessing dispositive materials does "not apply with equal force" to
11 materials attached in support of nondispostive motion practice. *Kamakana,* 447 F.3d at 1179.
12 For good cause to be found under Rule 26(c), the designating party is merely required to
13 articulate a "particularized showing of good cause with respect to" those documents for which
14 protection is sought. *San Jose Mercury News, Inc. v. U.S. Dist. Court—N. Dist. (San Jose),* 187
15 F.3d 1096, 1102-03 (9th Cir. 1999).

### B. Abhyanker Demonstrates Good Cause Warranting Confidential Designation of Commerical Documents Produced to Competitor Nextdoor.com Through Discovery

As noted above, in an effort to protect six or seven years of his commercial efforts associated with neighborhood-based social networking undertaken by way of Nextdoor, Fatdoor and related entites from being revealed within his competitive industry or to the public at large, Abhyanker has designated portions of his discovery production to Nextdoor.com as confidential, and smaller portions as "attorneys eyes only," pursuant to the protective order on file in this case. In compliance with discovery duties or with court orders, Abhyanker has produced these documents to Nextdoor.com, even though he would never do so absent his court duties for fear that they will be used against him or his entities commercially, by Nextdoor.com or by others with whom Nextdoor.com decides to share them. Accordingly, he has sought protection under the protective order to limit their use to litigation needs, and to restrict them from being used to

6

1  obtain an unfair advantage in business.
2       Except as noted below as resolved informally between the parties, the confidentiality of
3  the following documents or types of documents remains under challenge by Nextdoor.com.
4  Abhyanker addresses each document or category of documents in turn to show particularlized
5  need for continued protection.

[Lines 6–27 redacted]


### IV. CONCLUSION

The relief Abhyanker seeks is modest – to protect his commercial ideas, structural changes to his businesses, personal and business finances, human resources developments, business strategy choices, and musings within these areas found in correspondence and attachments, from a competitor's indiscriminate use or disclosure to others not connected to this case, to avoid commercial harm to him or his business entities. This is probably the single most common reason to seek protection from unwarranted disclosure – just as Nextdoor.com similarly designated many of its business records as confidential. Abhyanker has demonstrated good cause for such protection. Accordingly, the commercial records enumerated above should remain confidential.

Respectfully Submitted,

/s/ David Lavine
LegalForce RAPC
Counsel for Defendant Raj Abhyanker