LAURENCE F. PULGRAM (CSB No. 115163)
lpulgram@fenwick.com
JENNIFER L. KELLY (CSB No. 193416)
jkelly@fenwick.com
ILANA S. RUBEL (CSB No. 221517)
irubel@fenwick.com
GUINEVERE L. JOBSON (CSB No. 251907)
gjobson@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA  94104
Telephone: (415) 875-2300
Facsimile:  (415) 281-1350

ERIC J. BALL (CSB No. 241327)
eball@fenwick.com
MATTHEW B. BECKER (CSB No. 291865)
mbecker@fenwick.com
FENWICK AND WEST LLP
801 California Street
Mountain View, CA 94041
Telephone: (650) 988-8500
Facsimile:  (650) 938-5200

Attorneys for Plaintiff
NEXTDOOR.COM, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NEXTDOOR.COM, INC., a Delaware corporation,<br><br>             Plaintiff,<br><br>      v.<br><br>RAJ ABHYANKER, an individual,<br><br>             Defendant. | Case No.: 3:12-cv-05667-EMC-NMC<br><br>**PLAINTIFF NEXTDOOR.COM, INC.'S MOTION *IN LIMINE* NO. 1 TO PREVENT ABHYANKER FROM CALLING NIRAV TOLIA OR PRAKASH JANAKIRAMAN AS A WITNESS AT TRIAL**<br><br>Final Pretrial<br>Conference: November 25, 2014<br>Time:          2:30 p.m.<br>Courtroom: 5, 17th Floor<br>Judge:        Hon. Edward M. Chen<br>Trial Date:  December 8, 2014 |

# NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD**:

**PLEASE TAKE NOTICE THAT** Plaintiff Nextdoor.com, Inc. ("Nextdoor.com") will and hereby does move the Court *in limine* for an order excluding Defendant Raj Abhyanker ("Abhyanker") from calling Nirav Tolia or Prakash Janakiraman as a witness at trial. Nextdoor.com's motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Jennifer L. Kelly in support of Plaintiff's Motions *in Limine* Nos. 1-3 ("Kelly Decl."), the pleadings and other papers on file with the Court in this matter, and such further argument and evidence which may be presented at or before the pretrial conference.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

NEXTDOOR.COM'S MOTION *IN LIMINE NO. 1* TO PREVENT ABHYANKER FROM CALLING TOLIA OR JANAKIRAMAN AS A WITNESS     i     CASE NO. 3:12-CV-05667-EMC-NMC

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Nextdoor.com brings the following motion *in limine* to exclude Defendant Raj Abhyanker from calling Nextdoor.com's Founder/CEO (Nirav Tolia) and Founder/Chief Architect (Prakash Janakiraman) as witnesses at trial. Neither has any personal knowledge on the only issue to be determined at trial: whether Abhyanker acted in bad faith when he registered and began using the domain name www.nextdoor.cm (the ".cm Domain") in December 2011. Tolia and Janakiraman know nothing about what Abhyanker did in this regard other than what they have learned through their counsel, much less what was going on in Abhyanker's head at that time. They therefore have no relevant knowledge on his bad faith, much less unique, personal knowledge that could not be solicited from a different, lower level employee at the company. Indeed, Abhyanker himself has proclaimed each of them "innocent" on the record in his deposition. *See* Exhibit K to Kelly Decl.

There is a simple, but baseless, explanation for Abhyanker's stated intent to call Tolia and Janakiraman: to continue his years-long campaign of harassment against them and Nextdoor.com, which has now spanned more than three years and five different proceedings (one in state court, two in federal court, and two in the TTAB). Abhyanker appears to fantasize that he can now conduct a show trial and make irrelevant witnesses bear the brunt of it. Indeed, his desire to "tell his story"[1] is *only* reason he so irrationally insisted on a trial on this very narrow issue, which so easily could have been avoided. The Court can and should preclude Abhyanker from calling Tolia and Janakiraman as witnesses pursuant to Fed. R. Evid 401 and 403.

