1   DAVID S. LAVINE, SBN 166744
    dave@legalforcelaw.com
2   NICHOLAS M. GEROVAC, SBN 289910
    nick@legalforcelaw.com
3   LEGALFORCE RAJ ABHYANKER, P.C.
    1580 W. El Camino Real, Suite 13
4   Mountain View, California 94040
    Telephone: 650.965.8731
5   Facsimile: 650.989.2131

6   Attorneys for Defendant
    Raj Abhyanker
7

8
                    UNITED STATES DISTRICT COURT
9
                   NORTHERN DISTRICT OF CALIFORNIA
10
                      SAN FRANCISCO DIVISION
11

12  NEXTDOOR.COM, INC., a Delaware         Case No. 3:12-cv-05667-EMC-NMC
    corporation,
13                                         **DEFENDANT RAJ ABHYANKER'S MOTION
                        Plaintiff,         IN LIMINE No. 1 TO EXCLUDE EVIDENCE
14                                         AND ARGUMENT OF ALLEGED
                v.                         SPOLIATION**
15
    RAJ ABHYANKER, an individual,
16
                        Defendant.
17

18          Defendant Raj Abhyanker ("Abhyanker") hereby moves to exclude all evidence and

19  argument of his alleged discovery spoliation and other abuses, due to the irrelevance of this

20  material to the remaining claim and defenses at issue, and because consideration of any such

21  evidence has been deferred by court order until following trial.

22          **Pertinent Procedural Posture**

23          During the discovery phase of this case and since, in all manner of non-germane in-court

24  and pre-trial contexts, plaintiff Nextdoor.com, Inc. ("Nextdoor.com") has persistently and

25  offensively made allegations of evidence spoliation against Abhyanker, principally concerning his

26  supposed manipulation of computerized documents and his misstatements about his discovery

27  efforts.  Even though Nextdoor.com was ordered to defer discovery on and consideration of

                                        -1-

alleged spoliation and discovery abuse until after trial (Dkt. 241), Nextdoor.com nevertheless engaged testifying experts in forensic document examination and forensic computing for presentation during trial.  The documents made subject to allegations of spoliation in its experts' reports and testimony include:  a PowerPoint presentation created for an entity known as Fatdoor, Inc. in 2007, describing its early activities; other executive summaries created for Fatdoor, Inc. in 2007; a confidentiality agreement for Sandeep Sood, dated 2006; the contents of a diligence CD prepared by Fatdoor, Inc. in 2007 as it pursued venture capital funding, as well as the covers of that diligence CD; the source code for eDirectree.com, a website Abhyanker operated in 2008; and an assignment agreement with LegalForce, executed in 2007.

These documents were perhaps relevant earlier in the case, when Abhyanker was pursuing his counterclaim of trade secret misappropriation.  But they have no further relevance now.  The case has since been narrowed to one claim - trademark cybersquatting – and even further to a single element of, and associated defenses to, that claim -- a consideration of Abhyanker's good faith or bad faith in registering and using a domain known as nextdoor.cm.  The Court has made clear that trial of this case is limited to determining whether, at the time of registering the domain name, Abhyanker had a bad faith intent to divert profit from the use of that domain from Nextdoor.com.  Abhyanker registered this domain name on December 28, 2011, and used the domain for not long thereafter -- years after the creation of any of the documents subject to the spoliation accusations.

**Argument**

Throughout the discovery and dispositive motions phases of this litigation, Nextdoor.com has consistently tried to blend together evidence relevant to two distinct varieties of alleged bad faith on the part of Abhyanker.  The first species speaks to whether, at the time of registration of the nextdoor.cm domain or by its use thereafter, Abhyanker demonstrated bad faith in order to divert profit from Nextdoor.com.  This species of bad faith is the only kind of bad faith relevant to the remaining claim in this case.  The second species of bad faith relates to Abhyanker's alleged discovery abuses of which he has been accused by Nextdoor.com.  This species of bad

1    faith evidence is not at all relevant to the "bad faith with intent to profit" element of the

2    cybersquatting claim that remains at issue in this case.

