1
DAVID S. LAVINE, SBN 166744
dave@legalforcelaw.com
2
NICHOLAS M. GEROVAC, SBN 289910
nick@legalforcelaw.com
3
LEGALFORCE RAJ ABHYANKER, P.C.
1580 W. El Camino Real, Suite 13
4
Mountain View, California 94040
Telephone: 650.965.8731
5
Facsimile: 650.989.2131

6
Attorneys for Defendant Raj Abhyanker

7

8
# UNITED STATES DISTRICT COURT

9
## NORTHERN DISTRICT OF CALIFORNIA

10
### SAN FRANCISCO DIVISION

11

12
NEXTDOOR.COM, INC., a Delaware
corporation,

Case No. 3:12-cv-05667-EMC-NMC

13
                    Plaintiff,

**DEFENDANT RAJ ABHYANKER'S MOTION IN LIMINE No. 4 TO EXCLUDE THE TESTIMONY OF EXPERT WITNESS M. PATRICIA FISHER**

14
       v.

15
RAJ ABHYANKER, an individual,

16
                    Defendant.

17

18

19
        Defendant Raj Abhyanker ("Abhyanker") hereby moves to exclude the testimony of

20
expert witness M. Patricia Fisher, due to the irrelevance of her opinions to the remaining claim

21
and defenses at issue.

22
        **Pertinent Procedural Posture**

23
        During the expert discovery phase of this case, plaintiff Nextdoor.com, Inc.

24
("Nextdoor.com") engaged M. Patricia Fisher as a testifying expert on forensic document

25
examination.  Ms. Fisher's entire expert assignment was limited to the examination of a single

26
Central Computers receipt, dated December 5, 2013, and opining on whether or not said receipt

27
was signed by Abhyanker, or his assistant.  The receipt was for service performed on a Toshiba

1  hard drive, which contained, among other items, the contents of a "diligence CD" prepared by an
2  entity known as Fatdoor, Inc. as it pursued venture capital funding, as well as the covers of that
3  diligence CD.

4        Whether that hard drive contained references to the Lorelei neighborhood of Menlo Park
5  was an issue earlier in the case, as it demonstrated support for the selection of that neighborhood
6  as a pilot for initial testing of Abhyanker's neighborhood-based social networking platform.  With
7  Abhyanker's dismissal of his trade secret misappropriation counterclaim, this issue is no longer
8  relevant.

9        The case has since been narrowed to one claim - trademark cybersquatting.

10       **<u>Argument</u>**

11       The remaining claim speaks to specific conduct involving the allegedly-illicit use of
12  registered domain nextdoor.cm in order to harm Nextdoor.com's trademark in 2011.  By contrast,
13  Ms. Fisher's opinions and planned testimony speak entirely to the issue of who retrieved the
14  Toshiba hard drive from Central Computers on December 5, 2013.  The documents on this hard
15  drive, or Abhyanker's collection of them once they were recovered by the computer service, do
16  not speak at all to any illicit use of the Nextdoor trademark; rather, they speak to pre-2011
17  business developments by Abhyanker in trying to raise the profile of and money for an entity
18  known as Fatdoor, Inc.  In no way does the identity of who picked up the repaired hard drive in
19  2013 figure into whether Mr. Abhyanker cybersquatted the NEXTDOOR trademark by use of the
20  nextdoor.cm domain in 2011.

21       In short, Ms. Fisher's testimony adds nothing to evaluation of the evidence supporting the
22  elements of or the defenses to the pending claim.  Rather, it is abundantly clear that Ms. Fisher
23  was engaged for the purpose of, and directed her opinions to, perceived discovery abuse through
24  concerns about document fabrication or tampering.  Such evidence may figure into a sanctions
25  motion apparently planned by Nextdoor.com, but the Court has ordered that any such motion -
26  and any discovery in support of it - be pursued only following trial, and not before or during trial.
27  (Dkt. 241).  To the extent that Nextdoor.com is still interested in Fisher's opinions and testimony,

1    it must wait to present them until after trial in a post-trial hearing.

2           For trial purposes, Ms. Fisher's testimony should be excluded.

3                                                    Respectfully submitted,

4

5    Dated: October 24, 2014                          LEGALFORCE RAJ ABHYANKER, P.C.

6                                                     */s/ David Lavine*
                                                      DAVID LAVINE
7                                                     Attorney for Defendant RAJ ABHYANKER

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

1   LAURENCE F. PULGRAM (CSB No. 115163)
    lpulgram@fenwick.com
2   JENNIFER L. KELLY (CSB No. 193416)
    jkelly@fenwick.com
3   ILANA RUBEL (CSB No. 221517)
    irubel@fenwick.com
4   GUINEVERE L. JOBSON (CSB No. 251907)
    gjobson@fenwick.com
5   FENWICK & WEST LLP
    555 California Street, 12th Floor
6   San Francisco, CA  94104
    Telephone:     415.875.2300
7   Facsimile:     415.281.1350

8   ERIC BALL (CSB No. 241327)
    eball@fenwick.com
9   MATTHEW BECKER (CSB No. 291865)
    mbecker@fenwick.com
10  FENWICK & WEST LLP
    Silicon Valley Center
11  801 California Street
    Mountain View, CA  94041
12  Telephone:     650.988.8500
    Facsimile:     650.938.5200
13
    Attorneys for Plaintiff
14  NEXTDOOR.COM

15              UNITED STATES DISTRICT COURT

16              NORTHERN DISTRICT OF CALIFORNIA

17              SAN FRANCISCO DIVISION

18

19  NEXTDOOR.COM, INC., a Delaware          Case No.: 3:12-cv-05667-EMC-NMC
    corporation,
20                                          **PLAINTIFF NEXTDOOR.COM'S**
                   Plaintiff,               **OPPOSITION TO DEFENDANT RAJ**
21                                          **ABHYANKER'S *MOTION IN LIMINE***
           v.                               **NO. 4 TO EXCLUDE TESTIMONY OF**
22                                          **PATRICIA FISHER**

23  RAJ ABHYANKER, an individual,          Final Pretrial
                                           Conference:    November 25, 2014
24                 Defendant.              Time:          2:30 p.m.
                                           Courtroom:     5, 17th Floor
25                                         Judge:         Hon. Edward M. Chen
                                           Trial Date:    December 8, 2014
26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**INTRODUCTION**

Handwriting Expert M. Patricia Fisher's testimony will take minimal time (approximately 15 minutes) to verify that Mr. Abhyanker was the person who signed for and received the Toshiba Hard Drive when it was delivered from Central Computers at 10:49 a.m. on December 5, 2013, prior to the alterations made to documents on it that afternoon and evening.  Her testimony supports the conclusion that it was Abhyanker who made those fabricated documents—fabrications that Motion *in Limine* No. 4 ("MIL No. 4") does not dispute occurred.

Instead, MIL No. 4 hinges on the false premise that Abhyanker's fabrications are not relevant to the remaining claim in this action, ignoring the nature of the changes he made.  To be sure, there were fabrications designed to create a trade secret claim.  But there were also numerous fabrications designed to support Abhyanker's claim to the NEXTDOOR mark, and specifically to simulate that he always had an intent to use, and therefore good faith belief that he had rights in, the NEXTDOOR mark.  Apart from these fabrications, the documentary record otherwise shows no intent to use the NEXTDOOR mark after 2006.  But Abhyanker altered the contents of the Toshiba Hard Drive to suggest that in 2007 there were "bids placed on nextdoor.com," and to replace "Fatdoor" with "Nextdoor" on documents describing the service he hoped to provide.  The fact that Abhyanker had signed for and received the hard drive on which these fabrications were made goes directly to prove that he has no good faith basis to assert that he believed he had real (as opposed to fabricated) basis to claim ownership or rights to use the NEXTDOOR mark.

**BACKGROUND FACTS**

Abhyanker has always made the so-called "Benchmark Diligence CD" a centerpiece of his claim.  *See, e.g.*, SACC Dkt. 132 at ¶¶ 122, 124.  He claimed that this CD, allegedly provided to Benchmark when it was considering investing in Fatdoor in 2007, delivered information that Benchmark and Nextdoor.com purportedly misappropriated.  For the first year of the litigation, Abhyanker maintained he could not find the CD.  Declaration of Jennifer L. Kelly in Support of Plaintiff Nextdoor.com, Inc.'s Opposition to Motions *in Limine* Nos. 1, 2, and 4 Exhs. 15-16 (Depo Exhs. 96 (Nextdoor.com asks for Benchmark diligence materials) 97 (Abhyanker's counsel

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   responds that such documents were not in Abhyanker's possession, custody or control).  Then, in

2   filings on December 5, 2013 Abhyanker argued that the CD was not relevant to the trademark

3   issues in the case.  Dkt. 131, pp. 10-11 (Joint CMC statement).  The Court rejected that position

4   and ordered any CD produced.  Kelly Opp. Decl. Exh. 17 (December 12, 2013 status conference

5   transcript).  On December 26, 2013, Abhyanker delivered a CD in a jewel case labeled (falsely)

6   as Due Diligence CD-ROM, June 21, 2007.

7          Comparison of the contents of the CD with other information in the case revealed

8   inconsistencies, leading Nextdoor.com's counsel to demand, in the Spring of 2014,  the

9   opportunity to review the original electronic copy of the media from which the CD had been

10  generated in December 2013.  Kelly Opp. Decl. ¶ 16.  Abhyanker's former counsel responded

11  that they were advised that the CD had been found on a Toshiba Hard Drive onto which an

12  inoperable drive had been restored by Central Computers.  A copy of the Toshiba Hard Drive was

13  delivered for inspection.

14         Inspection of the Toshiba Drive revealed that, indeed, files in a directory named Diligence

15  CD, saved back in the time of Fatdoor's operation in 2007-2008, had been provided by Central

16  Computers to Abhyanker on December 5, 2013 at 10:49 a.m.  Expert Report of David McCain

17  (hereafter "Report") at p. 13.  But this inspection also found additional altered versions of many

18  of these files on the Toshiba Hard Drive.  These altered versions had been saved to the Toshiba

19  hard drive beginning at 12:54 p.m., and running into the evening, December 5—well after that

20  drive had been returned to Abhyanker.  Report at pp. 13-16. It was these altered files that, after

21  the Court ordered production of the Benchmark Diligence CD, Abhyanker had produced to

22  Nextdoor.com as RA396.

23         Further, the altered files reflected changes obviously designed to create a record for use in

24  the lawsuit.  One key change was the repeated insertion into a PowerPoint (the "Lorelei

25  PowerPoint") of references to "Lorelei" and a "successful pilot in Lorelei," where no other pre-

26  litigation documents described such a pilot or even mentioned Lorelei.  *Compare* Kelly Opp.

27  Decl. Exhs. 9 (Exh. 90 at 3-5, 10) with 8 (Exh. 91 at 4, 11).  ███████████████████████

28  ███████████████████████████████████████████████████████████████████████

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO



Kelly Opp. Decl. Exhs. 19-25.   In each case, the word "Nextdoor" in the fabricated document either replaced, or was added to, the term "Fatdoor" in the original.  *Id.* Further, another document added the comment "Fatdoor (hopefully soon Nextdoor)."  Kelly Opp. Decl. Exh. 23.2 p. 1.  Yet another altered document even changes the copyright notice from "Fatdoor, inc." to "Nextdoor, inc." (a company that never existed) and rewrites text as if there were plans for Nextdoor when, in fact, the plans were all for the Fatdoor name and company. Kelly Opp. Decl. Exh. 20.2.  All these recent alterations appear to advance the concept that Abhyanker was, at the June 2007 time to which the CD produced to Nextdoor.com was backdated, still intending to use Nextdoor.   By contrast, these documents as originally written— and all the other documents in the case—suggested that Abhyanker (and his company, Fatdoor, Inc.) had abandoned the Nextdoor name in favor of Fatdoor.

There is no evidence other than that these alterations were made beginning within two hours after the Toshiba Hard Drive was returned to Abhyanker's office (McCain Report at 14-19), and that they were included in the Benchmark CD provided to Nextdoor.com pursuant to the Court's order. *Id.* at 14-15. But Abhyanker has not yet accounted for who made these alterations. Nor has he acknowledged that he was in possession of the Toshiba Hard Drive on which they were made when they were made.

At deposition, Abhyanker tried to dodge responsibility for the changes.  He either did not know whether he had picked up the Toshiba Hard Drive from Central Computers, or thought he did not do so.  Kelly Opp. Decl. ¶ 3 Exh. 2 (Depo. at 309:25- 310:15).  When asked whether the signature on the Central Computers receipt for the Toshiba Hard Drive, dated 10:49 a.m.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    December 5, 2013, was his, he at first testified "it may be, it may not be, I don't know." *Id.*

2    (Depo at 310:17-23).  He then denied it was his, then testified "I don't know if it is or isn't; it

3    doesn't look like my signature." *Id.* (Depo at 311: 18-22).  Abhyanker finally settled on an

4    explanation that he did not receive the Toshiba Hard Drive, but that his assistant, Ravi Soni, later

5    gave him a CD loaded with what Abhyanker claimed was the Benchmark Diligence CD, which

6    included, of course, the fabrications made to the Toshiba Hard Drive. *Id.* (321:24-322:15).

7         Abhyanker's testimony that he "doesn't know" if he signed for the Toshiba Hard Drive,

8    and doesn't know how its contents were changed into the Benchmark Diligence CD produced in

9    this action, is exactly what Ms. Fisher addresses.  Fisher Report at 2.  Ms. Fisher analyzed the

10   signature on the Central Computers receipt for the drive, compared it to other, admitted

11   Abhyanker signatures.  *Id.* at 4-8.  She concluded that it was Abhyanker's signature on the

12   receipt—a fact that puts him at Central Computers receiving the drive he now disavows receiving

13   or altering.  *Id.* at 8.  Central Computers employee Douglas Helmonds, though not able to testify

14   about signatures, also attests that it was Mr. Abhyanker who picked up the Toshiba Hard Drive

15   and carried away that drive—along with the now "lost" original from which the Toshiba Hard

16   Drive was made.  Kelly Opp. Decl. Exh. 31(NEXTDOOR000004811-17)

17                                      **ARGUMENT**

18        Ms. Fisher's testimony, while narrowly limited to the issue of a signature, is highly

19   relevant to showing that Mr. Abhyanker received the Toshiba Hard Drive that was altered to

20   fabricate evidence in this case, beginning two hours after signing the receipt in question.

21   Abhyanker's MIL No. 4 does not dispute the clear relevancy to this issue.  Instead, Abhyanker's

22   claim of irrelevancy relies on the assertion that "with Abhyanker's dismissal of his trade secret

23   misappropriation counterclaim, this issue [of the fabrication of the Diligence CD] is no longer

24   relevant."  MIL No. 4 at 2.

25        As explained with respect to Mr. McCain, however, this premise is false.  The materials

26   fabricated on the CD are not limited to trade secret issues.  They include creation of references to

27   Nextdoor intended to create the false impression that Abhyanker was intending to continue to use

28   the name NEXTDOOR after 2006, when there is no other evidence in the record to support that

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   claim.  His insertions of "Nextdoor" in lieu of or addition to "Fatdoor" reflect an effort to

2   fabricate evidence that he was actually intending to use the name NEXTDOOR after he had

3   shifted to FATDOOR.  This evidence directly undermines his intended testimony that "he

4   believed he had senior rights to and in the Nextdoor mark, and that he never stopped attempting

5   to use the mark in commerce and otherwise to protect the mark."  Defendant's Witness

6   Disclosure, Raj Abhyanker Entry.  Given Abyanker's assertion of his good faith belief that he had

7   senior rights in the NEXTDOOR mark, his responsibility for the fabrication of the files that

8   reflect the lack of any such good faith basis is directly relevant to the issue to be tried.

9                                          **CONCLUSION**

10          For all the foregoing reasons, Defendant's MIL No. 4 should be denied.

11  Dated:    October 31, 2014                    FENWICK & WEST LLP

12

13                                          By: /s/ *Laurence Pulgram*
                                                Laurence F. Pulgram
14
                                                Attorneys for Plaintiff
15                                              NEXTDOOR.COM

16

17

18

19

20

21

22

23

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO