LAURENCE F. PULGRAM (CSB No. 115163)
lpulgram@fenwick.com
JENNIFER L. KELLY (CSB No. 193416)
jkelly@fenwick.com
ILANA S. RUBEL (CSB No. 221517)
irubel@fenwick.com
GUINEVERE L. JOBSON (CSB No. 251907)
gjobson@fenwick.com
FENWICK & WEST LLP
555 California Street
San Francisco, CA  94104
Telephone:  (415) 875-2300
Facsimile:   (415) 281-1350

ERIC J. BALL (CSB No. 241327)
eball@fenwick.com
MATTHEW B. BECKER (CSB No. 291865)
mbecker@fenwick.com
FENWICK AND WEST LLP
801 California Street
Mountain View, CA 94041
Telephone: (650) 988-8500
Facsimile:  (650) 938-5200

Attorneys for Plaintiff
NEXTDOOR.COM, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NEXTDOOR.COM, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>RAJ ABHYANKER, an individual,<br><br>Defendant. | Case No.: 3:12-cv-05667-EMC-NMC<br><br>**NEXTDOOR.COM'S LIST OF TWENTY EXHIBITS**<br><br>**[PER DOCKET 398]**<br><br>Final Pretrial<br>Conference:	November 25, 2014<br>Time:	2:30 p.m.<br>Courtroom:	5, 17th Floor<br>Judge:	Hon. Edward M. Chen<br>Trial Date:	December 8, 2014 |

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Nextdoor.com, Inc. ("Nextdoor.com") respectfully identifies the following twenty representative exhibits and their primary relevance and purpose, pursuant to the Court's Order re Pre-Trial Filings (Dkt 398).  (Some exhibits may serve additional purposes as well.)

1. **Dkt. 332-9, Ex. H:  November 1, 2012 Printout of www.nextdoor.cm Website.**

    a. **Exhibit Description:**  In his response to Nextdoor.com's Interrogatory No. 7, Abhyanker identified this print out as an example of his website offered at www.nextdoor.cm.

    b. **Relevancy and Purpose:**  Demonstrates Abhyanker's bad faith intent to profit by (1) creating a website at the .cm Domain to compete with Nextdoor.com; and (2) confusing Nextdoor.com's users and attempting to divert traffic from Nextdoor.com; and (3) the implausibility of his good faith claim given his intentional infringement of Nextdoor.com's rights.

2. **Exhibit 476:  October 24, 2006 Email from Abhyanker to Sandeep Sood, Ankur Verma and Babar Rana Regarding the Formation of Fatdoor, Inc.**

    a. **Exhibit Description:**  By the morning of October 24, 2006, Abhyanker had decided to use the name and mark FATDOOR—not Nextdoor—for his purported social networking idea.  That same morning, Abhyanker incorporated Fatdoor, Inc., with Sandeep Sood as the President, and began evaluating a website design and logo for Fatdoor, Inc.

    b. **Relevancy and Purpose:**  This exhibit evidences that the only company to offer a social networking services was Fatdoor, Inc., not Abhyanker personally, and not any company under a "nextdoor" name.  Additionally, in light of Abhyanker's quick switch to and acceptance of the Fatdoor name, this exhibit undermines his claim that he continued to use or wanted to use "nextdoor" after his brief consideration in October 2006.

3. **Exhibit 180:  February 1, 2007 Assignment Agreement between Fatdoor, Inc. and Abhyanker.**

    a. **Exhibit Description:**  In connection with receipt of outside investment in Fatdoor, Inc. in 2007, Abhyanker assigned Fatdoor, Inc. any interest in the patent applications, the underlying concepts, and other relevant intellectual property rights claimed by Abhyanker, in his defense, as the basis for his good faith belief.

    b. **Relevancy and Purpose:**  Abhyanker's assignment of all rights in any relevant

intellectual property to Fatdoor, Inc., negates his claim of a good faith belief that he personally had intellectual property rights in the .cm Domain or the right to use the "nextdoor" name. It is because he knew he lacked ownership that later Abhyanker fabricated a fake assignment *back* to himself of Fatdoor, Inc.'s rights (*see* Exh. 186). It is implausible for Abhyanker to be acting in good faith when he knew he had to fabricate his claims.

**4. Exhibit 225: July 13, 2007 Email from Fatdoor, Inc.'s Counsel to Abhyanker.**

a. **Exhibit Description:** During due diligence, this email by Fatdoor, Inc.'s lawyer (sent to investors and copied to Abhyanker as CEO of Fatdoor) confirms (at page 2 point VI.2) Abhyanker's representation that Abhyanker assigned to Fatdoor, Inc. all relevant intellectual property rights and that he held no rights of his own.

b. **Relevancy and Purpose:** Given Abhyanker's assignment of all rights in any relevant intellectual property to Fatdoor, Inc., Abhyanker cannot have a good faith belief that he had intellectual property rights in the .cm Domain or the right to use the "nextdoor" name.

**5. Exhibit 189: A True Copy of a November 11, 2012 Email String Between Abhyanker and Center'd Corporation's Board of Directors, and later Abhyanker and Daniel Hansen, Regarding Center'd Corporation's Assets.**

a. **Exhibit Description:** In the earliest email in Exhibit 189, Abhyanker notes that he does not know who acts for Center'd and asks certain former Board of Director members to appoint him as an interim CEO. (Center'd Corporation is a name change of Fatdoor, Inc.). In the last email, Center'd Corporation's former counsel, Daniel Hansen, states that he cannot provide Abhyanker with advice regarding the mechanics of appointing Abhyanker as interim CEO.

b. **Relevancy and Purpose:** This exhibit evidences Abhyanker's lack of ownership or standing to assert any claim to rights in the .cm Domain. Abhyanker's attempts to acquire rights, his failure to do so, and his later creation of a false story that he obtained such rights, evidences his lack of a good faith basis to believe he had such rights. This exhibit also undermines Abhyanker's testimony that Hansen advised him he could act as interim CEO. This exhibit further evidences Abhyanker's intent to profit in connection with the .cm Domain by use of the "nextdoor" name or domain against Nextdoor.com in this litigation.

**6.      Exhibit 188, Ex. G:  A Fabricated Excerpt of the November 11, 2012 Email String Between Abhyanker and Center'd Corporation Board of Directors.**

a.  **Exhibit Description:**  In this exhibit, Abhyanker has deleted and replaced with ellipses, substantial text from the true copy of this email in Exhibit 189.  In particular, Abhyanker deleted his statement that he did not know who has the authority to appoint him as an interim CEO.  Abhyanker also deleted his statement assuring Center'd that if he were appointed interim CEO, he would act to benefit Center'd.  Abhyanker attached this fabricated email to his declaration in opposition to Nextdoor.com's MSJ (Dkt. 150-1) and falsely declared that this email provided him the authority to control Center'd Corporation's assets.

b.  **Relevancy and Purpose:**  Abhyanker's alteration of this exhibit, in addition to undermining his credibility generally, demonstrates his knowledge that the true facts could not support his claim of rights against Nextdoor.com.  This undermines any good faith claim.

**7.      Exhibit 186:  A Fabricated November 12, 2012 Assignment Agreement.**

a.  **Exhibit Description:**  This exhibit is dated November 12, 2012, a week after this action was filed.  It purports to be an Assignment Agreement in which Abhyanker, claiming to act as CEO of Center'd Corporation assigns all of the company's assets to himself personally for $1.00.  Abhyanker attached this fabricated assignment to his declaration in opposition to Nextdoor.com's MSJ (Dkt. 150-1) and falsely declared that this assignment provided him the authority to control Center'd Corporation's assets.

b.  **Relevancy and Purpose:**  This is relevant to: (1) evidence Abhyanker's lack of ownership or standing to assert any claim to rights to use the .cm Domain; (2) contradict Abhyanker's claim that he acquired any assets through Fatdoor or Center'd; and (3) evidence Abhyanker's practice of fabricating documents to simulate rights purportedly related to the .cm Domain, including self-interested assignments of corporate assets to himself.  It is implausible for Abhyanker be acting in good faith when he knew that he had to fabricate documentation in order to backfill a claim to those rights.  Such conscious fabrications evidence intent and lack of mistake in making his claims to fabricated rights.

8. **Exhibit 190: November 13, 2012 Email from Abhyanker to Center'd's Reps Confirming that Abhyanker *Did Not* Have the Authority to Act as Center'd CEO.**

   a. **Exhibit Description:** A day after the date of the fabricated November 12, 2012 Agreement regarding Center'd's assets, Abhyanker again emailed Center'd's representatives asking for their permission to appoint him as an interim CEO. Contrary to Abhyanker's representations to this Court in his declaration and in the fabricated assignment agreement, Abhyanker states in this email that: "I do not have a clear indication of authority or consent from the current Center'd board to serve as the interim CEO" and "I cannot represent you and your funds as Center'd shareholders without clear authority." Abhyanker does not reveal that he has already purported to assign all of Center'd's assets to himself. Abhyanker does, however, reveal in this email his intent to profit off of Center'd's assets by using them in this litigation.

   b. **Relevancy and Purpose:** This exhibit evidences that the assignment agreement in Exhibit 186 is a fabrication. Abhyanker knew he had no authority to act as Center'd's CEO. Thus, this exhibit contradicts Abhyanker's claim that he acquired any assets from Center'd— which owned any rights in the "Fatdoor (formerly nextdoor)" concept and intellectual property. Finally, this exhibit evidences Abhyanker's intent to compete with Nextdoor.com and profit off of his litigation against Nextdoor.com.

9. **Exhibit 197: Abhyanker's First Amended Complaint Against Nextdoor.com Filed in Santa Clara County Superior Court on December 6, 2011.**

   a. **Exhibit Description:** Abhyanker's State Court complaint refers to the "nextdoor" concept as the "Nextdoor/Fatdoor" concept, and further alleges that it is owned by Fatdoor, Inc. Exhibit C to the complaint has authentic excerpts of an 'Executive Summary." (A fabricated version of the Executive Summary is described below in Exhibit 196).

   b. **Relevancy and Purpose:** Abhyanker's State Court complaint evidences that it was Fatdoor, Inc., not Abhyanker, that had any possible interest in the "nextdoor" name. This is relevant to show that, just weeks before registering the .cm Domain, Abhyanker, was well aware that he had no ownership of rights in the "nextdoor" name. Abhyanker's knowledge contradicts any claim that Abhyanker acted in good faith.

**10. Exhibit 196: An Altered Version of an Executive Summary, Purportedly Dated June 21, 2007 But Actually Created December 5, 2013.**

a. **Exhibit Description:** The Executive Summary in this exhibit was modified in 2013 to add the phrases "nextdoor.com bids placed" and "we understand the sensitivity of the name fat"—to simulate an intent to change names from Fatdoor to Nextdoor.

b. **Relevancy and Purpose:** Abhyanker's modification of the Executive Summary evidences that, contrary to his claim now that he always intended to use and continually tried to acquire the name "nextdoor," he did not. Rather than having such genuine intent, Abhyanker simulated such intent by fabricating documents, an act that undermines both his claim he genuinely believed he had rights (absents such fabrications), and his credibility generally.

**11. Exhibit 18: Abhyanker's Trademark Application File for the NEXTDOOR Mark.**

a. **Exhibit Description:** This is Abhyanker's first ever trademark application for the NEXTDOOR mark, filled December 28, 2011, *after* Abhyanker registered the .cm Domain. Later, on February 8, 2012, Abhyanker amended his trademark application to allege use of the NEXTDOOR mark based on a screenshot from the www.nextdoor.cm website.

b. **Relevancy and Purpose:** Abhyanker's trademark application evidences his use, and intent to profit from his use, of the .cm Domain in support of his attempt to acquire a NEXTDOOR mark, compete with Nextdoor.com, and usurp its name.

**12. Exhibit 87: Abhyanker's February 9, 2012 Amended Notice of Opposition to Nextdoor.com's NEXTDOOR mark.**

a. **Exhibit Description:** Abhyanker filed an Opposition against Nextdoor.com's registration of its name as a trademark. Abhyanker's Opposition claimed to rely on his use of the NEXTDOOR mark on the www.nextdoor.cm website, his own trademark application for the NEXTDOOR mark, and the purported use of the NEXTDOOR mark on his eDirectree website (which Nextdoor.com believes was fabricated, as discussed below).

b. **Relevancy and Purpose:** Abhyanker's use of the .cm Domain and fabricated evidence to block Nextdoor.com's registration evidences his bad faith intent to profit off of the domain through competition with Nextdoor.com. Additionally, Abhyanker's knowing reliance on fabrications to simulate rights and block Nextdoor.com's registration evidence his bad faith.

**13. Exhibit 101: Abhyanker's Supplemental Statement Regarding His Prior Use and Common Law Rights in the NEXTDOOR Trademark (Dkt. 141).**

a. **Exhibit Description:** Abhyanker filed this exhibit in response to a Court Order (Dkt. 137) requiring him to file a supplemental statement, including supporting documentation, regarding his alleged senior use of the NEXTDOOR mark. Abhyanker's purported basis for his senior rights included: (1) use of NEXTDOOR on the www.nextdoor.cm website; (2) the attached Exhibit D, which is a fabricated screenshot of NEXTDOOR on the eDirectree.com website; and (3) false assertions that the eDirectree screenshot of NEXTDOOR was how it appeared on the website in 2008 when Exhibit D was, in fact, fabricated in 2013.

b. **Relevancy and Purpose:** First, Abhyanker's bad faith intent to profit is evidenced by his use of his registration of the .cm Domain in this litigation as a basis to claim rights against Nextdoor.com and to attempt to usurp its mark. Second, the fabricated nature of the eDirectree screenshot in Exhibit D evidences Abhyanker's lack of any actual ownership of senior rights in the "nextdoor" name or .cm Domain, and the lack of any good faith basis to believe in same. Third, not only did Abhyanker fabricate the screenshot, he also destroyed records of the eDirectree website, evidencing bad faith and a guilty mind allowing inferences to be drawn against Abhyanker.

**14. Exhibit 253: Saturday, October 21, 2006 Email at 4:44 p.m. from Abhyanker; this Email is Sent Back to Abhyanker on June 22, 2007 at 10:30 a.m.**

a. **Exhibit Description:** This exhibit describes an idea for a social network Abhyanker sent to a co-worker reflecting the brief time from October 21, 2006 to October 24, 2006 in which Abhyanker apparently considered the "nextdoor" name.

b. **Relevancy and Purpose:** This exhibit dates when Abhyanker was considering use of the name nextdoor. In connection with Exhibit 251, it also evidences Abhyanker's lack of ownership or standing to assert any claim to rights in the .cm Domain, and that it would be Fatdoor, Inc.—transferee of that concept—not Abhyanker personally, that owned any intellectual property related to the social networking idea and the name "nextdoor." This exhibit also contradicts Abhyanker's claims in Exhibit 251 that Exhibit 251 is an authentic email.

15. **Exhibit 251: June 22, 2007 Email at 11:49 p.m. from Abhyanker to Fatdoor, Inc. Counsel, Dan Hansen with the Subject Line "Conception Documents: Fatdoor (formerly Nextdoor)"; Abhyanker's June 22, 2007 Email Forwards a Fabricated Email Purportedly Sent by Abhyanker on Saturday, August 21, 2005 at 4:44 p.m.**

   a. **Exhibit Description:** In this email delivered in 2007 for due diligence by investors in Fatdoor, Abhyanker confirmed that his purported "nextdoor" social networking idea became the Fatdoor social network—*i.e.*, that Fatdoor was "formerly nextdoor". However, the email also included a fabricated back date (to 2005) and content (attempting, but inaccurately) to conform to the fake 2005 time frame for conception of his idea.

   b. **Relevancy and Purpose:** Abhyanker's words evidence that Fatdoor, not Abhyanker, owned any intellectual property related to the social networking idea and the name "nextdoor." This exhibit also evidences Abhyanker's practice of fabricating documents to simulate and backfill intellectual property rights. Finally, this exhibit evidences that Abhyanker, and Fatdoor, Inc., used the FATDOOR mark, not "nextdoor" for its services. Thus, it undermines his claim that he continued to use or wanted to use "nextdoor" after his brief consideration in October 2006.

16. **Exhibit 456: Fabricated Document Titled: "Fatdoor/Nextdoor in Cupertino – go to market strategy"**

   a. **Exhibit Description:** Abhyanker produced this exhibit, during discovery, on a CD purportedly provided to Benchmark in 2007. It describes a "Fatdoor/Nextdoor" marketing strategy, states that Fatdoor would hopefully become Nextdoor, and includes numerous other references to Nextdoor. Its metadata reflects creation on the afternoon of December 5, 2013, which Mr. McCain will explain was the afternoon after Mr. Abhyanker received a hard drive purportedly including a copy of the CD's files. Before December 5, the versions of this document referred only to Fatdoor, not Nextdoor.

   b. **Relevancy and Purpose:** The addition of references to "nextdoor" to *simulate* continued interest in using that name after 2006 undermines Abhyanker's contention now that he always had such an interest. Such fabrications (there are several others) also undermine Abhyanker's claim that his use was an innocent mistake, as opposed to part of an intentional deceptive plan.

Case3:12-cv-05667-EMC Document400 Filed11/10/14 Page9 of 10

**17. Exhibit 11**: **October 26, 2011 Email from Abhyanker to Nextdoor.com.**

a. **Exhibit Description:** This is the email Abhyanker sent to Nextdoor.com to congratulate the company on its success on the day of its launch. Describing his work for Fatdoor, Inc., Abhyanker asks that Nextdoor.com hire him as an attorney or advisor. Abhyanker says nothing about owning the "nextdoor" name or any other intellectual property rights related to Nextdoor.com. Abhyanker also explains that the Fatdoor patents are owned by Google—not himself or any other company through which Abhyanker now claims rights.

b. **Relevancy and Purpose:** This email is relevant to Abhyanker's lack of ownership or standing to assert any claim to rights in the .cm Domain. In it, he claimed no rights in "nextdoor," in patents owned by Google, or in anything other than Fatdoor. Abhyanker's immediate reaction of congratulations undermines Abhyanker's later, and invented, claims that he had a good faith belief that he, rather than Nextdoor.com, owns rights in the "nextdoor" name.

**18. Exhibit 182: March 18, 2008 Email from Abhyanker to Shirley Tay, Attaching A True Copy of a December 23, 2008 Settlement and Assignment Agreement Between Legalforce, Inc. and Abhyanker.**

a. **Exhibit Description:** The December 23, 2008 Settlement and Assignment Agreement ("2008 Legalforce Settlement") between Legalforce, Inc. and Abhyanker provides that in the dissolution of Legalforce, Inc. in 2008, the corporation only assigned Abhyanker the www.legalforce.com domain and a patent application owned by Legalforce (which is irrelevant to this matter or any claim to the NEXTDOOR mark). The cover email in Exhibit 182 evidences that this 2008 Legalforce Settlement was transmitted to Shirley Tay, Abhyanker's tax accountant, and additional records reflect it was used in preparing Abhyanker's taxes.

b. **Relevancy and Purpose:** Abhyanker has testified that his claims to rights against Nextdoor.com arose from an assignment received from Legalforce. *E.g.,* Abhyanker Depo. Tx. at 62: 2-10. The 2008 Legalforce Settlement shows that Legalforce, Inc. did not assign Abhyanker any residual rights to any nextdoor concept on which Abhyanker could claim he, personally, owned any rights to the "nextdoor" name. It also contradicts the validity and authenticity of the next exhibit, the fabricated June 4, 2007 Assignment Agreement, and Abhyanker's claims to have acquired any other rights through Legalforce, Inc. Finally, Ms. Tay's

NEXTDOOR.COM'S LIST OF TWENTY EXHIBITS — 8 — CASE NO. 3:12-cv-05667-EMC-NMC

use of the 2008 Legalforce Settlement in preparing Abhyanker's taxes further contradicts the validity of the fabricated June 4, 2007 Assignment Agreement. The fact that Abhyanker never received any assignment of the rights he now claims from Legalforce undermines his claim of good faith belief in such rights.

**19. Exhibit 183: Purported June 4, 2007 Assignment Agreement.**

a. **Exhibit Description:** The June 4, 2007 Assignment Agreement, signed by Abhyanker for Legalforce, Inc., purports to assign all residual rights of Legalforce to him in 2007. It has multiple indicia of inauthenticity to which Mr. McCain will testify.

b. **Relevancy and Purpose:** This exhibit is relevant to Abhyanker's lack of any good faith basis to believe he owned rights in a nextdoor concept, as proven by his bad faith fabrication of documents to simulate such rights. Knowing that he personally had no valid basis to claim rights from Legalforce, Inc. after its dissolution, Abhyanker fabricated this assignment, as part of an attempt to backfill a story that he believed he owned rights.

**20. Exhibit 239: Fabricated January 7, 2014 Assignment Agreement Regarding GeoTag, Inc.'s Patents.**

a. **Exhibit Description:** In April 2014, purportedly acting as counsel for GeoTag Abhyanker assigned to himself 50% of GeoTag's interest in certain patent applications, which GeoTag had obtained through Fatdoor. Abhyanker signed the agreement both as the assignor on behalf of GeoTag and on behalf of himself personally.

b. **Relevancy and Purpose:** The GeoTag assignment to Abhyanker was unauthorized, as Mr. Veenstra will testify. This fabricated assignment is relevant to: (1) contradict Abhyanker's newly minted story that he had a good faith belief of rights to use the .cm Domain based on purported patent rights; (2) evidence Abhyanker's practice of fabricating documents, and in particular assignments, to simulate rights purportedly related to the .cm Domain; and (3) show the lengths to which Abhyanker will go in bad faith to claim a belief in rights to the .cm Domain.

Dated: November 10, 2014          FENWICK & WEST LLP

By: */s/ Laurence F. Pulgram*
Laurence F. Pulgram

Attorneys for Plaintiff
NEXTDOOR.COM, INC.

NEXTDOOR.COM'S LIST OF TWENTY EXHIBITS   9   CASE NO. 3:12-cv-05667-EMC-NMC