UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEXTDOOR, INC., <br><br> Plaintiff, <br><br> v. <br><br> RAJ ABHYANKER, <br><br> Defendant. | Case No. 12-cv-05667-EMC <br><br> **FILED UNDER SEAL** <br><br> **ORDER DENYING DEFENDANT'S "MOTION UNDER THE COURT'S RETAINED JURISDICTION"** <br><br> Docket No. 419 |

In 2012, Plaintiff Nextdoor.com, Inc. initiated this lawsuit against Defendant Raj Abhyanker to resolve a dispute as to who had the right to use the Nextdoor mark. *See* Docket No. 1 (complaint). After Nextdoor filed its claims for, *inter alia*, trademark infringement and declaratory relief, Mr. Abhyanker counterclaimed, asserting causes of action for, *inter alia*, trade secret misappropriation and trademark infringement.[1] *See* Docket No. 132 (second amended counterclaims).

In December 2014, the parties settled the case. *See* Docket No. 420-19 (settlement agreement). By that time, the parties had already stipulated to a dismissal of Mr. Abhyanker's counterclaims. *See* Docket Nos. 224, 226 (stipulation and order). The Court had also granted Nextdoor's motion for summary judgment on its claim of trademark infringement. *See* Docket No. 361 (minutes). The stipulation and order for final judgment, as well as the final judgment itself, included the following provision: "This Court shall retain jurisdiction to enforce its judgments in this action and any agreements of the parties with respect thereto." Docket Nos.

---

[1] The counterclaims were asserted against persons and entities in addition to Nextdoor. For purposes of this order, however, the Court focuses on Nextdoor as the relevant counterdefendant.

416-17 (stipulation, order, and final judgment).

Approximately six years after the final judgment, Mr. Abhyanker filed the currently pending motion. He has captioned the motion as a "motion under the Court's retained jurisdiction." In essence, the relief Mr. Abhyanker seeks is to set aside certain obligations he has under the parties' Settlement Agreement. Having considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel,[2] the Court hereby **DENIES** Mr. Abhyanker's motion for relief.

## I.　DISCUSSION

As noted above, in the pending motion, Mr. Abhyanker essentially wants the Court to relieve him of certain promises in the Settlement Agreement – in particular, so that (1) he can engage in certain conduct and (2) Nextdoor cannot claim in response that the conduct is a breach of the Settlement Agreement, which would then enable Nextdoor ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.

## II.　JURISDICTION

As an initial matter, the Court must consider whether it has jurisdiction to grant the relief requested by Mr. Abhyanker.[3] As noted above, the stipulation and order for final judgment, as well as the final judgment itself, included the following provision: "This Court shall retain jurisdiction to *enforce* its judgments in this action and *any agreements of the parties with respect thereto*." Docket Nos. 416-17 (stipulation, order, and final judgment) (emphasis added).

In *Kokkonen v. Guardian Life Insurance Company of America*, 511 U.S. 375 (1994), the Supreme Court considered whether a court had jurisdiction to enforce a settlement agreement "and not merely reopening of the dismissed suit by reason of breach of the agreement that was the basis for dismissal." *Id.* at 378 (noting that "[s]ome Courts of Appeals have held that the latter can be obtained under Federal Rule of Civil Procedure 60(b)(6)"). The order dismissing the case did not include a provision reserving jurisdiction to enforce the settlement agreement; "indeed, [the order]

---

[2] Although Mr. Abhyanker is proceeding pro se, he is a California-bar certified lawyer.

[3] Both parties agree that this Court has jurisdiction over the motion; nevertheless, the Court still has an independent obligation to ensure that it does have jurisdiction.

2

did not so much as refer to the settlement agreement." *Id.* at 377.

The Supreme Court held that the lower court lacked jurisdiction to enforce the agreement.

> Generally speaking, we have asserted ancillary jurisdiction (in the very broad sense in which that term is sometimes used) for two separate, though sometimes related, purposes: (1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent; and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees [– *e.g.*] (power to compel payment of opposing party's attorney's fees as sanction for misconduct) [or] (contempt power to maintain order during proceedings).

*Id.* at 379-80.

The Supreme Court explained that neither purpose was applicable in the case under consideration. First, "the facts underlying respondent's dismissed claim for breach of agency agreement and those underlying its claim for breach of settlement agreement have nothing to do with each other; it would neither be necessary nor even particularly efficient that they be adjudicated together." *Id.* at 380. Second,

> the power asked for here [to enforce a settlement agreement] is quite remote from what courts require in order to perform their functions. We have recognized inherent authority to appoint counsel to investigate and prosecute violation of a court's order. But the only order here was that the suit be dismissed, a disposition that is no way flouted or imperiled by the alleged breach of the settlement agreement. *The situation would be quite different if the parties' obligation to comply with the terms of the settlement agreement had been made part of the order of dismissal – either by separate provision (such as a provision "retaining jurisdiction" over the settlement agreement) or by incorporating the terms of the settlement agreement in the order. In that event, a breach of the agreement would be a violation of the order, and ancillary jurisdiction to enforce the agreement would therefore exist.* That, however, was not the case here. The judge's mere awareness and approval of the terms of the settlement agreement do not suffice to make them part of his order.

*Id.* at 380-81 (emphasis added).

As indicated above, in the instant case, the parties did include in the order of dismissal and final judgment the following provision: "This Court shall retain jurisdiction to *enforce* its judgments in this action and *any agreements of the parties with respect thereto*." Docket Nos. 416-17 (stipulation, order, and final judgment) (emphasis added). Thus, if Mr. Abhyanker were

3

1 asking the Court to enforce the Settlement Agreement, this Court would clearly have ancillary
2 jurisdiction under *Kokkonen*.
3      Of course, here, Mr. Abhyanker is not asking for the Court to *enforce* the Settlement
4 Agreement; rather, he is asking the Court for *relief from* the Settlement Agreement. That being
5 the case, one might argue that the only jurisdiction the Court retained was with respect to
6 enforcement of the Settlement Agreement (as opposed to the validity of the agreement) and
7 therefore his motion should be rejected as it does not seek enforcement. The Court, however, does
8 not adopt this narrow view. Rather, it concludes that the authority to enforce the Settlement
9 Agreement necessarily includes the authority not to enforce the agreement; at issue is the
10 enforceability of the agreement, an issue that likewise would be adjudicated in a suit seeking to
11 affirmatively enforce the agreement. It is unlikely that the parties intended to draw a distinction
12 that would preclude jurisdiction here. Accordingly, the Court holds that it does have ancillary
13 jurisdiction under *Kokkonen*.[4] *Compare Camacho v. City of San Luis*, 359 F. App'x 794, 795, 798
14 (9th Cir. 2009) (holding that "the district court [did not] err in opting not to retain jurisdiction over
15 challenges to the settlement agreement's validity or enforceability" because the order of dismissal
16 did not include a provision retaining jurisdiction; noting that, for "the flip side of the *Kokkonen*
17 situation – an effort to undo rather than to enforce a settlement agreement – . . . the *Kokkonen*
18 analysis of the effect of a settlement in converting a federal question into a contract dispute applies
19 with equal force").

### III. ▮

21      Having concluded that the Court has jurisdiction to consider Mr. Abhyanker's motion, the
22 Court turns to the merits of the motion.

---

[4] If the Court did *not* have ancillary jurisdiction under *Kokkonen*, Mr. Abhyanker's motion might be construed as a motion for relief from the judgment pursuant to Federal Rule of Civil Procedure 60(b). Such a motion, however, would be meritless. Mr. Abhyanker could not seek relief under 60(b)(1), (2), or (3) because such a motion would be time barred. *See* Fed. R. Civ. P. 60(c)(1) (providing that a motion based on Rule 60(b)(1), (2), or (3) must be made "no more than a year after the entry of the judgment or order or the date of the proceeding"). Rule 60(b)(6) would not apply as it is reserved for 'extraordinary circumstances.'" *Ashford v. Steuart*, 657 F.2d 1053, 1055 (9th Cir. 1981). As the discussion below demonstrates, there are no extraordinary circumstances here.

4

1    First, Mr. Abhyanker wants to be relieved of certain promises contained in the Settlement

2    Agreement ██████████████████████████████████████████████████████████████

3    ████████████████████████████████████████████████████████████████████████

4    ████████████████. *See* Mot., Exs. A, D (████████████████████████████████

5    ████████████████████████████████████████████████████████████

6    ████████. Each of Nextdoor's patent applications, except for one, was filed after the Settlement

7    Agreement was reached in this case. The patent applications have now issued as the following

8    patents:

9    - the '431 patent (application filed on 5/13/2014, patent issued on 9/18/2018);
10   - the '345 patent (application filed on 3/10/2015, patent issued on 11/13/2018);
11   - the '412 patent (application filed on 11/2/2015, patent issued on 12/18/2018);
12   - the '671 patent (application filed on 11/2/2015, patent issued on 11/6/2018);
13   - the '008 patent (application filed on 3/31/2016, patent issued on 4/10/2018);
14   - the '521 patent (application filed on 9/10/2018, patent issued on 1/14/2020).

15   ████████████████████████████████████████████████████████████████████████

16   ████████████████████████████████████████████████████████████████████████

17   ████████ ████ ██████████████████████████████████████████████████████████

18   ████████████████████████████████████████████████████████████████████████

19   ████████████████████████████████████████████████████████████████████████

20   ██████████████

21   ██████████████████████████ if Mr. Abhyanker were to ██████████████████████, he would

22   be in violation of the Settlement Agreement. *See, e.g.*, Sett. Agmt. ¶ 16 (████████████████

23   ████████████████████████████████████████████████████████████[6] Thus, the only

---

[5] Mr. Abhyanker refers in particular to proposed findings of fact and conclusions of law ("FF&CL") that Nextdoor filed in November 2014. *See* Docket No. 393 (proposed FF&CL).

[6] Mr. Abhyanker suggests that, ██████████████████████████████████████████████
████████████████████████████████. *See* Sett. Agmt. ¶ 17. However, the bulk of the information above is public in nature, and therefore ██████████████████ would not be implicated. *See infra*.

5

question for the Court is whether Mr. Abhyanker should be relieved from his obligations under the Settlement Agreement so that he ▮▮▮▮▮.

Mr. Abhyanker argues that he is entitled to relief under *Cariveau v. Halferty*, 83 Cal. App. 4th 126 (2000) as a matter of public policy, but that case is easily distinguishable. In *Cariveau*, a state court found a confidentiality provision in a settlement agreement against public policy and therefore deemed it unenforceable. The court found the confidentiality provision a violation of public policy because it enabled a contracting party to conceal her misconduct (and was an act of misconduct in and of itself).[7] This concern is not present in instant case. ▮▮▮▮

▮▮▮▮
▮▮▮▮
▮▮▮▮
▮▮▮▮
▮▮▮▮

Even if Mr. Abhyanker simply relies on *Cariveau* as setting forth a general principle that a contract or contract term will not be enforced when it violates public policy, he fares no better. Mr. Abhyanker has failed to show that public policy would be violated ▮▮▮▮

---

[7] In *Cariveau*, an investor hired a securities dealer, registered with the National Association of Securities Dealers ("NASD"), to help her with her investments. After making the investments recommended by the dealer, the investor concluded that the investments were inappropriate and that the dealer may have engaged in unethical conduct. To get her money back, the investor had to sign a Forbearance Agreement and Mutual Release with the dealer. The agreement contained a confidentiality provision stating that the terms of the agreement were confidential and could not be disclosed to anyone, including an administrative, law enforcement, or regulatory agency.

The dealer subsequently sued the investor, claiming the investor had breached the confidentiality provision by making complaints about the dealer to the dealer's employer and/or to the NASD. The trial court held that the confidentiality clause was void and unenforceable because it violated public policies expressed in the NASD rules and the Securities Exchange Act of 1934. On appeal, an intermediate appellate court agreed. The dealer was "under an affirmative duty pursuant to the NASD rules and policy, to disclose her outside dealings to her employer and was subject to a policy that disapproved of actions preventing customers from discussing misconduct with an agent's employer and the NASD." *Id.* at 136. The dealer "admitted that the purpose of the confidentiality clause . . . was to prevent the customer from disclosing [the dealer's misconduct] to the NASD and the employer" – *i.e.*, to "suppress[] . . . information that [the dealer] was required to report to her employer and the NASD." *Id.* at 134-35; *see also id.* at 136-37 (noting that "[t]he inclusion of a restrictive confidentiality clause in the Forbearance Agreement is not only directly connected to [the dealer's] misconduct, but is an instance of misconduct itself").

6

███████████. Virtually all the information that ███████████████ is already public in nature. For example:

    (1) The "factual admissions" that Nextdoor made in its proposed findings of fact (filed in November 2014) were publicly filed. *See* Docket No. 393 (FF&CL).

    (2) The patent infringement suit that Mr. Abhyanker and his company Fatdoor filed against Nextdoor is similarly a matter of public record. *See Fatdoor, Inc. v. Nextdoor.com, Inc.*, No. C-14-2335 BLF (N.D. Cal.).

    (3) Although ████████████████████████████████████████ █████████████████████████████, the fact that he owns the patents is a matter of public record. The patents themselves are also publicly accessible so that nothing would prevent a third party (including the USPTO) from seeing the patents █████████████████ █████████████████████.

Because the information is publicly available, Mr. Abhyanker cannot claim a violation of public policy simply because, █████████████████████████████████████████████ ████.

    **IV.** ████████████████████████████████████

Next, Mr. Abhyanker seeks relief from the Settlement Agreement so that █████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████ *See* Sett. Agmt. ¶ 8(a); *see also* ████████ █████.

At the hearing, Mr. Abhyanker continued to assert ███████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ █████████████████████████████████████████████████.

7

Case 3:12-cv-05667-EMC Document 474-SEALED Filed 03/01/22 Page 8 of 12

1 ▮[8]

2 During the hearing, neither party disagreed that this conduct would also violate the ▮

3 ▮

4     At the hearing, Mr. Abhyanker argued that it would be is a violation of public policy if ▮

5 ▮. The Court does not agree. As noted

6 above, ▮ are publicly available. Therefore, nothing bars a third party from

7 ▮ The fact that

8 ▮ is not enough to establish a violation of public policy –

9 especially taking into account the fact that ▮

10 ▮

11 ▮. The Court also notes that ▮

12 ▮

13 ▮

14 ▮ Because of the limitation to the

15 ▮ – which Nextdoor conceded at the hearing – Mr. Abhyanker's suggestion that the

16 ▮ is somehow unfair further lacks merit. In short, ▮

17 ▮

18 ▮ Nextdoor sought an enduring peace. Mr. Abhyanker fails

19 to show the terms of the settlement agreement to which he voluntarily acceded violate public

---

[8] ▮

8

1 policy.

**V.** ▮

Mr. Abhyanker argues next that the Settlement Agreement is unconscionable because it "effectively makes [him] ▮ ▮ ▮" Mot. at 21-22 (emphasis in original). Here, Mr. Abhyanker seems to be attacking ▮ ▮ ▮ ▮ ▮ ▮ (emphasis added); *see also* Sett. Agmt. ¶ 8(a).

Under California law,

> "unconscionability has both a 'procedural' and a 'substantive' element," the former focusing on "'oppression'" or "'surprise'" due to unequal bargaining power, the latter on "'overly harsh'" or "'one-sided'" results. "The prevailing view is that [procedural and substantive unconscionability] must both be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability."

*Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000).

In the instant case, procedural unconscionability is lacking. Mr. Abhyanker claims procedural unconscionability because he was given the final draft of the Settlement Agreement (totaling more than 80 pages) at 10:37 p.m. on December 2, 2014, "with a strict deadline of midnight to accept or forfeit and proceed to trial." Mot. at 21. But Mr. Abhyanker ignores the following: (1) he was represented by counsel at the time; (2) he himself is an attorney; (3) the Settlement Agreement may technically be more than 80 pages in length, but the text of the Settlement Agreement only is a mere 14 pages, and ▮ an additional 8 pages; (4) the final draft was not the first draft he had viewed; and (5) he does not claim that ▮ ▮ t (or ¶ 8.1 of the Settlement Agreement) was not a part of the

9

1  settlement until 10:37 p.m. on December 2, 2014.  It is also worth noting that more than six years

2  have passed since the Settlement Agreement ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ were

3  signed, and Mr. Abhyanker has never claimed any unconscionability, procedural or otherwise,

4  until now.

5        Moreover, even if there were some procedural unconscionability, it would be minimal at

6  best, which would then require Mr. Abhyanker to demonstrate a high level of substantive

7  unconscionability.  *See Armendariz*, 24 Cal. 4th at 114 (noting that there is a sliding scale – "the

8  more substantively oppressive the contract term, the less evidence of procedural unconscionability

9  is required to come to the conclusion that the term is unenforceable, and vice versa").  Here, there

10  is little to no substantive unconscionability with respect to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

11  Mr. Abhyanker's contention that the provision ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  The

12  provision essentially ensures that Mr. Abhyanker's successor will be bound to t▮▮▮▮▮▮▮▮

13  ▮▮▮▮▮▮▮▮t too.  And ▮▮▮▮▮▮▮▮▮▮ to Nextdoor under the agreement is limited, simply

14  ensuring that Nextdoor can do its business without being s▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

15  ▮▮▮▮▮▮▮.  (At the hearing, Nextdoor confirmed t▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

16  ▮▮▮▮)  Nextdoor does have ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

17  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

18  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

19  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

20  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

21  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

22  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

23  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

24  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

25                **VI.**      **INVOLUNTARY SERVITUDE**

26        Mr. Abhyanker also takes the position that the Settlement Agreement amounts to

27  involuntary servitude and/or unjust enrichment – presumably, because ▮▮▮▮▮▮▮▮▮▮▮▮ that

28  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  *See* Sett.

1  Agmt. ¶ 5(b); ████████████████████; *see also* Mot. at 24 (████████████

2  ███████████████████████████████████████████████████████████████████████

3  █████████████████████████████████████) (emphasis in original). ███████

4  ████████████████████████████

5        For the reasons stated above, Mr. Abhyanker has failed to show procedural

6  unconscionability, and therefore cannot establish that the provisions above from the Settlement

7  Agreement and ██████████████████ are unconscionable. Furthermore, even if there were

8  some procedural unconscionability, it would be minimal at best, and there is little to no

9  substantive unconscionability with respect to the above provisions. ████████████

10 ███████████████████████████████████████████████████████████████████████

11 ████████████████████████████████████████.[9]

12                       **VII.  GENERAL RELEASE**

13       Finally, Mr. Abhyanker argues that his release of unknown claims under the Settlement

14 Agreement should not be enforced. *See* Mot. at 26 (referring to California Civil Code § 1542).

15 Although not entirely clear, it appears that the ████████████████████████████ ability to

16 advertise or market the patents/inventions he undisputedly owns. According to Mr. Abhyanker, he

17 ███████████████████████████████████████████████████████████████████████

18 ███████████████████████████████████████████████████████████████████████

19 ████████████████████████████████████████. *See* Sett. Agmt. ¶ 3(b).

20       Mr. Abhyanker's argument here suffers from various problems. For example, Mr.

21 Abhyanker cannot claim that the release was a surprise given that he was represented by counsel

22 and is an attorney himself; moreover, the release was not hidden or buried in the Settlement

23 Agreement, *see* Sett. Agmt. ¶ 9, and was even repeated in ██████████████████. *See* ██

24 ████████████ In addition to the above, it is difficult to accept Mr. Abhyanker's suggestion he

25 did not know he would be ████████████████████████████████████

26

27 ───────────────
[9] To the extent Mr. Abhyanker suggests Nextdoor has violated t████████████████████

28 ████████, the Court rejects that argument outright. Nextdoor cannot in any way be deemed ██
████

11

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ The parties' Settlement Agreement clearly ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *See* Sett. Agmt. ¶ 3(b). It is not uncommon for a settlement of intellectual property disputes, such as suits alleging trademark infringement, to include a requirement that the accused infringer agree not to use the trademark and to give up all rights thereto in exchange for consideration. The provision in this case was not only commonplace, but the consequences were obvious to Mr. Abhyanker. Finally, the Court notes that Mr. Abhyanker may have ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓; it is not clear that he cannot advertise or market his patents because ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ For instance, the Mr. Abhyanker's '545 patent appears to ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ several times in the specification, but the term does not show up in the title, abstract, or claims.

## VIII. CONCLUSION

For the foregoing reasons, the Court denies Mr. Abhyanker's motion for relief.

At this juncture, the Court instructs the Clerk of the Court to file this order, in its entirety, under seal. The Court orders the parties to meet and confer to determine which portions of this order may be publicly filed. Although the Court has given the parties some leeway in filing their papers and supporting documents under seal, the Court expects the parties to be more discerning here and make a narrowly tailored request to file under seal, given that the public interest in access to a Court order is significant. The parties shall jointly file their request to file under seal within a week of the date of this order.

This order disposes of Docket No. 419.

**IT IS SO ORDERED.**

Dated: February 22, 2021

_____
EDWARD M. CHEN
United States District Judge

12