UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEXTDOOR, INC.,<br><br>        Plaintiff,<br><br>        v.<br><br>RAJ ABHYANKER,<br><br>        Defendant. | Case No. 12-cv-05667-EMC<br><br>**PUBLIC/REDACTED VERSION**<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR IMMEDIATE INTERIM RELIEF, AND DEFERRING RULING ON PLAINTIFF'S MOTION TO ENFORCE SETTLEMENT**<br><br>Docket No. 524 |

In 2012, Plaintiff Nextdoor.com, Inc. initiated this lawsuit against Defendant Raj Abhyanker to resolve a dispute as to who had the right to use the Nextdoor mark. *See* Docket No. 1 (complaint). After Nextdoor filed its claims for, *inter alia*, trademark infringement and declaratory relief, Mr. Abhyanker counterclaimed, asserting causes of action for, *inter alia*, trade secret misappropriation and trademark infringement.[1] *See* Docket No. 132 (second amended counterclaims).

In December 2014, the parties settled the case. *See* Docket No. 420-19 (settlement agreement). By that time, the parties had already stipulated to a dismissal of Mr. Abhyanker's counterclaims. *See* Docket Nos. 224, 226 (stipulation and order). The Court had also granted Nextdoor's motion for summary judgment on its claim of trademark infringement. *See* Docket No. 361 (minutes). The stipulation and order for final judgment, as well as the final judgment itself, included the following provision: "This Court shall retain jurisdiction to enforce its

---

[1] The counterclaims were asserted against persons and entities in addition to Nextdoor. For purposes of this order, however, the Court focuses on Nextdoor as the relevant counterdefendant.

judgments in this action and any agreements of the parties with respect thereto." Docket Nos. 416-17 (stipulation, order, and final judgment).

Approximately six years after the final judgment, Mr. Abhyanker filed a motion for relief from his obligations under the Settlement Agreement. The Court denied the motion. Shortly thereafter, Mr. Abhyanker filed a notice in which he asserted that Nextdoor had breached the terms of the Settlement Agreement which thereby freed him of his obligations under the Settlement Agreement. In the notice, however, Mr. Abhyanker did not ask the Court to make a finding that Nextdoor had materially breached the Settlement Agreement. Instead, Mr. Abhyanker or an entity affiliated with him took unilateral action and initiated:

(1) a lawsuit seeking to invalidate six Nextdoor patents, *see Abhyanker v. Nextdoor, Inc.*, No. C-21-1534 (N.D. Cal.);

(2) a lawsuit asserting infringement of six of Mr. Abhyanker's patents, *see Abhyanker v. Nextdoor, Inc.*, No. C-21-1586 EMC (N.D. Cal.)[2];

(3) six ex parte petitions for reexamination of Nextdoor patents;

(4) a lawsuit seeking a declaration that Nextdoor's logo has been abandoned and is invalid, *see Hiago, Inc. v. Nextdoor, Inc.*, No. C-21-1853 EMC (N.D. Cal.); and

(5) a TTAB proceeding challenging Nextdoor's logo.

Now pending before the Court is Nextdoor's motion for immediate interim relief and to enforce the Settlement Agreement.

Having considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel,[3] the Court hereby **GRANTS** Nextdoor's motion.

---

[2] A week after filing this lawsuit, Mr. Abhyanker, for the first time, asked this Court for relief, asserting that Nextdoor had violated the stipulated protective order in the case and therefore seeking sanctions. *See* Docket No. 507 (Mr. Abhyanker's motion for sanctions, filed on March 12, 2021).

[3] Although Mr. Abhyanker is formally proceeding pro se, he is a California-bar certified lawyer. Mr. Abhyanker is also named as co-counsel of record in the three Northern District lawsuits identified above.

2

## I. DISCUSSION

A. Jurisdiction

As an initial matter, the Court acknowledges Mr. Abhyanker's appeal of its February 22, 2021, order which denied Mr. Abhyanker relief from his obligations under the Settlement Agreement. *See* Docket No. 474 (sealed order); Docket No. 494 (redacted order). Although this appeal is currently before the Ninth Circuit, neither party claims that this Court has been divested of jurisdiction to consider Nextdoor's motion for relief now pending before the Court. The Court agrees that it has jurisdiction to entertain Nextdoor's motion for relief. *See Mayweathers v. Newland*, 258 F.3d 930, 935 (9th Cir. 2001) (stating that a "'district court retains jurisdiction during the pendency of an appeal to act to preserve the status quo,'" although "[t]he district court's exercise of jurisdiction should not 'materially alter the status of the case on appeal'").

Mr. Abhyanker has suggested that Nextdoor's motion should have been filed in the related case, *Abhyanker v. Nextdoor*, No. C-21-1534 EMC, rather than in the instant case. In the related case, Mr. Abhyanker has asserted a claim that Nextdoor breached the Settlement Agreement. The Court rejects Mr. Abhyanker's position. *Kokkonen v. Guardian Life Insurance Co. of America*, 511 U.S. 375 (1994), makes clear that it is unnecessary for a party to file a new case for breach of a settlement agreement, or enforcement thereof, so long as the court presiding over the original case that settled retains jurisdiction to enforce the settlement agreement. *See Limbright v. Hofmeister*, 566 F.3d 672, 674 (6th Cir. 2009) ("The *Kokkonen* Court also held that a district court may, on motion by a party and without the filing of a new suit, summarily enforce a settlement agreement if the court has ancillary jurisdiction over the breach claim."); *DC Soccer, LLC v. CAPX Office Sols., LLC*, No. 19-3163 (BAH), 2021 U.S. Dist. LEXIS 51115, at *14 n.3 (D.D.C. Mar. 18, 2021) ("Absent a court order tying the settlement agreement to the underlying case, *Kokkonen* teaches that action to enforce the settlement constitutes a new, separate breach of contract claim, and a new, separate claim requires a new complaint."). The point is that Nextdoor contends Mr. Abhyanker's filing of No. C-21-1534 EMC violates the Settlement Agreement in *this* case. This case is the proper vehicle to adjudicate that question.

B. <u>Motion for Immediate Interim Relief</u>

In its motion for immediate interim relief, Nextdoor largely seeks to preserve the status quo – *i.e.*, to ensure that Mr. Abhyanker continues to perform under the Settlement Agreement and does not take action contrary thereto (unless, of course, on appeal the Ninth Circuit grants Mr. Abhyanker relief from the Settlement Agreement). The parties agree that Nextdoor is effectively seeking a temporary restraining order and/or preliminary injunction and that, therefore, the legal standard applicable to such relief is also applicable here. Accordingly, as the moving party, Nextdoor must demonstrate the following: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of relief; (3) the balance of equity tips in its favor; and (4) the relief sought is in the public interest.[4] *See Beaty v. Brewer*, 649 F.3d 1071, 1072 (9th Cir. 2011) (citing *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008)).

    1. <u>Irreparable Injury</u>[5]

The Court finds that Nextdoor would suffer irreparable injury in the absence of immediate interim relief. Without such relief, Mr. Abhyanker would continue in his campaign of harassment against Nextdoor, which includes assertions that he was involved in the development of Nextdoor and that Nextdoor has engaged in inequitable conduct. Such actions would be detrimental to Nextdoor's name, goodwill, and reputation ███████████████████████████

███████████████[6] *See Alfred Dunhill, Ltd. v. Dunhill Compact Classics, Inc.*, No. 88-5584

---

[4] These factors are subject to a sliding scale. That is, temporary relief "'is appropriate when a plaintiff demonstrates . . . that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor.'" *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011). Here, the Court need not rely on the sliding scale because, as discussed below, Nextdoor's likelihood of success on the merits is unassailable.

[5] Irreparable injury generally means there is no adequate remedy at law. *See Younger v. Harris*, 401 U.S. 37, 43-44 (1971) (noting that, under equity jurisprudence, "courts of equity should not act . . . when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief"); *Moore v. Consol. Edison Co. of N.Y., Inc.*, 409 F.3d 506, 510 (2d Cir. 2005) (stating that, "[w]here there is an adequate remedy at law, such as an award of money damages, injunctions are unavailable except in extraordinary circumstances"). In this respect, Nextdoor's motion for immediate interim relief overlaps with its motion to enforce the Settlement Agreement. The latter motion seeks specific performance of the Settlement Agreement. For specific performance, a party must show, *inter alia*, the inadequacy of a legal remedy. *See Tamarind Lithography Workshop, Inc. v. Sanders*, 143 Cal. App. 3d 571, 575 (1983).

[6] ████████████████████████████████████████████

4

1    WDK (BX), 1988 U.S. Dist. LEXIS 16711, at *5 (C.D. Cal. Dec. 28, 1988) ("Where, as here,
2    injury to goodwill and weakening of a trade name are alleged, it would be impossible to quantify
3    the monetary loss, if any, suffered by the plaintiff.").
4           Furthermore, without immediate interim relief, Mr. Abhyanker would continue with his
5    multiple lawsuits and proceedings against Nextdoor, even though this Court has held that he is
6    obligated to comply with the terms of the Settlement Agreement. As Nextdoor contends, "[t]here
7    is no monetary substitute for peace." Reply at 12; *see also Cty. of Sacramento v. Henrikson*, No.
8    2:17-cv-00085-MCE-EFB, 2017 U.S. Dist. LEXIS 16622, at *15 (E.D. Cal. Feb. 3, 2017) (stating
9    that "[t]he requisite level of irreparable harm 'is usually met . . . where there is a likelihood of
10   costly and judicially wasteful relitigation of claims and issues that were already adjudicated in
11   federal court'"); *Gaboratory, Inc. v. Gaboratory Int'l, Inc.*, No. CV 07-04725 MMM (Ex), 2008
12   U.S. Dist. LEXIS 131038, at *31 (C.D. Cal. June 10, 2008) (stating that, "[a]s evidenced by
13   defendants' disregard for their obligations under the settlement agreement and their continued
14   infringement of plaintiff's Marks, an award of monetary damages appears to be inadequate"); *cf.*



5

1    *Dunhill*, 1988 U.S. Dist. LEXIS 16711, at *5 (noting that "[s]pecific enforcement of [a] settlement
2    agreement . . . furthers important judicial interests"; "'[t]he authority of a trial court to enter a
3    judgment enforcing a settlement agreement has as its foundation the policy favoring the amicable
4    adjustment of disputes and the concomitant avoidance of costly and time consuming litigation'").
5    Mr. Abhyanker's conduct is particularly problematic as he is forcing Nextdoor to respond to a
6    multiplicity of legal actions; it is evident that Mr. Abhyanker knows no restraint.  Given his
7    litigious history, there is a realistic prospect that this proliferation will not stop on its own accord.
8    Having to respond to multiple suits constitutes a further form of irreparable injury to Nextdoor.
9    *Cf. Hooker v. Hopkins*, No. 8:15-cv-750-T-30TGW, 2015 U.S. Dist. LEXIS 42770, at *3 (M.D.
10   Fla. Apr. 1, 2015) (stating that "Defendants will suffer irreparable harm by having to defend
11   themselves against a vexatious litigant who repeatedly asserts baseless allegations against them").

12          2.      Likelihood of Success on the Merits

13          In asking for immediate interim relief, Nextdoor seeks to preserve the status quo – *i.e.*, Mr.
14   Abhyanker's compliance with the Settlement Agreement.  *See Dollar Rent A Car of Wash., Inc. v.*
15   *Travelers Indem. Co.*, 774 F.2d 1371, 1376 (9th Cir. 1985) (indicating that the status quo is "the
16   last peaceable uncontested status existing between the parties before the dispute developed").  In
17   response, Mr. Abhyanker contends that he no longer has to comply with the Settlement Agreement
18   because Nextdoor breached the agreement.  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
19   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
20   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
21   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
22   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

23          According to Nextdoor, it is likely to succeed on its position that it did not breach the
24   Settlement Agreement.  Nextdoor offers two arguments in support: (1) it could not have breached
25   the Settlement Agreement because Mr. Abhyanker *first* breached the agreement, which relieved
26   Nextdoor of its obligations to perform under the agreement, and (2) even if Nextdoor did
27   technically breach the agreement, the breach was not *material* and therefore Mr. Abhyanker is not
28   entitled to, in effect, rescind the agreement.  *See Integrated, Inc. v. Alec Fergusson Elec.*

6

1  *Contractor*, 250 Cal. App. 2d 287, 295 (1967) ("Ordinarily a party may unilaterally rescind a contract only where there has been a total or material breach by the other party.").

For purposes of this order, the Court need only address the second argument. Both parties agree that Nextdoor's breach must have been material in order for Mr. Abhyanker to be relieved of his obligations under the Settlement Agreement. In addition, both parties agree that the following factors are considered in assessing whether there has been a material breach:

> (1) The extent to which the injured party will obtain the substantial benefit which he could have reasonably anticipated; (2) the extent to which the injured party may be adequately compensated in damages for lack of complete performance; (3) the extent to which the party failing to perform has already partly performed or made preparations for performance; (4) the greater or less hardship on the party failing to perform in terminating the contract; (5) the wilful [sic], negligent, or innocent behavior of the party failing to perform; and (6) the greater or less uncertainty that the party failing to perform will perform the remainder of the contract.

*Sackett v. Spindler*, 248 Cal. App. 2d 220, 229 (1967).

The six *Sackett* factors above clearly weigh in Nextdoor's favor.

a. First Factor

As to the first *Sackett* factor, Mr. Abhyanker has already obtained the substantial benefits of the Settlement Agreement. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮



As to the second *Sackett* factor, there is no indication that Mr. Abhyanker has suffered any actual harm



[Lines 1–21 redacted]

Accordingly, the first two *Sackett* factors weigh strongly in Nextdoor's favor. For the remaining *Sackett* factors, the analysis is largely duplicative of the analysis above. For example, the third factor concerns the extent to which the party failing to perform has already partly performed. As indicated above, in conjunction with the first factor, Nextdoor has already performed the bulk of its obligations under the Settlement Agreement such that Mr. Abhyanker has obtained substantial benefits under the agreement. The fourth *Sackett* factor relates to the greater or less hardship on the party failing to perform in terminating the contract. As discussed

above, in conjunction with irreparable harm, without immediate interim relief, Nextdoor would suffer significant hardship, including but not limited to injury to its name, goodwill, and reputation, and in having to respond to Mr. Abhyanker's proliferation of legal actions. ▓

▓

▓

▓

▓

▓ Finally, on the sixth factor, the greater or less uncertainty that the party failing to perform will perform the remainder of the contract, there is nothing to indicate that Nextdoor will not continue to perform under the Settlement Agreement as it already substantially has for more than six years.

Accordingly, based on the evidence of record, it is clear that Nextdoor did not materially breach. Nextdoor's likelihood of success on the merits is all but guaranteed.

3. <u>Balance of Hardships</u>

As discussed above, Nextdoor would suffer irreparable injury in the absence of immediate interim relief. In contrast, there is no hardship to Mr. Abhyanker in continuing with the status quo (*i.e.*, before the parties' dispute) in which he is obligated to comply with the terms of the Settlement Agreement. The Court is simply enforcing a contract that he – an attorney – agreed to after significant litigation and that gave him substantial benefits as discussed above. Notably, rather than seeking a declaration from this Court that the public filing of the order constituted a material breach freeing Mr. Abhyanker from his obligation under the Settlement Agreement, he took matters into his own hands by unilaterally filing multiple actions. The balance of hardships weighs heavily in Nextdoor's favor.

4. <u>Public Interest</u>

Finally, the public interest weighs in favor of relief to Nextdoor. As indicated above, "[s]pecific enforcement of [a] settlement agreement . . . furthers important judicial interests"; "'[t]he authority of a trial court to enter a judgment enforcing a settlement agreement has as its

1  foundation the policy favoring the amicable adjustment of disputes and the concomitant avoidance
2  of costly and time consuming litigation.'"  *Dunhill*, 1988 U.S. Dist. LEXIS 16711, at *5. ▮

3  ▮
4  ▮
5  ▮
6  ▮
7  ▮
8  ▮
9  ▮
10 ▮
11 ▮
12 ▮
13 ▮
14 ▮
15 ▮
16 ▮

     5.   Relief

Because Nextdoor would suffer irreparable injury without immediate interim relief, Nextdoor's likelihood of success on the merits is largely guaranteed, the balance of hardships weighs heavily in Nextdoor's favor, and the public interest weighs in favor of relief to Nextdoor, the Court grants Nextdoor's motion. The Court orders as follows.

Mr. Abhyanker, his agents, servants, employees, and attorneys and any others who are in active concert or participation with him or with notice of this Order, shall:

(1) Abide by all terms of and perform under the Settlement Agreement ▮ ▮ unless specifically relieved by this Court or the Ninth Circuit.

(2) Not initiate any additional legal proceedings against Nextdoor or its founders, officers, employees, agents, or attorneys without prior approval of the Court.

        (3) Not file any additional motions or pleadings in the actions he has pending before this Court without prior approval of the Court.

        (4) Deliver a copy of this order to USPTO and any other adjudicative body before which he has a proceeding against Nextdoor.[9]

In addition to the above, the Court stays all proceedings in the instant case as well as Nos. C-21-1534 EMC, C-21-1586 EMC, and C-21-1853 EMC (N.D. Cal.) pending further order of the Court.

C.    Motion to Enforce the Settlement Agreement

As a formal matter, Nextdoor has not simply moved for immediate interim relief; it has also moved outright for enforcement of the Settlement Agreement. The Court's analysis above establishes why the motion should be granted: the evidence of record clearly reflects that Nextdoor did not materially breach the Settlement Agreement.

The Court acknowledges Mr. Abhyanker's arguments that he has not had sufficient time to defend against the motion, that it is premature to decide the motion as he needs discovery before the Court can rule, and that he is entitled to a jury trial on whether Nextdoor materially breached. But none of these arguments is availing.

First, Mr. Abhyanker had five calendar days to file an opposition. This was sufficient time to defend given the narrow issue raised in the motion, *i.e.*, was Nextdoor's breach material? Second, Mr. Abhyanker has not identified what further factual development is needed. ▮

▮

▮

▮

▮

---

[9] Although the Court is sealing portions of this order from *public* view, the parties have not addressed whether the USPTO should be given a sealed or unsealed copy. Because neither party has placed any significance on this issue, and because the USPTO is a formal adjudicative body, the Court orders that an unsealed version be given to the agency. The unsealed version, however, shall reflect that the order has been filed in this Court under seal and shall reflect which portions specifically have been sealed.

13

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████ Finally, although the materiality of a breach is typically a question of fact, the issue of materiality can be resolved as a matter of law where, as here, the evidence of record is clear and reasonable minds could not disagree. *See Brown v. Grimes*, 192 Cal. App. 4th 265, 277-78 (2011) (noting that, "[n]ormally the question of whether a breach of an obligation is a material breach, so as to excuse performance by the other party, is a question of fact"; "'[h]owever, if reasonable minds cannot differ on the issue of materiality, the issue may be resolved as a matter of law'").

At this juncture, however, the Court does not grant outright Nextdoor's motion to enforce the Settlement Agreement because Mr. Abhyanker still has his appeal with the Ninth Circuit. If the Ninth Circuit were to find in Mr. Abhyanker's favor on the appeal, then Nextdoor would not be entitled to enforcement of the Settlement Agreement. In light of this circumstance, and that Nextdoor has sufficient protection during the pendency of the appeal based on the relief ordered above, the Court defers ruling on Nextdoor's substantive motion.

## II.     CONCLUSION

For the foregoing reasons, the Court grants Nextdoor immediate interim relief as described above. The Court defers ruling on Nextdoor's motion for enforcement of the Settlement Agreement until after the Ninth Circuit appeal is resolved.

**IT IS SO ORDERED**.

Dated: April 6, 2021

_____
EDWARD M. CHEN
United States District Judge

14