---

[1] Abhyanker apparently intends to make a film about his experience with venture capitalists in Silicon Valley, and the entrepreneurs-in-residence who allegedly "borrow" ideas of the pitches they hear, as he originally alleged Tolia and Janakiraman had. *See* Exhibit R to Kelly Decl. (article describing Abhyanker's plans for the film). This could explain the request, back in January 2014, to bring cameras into the courtroom for the hearing on various motions on February 13, 2014 a request the Court denied after Nextdoor.com advised it that the purpose may have been in connection with this putative film. *See* Dkt. Nos. 149, 149-1, 152.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

II. **ARGUMENT**

    A. **Federal Rules Of Evidence 401 And 403 Preclude Abhyanker From Calling Tolia Or Janakiraman As Witnesses At Trial**

To be admissible, evidence must be relevant. *See* Fed. R. Evid. 401; *see King v. Cal. Dept. of Corrections*, No. CIV S-06-0065, 2010 WL 5091058 (E.D. Cal. Dec. 7, 2010) (*in limine*, excluding trial testimony of witness as irrelevant). Even if evidence satisfies the requirements of Rule 401, it will be excluded if "its probative value is substantially outweighed by the danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting of time, or needlessly presenting of cumulative evidence." Fed. R. Evid. 403. The Court has broad discretion to exclude evidence whose potential relevance it deems outweighed by prejudice. *See Sprint/United Mgmt. Co. v. Mendelsohn*, 552 US 379, 384, (2008) ("wide discretion" necessary because Rule 403 "requires an 'on-the-spot balancing of probative value and prejudice, potentially to exclude . . . evidence that has already been found to be factually relevant'") (citation omitted); *see also, Glass v. Phila. Elec. Co.*, 34 F.3d 188, 191 (3d Cir. 1994) (decision to include or exclude evidence under Federal Rules of Evidence 401, 402, and 403 is reviewed for abuse of discretion).

        1. **Abhyanker Cannot Show There Is Any Relevant Testimony To Elicit From Tolia Or Janakiraman Regarding Abhyanker's Own Bad Faith**

The only remaining issue for trial is Abhyanker's bad faith when he registered and used the .cm Domain in December 2011—immediately after Nextdoor.com's public launch—to create a spite site to confuse Nextdoor.com's users and advance his own social networking aspirations. All other claims and counterclaims have been resolved. Even as to Nextdoor.com's remaining cybersquatting claim, the Court has already determined that Nextdoor.com owns and has priority of use in the distinctive NEXTDOOR (Dkt. Nos. 192, 193), so the only issue is what *Abhyanker* was thinking and doing in that December 2011 time frame, not what Tolia and Janakiraman were.

Abhyanker has never been able articulate what relevant testimony he could hope to solicit from Tolia and Janakiraman regarding *his own* bad faith, or purported lack thereof. Indeed, when the relevance of their testimony was before Judge Cousins, he rejected Abhyanker's claim that

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

their depositions could be relevant to the claims remaining in the case at that point—which included, inter alia, Nextdoor.com's claims of cyberpiracy/cybersquatting.  Abhyanker claimed that Tolia and Janakiraman might know about Abhyanker's use of the Fatdoor mark, selection of Lorelei as a pilot neighborhood, Nextdoor.com's business plans and its selection of the NEXTDOOR mark, and (as to Tolia) the need to replace Abhyanker with himself as CEO of Fatdoor, Inc. in 2007.  *See* Dkt. 311 at 4-5; *see also* Dkt. 221 at 3-4.  After indulging Abhyanker's *second* request to take these depositions (the first of which he had already denied) Judge Cousins concluded the proposed depositions were "of questionable relevance" and refused to allow them.  Dkt. 316.[2]  Abhyanker never appealed that denial.

What's more, Abhyanker has not identified either Tolia or Janakiraman in his initial disclosures as having information relevant to his own bad faith.  Instead, the only topics identified by Abhyanker were relevant to claims or defenses already decided or withdrawn:

> Nextdoor.com's selection, adoption, and unauthorized use of the NEXTDOOR mark; Nextdoor.com's purported first use of the NEXTDOOR mark; Nextdoor.com's use and the extent of use of the NEXTDOOR MARK; the likelihood of confusion between Nextdoor.com's unauthorized use of the NEXTDOOR mark and Mr. Abhyanker's NEXTDOOR and FATDOOR trademarks; the *Sleekcraft* factors vis-a-vis Nextdoor.com's use of NEXTDOOR, including, but not limited to, Nextdoor.com's intent in selecting the NEXTDOOR mark and instances of actual confusion; Defendants' misappropriation of the Lorelei trade secret.

*See* Kelly Decl. ¶ 22[3]; *see also Siegel v. Warner Bros. Ent't Inc.*, No. 2:04-cv-08400-ODW-RW , Dkt. 478 (D. Cal. March 13, 2009)(motion in limine to exclude testimony of apex officers granted where witnesses were not identified in initial disclosures by the party seeking to call them at trial, nor had they been deposed).  And now the issues in dispute are even narrower than at the time of these initial disclosures and when Judge Cousin's rejected Abhyanker's prior attempts to seek

---

[2] Judge Cousins previously had rejected Abhyanker's request to re-notice the depositions of Tolia and Janakiraman after he had taken them off calendar after proclaiming their innocence.  *See* Dkt. Nos. 221 (joint letter) & 223 (denying request to take the depositions of Tolia and Janakiraman due to failure to show good cause).

[3] While Nextdoor.com did disclose Tolia and Janakiraman as potentially having information it might rely on about "Abhyanker's bad faith registration and/or use of the www.nextdoor.cm domain name," it also identified Sarah Leary, a co-founder of Nextdoor.com, as possessing that that same information.  *See* Kelly Decl. ¶ 23.  Nextdoor.com will call Ms. Leary to testify at trial.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Tolia and Janakiraman's testimony. *See* Dkt. 340 (September 19 order dismissing Count II for lack of justiciability); Dkt. 361 (granting Nextdoor.com's motion for summary judgment that Abhyanker's use of the NEXTDOOR mark constitutes infringement of Nextdoor.com Inc.'s NEXTDOOR mark). Indeed none of the topics Abhyanker articulated before as relevant for Tolia or Janakiraman have anything to do with the .cm Domain or with Abhyanker's intent in registering it or using it. Dkt. Nos. 221 & 311.

Similarly, that Tolia, in 2007, may have been on a headhunter's long list of potential candidates to replace Abhyanker as CEO of Fatdoor, Inc. does not render his testimony relevant. Even if his name was included on such a list: (i) there is no evidence or reason to believe that Tolia was ever contacted regarding the position at Fatdoor, (ii) no evidence that he received any information about Fatdoor or the name "NEXTDOOR"[4]; and (ii) even if he had, that would have nothing whatsoever to do with Abhyanker's bad faith.[5] Indeed, Abhyanker admitted that he only learned about this list through discovery in this case, which was not filed until November 5, 2012. *See* Dkt. 1; Kelly Decl. ¶ 25, Ex. S. He thus did even know about Tolia's purported inclusion on such list at the time he registered and began using the .cm Domain in December 2011. Thus, any hypothetical connection (of which there was none) between Tolia and Fatdoor in 2007, which Abhyanker could not have even know until well after discovery began in this case, has no bearing on his bad faith in 2011.

Given the complete lack of relevance of any testimony either Tolia or Janakiraman could supply, any attempt to call either of them as a witness should be rejected.

---

[4] When Abhyanker himself spoke up at the hearing before Judge Cousins at which this list was discussed, he could identify no such evidence; to the contrary, he said he wanted to explore whether, in fact, Tolia had any knowledge about Fatdoor "prior … to creating Nextdoor." Kelly Decl. ¶ 25, Ex. S.

[5] To the extent that Abhyanker argues that some active candidates to replace him as CEO of Fatdoor in 2007 might have received access to a confidential Fatdoor beta site, there is no evidence that Tolia was ever an active candidate, was provided with such access, or actually accessed it. In any event, access to a confidential *Fatdoor* site would be irrelevant: Fatdoor is no longer at issue in this case, only Abhyanker's own bad faith in using the .cm Domain.

NEXTDOOR.COM'S MOTION *IN LIMINE NO. 1* TO PREVENT ABHYANKER FROM CALLING TOLIA OR JANAKIRAMAN AS A WITNESS  4  CASE NO. 3:12-CV-05667-EMC-NMC

### 2. Given The Absence Of Relevance, Abhyanker's Desire To Call Tolia And Janakiraman As Witnesses Is Nothing More Than Harassment, Would Drive Up The Cost Of Litigation Rendering Exclusion Under Fed. R. Evid. 403 Appropriate

Even if Tolia or Janakiraman could offer any testimony remotely relevant to Abhyanker's bad faith, that unlikely possibility is outweighed by unfair prejudice to Nextdoor.com and the waste of time due to duplicative testimony. As such, Tolia's and Janakiraman's testimony should also be excluded under Rule 403. *See City of Long Beach v. Standard Oil Co. of Calif.,* 46 F.3d 929 (9th Cir. 1995) (upholding exclusion of minimally probative evidence pursuant to rule 403 balancing).

Courts have long recognized the potential for harassment and undue burden posed by seeking testimony from a company's senior most employees. As such, in virtually every case to address the issue, courts have refused to allow discovery of these employees unless and until the party seeking that testimony demonstrates that (i) the proposed witness has "unique personal knowledge" relevant to the case, and (ii) that there are no other less intrusive means of obtaining the information sought. *See, e.g., Affinity Labs of Texas v. Apple Inc.*, No. C 09-4436, 2011 U.S. Dist. LEXIS 53649, at *43-*44 (N.D. Cal. May 9, 2011) (denying deposition of Steve Jobs because he did not have unique knowledge); *In re TFT-LCD (Flat Panel) Antitrust Litigation*, No. M 07-1827 SI, MDL No. 1827, 2011 U.S. Dist. LEXIS 85608, at *18 (N.D. Cal. Aug. 1, 2011); *Abarca v. Merck & Co., Inc.,* No. 1:07cv0388, 2009 U.S. Dist. LEXIS 71300, at * 25-*31 (E.D. Cal. Aug. 3, 2009) (barring deposition of CEO that did not have unique personal knowledge relevant to the case); *Celerity, Inc. v. Ultra Clean Holding, Inc.*, No. C 05-4374, 2007 U.S. Dist. LEXIS 8295, at *10-*14 (N.D. Cal. Jan. 25, 2007) (barring deposition of CEO where no unique personal knowledge relevant to the litigation).[6]

---

[6] *See also, Thomas v. IBM*, 48 F.3d 478, 484 (10th Cir. 1995) (upholding trial court's protective order because the plaintiff had not demonstrated "that the information she seeks to obtain from [IBM's chairman] could not be gathered from other IBM personnel, for whom a deposition might have been less burdensome"); *Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979) (affirming trial court's order that plaintiff was entitled to the deposition of the defendant's president only if other employees "did not have more personal knowledge of the facts."); *Palmer v. Wells Fargo & Co.*, No. 07-cv-02061, 2009 U.S. Dist. LEXIS 45109 (D. Colo. 2009) (denying deposition of Vice President where he did not have unique knowledge).

This rule reflects a common sense understanding that seeking testimony of a company's CEO and other senior employees can be for purposes of harassment rather than legitimate fact gathering. *Celerity, Inc.*, 2007 U.S. Dist. LEXIS 8295, at *8 ("[v]irtually every court that has addressed deposition notices directed at an official at the highest level or 'apex' of corporate management has observed that such discovery creates a tremendous potential for abuse or harassment."); *Serrano v. Cintas Corp.*, No. 04-40132, 06-12311, 2010 U.S. Dist. LEXIS 57624, at *8-*9 (E.D. Mich June 10, 2010) (this "doctrine recognizes the unique and important position of chief executive officers, and the potential for harassment and abuse…"); *Mulvey v. Chrysler Corp.*, 106 F.R.D. 364, 366 (D. RI 1985) (refusing deposition of Chrysler's CEO noting that "he is a singularly unique and important individual who can be easily subjected to unwarranted harassment and abuse. He has a right to be protected, and the courts have a duty to recognize his vulnerability.").

While traditionally the burden for justifying an order preventing testimony rests with the movant, in the context of "apex" officers, that burden shifts to the party seeking the testimony to show why it is justified. *See, e.g., Affinity Labs of Texas*, 2011 U.S. Dist. LEXIS 53649, at *43-*44 ("[h]ere, Affinity cannot meet its burden to show that Mr. Jobs has 'unique' and 'non-repetitive' knowledge regarding any relevant topic that is not available through less burdensome means."); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 U.S. Dist. LEXIS 85608, at *18. (No deposition of CEO where proponent of testimony did not show unique personal knowledge).

Under this reasoning, the testimony of neither Tolia nor Janakiraman is warranted, and it should be excluded under Rule 403. They have no information relevant to the narrow question of Abhyanker's bad faith intent, in December 2011, that is unique to them and that cannot be obtained by other less intrusive means. Even more, as founders and executives of Nextdoor.com, a busy and growing company, Tolia and Janakiraman, have many daily responsibilities and for them to be forced to take time away from those duties to prepare for and attend trial would unfairly burden both them as individuals and the Company overall. Allowing Abhyanker to attempt to elicit irrelevant testimony from Nextdoor.com's founders would be a waste of the Court's time and judicial resources. Given that Nextdoor.com has waived its claim to statutory

damages and, as this Court has noted, the issues to be determined at trial are extremely narrow, exclusion under 403 is appropriate.

The potential for harassment here is patent and substantially greater even than at a deposition. A trial places the witness in public, requires the witness to maintain time flexible to the Court's schedule and, where there is no apparently relevant reason for inquiry in the first place, and exposes the witnesses to random attacks or insults that have no probative value on the issues to be tried. Abhyanker has brought and dismissed countless claims against Nextdoor.com and against these two senior officers. He has proclaimed their innocence in deposition. *See* Kelly Decl. Ex. K (RA Tx. at 385:20-21). As noted above and in Nextdoor.com's contemporaneously filed *Motion in Limine* No. 2—related to Abhyanker's surreptitious recording of his settlement meeting with Tolia, Abhyanker's—the only possible reason for attempting to call Nextdoor.com's most senior executives as witnesses is to harass them and cost his nemesis the value of their time. Such tactics are a waste of not only Nextdoor.com's time and money, but also a waste of judicial resources and should not be permitted.

Finally, to the extent either Tolia or Janakiraman had relevant information that was not outweighed by the harassment of calling them to testify, their testimony would be duplicative of information Abhyanker could solicit from other, non-apex witnesses. Sarah Leary, another Nextdoor.com co-founder who Nextdoor.com plans to present as a witness at trial, can testify on the topics of Nextdoor.com's founding, operation, and trademark rights. Thus, for this additional reason, Tolia or Janakiraman's duplicative testimony should be excluded under Rule 403.

## **CONCLUSION**

Abhyanker's has yet to articulate any concrete, non-unique testimony he could solicit from Tolia or Nirav relevant to his own bad faith registration of the .cm Domain and use of the NEXTDOOR mark. His inability to do so lays bare his true motive. Given the absence of relevance to the narrow issue to be resolved at trial, in particular balanced against the burden on Nextdoor.com and the waste of time and harassment of, at most, duplicative testimony, Nextdoor.com respectfully requests that this Court prevent Abhyanker from calling Nirav Tolia or Prakash Janakiraman as witnesses at trial.

| | | |
|---|---|---|
| 1 | Dated: October 24, 2014 | FENWICK & WEST LLP |
| 2 | | |
| 3 | | By: /s/ *Laurence F. Pulgram* |
| 4 | | Laurence F. Pulgram |
| 5 | | Attorneys for Plaintiff<br>NEXTDOOR.COM, INC. |

NEXTDOOR.COM'S MOTION *IN LIMINE NO. 1* TO PREVENT ABHYANKER FROM CALLING TOLIA OR JANAKIRAMAN AS A WITNESS — 8 — CASE NO. 3:12-CV-05667-EMC-NMC

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DAVID S. LAVINE, SBN 166744
dave@legalforcelaw.com
NICHOLAS M. GEROVAC, SBN 289910
nick@legalforcelaw.com
LEGALFORCE RAJ ABHYANKER, P.C.
1580 W. El Camino Real, Suite 13
Mountain View, California 94040
Telephone: 650.965.8731
Facsimile: 650.989.2131

Attorneys for Defendant
Raj Abhyanker

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NEXTDOOR.COM, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>RAJ ABHYANKER, an individual,<br><br>Defendant. | Case No. 3:12-cv-05667-EMC-NMC<br><br>**DEFENDANT RAJ ABHYANKER'S OPPOSITION TO PLAINTIFF NEXTDOOR.COM, INC.'S MOTION IN LIMINE NO. 1 TO EXCLUDE TESTIMONY OF ITS CHIEF EXECUTIVE OFFICER NIRAV TOLIA AND CHIEF TECHNOLOGY OFFICER PRAKASH JANAKIRAMAN** |

Defendant Raj Abhyanker ("Abhyanker") opposes the motion *in limine* of plaintiff Nextdoor.com, Inc. ("Nextdoor.com") to exclude the testimony of its CEO Nirav Tolia ("Tolia") and its CTO Prakash Janakiraman ("Janakiraman") in its entirety. Abhyanker opposes this motion because both Tolia and Janakiraman can speak directly to Abhyanker's earlier work on the Nextdoor concept and in the neighborhood-based social networking field due to professional interactions with him. When a defendant is accused of bad faith, the defendant needs to have latitude to call those witnesses who can shed light on his work and state of mind to show otherwise. Tolia and Janakiraman will not be on the witness stand for long, but their testimony is

1 expected to shed light on Abhyanker's intent leading up to the time of the alleged acts of
2 cybersquatting in 2011 and should therefore be permitted.

3 Pertinent Facts

4 Before becoming CEO of Nextdoor.com, Tolia was considered for CEO of Fatdoor I, a
5 company closely associated with Abhyanker. At that time, there was opportunity not only for
6 Tolia to submit and share his thoughts on the direction of the neighborhood-based social
7 networking industry, but also to hear from Abhyanker and others about the work already done to
8 build the nascent industry, and to plot direction. Abhyanker was not an unknown to Tolia; rather,
9 Abhyanker was a leading figure in the early days of this industry, who was excited about the
10 Nextdoor opt-in concept and the broader Fatdoor iteration. This is why it is puzzling that when
11 Tolia signed the Nextdoor trademark application in 2011, he claimed that he was unaware of
12 anyone else who might claim rights to the Nextdoor name.

13 For his part, it is anticipated that Janakiraman can testify as to his role in selecting the
14 Nextdoor name after speaking with and reading a completed survey from his friend and
15 Abhyanker colleague Sandeep Sood, following initial testing of the still-unnamed Nextdoor
16 concept in Menlo Park, and following the pivoting of the failed pre-Nextdoor.com venture into
17 the more promising Nextdoor.com venture. Janakiraman was familiar was Abhyanker's work
18 and presence in the field, and understood that the new Nextdoor.com was not entering an empty
19 arena, but was building upon entrants, such as Abhyanker, who had been there years before.

20 It is disturbing to Abhyanker that Nextdoor.com seeks to present nearly 30 witnesses as to
21 his alleged bad faith, yet at the same time seeks to deprive Abhyanker of presenting relatively
22 short testimony from a smaller group of witnesses who would testify as to his history and good
23 faith in working with the Nextdoor concept. Abhyanker should not have to hear himself being
24 accused, apparently by more than two dozen witnesses lined up against him, without equal time
25 and opportunity to show his hard work and good faith in developing neighborhood-based social
26 networking with the Nextdoor concept and others, especially by those who know the field and
27 those in it well.

Argument

Nextdoor.com should not be able to insulate its managers from serving as witnesses in this trial, especially with the hard-earned reputation of Abhyanker at stake. Companies are quick to keep their upper-level managers out of trials, even when it is those very managers who are provoking the trial against a perceived competitor. This is not an instance in which a consumer bringing a small claim is seeking to have the CEO of a Fortune 500 company testify; rather, Abhyanker's very reputation, livelihood and ability to work further in this industry, or perhaps others, is at stake – that is, the stakes could not be much greater. As such, attention must be paid by Abhyanker to building a formidable defense – and he asks the Court to accommodate that defense as much as possible.

The requested testimony is relevant and not harassing

Nextdoor.com is correct that testimony must be relevant before it can be admitted. Fed. R. Evid. 401. And so Abhyanker has selected just a few matters to inquire into with Tolia and Janakiraman. With respect to Tolia, Abhyanker plans to ask about (1) Tolia's entry into the field of neighborhood-based social networking; (2) what Tolia knew through interest in managing Fatdoor I or from other sources about Abhyanker and his earlier work in the field; (3) whether Tolia knew about Abhyanker's interest in the Nextdoor concept, in obtaining that domain over years of effort; and the steps Abhyanker had taken to build the Nextdoor concept before Tolia took over at Nextdoor.com; and (4) why Tolia would sign a registration application noting of no one's interest in the Nextdoor name apart from Nextdoor.com's, even though Abhyanker had perennially and vocally expressed interest. With respect to Janakiraman, Abhyanker plans to ask about (1) his relationship with Abhyanker's colleague and longtime friend Sandeep Sood; (2) whether he obtained any information about the Nextdoor name or concept from Mr. Sood; (3) what he knew of Abhyanker's work and work ethic with the Nextdoor social networking concept prior to or early in his association with the company that was to pivot to Nextdoor.com. From these limited inquiry areas, Abhyanker establishes testimonial relevance, as well as a measured approach to obtaining needed testimony from two members of the exceedingly busy

Nextdoor.com executive team.

Abhyanker agrees with the cases cited by defendant to support the notion that the Court has clear authority to exclude testimony based on the risk of unfair prejudice or waste of time pursuant to Fed. R. Evid. 403. The waste-of-time argument, coming from a party which is teeing up nearly 30 witnesses in an attempt to prove one element of one claim, rings hollow – if any party is raising a concern of duplication or cumulativeness, it is Nextdoor.com. For his part, Abhyanker has not listed, and does not plan to call, a plethora of witnesses from Nextdoor.com, as he does not know them sufficiently for them to speak to his state of mind; it is Tolia and Janakiraman whom Abhyanker knows, and who he believes can best attest to his state of mind from Nextdoor.com. They, from among all the Nextdoor.com employees, have the "unique personal knowledge" required by the cases cited by Nextdoor.com for their testimony to be deemed relevant.

Further, Nextdoor.com makes no effort to support concerns of unfair prejudice arising from its officers' testimony – likely because there would be none. Their testimony would be relatively short so as not to remove them from their load of "daily responsibilities" for long, and would, much like the other witnesses on Abhyanker's list, speak to his work and work ethic in the area of neighborhood-based social networking, and to his state of mind toward increasing connection and connectivity among neighbors and within neighborhoods.

This is not a case with facts resembling those in the cases cited by Nextdoor.com in which a consumer of a company hopes to examine the highest executives of a company over a perceived problem with product or service. Here, the requested witnesses are equals and, in the broader sense, colleagues, of Abhyanker. With so much on the line for Abhyanker, he should be permitted to call these witnesses.

Conclusion

Nextdoor.com's approach has been to aim broadly – proposing nearly 400 documents and 30 witnesses – in preparing its case-in-chief, yet at the same time it seeks to deprive Abhyanker – who has much more at stake here than Nextdoor.com – from taking testimony from just two of its

-4-

officers.  Abhyanker should have his opportunity to question the witnesses who motivated the case against him, and to ask them about the single issue – his intent and state of mind with respect to his Nextdoor work leading up to the alleged acts of cybersquatting in 2011 – remaining to be adjudicated.

          Respectfully submitted,

Dated:  October 31, 2014          LEGALFORCE RAJ ABHYANKER, P.C.

          __/s/ david lavine_____
          DAVID LAVINE
          Attorney for Defendant RAJ ABHYANKER