3           Indeed, the Court has recognized Nextdoor.com's efforts to blur this distinction, together

4    with the risk it poses for overwhelming the trial, when it ordered that "discovery relevant to

5    Abhyanker's alleged bad faith shall be focused on the affirmative claims remaining in the case…

6    which may encompass 'bad faith intent to profit from [a protected] mark'" and that "discovery

7    directed to showing bad faith/fraud generally in support of Nextdoor.com's future claim for

8    attorney's fees should be deferred until after adjudication on the merits of the substantive claims."

9    (Dkt. 241).  Unfortunately, Nextdoor.com has blithely ignored the distinction drawn by the Court,

10   and has doggedly pursued discovery of alleged bad faith arising during discovery even though it

11   was pointedly directed not to, including by engaging two forensic witnesses to give testimony at

12   trial about alleged discovery abuse which are the subject of separate motions in limine, and by its

13   repeated stinging references to alleged spoliation at the past two motion hearings.

14          Nextdoor.com has shown no respect for this Court's order preventing presentation or

15   consideration of evidence spoliation evidence and arguments until after trial.  Instead, it has

16   attempted at all junctures to give this issue top-billing and center-stage.  Nextdoor.com must be

17   directed, once again, to stand down from its attempt to present this kind of bad faith evidence at

18   trial or during pre-trial activities, and to be limited to presentation of evidence and argument

19   which objectively supports Abhyanker's alleged bad faith to profit through use of the

20   nextdoor.cm domain, as required for cybersquatting liability.  Accordingly, all evidence and

21   argument of bad faith arising from purported evidence spoliation or other manner of alleged

22   discovery abuse must be excluded from trial and deferred until any post-trial motions.

23                                                   Respectfully submitted,

24

25   Dated: October 24, 2014                         LEGALFORCE RAJ ABHYANKER, P.C.

26                                                     /s/ David Lavine
                                                      DAVID LAVINE
27                                                    Attorney for Defendant RAJ ABHYANKER

                                              -3-

1  LAURENCE F. PULGRAM (CSB No. 115163)
   lpulgram@fenwick.com
2  JENNIFER L. KELLY (CSB No. 193416)
   jkelly@fenwick.com
3  ILANA RUBEL (CSB No. 221517)
   irubel@fenwick.com
4  GUINEVERE L. JOBSON (CSB No. 251907)
   gjobson@fenwick.com
5  FENWICK & WEST LLP
   555 California Street, 12th Floor
6  San Francisco, CA  94104
   Telephone:    415.875.2300
7  Facsimile:    415.281.1350

8  ERIC BALL (CSB No. 241327)
   eball@fenwick.com
9  MATTHEW BECKER (CSB No. 291865)
   mbecker@fenwick.com
10 FENWICK & WEST LLP
   Silicon Valley Center
11 801 California Street
   Mountain View, CA  94041
12 Telephone:    650.988.8500
   Facsimile:    650.938.5200

13
14 Attorneys for Plaintiff
   NEXTDOOR.COM

15          UNITED STATES DISTRICT COURT

16         NORTHERN DISTRICT OF CALIFORNIA

17             SAN FRANCISCO DIVISION

18

19 NEXTDOOR.COM, INC., a Delaware          Case No.: 3:12-cv-05667-EMC-NMC
   corporation,
20                                         **PLAINTIFF NEXTDOOR.COM'S**
                Plaintiff,                 **OPPOSITION TO DEFENDANT RAJ**
21                                         **ABHYANKER'S *MOTION IN LIMINE***
        v.                                 **NO. 1 TO EXCLUDE EVIDENCE OF**
22                                         **SPOLIATION**

23 RAJ ABHYANKER, an individual,           Final Pretrial
                                           Conference:   November 25, 2014
24              Defendant.                 Time:         2:30 p.m.
                                           Courtroom:    5, 17th Floor
25                                         Judge:        Hon. Edward M. Chen
                                           Trial Date:   December 8, 2014
26

27

28

Fenwick & West LLP
Attorneys at Law
San Francisco

# INTRODUCTION

Nextdoor.com opposes Abhyanker's Motion *in Limine* No. 1 ("MIL No. 1") to exclude evidence, as he puts it, "of his discovery spoliation and other abuses." This motion seeks to exclude not just evidence Abhyanker spoliated, but three categories of evidence he manufactured, during the pendency of his years-long campaign of harassment against Nextdoor.com, to support his patently false assertion that he had priority of use in the NEXTDOOR mark. Abhyanker's desire is understandable—the evidence is damning, to say the least—but the motion is groundless.

This evidence is not just relevant to the attorneys' fees motion Nextdoor.com will bring. It is directly relevant, indeed critical, to challenging Abhyanker's assertion that he cannot be held liable under the Anticybersquatting Consumer Protection Act (the "ACPA") because he reasonably believed he had rights in the NEXTDOOR mark that justified his use of the www.nextdoor.cm domain (the ".cm Domain"), a theory he intends to present at trial. *See* Abhyanker's Disclosure of Witnesses at (describing his own proposed testimony). Abhyanker knew he had no such "senior rights" to the name NEXTDOOR, as this evidence confirms. The fact that he manufactured it to claim otherwise is directly relevant to and will drive a stake in his theory that he reasonably believed his use of the .cm Domain was lawful.

The evidence Abhyanker seeks to exclude is equally critical to challenge his credibility, since his *subjective* intent in registering and using the .cm Domain must be determined at trial. *See* 15 U.S.C §1125(d)(1)(B)(ii). Hence, Abhyanker's penchant for telling the truth about his actions and intentions will play center stage. This evidence goes directly to that issue. As explained here, it strongly supports Nextdoor.com's long-held view that Abhyanker knew he had no priority in the NEXTDOOR mark, and could not possibly have had a good faith basis to believe otherwise when he registered the .cm Domain for use in competing with Nextdoor.com. Moreover, he manufactured the purported evidence of use of the NEXTDOOR mark on his eDirectree website before this lawsuit was even filed, as Nextdoor.com alleged in its Complaint. Dkt. 1, ¶ 41-48 (describing Abhyanker's inclusion in 2012 of a "Nextdoor™ Neighbors" feature on his eDirectree where that feature had previously been called "Friends"). The evidence is thus admissible, at a minimum, under Fed. R. Evid. 404(b)(2), 607, and 608(b). The question for the

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    Court is not whether the evidence should come in, but how much time should be devoted to it.

2          Finally, Abhyanker is incorrect in his implication that the Court has ever ordered that any

3    of this evidence is not probative of the element of bad faith subject to trial.  What the Court

4    directed (and Nextdoor.com honored) was that discovery be confined to "the affirmative claims in

5    the case" deferring discovery "directed to showing bad faith/fraud generally in support of

6    Nextdoor.com's future claim for attorneys' fees."  Dkt. 241.  Until now there has been no

7    presentation of how the evidence of fabrication and spoliation affects the issues to be tried.  Nor

8    does the Court's direction mean that overlapping evidence—which is both probative of

9    Abhyanker's lack of a good faith basis to claim senior use of the mark, and subjects him to

10   attorneys' fees—should be excluded from trial of the former issue.  When the evidence is

11   considered, its relevance to this trial is plain.  The motion should be denied.

12                                **BACKGROUND**

13         Nextdoor.com publicly launched its social networking site for neighbors on October 26,

14   2011.  Within hours, Abhyanker sent an unsolicited email to Nextdoor.com's CEO,

15   congratulating him on the launch and stating that he had pursued a similar business concept under

16   the name Fatdoor (*not* Nextdoor).  In that email, he asked Tolia (whom he had never met) if he

17   wanted to hire him as general counsel and part of the "founding team."  Dkt. 150-1 ¶ 41 & Ex. D.

18   Tolia did not respond.  *Id*. at ¶ 41.  Feeling spurned, Abhyanker sued Nextdoor.com for

19   misappropriation and related claims in Santa Clara Superior Court less than two weeks later (the

20   State Court Action).  *Id*.  Soon thereafter, he registered the .cm Domain on December 28, 2011

21   and began using the NEXTDOOR mark on that site.  Declaration of Jennifer L. Kelly in Support

22   of Plaintiff Nextdoor.com, Inc.'s Opposition to Motions *in Limine* Nos. 1, 2 and 4 ("Kelly Opp.

23   Decl.") ¶ 5, Ex. 4.  He admitted at deposition that he did so because he was mad/sad/angry.  *Id*. at.

24   ¶ 3, Ex. 2 (Abhyanker Depo.Tx. at 530:3-531:4; 532:15-20).

25         Nextdoor.com demurred in the State Court Action, challenging Abhyanker's standing to

26   assert claims on the ground that his pleadings clearly showed such claims were owned, if anyone,

27   by his former employer Fatdoor, Inc.  Abhyanker voluntarily dismissed that case in March 2012.

28   Meanwhile, in January and February 2012, Abhyanker commenced two separate opposition

1 proceedings in the Trademark Trial and Appeals Board challenging Nextdoor.com's application

2 to register the NEXTDOOR mark.  Abhyanker specifically asserted his use of the .cm Domain as

3 a basis for one of those oppositions.  *Id*. at. ¶ 6, Exs. 5-6.  At some point during this period,

4 Abhyanker manufactured evidence that he claimed showed that he had been using the

5 NEXTDOOR mark on his eDirectree site since before Nextdoor.com's public launch, and also

6 cited that evidence in support of his oppositions in the TTAB.  *Id.*

7       On November 5, 2012, Nextdoor.com filed this suit for declaratory relief, trademark

8 infringement and violation of the ACPA.  Within days, Abhyanker removed all content on the

9 .cm Domain.  *Id*. at ¶ 7, Ex. 7.  He initially defended this case aggressively and asserted numerous

10 counterclaims premised, *inter alia*, on his alleged senior use of the NEXTDOOR mark.  But after

11 his fabrications and spoliations slowly came to light, Abhyanker conceded that he did not, in fact,

12 have priority of use in that mark.  *See* Dkt. 192.  The Court subsequently entered judgment on

13 Nextdoor.com's declaratory relief claim that Nextdoor.com had priority of use in the

14 NEXTDOOR mark and enjoined further use by Abhyanker.  Dkt. 193.  It later granted summary

15 judgment on Nextdoor.com's claim for trademark infringement, finding that Abhyanker's use of

16 the NEXTDOOR mark, including on the .cm Domain, was likely to confuse.  Dkt. 361.

17       Despite all of this, Abhyanker now indicates he intends to present at trial testimony that he

18 reasonably believed he had senior rights in the NEXTDOOR mark at the time he registered and

19 for the full year he used the .cm Domain.  *See* Abhyanker's Disclosure of Witnesses, Abhyanker

20 testimony.  In an effort to exclude the documentary evidence flatly contradicting such testimony,

21 he has the gall to argue that it was manufactured *after* he registered the .cm Domain, and hence,

22 cannot be relevant to his state of mind at the time of registration.  Abhyanker's reliance on this

23 temporal distinction is utterly misplaced.  For one thing, there is no temporal distinction.  His use

24 of the .cm Domain occurred between the period December 2011 and November 2012—and thus

25 covers the period when some of fabrications occurred.  Second, and more importantly, the fact

26 that Abhyanker fabricated facts to support his claim of "good faith" belief in his senior status

27 (regardless of when it occurred) shows that he could not have actually or reasonably believed,

28 during this 2011- 2012 time period, that he had senior rights in the NEXTDOOR mark.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

<u>ARGUMENT</u>

2    **I.    ABHYANKER'S FABRICATIONS ARE DIRECTLY RELEVANT TO THE BAD
3          FAITH 'INTENT TO PROFIT' ELEMENT AND SAFE HARBOR OF THE ACPA**

4          Abhyanker's motion asserts that the bad faith element of the ACPA is limited to a "bad

5    faith intent to divert profits" away from Nextdoor.com, and hence, cannot encompass any of the

6    bad acts (including fabrication) he engaged in. *See* MIL No. 1 at 2. This is wrong for two

7    reasons. *First*, Abhyanker's narrow limitation to "diversion" does not comport with the language

8    of the ACPA (15 U.S.C. § 1125(d)(1)(B)(i)) or case law interpreting bad faith to be much broader

9    than this. Rather, the bad faith element of the ACPA reaches any form of profit seeking

10   activities, including confusing customers (as this Court has already held Abhyanker's activities

11   did); obtaining advantage in competition with a mark holder; or otherwise seeking to leverage

12   registrations to gain some financial advantage. *See e.g., GoPets Ltd. v. Hise*, 657 F.3d 1024, 1032

13   (9th Cir. 2011) (bad faith found where evidence showed defendant intended to divert traffic by

14   confusing consumers); *Super-Krete Int'l, Inc. v. Sadleir*, 712 F. Supp. 2d 1023, 1033 (C.D. Cal.

15   2010) (bad faith element likely met where defendants used a domain name "confusingly similar"

16   to a competitor's mark solely to route potential customers to defendant's website); *Rearden LLC

17   v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1220-21 (9th Cir. 2012) ("Rearden Commerce acted

18   in bad faith by seeking to gain leverage in an ongoing trademark dispute."); *DSPT Int'l, Inc. v.

19   Nahum*, 624 F.3d 1213, 1218-19 (9th Cir. 2010) (bad faith "intent to profit" found where

20   defendant registered domain to use as leverage to obtain money he believed plaintiff owed him);

21   *Lahoti v. VeriCheck, Inc.*, 586 F.3d 1190, 1202-03 (9th Cir. 2009) (defendant acted in bad faith

22   where he used domain name to demand money); *Garden of Life, Inc. v. Letzer*, 318 F. Supp. 2d

23   946, 962-63 (C.D. Cal. 2004) (defendants likely had bad faith where, *inter alia*, defendant could

24   not offer a genuine good faith reason for registering the domain).

25         Second, Abhyanker's brief ignores the issue of the ACPA's "safe harbor," which turns on

26   whether Abhyanker subjectively *and* reasonably believed he had the right to register and use the

27   .cm Domain—a claim Abhyanker expressly made in his Defendant's Witness Description,

28   asserting that he "believed he had senior rights to and in the Nextdoor mark." *See* 15 U.S.C

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

§1125(d)(1)(B)(ii) ("Bad faith intent . . . shall not be found in any case in which the court determines that the person believed and had reasonable grounds to believe that the use of the domain name was a fair use or otherwise lawful."); *see also GoPets Ltd.*, 657 F.3d at 1033 (defendants did not qualify for safe harbor where they had no reason to believe they had the right to register identical or confusingly similar domain names); *DSPT Int'l, Inc.*, 624 F.3d at 1219-20 (safe harbor inapplicable even if initial domain name registration was done innocently, when defendant had no reason to believe that continued use was of the mark was lawful).

The evidence Abhyanker seeks to exclude is relevant to both the proper reading of the bad faith element of the ACPA as well as its safe harbor. It shows Abhyanker used the .cm Domain to trump up claims in court and the TTAB against Nextdoor.com for his financial advantage. And it shows he could not possibly have believed, much less reasonably, that he had the right to use the NEXTDOOR mark in connection with that domain when his purported rights rested on fabricated facts. Indeed, there is no logical explanation for his fabrication of the following three categories of evidence, all of which are discussed in greater detail in Nextdoor.com's opposition to Abhyanker's MIL No. 2, other than he knew he had no such rights:

### A.     The EDirectree Site And Source Code

Abhyanker manufactured evidence that he used the NEXTDOOR mark on his eDirectree site in 2009. He submitted that evidence to the Court to support his claim of alleged priority of use in the mark, representing that it depicted the eDirectree site as it appeared "years before" Nextdoor.com's launch in 2011. *See* Dkt. 141, ¶ 7, Ex. D. But as Nextdoor.com learned, that document was created in 2013. *See* McCain Report at 34. It depicts the site as it appeared in 2012, when he first put the NEXTDOOR mark on it to trump up claims against Nextdoor.com and support his opposition to Nextdoor.com's trademark application. *Id.* Abhyanker has no evidence that he ever used NEXTDOOR on any website before that. Worse, he admits that, during the TTAB proceeding, he destroyed the source code for the eDirectree site that would have showed what it actually looked like before 2012. *Id.* at 33-34.

### B.     Fatdoor PowerPoints and CD Covers

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO



## C. The Purported 2007 Legalforce Assignment Agreement

Sometime after Nextdoor.com's launch, exact time unknown, Abhyanker also fabricated an assignment of rights to himself by another entity that he (at one time) controlled, called Legalforce (the "LegalForce Agreement"). *Id.* at ¶ 11 Ex. 13. His claim of good faith *depends* on that fabricated document, as he claims that this is how he, rather than LegalForce, had rights in the NEXTDOOR name. *See id.* at ¶ 3, Ex. 2 (at 62:2-10). As described in Nextdoor.com's Opp. to MIL No. 2, all records suggest that this assignment was fabricated, vitiating any claim of good faith.

## II. ABHYANKER'S FABRICATIONS ARE INDEPENDENTLY ADMISSIBLE AS CHARACTER EVIDENCE UNDER FED. R. EVID. 404(b)(2), 607, AND 608(b)

Above and beyond their direct relevance to Abhyanker's purported good faith belief in his rights, Abhyanker's fabrications are independently admissible for other important purposes: to demonstrate his motive and plan, to challenge his credibility, and to challenge his character for untruthfulness. *See* Fed. R. Evid. 404(b)(2) (prior bad acts or behavior admissible to show "[proof of] motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or lack of accident"); *Compana, LLC. v. Aetna, Inc.*, No. C05-0277L, 2006 WL 829111, at *2 (W.D. Wash. Mar. 27, 2006) (sale and registration of other domain names relevant and admissible to determine bad faith under the ACPA); *see also Safeway Ins. Co. v. Botma*, No. CIV00-553-

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    PHX RCB, 2003 WL 24100783, at *2 (D. Ariz. Mar. 7, 2003) *aff'd*, 129 F. App'x 355 (9th Cir.

2    2005) (reference to another court's finding that plaintiff had breached the duty of *good faith and*

3    *fair dealing* was not improper character evidence because current case involved a *bad faith*

4    counterclaim against plaintiff; thus, such evidence was proper);  Fed. R. Evid. 607 ("Any party…

5    may attack the witness's credibility"); Fed. R. Evid. 608(b) (specific instances of witness's

6    conduct allowed on cross if probative of the character for untruthfulness of the witness); *United*

7    *States v. Abel*, 469 U.S. 45, 55 (1984) (cross-examination of a witness permissible under Rule

8    608(b) to show bias and *motive to commit perjury*).

9          In particular, under Rule 404(b)(2) Abhyanker's fabrications show his overarching

10   motive, intent and plan to injure and obtain financial benefit from Nextdoor.com, even to the

11   point of obstruction of justice.  His deliberate and offensive acts also show that his registration

12   and use of the .cm Domain was not based on some mistaken or erroneous belief that he had rights

13   in the NEXTDOOR name.  *Compare* Defendant's Witness Disclosure for his testimony

14   (describing "honest intentions" and purported regret "if it was a misstep").  Rather, his conduct

15   shows that he registered and used that site as part of a deliberate plan to harass Nextdoor.com and

16   usurp its brand and mark after its launch—conduct that is certainly bad faith under the ACPA.

17         Finally, that Abhyanker invented claims and fabricated documents to support them

18   demonstrates his lack of credibility under Fed. R. Evid. 607 and his character for untruthfulness

19   under Fed. R. Evid. 608(b).  Thus, there is also no question that Nextdoor.com should be

20   permitted to use this conduct to impeach Abhyanker.

21                                        **CONCLUSION**

22         For the foregoing reasons, Abhyanker's MIL No. 1 should be denied in its entirety.

23   Dated:   October 31, 2014                    FENWICK & WEST LLP

24

25                                      By: /s/ *Laurence Pulgram*
                                            Laurence F. Pulgram
26
                                          Attorneys for Plaintiff
27                                        NEXTDOOR.COM

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO